UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                              :

UNITED STATES OF AMERICA                :
                                            :

       - v. -                              :

                                               :       **S1 19 Cr. 696 (PAE)**

ARI TEMAN,                         :
                                             :

                  Defendant.          :
                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO PRETRIAL MOTIONS BY DEFENDANT ARI TEMAN

 

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Jacob H. Gutwillig
Kedar S. Bhatia
Assistant United States Attorneys
   *Of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

I.      THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BASED ON

        AN ALLEGED VIOLATION OF THE SPEEDY TRIAL ACT........................................ 5

        A.      Applicable Law ................................................................................................ 5

        B.      Analysis ........................................................................................................... 6

II.     VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK. ................... 13

        A.      Applicable Law .............................................................................................. 13

        B.      Analysis ......................................................................................................... 15

III.    THE DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED................... 17

        A.      Applicable Law .............................................................................................. 17

        B.      Analysis ......................................................................................................... 19

CONCLUSION .................................................................................................................. 21

## PRELIMINARY STATEMENT

On June 20, 2019, the Honorable Sarah Netburn, Magistrate Judge for the Southern District of New York, signed a criminal complaint charging Ari Teman ("Teman" or the "defendant") with one count of bank fraud, in violation of Title 18, United States Code, Section 1344.  (ECF No. 1 (the "Complaint")).  On July 3, 2019, the defendant was arrested in the Southern District of Florida; subsequently, on July 7, 2019, the defendant was presented in the United States District Court for the Southern District of Florida, and released from custody subject to certain conditions of bail.  On September 6, 2019, the defendant was presented in the Southern District of New York before Judge Netburn and, thereafter, continued to be released subject to certain bail conditions.  On September 26, 2019, a grand jury sitting in this district returned an indictment against the defendant, charging him with one count of bank fraud, in violation of Title 18, United States Code, Section 1344.  (ECF No. 9 (the "Indictment")). Subsequently, on November 12, 2019, a grand jury sitting in this District returned a superseding indictment against the defendant, charging him with two counts of bank fraud, in violation of Title 18, United States Code, Section 1344, and two counts of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.  (ECF No. 27 (the "Superseding Indictment")).

Teman now moves to dismiss the Superseding Indictment on the bases that the Government violated the Speedy Trial Act and that venue in this district is improper, and also to suppress certain evidence seized from the defendant upon his arrest.  (*See* ECF Nos. 32, 33, and 34 (collectively, the "Motions")).

The Government respectfully submits this Memorandum of Law in opposition to the Motions, and submits that each of the Motions should be denied.

The Government is considering superseding charges.  In order to minimize the burdens

placed on the grand jury, the Government believes that it would be appropriate to seek a superseding indictment at a point following the Court's resolution of the defendant's Speedy Trial Act claim.

## BACKGROUND

On or about March 28, 2019, the defendant deposited, via mobile deposit, two fraudulent checks, each in the amount of $18,000—totaling $36,000—into an account held at a particular financial institution ("Financial Institution-1") in the name of a third party, "GateGuard, Inc." (the "GateGuard Account").[1] These two checks were signed and made to appear that they had been issued by two entities, "Entity-3" and "Entity-4."[2] Bank records and geo-location services reflect that the Internet Protocol ("IP") address from which the mobile deposits were made, *i.e.*, from where the GateGuard Account was accessed remotely, to be New York, New York. As of on or about March 27, 2019, prior to depositing the $36,000, the balance of the GateGuard Account was approximately $327. On or about March 29, 2019, approximately $35,000 was transferred from the GateGuard Account to another account held at Financial Institution-1 in the name of a third party, "Friend or Fraud, Inc." (the "Friend or Fraud Account").[3] Subsequently, on or about April 2, 2019, Financial Institution-1 issued a "return item charge back," or "charge-back," in the amount of approximately $36,000 from the GateGuard Account to Entity-3's and Entity-4's accounts, respectively, both held at another particular financial institution ("Financial

---

[1] GateGuard, Inc. is a business operated by the defendant. Based on records maintained by Financial Institution-1, the GateGuard Account is domiciled in New York, New York.

[2] Entity-1, Entity-2, Entity-3, and Entity-4, referenced herein, correspond to Victim-1, Victim-2, Victim-3, and Victim-4 in the Superseding Indictment.

