USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

---

19 Cr. 696 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Ari Teman is charged with two counts of bank fraud and two counts of aggravated identity theft. Teman moves to dismiss the Superseding Indictment, arguing that the 85-day period between his arrest and his indictment violated the Speedy Trial Act, 18 U.S.C. §§ 3161–62, and should result in a dismissal, with prejudice, of all counts.

For the reasons that follow, the Court dismisses Count One of the Superseding Indictment, but without prejudice.

## I. Background

### A. The Government's Allegations

The Government alleges that Teman carried out, sequentially, two distinct fraudulent schemes.

#### 1. Mobile Deposits of Allegedly Counterfeit Checks

On or about March 28, 2019, Teman allegedly made two mobile deposits of fraudulent checks into an account for GateGuard, Inc. ("GateGuard"), a company that he owned, at Financial Institution 1. Dkt. 38 ("Gov. Mem.") at 2; *see also* Dkt. 27 ("Superseding Indictment" or "S1") ¶ 2.[1] Those checks appeared to have been issued by two entities, Entity 3 and Entity 4,

---

[1] Unless otherwise indicated, the docket references are to the docket of this case, No. 19 Cr. 696.

and totaled $36,000.  Gov. Mem. at 2; *see also* S1 ¶ 2.  The checks each included a signature, which the Government alleges was unauthorized.  *See* Dkt. 35 ("Nov. 22 Tr.") at 21.  The Government also alleges that the IP address for the device that completed the mobile deposits suggests that such deposits were made within the Southern District of New York.  *See* Gov. Mem. at 2; Nov. 22 Tr. at 22–24.

On or about March 29, 2019, approximately $35,000 was transferred from the GateGuard account at Financial Institution 1 to a Financial Institution 1 account for Friend or Fraud, Inc. ("Friend or Fraud"), another company owned by Teman.  *See* Gov. Mem. at 2; Nov. 22 Tr. at 5, 23.

On or about April 2, 2019, Financial Institution 1 issued a "charge-back" to return $36,000 from the GateGuard account to Entity 3 and Entity 4's accounts, both of which were held at Financial Institution 2.  Gov. Mem. at 2.

### 2.      Physical Deposit of Allegedly Counterfeit Checks

On or about April 19, 2019, Teman entered a Miami Beach, Florida branch of Financial Institution 1 and deposited 27 checks, which the Government contends were fraudulent, into the same GateGuard account as the mobile deposits.  *See* Dkt. 1 ("Complaint" or "Compl.") ¶ 6(a)–(c); Gov. Mem. at 3; *see also* S1 ¶ 1.  Specifically, Teman deposited 18 checks that were drawn from Entity 1's account, six from Entity 2's, and three from Entity 3's.  Compl. ¶ 6(c)(i)–(iii); Dkt. 24 ("Oct. 21 Tr.") at 10–11.  The three entities report that they had not issued or authorized any of these checks, which totaled $297,000.  Compl. ¶ 6(b), (e); Oct. 21 Tr. at 10.  The checks did not have a signature, but instead each bore the following words:

> DRAW PER CONTRACT, NO SIGNATURE REQUIRED[.]  NOTE TO BANK: This is a valid check.  You are required by law to honor it.  Contract at gateguard.xyz/legal/terms.php accepted by above client.  Contact us at 212-203-3714 with questions.

Compl. ¶ 6(d); *see also* Oct. 21 Tr. at 11.  The Government alleges that the phone number listed on the checks is a number associated with Teman and GateGuard.  Compl. ¶ 6(d); Oct. 21 Tr. at 11.

On or about April 24, 2019, Financial Institution 1 issued a charge-back to transfer $33,000 from the GateGuard account back to Entity 3's account at Financial Institution 2. Gov. Mem. at 3.  GateGuard had previously received $33,000 from Entity 3.  *See id.*

On or about April 26, 2019, approximately $225,000 was transferred from the GateGuard account to the Friend or Fraud account.  *See* Compl. ¶ 6(g); Gov. Mem. at 3.  The same day, $180,000 was transferred from the Friend or Fraud account to a Financial Institution 1 account for Touchless Labs LLC, an LLC for which Teman is the sole member, and $4,500 to a Financial Institution 1 account for Teman.  Gov. Mem. at 3–4.  On or about April 29, 2019, $125,400 was then transferred from the Touchless Labs LLC account back to the Friend or Fraud account. Gov. Mem. at 4.  On or about April 29, 2019 and May 1, 2019, approximately $137,930 was transferred from the Friend or Fraud account to two Chinese accounts.  *See id.*

On or about May 7, 2019, Financial Institution 1 issued another charge-back, attempting to return $264,000 from the GateGuard account to accounts held by Entities 1 and 2 at Financial Institution 3.  *Id.*  GateGuard had previously received that same amount from the two entities collectively.  *Id.*  On or about May 8, 2019, Teman withdrew $4,000 from the Friend or Fraud account at a Financial Institution 1 branch in Manhattan, New York.  *Id.*; Compl. ¶ 6(h). Financial Institution 1 then froze all of Teman's accounts.  Gov. Mem. at 4.  In total, the Government estimates that Financial Institution 1 suffered $289,000 in total loss from the allegedly fraudulent checks that Teman deposited and transferred.  *Id.*

## B.    History of Teman's Prosecution

On June 20, 2019, the Hon. Sarah Netburn, a United States Magistrate Judge in this District, approved a sealed Complaint setting out probable cause for Teman's arrest, *see* Compl., and issued a warrant for Teman's arrest, *see* No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 1 at 1.  The Complaint charged Teman with one count of bank fraud.  Compl. ¶ 1.  Drawing on the second set of allegations, above, it alleged that Teman, from in or about April 2019 until in or about June 2019, had knowingly and willfully executed a scheme to defraud a bank insured by the Federal Deposit Insurance Corporation ("FDIC") by depositing counterfeit checks into a bank account at a particular financial institution.  *Id.*  Specifically, the Complaint alleged that Teman had deposited the 27 allegedly fraudulent checks into the GateGuard account at a Financial Institution 1 branch in Florida.  *See* Compl. ¶ 6.

