K1S7TEM1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                    v.                      19 CR 696 (PAE)

ARI TEMAN,

                    Defendant.              JURY TRIAL

------------------------------x

                                            New York, N.Y.
                                            January 28, 2020
                                            9:00 a.m.


Before:

                    HON. PAUL A. ENGELMAYER,

                                            District Judge


                            APPEARANCES


GEOFFREY S. BERMAN,
        United States Attorney for the
        Southern District of New York
KEDAR S. BHATIA
EDWARD A. IMPERATORE
        Assistant United States Attorneys

JOSEPH A. DIRUZZO, III
JUSTIN GELFAND
        Attorneys for Defendant

ALSO PRESENT:  DANIEL ALESSANDRINO, NYPD
               WILLIAM MAGLIOCCO, Paralegal, USAO

K1S7TEM1

1          (Trial resumed; jury not present)

2          THE COURT:  Good morning everyone.  All counsel is

3     present but Mr. Teman is not.

4          MR. GELFAND:  I think he might be going through

5     security.  I was in touch with him.  Obviously he is aware of

6     the time and has not responded to his phone, so I can't comment

7     to anything I don't know other than he is not here and not

8     responding, so when we went through security this morning the

9     line was really lengthy.  We waive his appearance.

10          THE COURT:  I only have housekeeping to take up.  From

11     my perspective I have marked the following as court exhibits:

12     Court Exhibit 2 will be the final version of the charge.  Court

13     Exhibit 3 will be the witness list that counsel have approved.

14     Court Exhibit 4 is the exhibit list that counsel have prepared

15     and approved.  Court Exhibit 5 is the indictment with one

16     important change:  Counsel, you included the back page which

17     included Section 1028(a).  That's no longer in the case.  The

18     back page also reflected -- good morning, Mr. Teman -- the

19     superseder return date.  My judgment is they didn't need to

20     know that, so I simply tore off the back page which is after

21     the signature of the foreperson.  It's really just the back.  I

22     assume that's fine with everybody.

23          MR. BHATIA:  That's fine.

24          MR. GELFAND:  Yes, your Honor.

25          THE COURT:  Court Exhibit 6 is the verdict form.  And

1    Court Exhibit 7 is the PowerPoint that the government used in

2    summation.  Put aside the PowerPoint, the other items will be

3    going to the jury today.  And we have prepared a substantial

4    care package of 12 of each of them -- the charge, the witness

5    list, the exhibit list, the indictment and the verdict form --

6    so when the time comes Mr. Smallman will be giving that to the

7    jury as its care package.

8            With that, I've got nothing else to take up with you

9    today, but I wanted to give counsel an opportunity -- in the

10   event overnight something has arisen -- to raise any issue.

11   Government?

12           MR. BHATIA:  Nothing from the government.

13           THE COURT:  Defense?

14           MR. GELFAND:  No, your Honor.

15           THE COURT:  So, today once the jury has begun to

16   deliberate, I will need somebody from each table to be here.

17   And you should be in a position to be in touch with the balance

18   of your team, prosecution or defense.  I would urge you at the

19   beginning to stick around.  We will likely get a note

20   identifying who the foreperson is but, if experience teaches me

21   anything, it's within 30 or 45 minutes there is a high

22   likelihood of a note just asking for materials, using the

23   exhibit list as a menu.  So, I would like to be able to be

24   quick on the uptake as to that.  But the important thing is

25   during the course of the day I need somebody here and in a

K1S7TEM1

| | |
|---|---|
| 1 | position to respond from each team.  OK.  Anything else before |
| 2 | we adjourn until 9:30? |
| 3 |     MR. GELFAND:  Not for the defense. |
| 4 |     MR. BHATIA:  Nothing. |
| 5 |     THE COURT:  I will see you at 9:30.  Thank you. |
| 6 |     (Recess) |
| 7 |     THE COURT:  Mr. Smallman, let's bring in the jury. |
| 8 |     (Jury present) |
| 9 |     THE COURT:  Good morning, ladies and gentlemen. |
| 10 | Please be seated. |
| 11 |     I am about to read to you my instructions to guide you |
| 12 | in your deliberations, and as you will hear in a moment, you're |
| 13 | going to have a copy of these for you to you use as you |
| 14 | deliberate. |
| 15 |     Members of the jury, you have now heard all of the |
| 16 | evidence in the case as well as the final arguments of the |
| 17 | parties.  You have paid careful attention to the evidence, and |
| 18 | I am confident that you will act together with fairness and |
| 19 | impartiality to reach a just verdict in the case. |
| 20 |     Now it's time for me to instruct you as to the law |
| 21 | that governs this case.  There are three parts to these |
| 22 | instructions.  First, I'm going to give you some general |
| 23 | instructions about your role, and about how you are to decide |
| 24 | the facts of this case.  Those instructions really would apply |
| 25 | to just about any trial.  Second, I'm going to give you some |

K1S7TEM1

specific instructions about the legal rules applicable to this particular case.  Third, I will give you some final and brief instructions about procedure.

Listening to these instructions may not be easy.  It's important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention.  You will notice I am reading these words from a prepared text.  It would be more lively, no doubt, if I just improvised, but it's important that I not do so.  The law is made up of words, and those words are very carefully chosen, and so when I tell you the law, it's critical that I use exactly the right words.

You will have copies of what I'm reading in the jury room to consult.  Don't worry if you miss a word or two.  For now just listen carefully and try to concentrate on what I'm saying.

First of all, as to the role of the Court:  I have instructed you during the trial as to various matters, and you should of course continue to follow those instructions.  My duty at this point is to instruct you as to the law.  It's your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or

K1S7TEM1

1    opinions of what the law is or ought to be.

2              As to the role of the jury:  As members of the jury,

3    you are the sole and exclusive judges of the facts.  You pass

4    upon the evidence.  You determine the credibility of the

5    witnesses.  You resolve such conflicts as there are or may be

6    in the testimony.  You draw whatever reasonable inferences you

7    decide to draw from the facts as you have determined them, and

8    you determine the weight of the evidence.

9              Do not conclude from any of my questions or any of my

10   rulings on objections or anything else that I have done during

11   this trial that I have any view as to the credibility of the

12   witnesses or how you should decide the case.

13             It is your sworn duty, and you have taken the oath as

14   jurors, to determine the facts.  Any opinion I might have

15   regarding the facts is of absolutely no consequence.

16             As to the role of counsel:  It's the duty of the

17   attorneys to object when the other side offers testimony or

18   other evidence that the attorney believes is not properly

19   admissible.  It's my job to rule on those objections.

20   Therefore, why an objection was made or why I ruled on it the

21   way I did is not your business.  You should draw no inference

22   from the fact that an attorney objects to any evidence.  Nor

23   should you draw any inference from the fact that I might have

24   sustained or overruled an objection.

25             The personalities and the conduct of counsel in the

K1S7TEM1

1   courtroom are not in any way at issue.  If you formed reactions

2   of any kind to any of the lawyers in the case, favorable or

3   unfavorable, whether you approved or disapproved of their

4   behavior as advocates, those reactions should not enter into

5   your deliberations.

6          From time to time, as you know, the lawyers and I had

7   conferences out of your hearing.  Those conferences involved

8   procedural and other matters, and none of the events relating

9   to those conferences should enter into your deliberations at

10  all.

11         Sympathy or Bias:  Under your oath as jurors, you are

12  not to be swayed by sympathy or prejudice.  You are to be

13  guided solely by the evidence in this case, and the crucial,

14  bottom-line question that you must ask yourselves as you sift

15  through the evidence is:  Has the government proven the guilt

16  of the defendant beyond a reasonable doubt?

17         It is for you alone to decide whether the government

18  has proven that the defendant is guilty of the crimes charged.

19  You must decide solely on the basis of the evidence presented,

20  subject to the law as I explain it to you.  It must be clear to

21  you that once you let fear or prejudice, or bias or sympathy

22  interfere with your thinking, there is a risk that you will not

23  arrive at a true and just verdict.

24         If you have a reasonable doubt as to the defendant's

25  guilt, you should not hesitate for any reason to find a verdict

K1S7TEM1

1    of acquittal for the defendant.  But on the other hand, if you

2    should find that the government has met its burden of proving

3    the defendant's guilt beyond a reasonable doubt, you should not

4    hesitate because of sympathy or any other reason to render a

5    verdict of guilty for the defendant.

6           The question of possible punishment of the defendant

7    is of no concern to the jury and should not enter into or

8    influence your deliberations.  The duty of imposing sentence

9    rests exclusively upon the Court.  Your function is to weigh

10   the evidence in the case and to determine whether or not the

11   defendant is guilty beyond a reasonable doubt, solely upon the

12   basis of such evidence.  Under your oath as jurors, you cannot

13   allow a consideration of the punishment which may be imposed

14   upon the defendant, if he is convicted, to influence your

15   verdict, in any way, or, in any sense, enter into your

16   deliberations.

17          Similarly, it would be improper for you to allow any

18   feelings that you might have about the nature of the crime

19   charged to interfere with your decision-making process.  Your

20   verdict must be based exclusively upon the evidence or the lack

21   of evidence in the case.

22          In reaching your verdict, you must remember that all

23   parties stand equal before a jury in the courts of the United

24   States.  The fact that the government is a party and the

25   prosecution is brought in the name of the United States does

1    not entitle the government or its witnesses to any greater

2    consideration than that accorded to any other party.  By the

3    same token, you must give it no less deference.  The government

4    and the defendant stand on equal footing before you.

5         It would be improper for you to consider, in reaching

6    your decision as to whether the government sustained its burden

7    of proof, any personal feelings you may have about the

8    defendant's race, national origin, sex, or age.  Again, all

9    persons are entitled to the same presumption of innocence, and

10   the government has the same burden of proof with respect to all

11   persons.  Your verdict must be based solely on the evidence or

12   the lack of evidence.

13        Now, I will instruct you on the presumption of

14   innocence -- the government's burden of proof in this case.

15   The defendant has pled not guilty.  By doing so, he denies the

16   charges in the indictment.  Thus, the government has the burden

17   of proving the charges against him beyond a reasonable doubt.

18   A defendant does not have to prove his innocence.  On the

19   contrary, he is presumed to be innocent of the charges

20   contained in the indictment.  This presumption of innocence was

21   in the defendant's favor at the start of the trial, it

22   continued in his favor throughout the entire trial, it is in

23   his favor even as I instruct you now, and it continues in his

24   favor during the course of your deliberations in the jury room.

25        It is removed if and only if you, as members of the

K1S7TEM1

jury, are satisfied that the government has sustained its

burden of proving the guilt of the defendant beyond a

reasonable doubt.

So, the question that naturally comes up is:  What is

a reasonable doubt?  The words almost define themselves.  It is

a doubt founded in reason and arising out of the evidence in

the case, or the lack of evidence.  It is doubt that a

reasonable person has after carefully weighing all the

evidence.  Reasonable doubt is a doubt that appeals to your

reason, your judgment, your experience, your common sense.

