*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2020

**BY CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    United States v. Ari Teman,
                 S2 19 Cr. 696 (PAE)

Dear Judge Engelmayer:

      The Government writes in response to defendant Ari Teman's letter, dated April 9, 2020, requesting the Court to authorize disclosure of the grand jury transcript pursuant to Rule 6(e)(3)(E)(i) and (ii) of the Federal Rules of Criminal Procedure. ECF No. 120 ("Deft's Motion"). For the reasons set forth below, Teman's motion should be denied.

      On January 3, 2020, a grand jury sitting in this District returned Indictment S2 19 Cr. 696 (the "Indictment"), charging defendant Ari Teman with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of wire fraud, in violation of 18 U.S.C. § 1343. Count One charged Teman with one count of bank fraud for his scheme to deposit twenty-seven checks in April 2019. Count Three charged Teman with one count of wire fraud for his scheme to deposit the same twenty-seven checks. Count Two charged Teman with one count of bank fraud for his scheme to deposit two checks in March 2019. Count Four charged Teman with one count of wire fraud for his scheme to deposit those two checks. In the "to wit" clause of the various counts, the Indictment charged that, as part of his schemes, the defendant deposited "counterfeit" checks in the name of his customers and then used those funds for his own person benefit.

      Rule 6(e)(3)(E) provides that, as an exception to the rule requiring grand jury secrecy, "[t]he court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; [or] (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

      "It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." *United States v. Forde*, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (citing *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978). The Rule 6(e)(3)(E)(ii) requirement of showing

The Hon. Paul A. Engelmayer
April 24, 2020

a ground to dismiss the indictment because of a matter before the grand jury "extends to legal instructions given to the grand jury." *United States v. Jailall*, 00-cr-69 (RWS), 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (Sweet, J.). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990), and "[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).

Teman cannot satisfy the burden of showing a "particularized need" for access to the grand jury transcript in this case. There is no basis whatsoever to believe the grand jury was instructed on a technical definition of the term "counterfeit" and at no stage of the case did any of the Government's filings suggest that this case was premised on a technical definition of "counterfeit" contained in the Uniform Commercial Code or otherwise. Rather, from the earliest stages of this case, all of the discovery, argument, and proof has focused on whether or not Teman's checks were deposited with authorization of his counterparties.

Indeed, in the Complaint in this case, the Government alleged that the checks in question, labeled as "counterfeit," were issued without authority from Teman's customers. Complaint (June 20, 2019), ECF No. 1 at 4. The Government made similar comments during the arraignment and pretrial conference on October 21, 2019. *See* October 21, 2019 Conference Tr. at 10 ("[W]e understand, from speaking with the companies on behalf of the checks, that these were not authorized or issued by those companies."). The Government subsequently outlined its theory in several pretrial filings. *See, e.g.*, Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions (Dec. 12, 2019), ECF No. 39 at 2-5 ("These two checks were signed and made to appear that they had been issued by two entities, "Entity-3" and "Entity-4."); Government's Proposed Examination of Prospective Jurors (Jan. 6, 2020), ECF No. 57 at 2 ("The Government has alleged in the Indictment that, in or about March 2019, the defendant deposited two checks into his bank account that he was not authorized to deposit. The Government has further alleged in the Indictment that, in or about April 2019, the deposited . . . 27 additional checks into his bank account that he was not authorized to deposit."); Government's Memorandum of Law in Opposition to Defendant's Motions *in Limine* (Jan. 8, 2020), ECF No. 73 at 2 ("[T]he central questions for the jury to decide are whether Teman was authorized to issue and deposit the checks and whether he perpetuated schemes to defraud."); Government's Motion to Preclude Testimony by Expert Witness (Jan. 8, 2020), ECF No. 74 at 3 ("The Government need only prove that Teman participated in a scheme to defraud, not whether he counterfeited or forged checks. Teman has not proffered facts showing that he was aware of or following the UCC, and whether the checks were "counterfeit" or "forged" under Davis's definition or the UCC is not relevant to whether Teman acted with criminal intent in his scheme to defraud the bank and his customers.").

In the face of those repeated references to checks deposited without authorization, Teman simply hypothesizes that the grand jury indicted him under some hyper-technical understanding of the term "counterfeit." Indeed, the defendant postulates that the Government's proof at trial focused on "unauthorized" checks yet, three weeks earlier, when the grand jury returned the Indictment, the Government presented only proof of formally "counterfeit" checks. This rank speculation does not satisfy the "very high . . . standard for granting a motion to inspect proceedings before a grand jury." *United States v. Caparotta*, 890 F. Supp. 2d 200, 210 (E.D.N.Y.

2012); *see also Leung*, 40 F.3d at 581 ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct."). A purported constructive amendment of an indictment is not government misconduct that requires examination of the grand jury minutes. *See, e.g., United States v. Mangano*, 2018 WL 851860 (E.D.N.Y. Feb. 9, 2018) ("Nothing in *Mollica* suggests that a court should review grand jury transcripts in order determine whether there has been a constructive amendment to an indictment.") (citing *United States v. Mollica*, 849 F.2d 723 (2d Cir. 1988).

The defendant seeks to review the transcript to "verify whether [he] was convicted on what the grand jury indicted him on." Deft's Motion at 2. There can be no doubt that Teman was convicted for participating in bank fraud and wire fraud schemes to steal money from his customers and two banks, as identified in the Indictment.[1]

Accordingly, Teman's motion for disclosure of the grand jury transcript should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: ___/s/_____
    Kedar S. Bhatia
    Assistant United States Attorney
    (212) 637-2465

---

[1] If the Court finds that Teman has established a particularized need to breach Rule 6(e)'s grand jury secrecy provisions, the Court should conduct an *in camera* review to determine whether the grand jury indicted Teman on a technical definition of the term "counterfeit." However, courts have been reluctant to conduct *in camera* reviews of grand jury proceedings where, as here, the defendant seeks to deputize the Court to invade the province of the grand jury in a hail-mary search for wrongdoing. *See United States v. Jasper*, 2003 WL 21709447, at *7 (S.D.N.Y. July 23, 2003) ("Reviewing grand jury minutes is an extraordinary action for a court, and there was, and is, absolutely no need for this Court to take such a step under the circumstances presented in this case.") (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989)); *United States v. Spy Factory Inc.*, 960 F. Supp. 684, 690 (S.D.N.Y. 1997) ("[D]efense counsel seeks to send this Court on a fishing expedition — searching for vague and nebulous violations of law that might have taken place in the grand jury. Such vain endeavors will not lightly be undertaken by this Court and are certainly not required under the law.").