UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    S2 19 Cr. 696 (PAE)

ARI TEMAN,

                    Defendant.

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ARI TEMAN'S MOTION FOR NEW TRIAL**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Kedar S. Bhatia
Assistant United States Attorney
        *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    Pretrial Ruling .......................................................................................... 3

    B.    Soleimani's Testimony ............................................................................ 5

    C.    The Verdict .............................................................................................. 6

LEGAL STANDARD .......................................................................................................... 7

DISCUSSION ................................................................................................................... 9

I.    Teman's Claim for a New Trial Based on Soleimani's Housing Court Testimony
is Meritless ................................................................................................................ 9

II.    Teman's Claim for a New Trial Based on Data About Building Violations and
Housing Court Actions is Meritless ............................................................... 14

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Brady v. Maryland*,
　　373 U.S. 83 (1963) ................................................................................................... 7

*Giglio v. United States*,
　　405 U.S. 150 (1972) ................................................................................................. 7

*In re Terrorist Bombings of U.S. Embassies in E. Africa*,
　　552 F.3d 93 (2d Cir. 2008) ..................................................................................... 13

*Strickler v. Greene*,
　　527 U.S. 263 (1999) .............................................................................................. 1, 8

*United States v. Avellino*,
　　136 F.3d 249 (2d Cir. 1998) ...................................................................... 8, 9, 13, 17

*United States v. Bonventre*,
　　2014 WL 3673550 (S.D.N.Y. July 24, 2014) ................................................... 8-9, 15

*United States v. Coppa*,
　　267 F.3d 132 (2d Cir. 2001) ........................................... 7, 8, 9-10, 10, 14, 17

*United States v. Ferguson*,
　　246 F.3d 129 (2d Cir. 2001) ..................................................................................... 7

*United States v. Hutcher*,
　　622 F.2d 1083 (2d Cir. 1980) ................................................................................. 10

*United States v. James*,
　　712 F.3d 79 (2d Cir. 2013) ......................................................................... 12, 14, 17

*United States v. Madori*,
　　419 F.3d 159 (2d Cir. 1995) ..................................................................................... 7

*United States v. Meregildo*,
　　20 F. Supp. 2d 434 (S.D.N.Y. 2013) ...................................................................... 10

*United States v. Middlemiss*,
　　217 F.3d 112 (2d Cir. 2000) ..................................................................................... 8

*United States v. Payne*,
　　63 F.3d 1200 (2d Cir. 1995) ..................................................................................... 9

*United States v. Rivas*,
　　377 F.3d 195 (2d Cir. 2004) ..................................................................................... 8

*United States v. Sampson*,
　　242 F.3d 629 (5th Cir. 2001) ................................................................................. 16

*United States v. Spinelli*,
　　551 F.3d 159 (2d Cir. 2008) .................................................................................. 8, 9

*United States v. Thomas*,
  981 F. Supp. 2d 229 (S.D.N.Y. 2013) ................................................................................ 15

**Statutes, Regulations, and Rules**

18 U.S.C. § 1028A ....................................................................................................................... 2, 3

18 U.S.C. § 1343 ............................................................................................................................... 2

18 U.S.C. § 1344 ............................................................................................................................... 2

New York City Administrative Code § 27-2004 ........................................................................ 3, 4

Fed. R. Crim. P. 33 ........................................................................................................................... 7

Fed. R. Evid. 402 ........................................................................................................................ 2, 17

Fed. R. Evid. Rule 403 ........................................................................................................ 4, 5, 5-6, 16

Fed. R. Evid. Rule 608 .................................................................................................................... 12

The Government submits this memorandum of law in opposition to defendant Ari Teman's Motion for a New Trial Based on Undisclosed *Brady* and Jencks Act Evidence, dated April 9, 2020. *See* ECF No. 118 ("Deft's Motion"). For the reasons set forth below, the defendant's motion should be denied.

