

Joseph A. DiRuzzo, III, Esq., CPA
954.615.1676
jd@diruzzolaw.com

May 4, 2020

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

   **Re:**   *United States v. Teman,* **case no. 1:19-cr-696**

Dear Judge Engelmayer:

Pursuant to your "individual rules of practice in criminal cases," this letter serves as the Defendant Ari Teman's request for leave to file a reply to the Government's opposition (Doc. # 126) to Teman's motion for a new trial based on undisclosed *Brady* and Jencks Act evidence (Doc. # 118).[1]

Teman desires to file a reply to correct misrepresentations in the Government's submission and to address the Government's arguments in opposition and factual contentions with which the defense disagrees. A reply will focus the issues for the Court's analysis. Additionally, given the COVID-19 outbreak, a written filing (in lieu of oral argument) is reasonable under these unique circumstances.

In particular, the reply will address the following (this list is not intended to be exhaustive):

1. **This Court ordered the Government to obtain and disclose the Housing Court Transcript; The Government's failure to comply with this order cannot excuse its *Brady* violation.**

The Government's reply does not address its failure to comply with this Court's *order* requiring the Government to ascertain "whether there was evidence in the housing court case that [Soleimani] was among the ABJ personnel who dealt with Howell." Tr. at 28-30. *See* Doc. # 118 at p. 11. The Government expressly agreed in open court to comply with this order and "promptly report back to the Court and the defense." *Id.* The Government does not acknowledge, let alone address, its failure to comply with this Court's order. The Government's silence on this point speaks volumes.

---

[1] If the Court is amenable to granting Teman his leave to file a reply, counsel would request at least one calendar week to file the reply.

Instead, the Government avers that it "cannot produce what it does not have." Doc. # 124 at p. 10.[2] But that is exactly the point. The only reason the Government did not have *Brady* material is because it failed to comply with this Court's express order to obtain it after Government counsel agreed to do so. Had the Government complied with this Court's order and obtained the "evidence in the housing court case," the Government would then have had to produce this material. At bottom, the Court should give no credence to the claim that there was no *Brady* violation because the Government failed to comply with this Court's express order.

2.      **The Government improperly faults Teman for not obtaining the Housing Court transcript, admitting it had no reason for failing to comply with this Court's order to do exactly that.**

The Government alleges that "Teman... was fully aware of the existence of the Housing Court proceeding... and had every ability to obtain documents and materials relating to the proceedings... before trial." Doc. # 124 at p. 14. The Government artfully, yet improperly, attempts to shift the blame for its misconduct to Teman. *Cf. Banks v. Dretke*, 540 U.S. 668, 695 (2004) (flatly rejecting the "notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed").

It was the Government that fronted this issue in its motion *in limine* (Doc. # 83) on the eve of trial. And it was the Government that was ordered by this Court to run the factual issue to ground. If, as the Government alleges, Teman was able to obtain this information, surely the Government could as well in compliance with this Court's order (of course the Government fails to address this salient point). Further, Teman and the Court were more than justified to rely upon the Government's unqualified representations. *See Banks, supra.*

The Government cannot now argue that, in essence, Teman (and by extension, the Court) is at fault for not "double checking" the Government's homework.

3.      **The Government violated Teman's due process rights by eliciting – and failing to correct – Soleimani's false testimony.**

Immediately before trial, the Government represented that the Housing Court case was "not probative of Soleimani's character for truthfulness or untruthfulness." Doc. # 83 at 3. This Court then ordered the Government to "inquire of Soleimani whether there was evidence in the housing court case that he was among the ABJ personnel who dealt with Howell." Tr. at 29. Instead of obtaining and disclosing the Housing Court evidence, the Government used a leading question in response to which Soleimani denied involvement with Howell ("And did you misrepresent anything to the tenant or was it others in your company?" Tr. at 502).

