UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-CR-696-PAE |
| | ) |
| ARI TEMAN, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL BASED ON UNDISCLOSED *BRADY* AND JENCKS ACT EVIDENCE**

Defendant Ari Teman ("Teman"), by and through undersigned counsel, Justin Gelfand and Joseph A. DiRuzzo, III, respectfully files this reply in support of his motion for new trial based on undisclosed *Brady* and Jencks Act evidence. (Doc. 118).

When reading the Government's brief, it is easy to lose sight of the Government's egregious misconduct underlying its *Brady* violations—and the resulting prejudice to Teman. The Government failed to disclose *Brady*, *Giglio*, and Jencks Act material to Teman; made misrepresentations to this Court and to the defense before and during trial about the nature of the undisclosed evidence; elicited perjurious testimony from a material witness, thereby foreclosing cross-examination on the topic by Teman based on this Court's order; and brazenly failed to comply with an express order of this Court to locate discovery and disclose it to the defense. Remarkably, in its 22-page response, the Government fails to acknowledge, much less address, the bulk of these issues.

Regarding Soleimani, the Government now claims it never had the undisclosed evidence personally implicating him in a scheme to defraud a vulnerable tenant. But this Court expressly

ordered the Government to obtain this evidence and to "[t]hen promptly report back to the Court and the defense." (TR. at 32). The Government expressly accepted this order, stating in open court: "Understood. We'll inquire with Mr. Soleimani and we'll give an update to the Court." (TR. at 33). Now faced with the very evidence it was charged with discovering, the Government cannot explain its failure to comply with this Court's order. Even more, the Government claims that it "took a defense-favorable approach and elicited testimony about an adverse finding against Soleimani's company." (Doc. 124 at 5). Not so. There was nothing "favorable" to the defense about the prosecutor's use of a leading question to elicit perjury by Soleimani. Unbeknownst to the Court and the defense at the time, the Government's conduct further precluded the defense from cross-examining Soleimani on this issue, thereby preventing the jury from discovering Soleimani had lied *in their presence*, a discovery that certainly would have influenced the jury's assessment of his credibility and might well have changed its verdict. At trial, Soleimani testified that only "others" misled tenant Stanley Howell—while the undisclosed evidence of Soleimani's own Housing Court testimony demonstrates his extensive *personal* involvement in the scheme to mislead Howell. (*See* Doc. 118-1 at 55-61).

Similarly, the Government does not even attempt to address the fact that its unqualified pretrial misrepresentation that "there is no indication that any landlord-tenant complaints or lawsuits against Soleimani, Gabay, or their companies would be probative of their 'character for truthfulness or untruthfulness'" (Doc. 83 at 3) has proven false. To be clear, the Government did not represent it lacked knowledge as to whether the complaints and lawsuits were probative; the Government affirmatively stated they were not. (*Id*.). However, the undisclosed evidence reveals that both Soleimani and Gabay have documented histories of filing false certifications, and that

Gabay was found to have willfully defrauded a tenant. On this too, the Government offers no response.

Where it does attempt to address its *Brady* and Jencks Act violations, the Government's response boils down to one fatally-flawed premise: "The Government cannot produce what it does not have." (Doc. 124 at 14). However, as it did before and during trial, the Government *again* ignores this Court's order to "inquire of Soleimani whether there was evidence in the housing case that he was among the ABJ personnel who dealt with Howell," to "follow up and do so immediately" if his answer left any doubt, and to "[t]hen promptly report back to the Court and the defense." (TR. at 29). In other words, this Court ordered the Government to obtain what it did not have and the Government responded: "Understood. We'll inquire with Mr. Soleimani and we'll give an update to the Court." (TR. at 33).

Rather than acknowledge its violation of this Court's order, the Government attempts to fault Teman for not obtaining the undisclosed *Brady* material sooner. In doing so, the Government further ignores no less than the Supreme Court, which flatly rejected the "notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed" and directed that defendants like Teman are entitled to presume that "public officials have properly discharged their official duties." *Banks v. Dretke*, 540 U.S. 668, 695-96 (2005). This is especially true where, as here, the Government – at the Court's order – has undertaken to conduct an investigation and failed to do so.

