**SHER TREMONTE LLP**

November 2, 2020

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Ari Teman*
                  Case No. 19-cr-696 (PAE)

Dear Judge Engelmayer:

      Our firm has been retained to represent Ari Teman in connection with certain post-conviction proceedings. We write regarding ongoing *Brady* investigation in this case and mindful of the Court's October 30, 2020 Order relating to newly-enacted Federal Rule of Criminal Procedure 5(f). Specifically, we write to respectfully request that the Court specifically direct that the Government make additional disclosures relating to Joseph Soleimani's statements concerning his role in *ABJ Milano LLC v. Stanley Howell*, 61 Misc.3d 1037, Index. No. 65131/2017 (N.Y. Civ. Ct. 2018) (the "housing court proceeding"), or the facts underlying that proceeding. We make this request because, based on our review of the record, as well as the 3500 material produced by the Government before and during trial, there remain questions as to whether the Government complied with its *Brady* and *Giglio* obligations, as well as its duty of candor to this Court.

      In ruling that subsequently discovered evidence relating to the housing court proceeding – specifically the transcript of the proceeding – did not merit a new trial, the Court appeared to assume that the Government had disclosed all of Soleimani's statements concerning the matter *prior* to his direct testimony at trial. Specifically, the Court: (1) relied on the Government's assertion that it had produced "all written statements of Soleimani's that were in its possession, including notes from its interviews of Soleimani," *see* June 5, 2020 Opinion & Order ("Opinion & Order") at 97 n.36; and (2) relied on the Government's "attest[ation]" that "Soleimani indicated that he had dealt with the tenant, but that he *did not indicate* that he had made representations to the tenant about whether ABJ would renew his lease," *id.* at 102 (emphasis added).

      However, although the Court directed the Government on January 21 to inquire of Soleimani regarding the housing court proceeding and to "promptly report back to the Court and the defense" the results of that inquiry (Trial Transcript ("Trial Tr.") at 29),

The Honorable Paul Engelmayer
November 2, 2020
Page 2 of 4

*none* of the notes relating to the Government's January 21, January 22, and January 23 meetings with Soleimani reflects any statements concerning the housing court matter. *See* U.S. Attorney's Manual § 9-5.002 ("Although not required by law, generally speaking, witness interviews should be memorialized by the agent. . . . Material variances in a witness's statements should be memorialized[.]").  Nor did the government orally disclose any statements made by Soleimani concerning the housing court matter following the Court's colloquy.  In fact, the only notation reflecting a conversation with Soleimani relating to the housing court matter are notes from January 7, 2020 (well before the January 21 colloquy with the Court).  *See* Notes of January 7, 2020 Meeting, attached as Exhibit A.[1]  At that meeting, various topics were discussed, including Soleimani's decision to replace ABJ's GateGuard intercoms with those from MVI Systems, Inc., a GateGuard competitor. *Id.*  The last line of notes from this January 7, 2020 meeting reads: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*  The notes did not reference a housing court proceeding, or a court order.[2]

      The absence of any disclosure before or during trial concerning the nature of Soleimani's dealings with the tenant is troubling given not only the Court's order directing that the Government make such inquiry, but also the Government's acknowledgement in its *post*-trial brief that it questioned Soleimani at trial on this issue "based on Soleimani's *representations* suggesting that '*he* was among the ABJ personnel who *dealt* with [the tenant].'"  Gov't's Apr. 27, 2020 Mem. of Law ("Gov. Mem.") at 6 (emphasis added).

---

[1] Because the notes are subject to the Protective Order, Exhibit A is filed under seal.

[2] The Government's brief in opposition to Mr. Teman's post-trial motions misleadingly suggests that its 3500 production did disclose Soleimani's statements relating to the nature of his dealings with the tenant. Immediately following its claim that Soleimani had made representations suggesting that "he was among the ABJ personnel who dealt with [the tenant]," the Government inserted the following footnote:

> Before and during trial, the Government produced to the defense notes from a number of phone calls and meetings with Soleimani. Notes from these interviews, which were disclosed to the defense, show that on January 7, 2020, Soleimani disclosed the fact of a housing court dispute with Stanley Howell. Notes from this meeting were produced to the defense on January 15, 2020, when the Government produced the bulk of its Jencks Act material. The Government met or spoke with Soleimani several times prior to and during trial, including on January 11, January 14, January 19, January 21, January 22, and January 23.

