

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2021

**BY CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Ari Teman*, S2 19 Cr. 696 (PAE)

Dear Judge Engelmayer:

      The Government respectfully writes in opposition to Ari Teman's ("Teman" or the "defendant") letters dated April 28, 2021 (Dkt. No. 218, the "April 28 Letter") and May 14, 2021 (Dkt. No. 222, the "May 14 Letter") seeking vacatur of his conviction, a new trial, and/or bail pending appeal, and in further support of the Government's request for restitution and forfeiture in this matter. As set forth in further detail below, the Government has amply established the bases and amounts of restitution and forfeiture in this matter and no further hearing is warranted. The defendant's untimely challenges to his conviction and related request for bail pending appeal fare no better. The Bank of America ("Bank of America" or the "Bank") witness offered proper and accurate lay witness testimony concerning the Bank's understanding that it could not cover its losses from the defendant's other accounts. And the Government made proper arguments concerning the significance of the transfers by the defendant from one account to another that prevented the Bank from covering its losses. Having failed to timely object to the testimony or the Government's arguments, the defendant's latest effort to claim that the Bank could have covered its losses is both untimely and irrelevant. Accordingly, the defendant's motions must be dismissed.

      **A.  Procedural History**

      On January 29, 2020, a jury convicted the defendant on all counts of Indictment S2 19 Cr. 696 (PAE). Since that time, there has been extensive post-trial litigation. On February 26, 2020, the defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial under Rule 33. (Dkt. No. 111). While that motion was pending, on April 9, 2020, the defendant made a second Rule 33 motion, alleging that a new trial also was warranted because of disclosure failures by the Government. (Dkt. No. 118). On June 5, 2020, this Court issued a lengthy opinion denying all of the defendant's post-trial motions.

      Sentencing initially was scheduled to proceed on December 1, 2020, but was adjourned so that the parties could address issues relating to restitution and forfeiture, among others. On January 28, 2021, the Court requested that the parties submit briefing on the issues of bail pending appeal

and restitution and forfeiture. On April 2, 2021, the Government submitted a letter detailing its position on forfeiture and restitution. (Dkt. No. 215, the "Restitution-Forfeiture Letter"). By Order dated April 26, 2021, the Court set a modified briefing schedule, directing the parties to address certain specific issues and specifically noting that it "[did] not authorize any additional submissions." (Dkt. No. 217, the "April 26 Order" at 3). Thereafter, the defendant submitted the April 28 and May 14 Letters, which fail to meaningfully address the issues specified in the April 26 Order, and instead request post-trial dismissal of the indictment or, in the alternative, a new trial. The defendant explicitly describes the May 14 Letter as a "supplement [to the defendant's] previous submission in support of vacatur of Mr. Teman's conviction." (May 14 Letter at 1). In effect, he has made a third, untimely, Rule 33 motion.

The briefing schedule set forth by the April 26 Order directed that the Government's response be submitted by May 26, 2021. However, in view of the wide-ranging issues raised by the defendant's April 28 and May 14 Letters and not contemplated by the April 26 Order, the Government requested, and the Court' granted, a two-week extension of the Government's deadline to respond. (*See* Dkt. Nos. 223, 224).

### A.   Restitution and Forfeiture

The defendant has offered neither substance nor law that undermines the facts and arguments set forth in the Government's Restitution-Forfeiture Letter and, more specifically, Vice-President and Senior Fraud Investigator Karen Finocchiaro's trial testimony and affidavit (the "Finocchiaro Affidavit"). Instead, in a single paragraph, the defendant, proceeding from an incorrect premise, argues, in sum, that Bank of America is not entitled to restitution to the extent it failed to recover losses by claiming funds left in other of the defendant's non-GateGuard accounts; and, further, that the Finocchiaro Affidavit is insufficient to establish a restitution amount and that the Court should hold a hearing.[1] The defendant concedes that "Professor Fraher's declaration does not specifically address restitution" but nonetheless argues that "it establishes that [Bank of America] may have waived its remedies to recover at least so much of its loss which remained in [the defendant's] other accounts and which it refunded even after the jury's verdict." (*Id.*). From that the defendant requests that the Court require a representative of Bank of America to testify on the issue of restitution.

