# Ari B. Teman

February 20, 2022
20th of Adar I, 5782

The Honorable Paul A. Engelmayer
District Judge
Southern District of New York
40 Foley Square,
New York, NY


Your Honor,

Attached please find a letter addressed to the Court of Appeals that I was unable to file today as I do not have ECF privileges outside of the District Court for the matter of *United States v Teman*.

I respectfully request that you instruct your clerk to file the attached letter to the Court of Appeals for the Second Circuit for Dkt. 21-1920.

I have also informed Mr. Bhatia, Mr. Lewis, and Mr. Marmur of this letter, and asked Mr. Lewis and Mr. Marmur to submit it to the Second Circuit immediately on my behalf.

Respectfully,

Ari Teman
*Appellate-Defendant, Pro Se*

B"H

# Ari B. Teman

---

**February 20, 2022**
20th of Adar I, 5782

United States Court of Appeals
Second Circuit
40 Foley Square,
New York, NY 10007

**Re:** *Ari Teman v United States (Dkt. 21-1920)*

Your Honors,

I write to you *pro se* to request an extension of 60 days to submit appellant's brief in *United States of America v. Teman*, Court of Appeals Docket No. 21-1920, because I have been compelled to terminate my current appellate counsel, Mr. Nathaniel Marmur and Mr. Alan Lewis.

With only days left to the deadline, for which they already sought multiple extensions, my counsel are still unfamiliar with the facts of the case and have made multiple fundamental timeline and factual errors in the proposed appellate brief. My counsel have misquoted witnesses, gotten things out of order, and presented facts in a false way that will irreparably harm me if I allow them to continue to represent me. There is simply not enough time left with current counsel to correct the myriad errors in the most recent draft.

I respectfully request that in the interests of justice this Court grant me an extension of 60 days to seek replacement counsel so that an accurate brief can be submitted that will permit proper appellate review of the record below.

I am mindful of the short timetable to the current deadline of February 24, 2022 and I respectfully urge the court to rule on my request as a matter of urgency. In the event the request is not granted, I will fill my brief *pro se*, but I am well aware that the quality of my submission may suffer and thus complicate Your Honors' task, and I would hope for your indulgence in granting this final extension.

In addition to the challenges with my counsel, I have been suffering from the prolonged effects of a serious case of Covid-19 and I am only just now starting to improve. My health challenges

have contributed to the breakdown of communications with my counsel. I know the pandemic has affected Judges as well as litigants, and I respectfully request your understanding of my serious health issues.

In addition, I respectfully move this Court to stay the pending appeal to permit the filing of a Rule 33 motion before the District Court based on new evidence of my innocence, identified in Dkt. 295 in *USA v. Teman*, Case No. 19-cr-696 below (which was styled a Motion for Sanctions, but contains new exculpatory evidence). I respectfully request that the appeal be stayed and not dismissed while the district court <u>entertains</u> the Rule 33 motion. This is a procedure the Second Circuit has accepted in the past. As this Court has said:

> While the filing of a notice of appeal normally "divests the district court of [jurisdiction] over those aspects of the case involved in the appeal," Rule 33 specifically states that "if an appeal is pending, the court may *grant* the motion only on remand of the case," Fed.R.Crim.P. 33 (emphasis added [by 2nd Circuit]). By implication, Rule 33 leaves the district court free to *entertain* a Rule 33 motion after a notice of appeal has been filed. Accordingly, the district court retains jurisdiction to deny a Rule 33 motion during the pendency of an appeal, even though it may not grant such motion unless the Court of Appeals first remands the case to the district court. If the district court decides to grant the Rule 33 motion, the district court may then signal its intention to this Court. *O*nly when presented with evidence of the district court's willingness to grant a Rule 33 motion will we remand the case.
>
> *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002)(internal citations omitted).

Although the District Court has indicated it does not contemplate hearing any post-trial motions until the disposition of the present appeal, *see* Dkt. 304, I believe it would be an abuse of discretion for the district court to refuse to even <u>entertain</u> a Rule 33 motion when there is new evidence of a defendant's innocence. Differing the motion until after the appeal has been heard would be wasteful and prejudicial if the evidence confirms my innocence.

The Rule 33 motion should at least be briefed for the District Court so that a proper record can be made for further appellate review if necessary.

This case is not a typical criminal case and, in fact, many eminent legal scholars believe it never should have been brought at all. I am attaching the pro bono letter of Harvard Law School Professor Lawrence Lessig, who concurs this was essentially a commercial dispute.

I am the CEO of a company called GateGuard that manufactures and installs cutting-edge artificial intelligence-enabled intercoms. In 2018, several debtors of GateGuard refused to pay their bills and I collected the debts using a contractual device known as a remotely created check (an "RCC") that allows the creditor to sign checks and draw directly on the debtor's account. Such instruments are widely used and perfectly legal. In fact, the District Court specifically instructed the jury that RCCs are a legal device.

My conviction was based on two fundamental points: my use of the RCCs was found to have been made with criminal intent because I allegedly deposited these RCCs without the debtors' knowledge of the existence of the RCC mechanism. This was always a false accusation. The debtors always had the opportunity to "click through" on the GateGuard website to GateGuard's Terms and Conditions (which provided notice of the Company intent to use RCCs to collect debts) in a manner this Court has deemed legal and enforceable under *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71 (2d Cir. 2017)(click-through "browsewrap" agreement provided sufficient inquiry notice of Terms and Conditions). However, the jury perhaps found that my trial counsel had failed to submit a copy of the online contract in effect at the time of the RCC creation and that therefore there was no evidence the debtors knew of the availability of the RCC remedy before I deposited the checks.

