B"H

# Ari B. Teman

Mon, 16 April 2023
25 Nissan, 5783

Judge Paul A. Engelmayer,
District Judge
Southern District of New York
40 Foley Square,
New York, NY

**Re: Motion to be resentenced for time-served & motion to recuse**

Your Honor,

1. Defendant Ari Teman, *pro se,* respectfully motions for the Court to resentence Mr. Teman to time served due to the intentional sabotage of his defense by his former attorney, Noam Biale, because the conflict and its impact resulted in years of tremendous suffering and delay in my right and ability to appeal, greater than the sentence itself.

2. Additionally, I respectfully request that the presiding Judge, Paul A. Engelmayer, recuse himself from this matter and that the Government replace the conflicted prosecutors involved in the case. Judge Engelmayer admitted that Mr. Biale is his "mentee" and a close family friend, as is Biale's wife AUSA Margaret Graham. Judge Engelmayer also admitted he was a guest in their home during the time of the sabotage by Biale and potential eavesdropping by AUSA Graham (it would have been impossible to not overhear attorney-client conversations in their small two-bedroom Brooklyn condominium).

3. AUSA Bhatia admitted on the record the Government knew of the conflicts, knew they were required to disclose them, and that the Government still chose to not disclose them.

**Resentencing to Time Served Due to Willful Sabotage by Attorney Biale**

4. As new evidence in the form of an affidavit from Attorney Ronald Coleman (attached) proves, Mr. Teman's defense was severely undermined by the misconduct of his former attorney, Noam Biale, who was hired specifically to uncover prosecutorial misconduct, as the attached engagement letter from Sher Tremonte proves. However, Mr. Biale actively sabotaged the defense over a period of 5.5 months. The case law in Strickland v. Washington, 466 U.S. 668 (1984) establishes that ineffective assistance of counsel may warrant reversal and resentencing.

5. Furthermore it took months for replacement counsel to become familiar with the case, and they still could not adequately represent Mr. Teman due to the reliance on Mr. Biale's misrepresentations. Their engagement letter was signed January 13, 2021, but it took time for Teman to collect funds to pay them because Biale's firm was holding the restitution funds hostage, and retained an attorney, Dom Gallardo, who attempted to extort Teman to indemnify Biale's firm in order to have the funds returned.[1] They represented Teman until Sentencing on July 28, 2021.

**A visual representation of the time cost of Mr. Biale's sabotage:**

| Biale / Sher Tremonte | Kellman & Frisch | Bond Pending Appeal[2] |
|---|---|---|
| 5.5 Months | 7 months | 21 months |

6.

7. Had Biale or his firm actually spoke with Shelly Jenkins-Pecot as they represented (And Jenkins-Pecot confirmed on a recorded call that they did not) to Teman and corporate

---

[1] Notably, Judge Engelmayer refused to intervene to help Teman regain custody of the funds he'd raised for restitution.
[2] Had Biale not sabotaged the post-tria pre-sentencingl period, there would be no need for an appeal.

counsel and those helping his pardon campaign, the emails and statements destroying the testimony of Soon-Osberger and Hom and obliterating the Government's claim that Teman never warned his customers of the fees or drafts (See Dkt. No. 284, Page 7 onward), *Teman would have been freed more than 3 years ago.*

8. Judge Engelmayer failing to immediately disclose Biale's conflicted relationship with AUSA Graham and with Judge Engelmayer cost Teman more than three years of his life already. (And even if you do not count the Bond Pending Appeal time, it still cost Teman over 12 months and a day!)

9. The Government, including Mr. Bhatia's, failing to immediately disclose Biale's conflicted relationship with AUSA Graham and with Judge Engelmayer cost Teman more than three years of his life already.

10. Mr. Biale and his firm Sher Tremonte failing to immediately disclose Biale's conflicted relationship with AUSA Graham and with Judge Engelmayer cost Teman more than three years of his life already.

11. Given Mr. Teman's current sentence of a year and a day (10 months with good behavior), he should be resentenced to time served in light of Mr. Biale's sabotage, and it's impact on Mr. Teman's physical and mental health (it caused severe PTSD, as Teman can document to an independent Court), freedom, and right to equal justice and due process.