[3] Friend or Fraud, Inc. is a business operated by the defendant. Based on records maintained by Financial Institution-1, the Friend or Fraud Account is domiciled in New York, New York.

Institution-2") In effect, this means that Financial Institution-1 bore the loss from the fraud, because the bulk of the funds from the two checks had been transferred from the GateGuard Account to the Friend or Fraud Account.

On or about April 19, 2019, at a branch of Financial Institution-1 located in Miami, Florida the defendant deposited approximately 27 fraudulent checks into the GateGuard Account. The checks were made to appear that they had been issued by three entities: "Entity-1" and "Entity-2," two entities operated by the same company; and Entity-3, referenced above. Entity-1's and Entity-2's accounts were held at a third particular financial institution ("Financial Institution-3"). Of the 27 checks: 18 ostensibly were issued from Entity-1, in the amount of approximately $198,000; 6 ostensibly were issued from Entity-2, in the amount of approximately $66,000; and 3 ostensibly were issued from Entity-3, in the amount of approximately $33,000. In total, the defendant deposited 27 checks worth approximately $297,000. Prior to the defendant's depositing approximately $297,000 into the GateGuard Account, the account had a negative balance of approximately $29,521.

On or about April 24, 2019, Financial Institution-1 issued a charge-back in the amount of approximately $33,000 from the GateGuard Account to Entity-3's account (held at Financial Institution-2). Subsequently, on or about April 26, 2019, approximately $225,000 was transferred from the GateGuard Account to the Friend or Fraud Account. In turn, also on or about April 26, 2019, two additional transfers were made from the Friend or Fraud Account to two other accounts held by the defendant at Financial Institution-1: (i) approximately $180,000 to an account in the name of "Touchless Labs LLC" (the "Touchless Labs Account");[4] and

---

[4] The defendant is identified on account opening documents as the "sole member" of Touchless Labs LLC. Based on records maintained by Financial Institution-1, the Touchless Labs Account is domiciled in New York, New York.

approximately $4,500 to an account held in the name of "Ari Teman."[5]  Subsequently, two wire transfers were made from the Friend or Fraud Account to accounts held in China: (i) on or about April 29, 2019, approximately $117,100 to "Zhuhai Taichuan Cloud Technology Company"; and (ii) on or about May 1, 2019, approximately $20,830 to "ZBT International Limited."  On or about the date of the first wire transfer from the Friend or Fraud Account to an account held in China, April 29, 2019, approximately $125,400 was transferred from the Touchless Labs Account back to the Friend or Fraud Account.

On or about May 7, 2019, Financial Institution-1 issued a charge-back of approximately $264,000 from the GateGuard Account to Entity-1's and Entity-2's accounts, respectively (held at Financial Institution-3)—equaling the amount of the 24 checks ostensibly issued from Entity-1 and Entity-2.[6]  Following that charge-back, the GateGuard Account had a negative balance of approximately $260,320.  Thereafter, on or about May 8, 2019, the defendant entered a branch of Financial Institution-1 located in Manhattan, New York and, at a bank teller window, withdrew approximately $4,000 from the Friend or Fraud Account.

Subsequently, Financial Institution-1 froze the defendant's accounts held at Financial Institution-1, including the GateGuard Account, the Friend or Fraud Account, the Touchless Labs Account, and the account held in Ari Teman's name.  In total, Financial Institution-1 was exposed to approximately $333,000 of loss—relating to the 29 total checks deposited on or about March 28 and April 19, 2019—and suffered a loss of approximately $289,000.[7]

---

[5] Based on records maintained by Financial Institution-1, the account held in the name of "Ari Teman" is domiciled in New York, New York.

[6] Account records reflect a second charge-back from the GateGuard Account, also on or about May 7, 2019, in the amount of approximately $288.

[7] Financial Institution-1 recovered the difference in funds between the total exposure and total loss.

<u>**ARGUMENT**</u>

**I.      THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BASED ON AN ALLEGED VIOLATION OF THE SPEEDY TRIAL ACT.**

The defendant argues that, under Title 18, United States Code, Section 3161(b), the Government was required to charge the defendant by information or indictment by August 2, 2019—30 days from July 3, 2019, the date on which the defendant was arrested.  (*See* ECF No. 33 at 3).  Further, the defendant argues that "given the broad allegations contained within the Complaint, all counts of the superseding indictment fall within the scope of what was framed as one count of bank fraud in the complaint."  (*Id.* at 4).