On July 3, 2019, Teman was arrested in the Southern District of Florida pursuant to the arrest warrant and was held in custody.  On July 8, 2019, Teman was presented in the Southern District of Florida.  No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 3.  The magistrate judge there set a $25,000 personal recognizance bond and released Teman from custody.  *Id.*  The magistrate judge also signed an order of removal, ordering Teman to appear in this District when instructed by this Court.  *See* No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 6 ("Order of Removal").  On July 10, 2019, the Southern District of Florida issued a notice of criminal transfer to this District, No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 7, and amended that notice on July 23, 2019, No. 19-mj-03082-JJO-1 (S.D. Fla.), Dkt. 9.  On July 23, 2019, this District received from Florida the documents pertaining to Teman's arrest, presentment, and release.  Dkt. 3.

On August 21, 2019, the Hon. Gabriel W. Gorenstein, a United States Magistrate Judge in this District, ordered that the Complaint be unsealed.  Dkt. 4.  On September 6, 2019, Teman appeared for before Judge Netburn for a bond hearing, his first appearance in this District.  *See*

Dkt. 7. The Government had delayed this first appearance at defense counsel's request. *See* Dkt. 33 ("Def. Mem.") at 2 n.2. At the bond hearing, Judge Netburn adopted the $25,000 personal recognizance bond, along with conditions of release. *See* Dkt. 7.

On September 26, 2019, a grand jury in this District returned an Indictment charging Teman with one count of bank fraud. Dkt. 9 ¶ 1. The conduct underlying this count was Teman's deposit of 27 fraudulent checks, as described in the Complaint, *i.e.*, the second in time of Teman's two alleged fraudulent schemes. *See* Nov. 22 Tr. at 4–5; Compl. ¶ 6. On October 3, 2019, the Government filed a letter seeking to schedule an arraignment for October 21, 2019, and to exclude time under the Speedy Trial Act through the arraignment. Dkt. 11. The Court approved both requests. Dkt. 12. On October 21, 2019, Teman was arraigned on the Indictment and an initial conference was held. At that conference, the Court excluded time, for purposes of the Speedy Trial Act, through the next conference on November 22, 2019. Oct. 21 Tr. at 40. On October 25, 2019, based on Teman's demand for a prompt trial, *see* Dkt. 22, the Court scheduled the case for trial beginning January 21, 2020. Dkt. 23.

On November 12, 2019, the grand jury returned a Superseding Indictment, charging Teman with two counts of bank fraud and two counts of aggravated identity theft. *See* S1. Count One of the Superseding Indictment relates to the 27 fraudulent checks that underlie both the initial Indictment and the Complaint, *i.e.*, the earlier of the two schemes outlined above. *See* Nov. 22 Tr. at 4–5; *see also* Compl. ¶ 6; S1 ¶ 1. Count Two charges Teman with bank fraud for the two mobile deposits. *See* Nov. 22 Tr. at 19–23; *see also* S1 ¶ 2. Counts Three and Four charge Teman with aggravated identity theft related to the mobile deposit of the two checks addressed in Count Two. *See* Nov. 22 Tr. at 21, 24–25; *see also* S1 ¶¶ 3–4.

On November 12, 2019, the Government requested that Teman be arraigned at the next conference on November 22, 2019, and again asked that time be excluded through the arraignment for purposes of the Speedy Trial Act. Dkt. 26. The Court approved that motion. Dkt. 28. On November 22, 2019, the Court held a second conference and arraigned Teman on the Superseding Indictment. It also excluded time through the trial. Nov. 22 Tr. at 68–69. On November 25, 2019, the Court set briefing schedules for anticipated pretrial motions and reaffirmed its exclusion of time through the January 21, 2020 trial. Dkt. 31.

On November 27, 2019, Teman filed several pretrial motions, including, relevant here, his motion to dismiss for a violation of the Speedy Trial Act, based on the Government's failure to obtain an indictment of him within 30 days of his arrest. Def. Mem. On December 12, 2019, the Government filed its opposition. Gov. Mem. On December 18, 2019, Teman filed his reply. Dkt. 44 ("Def. Reply").