Reasonable doubt does not mean beyond all possible doubt.  It

is practically impossible for a person to be absolutely and

completely convinced of any disputed fact which by its nature

is not susceptible to mathematical certainty.  In consequence,

the law in a criminal case is that it is sufficient if the

guilt of the defendant is established beyond a reasonable

doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all of

the evidence, you are not satisfied of the guilt of the

defendant, and if you do not have an abiding conviction of the

defendant's guilt -- in sum, if you have such a doubt as would

cause you, as prudent persons, to hesitate before acting in

matters of importance to yourselves -- then you have a

reasonable doubt, and in that circumstance it is your duty to

acquit the defendant.

1   On the other hand, if after a fair and impartial

2   consideration of all of the evidence, you do have an abiding

3   belief of the defendant's guilt -- such a belief as you would

4   be willing to act upon without hesitation in important matters

5   in the personal affairs of your own life -- then you have no

6   reasonable doubt, and under such circumstances it is your duty

7   to convict the defendant.

8   The government is not required to prove the essential

9   elements of an offense by any particular number of witnesses.

10  The testimony of a single witness may be sufficient to convince

11  you beyond a reasonable doubt of the existence of the essential

12  elements of the offense you are considering if you believe that

13  the witness has truthfully and accurately related what he or

14  she has told you.

15  In determining the facts, you must rely upon your own

16  recollection of the evidence.  The evidence in this case is the

17  sworn testimony of witnesses, the exhibits received into

18  evidence, and the stipulations of the parties.

19  However, testimony that I have stricken or excluded or

20  told you to disregard is not evidence and may not be considered

21  by you in rendering your verdict.  Also, if certain testimony

22  was received for a limited purpose, you must follow the

23  limiting instructions I have given and use the evidence only

24  for the purpose or purposes that I indicated.

25  The only exhibits that are evidence in this case are

those that were received into evidence.  Exhibits marked for

identification but not admitted are not evidence, nor are

materials that were used only to refresh a witness's

recollection.

As I told you at the start of the case, statements and

arguments by lawyers are not evidence, because the lawyers are

not witnesses.  What they have said to you in their opening

statements and in their summations is intended to help you

understand the evidence to reach your verdict.  However, if

your recollection of the facts differs from the lawyers'

statements, it is your recollection that controls.

For the same reasons, you are not to consider a

lawyer's questions as evidence.  It is the witnesses' answers

that are the evidence, not the lawyers' questions.

Finally, any statements that I may have made do not

constitute evidence.  It is for you alone to decide the weight,

if any, to be given to the testimony you have heard and the

exhibits you have seen.

Generally, as I mentioned at the start of the case,

there are two types of evidence that you may consider in

reaching your verdict.  One type of evidence is direct

evidence.  Direct evidence is testimony by a witness about

something he knows by virtue of his own senses -- something he

has seen, felt, touched, or heard.  For example, if a witness

testified that when he left his house this morning it was

K1S7TEM1

raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  To use the example I used last Wednesday when we got started at the start of the trial, assume again that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you couldn't look outside. And assume that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then someone else a few minutes later entered with a wet raincoat.  Now, you can't look outside the courtroom, and you can't see whether or not it's raining, and so you wouldn't have any direct evidence of that fact, but on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or the nonexistence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.  Many material facts -- such as what I person was thinking or intending -- can rarely be proved by direct evidence.

K1S7TEM1

1      Circumstantial evidence is as valuable as direct

2   evidence.  The law makes no distinction between direct and

3   circumstantial evidence, but simply requires that before

4   convicting a defendant, the jury must be satisfied of a

5   defendant's guilt beyond a reasonable doubt, based on all of

6   the evidence in the case, circumstantial and direct.

7      There are times when different inferences might be

8   drawn from the evidence.  The government asks you to draw one

9   set of inferences.  The defendant asks you to draw another.

10  Again, it's for you, and you alone, to decide what inferences

11  you will draw.

12      Let's turn now to witness credibility.  You have had

13  the opportunity to observe the witnesses.  It is now your job

14  to decide how believable each witness was in his or her

15  testimony.  You are the sole judges of the credibility of each

16  witness and of the importance of his or her testimony.

17      You should carefully scrutinize all of the testimony

18  of each witness, the circumstances under which the witness

19  testified, the impression the witness made when testifying, the

20  relationship of the witness to the controversy and the parties,

21  the witness's bias or impartiality, the reasonableness of the

22  witness's statement, the strength or weakness of the witness's

23  recollection when viewed in the light of all of the other

24  testimony, and any other matter in evidence that may help you

25  decide the truth and the importance of each witness's

K1S7TEM1

1       testimony.

2               In other words, what you must try to do in deciding

3       credibility is to size a witness up in light of his or her

4       demeanor, the explanations given, and all of the other evidence

5       in the case.  You should use your common sense, your good

6       judgment, and your everyday experiences in life to make your

7       credibility determinations.

8               In passing upon the credibility of a witness, you may

9       also take into account any inconsistencies or contradictions as

10      to material matters in his or her testimony.

11              If you find that any witness has willfully testified

12      falsely as to any material fact, you have the right to reject

13      the testimony of that witness in its entirety.  On the other

14      hand, even if you find that a witness has testified falsely

15      about one matter, you may reject as false that portion of his

16      or her testimony and accept as true any other portion of the

17      testimony which commends itself to your belief or which you may

18      find corroborated by other evidence in the case.  A witness may

19      be inaccurate, contradictory, or even untruthful in some

20      aspects, and yet be truthful and entirely credible in other

21      aspects of his or her testimony.

22              The ultimate question for you to decide in passing

23      upon credibility is:  Did the witness tell the truth before

24      you?  It is for you to say whether his or her testimony at this

25      trial is truthful in whole or in part.

1          Now a discussion of witness bias.  In deciding whether

2    to believe a witness, you should specifically note any evidence

3    of hostility or affection that the witness may have towards one

4    of the parties.  Likewise, you should consider evidence of any

5    interest or motive that the witness may have in cooperating

6    with a particular party.  You should also take into account any

7    evidence of any benefit that a witness may receive from the

8    outcome of the case.

9          It is your duty to consider whether the witness has

10   permitted any such bias or interest to color his or her

11   testimony.  In short, if you find that a witness is biased, you

12   should view his or her testimony with caution, weigh it with

13   care, and subject it to close and searching scrutiny.

14         Of course, the mere fact that a witness is interested

15   in the outcome of the case does not mean that he or she has not

16   told the truth.  It is for you to decide from your observations

17   and applying your common sense and experience and all of the

18   other considerations mentioned whether the possible interest of

19   any witness has intentionally or otherwise colored or distorted

20   his or her testimony.  You are not required to disbelieve an

21   interested witness; you may accept as much of his or her

22   testimony as you deem reliable and reject as much as you deem

23   unworthy of acceptance.

24         You've heard evidence that, at some earlier time,

25   witnesses have said or done something that counsel argues is

1    inconsistent with their trial testimony.

2         Evidence of a prior inconsistent statement was placed

3    before you not because it is itself evidence of the guilt or

4    innocence of the defendant, but only for the purpose of helping

5    you decide whether to believe the trial testimony of a witness

6    who may have contradicted a prior statement.  If you find that

7    the witness made an earlier statement that conflicts with the

8    witness's trial testimony, you may consider that fact in

9    deciding how much of the witness's trial testimony, if any, to

10   believe.

11        In making this determination, you may consider whether

12   the witness purposely made a false statement or whether it was

13   an innocent mistake; whether the inconsistency concerns an

14   important fact or whether it had to do with a small detail;

15   whether the witness had an explanation for the inconsistency;

16   and whether that explanation appealed to your common sense.

17        It is exclusively your duty, based upon all the

18   evidence and your own good judgment, to determine whether the

19   prior statement was inconsistent, and if so, how much, if any,

20   weight to give to the inconsistent statement in determining

21   whether to believe all or part of the witness's testimony.

22        You have heard evidence that certain witnesses made

23   earlier statements that were consistent with their trial

24   testimony.  Such statements were admitted into evidence not as

25   independent evidence of guilt or innocence, but solely for

K1S7TEM1

whatever light they may shed on the witness's credibility.  If
you find that a witness had a motive to testify as he did, but
also that he told the same story before he had that motive, you
may take that into account in deciding whether the witness's
interest or motive colored his testimony.

            Now a word about the witness preparation.  You heard
evidence during the trial that witnesses discussed the facts of
this case with the lawyers before the witnesses appeared in
court.  Although you may consider that fact when you are
evaluating a witness's credibility, I should tell you that
there is nothing either unusual or improper about a witness
meeting with lawyers before testifying so that the witness can
be made aware of the subjects that he or she will be questioned
about, focus on those subjects, and have the opportunity to
review relevant exhibits before being questioned about them.

            (Continued on next page)

1    THE COURT:  In fact, it would be unusual for a lawyer

2    to call a witness without such consultation.  Again, the weight

3    that you should give to the fact or the nature of the witness's

4    preparation for his or her testimony and what inferences you

5    should draw from such preparation are matters completely within

6    your discretion.

7        In this case, you've heard evidence in the form of

8    stipulations of fact.  A stipulation of fact is an agreement

9    between the parties that a certain fact is true.  You must

10   regard such agreed-upon facts as true; however, it's for you to

11   determine the effect to be given to those facts.

12       Various bank records and other electronic

13   communications, such as emails, have been admitted into

14   evidence.  I instruct you that this evidence was all obtained

15   in a lawful manner, and that no one's rights were violated, and

16   that a party's use of this evidence is entirely lawful.

17       Therefore, regardless of any personal opinions you

18   might have regarding the obtaining of such evidence, you must

19   give such evidence full consideration, along with any -- excuse

20   me, along with all the other evidence in this case in

21   determining whether the government has proved the defendant's

22   guilt beyond a reasonable doubt.  What significance you attach

23   to this evidence is entirely your decision.

24       During the trial, you've heard testimony of witnesses

25   bearing on the investigative techniques used in this case.  You

K1SVTEM2                           Charge

1    may consider these facts in deciding whether the government has

2    met its burden of proof because, as I told you, you should look

3    to all of the evidence -- or lack of evidence -- in deciding

4    whether the defendant is guilty.  However, you are also

5    instructed that there is no legal requirement that the

6    government use any of these specific investigative techniques

7    to prove its case.  Whether you approve or disapprove of

8    various law enforcement techniques, or whether you might have

9    chosen to use or not use any particular technique is not the

10   question.  Your concern, as I've said, is to determine whether

11   or not, on the evidence or lack of evidence, the defendant's

12   guilt has been proved beyond a reasonable doubt.

13          Both the government and the defendant have the same

14   power to subpoena witnesses to testify on their behalf.  If a

15   potential witness could have been called by the government or

16   by the defendant, and neither called the witness, then you may

17   draw the conclusion that the testimony of the absent witness

18   might have been unfavorable to the government or to the

19   defendant or to both.

20          On the other hand, it's equally within your province

21   to draw no inference at all from the failure of either side to

22   call a witness.  You should remember that there is no duty on

23   either side to call a witness whose testimony would be merely

24   cumulative of testimony already in evidence or who would merely

25   provide additional testimony to facts already in evidence.  You

 1   should, however, remember my instruction that the law does not

 2   impose on a defendant in a criminal case the burden or duty of

 3   calling any witnesses or producing any evidence.

 4           The defendant, Ari Teman, did not testify in this

 5   case.  Under our Constitution, a defendant has no obligation to

 6   testify or to present any evidence because it's the

 7   government's burden to prove the defendant guilty beyond a

 8   reasonable doubt.  That burden remains with the government

 9   throughout the entire trial and never shifts to the defendant.