## PRELIMINARY STATEMENT

After filing his post-trial motions for a judgment of acquittal and a new trial, Teman now seeks a new trial on the additional ground that the Government failed to disclose evidence that it never had. Specifically, Teman argues that the Government did not disclose (1) the transcript of one witness's prior testimony in New York City Housing Court, and (2) data regarding building violations against two witness's companies and housing court actions against those witnesses and their companies. The defendant's allegations about a *Brady* or Jencks Act violation are meritless. First, the Government never had these records and thus did not suppress them. Indeed, before trial, the Government disclosed to the defense that both witnesses – as senior members of companies that owned multiple large apartment buildings in New York City – were the subject of housing court actions. The Government sought a pretrial ruling to clarify how the parties could use these actions and, in the case of one action involving trial witness Joseph Soleimani, the Government even took a defense-favorable approach and elicited testimony about an adverse finding against Soleimani's company. Second, Teman cannot show that the purportedly suppressed evidence was favorable to him. The transcript of Soleimani's prior testimony was entirely consistent with his later statements, and the data about building violations says nothing about individual witness's character for truthfulness. Finally, Teman cannot show, as he must, the materiality of any purportedly suppressed evidence, which in this context requires him to meet the high bar of showing that there is a "reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). At the

very most, the purportedly suppressed records speak only to collateral issues of credibility. Because they had little or no probative value and bore a high risk of unfair prejudice, the records very likely would have been precluded under Rules 402, 403, and 608 of the Federal Rules of Evidence. Even if they were admissible, Teman's defense was that he lacked criminal intent – and indeed that his actions had been sanctioned by his counsel – and was largely not predicated on attacking the credibility of the witnesses from customer-witnesses. In short, collateral attacks on his customers' testimony would have had little effect on the trial and certainly not the substantial effect needed to produce a different verdict. For these reasons and others provided below, Teman's motion for a new trial should be dismissed.

## STATEMENT OF FACTS

On January 3, 2020, a grand jury sitting in this District returned Indictment S2 19 Cr. 696 (the "Indictment"), charging defendant Ari Teman with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of wire fraud, in violation of 18 U.S.C. § 1343.[1] Count One charged Teman with one count of bank fraud for his scheme to deposit twenty-seven checks in April 2019. Count Three charged Teman with one count of wire fraud for his scheme to deposit the same twenty-seven checks. Count Two charged Teman with one count of bank fraud for his scheme to deposit two checks in March 2019. Count Four charged Teman with one count of wire fraud for his scheme to deposit those two checks.

The charges centered around Teman's scheme to fraudulently deposit checks drawn from the accounts of certain of his customers, including Joseph Soleimani. Soleimani was a principal at ABJ Properties, a company that owned and managed several apartment buildings in the New

---

[1] The Indictment also charged Teman with two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. On January 14, 2020, the Government informed the Court and the defense that it had elected not to proceed on those two counts at trial. *See* ECF No. 79.

York City area. Trial Tr. at 485-86.

### A. Pretrial Ruling

On January 19, 2020, prior to the start of trial, the Government filed a motion seeking to preclude the defense from cross-examining two Government witnesses, Joseph Soleimani and Elie Gabay, who both worked at companies that owned and managed apartment buildings. *See* ECF No. 83 ("Gov't Motion to Preclude"). Regarding Soleimani, the Government sought to preclude cross-examination about (1) landlord-tenant lawsuits and regulatory actions filed against him and his company, and (2) Soleimani's appearance on a New York City "Worst Landlord Watchlist." *Id.* at 1. The Government also specifically sought to preclude cross-examination about a decision by the New York City Housing Court finding ABJ Milano LLC "harassed" a tenant, in violation of New York City Administrative Code § 27-2004(48)(f-2), when it initiated negotiations with that tenant about surrendering his right to a rent-regulated apartment in exchange for payment. *See* Gov't Motion to Preclude, Exh. A at 6 ("Housing Court Order"). Soleimani is a part-owner of the parent company of ABJ Milano. Trial Tr. 487. The Housing Court ordered that ABJ Milano pay the minimum statutory penalty, $2,000.00, and ordered ABJ Milano to refrain from further violations of the City's administrative code. Housing Court Order at 6. The Housing Court Order does not specifically reference Soleimani or any individual employee of ABJ Milano.