---

[2] Specifically, the Government states: "However, the Government did not have the transcript of Soleimani's Housing Court testimony and thus could not possibly have suppressed it." Doc. # 124 at p. 10. As the undisputable facts demonstrate, Teman was able to obtain a transcript of the Housing Court testimony and the Government, with the full weight and resources of the United States no less, would have been able to obtain the transcript if it so chose. It obviously chose not to do so.

401 East Las Olas Blvd., Suite 1400, Ft. Lauderdale, FL 33301
FAX/ 954.827.0340 WEB/ WWW.DIRUZZOLAW.COM

Faced with Soleimani's Housing Court testimony, the Government now concedes that "Soleimani…had met with Howell and signed the settlement agreement in which ABJ Milano agreed to pay Howell to vacate his apartment." Doc. # 124 at p. 11.

It is thus undisputed that Soleimani personally interacted with Howell and, pursuant to this Court's ruling, such evidence should have been presented to the jury. Contrary to the Government's position, Soleimani's Housing Court testimony (acknowledging extensive dealings with Howell) is absolutely *inconsistent* with his trial testimony in this case (denying involvement with Howell). Thus, the Government elicited perjurious testimony, which is constitutionally impermissible.  *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 145–46 (3d Cir. 2017) (a defendant's due process rights are violated when the government "knowingly presents or fails to correct false testimony in a criminal proceeding").

*Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002) controls the outcome.  In *Jenkins*, the Second Circuit noted "the heightened opportunity for prejudice where the prosecutor, by action *or inaction, is complicit in the untruthful testimony*." *Id.* at 295 (emphasis added).   *See also Hysler v. Florida*, 315 U.S. 411, 413 (1942) (whenever the government "obtains a conviction through the use of perjured testimony, it violates civilized standards for the trial of guilt or innocence and thereby deprives an accused of liberty without due process of law").

Here, the Government not only elicited perjurious testimony from Soleimani, but also failed to take action to correct the introduction of this false testimony.[3]  Thus, even if Teman had some obligation to double-check the Government's representations (he did not), such was of no consequence as the Government was obligated to correct false testimony by Solemani in the first instance. At bottom, "[w]hen even a single conviction is obtained through *perjurious or deceptive means*, the entire foundation of our system of justice is weakened." *Hayes v. Brown*, 399 F.3d 972, 988 (9th Cir. 2005) (*en banc*) (emphasis added).

**4.      The Government ignores its false statements and undisclosed *Brady* about Gabay.**

In its motion *in limine*, the Government unhesitatingly stated, "A court imposed treble damages on Gabay…but it has no bearing on his credibility." However, the new evidence never disclosed by the Government clearly reflects that treble damages resulted from *willfully* overcharging tenants. The Government is silent on this issue.

---

  Other courts of appeal are in agreement as the Eighth Circuit has held that defense counsel's knowledge of false testimony "is of no consequence" under *Napue* and that a new trial is required where "the prosecutor breache[s] her duty to correct the falsehoods." *United States v. Foster*, 874 F.2d 491, 495 (8th Cir. 1988). Similarly, the Ninth Circuit has emphasized that the burden rests with the government "to correct false testimony given by its witnesses, even when the defense knows the testimony was false[.]" *Soto v. Ryan*, 760 F.3d 947, 968 (9th Cir. 2014).  This duty belongs to prosecutors not merely because they are ethically required to correct perjury, but because their word carries greater weight with juries who "frequently listen[] to defense counsel with skepticism." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000).

Given the foregoing, Teman submits that providing him leave to file a reply brief is more than appropriate under these unique circumstances.

Kind Regards,

/s/ Joseph A. DiRuzzo, III      Digitally signed by /s/ Joseph A. DiRuzzo, III
                                Date: 2020.05.04 11:50:11 -04'00'

Joseph A. DiRuzzo, III

JAD/

cc: AUSA K. Bhatia, via ECF; AUSA E. Imperatore, via ECF; J. Gelfand, via ECF


Defendant is granted leave to file a reply no later than May 11, 2020 at 5 p.m.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

May 4, 2020