More importantly, the Government's unwarranted attack on Teman only further highlights the logical inconsistency of its own position. The Government argues that "[Teman] was fully aware of the existence of the Housing Court proceeding… and had every ability to obtain

3

documents and materials relating to the proceedings… before trial." (Doc. 124 at n.4).[1] But if – as the Government alleges - Teman "had every ability" to obtain the undisclosed *Brady* "before trial," so did the Government. (*Id*.). And consistent with *Brady* and its progeny, this Court ordered the Government, *not* Teman, to "follow up… immediately" and to "promptly report back to the Court and the defense." (TR. at 29).

The Government thus concedes it "had every ability" to obtain the undisclosed evidence before trial. Despite this Court's express order and Government counsel's acknowledgement in open court, the Government never disclosed this critical evidence. Instead, the Government misrepresented the nature of this undisclosed evidence and parlayed its misrepresentation into a pretrial exclusion of a compelling line of cross-examination of the witness who first turned a billing dispute into a criminal investigation.

### I.   The Government's Response Fails to Explain or Justify its Pretrial and Trial Misrepresentations

Teman's motion identifies numerous independent examples of evidence undisclosed by the Government, each of which constituted *Giglio* materials that should have been disclosed. In one case, the Government suppressed evidence establishing Soleimani's personal involvement in deceiving a vulnerable tenant. In another instance, the Government withheld evidence Gabay was found to have committed *willful* fraud. In yet other instances, the Government suppressed evidence that regulators have repeatedly charged both Soleimani and Gabay with filing false certifications under the penalties of perjury.

---

[1] Though this Court need not reach this issue, the Government's premise is false. The Government first alerted the defense to the Housing Court proceedings at issue on a holiday weekend 48 hours before trial. As detailed in Teman's opening brief, obtaining the underlying materials can take weeks and it was thus impossible for Teman to independently procure this evidence for use at trial. (Doc. 118 at 20-23). The Government also makes no attempt to address this argument.

Against this backdrop, the Government's response boils down to this: the Government did not have this evidence, therefore it was not suppressed. But that misses the core of Teman's argument. On several occasions, *the Government made affirmative, unqualified representations about the nature of this undisclosed evidence*. And both before and during trial, this Court and the defense reasonably relied on the Government's representations– representations Teman has now shown to be false.

For instance, the Government expressly represented that "Soleimani and his companies have been the subject of lawsuits and complaints… that *plainly do not bear upon his credibility*…" (*See* Doc. 83 at 1-2, emphasis added). The Government further represented that "there is *no indication* that *any* landlord-tenant complaints or lawsuits against Soleimani…would be probative of [his] 'character for truthfulness or untruthfulness.'" (*Id*. at 3, emphasis added). But, to borrow the Government's verbiage, these categorical representations were "plainly" false.

Regulators charged Soleimani with "false certification of correction of violations"—*i.e.*, falsely certifying—under the penalties of perjury—that housing violations had been corrected when, in fact, they had not. (*See* Doc. 118-4 at 31) (explaining that "[t]he violation was certified as corrected by the Owner…HPD found that condition had not been properly corrected" and that the "violation is open and is subject to civil penalties for false certification"). Contrary to the Government's unequivocal pretrial representations, this evidence "plainly" *does* bear upon Soleimani's credibility. Faced with this contradiction, the Government offers no response— because there is none.

Regulators have further seen it necessary to file lawsuits against Soleimani as a result of his *false certifications*. (*See* Docs. 118-5, 118-7). Contrary to the Government's pretrial

5

representations, this, too, "plainly" bears on Soleimani's credibility. Yet the Government offers no response—because there is none.

As for the Howell case, the Government expressly represented to this Court, "[w]e'll inquire with Mr. Soleimani and we'll give an update to the Court." (TR. at 33). But the Government never did what it said it would do. Again, the Government offers no response to failing to comply with this Court's order—because there is none.

Regarding Gabay, the Government similarly represented that the tenant complaints and lawsuits against him did not involve allegations he "acted dishonestly *or was found not to be credible by a court or regulator*." (Doc. 83 at 3) (emphasis added). Yet like Soleimani, regulators have charged Gabay with numerous instances of "false certification of correction of violations," and have filed lawsuits against Gabay for these *false certifications*. Contrary to the Government's representations, this evidence "plainly" bears on Gabay's credibility. Yet the Government offers no response—because there is none.