Gov. Mem at 6, n.2.  However, as just indicated, the notes of the January 7 interview did not, in fact, disclose the housing court dispute, and the notes of the remaining interviews contain nothing about that dispute.

The Honorable Paul Engelmayer
November 2, 2020
Page 3 of 4

As reiterated in the Court's October 30, 2020 order, "the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972)." *In Re: Fed. R. of Crim. Proc. 5(f)*, No. 19-Cr-696-PAE (Oct. 30, 2020), ECF No. 153. Importantly, "*[s]uch information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial.*" *Id.* (emphasis added). Soleimani's statements to the Government as to his dealings with the tenant – the precise content of which is still unclear – fall within the purview of *Giglio* and *Brady*, yet were not disclosed in advance of Soleimani's testimony. Evidence that Soleimani engaged in misleading conduct and lied to a vulnerable tenant in order to make more money for ABJ could certainly have been the basis of effective cross-examination (had it been disclosed in advance), given that Soleimani had filed the complaint with the police and was the only witness at trial to claim that he did not recall reviewing GateGuard's "terms and conditions." *See* Trial Tr. at 812. In its opinion denying post-trial motions, the Court noted that the "defense did not ask any questions about this topic on cross-examination or seek leave to do so." Opinion & Order at 90. But deprived of the information that would form the basis for cross-examination, the defense had no opportunity to do so.

Prior to filing this letter, we sought clarification from the Government as to what statements Soleimani had made concerning his dealings with the tenant – first by telephone and then by letter dated October 23, 2020. *See* October 23, 2020 Letter of Justine A. Harris, attached as Exhibit B. The Government has refused to provide any further disclosures. It noted that it had provided notes of Soleimani's pre-trial statements in its 3500 production, as well as information about his statements in its post-trial briefs. The Government reiterated that it "is aware of its disclosure obligations, has made appropriate disclosures, and believes that no further disclosures are required at this time." *See* Government Letter dated October 29, 2020, attached as Exhibit C.

Taking the Government's letter together with its post-trial representations, the Government appears to concede that Soleimani made statements concerning his dealings with the tenant before he testified on the subject. Yet the Government has made no disclosures as to this issue, despite its continuing obligation to do so. Accordingly, we respectfully request that the Court direct the Government to:

(1) disclose any statements made by Soleimani (and the date of such statements) concerning his dealings with the tenant at any time, whether or not such statements were memorialized in writing;
(2) explain why any such statements were not disclosed prior to Soleimani's testimony; and
(3) produce any internal memoranda, correspondence or communication relating to the failure to disclose such statements.

While the lack of notes suggests that there may be no written record of Soleimani's statements, that, of course, does not relieve the Government of its disclosure obligations. While the Government has no legal duty under the Constitution or the

The Honorable Paul Engelmayer
November 2, 2020
Page 4 of 4

Jencks Act to take notes during meetings with witnesses, courts have emphatically called the failure to do so in order to avoid disclosing favorable statements to the defense to be "quite inconsistent with the obligations of a law enforcement officer representing the United States Government," and tantamount to "[p]laying games with evidence." *United States v. Bernard*, 625 F.2d 854, 859 (9th Cir. 1980); *see also* U.S. Attorney's Manual § 9-5.002 ("Although not required by law, generally speaking, witness interviews should be memorialized by the agent. . . .  Material variances in a witness's statements should be memorialized."). And of course, a failure to take notes does not relieve the Government of its "obligation to inform the accused of information that materially impeaches its witness." *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007).  "This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions." *Id.*

       We appreciate the Court's consideration.

                                    Respectfully submitted,

                                    /s/
                                  Justine Harris
                                  Noam Biale

cc:      All Counsel of Record