The defendant cites not a single case in support of his claim that Bank of America had to recover its losses from his non-GateGuard accounts or waive restitution in those amounts. "[R]estitution attempts to compensate for loss by 'restoring [the victim] to a position he occupied before [the injurious] event." *United States v. Boccagna*, 450 F.3d 107, 119 (2d Cir. 2006) (internal citations and quotations omitted). In seeking to accomplish that goal, "[u]ncertainties with respect to the amount in question should be resolved in favor of the victim in accord with the statutory focus on making the victim whole." *United States v. Donaghy*, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008), *aff'd sub nom. United States v. Battista*, 575 F.3d 226 (2d Cir. 2009) (internal citations omitted). Here, there is no ambiguity: Bank of America cannot recoup its loss. The Government's Restitution-Forfeiture Letter set out, in detail, the background, applicable law, and

---

[1] While the defendant purports to challenge forfeiture in this case, his May 14th letter does not address the propriety of the Government's forfeiture calculation, and solely attacks the restitution numbers.

documentation supporting the Government's request for restitution and forfeiture, including the Finocchiaro Affidavit. Finocchiaro accurately testified at trial about Bank of America's ability to recoup certain losses (*see* Restitution-Forfeiture Letter at 2-3; *see also* Tr. 234-36); between trial and the initial sentencing proceeding on December 1, 2020, Finocchiaro was told, mistakenly, that a portion of Bank of America's total loss—approximately $13,477.37—was offset by funds in one of the defendant's accounts, when that was not in fact the case (*see* Restitution-Forfeiture Letter at 4-5, Ex. 1); and, ultimately, the only change to Bank of America's total loss amount was to reduce it by the value of fees in one account, $647.85, resulting in a revised total loss amount of $259,340.32 (*id.*). Indeed, even if Bank of America theoretically *could* have recovered funds from the defendant's non-GateGuard accounts, it is indisputable those funds were returned to the defendant and they now are not recoverable. (*See* Finocchiaro Aff. ¶ 7). The factual record was clear at trial, and is clear now, that Bank of America cannot recover its losses.

To the extent the defendant offers a reason to seek live testimony from Finocchiaro, it is speculative at best. Sworn affidavits, like the Finocchiaro Affidavit, are sufficient to establish restitution and forfeiture. *See United States v. Kinney*, 684 F. App'x 73, 75-76 (2d Cir. 2017) (collecting cases); *United States v. Grabsky*, 330 F. App'x 259, 263 (2d Cir. 2009) (collecting cases). Indeed, Finocchiaro's affidavit is further supported by her uncontested trial testimony. (*See, e.g.*, Restitution-Forfeiture Letter at 2-3). In the face of this well-established law, the defendant makes the extraordinary assertion, based on one out-of-district case, that if Bank of America "declines to appear subject to cross-examination to assert its right to any restitution … [Bank of America] should be deemed to have waived restitution." (May 14 Letter at 7). The defendant's reliance on *United States v. South* is misplaced. 2013 U.S. Dist. LEXIS 116656, at *3-4 (D. Montana July 12, 2013). In *South*, after an initial restitution hearing, the district court found there was insufficient information to make a ruling on restitution, reserved judgment, and referred the matter to a magistrate judge for a hearing on restitution. The bank representative, who had testified at the initial hearing, did not testify at the second restitution hearing—referred for further inquiry on that specific issue—and the government there argued that the Court should order restitution based on the representative's prior testimony and related documentation submitted by the bank. (*Id.* at *4). The court rejected that argument and found restitution was not warranted.

Here, the bank representative, Finocchario, testified at trial and prior to sentencing submitted a sworn affidavit and updated documentation relating to a discrete question about restitution. The defendant suggests, without factual or legal support, that hearing on restitution (he makes no mention of forfeiture) is required. The record, through Finocchiaro's trial testimony, the Finocchiaro Affidavit, and supporting documentation, is clear, and the Government respectfully submits that the Court should order restitution and forfeiture in the amounts requested by the Government.