The new evidence, which the Government failed to produce, shows that the debtors not only had inquiry notice, but had <u>*actual notice*</u> of the Terms and Conditions and the availability of RCC's <u>*before*</u> I deposited any remotely created check.

Second, the debtors disclaimed any legal liability for the underlying debt, which, according to the government, rendered the RCC's criminal (a proposition I do not believe is legally founded). However, I have now discovered proof that the debtors had specific knowledge of the payment terms before the RCC's were deposited and one of the debtors <u>*specifically acknowledged*</u> that the entity she represented <u>*was "legally liable"*</u> for the debts.

I also learned, nearly a year after sentencing, that an attorney, Noam Biale, who had briefly represented me before an intractable conflict came to light (Mr. Biale is the "mentee" of District Court Judge Englemeyer, has a close relationship with the Judge *a*nd is married to an SDNY AUSA with knowledge of my case) had falsely stated to me and my family that he had reached out to witnesses who I believed were in possession of exculpatory evidence. This is the evidence referenced above, which came to light in separate civil litigation through discovery. As a result there was a delay in the gathering of this clearly exculpatory evidence until after sentencing.

I have also learned that my current Appellate counsel has a conflict of interest in that he confessed to being friendly with members of Mr. Biale's firm, which I believe has biased him against me. Simply put, my counsel, Mr. Lewis, should not have taken this case, given this relationship, and his knowledge of my strongly stated prior objection to Mr. Biale's connection to Judge Englemeyer and Mr. Biale's literal marriage to the prosecution.

In light of the foregoing, I respectfully request that this Court:

1. Grant an extension of 60 days so that I can obtain replacement appellate counsel to prepare a revised appellate brief. Counsel will work with Eden P. Quainton, who is currently advising me on civil litigation in the Southern District and is thoroughly familiar with the facts of the case. Mr. Quainton has assisted me in the preparation of this letter and intends to seek admission to the Second Circuit upon motion.

2. Stay the appeal, while retaining jurisdiction over it, consistently with *U.S. v. Camacho* above, to give the District Court the opportunity to evaluate the new evidence of my innocence. This course would be in the best interests of justice, because if the District Court ultimately concludes that it should grant the Rule 33 motion, in the absence of a stay, Your Honor's time would have been wasted. If the District Court denies the motion, there would be no impediment to prompt Second Circuit review of the appeal.

I thank Your Honors for your consideration.

Ari Teman
*Appellate-Defendant, Pro Se*



## HARVARD LAW SCHOOL

LAWRENCE LESSIG
ROY L. FURMAN PROFESSOR OF LAW AND LEADERSHIP
1563 MASSACHUSETTS AVE
CAMBRIDGE · MASSACHUSETTS · 02138
TEL. (617) 496-8853
LESSIG@LAW.HARVARD.EDU

November 12, 2020

President Donald J. Trump
1600 Pennsylvania Avenue
Washington, DC 20500

The Honorable William Barr Attorney General

The Honorable Jeffrey Rosen
Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC, 20530

Re: Ari Teman

I have reviewed, *pro bono*, the case involving Ari Teman. Ari was convicted for acts that certainly do not establish a crime nor evince any criminal intent. I urge the Justice Department to dismiss the case or the President to pardon Mr. Teman.

The facts underlying this case involve a business dispute between Mr. Teman's company, GateGuard, and some of its clients. Those clients had failed to pay for the services GateGuard had provided. Pursuant to the terms agreed to by the clients and GateGuard, Mr. Teman effected a transfer of funds from the clients' bank accounts to GateGuard. The clients had contractually authorized GateGuard to collect overdue fees in this way. The contract that authorized this was not crafted by Mr. Teman, but by his lawyers. They had patterned the agreement on other well known companies (such as AirBnB). The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent.

Whether GateGuard's contract should be enforceable in a civil court is an interesting question for academics to consider. GateGuard's customers acknowledged they received the contracts; they claimed they hadn't read it. Again, that poses an interesting question for a contracts exam. It doesn't evince fraudulent intent by

Mr. Teman. Indeed, the reality of online commerce is that agreements like this are the norm. The judge in this case suggested that the terms authorizing the transfer of funds were buried in the contract. GateGuard's contract is actually quite concise relative to many online agreements. The suggestion that a surprising term in an online agreement constitutes an intent to defraud would render most banks and credit card companies guilty of fraud. Nothing in GateGuard's terms of service is extreme or unusual.

The judge in this case, writing to uphold a jury verdict, was constrained to justify the jury's verdict. He was therefore persuaded that the fees charged were unreasonable. And he was skeptical that the terms authorizing a transfer were in fact present at the time the clients agreed to the contract.

But the fees were charged as many contracts — cell phones contracts for example — provide today: a low monthly fee that is accelerated if a contract is terminated early, or not kept current. And the evidence in this case demonstrates conclusively that the term authorizing transfers from the clients' accounts was both part of the original agreements and expressly acknowledged by at least some of the clients.

What explains this prosecution is not the law, nor the justice within this commercial dispute. What explains it, apparently, is the relative inexperience of the front line prosecutors. Those prosecutors were new to the U.S. Attorney's office. They allowed their inexperience to guide their intuitions. And once it was clear that they had uncovered not a criminal commercial enterprise but ordinary online commerce, rather than acknowledging their error, and the injustice in prosecuting a commercial dispute as a crime, they continued to press the prosecution against Mr. Teman.

This behavior is surprising and troubling to those like me who have high regard for United States Attorneys. Yet it is clear that sometimes, winning becomes more important than justice. The prosecution of Mr. Teman is not justice. It is not a credit to the work of the Department. I urge you to take whatever steps are possible to stop this prosecution before Mr. Teman is sentenced to prison.

Sincerely,

Lawrence Lessig

2