12. Judge Engelmayer has repeatedly misrepresented Biale's firm's representation of Teman, falsely saying the firm was retained to handle sentencing matters, and that the representation was merely about a month. However, the retainer letter says explicitly:

"The Firm is acting as counsel to you in connection with **exploring the possibility of additional post-trial motions in the district court** following your conviction in the

Matter. The Firm will review the record of the proceedings and conduct legal research in order to determine what additional motions or correspondence, if any, are advisable. **The Firm is not being engaged for any other purpose.**"

13. Continuing his disturbing pattern of making false statements to protect those with whom he has strong personal and financial interests, Judge Engelmayer has repeatedly made false statements on the record, without any due diligence first, thereby protecting his friends and his personal and family investments.

14. For example, Judge Engelmayer completely fabricated out of thin air a statement Teman *never* uttered about drafting clients' accounts on Passover or right before Passover, to take advantage of their religious observance. So brazen and abusive was this lie, that 25 Rabbis from different sects and across the United States and the planet have publicly called for Judge Engelmayer not only to recuse, but to resign (Dkt. No. 326). Such a public statement by the Rabbis is itself grounds for immediate recusal:

    ```
    "We are also deeply concerned with your handling of Mr. Teman's
    case and we are calling on you to recuse yourself from any
    further proceedings involving Mr. Teman, against whom you have
    formed a bias that, sadly, borders on anti-semitism."
    ```

15. They conclude:

    ```
    "For the above reasons, and in light of the severity of the
    conduct described, your Honor should not only recuse yourself
    ```

```
from any further involvement in the Teman matter, but your Honor
should retire from the bench immediately."
```

### Recusal of Judge Engelmayer

16. Judge Engelmayer's close personal relationship with Mr. Biale, and Biale's wife AUSA Graham, creates a conflict of interest that precludes him from impartially adjudicating this matter. The case law in *Liteky v. United States, 510 U.S. 540 (1994)* supports the argument that personal bias or prejudice concerning a party requires recusal. In the present case, Judge Engelmayer's close family friendship with Mr. Biale and his wife, as well as his role as Mr. Biale's mentor, creates an appearance of impropriety that warrants recusal.

### Replacement of Conflicted Prosecutors

17. The Government's failure to disclose the known conflict of interest between Judge Engelmayer and Mr. Biale constitutes a breach of their ethical obligations. As a result, the prosecutors involved in this case should be removed and replaced. In United States v. Williams, 81 F.3d 1434 (7th Cir. 1996), the court held that a prosecutor's conflict of interest may require disqualification.

### Cruel and Unusual Punishment

18. During the 5.5 months of Mr. Biale's representation, Mr. Teman endured inhumane conditions due to the 20 brutal hours per day of solitary confinement right next to ongoing concrete work and hammer drilling in the building where he was held and not allowed to leave.

19. This constitutes cruel and unusual punishment under the Eighth Amendment, as established in Helling v. McKinney, 509 U.S. 25 (1993).

20. Pretrial Supervision Officer Delesdenier, who was in charge of location monitoring, was unwilling to allow Teman to leave during the construction's hammer drilling, which could go for hours at a time, and Biale was unwilling to motion for such a change.

21. Mr. Teman's subsequent counsel was able to immediately secure relief from these conditions, further underscoring Mr. Biale's ineffective representation -- and in fact *harmful and dishonest* behavior towards his client.

**Compensation for Legal Fees and Additional Sanctions**

22. The Government's willful concealment of the conflict of interest warrants an award of legal fees and additional penalties to Mr. Teman, which should include the costs and damages. In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court held that a court may impose sanctions for willful disobedience of a court order or for bad faith conduct in litigation.

23. In this case, the Government's concealment of the conflict should require them to compensate Mr. Teman for all legal fees and expenses incurred from the time of Mr. Biale's representation and any additional sanctions as deemed appropriate by the court.

**Judge Engelmayer should immediately allow Teman to travel to Israel between April 17 to May 9 before this issue is heard, as the Government already concedes is possible**

24. Regardless of the above issues, because the Government has conceded and provided a draft motion for Mr. Teman to travel to Israel, and because Judge Engelmayer may

decide on his own to allow that travel, Judge Engelmayer should, in the interest of justice and as a matter of law and ethics, first issue an order allowing Teman to travel to visit his mother before her surgery, from the days of April 17 to May 9, 2023, and then the motion herein issue should be addressed by an independent Court with no ties to Biale and Graham.