For the reasons stated below, the Government submits that the period that elapsed between the defendant's arrest in the Southern District of Florida and his indictment in this District did not violate the Speedy Trial Act.  In the alternative, if the Court were to find that there was a violation of the Speedy Trial Act, the Government would submit such a violation only would to apply Count One, and that any dismissal of such count should be without prejudice.

**A.      Applicable Law**

Title 18, United States Code, Section 3161(b) provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested … in connection with such charges."  18 U.S.C. § 3161(b).  Section 3161(h)(1)(E) excludes from the relevant thirty day period "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure."  18 U.S.C. § 3161(h)(1)(E).  For those defendants in custody, the Speedy Trial Act creates a presumption of unreasonableness for any time period for transporting a defendant from the

district of arrest to the district of prosecution that is greater than 10 days.  *See* 18 U.S.C. §

3161(h)(1)(F).  There is no analogous presumption for defendants who are not in custody, as

courts in this Circuit have recognized.  *See United States v. Hernandez*, 863 F.2d 239, 242 (2d

Cir. 1988) (finding fourteen day delay between the defendant's arrest in Nevada and his initial

appearance in Vermont after he was released on bail excludable from the Speedy Trial Act

indictment period).  While the absence of such a limitation on defendants *not* in custody

following arrest does not demonstrate a congressional intent "to allow an open-ended period of

delay in cases where a released defendant has been permitted to make his own way to the district

to which removal has been ordered," a "reasonable" period of delay for a non-incarcerated

defendant to arrange transportation from the district of arrest to the district of prosecution for an

initial appearance in that district may be excludable from the 30-day indictment deadline.  *See id.*

at 242-43.  *See also Abdallah v. United States*, No. 14-CV-4037 (JFB), 2015 WL 7454182, at *8

(E.D.N.Y. Nov. 24, 2015).

> **B.    Analysis**
>
> > i.    *The Court Should Not Dismiss Any Count Charged in the Superseding Indictment Based on Speedy Trial Act Grounds*

The 84[8] days that elapsed between the defendant's arrest and his indictment exceed the

30 days provided for by statute.  The 30 day indictment period in the Speedy Trial Act is not,

however, a rigid, inflexible rule.

Here, as the defendant has acknowledged, the Government made, at the defendant's

request, scheduling accommodations to delay the date of the defendant's initial appearance in

---

[8] The defense erroneously calculates the time period between arrest and indictment as 98 days. (ECF No. 33 at 7).

this District.  (*See* ECF No. 33 at 2, n.2; *see also* Nov. 22, 2019 Hearing Tr. at 44).  Indeed, in July 2019 and thereafter, the undersigned repeatedly contacted the defendant's prior and current counsel to schedule the defendant's initial appearance in this District.  After being informed on or about July 24, 2019 that the defendant had retained present counsel, the Government made repeated efforts to schedule the defendant's initial appearance in a manner that accommodated the schedules of both the defendant and his counsel.  Because the defendant's delayed initial appearance in this District was the result of accommodations requested *by the defendant*, the delay between the defendant's arrest and indictment was not unreasonable as it resulted from efforts to accommodate the defendant's schedule and allow for a pre-indictment initial appearance in this District, at which the defendant could, for example, request a preliminary hearing or bail modification in this District.  The defendant was, in fact, indicted within 30 days of his initial appearance in the Southern District of New York.  In light of this background, the Court should rule that the time period between the defendant's initial appearance in the Southern District of Florida on July 7, 2019, and his initial appearance in this District on September 6, 2019 is excludable as reasonable delay for transportation purposes under 18 U.S.C. § 3161(h)(1)(E), and further conclude the defendant was, after considering this exclusion, properly indicted within 30 days of his arrest.

ii.     *In the Alternative, the Alleged Speedy Trial Act Violation Would Affect Only Count One of the Superseding Indictment*

To the extent the Court determines there has been a violation of the Speedy Trial Act, such a violation only would affect Count One of the Superseding Indictment.  The provision of the Speedy Trial Act that addresses pre-indictment delay expressly states that a remedy for failure to indict within the requisite time period set forth in the Act is that "such charge against that individual contained in such complaint shall be dismissed."  *United States v. Napolitano*,

761 F.2d 135, 137 (2d Cir. 1985) (quoting 18 U.S.C. Section 3162(a)(1)).  "*Napolitano* instructs that this language must be read strictly."  *United States v. Gaskin*, 364 F.3d 438, 452 (2d Cir. 2004).  Accordingly, the Speedy Trial Act requires dismissal for pre-indictment delay "only [of] the specific charges alleged in a pending complaint."  *United States v. Cummings*, 479 F. App'x 390, 391 (2d Cir. 2012) (quoting *Gaskin*, 364 F.3d at 452 (2d Cir. 2004)).  In *Gaskin*, the Second Circuit held that "when a complaint charge and an indictment involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint."  *Gaskin*, 364 F.3d at 453.