## II. Applicable Legal Principles

Section 3161(b) of the Speedy Trial Act provides that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

Designated categories of time, however, are excludable from this 30-day period, as set out in 18 U.S.C. § 3161(h). Relevant here, § 3161(h)(1)(E) excludes "delay resulting from any proceeding relating to the transfer of a case or removal of any defendant from another district under the Federal Rules of Criminal Procedure." *Id.* § 3161(h)(1)(E). Section 3161(h)(1)(F) excludes delays from the "transportation of any defendant from another district," while providing that such delay will be presumed unreasonable, and thus not excluded, if it is "in excess of ten days from the date of an order of removal or an order directing such transportation." *Id.*

§ 3161(h)(1)(F). The Second Circuit has interpreted § 3161(h)(1)(F), including its presumptive 10-day cap on transportation pursuant to a removal order, to relate only to defendants in custody. *See United States v. Hernandez*, 863 F.2d 239, 242 (2d Cir. 1988). Although there is no corresponding presumptive *per se* cap on excludable time for the transport of defendants not in custody, § 3161(h)(1)(E) does not allow for "an open-ended period of excludable delay." *See id.* at 242–43. When considering a defendant not in custody, a court asks whether delay from an order directing removal of such defendant to a different district was unreasonable. *See id.* at 243 (holding 17-day delay reasonable).

After eliminating properly excluded time, the court calculates the applicable 30-day period. If a complaint has been filed against a defendant but the grand jury has failed to return a corresponding indictment within that 30-day period, "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

Such dismissal may occur with or without prejudice. Congress did not give either remedy priority, instead leaving that determination to the discretion of district courts. *See United States v. Taylor*, 487 U.S. 326, 334–35 (1988). When evaluating the appropriateness of a dismissal with prejudice, the Speedy Trial Act instructs a court to consider factors such as the seriousness of the offense, the facts and circumstances that led to dismissal, and the impact of re-prosecution on the administration of the Act and of justice. 18 U.S.C. § 3162(a)(1). Even though not a statutorily enumerated factor, a court should also consider prejudice to the defendant, as "there is little doubt that Congress intended this factor to be relevant for a district court's consideration." *Hernandez*, 863 F.2d at 243 (quoting *Taylor*, 487 U.S. at 334).

## III. Discussion

Teman argues first that the Superseding Indictment should be dismissed because the Government violated the Speedy Trial Act by failing to return an indictment within 30 days of

his arrest.  *See* Def. Mem. at 3–4.  He then contends that this dismissal should be with prejudice. *See id.* at 4–11.  The Court addresses each argument in turn.

### A.    Speedy Trial Act Violation

The Court first addresses Teman's argument that the Superseding Indictment should be dismissed for failure to comply with the Speedy Trial Act.

### 1.    Applicability of § 3161(h)(1)(E)

Teman argues that the Government's failure to return an indictment within 30 days of his arrest mandates dismissal.  *See* Def. Mem. at 3.  The Government responds that the delay in procuring the initial indictment was reasonable under § 3161(h)(1)(E) and that the delay between Teman's initial appearance in the Southern District of Florida on July 8, 2019 and his initial appearance in this District on September 6, 2019 is properly excluded.[2]  Gov. Mem. at 7.  On this point, the Court holds, with Teman, that the delay was unreasonable.

Under § 3161(b), the Government had 30 days after Teman's arrest to obtain an indictment of him.  18 U.S.C. § 3161(b).  Teman was arrested in the Southern District of Florida on July 3, 2019.  The Government's 30-day window to indict him therefore closed on August 2, 2019.  The Government did not, in fact, indict Teman until September 26, 2019.  The indictment thus occurred 85 days after his arrest, and 55 days after the 30-day window closed.[3]  As a result, § 3162(a)(1) requires dismissal of the charges in the complaint, unless the 55-day delay can be excluded as reasonable under § 3161(h).  *See* 18 U.S.C. § 3162(a)(1).

---

[2] The Government contends that Teman was presented in the Southern District of Florida on July 7, 2019.  Gov. Mem. at 7.  The docket from the Southern District of Florida reflects that Teman was actually presented on July 8, 2019.  No. 19-mj-3082-JJO-1 (S.D. Fla.), Dkt. 3.

[3] The defense contends that the grand jury indicted Teman 98 days after his arrest.  Def. Mem. at 7.  The Government states that there were 84 days between Teman's arrest and indictment.  Gov. Mem. at 6.  By the Court's calculation, Teman was first indicted 85 days after his arrest.

The Government argues that much of the delay is excludable under § 3161(h)(1)(E). *See* Gov. Mem. at 7. That section addresses delays from proceedings related to the transfer of cases or removal of defendants to different districts under the Federal Rules of Criminal Procedure. 18 U.S.C. §3161(h)(1)(E). Such a delay may be justified in situations where, as here, a defendant is arrested in a district other than the one that issued the warrant for his arrest, and the defendant must later appear in the latter district. *Abdallah v. United States*, No. 14 Civ. 4037 (JFB), 2015 WL 7454182, at *8 (E.D.N.Y. Nov. 24, 2015); *see Hernandez*, 863 F.2d at 242–43 (applying then § 3161(h)(1)(G), now § 3161(h)(1)(E), where defendant was arrested in Nevada on a warrant issued in Vermont). But the delay between a defendant's order of removal in the district of arrest and his initial appearance in the district where he is charged can be excluded only if the delay is reasonable. *See Abdallah*, 2015 WL 7454182, at *8 (citing *Hernandez*, 863 F.2d at 243–44). Section 3161(h)(1)(E) does not supply "an open-ended period of excludable delay" when an order of removal is issued. *Hernandez*, 863 F.2d at 243.