10   A defendant is never required to prove that he is innocent.

11           You may not attach any significance to the fact that

12   Mr. Teman did not testify.  No adverse inference against him

13   may be drawn by you because he did not take the witness stand.

14   You may not consider this against him in any way in your

15   deliberations.

16           Now, ladies and gentlemen, I'm about to turn to part

17   2.  That concludes part 1, instructions that would apply in

18   just about any case.

19           I'm going to stretch my legs, I invite you to do the

20   same, because we are about to dig into the instructions that

21   are specific to this case.

22           (Pause)

23           THE COURT:  All right.  I will turn now to my

24   instructions to you relating to the charges brought against the

25   defendant in this case.

1          The defendant is formally charged in an indictment.

2     As I instructed you at the outset of this case, an indictment

3     is merely a charge or accusation.  It is not evidence and it

4     does not prove or even indicate guilt.  As a result, you are

5     not to give it any weight in deciding the defendant's guilt or

6     lack of guilt.  What matters is the evidence you heard at this

7     trial.  Indeed, as I previously noted, the defendant is

8     presumed innocent, and it is the prosecution's burden to prove

9     the defendant's guilt beyond a reasonable doubt.

10         The indictment contains four counts.  Each count is a

11    separate offense or crime.  Each count must, therefore, be

12    considered separately by you, and you must return a separate

13    verdict on each count.

14         Counts One and Two of the indictment charge the

15    defendant with committing the offense of bank fraud.  Count One

16    charges him with a bank fraud scheme committed between in or

17    about April 2019, up to and including in or about June 2019.

18    Count Two charges him with a bank fraud scheme committed in or

19    about March 2019.

20         Similarly, Count Three and Four charge the defendant

21    with two separate instances of wire fraud.  Count Three charges

22    him with a wire fraud scheme committed between in or about

23    April 2019, up to and including in or about June 2019.  Count

24    Four charges him with committing a wire fraud scheme in or

25    about March 2019.

K1SVTEM2                    Charge

1              I'm now going to instruct you on the applicable law

2      for each of the four counts.

3              So let's begin with bank fraud.

4              As I said, Counts One and Two both charge the

5      defendant with bank fraud, in violation of a statute known as

6      Title 18, United States Code, Section 1344.  In other words,

7      each count charges that the defendant devised a scheme to

8      defraud a federally insured bank.

9              Count One charges the defendant with committing a bank

10     fraud scheme in connection with the deposit in April 2019 of 27

11     checks, allegedly by creating, and then making the false

12     pretense and representation to the bank that he had the account

13     holders' authority to deposit these checks.

14             Count One of the indictment reads, and I'm quoting

15     now:  "From at least in or about April 2019, up to and

16     including at least in or about June 2019, in the Southern

17     District of New York and elsewhere, Ari Teman, the defendant,

18     willfully and knowingly did execute and attempt to execute a

19     scheme and artifice to defraud a financial institution, the

20     deposits of which were then insured by the Federal Deposit

21     Insurance Corporation; and to obtain monies, funds, credits,

22     assets, securities and other property owned by and under the

23     custody and control of such financial institution by means of

24     false and fraudulent pretenses, representations, and promises,

25     to wit, Teman deposited counterfeit checks in the name of three

K1SVTEM2                        Charge

1   third parties, respectively Entity 1, Entity 2, and Entity 3,

2   into an account held at a particular financial institution,

3   Financial Institution 1, and subsequently attempted to and did

4   use those funds for his personal benefit."

5            That ends that quote.  That's the quote of Count One.

6            Count Two charges the defendant with committing a bank

7   fraud scheme in connection with a deposit in March 2019 of two

8   checks, again, allegedly by creating, and then making the false

9   pretense and representation to the bank that he had the account

10  holders' authority to deposit, those checks.

11           Count Two of the indictment reads, and I'm quoting:

12  "In or about March 2019, in the Southern District of New York

13  and elsewhere, Ari Teman, the defendant, willfully and

14  knowingly did execute and attempt to execute a scheme and

15  artifice to defraud a financial institution, the deposits of

16  which were then insured by the Federal Deposit Insurance

17  Corporation, and to obtain monies, funds, credits, assets,

18  securities, and other property owned by and under the custody

19  and control of such financial institution by means of false and

20  fraudulent pretenses, representations, and promises, to wit,

21  Teman deposited counterfeit checks in the name of Entity 3 and

22  another third party, Entity 4, into an account held at

23  Financial Institution 1, and subsequently attempted to aid --

24  attempted to and did use those funds for his personal benefit."

25           I instruct you that in connection with this

indictment, Entity 1 refers to ABJ Milano LLC, operated by ABJ

Properties; Entity 2 refers to ABJ Lenox LLC, operated by ABJ

Properties; Entity 3 refers to 518 West 204 LLC, operated by

Coney Realty; Entity 4 refers to 18 Mercer Equity, Inc.,

operated by Crystal Real Estate Management; and Financial

Institution 1 refers to Bank of America.

           To find the defendant guilty of the crimes charged in

Counts One and Two of the indictment, the government must

establish each of the following elements beyond a reasonable

doubt, and there are three:

           First, that there was a scheme or artifice to defraud

a bank, as alleged in the indictment, or that there was a

scheme or artifice to obtain money or other property owned by a

financial institution by means of materially false or

fraudulent pretenses, representations, or promises, as alleged

in the indictment.

           Second, that the defendant knowingly and willfully

executed or attempted to execute the scheme or artifice; that

is, that the defendant acted with knowledge of the fraudulent

nature of the scheme, and with the specific intent to defraud

the bank or to obtain, by deceiving the bank, money or other

property owned or controlled by the bank.

           And third, that the deposits of the bank involved

were, at the time of the scheme, insured by the Federal Deposit

Insurance Corporation.

K1SVTEM2                              Charge

1          Now I will explain each of the three elements of bank

2     fraud in more detail.

3          The first element that the government must prove

4     beyond a reasonable doubt is that on or about the dates set

5     forth in the indictment, (1) there was a scheme or artifice to

6     defraud a bank; or, (2) there was a scheme or artifice to

7     obtain money or other property owned by or under the custody or

8     control of such a bank by means of false or fraudulent

9     pretenses, representation, or promises that were material to

10    the scheme.

11         The government must prove the existence of only one of

12    these schemes.  These two concepts are not necessarily mutually

13    exclusive.  If you find that either one type of scheme or

14    artifice or both existed, then the first element of bank fraud

15    is satisfied.  However, you must be unanimous in your view as

16    to at least one type of scheme or artifice that existed.  If

17    half of you think (1), but not (2); and the other half think

18    (2), but not (1), then you must vote to acquit the defendant.

19         I'll now explain what these terms mean, and I'll begin

20    with the key terms from (1), which, again requires the

21    government to prove beyond a reasonable doubt that there was a

22    scheme or artifice to defraud a bank.

23         A "scheme or artifice" is a plan, a device, or course

24    of conduct to accomplish an objective.  "Fraud" is a general

25    term.  It is a term that includes all the possible means by

which a person seeks to gain some unfair advantage over another

person by false representations, false suggestions, false

pretenses, or concealment of the truth.  The unfair advantage

sought can involve money, property, or anything of value.

          And thus, a scheme to defraud a bank is a pattern or

course of conduct concerning a material matter designed to

deceive a federally insured bank into releasing money or

property with the intent to cause the bank to suffer an actual

or potential loss.  This term "scheme to defraud" thus embraces

all dishonest means, however ingenious, clever, or crafty, by

which a person seeks to trick another out of their property.

For example, a scheme to defraud may be accomplished through

trickery, deceit, deception, or swindle.

          The government does not need to show that the

defendant's conduct actually caused the bank to release money

or property, but rather only needs to show that the defendant's

conduct was designed to deceive the bank into releasing money

or property.

          This defines a scheme or artifice to defraud a bank,

the first type of scheme prohibited by the federal bank fraud

statute.  You may find that a scheme to defraud existed only if

the government has proven beyond a reasonable doubt the

existence of the scheme alleged in the indictment, which I read

to you a few moments ago.

          Now, the second type of scheme charged, described at

the beginning of this section as (2), is a scheme to obtain

money or other property owned by or under the custody and

control of a bank by means of false or fraudulent pretenses,

representations, or promises.  As to this type of scheme, the

government must show that false and fraudulent pretenses,

representations, or promises were employed, and that they were

directed at the bank with the intention of deceiving it.

And this brings me to false or fraudulent pretenses,

representations, or promises.

A representation is fraudulent if it was made falsely

with the intent to deceive.  The deceptive means that are

prohibited are not limited to active misrepresentations or lies

told to the bank.  Just as affirmatively stating facts as true

when the facts are not true may constitute a false

representation, the law recognizes that false representations

need not be based on spoken words alone.  The deception may

arise from the intentional omission or concealment of facts

that make what was written, said, or done deliberately

misleading.

The arrangement of the words or the circumstances in

which they are used may convey a false and deceptive

appearance.  Accordingly, the misrepresentation may be written,

oral, or rise from a course of conduct intended to communicate

false facts to the bank.  If there is intentional deception,

the manner in which it is accomplished does not matter.

1          These false representations must be "material," which

2     is a term I'll define momentarily.  In short, it doesn't matter

3     whether any decision-makers at the bank actually relied upon

4     the misrepresentation; it is sufficient if the

5     misrepresentation is one that is capable of influencing the

6     bank's decision and is intended by the defendant to do so.

7          Let me repeat again that there are two ways the

8     government may satisfy this first element beyond a reasonable

9     doubt:  First, by proving that there was a scheme to defraud a

10    bank; or second, by proving that there was a scheme to obtain

11    money or other property owned by or under the custody or

12    control of the bank by false and fraudulent pretenses,

13    representations, or promises.

14         Now, I've referred, in the context of both ways the

15    government may satisfy this first element, to a "materiality"

16    requirement.  We use the word "material" to distinguish between

17    the kinds of statements we care about and those that are of no

18    real importance.

19         A material fact is one that would reasonably be

20    expected to be of concern to a reasonable and prudent person

21    relying on the representation or statement in making a

22    decision.  This means that if you find a particular statement

23    of fact made by the defendant to have been false, you must then

24    determine whether that statement of fact was one that a

25    reasonable person might have considered important in making his

1    or her decision.  And the same principle applies to fraudulent

2    half-truths or omissions of material facts.

3              The government must -- excuse me.

4              The government need not prove an actual loss of funds

5    by the bank; nor is it necessary for the government to

6    establish that the defendant actually realized any gain from

7    the scheme.  The success of the scheme to defraud is

8    irrelevant.  What matters is whether there existed a scheme to

9    defraud.  The bank fraud statute prohibits successfully

10   defrauding a financial institution, as well as attempts to do

11   so.  You must concentrate on whether there is a scheme -- there

12   was such a scheme.

13             It does not matter whether the bank involved might

14   have discovered the fraud, had it probed further or been more

15   careful.  If you find that a scheme or artifice existed, it is

16   irrelevant whether you believe the bank was careless, gullible,

17   or even negligent.