On January 21, 2020, the Court precluded questioning about landlord-tenant and regulatory actions against Soleimani – with one exception – and his appearance on the "Worst Landlord Watchlist." *See* Tr. of Jan. 21, 2020, Conference ("Conf. Tr.") at 22-33. The Court noted that "[t]he government does not represent – and nor does Teman – that the claims of improprieties made against [Soleimani and Gabay] have any direct bearing on [their] dealings with Teman." *Id.* at 25. Rather, as the Court noted, Teman was arguing that Soleimani's

"conduct towards tenants bears on [his] character for truthfulness." *Id.* The court ruled that cross-examination about Soleimani's record as a landlord was not admissible because "[w]hether or not Soleimani is a punctilious landlord or a negligent or cruel or thoughtless landlord does not bear on his credibility." *Id.* The Court found that this cross-examination was not relevant to credibility and that its "probative value would be vastly outweighed by various countervailing factors under Rule 403," including a risk of confusing the jury, prolonging trial, and inviting a trial-within-a-trial. *Id.* at 27.

However, the Court did permit limited cross-examination about the Housing Court Order if Soleimani was among the ABJ employees who interacted with Stanley Howell, the tenant at the center of the housing court dispute:

> Judge Stoller's opinion does not disclose whether Soleimani personally was one of the ABJ employees who misleadingly told Howell that his lease would not be renewed if he did not surrender the premises. If not, there is no basis to use another employee's misleading statement as a means at this trial to impeach Soleimani. Soleimani's trial testimony here would not be meaningfully discredited merely because of an employee of his misled a tenant.

> But it is possible that Soleimani was among the employees who personally made that misrepresentation to Howell. If so, although the question under 403 is a close one under which a court could rule either way, I would then permit the defense at this trial, as a means of impeachment, to establish through a single question or two put to Soleimani that a judge found that in 2017, he had misled a tenant to believe wrongly that his lease could not be renewed. To be sure, I would not permit under Rule 403 more extended inquiry into this matter, nor would I permit extrinsic evidence of this incident to be received, for example, testimony by Howell or examination of Soleimani regarding what happened and whether he agrees or not with Judge Stoller's finding.

> But a targeted leading question that elicits from Soleimani the fact of this discrete finding by a judge that he misled a tenant on this subject would assist the jury to assess Soleimani's credibility without turning this proceeding into a trial within a trial about the episode relating to landlord ABJ and tenant Howell.

*Id.* at 28-29. The Court then asked the Government to inquire with Soleimani "whether there was evidence in the housing court case that he was among the ABJ personnel who dealt with Howell"

and then report back to the Court and the defense. *Id.* at 29. If Soleimani dealt with the tenant, the Court held that defense counsel would be permitted to question Soleimani about the fact of the Housing Court Order:

> I expect that if the answer is yes, that Soleimani was among the ABJ personnel who dealt with Howell, that Soleimani will have no difficulty on the stand here answering yes to a question from defense counsel about whether a judge so found. Obviously the government is at liberty to pull the poison and ask the question on direct as well. Cross-examination will then move on to other issues.
>
> . . .
>
> The bottom line is that, at most, a single question or two about the housing court finding of misleading a tenant may be put to the witness; and then, only upon confirmation that Judge Stoller's opinion was referencing ABJ personnel that included Soleimani personally. Otherwise, Soleimani's conduct as a landlord, including court actions and complaints and statements by the New York Public Advocate, is excluded under Rule 403.

*Id.* at 29-30.