Moreover, even while acknowledging Gabay was fined "treble damages" by a housing court, the Government misrepresented the significance of this penalty to this Court and the defense. Specifically, the Government represented there were no allegations Gabay "acted dishonestly or was found not to be credible by a court or regulator." (*Id.*). Yet the Government failed to disclose that treble damages constitutes a finding the owner (here, Gabay) *willfully* overcharged the tenant. (*See* Doc. 118 at 20)[2] (explaining that an award of treble damages constitutes a finding that "the overcharge is deemed to be willful").

---

[2] This document (New York State Division of Housing and Community Renewal Office of Rent Administration, Policy Statement 2019-1, dated October 16, 2019) was referenced in Teman's underlying motion as "Exhibit E" but was inadvertently not filed with the remainder of exhibits. It is attached to this pleading and is nevertheless a publicly-available document.

The Government's assertion that it did not have evidence this Court ordered it to obtain and disclose further strains credulity in view of recent activities by this same U.S. Attorney's Office. In a highly-publicized case Teman cited in his motion—*United States v. N.Y.C. Housing Authority*, No. 1:18-cv-05213 (WHP) (S.D.N.Y. 2018)—this very U.S. Attorney's Office extensively documented claims of dishonest certification of building repairs. (*See* Doc. 118 at 18-19). There is no question the Government is deeply familiar with the deceptive practices Soleimani and Gabay have a documented history of employing. With this knowledge, there is simply no excuse for the Government to have misrepresented the evidence regarding Soleimani and Gabay as it did. The Government offers no response—because there is none.

The Government's failure to disclose this evidence alone requires a new trial. But this brand of prosecutorial misconduct is worse. The Government did not merely neglect to disclose *Brady*, *Giglio* and Jencks Act materials (itself a substantial constitutional violation). The Government affirmatively misrepresented to the defense and to this Court *facts* which are ultimately disproved by the undisclosed evidence. This further prejudiced Teman, who relied on the Government as he is entitled to. *See Banks*, 540 U.S. at 695-96 (a defendant is entitled to assume "public officials have properly discharged their official duties").

To be clear, the question before this Court is *not* whether the Government intentionally committed misconduct—as *Brady* violations look to the integrity of the evidence, not whether the prosecutors acted in bad faith. In this case, there is no meaningful dispute that Teman was deprived of significant *Giglio* materials on two critical prosecution witnesses—and he relied to his detriment

on the Government's unequivocal representations to the defense and to this Court. That warrants a new trial.

## II. The Government Introduced Perjurious Testimony But Inexplicably Claims Soleimani Told the Truth

Teman's motion cites an abundance of on-point, controlling authority requiring a new trial where, as here, "a material witness has intentionally lied with respect to any matter" in response to questions by the prosecutor. *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir. 1975). As the Second Circuit explained, in that instance, "it is difficult to deny that the jury, had it known of the lie, 'might' have acquitted." *Id.* The Government does not challenge this legal premise—and defends its conviction only by asserting that Soleimani did not lie.

To be clear, the Government expressly asked Soleimani: "And did you misrepresent anything to the tenant [Howell] or was it others in your company?" (TR. at 502). Soleimani answered, "[i]t was others." (*Id.*)

Context matters. The Government's question came after this Court ordered the Government to find out the answer to this question and to "promptly report back to the Court and the defense." (TR. at 29). But instead of complying with this Court's order and making the necessary disclosures to the Court and the defense, the Government brazenly disregarded this order and further employed a leading question to elicit from Soleimani that only "others"—not him— had misled the tenant. The Government did so knowing this Court had precluded Teman from cross-examining Soleimani on this subject. (*See* TR. at 30) ("you are not to inquire into them in court unless and until I have given you the affirmative green light to do so").

Yet Soleimani's undisclosed Housing Court testimony now reveals his extensive *personal* involvement in the scheme to mislead Howell. Soleimani testified to being personally involved in

8

drafting the agreement later invalidated by the Housing Court; personally convincing Howell to sign this predatory agreement; personally signing the agreement in Howell's presence; personally showing Howell other apartments to induce him to vacate the apartment; and personally directing his attorney to evict Howell. (*See* Doc. 118-1 at 55-61).

Thus, there is no question Soleimani lied under oath before this jury and that he did so in response to the Government's leading question. That leaves two possibilities: either the Government *intentionally* elicited Soleimani's perjurious testimony—in which case reversal is "virtually automatic," *see Stofsky*, 527 F.2d at 243—or the Government unwittingly elicited perjurious testimony—in which case a new trial is warranted because the Government would have known the truth had it complied with this Court's express order to discover the answer to this question, *see id*. at 246-47.