### B.    Bail Pending Appeal

The defendant dedicates a single paragraph of his April 28 Letter to the issue of bail pending appeal. (*See* April 28 Letter at 15). In it, he "incorporate[s] by reference" his earlier post-verdict motions that "establish that Mr. Teman should be granted bail pending appeal" and asserts that the Second Circuit "should have an opportunity to determine whether the facts of this case establish a federal fraud or sufficient evidence thereof." (*Id.*). A jury did the former, and this Court addressed the latter in its June 5 Order & Opinion. Hoping the Second Circuit will reach a

different result is not grounds for bail pending appeal, and the defendant offers no legal or factual basis to meet the relevant legal standard.

        1.        <u>Applicable Law</u>

Title 18, United States Code, Section 3143(b) provides that a district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal … be detained" unless certain conditions are met. 18 U.S.C. § 3143(b). The Second Circuit has summarized those conditions as follows:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for the purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

*United States v. Aiyer*, No. 18 CR. 333 (JGK), 2020 WL 6683078 (S.D.N.Y. Nov. 12, 2020) (citing *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). A "substantial question" is "one of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." *Id.*; *see also*, *United States v. Rittweger*, No. 02-CR-122, 2005 WL 3200901, at *1 (S.D.N.Y. Nov. 30, 2005).

        2.        <u>Discussion</u>

The defendant cannot meet the high bar to establish he is entitled to bail pending appeal. Even assuming *arguendo* that the defendant is not a flight risk or danger to others and that a forthcoming appeal would not be for the purpose of delay, bail pending appeal would not be appropriate because such an appeal would not raise a substantial question of law or fact. The defendant raised a host of arguments in his post-trial motions. (*See* Dkt. No. 111). He moved for a judgment of acquittal under Rule 29(c) or, in the alternative, for a new trial under Rule 33. Then, when his post-trial motions were pending, the defendant filed a second Rule 33 motion. (*See* Dkt. No. 118). Neither of those motions raised a substantial question of law or fact and on June 5, 2020, this Court denied all of the defendant's post-trial motions. (*See* Dkt. No. 138, the "June 5 Opinion & Order").

The defendant's most recent effort fares no better. Any arguments relating to restitution and forfeiture would not rise to the level of a "substantial question," and, even if they did and were decided in the defendant's favor, would not be likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed, to the extent the Court imposes such a sentence. Accordingly, the Government respectfully submits that the defendant does not meet the standard for bail pending appeal.

## C.     Motion for "Vacatur of Conviction" or a New Trial[2]

1. Applicable Law

    a. Rule 33

Rule 33 "motions for a new trial are disfavored in the Second Circuit." *United States* v. *Gambino*, 59 F.3d 353, 364 (2d Cir. 1995). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33 . . . ." *United States* v. *McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States* v. *Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation and internal quotation marks omitted). Granting a new trial "must be done sparingly and in the most extraordinary circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (internal quotations omitted." "[A] district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *Id.* at 188. In *Archer*, the Second Circuit explained further:

> We stress that, under this standard, a district court may not 'reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.' To the contrary, absent a situation in which the evidence was 'patently incredible or defie[d] physical realities,' or where an evidentiary or instructional error compromised the reliability of the verdict, a district court must 'defer to the jury's resolution of conflicting evidence.' And, as it must do under Rule 29, a district court faced with a Rule 33 motion must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis.

---

[2] The defendant's April 28 and May 14 Letters assert that the above-referenced case should be "dismissed." (*See* April 28 Letter at 12, 13-15; May 14 Letter at 5). In his April 28 Letter, the defendant argues that the case should be dismissed because (i) Finocchario's testimony was improperly noticed expert, not fact, testimony; and (ii) Bank of America did not "invoke its equitable remedies" and instead "returned the positive balances" in certain of the defendant's accounts to those accounts after his conviction. (April 28 Letter at 12, 13-15). The May 14 Letter grounds its request for "dismissal of this case" in purported "insufficiency of the evidence" and "because the record suggests deliberate prosecutorial misconduct. These arguments, and others like them, were the subject of this Court's lengthy June 5 Order & Opinion, which denied all of the defendant's post-trial motions, and explicitly rejected the defendant's allegations of prosecutorial misconduct. (*See* June 5 Order & Opinion at 101 ("Accordingly, there was no *Brady*, *Giglio*, or Jencks Act violation warranting a new trial.")). The June 5 Order & Opinion also considered, and rejected, the defendant's arguments that the evidence was insufficient to sustain a conviction. To the extent the defendant now is making a second Rule 29 motion for a judgment of acquittal, that motion has already largely been rejected; and any newly raised arguments are wholly without merit and do not approach the high standard for a judgment of acquittal under Rule 29 (*see* June 5 Order & Opinion at 14-16). Accordingly, the Government interprets the defendant's motion as one for a new trial and addresses that argument above.