25. Notably, the Court in Miami Dade and the local prosecutor have agreed Teman should be able to fly to Israel from April 17 to May 9, and that he is not a flight risk or risk to the community.

26. However, if a bond condition hearing is ordered, which would expose Teman to remand and delay travel to Israel to see his mother before her surgery, this issue must be addressed first in the interest of justice and fairness to Mr. Teman. Furthermore, the Court must appoint a public defender for Teman in any matters where Teman faces risk of earlier incarceration in accordance with SCOTUS' arguments in *Padilla v Kentucky* 559 U.S. 356 (2010),.

**Summary**

27. While Teman maintains his innocence and is confident the Second Circuit Court of Appeals will reverse the conviction, which legal experts, including multiple Harvard Law School Professors, *pro bono,* have called a "legally baseless", "major injustice", because AUSA Bhatia is now seeking remand[3], is it just and timely that any possible sentence be eliminated.

---

[3] Over a misdemeanor municipal ordinance case which Mr. Bhatia knows involves police misconduct and falsification of evidence caught on Body Worn Camera (BWC) footage, to the point even the Miami Beach prosecutors are not seeking jail and they and the Judge is allowing Mr. Teman to travel to Israel, because Mr. Bhatia was presented with all this evidence and the statements of four witnesses who say Mr. Teman did not do the accused acts and those caught coordinating their dishonest statements on BWC actually assaulted Teman.

28. As a matter of law and ethics, Judge cannot adjudicate a motion as to whether his mentee cost a defendant 5.5 months of additional confinement, defrauded a client, and/or sabotaged a defense to help his wife's team (the US Attorney's office), especially when the judge is close personal friends with the mentee and his wife, and also failed to disclose his relationship with Biale and Graham for 5.5 months, despite being in Biale and Graham's home during this time.

29. For this reason, the Judge should also not be able to make determinations as to sentencing or re-sentencing motions, compassionate release, remand, and the like, as these decisions necessarily must factor-in the delays, harm and abuse caused by Judge Engelmayer's mentee, Biale.

30. Furthermore, Mr. Bhatia and Mr. Gutwillig are conflicted because they willfully hid this conflict, and as the record shows (Dkt. 284 P 7 onward, Dkt. No 295) have been engaged in an ongoing effort to assist witnesses in hiding exculpatory evidence. Judge Engelmayer has abused his discretion in failing to hold a hearing about the evidence, in the form of documents, emails, and sworn statements, which show that the government prosecutors willfully acted to deny Teman the right to a fair trial. It is obvious that Judge Engelmayer has done this to protect Mr. Biale and Judge Engelmayer's $2,000,000 (approx) investment into Bank of America, which Teman's experts (who Engelmayer denied the ability to testify) say is the party at-fault in this matter.

31. Judge Engelmayer has ignored evidence since August 20, 2021, nearly two additional years of suffering to Mr. Teman and Mr. Teman's family, loved ones, career, First

Amendment rights as a comedian, and businesses. These years should be credited as well.

32. Mr. Bhatia has abused his role, and the power afforded to him by that role, and the Court must order the Government to replace him.

33. For these reasons above, the Defendant should be resentenced to Time-Served, the Judge should be recused and replaced, and the Government should be required to replace the prosecution team on this matter entirely, and arguably with prosecutors from another District.

34. Mr. Teman has spent years in confinement, including 19 months with 20-hours a day under home confinement, thousands of miles away from family and loved ones. He suffered severe mental and physical effects from this cruel punishment -- which was entirely unwarranted as Judge Engelmayer and the Government have conceded that Teman was not a flight risk or risk to the community and even allowed him to travel to Australia for over a month for the Melbourne Comedy Festival. Thus, locking him in solitary confinement for 20-hours a day for 19 months away from family and loved ones should itself more than make up for the 10 months Teman could potentially spend in a low security prison camp. Combined with the months of hammer-drilling noise which Biale refused to motion to remedy, Mr. Teman has already served a far worse sentence than that which Judge Engelmayer officially issued. Mr. Teman should be re-sentenced to time served immediately.

Respectfully submitted,

Ari Teman
Defendant, *Pro Se*
April 16, 2023 / 25 Nissan, 5783

Attachments:  Engagement Letter from Sher Tremonte
Affidavit from Ronald Coleman
Letter from Harvard Law School Professor Lawrence Lessig