As set forth above, the conduct referenced in Count One of the Superseding Indictment is the same as that charged in the single count of the Complaint, *i.e.*, the only conduct charged at the time of the alleged Speedy Trial violation.  Here, the aggravated identity theft charged in Counts Three and Four clearly requires "proof of elements distinct from or in addition to" those necessary to prove the crimes of bank fraud charged in Counts One and Two and so are unaffected by any purported Speedy Trial Act violation and should not be dismissed even if the Court finds such a violation.  While Count One and Count Two both charge bank fraud—and each count clearly requires proving the same elements—that is not dispositive with respect to the Court's analysis of whether the purported Speedy Trial Act violation would affect Count Two. Indeed, on similar facts, the Second Circuit previously has affirmed a lower court's ruling declining to dismiss a count charged in an indictment that had the same elements as a count charged in the previously-charged complaint, because the facts underlying the charge in the former were specific to the indictment and were not referenced by the complaint.  *See United States v. Oberoi,* 547 F.3d 436, 446 (2d Cir. 2008), *cert. granted, judgment vacated*, 559 U.S.

999, 130 S. Ct. 1878, 176 L. Ed. 2d 356 (2010), and *abrogated by Bloate v. United States*, 559

U.S. 196, 130 S. Ct. 1345, 176 L. Ed. 2d 54 (2010).

       In *Oberoi*, the defendant was arrested on a complaint on October 18, 1999 and indicted

by a grand jury on December 16, 1999—in total, after 58 days had elapsed.  The complaint,

dated October 14, 1999, charged Oberoi with one count each of mail fraud and health care fraud,

respectively.  Subsequently, on December 16, 1999, a grand jury returned an indictment charging

Oberoi with 34 counts of mail fraud and 123 counts of making false statements in connection

with health care benefits.  Before trial, Oberoi moved to dismiss the indictment for violations of

the Speedy Trial Act requirements that an indictment be filed within 30 days of arrest, and that

trial begin within 70 days following an indictment.  The District Court denied that motion.  *See*

*United States v. Oberoi*, 295 F. Supp. 2d 286 (W.D.N.Y. 2003) (finding that Oberoi had waived

his challenges to the Government's pre-indictment delay).  Oberoi's trial was scheduled to begin

on January 12, 2004 and, after one day of jury selection, on January 15, 2004, Oberoi pled guilty

to one count of mail fraud and one count of making a false statement.  As part of the plea

agreement, the Government agreed to dismiss the remaining 155 counts in the indictment and

Oberoi reserved the right to appeal on Speedy Trial grounds.  *See Oberoi*, 547 F.3d at 443.  The

count of mail fraud in the indictment to which Oberoi pled guilty contained specific facts that

were not contained in the single count of mail fraud charged in the complaint and, the court held

that the Speedy Trial act did not require reversal of that count of conviction, even though both

mail fraud charges required proof of the same elements.  *See id.* at 447.  Here, the Complaint

makes specific references to the fraud charged in Count One, including reference to specific

dates, amounts, and accounts.  Nowhere in the Complaint does the earlier fraud alleged in Count

Two of the Superseding Indictment, the remote deposits that were made on about March 28,

2019, appear.  Counts One and Two charge different bank fraud schemes.  As an initial matter, Counts One and Two charge conduct in different time periods.  In the scheme charged in Count One, the defendant physically deposited fraudulent checks; in the Count Two scheme, he made remote deposits.  In the Count One scheme, the defendant relied in lieu of a signature on a legend on the face of the check that purported to authorize his deposit; in the Count Two scheme, he allegedly signed the checks himself, using other people's names.  In short, these two counts, while both charging bank fraud, charge two distinct schemes, one that was alleged in the Complaint and one that was not.  Should the Court determine that a Speedy Trial Act violation for pre-indictment delay has in fact occurred, only Count One, and not Count Two, should be dismissed.