The Government contends that the delay between Teman's appearance in the Southern District of Florida and his initial appearance in this District, 60 days later, was reasonable because the Government had scheduled Teman's appearance in this District on a date that accommodated both his schedule and that of his counsel. *See* Gov. Mem. at 7. This argument is not persuasive (and the Government has not claimed, let alone documented, that it discussed with the defense delaying the return of an indictment until Teman appeared in this District). While a defendant's role in the delay may be considered when analyzing whether the defendant was prejudiced by the delay, a defendant has "no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016) (alteration in original) (quoting *United States v. Tunnessen*, 763 F.2d 74, 79 (2d Cir. 1985)).

Instead, the Government has an "obligation . . . to obtain promptly the defendant's presence in this district by way of removal." *Hernandez*, 863 F.2d at 243 (internal quotation marks and citation omitted). Here, had the Government been attentive to its Speedy Trial obligations, it could have insisted on an earlier appearance date, sought a continuance under § 3161(h)(7)(A), or mooted the issue by asking the grand jury to return an indictment. It did none of these.

The assembled record instead suggests that the Government was not alert to its Speedy Trial obligations in the context at hand, involving the transfer between districts of an arrested but not yet indicted defendant. At Teman's first conference before this Court, notably, the Government took the position that the Speedy Trial Act was not applicable, and that the Speedy Trial clock did not begin to run until Teman's initial appearance in this District. *See* Oct. 21 Tr. at 23–24. While the good-faith nature of a misapprehension along these lines is relevant to whether a dismissal is to be with or without prejudice, it is not a basis to avoid dismissal for a clear breach of the statute. *See United States v. Falvo*, 598 F. Supp. 873, 874 (E.D.N.Y. 1984) (rejecting, in context of § 3161(c)(1)'s 70-day post-indictment window, Government's argument that Speedy Trial clock re-set upon district transfer and dismissing indictment).

The length of the delay here further compels the Court to find it unreasonable. Courts in this Circuit have countenanced shorter delays under § 3161(h)(1)(E) as reasonable where a defendant is appearing in a district other than that of his arrest, but none have upheld a nearly two-month delay beyond that permitted by the statute. *See Hernandez*, 863 F.2d at 243

(excluding 17-day delay as reasonable)[4]; *Abdallah*, WL 2015 WL 7454182, at *8 (same for seven days)[5]; *United States v. Etwaroo*, No. 07 Cr. 26 (FB), 2008 WL 5435882, at *2 (E.D.N.Y. Dec. 31, 2008) (same for three days); *United States v. Govan*, No. 98 Cr. 565 (LAP), 1998 WL 889067, at *3 (S.D.N.Y. Dec. 18, 1998) (same for seven days); *United States v. El-Jassem*, Cr. No. 73-500 (JBW), 1994 WL 45313, at *2 (E.D.N.Y. Feb. 17, 1994) (same for 21 days); *United States v. Jervey*, 630 F. Supp. 695, 696–97 (S.D.N.Y. 1986) (same for seven days).[6]  As noted, more than 10 days for a district-to-district transfer of a defendant in custody is presumed unreasonable.  *See Hernandez*, 863 F.2d at 242; *see also Jervey*, 630 F. Supp. at 697 (applying § 3161(h)(1)(F)'s presumption and finding unreasonable three-week trip to transport custodial defendant from California to New York).  Although there is no corresponding presumption of

---

[4] The Government states that, in *Hernandez*, the Circuit excluded a 14-day delay between the defendant's arrest in Nevada and initial appearance in Vermont.  Gov. Mem. at 6.  The 14-day delay referenced in *Hernandez* is actually the time that the district court found the Government had exceeded § 3161(b)'s 30-day window for indictment.  *See Hernandez*, 863 F.2d at 243–44.  With regard to § 3161(h)(2)(E), the Circuit found that a 17-day delay between an initial appearance in Nevada and the date that the defendant was directed to appear in Vermont was reasonable (although the defendant actually appeared in Vermont one day earlier).  *See id.* at 240, 243.

[5] In his reply, Teman faults the Government for relying on *Abdallah*.  *See* Def. Reply at 2.  He argues that *Abdallah* is distinguishable because the defendant there was released on bail with instructions to appear in New York seven days later, whereas, here, he did not have instructions to appear in this District on any particular date and the Government did not obtain an indictment "anywhere close to the thirty day-deadline required by the Act."  *Id.* at 2–3.  While the shorter scale of delay makes *Abdallah* distinguishable, Teman's distinctions are unconvincing.  Although Teman was not instructed to appear on a particular date, he was ordered to appear in this District "at such times and places as may be ordered by that District Court."  *See* Order of Removal.

[6] The indicated time in these cases was excluded pursuant to § 3161(h)(1)(E) or its predecessor § 3161(h)(1)(G).  Some of these cases also excluded additional time under § 3161(h)(1)(F) or its predecessor § 3161(h)(1)(H), because the defendants were transported between districts while in custody.  *See, e.g.*, *Etwaroo*, 2008 WL 5435882, at *2; *Govan*, 1998 WL 889067, at *3.  Teman, however, was not in custody after his initial appearance in Florida.

unreasonableness for a defendant not in custody, such as Teman, the Government has not

directed the Court to any authority that would make the two-month delay here reasonable. *Cf.*

*Falvo*, 598 F. Supp. at 874 (holding eight-month delay unreasonable).

The Court therefore cannot find a § 3161(h)(1)(E) exclusion applicable to the extent

necessary to salvage the Government's cause here. And the Government does not argue that any

other exclusion fits. As a result, the Court holds that the Government exceeded, by an

unreasonable 55 days, its 30-day window provided by § 3161(b) to indict Teman, violating the

Speedy Trial Act.