18             Finally, in order to establish the existence of a

19   scheme, the government is not required to establish that the

20   defendant himself started the scheme to defraud; it's

21   sufficient if you find that a scheme to defraud existed, even

22   if initiated by another.

23             If you find that the government has sustained its

24   burden of proof that a scheme to defraud a bank or to obtain

25   money by false pretenses did exist as charged, you next should

1    consider the second element.

2              I'm about to turn now to the second element.

3              The second element that the government must establish

4    beyond a reasonable doubt is that the defendant executed or

5    attempted to execute the scheme knowingly, willfully, and with

6    the intent to defraud the bank or to obtain money or property

7    owned by the bank or under the bank's custody or control.

8              A person acts knowingly when he acts voluntarily and

9    deliberately, rather than mistakenly or inadvertently.  A

10   person acts willfully when he acts knowingly and purposely,

11   with an intent to do something the law forbids, that is to say,

12   with a bad purpose either to disobey or disregard the law.

13   It's not necessary that the defendant knew that he was

14   violating a particular law; it is enough if you find that he

15   was aware that what he was doing was, in general, unlawful.

16             To act with the intent to defraud means to act

17   knowingly and with a specific intent to deceive for the purpose

18   of causing some financial loss to another.

19             The question of whether a person acted knowingly,

20   willfully, and with intent to defraud is a question of fact for

21   you to determine, like any other question of fact.  Direct

22   proof of knowledge and fraudulent intent is almost never

23   available.  It would be a rare case where it could be shown

24   that a person wrote or stated that as of a given time in the

25   past, he committed an act with fraudulent intent.  Such direct

1   proof is not required.

2          Accordingly, the ultimate facts of knowledge and

3   criminal intent may be established by circumstantial evidence,

4   based on a person's outward manifestations, his words, his

5   conduct, his acts, all the surrounding circumstances disclosed

6   by the evidence, and the rational or logical inferences that

7   may be drawn from the evidence.  Use your common sense.  But

8   regardless of whether you look to direct evidence,

9   circumstantial evidence, or a combination thereof, the

10  government must establish the essential elements of the crime

11  charged beyond a reasonable doubt, including the requisite

12  mental states.

13         The government must prove beyond a reasonable doubt

14  that the defendant participated in the alleged scheme with an

15  understanding of its fraudulent or deceptive character and with

16  the intent to help it succeed.  There are certain things the

17  government need not prove in order to meet that burden.  It

18  need not prove that the defendant participated in or even knew

19  about all operations of the scheme.

20         It need not prove that the defendant originated the

21  scheme or participated in it from its inception, since a person

22  who participates in a scheme -- even after it begins -- is just

23  as guilty as those who participated from the beginning, as long

24  as he becomes aware of the scheme's general purpose and

25  operation and acts intentionally to further its unlawful goal

K1SVTEM2                    Charge

1    or goals.  It need not prove that the defendant participated in

2    the scheme to the same degree as other participants.  And

3    finally, the government need not prove actual or potential loss

4    to the bank, so long as there's evidence that the defendant

5    intended to expose the bank to such loss.

6            Turning to the third element.

7            The third and final element that the government must

8    prove beyond a reasonable doubt is that the bank that was the

9    subject of the defendant's scheme or artifice was a

10   federally-insured financial institution.  This simply means

11   that the bank's deposits had to be insured by the Federal

12   Deposit Insurance Corporation.  The government need not show

13   that the defendant knew that the bank in question was federally

14   insured to establish -- excuse me, to satisfy this first --

15   this third element; it must prove, however, that the defendant

16   intended to defraud a financial institution.

17           Now, the bank fraud statute prohibits not only

18   successfully defrauding a financial institution, but also

19   attempting, which means trying to do so.  And thus, the

20   government is required to prove only that the defendant

21   attempted or tried to execute the alleged scheme or artifice.

22   There is no need for the government to prove that the defendant

23   was successful in this endeavor.

24           In order to prove that the defendant attempted bank

25   fraud or wire fraud, the -- excuse me, bank fraud, the evidence

1  must show beyond a reasonable doubt that, (1) the defendant

2  intended to commit the bank fraud; and (2) the defendant

3  willfully took some action that was a substantial step in an

4  effort to bring about or accomplish the crime.  Mere intention

5  to commit a specific crime does not amount to an attempt.  In

6  order to convict the defendant of an attempt, you must find

7  beyond a reasonable doubt both that he intended to commit the

8  crime of bank fraud, and that he took some action that was a

9  substantial step towards the commission of that crime.

10         Merely preparing to commit a crime is not the same

11  thing as taking a substantial step towards the commission of

12  the crime.  The defendant must go beyond simply preparing and

13  perform an act that confirms his intention to execute the

14  scheme.  The government does not have to prove that the

15  defendant did everything except take the last step necessary to

16  complete the scheme; any substantial step beyond mere

17  preparation is enough.

18         That concludes my discussion of bank fraud.

19         In a moment, I'm going to turn to Counts Three and

20  Four, which charge the offense of wire fraud.

21         All right.  I'm now going to turn to Counts Three and

22  Four, both of which charge the defendant with wire fraud, in

23  violation of Title 18, United States Code, Section 1343.

24         Count Three charges the defendant with a wire fraud

25  scheme in connection with the deposit in April 2019 of the 27

K1SVTEM2                     Charge

checks which are the subject of Count One, allegedly by

creating, and then making the false pretense and representation

to the bank that the defendant had the account holders'

authorization to deposit those checks.

       Count Three charges -- and again, I'm reading from the

indictment -- that -- and I'm quoting:  "From at least in or

about April 2019, up to and including at least in or about June

2019, in the Southern District of New York and elsewhere, Ari

Teman, the defendant, willfully and knowingly, having devised

and intending to devise a scheme and artifice to defraud, and

for obtaining money and property by means of false and

fraudulent pretenses, representations, and promises, did

transmit and cause to be transmitted by means of wire, radio,

and television communication in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds, for

the purpose of executing such scheme and artifice, to wit,

Teman deposited counterfeit checks, drawing funds from accounts

belonging to 'Entity 1,' 'Entity 2,' and 'Entity 3,' and

subsequently attempted to and did use those funds for his

personal benefit and, in furtherance of such a scheme, caused a

wire communication to be sent."

       Count Four charges the defendant with a wire fraud

scheme in connection with a deposit in March 2019 of the two

checks which are the subject of Count Two, allegedly by

creating, and then making the false pretense and representation

K1SVTEM2                         Charge

1    to the bank that the defendant had the account holders'

2    authorization to deposit those checks.

3           Count Four charges -- and again, I'm reading from the

4    indictment -- that, and I quote:  "In or about March 2019, in

5    the Southern District of New York and elsewhere, Ari Teman, the

6    defendant, willfully and knowingly, having devised and

7    intending to devise a scheme and artifice to defraud, and for

8    obtaining money and property by means of false and fraudulent

9    pretenses, representations, and promises, did transmit and

10   caused to be transmitted by means of wire, radio, and

11   television communication, in interstate or foreign commerce,

12   writings, signs, signals, pictures, and sounds, for the purpose

13   of executing such scheme and artifice, to wit, Teman deposited

14   counterfeit checks, drawing funds from accounts belonging to

15   Entity 3 and Entity 4, and subsequently attempted to and did

16   use those funds for his personal benefit and, in furtherance of

17   such a scheme, caused a wire communication to be sent."

18          Earlier -- I'm done quoting.

19          Earlier, I instructed you about who the terms "Entity

20   1," "Entity 2," "Entity 3," and "Entity 4," as used in Counts

21   One and Two, refer to.  Those instructions equally apply to

22   Counts Three and Four.

23          I'm now going to turn to the elements of wire fraud.

24          In order to prove the defendant guilty of wire fraud

25   in both Counts Three and Four, the government must establish

K1SVTEM2                          Charge

1   each of the following three elements beyond a reasonable doubt:

2           First, that there was a scheme or artifice to defraud

3   or to obtain money or property by materially false or

4   fraudulent pretenses, representations, or promises.

5           Second, that the defendant knowingly and willfully

6   devised or participated in the scheme or artifice to defraud,

7   with knowledge of the fraudulent nature of the scheme, and with

8   a specific intent to defraud.

9           And third, in execution of that scheme, the defendant

10  used or caused others to use interstate or foreign wires as

11  specified in the indictment.

12          My instructions as to Counts One and Two related to

13  bank fraud cover a number of the concepts relevant to Counts

14  Three and Four; and so my instructions as to Counts Three and

15  Four will be brief.

16          The first element that the government must prove

17  beyond a reasonable doubt is that there was a scheme to defraud

18  or obtain money or property.  I've already instructed you in

19  connection with Counts One and Two what it means to employ a

20  scheme or artifice to defraud.  Those instructions apply here

21  as well.

22          The scheme that the government alleges in Count Three

23  is the same scheme involving the defendant's depositing of 27

24  checks in April 2019, which is the subject of Count One.  To

25  find the first element as to Count Three, you must therefore

1    find that the scheme had as an object the use of the funds from

2    these checks for the defendant's personal benefit.

3          And similarly, the scheme the government alleges in

4    Count Four is the same scheme involving the defendant's

5    depositing of two checks in March 2019, which is the subject of

6    Count Two.  To find the first element as to Count Four, you

7    must therefore find that the scheme had as an object the use of

8    the funds from these checks for the defendant's personal

9    benefit.

10          Turning to the second element.

11          The second element that the government must prove

12   beyond a reasonable doubt is that the defendant devised or

13   participated in the scheme knowingly, willfully, and with a

14   specific intent to defraud.  I've already defined for you

15   "knowingly," "willfully," and "with a specific intent to

16   defraud."  My earlier instructions apply here as well.  I'm

17   going to quickly define a few additional terms as to this

18   element.

19          To "devise" a scheme to defraud is to concoct or plan

20   it.  To "participate" in the scheme to defraud means to

21   associate oneself with it with the intent of making it succeed.

22          And the third and final element of the wire fraud

23   charge that the government must establish beyond a reasonable

24   doubt is that interstate or foreign wires were used in

25   furtherance of the scheme to defraud.

1      So "wires" includes telephone calls, faxes, email,

2  internet, radio, or television communications.  The use of the

3  wires must have been between states or between the United

4  States and another country.  The wire communication must pass

5  between two or more states as, for example, a telephone call

6  between New York and New Jersey; or it must pass between the

7  United States and a foreign country, such as a telephone call

8  between New York and London.  The government is not required,

9  however, to prove that the defendant knew or could foresee the

10  interstate or international nature of the wire communication.

11      The use of the wires need not itself be fraudulent.

12  Stated another way, the communication need not contain any

13  fraudulent representation.  To be in furtherance of the scheme,

14  the wire communication must be incident to an essential part of

15  the scheme to defraud and must have been caused by the

16  defendant.  It is sufficient if the wires were used to further

17  or assist in carrying out the scheme to defraud or the scheme

18  to obtain money by means of false representations.

19      It is not necessary for the defendant to be

20  personally -- to be directly or personally involved in any wire

21  communication, so long as the communication is reasonably

22  foreseeable in the execution of the alleged scheme to defraud

23  in which the defendant is accused of participating.  In this

24  regard, it's sufficient to establish this element of the crime

25  if the evidence justifies a finding that the defendant caused

1    the wires to be used by others.  This doesn't mean that the

2    defendant must have specifically authorized others to execute a

3    wire communication; rather, that when one does an act with

4    knowledge that the use of the wires will follow in the ordinary

5    course of business, or when such use of the wires can

6    reasonably be foreseen -- even if not actually intended -- then

7    he causes the wires to be used.