### B.  Soleimani's Testimony

Trial commenced on January 22, 2020. Soleimani's testimony commenced on January 23, 2020, and continued into the next day. Soleimani's trial testimony is recounted in detail in the Government's Memorandum of Law in Opposition to the Defendant's Post-Trial Motions, dated March 25, 2020, *see* ECF No. 112 at 4-10 ("Gov't Opp. to Post-Trial Motions"). Among other things, Soleimani testified that he never saw any "payment terms" on Teman's website before agreeing to buy Teman's intercom devices, that he never gave Teman authority to write checks on behalf of ABJ Milano or ABJ Lenox, and that he never authorized Teman to deposit the checks that formed the basis of the counts charged in the Indictment. *Id.* Soleimani's testimony was corroborated by testimony from the other victim-witnesses, WhatsApp communications between himself and Teman, and even by Teman's correspondence with Ariel Reintiz, Teman's attorney. *See* Trial Tr. 505-06 (referencing GX 409C); *id.* at 818-19

5

(referencing GX 702); Gov't Opp. to Post-Trial Motions at 5, 7, 9.

During Soleimani's direct examination, the Government asked him about the Housing

Court Order in accordance with the Court's pretrial ruling:

> Q. In 2018, did the housing court find in one case that your company had misled a tenant about whether he could renew his lease?
> A. Yes.
> Q. And did you misrepresent anything to the tenant or was it others in your company?
> A. It was others.
> Q. And did you and ABJ resolve that matter?
> A. Yes.
> Q. And did that have anything to do with GateGuard or Mr. Teman?
> A. No

Trial Tr. 502. The Government decided to question Soleimani on this topic based on Soleimani's

representations suggesting that "he was among the ABJ personnel who dealt with [the tenant],"

Conf. Tr. at 29, and out of an abundance of caution.[2] Teman did not ask for additional

information about the housing court matter prior to Soleimani's testimony, object to the

Government's questioning in this regard during trial, or question Soleimani about the Housing

Court Order on cross-examination.

## C.  The Verdict

On January 29, 2020, after deliberating for approximately one day, the jury returned a

verdict finding Teman guilty on all four counts in the Indictment. On February 26, 2020, Teman

submitted post-trial motions seeking a judgment of acquittal or, in the alternative, a new trial. *See*

ECF No. 111. On April 9, 2020, Teman filed the instant motion seeking a new trial based on

---

[2] Before and during trial, the Government produced to the defense notes from a number of phone calls and meetings with Soleimani. Notes from these interviews, which were disclosed to the defense, show that on January 7, 2020, Soleimani disclosed the fact of a housing court dispute with Stanley Howell. Notes from this meeting were produced to the defense on January 15, 2020, when the Government produced the bulk of its Jencks Act material. The Government met or spoke with Soleimani several times prior to and during trial, including on January 11, January 14, January 19, January 21, January 22, and January 23.

purportedly undisclosed *Brady* and Jencks Act material.

## LEGAL STANDARD

Rule 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Given the deference owed to a jury's verdict, however, the Second Circuit has cautioned that district courts should exercise their Rule 33 authority only "'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted). Thus, a motion for a new trial should not be granted unless, after evaluating "the entire record of the trial," the trial court is left with a "real concern that an innocent person may have been convicted." *Id.*

The Government has a duty to disclose evidence favorable to the accused that is material to guilt. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This duty covers not only exculpatory evidence but also impeachment information for Government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "Impeachment evidence is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Madori*, 419 F.3d 159, 170 (2d Cir. 1995) (internal quotation marks and citation omitted). The Government violates its obligates under *Brady* and *Giglio* if it withholds material that, "if suppressed, would deprive the defendant of a fair trial." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)). Such a deprivation occurs only where there is a "reasonable probability" that the suppression "affected the outcome of the case," *Coppa*, 267 F.3d at 135, or would have "put the whole case in such a different light as to undermine confidence in the verdict," *id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). There "is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a

different verdict." *Strickler*, 527 U.S. at 281; *see also United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008) (holding that a *Brady* or *Giglio* violation will result in a new trial only "if the undisclosed information is 'material,' within the exacting standard of materiality established by the governing case law"); *accord United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004); *United States v. Middlemiss*, 217 F.3d 112, 123 (2d Cir. 2000).

To establish a *Brady* violation that would demand a new trial, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140 (citing *Stricker*, 527 U.S. at 281-82).