### III. The Government's Response Fails to Engage with the Core of Teman's Arguments

The Government offers no response to the following facts and arguments, among others, set out in Teman's motion:

1. Soleimani and Gabay's documented histories of regulatory actions and lawsuits stemming from "false certifications" each has made;

2. A court imposed treble damages against Gabay, constituting a finding he willfully overcharged a tenant;

3. The Government promised in open court to "inquire with Mr. Soleimani and [to] give an update to the Court" (TR. at 33) but failed to do so;

4. The Government leveraged its failure to comply with this Court's order to prevent the defense from exposing Soleimani's perjury before the jury (as this Court foreclosed cross-examination on this topic based on the Government's misrepresentations);

5. By failing to disclose the truth to the defense or this Court, the Government prevented the jury from properly assessing Soleimani's and Gabay's credibility;

6. By questioning Soleimani regarding the Housing Court case on direct examination, the Government brought the topic within the scope of the Jencks Act and was thus required to disclose Soleimani's Housing Court testimony to the defense—but failed to do so; and

7. This U.S. Attorney's Office understands through its own litigation that Soleimani and Gabay's documented histories of "false certification" actions and lawsuits bear significantly on their credibility and underscore the fact that both would be capable of and willing to make false allegations against a vendor.

By failing to respond to these issues—each of which warrants a new trial—the Government has waived any counterarguments to Teman's position. *See Clem v. Lomell*, 566 F.3d 1177, 1182 (9th Cir. 2009) ("where appellees fail to raise an argument in their answering brief, 'they have waived it'") (citing *United States v. Nunez*, 223 F.3d 956, 958-59 (9th Cir. 2000)); *United States v. Ford*, 184 F.3d 566, 577 n.3 (6th Cir. 1999) ("Even appellees waive arguments by failing to brief them") (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc)).

But more importantly, the Government's silence on these issues speaks volumes. This is not the Justice Department's finest moment. Days ago, the Government moved to dismiss its high-profile prosecution of Michael Flynn after a guilty plea in the aftermath of revelations of *Brady* violations. There, the Government acknowledged, "government prosecutors have a duty to do justice." *United States v. Flynn*, Case. No. 1:17-232-EGS (Doc. 198) (D.D.C. May 7, 2020) (internal citations omitted). Indeed, *Brady* and its progeny are predicated on a view of "the prosecutor as the representative of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (citations and ellipses omitted).

In this case, the prosecution unquestionably failed to disclose impeachment evidence to the defense. But it does not end there. The prosecution further misrepresented the nature of that

evidence to the defense and this Court, elicited perjury from its star witness, and used a leading question to foreclose any cross-examination on the subject by the defense.

The Government now asks this Court to give it a pass at Teman's expense because the Government "cannot produce what it does not have." (Doc. 124 at 14). Failure to comply with a court order intended to protect a defendant's constitutional rights does not excuse prosecutorial misconduct—it *is* prosecutorial misconduct.

### IV.     Conclusion

Based on the foregoing and on the arguments set forth in Teman's underlying motion, Teman asks this Court to grant a new trial.

Respectfully submitted,

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
MO Bar # 62265
MARGULIS GELFAND, LLC
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com

— and —

*/s/ Joseph A. DiRuzzo, III*
Joseph A. DiRuzzo, III
NY Bar # 4417853
DIRUZZO & COMPANY
Joseph A. DiRuzzo, III
401 East Las Olas Blvd., Suite 1400 Ft. Lauderdale, FL 33301
Telephone: (954) 615-1676
Facsimile: (954) 827-0340
jd@diruzzolaw.com

**Attorneys for Teman**

                                */s/ Alan Dershowitz*
                                ALAN DERSHOWITZ*
                                1575 Massachusetts Avenue
                                Cambridge, MA 02138

                                **Of Counsel**

                                *\*Member of the Massachusetts Bar and the United States Court of Appeals for the Second Circuit; will seek* pro hac vice *admission in this case*

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

> */s/ Justin K. Gelfand*
> JUSTIN K. GELFAND, #62265
> 8000 Maryland Ave., Ste. 420
> St. Louis, MO 63105
> Telephone: (314) 390-0234
> Facsimile: (314) 485-2264
> justin@margulisgelfand.com
> ***Attorney for Teman***