*Id.* at 188-89.L 6807833, at *4 (quoting *United States* v. *Canova*, 412 F.3d 331, 349 (2d Cir. 2005)).

        b.      Fact Testimony

Relevant "fact testimony" is admissible "so long as the witness has personal knowledge." *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013) (citing Fed. R. Evid. 602); *see also id.* at 458-59 (fact testimony includes what a witness "thinks he knows from personal perception," as well as "the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior" (quotation marks omitted)). For example, in *United States v. Marsh*, 568 F. App'x 15 (2d Cir. 2014), the Second Circuit affirmed a ruling by the district court allowing a witness to testify, pursuant to Rule 602, about his training in cellphone extractions and the extraction he performed in that case. *Id.* at 16-17.

A lay witness's testimony "in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A rational perception is one involving firsthand knowledge or observation. *See United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992). Opinion testimony based on knowledge gained through service in a particular position or role does not in itself transform such testimony into expert testimony. *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) ("When a lay witness has particularized knowledge by virtue of her experience, she may testify–even if the subject matter is specialized or technical–because the testimony is based upon a layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.").

For example, in *United States v. Yanotti*, 541 F.3d 112 (2d Cir. 2008), the Second Circuit held that lay testimony under Rule 701 was appropriate where the witness's testimony is "the product of 'reasoning processes familiar to the average person in everyday life,' and not 'scientific, technical, or other specialized knowledge.'" *Id.* at 126 (quoting *United States v. Garcia*, 413 F.3d 201, 216-17 (2d Cir. 2005)). In that case, the witness sought to testify about loansharking and the court noted that "[w]hile we do not profess that loansharking is an activity about which the average person has knowledge, we find that the opinion [the witness] reached from his own loansharking experience derived from a reasoning process familiar to average persons." *Id.* Likewise, an officer of a business can provide lay opinion testimony about financial aspects of business without expert qualification because it derives from "particularized knowledge that the witness has by virtue of his or position in the business" and does not arise from "experience, training or specialized knowledge within the realm of an expert." Fed. R. Evid. 701 Advisory Committee Notes (2000).

     2.      Factual Background

The Government's Restitution-Forfeiture letter recounted the relevant pre-trial disclosures of 3500 material, Finocchiaro's trial testimony, and, in the Finocchiaro Affidavit, the post-trial determination of the restitution amount. Prior to trial, the Government produced 3500 materials for Finocchiaro that, as set forth in the Restitution-Forfeiture Letter and below, indicated that Bank of America was "unable to offset the loss" from the defendant's fraud in the GateGuard Account by seizing funds in his other accounts. (*See* Forfeiture-Restitution Letter at 3-4, n.1; *see also* 3503-

18). Bank of America had made this clear through its actions even before trial, having mailed checks to the defendant representing the positive balances in his non-GateGuard accounts; demonstrating concretely that the Bank did not view these funds as recoverable. (*See* Forfeiture-Restitution Letter at 3; Tr. at 234). Finocchario's trial testimony was consistent with the relevant 3500 materials, confirming that the defendant's non-GateGuard accounts had different tax identification numbers and that Bank of America was not able to recover funds from those (three) accounts. (*See* Forfeiture-Restitution Letter at 3; Tr. 234-36). The back-and-forth after trial has been well-covered. As set forth in the Finocchiaro Affidavit, in or about November 2020 Finocchiaro was incorrectly advised by another Bank of America employee the Bank was able to offset its loss in the GateGuard Account with approximately $13,477.37 from another of the defendant's account, before later learning that was incorrect. (*See* Finocchiaro Aff. ¶ 7). In short, Bank of America's position *ex ante* has been its position *ex post*, with the exception of approximately $647.85 in removal fees reducing its total loss amount from $259,988.17 to $259,340.32.