### iii.    Dismissal of Any Counts Should Be Without Prejudice

In the event the Court determines that dismissal of any counts is warranted, it should dismiss those counts without prejudice. The Speedy Trial Act provides that "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).  "Where the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986). "[I]he Act does not require dismissal with prejudice for every violation," and "[d]ismissal without prejudice is not a toothless sanction." *United States v. Taylor*, 487 U.S. 326, 342 (1988).  Here, the statutory factors weigh in favor of dismissal without prejudice.

First, this is a serious offense.  On or about March 28, 2019, the defendant deposited, via

10

mobile deposit, two fraudulent checks totaling $36,000.  These checks were made to appear as though they came from Entity-3 and Entity-4, including allegedly fraudulent signatures.  The next day, the defendant transferred approximately $35,000 to the Friend or Fraud Account, before Financial Institution-1 issued a return item chargeback several days later.  On or about April 19, 2019, the defendant again deposited checks designed to look like they were issued by two new entities, Entity-1 and Entity-2, as well as Entity-3, again.  The 27 checks the defendant deposited totaled $297,000.  To avoid losing the money to a charge-back, on April 26, 2019, the defendant promptly transferred approximately $225,000 to the Friend or Fraud Account.  The defendant's conduct was brazen, and the fabricated checks exposed both account holders and the relevant financial institutions to a serious risk of loss.  Ultimately, Financial Institution-1 suffered a loss of approximately $289,000.  The first statutory factor, the seriousness of the charged conduct, weighs in favor of dismissal that will allow for reprosecution.

Second, the facts and circumstances which led to the purported violation of the Speedy Trial Act, as well as the impact of a reprosecution on the administration of the Act and on the administration of justice, do not warrant dismissal without prejudice.  As set forth above, the Government sought to bring the defendant to this District promptly after his out-of-district arrest, but agreed to delay the date of the defendant's appearance in this District in order to accommodate the schedule of the defendant and his counsel.  The Government's delay "did not involve intentional non-compliance with the Act, nor was it designed to gain a tactical advantage for the government."  *Simmons*, 786 F.2d at 485-86 (noting that "where the violation of the Act was unintentional and the resulting delay not overly long, and where appellant has not presented evidence of prejudice, we do not believe that the administration of justice would be adversely affected by reprosecution").  The defendant's claim that his conduct is, in essence, a "civil billing

dispute" is a drastic understatement of the defendant's conduct.  (ECF No. 33 at 9).  His claim that his use of a legend on the face of the checks he deposited someone negates his fraudulent intent to draw money from the customer accounts from which he was not authorized to draw funds is, to put it mildly, brazen.  So too with the defendant's alleged forgery of his customers' signatures.  A dismissal with prejudice that would allow the defendant's fraud to go unprosecuted would itself hurt the interest of the sound administration of justice.

Additionally, the defendant argues that the Court also should consider whether the time period that elapsed in seeking an indictment caused prejudice to the defendant himself.  (*See* ECF No. 33 at 10-11).  In particular, the defendant argues that "surveillance footage from multiple third-party entities is apparently no longer available to be subpoenaed."  (Def. Mem. at 11).  Rule 17 subpoenas were available to the defendant as soon as the Complaint was filed. *Cf.* Fed. R. Crim. P. 17(c)(3) ("After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order."). Accordingly, he has identified no prejudice by the delay, and certainly none that would justify the weighty remedy of dismissal with prejudice.

Finally, the defendant alleges that the defendant was arrested on July 3, 2019 "as a result of gamesmanship" and that the Government intentionally "opted to arrest [the defendant] on the eve of a four-day federal court holiday weekend knowing full well he would be forced to sit in a jail cell until his initial appearance five days later."  Quite simply, there is no evidence of an effort by law enforcement authorities to structure his arrest such that the defendant would be detained over a holiday weekend, other than the defendant's *ipse dixit* assertion that such a cabal existed.  Nor is the Government aware of any rule that makes a defendant who is the subject of a valid arrest warrant immune from such arrest simply because such an arrest would occur on the

day before a holiday.  In any event, the defendant's detention prior to his initial appearance has

no bearing on whether any dismissal of charges here should be with or without prejudice because

the defendant would have been subject to such incarceration even if the Government had indicted

him within the 30 day period called for in the Act.  The defendant cannot claim prejudice

stemming from the Government's purported noncompliance with the Act when he would have

been subject to the same consequences even in the face of full compliance with the Act by the

Government.