### 2. Counts to Dismiss

The remedy for a violation of § 3161(b) is dismissal of the charges contained in the

Complaint. *See* 18 U.S.C. § 3162(a)(1). Teman argues that all four counts of the Superseding

Indictment "fall within the scope" of the bank fraud alleged in the Complaint, and therefore all

four should be dismissed.[7] *See* Def. Mem. at 4. The Government contends that any violation of

the Speedy Trial Act taints only Count One of the Superseding Indictment, as just the conduct

charged in Count One tracks the conduct and charge in the Complaint. *See* Gov. Mem. at 7–8.

On this point, the Court holds with the Government, and will dismiss only Count One.

Section 3161(a)(2)'s dismissal remedy has a "very limited application," applying only to

dismiss "*such* charge against the individual contained in *such* complaint." *United States v.*

*Napolitano*, 761 F.2d 135, 137–38 (2d Cir. 1985) (emphasis in original) (quoting 18 U.S.C.

§ 3162(a)(1)). A court will not dismiss charges that differ from those outlined in the complaint,

even when they "arise from the same criminal episode as those specified in the original

complaint." *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004) (quoting *Napolitano*, 761

---

[7] Teman states that he is seeking dismissal of the entire Superseding Indictment, or, in the
alternative, dismissal of Count One. Def. Mem. at 1 n.1.

F.2d at 137). Here, Count One of the Superseding Indictment tracks the charge in the Complaint. *See* Nov. 22 Tr. at 4–5; Compl. ¶ 6. Count One charges Teman with bank fraud for his deposit of 27 allegedly fraudulent checks to a GateGuard account at a Financial Institution 1 branch in Florida; his transfer of some of those funds to other accounts associated with him; and his withdrawal of some of those funds at a Financial Institution 1 branch in Manhattan, New York. *See* Nov. 22 Tr. at 4–6. That is the same conduct charged in the Complaint. *See* Compl. ¶ 6. Count One therefore must be dismissed.

Counts Three and Four, in contrast, clearly are outside the scope of proper dismissal, as they charge a different offense entirely—aggravated identity theft, not bank fraud. These counts relate to the mobile deposits targeted by the bank fraud alleged in Count Two, not the bank fraud charged in Count One and the Complaint, which involves physical deposits. *See* Nov. 22 Tr. at 21. But even if Counts Three and Four had been factually associated with the scheme underlying Count One, they would withstand dismissal. That is because "dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove crimes pleaded in the complaint," even where "a complaint charge and an indictment charge involve overlapping or even identical facts." *Gaskin*, 364 F.3d at 453. Here, the aggravated identity theft charged in Counts Three and Four requires proof of elements different from the bank fraud alleged in the Complaint.

As for Count Two, while it—like the Complaint and Count One—charges bank fraud, it concerns conduct separate from the events on which the Complaint and Count One rest. The separate factual bases for these charges save Count Two from dismissal. Section 3162(a)(1) allows for dismissal only where the charges in the indictment are "those specifically pleaded in the complaint." *Id.* at 452. Even where "generic elements" alleged by the complaint and

relevant count "do not vary," a count is not subject to dismissal where the conduct alleged materially differs from that alleged in the Complaint. *See United States v. Oberoi*, 547 F.3d 436, 447 (2d Cir. 2008), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010) (declining to dismiss indictment charge of mail fraud where complaint also charged mail fraud but did not describe particular mailing, patient, or health plan that were the subject of the fraud).

Here, Count Two focuses on bank fraud stemming from Teman's alleged mobile deposits, in March 2019, of two fraudulent checks purportedly from Entities 3 and 4 for a total of $36,000. *See* Nov. 22 Tr. at 21–24. Count Two alleges that Teman forged the signatures for the checks and deposited such checks in Manhattan, New York. *See id.* The Complaint and Count One, on the other hand, are based on Teman's physical deposits, later, in April 2019, of 27 allegedly fraudulent checks from largely different entities—Entities 1, 2, and 3—for $297,000. *See* Compl. ¶ 6; Oct. 21 Tr. at 10–11. Unlike Count Two, Teman allegedly did not sign these checks but caused text to be printed on the check that purported to authorize the deposit, and he completed the deposit in Florida, not New York. *See* Compl. ¶ 6; Oct. 21 Tr. at 10–11.

The Court "need not define what features would make two charges the same for purposes of the Speedy Trial Act," because it is clear that Count Two and the Complaint charge different incidents of bank fraud. *Oberoi*, 547 F.3d at 447. The incidents differ in various ways, including the physical checks at issue, the amount of money at stake, the purported persons or entities authorizing the checks, the form of endorsement, the form of deposit, the time of deposit, and the location of deposit. *Cf. Jervey*, 630 F. Supp. at 696–98 (dismissing charge for mail theft where defendant stole and deposited the same check described in indictment and complaint, but declining to dismiss charges related to other checks also stolen from the mail and deposited).

Accordingly, the Court dismisses Count One, but not Counts Two, Three, or Four, of the Superseding Indictment.

## B. Dismissal With or Without Prejudice

The Court next addresses Teman's argument that any dismissal should be with prejudice. *See* Def. Mem. at 4–11. Congress left this aspect of the remedy for Speedy Trial Act violations to the district court's discretion. *See Taylor*, 487 U.S. at 335. In exercising such discretion, the district court must consider four factors: (1) the seriousness of the offense, (2) the facts and circumstances leading to the dismissal of the charge, (3) prejudice to the defendant, and (4) the effect of re-prosecution on the administration of the Speedy Trial Act and of justice. *See Hernandez*, 863 F.2d at 243. The Court will discuss each factor in turn.