8           The government must prove beyond a reasonable doubt

9    the particular use of the wires on which the indictment is

10   based.  And here, the wire fraud counts are based on wire

11   communications related to the defendant's depositing of the

12   alleged counterfeit checks.  To convict the defendant on Counts

13   Three and Four, you must unanimously agree on a particular one

14   of these wires, and that it was in furtherance of the charged

15   wire fraud scheme.

16          However, the government does not have to prove that

17   the wire was used on the exact date charged; it's sufficient if

18   the evidence establishes beyond a reasonable doubt that the

19   wires were used on a date reasonably near the date or dates

20   alleged.

21          All right.  That concludes my review of the elements

22   of wire fraud.  I have a few final substantive instructions

23   that are not particular to a specific count.  The first relates

24   to the requirement that the jury's verdict be unanimous.

25          Each of the four counts in the indictment charges the

K1SVTEM2                    Charge

1    defendant with an offense -- either bank fraud or wire fraud --

2    involving multiple checks drawn on the accounts of multiple

3    entities.  And thus, Counts One and Three allege these

4    respective offenses in connection with the defendant's alleged

5    deposit of 27 checks, each drawn on the account of one of three

6    entities:  ABJ Milano LLC, ABJ Lenox LLC, and 518 West 204 LLC.

7    And Counts Two and Four allege these respective offenses in

8    connection with the defendant's alleged deposit of two checks:

9    One drawn on the account of 518 West 204 LLC, and the other

10   drawn on the account of 18 Mercer Equity, Inc.

11           As to each count, I instruct you that the government

12   need not prove and you need not find that the elements of the

13   offense in question have been met with respect to each of the

14   checks or each of the entities to which that count relates.

15   However, to convict the defendant of a particular count, you

16   must unanimously agree that the elements of the offense in

17   question have been established beyond a reasonable doubt with

18   respect to at least one entity to which that count relates.

19           So, for example, on Count Two, you may not return a

20   verdict of guilty unless you unanimously agree that the

21   elements of bank fraud have been established with respect to

22   one of these two entities:  518 West 204 LLC, or 18 Mercer,

23   Inc. to which that count relates.

24           If half of the jury found the elements of bank fraud

25   had been established with respect to the check drawn on the

1    account of 518 West 204 LLC, and the other half of the jury

2    found the elements of bank fraud had been established with

3    respect to 18 Mercer, Inc., but the jury was not in unanimous

4    agreement as to one entity, you could not return a verdict of

5    guilty.

6             Next, let me turn to good faith.

7             An essential element of the crimes of bank fraud and

8    wire fraud, as charged in Counts One through Four of the

9    indictment, is intent to defraud.  It follows that good faith

10   on the part of the defendant is an absolute defense to a charge

11   of fraud.  The burden of establishing lack of good faith and

12   criminal intent rests upon the prosecution.  A defendant is

13   under no burden to prove his good faith; rather, the government

14   must prove bad faith or knowledge of falsity beyond a

15   reasonable doubt.

16            Under the bank fraud and wire fraud statutes, even

17   false representations or statements or omissions of material

18   fact do not amount to a fraud unless done with fraudulent

19   intent.  However, misleading or deceptive a plan may be, it is

20   not fraudulent if it was devised or carried out in good faith.

21   If the defendant believed in good faith that he was acting

22   properly -- even if he was mistaken in that belief, and even if

23   others were injured by his conduct -- there is no crime.

24            A venture commenced in good faith may become

25   fraudulent if it is continued after a fraudulent intent has

K1SVTEM2                          Charge

been formed; and therefore, good faith is no defense when the

defendant first made representations in good faith, but later,

during the time charged in the indictment, the defendant

realized that the representations were false and nevertheless

deliberately continued to make them.

          You must review and put together all of the

circumstances in deciding whether or not it has been

established beyond a reasonable doubt that the defendant

devised or participated in a scheme to defraud knowingly,

willfully, and with the intent to defraud, or whether he acted

in good faith.

          There is a final consideration to bear in mind in

deciding whether or not the defendant acted in good faith.  You

are instructed that if the defendant participated in the scheme

to defraud, then a belief by the defendant -- if such a belief

existed -- that ultimately everything would work out so that no

one would lose any money, does not require a finding by you

that he acted in good faith.  If the defendant participated in

the scheme for the purpose of causing financial or property

loss to another, then no amount of honest belief on the part of

the defendant that the scheme will cause ultimately a profit or

cause no harm will excuse fraudulent actions or fraudulent

representations by him.

          Now let's turn to advice of counsel.

          You've heard evidence that the defendant consulted

with a lawyer, Ariel Reinitz.  You may consider that evidence

in deciding whether the defendant acted knowingly, willfully,

and with a specific intent to defraud.

The mere fact that the defendant may have received

legal advice does not in itself necessarily constitute a

complete defense to the charges of bank fraud and wire fraud.

Instead, you must ask yourself whether the defendant honestly

and in good faith sought the advice of a competent lawyer as to

what he may lawfully do, whether he fully and honestly laid all

the facts before his lawyer, and whether in good faith he

honestly followed such advice, relying on it and believing it

to be correct.

In short, you should consider whether, in seeking and

obtaining advice from a lawyer, the defendant intended that his

acts shall be lawful.  If he did so, it is the law that a

defendant cannot be convicted of a crime that involves willful

and unlawful intent, even if such advice were an inaccurate

construction of the law.

On the other hand, no man can willfully and knowingly

violate the law and excuse himself from the consequences of his

conduct by pleading that he followed the advice of his lawyer.

Whether the defendant acted in good faith for the purpose of

seeking guidance as to the specific acts in this case, and

whether he made a full and complete report to his lawyer, and

whether he acted substantially in accordance with the advice

1   received are questions for you to determine.

2           Let's talk now about a concept called "conscious

3   avoidance."

4           I told you earlier that the defendant must have acted

5   knowingly, as I have defined that term, in order to be

6   convicted.  That is true with respect to all four counts

7   charged in the indictment.  In determining whether the

8   defendant acted knowingly, you may consider whether the

9   defendant closed his eyes to what would otherwise have been

10  obvious to him.  That is what the phrase "conscious avoidance"

11  refers to.

12          As I've told you before, acts done knowingly must be a

13  product of a person's conscious intention; they cannot be the

14  product of carelessness, negligence, or foolishness.  But a

15  person may not intentionally remain ignorant of a fact that is

16  material and important to his conduct in order to escape the

17  consequences of the criminal law.

18          Here, the government argues that the defendant

19  consciously avoided material information insofar as he did not

20  invoice or otherwise notify his customers in advance of his

21  drawing and depositing checks on their accounts in March and

22  April 2019 of his claim that they owed his business money in

23  the amounts reflected on those checks.  The government alleges

24  that the defendant was thereby closing his eyes to the fact

25  that the customers did not approve and would not have approved

K1SVTEM2                         Charge

1    those charges.

2              The defendant disputes that he consciously avoided

3    learning such information.  He argues that he believed in good

4    faith, based on his communications with his customers and his

5    understanding of communications he believed his attorney had

6    had with his customers, that the customers had given him

7    advance approve for these charges, and also advance approval to

8    remotely create checks on their accounts as a means of paying

9    the debts that they owed him.

10             As to this point, I instruct you as follows:  An

11   argument by the government of conscious avoidance is not a

12   substitute for proof of knowledge; it's simply another factor

13   that you, the jury, may consider in deciding what the defendant

14   knew.  Thus, if you find beyond a reasonable doubt that the

15   defendant was aware that there was a high probability that a

16   fact was so, but that the defendant deliberately avoided

17   confirming that fact, such as by purposely closing his eyes to

18   it or intentionally failing to investigate it, then you may

19   treat this deliberate avoidance of positive knowledge as the

20   equivalent of knowledge.

21             In sum, if you find that the defendant believed there

22   was a high probability that a fact was so, and that the

23   defendant deliberately and consciously avoided learning the

24   truth of that fact, you may find that the defendant acted

25   knowingly with respect to that fact.  However, if you find that

K1SVTEM2                    Charge

1    the defendant actually believed the fact was not so, then you

2    may not find that he acted knowingly with respect to that fact.

3    You must judge all of the circumstances and all of the proof

4    whether the government did or did not satisfy its burden of

5    proof beyond a reasonable doubt.

6         Now, switching gears.  Variances in dates and amounts,

7    that's the next topic header here.

8         The indictment refers to a range of dates and monetary

9    amounts.  I instruct you that it does not matter if a specific

10   event is alleged to have occurred on or about a certain date,

11   but the testimony indicates that it, in fact, was a different

12   date.  And likewise, it doesn't matter if a transaction is

13   alleged to have involved a certain amount of money, but the

14   testimony indicates that it was a different amount of money.

15   The law only requires a substantial similarity between the

16   dates and amounts alleged in the indictment and the dates and

17   amounts established by the evidence.

18        You've heard testimony that the defendant made

19   statements in which he claimed that his conduct was consistent

20   with innocence and not with guilt.  The government claims that

21   these statements in which the defendant exculpated himself are

22   false.  The defendant disputes this.

23        If you find that the defendant gave a false statement

24   in order to divert suspicion from himself, you may infer -- but

25   you are not required to infer -- that the defendant believed

K1SVTEM2                        Charge

1    that he was guilty.  You may not, however, infer on the basis

2    of this alone that the defendant is, in fact, guilty of the

3    crimes for which he is charged.  Whether or not the evidence as

4    to the defendant's statements shows that the defendant believed

5    he was guilty, and the significance, if any, to be attached to

6    any such evidence, are matters for you, the jury, to decide.

7            One moment.

8            We're nearly done.

9            All right.  Turning now to the concept of venue.

10           In addition to the elements that I've described, in

11   order to convict on each charged offense, you must decide

12   whether the crime occurred within the Southern District of New

13   York.  The Southern District of New York includes Manhattan,

14   the Bronx, Westchester County, as well as some other areas.

15           In this regard, the government need not prove that the

16   crime was committed in its entirety in this district or that

17   the defendant himself was present here.  It's sufficient to

18   satisfy this element if any act in furtherance of the crime

19   occurred in this district.  The act itself may not be a

20   criminal act; it could include, for example, executing a

21   financial transaction within this district.  And the act need

22   not have been taken by the defendant, so long as the act was

23   part of the crime that you find the defendant committed.

24           I should note that on this issue -- and this issue

25   alone -- the government need not offer proof beyond a

K1SVTEM2                          Charge

1   reasonable doubt.  Venue need be proven only by a preponderance

2   of the evidence.  The government has satisfied its venue

3   obligations, therefore, if you conclude that it's more likely

4   than not that the crime occurred within this district.  If you

5   find that the government has failed to prove this venue

6   requirement, you must acquit the defendant of these charges.

7           That concludes Section 2.  And the last and third

8   section of my instructions is, by far, the shortest, and it

9   just refers to the -- deals with the mechanics of jury

10  deliberations.

11          I'm going to stretch my legs.  You're at liberty to

12  follow suit or not.