With respect to the scope of materials that the Government must review for Brady material, "[a]n individual prosecutor is presumed … to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). "Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Id.* at 255 (internal citations omitted). Thus, where information was independently obtained through sources outside of the prosecution team, *Brady* "is not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense." *United States v. Bonventre*, 2014 WL 3673550, at *22 (S.D.N.Y. July 24, 2014), *aff'd*

*in part*, 646 F. App'x 73 (2d Cir. 2016).

In the context of impeachment evidence, such evidence has been found to be material "where the witness at issue supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotation marks omitted); *see also Avellino*, 136 F.3d at 256-57 (noting that "impeaching matter may be found material where the witness supplied the only evidence of an essential element of the offense"). "In contrast, a new trial is generally not required where the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *Payne*, 63 F.3d at 1210 (internal quotation marks omitted); *see also Avellino*, 136 F.3d at 257 ("Undisclosed impeachment evidence is not material in the Brady sense when, although 'possible useful to the defense,' it is 'not likely to have changed the verdict.'" (quoting *Giglio*, 405 U.S. at 154)); *Spinelli*, 551 F.3d at 165 ("[I]f the information withheld is merely cumulative of equally impeaching evidence introduced at trial, so that it would not have materially increased the jury's likelihood of discrediting the witness, it is not material.").

## DISCUSSION

### I.   <u>Teman's Claim for a New Trial Based on Soleimani's Housing Court Testimony is Meritless</u>

Teman's motion for a new trial fails because he cannot satisfy the required elements of a valid *Brady* claim.

*First*, Teman cannot show that "the Government, either willfully or inadvertently, suppressed evidence." *Coppa*, 267 F.3d at 140. Far from it, the Government disclosed the

Housing Court Order to the defense, sought a pretrial ruling on the use of the order at trial, and then erred on the side of caution by eliciting the fact of the order during Soleimani's testimony, in accordance with Court's pretrial ruling. In its ruling on the motion to preclude, the Court directed that either (1) the parties could ask "a single question or two about the housing court finding of misleading a tenant may be put to the witness" if Soleimani was "among the ABJ personnel who dealt with Howell," Conf. Tr. 29-30; or (2) the parties could not ask Soleimani any questions about the Housing Court Order, *id.* The Court instructed the Government to immediately follow-up if it had any doubts about whether Soleimani was not among the ABJ personnel who dealt with the tenant. *Id.* at 29. Based on Soleimani's representations to the Government and erring on the side of caution, the Government then elicited from Soleimani the fact of the Housing Court Order, consistent with the Court's ruling.

The Government cannot produce what it does not have. *See United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("We reject ... a notion of 'possession' which is so elastic as to embrace materials that the prosecution has never had in its files, never inspected, and never knew about."); *United States v. Meregildo*, 20 F. Supp. 2d 434, 440 (S.D.N.Y. 2013) ("[P]rosecutors cannot be presumed to know about evidence that was outside of their knowledge or beyond their possession."). The Government disclosed the fact of the Housing Court Order and then took the more defense-favorable approach of eliciting the fact of the order at trial. Teman alleges without any support whatsoever that the Government "hid the ball from Teman and the Court." However, the Government did not have the transcript of Soleimani's Housing Court testimony and thus could not possibly have suppressed it. The Government disclosed the existence of the Housing Court Order, and Teman was thus entirely on notice that the Housing Court had taken adverse action against Soleimani's company. Having been advised of the existence of the Housing Court

Order, Teman was wholly able to investigate those proceedings further, including by obtaining materials relating to that proceeding, like the transcript of Soleimani's testimony, that were not in the Government's possession.[3]

*Second*, the purportedly suppressed transcript is not favorable to the defense. It does not show that Soleimani made any misrepresentations to Howell or during his testimony in this case, and accordingly it does not undermine Soleimani's credibility whatsoever. As the Court recognized, in the Housing Court Order, Judge Stoller found that ABJ Milano told Stanley Howell, a tenant, that it may not renew his lease, which Judge Stoller found to be an "empty threat" given Howell's rent-stabilized apartment. Housing Court Order at 4; Conf. Tr. 28. At trial, Soleimani testified simply that a housing court had found that his company mislead a tenant and that it was others at the company, not him, who made misrepresentations to Howell. Trial Tr. 502. The purportedly undisclosed transcript shows only that Soleimani testified in an Housing Court proceeding that he had met with the Howell and signed the settlement agreement in which ABJ Milano agreed to pay Howell to vacate his apartment. *See* Deft's Motion, Exh. A. Nowhere in Soleimani's earlier testimony does he acknowledge making any misrepresentations about refusing to renew Howell's lease, *i.e.*, the misrepresentation identified by Judge Stoller.