   3.  <u>Discussion</u>

  This is the defendant's third Rule 33 motion, and his second to make unfounded accusations of prosecutorial misconduct. The defendant cites no authority for making yet another Rule 33 argument at this stage. To the extent such a motion were proper, the defendant's arguments are meritless and/or already have been rejected by this Court. The record does not "suggest[] deliberate prosecutorial misconduct," there was no "treachery" by the Government, and the Government need not "invent unicorns." (May 14 Letter at 5-7). Finocchiaro's testimony was previewed before trial in 3500 material, accurate at trial, and the misapprehension resulting in the defendant's latest round of briefing and accusations was corrected and resulted in $647.85 change to Bank of America's loss amount in the defendant's favor. The Government's argument in summation about Bank of America's loss demonstrating his criminal intent was not "false and misleading" (May 14 Letter at 1); rather, it was a clear inference supported by significant evidence introduced at trial. The defendant's arguments are meritless and they do not come close to warranting a new trial.

  *First*, Finocchiaro's trial testimony was, and remains, accurate. The defendant argues that the Government "hid the ball" or even deliberately misrepresented the status of the defendant's personal account at BOA in the trial testimony. That is wholly inaccurate. *Before trial*, Bank of America disbursed funds back to the defendant, but the checks were returned undeliverable (Finocchiaro Aff. ¶ 3); at the time of trial, Bank of America held those funds; and, following trial, Bank of America returned funds it held in the defendant's non-GateGuard accounts to the defendant (Finocchiaro Aff. ¶ 5). The defendant's arguments about restitution and misconduct flow from a miscommunication prior to the December 1, 2020 sentencing date, described herein and in the Forfeiture-Restitution Letter, that has since been corrected. The Finocchiaro Affidavit could not be clearer on this point:

> In or about November 2020, I was notified by another Bank of America employee that the bank was able to offset its loss in the GateGuard Account with the funds in the Ari Teman Account totaling $13,477.37. However, it has since been confirmed an official item was created and sent to Mr. Teman totaling $13,477.37 and the funds are not available for offset.

7

(Finocchiaro Aff. ¶ 7). The defendant relies on the affidavit of Richard M. Fraher (the "Fraher Declaration"), appended to the May 14 Letter, in support of its argument—flatly contradicted by trial testimony and a sworn affidavit—that Bank of America had the ability to recover funds from the defendant's accounts. But the Fraher Declaration actually supports the view that Bank of America could *not* offset funds. The Fraher Declaration states, in part, that "Bank of America's right to set off extended no further than the account of GateGuard." (Fraher Decl. ¶ 16). Put differently, the Fraher Declaration suggests that, beyond the GateGuard Account, Bank of America had no ability to set off and/or recover from the defendant's other accounts. This was demonstrated quite clearly by Bank of America, *both prior to trial and after the defendant's conviction*, sending him funds held in other of his accounts. (*See* Finocchiaro Aff. ¶¶ 4, 5). On the point that Teman argues is critical—whether Bank of America was able to recoup its losses—the Fraher Declaration is equivocal at most. Fraher first notes that Finocchiaro's testimony about "Bank of America's inability to recover funds by set off from other accounts" is correct. (Fraher Decl. ¶ 16). However, he then says that Finocchiaro's testimony was not correct because "as a general matter, under applicable law and generally accepted banking practices, Bank of America had means to recover funds from the other accounts even if it had no right to set off." (Fraher Decl. ¶ 19). Fraher adds that Bank of America had a right to recover funds from outside the GateGuard Account because the bank could simply seize the funds and initiate a costly legal action or, more strikingly, it could have "simply seized and kept the funds and risked that the negatively impacted accountholders might take legal action to recover the funds from the bank." (Fraher Decl. ¶ 26; *see also id.* ¶ 27 (noting that in such a legal action, the bank "might have to respond to equitable defenses")).