The statutory factors and the absence of prejudice to defendant all favor dismissal that

will allow for reprosecution. Accordingly, in the event the Court determines that any counts

should be dismissed, it should dismiss those counts without prejudice.

## II.     VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK.

The defendant also moves to dismiss Counts One through Four of the Superseding

Indictment on the basis that venue in the Southern District of New York is improper.  Because the

Superseding Indictment properly pleads venue in this District, this motion should be denied.

### A.     Applicable Law

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely

limited circumstances implicating fundamental rights."  *United States* v. *De La Pava*, 268 F.3d

157, 165 (2d Cir. 2001) (citation omitted); *see also United States* v. *Walsh*, 194 F.3d 37, 45 (2d

Cir. 1999).  The law is well-settled that "[a]n indictment returned by a legally constituted and

unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."

*Costello v. United States*, 350 U.S. 359, 363 (1956); *United States* v. *Alfonso*, 143 F.3d 772, 776

(2d Cir. 1998).

"Unless the government has made what can fairly be described as a full proffer of the

evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately

addressed on a pretrial motion to dismiss an indictment." *United States* v. *Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009) (quotation omitted); *see also United States* v. *Piper*, 2012 WL 4757696 (D. Vt. Oct. 5, 2012).   A defendant instead must wait until after the close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence.  *See* Fed. R. Crim. P. 29; *see also, e.g.*, *United States* v. *Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997). Where, as here, the defendant challenges the indictment in a pre-trial motion to dismiss, "[a] defendant is limited to challenging whether the indictment meets 'basic pleading requirements and is valid on its face.'"  *Piper*, 2012 WL 4757696 at *2 (quoting *Perez*, 575 F.3d at 166); *see United States* v. *Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, *the language used* to charge the crimes." (emphasis in original)); *cf. Perez*, 575 F.3d at 167 (rejecting argument that resolution of legal question does not go to sufficiency of the evidence because "[a] challenge to the sufficiency of the evidence always requires a court to compare the Government's proof against the statutory elements, properly understood" (internal quotation marks omitted)).

An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  In general, to satisfy the pleading requirements, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (internal citation omitted).  On a pretrial motion to dismiss, the allegations of the indictment must be taken as true.  *See United States* v. *Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

With respect to venue, prior to trial the Government is required to allege only that venue is

proper in this District.  *See, e.g.*, *United States v. Korolkov*, 870 F. Supp. 60, 63–64 (S.D.N.Y. 1994) (noting where indictment alleges venue, objection to venue is a fact issue properly reserved for trial); *United States v. Rogers*, No. 90-CR-377 (CSH), 1991 WL 90797, at *2–3 (S.D.N.Y. May 21, 1991) (denying a motion to dismiss because the indictment "alleges that the offenses . . . took place in the Southern District of New York, allegations that must be taken as true for the purposes of this motion" and noting that "the defendant is free to revisit this on a motion for acquittal under Rule 29").  "[A]s long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied."  *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006).

### B.    Analysis

At this stage, there is no basis to dismiss Counts One through Four of the Superseding Indictment, which properly allege that charged conduct occurred, at least in part, within the Southern District of New York.  The law requires nothing more and the relevant indictment is therefore plainly sufficient to withstand a motion to dismiss.

Indeed, courts in this District routinely refuse to entertain pre-trial motions to dismiss indictments on the grounds urged by the defendant.  *See*, *e.g.*, *United States v. Riley*, No. 13 CR. 339 RPP, 2014 WL 53440, at *3 (S.D.N.Y. Jan. 7, 2014) (denying pre-trial motion to dismiss indictment based on claim of improper venue); *United States v. Fama*, No. S1 95 CR. 840 (RO), 1996 WL 438165, at *1 (S.D.N.Y. Aug. 5, 1996) ("Since the government's burden, at this point, is limited to alleging venue, this motion is properly deferred until the close of the government's case."); *United States v. Szur*, 1998 WL 132942 at *9 (S.D.N.Y. 1998) ("[O]n its face, the Indictment alleges that the offense occurred 'in the Southern District of New York and elsewhere,' which is sufficient to resist a motion to dismiss." (citation omitted)); *United States v. Rogers*, No.