### 1. Seriousness of the Offense

Teman argues that the bank fraud alleged in Count One is not serious because the Government has charged "a purely civil contractual billing dispute" as a federal crime. Def. Mem. at 5–6. Teman's argument boils down to his depiction of his offense as not serious and of the Government's case against him as weak. *See id.* at 6 ("[E]ven taking the Government's allegations at face value, there was NO cognizable bank fraud."). Teman is flatly wrong.

The seriousness of the offense is an important factor in the prejudice analysis. Where the indictment charges a serious offense, it is less likely that the charge will be dismissed with prejudice. *United States v. Montecalvo*, 861 F. Supp. 2d 110, 114 (E.D.N.Y. 2012); *see also United States v. Slayton*, 791 F.2d 17, 21 (2d Cir. 1986) ("Where the crime charged is serious; the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." (brackets omitted) (quoting *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir. 1986)). This factor, contrary to Teman's argument, "focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings." *United States v. Mancuso*,

15

302 F. Supp. 2d 23, 26 n.1 (E.D.N.Y. 2004). The analysis therefore focuses on the charge of bank fraud and not the likelihood that, at trial, the Government will prevail on that charge.

Bank fraud is undeniably a serious offense. *United States v. Agugbo*, No. 00 Cr. 94 (RPP), 2000 WL 666341, at *2 (S.D.N.Y. May 22, 2000); *see also United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990). It carries a maximum sentence of 30 years in prison and a maximum fine of $1 million. 18 U.S.C. § 1344; *see also Agugbo*, 2000 WL 666341, at *2. And the instance of bank fraud, as charged, cannot be minimized. As alleged, it involved a scheme to defraud a financial institution of $297,000. *See United States v. Ojo*, 630 F. App'x 83, 86 (2d Cir. 2015) (finding wire fraud serious where victims lost $80,000); *United States v. Alston*, 699 F. Supp. 386, 388 (E.D.N.Y. 1988) (finding conspiracy to commit theft of $300,000 serious); *see also United States v. Solnin*, 81 F. Supp. 3d 193, 202–03 (E.D.N.Y. 2015) (finding seriousness factor inconclusive where theft involved sums of $8,000 and $5,000, which was "not, in relative terms, substantial"). The general offense of bank fraud and the specific allegations regarding the bank fraud here compel finding this a serious offense.

To be sure, courts have been particularly apt to find that violent offenses are serious. *See, e.g.*, *United States v. Bert*, 814 F.3d 591, 592 (2d Cir. 2016) (Jacobs, J., dissenting from denial of rehearing *en banc*) (defendant's offense was serious when he was charged with being a felon in possession of a loaded firearm that he threw into hallway when police approached). But violence is not required for an offense to be serious. *See Ojo*, 630 F. App'x at 86 ("The nonviolent nature of this [wire fraud] cannot overcome these indicia of seriousness."); *Montecalvo*, 861 F. Supp. 2d at 115 ("Although the crime was non-violent in nature, this does not necessarily render it non-serious."). Indeed, the required mental-state element of the crime of bank fraud—intent to defraud—underscores the seriousness of the offense. *See Agugbo*, 2000 WL 666341, at *2.

### 2.        Facts and Circumstances Surrounding the Delay

Next, Teman argues that the facts and circumstances surrounding the delay warrant dismissal with prejudice because the Government waited until July 3, 2019, the day before a federal holiday, to arrest him, leaving him in custody for a five-day weekend.  Def. Mem. at 7. Further, Teman argues that the Government had "no good reason" to fail to indict within 30 days, and that he played no role in the delay.  *Id.* at 7–8.  For the reasons described below, these circumstances surrounding the delay here do not require a dismissal with prejudice.

As to this factor, courts consider a variety of facts and circumstances leading to the delay at issue.  These principally concern the existence of (1) bad faith on the part of the Government, (2) a lackadaisical attitude from the Assistant United States Attorney ("AUSA"), (3) patterns of neglect from the United States Attorney's Office ("USAO"), or (4) a long delay in excess of Speedy Trial deadlines.  *See United States v. Zedner*, No. 96 Cr. 285 (TCP), 2006 WL 3050888, at *3 & n.3 (E.D.N.Y. Oct. 13, 2006).  These factors here strongly support dismissal without prejudice.

First, Teman appears to accuse the Government of bad faith.  *See Taylor*, 487 U.S. at 339. There is simply no evidence for that claim.  Teman has presented no reason to infer that that the Government acted in bad faith or an attempt to gain "a tactical advantage."  *Hernandez*, 863 F.2d at 244.  Teman has not substantiated his claim that the date chosen for his arrest (July 3, 2019) was selected to engineer a longer period in custody.  The Court will not lightly impute such a misanthropic intent to the Government.  And Teman's allegation that the Government had "no good reason" for failing to seek an indictment merely describes the fact of the violation.  It does not describe outsized inattention.  On the contrary, although inattentive to the Speedy Trial Act requirement to seek a timely indictment, the AUSA demonstrably was not lackadaisical or lax with regard to the case.  On the contrary, the AUSA reached out repeatedly to defense counsel

and indeed accommodated Teman's schedule when setting a date for the initial appearance in this District. *See* Gov. Mem. at 6–7; Def. Mem. at 2 n.2; *cf. United States v. Wells*, 893 F.2d 525, 539 (2d Cir. 1990) (crediting Government attempts to locate and contact defendant).