13          (Pause)

14          THE COURT:  All right.  Ladies and gentlemen, that

15  concludes the substantive portion of my instructions to you.

16          You are about to go into the jury room and begin your

17  deliberations.

18          If during those deliberations you want to see any of

19  the exhibits, you may request that they be brought into the

20  jury room.  If you want any of the testimony read, you may also

21  request that.  Please remember that it's not always easy to

22  locate what you might want, and so please be as specific as you

23  possibly can in requesting exhibits or portions of the

24  testimony.  And please be patient.

25          With respect to requests for testimony, it can

sometimes take counsel and the Court some time going through

the transcript to identify the portions that are responsive to

your request.  If you want any further explanation of the law

as I have explained it to you, you may also request that.

            Now, to assist you in your deliberations, I'm

providing you with a rather ample care package.  I'm giving you

in here -- and there's basically a folder of 12 copies of each

of the following things, so that everyone is on equal footing

in the jury room:  I'm giving you a list of witnesses in the

order in which they testified; a list of exhibits, with a short

neutral description of what each exhibit is by exhibit number.

I think it also lists the witness who was the first to

authenticate or through whose testimony that exhibit was

admitted.  A verdict form, which I'll discuss in a moment.  And

a copy of these instructions.  Again, there's one for each

juror.  I'm also providing you with a copy of the indictment.

But, again, I remind you that an indictment is not evidence.

            Now, communications with the Court.

            Your requests for exhibits or testimony -- in fact,

any communications with the Court -- should be made to me in

writing, signed by your foreperson -- I'll get to that in a

moment -- and given to one of the marshals.  In any event, do

not tell me or anyone else how the jury stands on any issue

until a unanimous verdict has been requested.

            Notes.  Some of you -- many of you -- have taken notes

K1SVTEM2                          Charge

 1    periodically throughout this trial.  I want to emphasize, as I

 2    did at the start of the trial, that as you're about to begin

 3    your deliberations, notes are simply an aid to memory.  Notes

 4    that any of you may have made may not be given any greater

 5    weight or influence than the recollections or impressions of

 6    other jurors -- whether from notes or memory -- with respect to

 7    the evidence presented or what conclusions, if any, should be

 8    drawn from such evidence.  All jurors' recollections are equal.

 9    Here's the key thing:  If you can't agree on what you remember

10    the testimony to have been, you can ask to have the transcript

11    read back.

12            You will now retire in a moment to decide this case.

13    Your function is to weigh the evidence in this case and to

14    determine the guilt or lack of guilt of the defendant with

15    respect to the count charged in the indictment.  You must base

16    your verdict solely on the evidence and these instructions as

17    to the law.  And you are obliged on your oath as jurors to

18    follow the law as I instruct you, whether you agree or disagree

19    with a particular law in question.

20            It is your duty as jurors to consult with one another

21    and to deliberate with a view towards reaching an agreement.

22    Each of you must decide the case for himself or herself, but

23    you should do so only after a consideration of the case with

24    your fellow jurors, and you should not hesitate to change an

25    opinion when convinced that it is erroneous.  Discuss and weigh

your respective opinions dispassionately, without regard to
sympathy, without regard to prejudice, or favor for either
party, and adopt that conclusion which, in your good
conscience, appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be
present in the jury room.  If a juror is absent, you must stop
deliberations.

Again, your verdict must be unanimous; but you are not
bound to surrender your honest convictions concerning the
effect or weight of the evidence for the mere purpose of
returning a verdict or solely because of the opinion of other
jurors.  Each of you must make your own decision about the
proper outcome of this case based on your consideration of the
evidence and your discussion with your fellow jurors.  No juror
should surrender his or her conscientious beliefs solely for
the purpose of returning a unanimous verdict.

Remember, at all times you are not partisans; you are
judges.  You are judges of the facts.  Your sole interest is to
seek the truth from the evidence in the case.

If you are divided, do not report how the vote stands.
If you reach a verdict, do not report what it is until you are
asked in open court.

Now, I've prepared a verdict form for you to use in
guiding your deliberation and recording your decision.  Please
use that form to record your verdict.

1          And finally, I referred a moment ago to a foreperson.

2     The first thing you should do when you retire to deliberate is

3     to take a vote to select one of you to sit as your foreperson,

4     and then send out a note to me indicating whom you have chosen.

5          The foreperson does not have any more power or

6     authority than any other juror; and his or her vote or opinion

7     doesn't count for any more than any other juror's vote or

8     opinion.  The foreperson is merely your spokesperson to the

9     Court.  He or she will send out any notes.  And when the jury

10    has reached a verdict, he or she will notify the marshal that

11    the jury has reached a verdict, and you will come into open

12    court and, prompted by me, give that verdict.

13         As to the return of the verdict, after you have

14    reached a verdict, your foreperson will fill in and date the

15    form that has been given to you.  All jurors must sign the form

16    reflecting each juror's agreement with the verdict.  The

17    foreperson should then advise the marshal outside your door

18    that you are ready to return to the courtroom.

19         I will stress that each of you must be in agreement

20    with the verdict which is announced in court.  Once your

21    verdict is announced by your foreperson in open court and

22    officially recorded, it cannot ordinarily be revoked.

23         In conclusion, ladies and gentlemen, I am sure that if

24    you listen to the views of your fellow jurors and if you apply

25    your own common sense, you will reach a fair verdict here.

K1SVTEM2                    Charge

1          Members of the jury, that concludes my instructions to

2     you.  I'm going to ask you to remain seated while I see a show

3     of hands from the attorneys to see if there are any additional

4     instructions they want me to have you -- me give to you or if I

5     inadvertently left something out or failed to cover.

6          Show of hands, anyone have anything to take up at the

7     sidebar?  Yes?  All right.  Counsel, I'll see you at the

8     sidebar.

9          (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            (At the sidebar)

2            THE COURT:  Mr. Imperatore?

3            MR. IMPERATORE:  I believe the Court may have

4    misspoken on page 37, paragraph B at the top, fourth line down,

5    the typewritten text uses the word "reached".  I heard your

6    Honor say "requested" instead of "reached".  Very minor.

7            THE COURT:  Very good.

8            Anything from you?

9            MR. GELFAND:  Your Honor, the Court read the

10   instruction correctly but the one that goes back to the jury

11   should -- it's on page 25.

12           THE COURT:  Yes, I'll correct that.

13           (In open court)

14           THE COURT:  Ladies and gentlemen, I have two very

15   small things just to draw your attention.

16           One is that a moment or two ago I misspoke.  The

17   following sentence at the top of page 37 of my instruction

18   reads as follows:  "In any event, do not tell me or anyone else

19   how the jury stands on any issue until after a unanimous

20   verdict is reached."  Counsel advised me I inadvertently said

21   the word "requested" instead of "reached".  The word "reached"

22   is what I wrote and meant to say.

23           The other thing is that simply due to an error on my

24   part, on page 25, under the subheadline of attempt, a sentence

25   begins "In order to prove that the defendant attempted bank

1   fraud or wire fraud..."  When I spoke to you I omitted the word

2   "or prior fraud" because it wasn't supposed to be here.  That's

3   part of the bank fraud instruction.  When you see that on page

4   25, ignore the three words "or wire fraud".

5        All right.  One moment.  Before you retire to the jury

6   room, I must excuse our two alternates, with the great thanks

7   of the Court.  You two, like everybody else, have been

8   extremely attentive and patient, and I am in your debt, as we

9   all are.  I am sorry that you will miss the experience of

10  deliberating the jury, but the law provides for a jury of 12

11  persons in this case, so before the rest of the jury retires

12  into the jury room, I'm going to ask you if you have any

13  clothing or objects there, to promptly go to the jury room and

14  pick those up and then withdraw at that point.  After I have

15  sworn our marshal, the rest of the jury will then enter the

16  jury room to begin deliberations.

17       Alternates, I have this important instruction to give:

18  Please, do not discuss the case with anyone or research the

19  case over the next few days.  The same instructions that have

20  guided you throughout the trial need to continue to guide you,

21  and here is why:  It is possible -- and I have actually had

22  this occur in a trial -- that unexpected developments such as

23  deliberating juror's serious illness may require the

24  substitution of the deliberating juror by an alternate, and so

25  it's vital that you not speak to anybody about the case, or

K1S7TEM3

1    research the case, or do anything that would compromise your

2    service, until you have been notified that the jury's

3    deliberations are over and the jury has been excused.  If you

4    would like to be advised of the outcome of the trial, please be

5    sure that Mr. Smallman has a phone number to reach you.  He is

6    going to ask you for your contact information.  In the unlikely

7    circumstance that we need to bring you back, Mr. Smallman will

8    need to reach you and reel you back in here.  So with that you

9    have our thanks.  Mr. Smallman is going to bring the two of you

10   into the jury room.  As soon as he has told me that you are out

11   of the jury room, ladies and gentlemen, you will go back.

12         While we're doing that, let me swear in our marshal.

13   Marshal, please come forward.  Good morning.

14         (Marshal sworn)

15         THE COURT:  Ladies and gentlemen, just as to the

16   schedule for today, lunch will appear, and I am assuming it

17   will be in the 12:30 to 1 range.  You are not obliged to still

18   be deliberating at lunch.  It's there if you are still

19   deliberating.  Similarly, the usual afternoon snack will also

20   appear.  Mr. Smallman is on that too, and that will be in the

21   2:30 to 3 range.  Again, I make no presumption that you will be

22   or won't be deliberating then, but I simply order food for you

23   so that it's there.

24         If you are still deliberating at 5 o'clock, I will

25   bring you out to wish you well and say good night to you, and

K1S7TEM3

1      then you will resume your deliberations tomorrow beginning at

2      the same time that we have always started.  So, that's our

3      schedule for today.

4              Mr. Smallman, I have sworn the marshal.  May I ask you

5      to come forward, and I can give you their care package.

6              Again, your first order or business is to choose a

7      foreman.  Thank you.  You may now discuss the case.

8              (Jury retires to begin deliberations at 11:02 a.m.)

9              THE COURT:  Be seated.  Thank you, counsel, for being

10     active readers and catching both of those glitches.  Beginning

11     with the government, anything to raise?

12             MR. BHATIA:  Nothing, your Honor.

13             THE COURT:  Defense?

14             MR. GELFAND:  No, your Honor.

15             THE COURT:  Stay close.  I expect we will have a note

16     both about the foreperson very soon and soon enough asking for

17     certain exhibits.  Mr. Smallman will alert me as soon as we

18     have any notes.  All right.  Thank you.  I will see you all

19     soon.

20             (Time noted 12:07 p.m.; jury not present)

21             THE COURT:  All right.  Welcome back, everyone.  We

22     have two notes from the jury.  The first, which Mr. Smallman

23     has marked as jury note 1, reads "Foreman," and then it gives

24     the name of the person we understand to be Juror 2.  And then

25     Juror Note 2 simply reads "Exhibits," and then it lists a

K1S7TEM3

1   number of exhibits.  I am going to read them out slowly, and

2   then counsel will let me know whether there are any special

3   complications with respect to any of them.  Here they are in

4   the order as listed:  113, 114, 147, 201, 202, 409C, 441, 442

5   and 443."  Then it says "all 700 series" and then it says "D2".