Thus, any purportedly suppressed evidence does not meet the requirement of being favorable to the defendant because nothing about that information that impeaches Soleimani's credibility. The information does not suggest that Soleimani made any misrepresentations to the tenant, nor does it suggest that any of Soleimani's testimony at trial was untrue. Because the

---

[3] For the same reason, Teman's claim that the Government elicited perjured testimony is without merit. First, the Government did not have the transcript that Teman's now relies on. Second, as set forth below, the transcript of Soleimani's testimony is entirely consistent with the testimony he gave in this trial. Teman's Jencks Act claim also fails because the Government did not have the transcript in question.

information in question has no impeachment value, it is not *Giglio* information that was required to be disclosed, even if it had been in the possession of the Government which, as noted above, it was not.

*Third*, even assuming that the Court finds the Government suppressed the transcript of Soleimani's testimony, Teman's motion fails because he suffered no prejudice, and certainly cannot show that the purportedly undisclosed evidence "would likely result in an acquittal." *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (internal quotation marks omitted).

As set forth above, the housing court transcript does not contradict Soleimani's testimony, so it has no impeachment value. Because it has no impeachment value and is not relevant to the elements of the charged offenses, it could not have affected the outcome of this wire fraud and bank fraud trial.

Even assuming the undisclosed transcript had some scintilla of impeachment value, its use at trial would very likely have been precluded. As the Court set forth in its ruling on the Government's pretrial motion *in limine* to preclude certain lines of examination, collateral attacks on a witnesses credibility are narrowly proscribed under Rule 608, and efforts to relitigate a housing court dispute that ended with the imposition of the minimum statutory fine carried a high risk of confusing the jury, fostering unfair prejudice, and creating a trial-within-a-trial. Conf. Tr. at 27. There was thus a high likelihood, even if the transcript of Soleimani's testimony had been disclosed, that its use to cross-examine would have been precluded. Precluded evidence, by definition, cannot have an impact on the trial outcome because the jury would never have heard such evidence in the first place.

Teman's materiality claim fails for a more fundamental reason: Teman's defense at trial was his lack of criminal intent, not that the witnesses against him, including Soleimani, were

fabricating their testimony. *See, e.g.*, Trial Tr. 1010 (defense counsel arguing during summation that "this case . . . ultimately boils down to one fundamental question: Did Ari Teman act with the criminal intent that differentiates what you could basically call a billing dispute from a banking crime?"). There is no "reasonable probability" that the outcome of the defendants' trial would have been different had Teman known about Soleimani's earlier testimony, because impeachment of the witnesses' testimony was collateral to the defense Teman actually advanced at trial. *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 146 (2d Cir. 2008); *see also Avellino*, 136 F.3d at 257 ("Undisclosed impeachment evidence is not material in the *Brady* sense when, although 'possible useful to the defense,' it is 'not likely to have changed the verdict.'") (quoting *Giglio*, 405 U.S. at 154).

Moreover, Soleimani's testimony was corroborated by testimony from the other victim-witnesses, documentary evidence, and even by Teman's correspondence with Ariel Reintiz, Teman's attorney. *See* Trial Tr. 505-06; *id.* at 818-19; Gov't Opp. to Post-Trial Motions at 5, 7, 9. For example, Soleimani's testimony that he never authorized Teman to draw checks from ABJ accounts for whatever amount Teman wanted – which barely requires saying – was corroborated by testimony from Gabay, Soon-Osberger, and Gina Hom. Trial Tr. 327, 430. 474, 481-82, 568-69. Soleimani's testimony that if Teman had ever asked for that authority, he would have said 'no,' was also corroborated by testimony from Gabay and Soon-Osberger. Trial Tr. 327, 361, 428-29, 568.