In essence, the Fraher Declaration simultaneously suggests that (i) Bank of America had no right to "set off" except against the GateGuard Account, and (ii) actually, Bank of America had means to recover anyway, then risked being sued for that recovery.[3] The accurate explanation is much simpler: Bank of America recovered what they could, and lost the $259,340.32 they could not.

*Second*, the defendant's accusation that the Government intentionally elicited false testimony from Finocchiaro is contradicted by the record. Finocchiaro's testimony was consistent with 3500 materials produced prior to trial which, in substance, reflected that Bank of America could not recover funds transferred outside the GateGuard Account because the other accounts had different tax identification numbers, *i.e.*, they belonged to different individuals or a corporate entity. First, notes from an interview with Finocchiaro stated, in relevant part, "BOA can't do right of recourse if transferred. If funds came into acct A, then transferred to acct B, held by same entity, they (BOA) has right of recourse. But here, [GateGuard] + [Friend or Fraud] had different tax ID." (See 3503-09 at 1). Second, the Government produced an email sent by Finocchiaro, in which she writes that Bank of America is, "unable to offset the loss with the funds in hold harmless as they were sent from different TAX ID's." (See 3503-18). This was not trial by ambush. Bank of America's limited ability to recoup lost funds was: disclosed in 3500 material produced in advance of trial; the subject of testimony at trial; and explained, in simple and straightforward terms, by the Finocchiaro Affidavit. The Fraher Declaration, despite its many legal conclusions, does not discredit Finocchiaro's testimony or the Government's arguments in summation, let alone

---

[3] The Fraher Declaration then proceeds to opine on how to prove criminal intent (*see, e.g.*, ¶¶ 20-23) before returning to the topic of "remotely created checks," (*see, e.g.*, ¶¶ 28-33) expert testimony about which the Court precluded prior to trial (*see* Jan. 10, 2020 Tr. at 32-37).

8

push this into the realm of testimony that is false or *intentionally* false.  The defendant received relevant 3500 materials before trial and heard Finocchiaro's trial testimony without objection.  His claim to have been apprised only now of the issue is nonsensical and should not be credited.

*Third*, Finocchiaro's testimony, for the reasons set forth here and as litigated prior to trial, was proper fact testimony derived from a reasoning process familiar to the average person. Finocchiaro's trial testimony was based on her firsthand knowledge and was helpful to determining a fact in issue, *i.e.*, the loss suffered by Bank of America and its ability to recoup any portion of that loss.  Moreover, although the subject matter may be interpreted as "specialized or technical," Finocchiaro's testimony was based on her personal knowledge and not her expertise in, for example, banking law.  *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d at 81.  Moreover, Finocchiaro was subject to cross-examination and the defendant did not object to her testimony.

*Fourth*, even assuming Finocchiaro's testimony was improper expert opinion testimony, there was no harm to the defendant.  The defendant makes much of the fact that the Government argued the loss to Bank of America was, "perhaps the most obvious proof" of the defendant's criminal intent.  (May 14 Letter at 1; *see also* Tr. 1042-43).  He argues that "[s]tripped of the government's 'most obvious' incriminating inference, and considering the government's other inferences in context, its case against Mr. Teman is reduced to a claim that he knew that he was not entitled to the deposited funds."  (May 14 Letter at 4).  That is flatly contradicted by even a cursory review of the trial transcript.  In summation, before the point about "perhaps the most obvious proof" in rebuttal, the Government listed the top eight reasons the trial evidence demonstrated the defendant's guilt, including that the customers never gave permission for the defendant to issue the checks; the defendant never invoiced customers; and the appearance of the checks themselves.  (*See* Tr. 976-95).  The evidence underlying these reasons overwhelmingly established the defendant's guilt, without a mention of Bank of America's loss.  For example, Elie Gabay testified that the defendant did not request permission to pay himself by issuing check's from Coney's bank accounts and that, if the defendant had, Gabay "would have said no."  (Tr. 355-56).  Other witnesses, Joseph Soleimani (*see* Tr. 568), Bonnie Soon-Osberger (*see* Tr. 430, 441), and Gina Hom (*see* Tr. 474-76), corroborated this assertion—that the defendant took their money without authorization.  Further, as the Government argued in summation, in at least one instance the defendant continued issuing checks from customer accounts *after* the customer (Gabay) had contacted his bank and reversed the initial charges from the defendant.  (Tr. 985-86). Tellingly, the defendant never invoiced the customers for these charges.  (Tr. 987-88).  In summation the Government also explained how the appearance of the defendant's fraudulent checks and the timing of certain of his deposits also established his criminal intent.  (Tr. 990-93). And, of course, the Government described how the defendant moved the fraudulently obtained money around his accounts, before the Bank could freeze them or return the funds to their owners, the defendant's customers.  (Tr. 993-94).  These arguments, and the evidence underlying them, clearly established the defendant's criminal intent.  The loss to Bank of America was not the centerpiece of this argument, nor was it critical to the conclusion.[4]