90 Cr. 337 (CSH), 1991 WL 90797, at *3 (S.D.N.Y. May 21, 1991) (finding allegation that offense took place in the Southern District of New York sufficient and pretrial determination of factual basis for allegation premature).  Such a venue inquiry is premature.  Following the conclusion of the evidence at trial, the defendant may move for acquittal under Rule 29 if he continues to dispute that venue properly lies in the Southern District of New York, as sufficiently charged.

That said, as set forth above, there is a clear basis for venue in this District.  "[I]t is well established that bank fraud is a continuing offense … thus permitting venue to lie in any district where that crime was begun, continued, or completed …." *See United States v. Magassouba*, 619 F.3d 202, 207 (2d Cir. 2010) (internal citations omitted); *see also* 18 U.S.C. § 3237(a).

As set forth above, Financial Institution-1 bore the loss of the defendant's fraud and is the ultimate victim of the conduct alleged in each of Count One and Count Two.  Regarding Count One, the fraud began in the Southern District of Florida and continued thereafter, including in the Southern District of New York.  The funds from the 27 checks that the defendant physically deposited in the Southern District of Florida were deposited into the GateGuard Account which, as set forth above, was based in New York.  The defendant then transferred certain of the funds to other of his accounts held at Financial Institution-1—the Friend or Fraud Account, the Touchless Labs Account, and the account held in the defendant's own name, each of which is domiciled in Manhattan.  *See United States v. Elcock*, 2008 WL 123842, at *1, 3 (S.D.N.Y. Jan. 10, 2008) (noting that the fact that victim accounts were "located" in the Southern District of New York could establish venue); *United States v. Korolkov*, 870 F. Supp. 60, 63-64 (S.D.N.Y. 1994) (denying pre-trial motion to dismiss on venue grounds where government alleged that bank accounts were located in New York, although defendant's acts with respect to those accounts occurred outside this district).  Additionally, the defendant wired certain of the funds to accounts

16

held in China and, thereafter, physically withdrew certain funds from the Friend or Fraud Account at a branch of Financial Institution-1 located in New York, New York.  With respect to Counts Two, Three, and Four, the mobile deposits were made from an IP address in New York, New York into the GateGuard Account which, as set forth above, is held at Financial Institution-1 and domiciled in Manhattan, New York.  *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (noting that venue is proper in the district where the defendant "intentionally or knowingly causes an act in furtherance of the charged offense to occur").  Because venue lies in this District for the bank fraud charged in Count Two, so too does venue for the aggravated identity theft charged in Counts Three and Four.  *See Magassouba*, 619 F.3d at 207 (holding that "venue is proper in a prosecution under 18 U.S.C. § 1028A in any district where the predicate felony offense was committed").

## III.    THE DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED.

The defendant argues that he was unlawfully arrested by a New York City Police Department ("NYPD") officer acting without authority in Florida, in violation of Rule 4(c)(1), and that evidence seized pursuant to the plain view exception to the warrant requirement during that arrest should be suppressed.  This motion should be dismissed because officers of the United States Marshals Service (the "USMS") executed the arrest warrant against the defendant.  NYPD Detective Daniel Alessandrino was present for the arrest, but presence alone has no bearing on Rule 4.  Moreover, even if there were a technical violation of Rule 4(c)(1), suppression is not warranted.

### A.    Applicable Law

Rule 4(c)(1) of the Federal Rules of Criminal Procedure provides that "[o]nly a marshal or other authorized officer may execute a warrant." Neither the Federal Rules of Criminal

Procedure nor the Constitution bar the presence of third parties "'who [are] assisting authorized officers in their search.'" *Mason v. Barbieri*, 338 Fed. App'x 94, 95-96 (2d Cir. 2009) (quoting *Ayeni v. Mottola*, 35 F.3d 680, 687 (2d Cir. 1994)).

If there is a violation of Rule 4(c)(1), a court must then consider whether the "violation was a technical deficiency" or a "constitutional infirmity." *United States v. Allen*, No. 15 Cr. 620, 2017 WL 6397728, at *3 (E.D.N.Y. Dec. 14, 2017). "[S]uppression under the Fourth Amendment is available only for constitutional violations." *United States v. Bernacet*, 724 F.3d 269, 279 n.10 (2d Cir. 2013); *see also United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975) (Friendly, J.) ("[C]ourts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude.").