Second, Teman has also completely failed to present any evidence of a pattern of neglect on the part of the United States Attorney's Office for this District. He has not demonstrated "a cavalier attitude toward speedy trial rights was characteristic" of that Office, and the Court is unaware of any evidence whatsoever that would support such a claim. *United States v. Giambrone*, 920 F.2d 176, 182 (2d Cir. 1990). Teman has not, for example, martialed other Speedy Trial Act cases from this District so as to make "a strong suggestion of a pattern of neglect." *See id.* (citation omitted) (finding pattern of neglect in Western District of New York USAO and dismissing, with prejudice, due to 20-day delay); *cf. Agugbo*, 2000 WL 666341, at *2 (finding no evidence of pattern of neglect at Southern District of New York USAO).

To be sure, the Government's lapse here was regrettable, requiring dismissal. But all indications are that the AUSA was "operating under the good faith belief" that the time from Teman's appearance in Florida to his appearance in New York was excludable, and that the Speedy Trial clock did not begin until his presentation in this District. *See Hernandez*, 863 F.2d at 244; *see also* Oct. 21 Tr. at 23–24. Such good faith is evidenced by the fact that Teman's indictment was returned by the grand jury 20 days after his initial New York appearance. *See Hernandez*, 863 F.2d at 244 (finding AUSA acted in good faith where defendant was indicted within 28 days of his presentment in new district). Far from acting in bad faith or with a pattern of neglect, this appears to be "an isolated unwitting violation" of the Speedy Trial Act, supporting dismissal without prejudice. *Taylor*, 487 U.S. at 339.

Finally, the length of delay, which is "firmly established" as "a measure of the seriousness of the speedy trial violation," *Bert*, 814 F.3d at 81 (quoting *Taylor*, 487 U.S. at 340), is not so extreme as to justify the extreme remedy of precluding prosecution on the charge in question.   Here, although the 55 days by which the Government exceeded its 30-day window is not a *de minimis* or trivial delay, it is within the realm of delays that have resulted in dismissal without prejudice.   *See Hernandez*, 863 F.2d at 244 (characterizing 14-day delay as "border[ing] on being *de minimis*").   The Second Circuit has, when considering the context presented by each case, dismissed counts without prejudice for delays ranging from two weeks to more than four months in excess of the Speedy Trial clock.   *See United States v. Wilson*, 11 F.3d 346, 352–53 (2d Cir. 1993) ("at most" 42-day delay); *Wells*, 893 F.2d at 540–41 (32-day delay); *United States v. Kiszewski*, 877 F.2d 210, 214–15 (2d Cir. 1989) (district court found 57-day delay, but Circuit stated that "the number may actually have been as high as 130," with some delay caused by defense counsel's conflict of interest); *Hernandez*, 863 F.2d at 243–44 (14-day delay); *Simmons*, 786 F.2d at 485–86 (four-month delay, where "significant portion of the delay was excludable").   There is no bright-line test for when a delay is sufficiently long to require dismissal with prejudice.   But the 55-day delay here falls short of being of such "sheer length" as to be a "dominating consideration" dictating that extreme outcome.   *See Slayton*, 791 F.2d at 21–22 (dismissing with prejudice for 23-month delay); *see also Montecalvo*, 861 F. Supp. 2d at 117 (same for four-year delay); *Mancuso*, 302 F. Supp. 2d at 27 (same for three-year delay).   The Court here, finding a lack of bad faith or a pattern of negligence, finds that the facts and circumstances surrounding the violation here do not warrant dismissal with prejudice.

### 3.    Prejudice to the Defendant

Teman claims next that he has been "severely prejudiced" because of the Government's delay in seeking an indictment.   Def. Mem. at 10.   He notes that until he was indicted and

arraigned he lacked subpoena power; that he spent five days in custody; and that the pending charge subjected him to bail conditions and collateral consequences. *See id.* at 10–11. The Court, however, does not find the circumstances alleged to persuasively show prejudice.

The Second Circuit has identified two types of prejudice: (1) trial prejudice, and (2) non-trial prejudice. *Bert*, 814 F.3d at 82.

Trial prejudice diminishes a defendant's ability to present a defense at trial. *Id.* Teman argues that he experienced such prejudice because he was unable to obtain by subpoena relevant surveillance footage from third parties until he was arraigned. Def. Mem. at 11. Teman's claim is wrong. Under Federal Rule of Criminal Procedure 17(c)(3), for example, he had the ability to seek court approval for such a subpoena after his "*complaint*, indictment, or information was filed." Fed. R. Crim. P. 17(c)(3) (emphasis added). There is no evidence that Teman did so. After the Government raised this point in its opposition, *see* Gov. Mem. at 12, Teman offered no response in his reply. The Court finds no trial prejudice.[8]

Non-trial prejudice is delay that "may seriously interfere with a defendant's liberty, whether he is free on bail or not," and may also, *inter alia*, "disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety." *Bert*, 814 F.3d at 82 (quoting *Taylor*, 487 U.S. at 340–41). Teman has pointed to his five days in custody after his arrest and before his first appearance in Florida, his conditions of release, and collateral consequences associated with a federal charge. These do not suffice to establish the requisite prejudice.