6        Now, all of those except for 113 are recognizable to

7   me as a short documentary exhibit.  Is 113 an electronic

8   document?

9        MR. BHATIA:  Yes, it's the electronic spreadsheet.

10       THE COURT:  So is the right answer then to promptly

11  pull together a set for each of the other exhibits of three,

12  let us say, I will have them up here, and I will bring the jury

13  in and you will put up on the screen 113, and I will explain to

14  them that that is accessible only electronically, but that the

15  others Mr. Smallman will be handing them?  Is that the right

16  way to do this?

17       MR. BHATIA:  Your Honor, we have prepared the sets of

18  three for the hard copy exhibits and those can go back.  For

19  113 we have a laptop that's available that is clean and it

20  can't access the Internet that we can send back with 113 on it.

21       THE COURT:  You've got a clean laptop that has nothing

22  on it except for 113?

23       MR. BHATIA:  That's right.

24       THE COURT:  How did you manage that?

25       MR. BHATIA:  We had prepared for the possibility of

K1S7TEM3

1    sending back --

2              THE COURT:  Right.  But I want to make sure if we're

3    sending them a laptop it's tailored only to the exhibit that

4    they have requested that can't be accessed in hard copy.  So it

5    only has one 113 on it?

6              MR. BHATIA:  One moment.  I think it only has 113, but

7    let me talk to Mr. Magliocco for a moment.

8              THE COURT:  Yes, thank you.

9              MR. BHATIA:  Your Honor, so there is no content on

10   this laptop.  113 is actually on a disk, and we have provided

11   the disk in the laptop, and it can't access anything.

12             THE COURT:  So, in other words, they can play with it

13   in the jury room without having to come out to court each time

14   they want to look at it.

15             MR. BHATIA:  That's right.

16             THE COURT:  Have you shown the laptop yet to the

17   defense?

18             MR. BHATIA:  We have not, your Honor.

19             THE COURT:  Do you have the other exhibits handy?

20             MR. BHATIA:  We do.

21             THE COURT:  Why don't we take a five minute recess.

22   Why don't you do a show-and-tell with the defense, because

23   before I send back the laptop, I want to make sure they have

24   seen the disk, seen the laptop, have confirmed comfortably

25   themselves that there is no risk of any mischief or something

K1S7TEM3

1    like that. I just want to do a double check.  Assuming that

2    that works, defense counsel, is that a workable approach from

3    your perspective?

4                MR. GELFAND:  Yes.

5                THE COURT:  I will be back in five minutes.  Have a

6    folder for me with triplicate.  In other words, have a set of

7    three of each of the others ones, and have shown the defense

8    the laptop and the disk's operation, and give me a few words

9    that I can use when I bring the jury out.

10               Ordinarily, I wouldn't bring the jury out to hand them

11   exhibits, but because there is a laptop, I want to be careful

12   and take a moment to explain what is going on, so give me a few

13   words I can use to make sure that I've adequately explained

14   what they need to do to operate it.  Thank you.  I'll be back

15   in five minutes.

16               (Recess)

17               THE COURT:  All right.  Defense, have you had a chance

18   to look at the laptop?

19               MR. GELFAND:  We have, your Honor.  And the laptop is

20   not clean.  It has a number of files; it has and audio MP3

21   file; it has references to other files that appear to either be

22   unable to be opened or perhaps need some other opening.  So, we

23   are not comfortable with that laptop.

24               THE COURT:  Government, is that correct?

25               MR. BHATIA:  Your Honor, we have removed all the

K1S7TEM3

1   references to the other files, and there is no audio file on

2   the drive anymore.  We were going to show it to defense

3   counsel.

4           THE COURT:  Why don't you show it as amended to

5   defense counsel.

6           (Pause)

7           MR. GELFAND:  Unless I'm misunderstanding, apparently

8   it's not removed.

9           THE COURT:  All right.  I don't want to waste the

10  jury's time while we're fixing this.  It seems to me that it

11  probably makes the most sense to bring them out here and to put

12  up 113 on the screen for now and hand them the other exhibits

13  and, if there is a renewed request for it, tell them that we

14  can try to arrange to have a laptop that is cleared of

15  everything but that.  At least that way they will get a prompt

16  answer from us.

17          MR. BHATIA:  That's right.  And in the interim we will

18  get a laptop in case they have that request.

19          THE COURT:  I think that will be all to the good.

20  Have you reviewed together the copies of these other exhibits,

21  and can you hand those up to me?

22          Government counsel, can Exhibit 113 be printed out?

23  Is there some reason it's uncapable of being printed out?

24          MR. BHATIA:  It's too voluminous lengthwise, so if you

25  print out one part of it, you can't see the other part of it.

K1S7TEM3

1          THE COURT:  Let me ask you as to the hard copies --

2     these are not in any order right now -- have you reviewed these

3     with the defense?

4          MR. BHATIA:  I have reviewed them.  I don't know if

5     defense counsel has.

6          THE COURT:  Counsel, for obvious reasons, before I

7     send something to the jury I want each side to sign off on it

8     to make sure it is what the jury has requested.  You have not

9     shown this to the defense, correct?

10          All right.  Show this to the defense.  Let's get it in

11     the order that the jury requested it, so there is no question

12     that the sorting is out of whack.  Once it's been blessed by

13     the defense, I will bring in the jury.

14          All right.  Have both sides looked at the printouts of

15     three copies of all exhibits other than 113?

16          MR. BHATIA:  Yes, your Honor.

17          MR. DIRUZZO:  Yes.

18          THE COURT:  And those are fine going to the jury?

19          MR. BHATIA:  Yes.

20          MR. DIRUZZO:  Yes.

21          THE COURT:  I will have Mr. Smallman bring out the

22     jury.  When I call on Mr. Magliocco, I will ask you to bring up

23     Exhibit 113.  I will explain it is by its nature not something

24     that reduces to a hard copy; they should look at it here and if

25     they want a further look at it we can arrange for a clean

K1S7TEM3

1   laptop to be sent in.

2          Anything else anyone wants me to say to the jury?

3          MR. GELFAND:  Just a question I have is just why 113

4   can't be printed?  I mean Excel can be printed wide.

5          THE COURT:  Mr. Bhatia?

6          MR. BHATIA:  We tried to print it out, your Honor, and

7   when we tried to print it out it affected the way the

8   spreadsheet looked.  Columns would get wider or smaller, they

9   would get longer.  We can try again, your Honor.

10          THE COURT:  Why don't you try.  For the time being I

11   will proceed in this fashion, but it hadn't at least appeared

12   to me to be on a scale that made it inherently unworkable.

13          Why don't you keep trying, but for the time being we

14   will bring in the jury.  But once the jury is gone, let's try

15   on two tracks to assist their review, both the clean laptop

16   track and to defense counsel's point see if we can get a

17   printout.

18          Mr. Smallman, let's get the jury.

19          (Jury present; time noted 12:27 p.m.)

20          THE COURT:  Welcome back, ladies and gentlemen.

21   Please be seated.  I have received your first two notes, the

22   first of which tells me that Juror 2 is your foreperson, the

23   second of which seeks certain exhibits.

24          With the exception of one exhibit, we're going to be

25   giving them to you in this folder.  There are three copies of

1  each of the exhibits you have sought.  The reason I bought you

2  out is that one of the exhibits, 113, at least at this point we

3  have not found a way to reproduce it in a hard paper copy.

4  It's a spreadsheet.  For the time being what we are going to do

5  it put it up on the screen so you can look at it on the screen.

6  If we get a note from you indicating you want to look at it in

7  a different way in the jury room, we are in the process of

8  getting a clean laptop and a disk, and you would then be able

9  to review it in the jury room on a clean laptop and a disk.  I

10  will wait to see if you so request, and if that's the case, we

11  will get it to you as soon as we possibly can in that format,

12  but I wanted to explain to you that that is what is going on.

13  In a moment Mr. Smallman will hand you this binder.

14          But for the time being though, Mr. Magliocco, would

15  you kindly put Exhibit 113 up on the jury screen.

16          Now, counsel, this is an Excel document.

17  Mr. Magliocco, could you just slowly page down to the next

18  page.  Keep going.  Why don't you stop there for a moment.

19          Why don't you, Mr. Magliocco, go do that again.  I

20  want the jury to see the full extent of the document.  I will

21  wait at that point for a jury note whether or not you need this

22  on a laptop or not, but I want the jury just to see the full

23  extent of the document.  Go ahead, Mr. Magliocco.

24          All right, I think I have seen enough to note that

25  this is a long document.

K1S7TEM3

1          Ladies and gentlemen, I don't want to have an

2     interaction with you; I'd prefer to do it in writing.

3          So, go back to the jury room.  If you want this on a

4     laptop, we will be as responsive as we possibly can.  I will

5     also look into whether there is some way of getting this data

6     prepared for you in a hard copy, but counsel advise me that may

7     be a hard ask.  So, it may be that the way you wind up

8     reviewing this is through a laptop and disk, in which case Mr.

9     Smallman will get it to you as soon as possible.

10         Mr. Smallman is handing you the binder.  Why don't you

11    return to the jury room.  Thank you.

12         (Jury resumes deliberations at 11:31 a.m.)

13         THE COURT:  It seems to me close to an inevitability

14    we're going to get a request for the laptop.  It became clear

15    as Mr. Magliocco began to scroll through the document that it's

16    a long spreadsheet and it was not particularly workable to ask

17    them en masse to be scanning it in court.  There is a lot of

18    small print, and it appears to go on for many, many different

19    lines.

20         So, government, let's really jump on the process of

21    getting a clean laptop with the disk and making sure the

22    defense is fine with it so that as soon as they ask I can take

23    a look at it and we can send it in.

24         MR. BHATIA:  We will, your Honor.  And upon looking at

25    the spreadsheet, I recall there are tabs along the bottom, and

1     if we printed this in hard copy they wouldn't be able to see

2     the tab numbers, so I think the only way to really respond to

3     this request is through the laptop.

4              THE COURT:  I'm all for doing it through the laptop.

5     You may be right that there are enough tabs that it would be

6     hard to print it out.  It's not inconceivable that if the

7     number of tabs is modest one could have a printout per tab.  In

8     any event, I would prefer if you tried to pursue this both

9     ways, but the laptop is apparently going to be the first one to

10    achieve success, so let me know as soon as that's ready.

11             MR. BHATIA:  We will.

12             THE COURT:  Thank you.

13             MR. DIRUZZO:  Your Honor, just so it's clear, I want

14    to make sure that the mode of the Excel file is protected so

15    that it can't be altered or changed by the members of the jury.

16    Because I use Excel a lot, and it's very easy to go in there

17    and accidentally mess up a formula, delete something when

18    you're not paying attention, and the next thing you know the

19    problem cascades throughout the entire Excel file.

20             THE COURT:  I took as a given that that would be so,

21    but, government, you obviously should check that.  I want to be

22    sure that we have functionality that doesn't exceed that which

23    was used in the case of the trial or that's necessary to

24    meaningfully review this.

25             MR. BHATIA:  Your Honor, let me speak to defense

1    counsel more about this.  I think we want to provide them the

2    file as we got it, as it's marked on the disk.  I'm not sure

3    about adding extra protections on cells that wouldn't let them

4    be altered.  I think it should be sent to them on the disk as

5    it was received into evidence.