Teman's new trial motion thus fails all parts of the *Coppa* standard for a new trial based on purportedly undisclosed *Brady* or *Giglio* material. The information was not suppressed because it was never in the Government's possession. The information was not favorable to the defendant because it did nothing to impeach Soleimani's credibility. And any nondisclosure was

not material to the trial outcome because of the non-existence of the impeachment value of the information, the likelihood that any use of the information would have been precluded, and because attacking the credibility of witnesses was substantially collateral to the defense Teman was advancing at trial. Because Teman cannot make any of these showings, his claim for a new trial based on nondisclosure of Soleimani's earlier testimony fails.[4]

## II.      Teman's Claim for a New Trial Based on Data About Building Violations and Housing Court Actions is Meritless

Teman also argues that he is entitled to a new trial because of purportedly "suppressed" records regarding other housing court and regulatory actions against Soleimani and Gabay. *See* Deft's Motion at 16-20. Teman's argument fails for several reasons.

*First*, Teman cannot establish that "the Government, either willfully or inadvertently, suppressed evidence." *Coppa*, 267 F.3d at 140. Here too, prior to trial, the Government disclosed to the Court and the defense that, based on representations by Soleimani and Gabay in preparation and the information available to it, both witnesses had been the subject of lawsuits in housing court and regulatory actions. On January 19, 2020, in its Motion to Preclude, the

---

[4] To the extent the Court construes Teman's motion to be a request for a new trial based on newly discovered evidence – putting aside any alleged *Brady* violation – Teman's claim also fails. To merit relief based on a claim of newly discovered evidence, the burden is on the defendant to satisfy five elements: (1) that the evidence is "newly discovered after trial"; (2) that "facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence"; (3) that "the evidence is material"; (4) that the evidence "is not merely cumulative or impeaching"; and (5) that "the evidence would likely result in an acquittal." *James*, 712 F.3d at 107 (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)). Teman cannot meet the threshold requirement of showing that he could have obtained this information before trial. He was fully aware of the existence of the Housing Court proceeding – because the Government disclosed this information – and had every ability to obtain documents and materials relating to the proceedings, including the transcript at issue here, before trial. Moreover, for the reasons stated above, Teman cannot show that his newly discovered evidence is material, that it is not merely cumulative, that it would likely result in an acquittal, or that he exercised due diligence to obtain it in advance of trial.

Government identified a Rent Charge Case involving Elie Gabay. On January 20, 2020, the Government produced records to the defense regarding the Rent Charge Case and other cases against Coney Realty, the company at which Gabay was a senior member. The Government then sought a pretrial ruling based on the information available to it. Put simply, the Government disclosed the information available to it and bore no obligation to conduct discovery from outside sources on behalf of the defendant. *See Bonventre*, 2014 WL 3673550, at *22 (noting that *Brady* is "not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense"); *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("While the *Brady* rule requires the Government to turn over favorable information that it knows about, it does not require the Government to seek out such information like a private investigator and valet . . . gathering evidence and delivering it to opposing counsel.") (internal quotation marks omitted).[5] Teman's motion fails because he cannot show the Government suppressed any evidence.

  *Second*, Teman's motion fails because the purportedly undisclosed evidence of various lawsuits and regulatory actions against its trial witnesses is not favorable to the defense. Exhibits B and C attached to Teman's motion show spreadsheets created from publically available data listing broad categories of "open" violations, and one "closed" violation. The "current status" of these violations is "false certification," which occurs when a building owner certifies that a condition has been satisfied but "re-inspection of the condition" by the New York City Housing and Development Board ("HPD") "found that condition had not been properly corrected." Exhibit D at 31. But this evidence involves certifications by the building owner(s) – which may or may not include Soleimani and Gabay – and shows nothing about whether Soleimani and

---

[5] Because the Government did not possess the purportedly suppressed information about alleged regulatory violations, there was also no Jencks Act violation here.