---

[4] To say nothing of the damning messages the defendant exchanged with his attorney, in which the attorney warns the defendant that his "just depos[iting] checks from [the customers]" was a "bad idea … Because they are likely to call police.  And you will be arrested.  And have a criminal

9

The Government's rebuttal focused principally on why the defendant had not established a good faith defense. (Tr. 1036-41). Only after that, and following the extensive summary in closing of all the reasons establishing the defendant's guilt, the Government stated that "perhaps the most obvious proof here of criminal intent" is Bank of America's $260,000 loss, before citing again to the eight reasons detailed in closing. (Tr. 1042-44). The defendant appears to read this transcript citation ("perhaps the most obvious …") to the Government's rebuttal in conjunction with a portion of the Government's summation. (*See* May 14 Letter at 1 ("As the government put it to the jury, among other similar arguments, *"perhaps the most obvious proof here of criminal intent* is that there's a $260,000 hole right now at Bank of America [T1042-43 (emphasis added)] … [Mr. Teman] knew the moment he deposited these checks … and the moment he moved the money out of his account … that Bank of America couldn't get it back." T993.")). In any event, the defendant's movement of the funds both evidenced his fraudulent intent—he transferred the money from his GateGuard account to other of his accounts before Bank of America could return it to the customers—and, ultimately, in doing so rendered those funds unrecoverable to the Bank. The defendant moved his stolen money around so it would not be returned to its rightful owners. That is a clear, straightforward argument was *corroborated*, not undermined, by the fact that Bank of America also was unable to recover those funds to make itself whole. Even if Bank of America had been able to recover more to offset its losses in the GateGuard Account, the Government would have made the same arguments relating to loss even if the Bank "only" had a deficit of $150,000—an amount the defendant does not contest—instead of $260,000. In addition, as set forth above, this was far from the Government's only proof of criminal intent, and was not essential to demonstrating the defendant's guilt. The defendant erroneously asserts that the Government's case "was significantly predicated on false premise," referring to Bank of America's loss, and that the Government's arguments were, "false and misleading." (May 14 Letter at 1). The only false premise is the one the defendant has conjured up: that Bank of America could have recovered more of the loss the defendant's fraud caused it and that had it done so there would have been no crime.

In the end, the defendant's arguments make very little sense. His request for a new trial rests on a series of leaps in logic proceeding from his own false premise. The argument can be distilled to the following: Bank of America could have recovered more of the loss the defendant caused than it did. From there, the defendant attempts to argue that the Government has engaged in misconduct to a level that demands a new trial. To be clear, there was nothing surprising or inaccurate about the Government's theory, Finocchiaro's testimony, or the Government's arguments in summation.

---

case to deal with. And then you can start explaining about your contract and 'not breaking any laws'[.]" (GX 702; *see also* GX 704, 728, 729).

**D.    Conclusion**

For the reasons set forth above, the Government respectfully submits that the Court should impose restitution and forfeiture as requested in the Restitution-Forfeiture Letter; deny bail pending appeal; and reject the defendant's most recent, untimely request for a new trial.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:    /s/
Kedar S. Bhatia
Jacob H. Gutwillig
Assistant United States Attorneys
(212) 637-2465 / 2215