Even then, the evidence resulting from a Fourth Amendment violation is not automatically excluded. *See Herring v. United States*, 555 U.S. 135, 141 (2009) ("The fact that a Fourth Amendment violation occurred ... does not necessarily mean that the exclusionary rule applies."); *United States v. Julius*, 610 F.3d 60, 66 (2d Cir. 2010) ("[A] search that is found to be violative of the Fourth Amendment does not trigger automatic application of the exclusionary rule."). Instead, exclusion is appropriate only where it would "deter future Fourth Amendment violations" and "the deterrence benefits" outweigh the "heavy costs" on "both the judicial system and society at large." *Davis v. United States*, 564 U.S. 229, 236-37 (2011). Indeed, the "bottom-line effect" of suppression "in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* at 237. "[S]ociety must swallow this bitter pill when necessary, but only as a last resort." *Id.* (internal quotation marks omitted).

"In a line of cases beginning with *United States v. Leon*, 468 U.S. 897," in 1984, the Supreme Court "recalibrated our cost-benefit analysis in exclusion cases to focus the inquiry on

the flagrancy of the police misconduct at issue." *Davis*, 564 U.S. at 238 (internal quotation

marks omitted).  "When the police exhibit deliberate, reckless, or grossly negligent disregard for

Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the

resulting costs." *Id.* (internal quotation marks omitted).  But "when the police act with an

objectively reasonable good-faith belief that their conduct is lawful or when their conduct

involves only simple, isolated negligence, the deterrence rationale loses much of its force and

exclusion cannot pay its way." *Id.* (internal quotation marks and citations omitted).

### B.      Analysis

The defendant's motion to suppress fails because members of the USMS executed the

warrant and, ultimately, were the ones who placed restraints on the defendant.  Detective

Alessandrino was merely present during the arrest.  Accordingly, there was no violation of Rule

4(c)(1).

Even if there had been a violation of that rule, suppression is not warranted in this case

because there was no constitutional violation.  If the defendant is correct on the facts, he would

show, at the most, that the law enforcement officer who arrested him—the case agent—should

have been deputized by the Marshals Service prior to making the arrest or should have contacted

local law enforcement officers to join the team executing the arrest warrant, thereby providing

authority under state law.  *Cf. People v. Johnson*, 303 A.D.2d 903, 905-06 (3d Dep't 2003)

("Generally, police officers from New York have no power to make arrests outside their

geographic jurisdiction.  There is an exception, however, where the officers are actively assisted

by officers of the state where the arrest is made.") (citations omitted).  Had the Government

sought to execute the arrest warrant using local Florida law enforcement officers, the defendant

would be in precisely the same situation he is in now.  There is no reason to believe local law

enforcement officers would have done anything other than what Detective Alessandrino did.[9]

Ultimately, there was no violation of Rule 4(c)(1).  Even if there had been, the defendant cannot establish that there was a constitutional violation.  *See United States v. Hamilton*, No. 16 Cr. 72, 2017 WL 9476881, at *5 (N.D. Ga. Jan. 3, 2017) ("[E]ven if [the defendant] could show a technical violation of Rule 4(c)(3), he cannot show why that violation would require the suppression of evidence in his case."); *see also Malone v. McHugh*, 797 F. Supp. 154, 157 (E.D.N.Y. 1991).  Moreover, even if the defendant could establish a constitutional violation, the officers' good faith means suppression still is not warranted.  *Davis*, 564 U.S. at 238 (internal quotation marks omitted).  Accordingly, the defendant's motion to suppress should be denied.

---

[9] The defendant cites to certain Florida state court cases to argue that suppression is warranted. Those cases are inapposite.  For example, in *Florida v. Sobrino*, 587 So.2d 1347 (Fla. 3d Dist. 1991), the court found suppression was warranted when officers "did not intend to arrest [the defendant]" and "did not know that a felony had been committed."  *Id.* at 1348. In that case, unlike this one, there was no probable cause to arrest the defendant.  By contrast, in this case, law enforcement officers had obtained a criminal complaint—establishing probable cause—and an arrest warrant.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's

Motions should be denied in their entirety without an evidentiary hearing.


Dated:  New York, New York
        December 11, 2019


                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney for the
                            Southern District of New York


                    By:   /s/ Jacob Gutwillig
                          Jacob H. Gutwillig
                          Kedar S. Bhatia
                          Assistant United States Attorneys
                          (212) 637-2215/2465