---

[8] Teman, while so claiming, has also failed to establish that any materials he might wish to subpoena became unavailable during the period between arrest and indictment.

First, as to the five days in custody, they are unrelated to the delay at issue here. His time in custody preceded his appearance in Florida. And between that appearance and his indictment, Teman was not in custody. His detention in Florida prior to his appearance there was unrelated to the subsequent decision by prosecutors in New York not to seek an indictment within 30 days of his arrest. Teman cannot claim relevant prejudice as a result of his time in custody.

Second, as to the conditions of release and collateral consequences, Teman has not identified any specific condition or collateral consequence that has caused him concrete prejudice. And Teman presumably would have been subjected to the same or similar restrictions following indictment. *See Taylor*, 487 U.S. at 341 (finding no prejudice where defendant was also being held on separate charges that were not associated with a Speedy Trial Act violation).

The length of delay is also relevant to the prejudice analysis. *Id.* at 340. "The longer the delay, the greater the presumptive or actual prejudice to the defendant." *Id.* As noted, the 55-day delay, while not minimal, is also not so long as to be clearly prejudicial, particularly insofar as Teman was not in custody. Relevant too, while Teman had no obligation to take affirmative steps to ensure that he would be tried in a timely manner, he did nothing to mitigate this situation, and instead sought and obtained the agreement of the AUSA to delays in the date of his appearance. *Cf. Taylor*, 487 U.S. at 340 (considering defendant's failure to appear as contributing to delay); *Wells*, 893 F.2d at 539 (same). The deferral of Teman's initial appearance—to which the Government agreed at Teman's request—likely played an informal role in the Government's decision as to when to pursue an indictment. *Cf. Wells*, 893 F.2d at 539 ("quite likely" that defendant's failure to appear for his initial hearing in transferee district contributed to delay in indictment).

For all these reasons, the Court finds only minimal prejudice.

### 4.    Impact of Re-Prosecution

Finally, Teman argues that re-prosecution would not serve well the administration of the Speedy Trial Act or the administration of justice because the bank fraud should not have been prosecuted in the first place.  Def. Mem. at 9.  Here, Teman regurgitates many of his earlier arguments that the offense was not serious—he contends that his was a civil billing dispute, which the Government failed to investigate within the 30-day period.  *See id.* at 9–10.  These arguments are totally unconvincing.

Under this factor, the court should consider the impact of re-prosecution on the administration of the Speedy Trial Act and of the cause of justice, including whether re-prosecution might disserve the societal interest in prompt adjudication.  *See Bert*, 814 F.3d at 83.  "[I]f the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment . . . ."  *Giambrone*, 920 F.2d at 181.  The Speedy Trial Act is intended to help serve this goal by "avoiding extended pretrial delays," encouraging "the deterrent effect of punishment," and decreasing the "risk [of] loss of important evidence."  *Bert*, 814 F.3d at 83 (citations omitted).  Violations of the Speedy Trial Act's time limits negatively impact the administration of the Act and of justice.  *See id.*  Dismissing with prejudice "always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays."  *Taylor*, 487 U.S. at 342.  However, the Supreme Court has been clear that the Act does not require that remedy in every situation.  *See id.*  And, dismissal without prejudice is not "a toothless sanction"; if it were, Congress would not have included it as a remedy for Speedy Trial Act violations.  *Kiszewski*, 877 F.2d at 214 (quoting *Taylor*, 487 U.S. at 342).  Thus, there are thus many cases in which a dismissal without prejudice better serves the administration of the Act and of justice.

Such is the case here.  In considering whether re-prosecution serves the interests in the swift administration of justice, courts may again consider any bad faith, lax attitude, or pattern of neglect from the government.  *See Wilson*, 11 F.3d at 352.  This is because "the more egregious the Government's role in the violation and the more severe the delay, the more dismissal with prejudice is warranted."  *Montecalvo*, 861 F. Supp. 2d at 118 (citation omitted).  Here, for the reasons discussed, there is no basis on which to find that the Government acted in bad faith or in accordance with a pattern of neglect to manipulate the system or delay justice.  The assigned AUSA appears simply to have acted on the good faith but mistaken belief that the Speedy Trial clock did not begin to run until Teman's appearance in this District.  *See* Oct. 21 Tr. at 23–24.  While "the Government bears some responsibility for the Speedy Trial Act violation[]" here, such a violation will be "adequately redressed by requiring the Government to seek another indictment."  *Wilson*, 11 F.3d at 353.  And the corresponding harm to the interest of justice caused by a dismissal with prejudice—which would allow Teman permanently to escape criminal liability for a nearly $300,000 bank fraud on which a grand jury has found probable cause of his guilt—strongly outweighs any interest conceivably served by a dismissal with prejudice.  *See United States v. Munlyn*, 607 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) ("[W]hen the charged crime is a serious one, permitting the government to re-file the indictment benefits the administration of justice as a whole." (citing *Kiszewski*, 877 F.2d at 214)); *see also Bert*, 814 F.3d at 593 (Jacobs, J., dissenting from denial of rehearing *en banc*).

The Court accordingly holds that a dismissal of Count One, without prejudice, is warranted.

## CONCLUSION

For the foregoing reasons, the Court dismisses Count One of the Superseding Indictment, without prejudice.  The Clerk of Court is respectfully directed to close the motion pending at docket 33.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 20, 2019
        New York, New York