6         THE COURT:  Does the disk -- what is important is that

7    the jury get the information that appears on the front of this

8    document or by clicking separate tabs.  It doesn't appear that

9    mathematical or sorting exercises are needed here.

10        I'm not going to resolve an abstraction.  Mr. DiRuzzo,

11   you should take a look at the laptop with the disk and let me

12   know if there is some functionality there that interferes --

13   that presents some problem.  If the parties can't solve it, I

14   will determine whether that's an issue.  OK?  It makes no sense

15   for me to resolve an abstraction.

16        MR. DIRUZZO:  OK.

17        THE COURT:  Very good.  So operating on the assumption

18   that we're likely to get a request, let's solve this problem

19   pronto; and as soon as we get a request, I will come back down.

20   Thank you.

21        (Time noted 12:36, jury not present)

22        THE COURT:  We have jury note 3 which reads "No

23   laptop.  Thank you."  So, man of few words.

24        So I think Mr. Magliocco can probably stand down.

25   Good news.  All right.  Thank you.

K1S7TEM3

1          Counsel, at 1:15 I will be taking a guilty plea here.

2     I will need to take up some preliminary business with counsel,

3     but eventually I will bring out the parties there.  All I will

4     need is about half of each table kept clear so that I can take

5     charge of that.  So just be mindful at 1:15 I will need a

6     little bit of free space here.  Thank you.

7          MR. DIRUZZO:  And, your Honor, while the jury is

8     deliberating, does counsel get like a set amount of time where

9     like if we're down at the cafeteria mid meal that we're excused

10    from coming up, so to speak?

11         THE COURT:  I need somebody here at all times.  I'm

12    happy for the others to go and eat.  Frankly, I'm OK with you

13    bringing food into the courtroom as long as you conceal it from

14    the jury coming out.  Just when the jury comes out, hide your

15    food.  I think that's your main way to deal with this problem.

16              (jury not present; time noted 1:20 p.m.)

17         THE COURT:  All right.  So in United States v. Teman,

18    we have had two more notes.  One of them was from an

19    unidentified juror simply asking "Can we step out for lunch?

20    Outside of the building?"  And I had Mr. Smallman convey

21    through the marshals regrettably no.

22         More important, we have the following note, jury note

23    5.  It reads "Exhibits" and then it lists the following five:

24    409, 409A, 409B, 413 and 431.

25         Counsel, I take it all of those are capable of being

K1S7TEM3

1    reproduced in triplicate?

2         MR. BHATIA:  That's right, we have them right here:

3    Defense counsel is reviewing them.

4         THE COURT:  Why don't you review them.  One counsel

5    have signed off, I will give them to Mr. Smallman and then we

6    can move from this proceeding and move to the other proceeding

7    in this courtroom.

8         MR. GELFAND:  We have had an opportunity to review

9    them.  We are satisfied that what is here is responsive to the

10   note.

11        THE COURT:  Let me just take a look at them.

12        All right, very good.  Since all counsel are

13   satisfied, I will let Mr. Smallman give this to the marshal.

14   Thank you.  We are adjourned now in United States v. Teman.

15        (Time noted 3:42; jury not present)

16        THE COURT:  Counsel, we have received a note that we

17   marked as jury note 6.  It simply reads "Transcript for Joseph

18   Soleimani testimony, Ariel Reinitz."

19        I interpret that as meaning the entirety of the

20   transcript for both the Soleimani trial testimony and the

21   Reinitz trial testimony.  Anyone disagree that that's clearly

22   what they're seeking?

23        MR. DIRUZZO:  No, your Honor, that sounds right.

24        MR. GELFAND:  No, your Honor.

25        THE COURT:  What is easier about this is, of course,

K1S7TEM3

there are no subject matter limitations, it's just lock, stock

and barrel the testimony.  In that respect it makes the process

of extract can the testimony easier.  However, I want to make

sure as you embark on this, we have an understanding on ground

rules with respect to sustained objections, which is to say

that where an objection was sustained -- you know, I don't know

whether the witness then popped off with an answer or something

like that -- we should be excluding the objected to question

and the court ruling.  And where I have granted a motion to

strike or to disregard, obviously you need to be sensitive to

that.  So just as you're going through the transcript, in

addition of course to colloquies at the side bar, you should be

getting rid of sustained objections and the questions to which

they relate as well as the testimony that I've struck.

It would be my inclination to have at least three

copies, let us say, of each of the proposed transcripts so that

they can share them around the jury room.

My inclination would be to bring the jury out when we

have these ready so that I can instruct them that

notwithstanding the fact that they have sought this testimony,

they shouldn't be undue weight on the testimony merely because

they have it as opposed to the balance of it in the jury room.

Anyone object to my doing that?

MR. BHATIA:  That's fine.

MR. GELFAND:  That's fine.

K1S7TEM3

1          THE COURT:  Counsel, you have the transcripts here.

2    Get to work.  I'm hopeful that given the breadth of the request

3    there actually won't be any objections among you as to the

4    blocking and tackling, but let Mr. Smallman know as soon as you

5    have reached agreement or as soon as you've identified areas of

6    disagreement so I can come down and promptly resolve disputes

7    or bless your outcome so we can get this done promptly.

8          Something you wanted to raise?

9          MR. IMPERATORE:  Your Honor, I just wanted to raise a

10   question.  There were instances during the testimony where a

11   witness would give an answer and your Honor might have

12   admonished the witness that the answer was either not

13   responsive to the question or something along those lines.

14   Those are technically not sustained objections.  What is your

15   Honor's practice?

16         THE COURT:  Well, if I wasn't asked to strike the

17   answer, it's still part of the record.  Of course the jury

18   heard my colloquy with the witness, so I think we keep that in.

19   It's really only where I have sustained an objection -- in

20   which case it's legally as if the event didn't happen -- or

21   where I've actually struck something where you should be

22   redacting.  OK?  Does that answer your request he?

23         MR. BHATIA:  Yes.

24         MR. IMPERATORE:  Yes.  Thank you.

25         THE COURT:  I will wait to hear from you.

K1S7TEM3

1          (Time noted 4:37; jury not present)

2          THE COURT:  All right.  Counsel, I have been handed a

3     copy of Soleimani.  I take it this is your agreed-upon review

4     of Soleimani?

5          MR. BHATIA:  Yes, your Honor.

6          MR. GELFAND:  Yes, your Honor.

7          THE COURT:  And no disputes?

8          MR. GELFAND:  No disputes.

9          THE COURT:  Wonderful.  I will flip through it, and I

10    understand Mr. Magliocco is en route with the other one?

11         MR. BHATIA:  That's correct.

12         THE COURT:  All right.

13         Were you able to resolve Reinitz also without any

14    disputes on how to apply redactions?

15         MR. BHATIA:  Yes, your Honor.

16         THE COURT:  Great news.  Thank you.  As soon as we get

17    the Reinitz one, I will review it and we will get the jury.

18         (Pause)

19         MR. IMPERATORE:  We defer to you, but it's 4:40, if

20    the Court wants to bring them out, we will have the other

21    transcript ready and deliver it as soon as possible.

22         THE COURT:  Unless anyone disagrees, I'm inclined to

23    bring the jury out, so at least they know where's working hard

24    on their behalf.

25         Mr. Smallman, let's bring in the jury.

K1S7TEM3

1          We have just gotten jury note 7, which reads "Can we

2     please resume tomorrow?"

3          THE COURT:  So let me bring them out, and I will tell

4     them what we have and explain it will be available for them

5     first thing tomorrow.

6          OK.  Let's go get the jury.

7          (Jury present; time noted 4:45 p.m.)

8          THE COURT:  All right, welcome back, ladies and

9     gentlemen.  Be seated.

10          I have received two notes which I want to respond to

11     of yours.  The first one is your note of a little while ago

12     that reads "Transcript for Joseph Soleimani testimony, Ariel

13     Reinitz" which I understood to be his testimony as well.  I was

14     just about to bring you these when I got your next note which

15     reads "Can we please resume tomorrow?"  The answer of course is

16     yes.

17          I want to tell you about these transcripts.  As you

18     can tell, it takes a little bit of time because it requires

19     going through on a computer the entirety essentially of the

20     witness's testimony to isolate the portions that are properly

21     given to you.  Sustained objections, items I have asked to be

22     stricken, we have redacted.  Just because of computer

23     functionality, the redactions in the Soleimani testimony are

24     made with black bars and with respect to the Reinitz it's

25     whited out, but it's the same effect.

1    In any event, counsel worked hard to review the

2    transcripts, and I have just received them printed out in

3    triplicate.  So, I will give these to you to be brought back

4    into the jury room.

5         There is one instruction I do need to give you in

6    connection with the review of transcripts, which is, simply

7    because you happen to have those transcripts, there is a

8    natural human risk that you would attach greater weight to the

9    copies of the transcripts you happen to have as opposed to the

10   other ones, the rest of the testimony in the case that you

11   heard.  I just want to make sure you guard against that.  The

12   mere fact that you have happened to ask for that testimony

13   should not lead you to give it outsized importance.  You should

14   consider all of the testimony of the trial in reaching your

15   verdict.

16        So, what I will do is I will have Mr. Smallman give

17   that to you.  I understand right now it's quarter of five, and

18   you would like to break -- just nod.  I take it you would like

19   to break now instead of 5 o'clock.  Happy to grant that.

20        Mr. Smallman will give this to your foreman.  When you

21   all get here tomorrow at 9:30, once you are all here we will

22   bring you out and you can get started.

23        Please don't start deliberating until I have brought

24   you out into the courtroom.  Remember, we need you all here, so

25   if anybody is late tomorrow we won't be able to begin -- the

K1S7TEM3

1    jury won't be able to begin deliberating, so all the more

2    important for everybody to be here on time.

3         As always, breakfast will be served at 8:45, but I

4    need you at 9:30.  And remember we will again be serving you

5    lunch tomorrow in the event you are still deliberating as of

6    the lunch break.  So Mr. Smallman will have you complete lunch

7    menu orders in the morning.

8         As always, have a good evening.  I remind you do not

9    discuss the case.  Notwithstanding the fact that you can

10   discuss it as a group of 12 when you're all together in the

11   jury room, you can't otherwise discuss or research the case.

12   Have a safe trip home.  I will see you tomorrow morning.

13              (Jury retires for the evening)

14        THE COURT:  Counsel, I take it no one has anything to

15   raise.  You are all free to leave.  I will need somebody here

16   at 9 o'clock in the remote event that there is some issue to

17   raise, although I really doubt it, and at 9:30 I will need you

18   here when I bring out the jury to resume their deliberations.

19        Fair warning, I have a three defendant criminal

20   conference tomorrow -- four defendant criminal conference --

21   tomorrow at 10:30 in one of the ceremonial courtrooms

22   downstairs.  I will be bouncing back and forth.  I will give

23   this my priority in the event there is a note or something I

24   need to attend to.  I will bounce upstairs as quickly as I can,

25   but just as fair warning, there may be a little more delay in

K1S7TEM3

1    my responsiveness than I ordinarily like just because of that

2    conference.

3              Have a good evening.  I will see you tomorrow.

4              (Trial adjourned to January 29, 2020 at 9 a.m.)