Gabay were involved in any of the purportedly false certifications. In any event, the certifications that were purportedly "false" do not impeach the veracity of the certifier, as the HPD's denomination of a certification as "false" only signifies that the deficient conditions were not remediated to the satisfaction of the HPD. As such, any impeachment value of these alleged failures to properly remediate – for which there is no evidence of Soleimani or Gabay's involvement – is essentially non-existent. *Cf. United States v. Sampson*, 242 F.3d 629, 641-42 (5th Cir. 2001) (in case brought under the federal Fair Labor Standards Act to recover overtime pay, the court upheld the district court's use of Rule 403 to exclude impeachment evidence of the corporation's violation of building codes, where the district court found that this evidence had little probative value to the issue of the witnesses' credibility and virtually no relevance to the material issues in the case).

Likewise, Exhibits E and F attached to Teman's motion show spreadsheets created from publically available data listing enforcement actions initiated by HPD. This evidence also lacks any impeachment value. Exhibit E shows four "false certification" actions and three "comprehensive" against various management entities and Soleimani from 2018 to 2020. Exhibit F shows three "comprehensive" actions against various management entities, Gabay, and two principals at Coney Management. Again, unproven allegations lodged against building management companies, in which senior members were listed as respondents, lack any impeachment value. Teman offers nothing about the nature of the "comprehensive" actions against Soleimani and Gabay, which potentially encompass various categories of regulatory violations that have nothing to do with credibility, including "failure to timely certify correction of violations" or "failure to file a Multiple Dwelling Registration." Deft's Motion, Exh. G at 1. The limited summary data provided by Teman in no way establishes that these alleged regulatory

violations bear on Soleimani's or Gabay's credibility or that such evidence could have been used in any way to impeach them at trial. In short, there's nothing about the purportedly undisclosed information that suggests it is favorable to the defendant.

*Third*, Teman cannot meet the weighty burden of establishing that the purportedly undisclosed evidence was material to the trial outcome. Teman's spreadsheets show nothing more than a handful of open building violations against large real estate companies and an even smaller handful of unprove allegations against the companies and their senior members. He gives no reason to show that any of these violations would be probative of Soleimani's or Gabay's character for truthfulness, and they very likely would have been precluded at trial under Rule 402, 403, and 608. The central issue at trial was whether Teman had criminal intent when he deposited checks he wrote on behalf of his customers, and he called Reintiz to testify that he had authorized the checks Teman deposited. Although Teman may have wished to paint his victims as unscrupulous landlords, he was not entitled to use open housing violations against his witnesses' companies to attack the witnesses' credibility, and attacking their character for truthfulness was largely irrelevant to the core issues to be decided by the jury. Teman simply cannot show that the undisclosed information was "likely to have changed the verdict," *Avellino*, 136 F.3d at 257, or that the nondisclosure "deprive[d] the defendant of a fair trial." *Coppa*, 267 F.3d at 140.[6]

---

[6] Here too, to the extent the Court construes Teman's motion to be a request for a new trial due to newly discovered evidence – putting aside any alleged *Brady* violation – Teman's claim also fails. For the reasons stated above, Teman cannot show that his newly discovered evidence is "newly discovered" because it was available in a publicly accessible database; that he exercised any due diligence in obtaining the evidence; that the evidence is material; and that the evidence would result in an acquittal. *James*, 712 F.3d at 107. In fact, in December 2019, Teman made social media posts disparaging Soleimani for the number of open HPD violations against him, which prompted the Government to seek a modification of the conditions of Teman's release on bail. *See* ECF Nos. 47 (Government's motion); 50 (Court's Order).

## CONCLUSION

For the foregoing reasons, the Court should deny defendant Ari Teman's Motion for a

New Trial Based on Undisclosed *Brady* and Jencks Act Evidence.

Dated:  New York, New York
         April 24, 2020

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York


                    By:  ____/s/_____
                              Kedar S. Bhatia
                              Assistant United States Attorney
                              Tel.: (212) 637-2465