B"H

# Ari B. Teman

Friday, 8 Sept 2023
22nd of Elul, 5783

The Honorable Paul Engelmayer
District Judge
Southern District of New York
40 Foley Square,
New York, NY

**Motion to be assigned counsel and stay reporting, due to clear ineffective assistance of counsel & new evidence**
**Or, in the alternative, motion to dismiss under Rule 33 and/or Rule 29**

Your Honor,

In order to inform the court of some examples of the "significant issues" that warrant ongoing assignment of counsel to draft and argue the 2255, and adequate time for the defendant to be available to work with them, the defendant submits this letter outlining some of those issues.

To be clear, there are additional "significant issues", and this not meant to be a 2255 itself, but these issues go to Your Honor's suggestion that there is potential "ineffective assistance of counsel" issue, which the Second Circuit ruled should be motioned-upon and heard.

**Counsel did not disclose defendant was "medically unfit to prepare for and stand trial"**

As the medical experts note, I was not capable during the period leading to and at trial to assess my condition nor to fairly understand the impact of the surprising, last-minute change in defense strategy.

The defendant attaches letters from the following medical and mental health experts who all state I was mentally unfit to prepare for trial.
- Dr. Alon Seifen, M.D.
- Nicholas R. Scheidt, Psy.D
- Rafael Villeta López, MA, IFS Therapist

In addition to medical records, as Dr. Seifen notes, emails (presented below) that I sent on December 16th and December 25th, 2019, and January 12th, 2020 to trial counsel made clear that I was psychotic, had severe brain fog and extreme physical pain, was mentally unfit, and could not recall or process thoughts or take care of myself and my work.

Dr. Seifen writes, "It is my professional opinion that Ari Teman was not mentally fit to prepare for or stand trial during this period. In fact, his condition was so severe that he would not have been able to determine this himself."

1

In the course of gathering medical records for counsel in preparation of the 2255 motion, I found emails to trial counsel that I had not recalled. **These emails show that my trial counsel was fully informed in writing of substantial medical and mental health issues during the period leading to and through trial.**

I did not remember sending these emails to trial counsel, and did not even remember the December 11th hospital visit or the diagnosis of Narcolepsy. I found them only when I searched my emails on instruction of appellate counsel and logged into the online portals for my medical providers to gather prescription records.

As a result of being in this state, a significant amount of exculpatory evidence did not get into trial and key witnesses were not called because:
    (a) I could not remember that it existed, and/or
    (b) I could not keep track of what I had sent or didn't send to counsel,
    (c) I did not understand the significance of the evidence or the accusations
    (d) I could not understand or make decisions about trial strategy

I have discovered, for example, in my email search that Mr. Gelfand threatened to have Pecot arrested and brought to trial and attached a draft motion in an email *to her attorney,* but did not file it. I certainly would never have agreed to that!

I would not agree with many other decisions trial counsel made, such as not impeaching the credibility of Signature Bank and Coney Realty with the Perlmutter affidavit and testimony (attached), and not calling Shelly Pecot given we knew she had text messages and emails of me warning the clients of the fees and had told ne in writing that Soon-Osberger was a serial fraudster.

I therefore ask that Your Honor assign one of the Federal Defenders (who have indicated a willingness to represent me if assigned) to handle the 2255 Motion as there are clear and substantial issues of Ineffective Assistance of Counsel, which goes far beyond this issue, but because of my mental state at the time and related mental health challenges, I cannot recall and do not feel competent to organize and argue this matter.

**Your Honor has acknowledged that trial counsel was "sleazy"**

It will be no great surprise that trial counsel hid these emails and medical records from Your Honor, because Your Honor himself called trial counsel "significantly below the standards of ethics", told them they were, "blowing your credibility with the Court", and "That's sleazy."

```
[TR: 40]

JUDGE ENGELMAYER: It's a sharp practice. You're not from the Southern District
of New York. I can tell you in the Southern District of New York a lawyer who
leaves out something like that that they are considering would be regarded as
significantly below the standards of ethics that we anticipate from lawyers
here. I'm going to be very blunt with you. That's not good.
```

2

```
[TR: 45]

JUDGE ENGELMAYER: Defense counsel, you are in the process of blowing your
credibility with the Court. Did you tell government counsel -- when did you
tell government counsel that you would not accept service of the subpoenas that
were served?

[TR: 42]

JUDGE ENGELMAYER: I mean, you know, you've got to elevate your game here.
That's sleazy. ¹
```

**Counsel ignored multiple emails that I was unfit to prepare for and stand trial**





---

¹ *Emphasis added*

3



**Counsel failed to argue Hom was not authorized to file a chargeback or represent 18 Mercer**

As well, large chunks of the trial transcript are a complete surprise to me as I do not recall much of the trial.

For example, I did not remember (and may not have been alert enough to even notice) that Gina Hom in testimony admitted her relationship with 18 Mercer was terminated *before* she filed the chargeback, which means she was not a lawful representative of the corporation.

A chargeback on behalf of a *former employer* cannot be valid. Therefore the counts of 18 Mercer cannot stand, and there should be motion practice on this.

>    A. <u>After we</u> -- Crystal Real Estate Management <u>terminated</u> the contract of 18
>    Mercer, which would have ended March 31st, <u>on or about the 15th of March.</u>
>    …
>    Q. Is this the check that you saw?
>    A. Yes.
>    Q. What was your reaction to seeing it?
>    A. Shocked. And at that point I called the bank and had them place a stop payment on it.
>    …

4

```
Q. Did you ask the board first whether this was authorized?

A. No.
```

By Hom's own admission she placed a chargeback "After we -- Crystal Real Estate Management terminated the contract of 18 Mercer", and were not representatives of the building. She did not ask the Board, but did so on their own, **after she was no longer a representative.**

As well, evidence Trial counel knew Pecot had showed **Hom and Soon-Osberger's representation was terminated under accusations of fraud, self-dealing, and sabotage** of GateGuard's device.

Additional New Evidence will show that the board voted to replace Hom's company and remove Soon-Osberger from the Board in January 2019 under accusations of financial mismanagement and fraud.

However, this also speaks to ineffective assistance of counsel, because Trial Counsel knew Soon-Osberger and Hom were terminated and should have sought evidence for other board members and shareholders.

As well, Trial Counsel knew that other 18 Mercer board members had reviewed and voted to approve the GateGuard terms, as Soon-Osberger wrote in an email they had, so those board members should have been called to confirm they were aware of the fees, as Crimmins confirmed in her email, attached inline here, *which Soon-Osberger and Hom failed to produce.*

Because the 18 Mercer counts cannot be sustained as a matter of law (The chargeback is invalid as Hom was not a representative of the corporation at the time she made it), and because even Your Honor pointed out how impactful Soon-Osberbergers testimony was such that it balanced out that Soleimani lied about defrauding Mr. Stanley Howel, an elderly disabled black widower whom Soleimani *personally defrauded into signing away a rent-regulated lease*, a new trial is required. The jury should have been informed of the multiple accusations of fraud and mismanagement against Soon-Osberger and Hom's company by 18 Mercer shareholders.

Trial counsel knew this existed from the Pecot materials and failed to present it. This is staggering ineffective assistance of counsel.

Counsel should be assigned to argue this point. In the alternative, Your Honor has the discretion today to vacate the 18 Mercer counts and order a new trial, or even to enter a verdict of Not Guilty. (Of course, Mr. Damian Williams has the ability to dismiss these counts and this trial, as well.)

**Counsel failed to call witnesses they knew to have exculpatory evidence**

I also did not remember that trial counsel threatened Shelly Jenkins-Pecot's attorney to have her arrested and brought to testify! I did not even recall they had contact with her counsel!

5

It is obvious that Pecot's attorney reached out to trial counsel, as there is no way we could know his relationship with Pecot, and that means Pecot was served, knew she was subpoenaed to testify, and chose to *violate* her subpoena. This makes the evidence she provided post trial (Dkt. No. 284) all the more exculpatory, because she knew that her condo was "legally liable" for the fees and said on a call in August 2021 that she did not show up to testify *because she was afraid I would sue the building.* Pecot violated her subpoena to avoid the damage for which Soon-Osberger and Crimmins said they were "legally liable", and trial counsel did not show this to the jury!

> **From:** Justin Gelfand < justin@margulisgelfand.com>
> **Date:** January 18, 2020 at 12:45:51 PM CST
> **To:** "Michael E. Camporeale" <mcamporeale@tarterkrinsky.com>
> **Cc:** Joseph DiRuzzo <jd@diruzzolaw.com>
> **Subject: Witness Shelley Pecot**
>
> Mr. Camporeale,
>
> Attached, please find a motion for a material witness warrant we would prefer not to file but intend to file if we have no choice. As such, we wanted to see if we could take one more opportunity to explore securing Ms. Pecot's presence and testimony at trial. If not, or if we do not hear from you by this evening, we will file the attached motion.
>
> Respectfully,
>
> Justin K. Gelfand
> *Partner*
> **Margulis Gelfand, LLC**
>
> 8000 Maryland Avenue
> Suite 420
> St. Louis (Clayton), Missouri 63105
> P: 314.390.0230
> F: 314.485.2264
> margulisgelfand.com
> View Bio

I would never of sound mind agree to let a witness with so much exculpatory and impeachment evidence fail to appear, and it was "sleazy" (to borrow Your Honor's word) for Gelfand and DiRuzzo to not file this motion.

**Pecot confirmed to Your Honor after sentencing that I did warn the clients of the RCC terms, the fees, and the penalties,** and provides emails **that Soon-Osberger and Hom both hid**, which show Soon-Osberger telling the entire building and management company they would be "legally liable" if they moved the GateGuard device:

6

Shelly Jenkins Pecot
18 Mercer St. New York NY 10013
shelly.pecot@gmail.com (917) 561-6505

Judge Paul Engelmayer
District Judge
Southern District of New York
40 Foley Square
New York, NY 10008

August 21, 2021

Your Honor,

My name is Shelly Jenkins Pecot. I am a shareholder at 18 Mercer. I was out of the country when I was subpoenaed to testify.

With regard to 18 Mercer, I do not believe Ari Teman should go to prison.

Ari Teman did warn myself and other shareholders of what he said were the following terms in the contract he signed with our then board Vice President via an online document.

1. There was an $18,000 fee for removing the device
2. There was a $10,000 fee for collections
3. There would be attorney fees
4. There was binding arbitration
5. That he believed he had the right to draft owed monies from our bank account

I confirm that I did text with Mr. Teman and that the texts he has shown to me are accurate and match those on my phone.

I also confirm that I did forward the two attached emails to Mr. Teman on Aug 19th.

I do not live in New York and was only at the coop for a few days while Mr. Teman's device was installed. During that time, the device was connecting to the app but seemed to be disconnected from the door lock.

My personal interactions with Mr. Teman on this matter were amicable at first. I believed that he wanted to work with us to get his device working properly. Mr. Teman told me that our internet was not sufficient to run the device and that he had informed the board of this. Mr. Teman also told me that he had added a new router to help with this issue.

> From: margaret <margaret@dogbarksound.com>
> Date: Mon, Dec 3, 2018 at 11:44 AM
> Subject: Re: How do we resolve this intercom situation?
> To: Jackie Monzon <jackie@crystalrmi.com>
> Cc: Tracey Tooker <traceytooker@icloud.com>, Bonnie Soon-Osberger <bsoon-osberger@metisource.com>, shp83@hotmail.com <shp83@hotmail.com>, Shelley Pecot <shelly.pecot@gmail.com>, dick <rwien@cbs.com>, robi.buldini@gmail.com <robi.buldini@gmail.com>, Caroline Cabrera <caroline@crystalrmi.com>, Gina Hom <Gina@crystalrmi.com>
>
> By 'the board' so you mean Bonnie and Stephanie? I'm a board member and I have no idea where things stand with the intercom.
>
> **The last communications from Ari Teman:**
>
> 10/5  An e-mail from Ari stated that there was a 10 year contract and he would put a lien on the building.
>
> 10/22  The next e-mail from Ari stating that it would cost $18,000 to disable the device and $10,000 in collections if he wasn't paid in full.
>
> **The last communication from Bonnie.**
>
> 10/22  An e-mail to Ari stating that he would hear from our attorney that week
>
> And that's the only information the shareholders have. Are we involved in a lawsuit? Are we working on getting another intercom? Is there some reason the shareholders can't have this information?
>
> Thank you,
>
> Margaret
>
> On Dec 3, 2018, at 10:16 AM, Jackie Monzon wrote:
>
>> The Board is working on this.
>>
>> Jackie Monzon
>> President
>> 1441 Broadway, Suite 5047
>> New York, NY 10018
>> 646 569-5574

**Soon Osberger admitted they would face legal liability** if they move the GateGuard (Dkt. No 352-5):

> I believe anyone has direct contact with him before or moving without going through our management will have legal liability or sequence.
>
> Thanks,
>
> Bonnie

8

**Mercer President Crimmins tells Soon-Osberger she is "legally liable" for GateGuard's fees:**

> From: Margaret <margaret@dogbarksound.com>
> Date: Mon, Oct 22, 2018 at 11:40 AM
> Subject: Re: Who moved the intercom at 18 Mercer?
> To: Bonnie Soon-Osberger <bsoon-osberger@metisource.com>
> Cc: Stephanie Phillip <shp83@hotmail.com>, bonnie soonosberger <bsoonosberger@gmail.com>, Mark Osberger <mark.axisfilms@gmail.com>, Angela Huang <ahuang30@gmail.com>, <traceytooker@hotmail.com>, <rwien@cbs.com>, Roberta Buldini <robi.buldini@gmail.com>, Cc: Jackie Monzon <jackie@crystalrmi.com>, Archie Davidson <inchfitness@aol.com>, <shelly.pecot@gmail.com>
>
> We know who moved it. You told the men working on the lobby to move it. ( they told me) So I guess you're legally liable.
>
> Sent from my iPhone

To summarize:

1. Soon-Osberger emailed the shareholders of 18 Mercer and Crystal Management and warned they would be "legally liable" if they move the GateGuard device, in response to Teman's email warnings.

    a. Soon-Osberger and Hom/Crystal violated their subpoenas and did not produce this email.

2. Crimmins then reminded everyone of the dates, times, and amounts Teman warned 18 Mercer about the fees.

    a. Soon-Osberger and Hom/Crystal violated their subpoenas and did not produce this email.

3. Crimmins then told Soon-Osberger (copying Hom!!!) that she is "legally liable" because she had the device moved (which disconnected it from the door strike, disabling it).

    a. Soon-Osberger and Hom/Crystal violated their subpoenas and did not produce this email.

4. Pecot (on the current board of 18 Mercer) confirmed in a sworn statement to Your Honor that Teman warned them that GateGuard's terms allowed them to draft the accounts without invoicing, and confirmed the copies of the text messages (at Dkt 284) are authentic.

    a. Soon-Osberger and Hom/Crystal violated their subpoenas and did not produce the documents evidencing their termination mentioned in the Pecot texts.

Your Honor and the Government now know that Teman had no mens rea, and repeatedly warned the clients in advance of drafting the fees *in multiple emails and text messages over months.* Trial counsel was ineffective in failing to get and present this information to Your Honor and the jury.

**Trial counsel failed to submit evidence that Signature Bank & Coney were committing ongoing fraud**

9

Furthermore, trial counsel were in possession of an affidavit from Russell Pearlmutter (attached), former manager at Coney Realty that stated:

1. We very clearly explain in the sales process that we use RCCs for fees.
2. Coney regularly filed fraudulent chargebacks as a matter of business practice and
3. Signature Bank knew Coney regularly filed fraudulent chargebacks and rubber stamped them

This suggests that no actual "fraud review" took place -- which is backed by the above fact that Hom was no longer a representative, and Coney's Haas fled to Israel after being served our subpoena!

> DocuSign Envelope ID: D0578389-BF7F-4ED9-8A80-D8235D244330
>
> **Russell Pearlmutter**
> (718) 986-5701
>
> New York, NY,
> July 15, 2019
>
> To the DOJ and to whom it may concern,
>
> My name is Russell Pearlmutter. I have been a property manager in NYC for decades and am a client of GateGuard INC. We started with one device, loved it, and added it to another half-dozen buildings. I continue to use and recommend the service. Ari Teman has been an upfront person who delivers what he promises, is helpful, responsive, and explains things clearly.
>
> One of the things in GateGuard's contract, which they explain during the sale, and is very clear under the Payments section is that his company will do a bank draw (also known as an RCC, computer check, or pre-approved draw) on our accounts for any fees or costs due, such as monthly recurring fees, repair fees, parts, and device removal fees and penalties. He explained this is to keep their back office expenses to a minimum by automating billing and to avoid non-payment and late payment issues. These checks are very common in NYC real estate, and in-fact landlords often have tenants enter into such agreements.
>
> Not only are the terms clearly linked at the very top of their website, but you are required to click to accept them to sign up, and to use the service. They are also very clearly noted on each invoice, with a direct link to the terms and a note that paying the invoice means we accept the terms. This is very common and standard in our industry.

Perlmutter continues (the full letter is attached):

> Having worked for Coney Realty, I can assure you they review terms on all products and services diligently. They are also in the habit of doing chargebacks and they have someone in the office who does them frequently without any conversation with the vendor, regardless of contracted money owed, in an attempt to save money in rather unethical ways. Because they deposit so much, Signature Bank does whatever they ask, regardless of if the money is really owed, even though the bank is aware of this behavior and Coney's reputation.

Mr. Pearlmutter not only verified that I did warn clients of the RCCs, but testifies in his letter that Coney and Signature Bank knowingly steal from vendors *regularly*.

10

It's beyond ineffective that trial counsel did not run this issue down, call Mr. Pearlmutter to testify, and present this evidence to the jury.

**<u>Ms. Jamie Grant also confirmed that the RCC terms and termination fees were clearly disclosed</u>**

Not only did trial counsel fail to get the appropriate Payment Terms document into the record, but they had multiple witnesses who could confirm they were there *and that we disclose them during our sale process*, and that this is common practice in NYC real estate, and yet they failed to call them.

> DocuSign Envelope ID: A535208E-B31E-4006-9B43-84EE6C0E3FF9
>
> Jamie Grant
> jamie@schreibermanagement.com
> o:212-721-0251 m:718-757-4192
>
> To the DOJ and to whom it may concern,
>
> My name is Jamie Grant. I work for Schreiber Realty as a Property Manager. I signed up for the Teman GateGuard service on May 31, 2019. We have five buildings using the Teman GateGuard devices and service, which is very helpful in understanding the traffic into our buildings. The Teman team is helpful, easy to reach, and communicate clearly and transparently.
>
> As part of the ordering process, I entered our checking account information so that GateGuard could do bank draws (Remotely Created Checks, RCCs) for the money we owed and any future fees for the service. All of this was explained to me clearly by the Teman sales team, and is also very clear in the Payments section of the contract. During the sales calls they also explained that I would enter the checking info and they would print computer checks and deposit them. This is common in NYC real estate.
>
> Like all property management firms I know, we review contracts before signing up for any such service because investors insist they know what it will cost to cancel or remove a service. GateGuard's terms are easily accessible from the homepage, and you cannot order without confirming that you have read and accepted them. They also appear on the invoices and receipts.

(full letter attached)

**<u>Trial Counsel failed to get the clients' contract into evidence and failed to argue they are bound by *Meyer v Uber* both to the original terms and updated terms</u>**

Your honor himself chastised trial counsel repeatedly for failing "lawyering 101", including in failing to get the document Soon-Osberger and her board approved into evidence, despite her own emails saying the board printed and reviewed the contract:

> THE COURT: The problem is that I'm not going to permit this document. **<u>You had loads of time to prepare</u>** for an advice-of-counsel defense. Get the document in evidence that bound these customers. They did not buy into payment terms that were revised on January 27, 2019. **<u>This is lawyering 101.</u>**

Trial counsel also failed to argue that *Meyer v Uber* applies and that Soon-Osberger was bound by the Payment Terms and the updated terms because she admits to having constructive notice of their existence and being part of the Terms, and because she had to have accepted the updated terms to use the system.

```
January 23; Page 167; Line 22:
```
Q. So you read this agreement -- sorry. You read the Terms &
Conditions page, right?
A. Yes.
Q. And there is -- you can see here in the middle of this

paragraph, there is -- it says, "The applicable fees shall be
as stipulated in the price list made available by GateGuard on
the site from time to time **and subject to the additional
payment terms stipulated out," and then there is a Web page.**
Did you click on that link?
A. I didn't because the pricing was what he mentioned to me at
the show.


The Terms agreement has an industry-standard clause making clear that prior agreements and statements do not apply, and the pricing is on the GateGuard homepage, not the Payment Terms, so Soon-Osberger's reasoning is as dishonest as it is ludicrous and legally baseless.

An internet customer cannot arbitrarily decide which parts of a contract apply to them without any discussion or notice, or this would destroy commerce in the United States, a violation of the Commerce Clause.

The system also required clients to accept the updated terms and conditions in order to use the dashboard (shown).



Trial Counsel could have easily proven via logs that these clients accepted the updated terms when they logged-in to this dashboard, **that it is impossible to use the GateGuard dashboard without accepting the current terms,** and that therefore Your Honor's point about not submitting the prior terms would not matter because **they had all used the dashboard after the updated Payment Terms were uploaded and therefore affirmatively assented to the updated Payment Terms.**

Trial Counsel's failure to motion to dismiss on the grounds Soon-Osberger was bound by the Terms and updated Payment Terms per *Meyer v Uber* may have prevented the issue from being available for argument in the Second Circuit. It is not a harmless error, and this should be argued by counsel in a 2255.

It is obvious that Trial Counsel were unprepared and failed to do basic investigation of the signup and login process which would prove that clients must have accepted the Payment Terms that Mr. Reinitz reviewed *and reminded them of in multiple emails*.

**Trial Counsel did not need to call Reinitz and should not have called him**

Trial counsel did not need to call Reinitz to establish that GateGuard's attorney had advised Teman the clients were bound by the Payment Terms, because Reinitz had emailed exactly that to Soleimani and Gabay, who admitted in their testimony that they received these warnings, and that Reinitz linked directly to the Payment Terms which authorized the RCC drafts and these fees. At that point, the jury had enough to believe that Reinitz had advised Teman that these clients were bound by the Payment Terms.

**Trial Counsel failed to bring into evidence emails from Reinitz to Bank of America saying that the fees were authorized**

Trial counsel did not need to call Reinitz to establish that GateGuard's attorney had advised Teman the clients were bound by the Payment Terms, because Reinitz had emailed exactly that to Bank of America before there was any arrest, after the chargebacks. Reinitz made clear in these emails that the clients were bound by these terms, that they owed the amounts drafted, and that the terms authorized the RCC drafts. Reinitz demanded that the chargebacks be reversed.

Upon information and belief, these emails were not submitted into evidence by trial counsel and were not raised with the Bank of America witness.

There was no need to call Reinitz and invite the alarming messages in the Whatsapp messages. To be clear, the context of those messages was to not draft the accounts "out of the blue", and Teman followed Reinitz's advice and waited three additional months while Reinitz and Teman warned the clients again, linking them to the Terms and Payment terms in emails. But there was still zero reason to call Reinitz, because his warnings to Soleimani and Gabay were in evidence, and trial counsel had Teman's warnings to Pecot and his emails to the 18 Mercer shareholders.

It is obvious that trial counsel should have called Shelly Jenkins-Pecot and not Ariel Reinitz, and that these two mistakes are gross ineffective assistance of counsel. A competent attorney should be assigned to argue this point in a 2255.

**Trial Counsel failed to show that Teman had no input into the "Structure" of the terms**

13

The prosecution's argument that Teman "buried" the Payment Terms as a link within the main Terms page is easily disproved with emails from the attorneys who structured the terms and conditions for Teman's companies. This firm, which represented major internet companies such as Waze, based the structure and most of the content of the terms documents on Airbnb's terms nearly identically. Teman could not have mens rea to defraud anyone with the terms structure because neither Teman nor his counsel invented the terms structure. It is was a near-identical copy of Airbnb's online terms document from that time.

As well, if the "structure" of the terms is a key element of the fraud, then Teman clearly relied upon the attorneys who provided the structure, and they should have been subpoenaed to testify. Alternatively, an expert on online terms structures should have been called to explain to the jury that GateGuard's terms are "industry standard", as Professor Lawrence Lessig explained to the Attorney General and the President (Dkt No. 350-3 ):

> "The contract that authorized this was not crafted by Mr. Teman, but by his lawyers. They had patterned the agreement on other well known companies (such as AirBnB). The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent.
>
> …
>
> Indeed, the reality of online commerce is that agreements like this are the norm. The judge in this case suggested that the terms authorizing the transfer of funds were buried in the contract. GateGuard's contract is actually quite concise relative to many online agreements. The suggestion that a surprising term in an online agreement constitutes an intent to defraud would render most banks and credit card companies guilty of fraud. Nothing in GateGuard's terms of service is extreme or unusual. "

If a Harvard Law Professor who is an expert on Internet Law and Contracts believes that "Nothing in GateGuard terms of service is extreme or unusual", and that "GateGuard's contract is actually quite concise relative to many online agreements," it is unfair to place a greater burden on Mr. Teman who is (clearly) not an attorney and had to rely upon the corporate attorneys who provided his company's terms agreements to be uploaded by the engineers. Mr. Teman is a technologist and a comedian, not a legal expert, and, "The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent."

Trial counsel should have argued this, but they did not submit any evidence that Teman had nothing to do with the Terms structure!

**Trial Counsel failed to show SDNY's law enforcement agency partner used & praised GateGuard**

Furthermore, evidence will show that The Government's (SDNY) agency partner used and praised GateGuard technology at the same time the Government was telling the jury it "didn't work".

14

While this is a clear Brady violation it is surely Ineffective Assistance of Counsel for trial counsel to not call in the law enforcement officer who praised GateGuard technology and thanked me for their help in emails.

I am not including emails which suggest the locations they are monitoring or which expose which property's and owners are working with Detective Nunez, but there are multiple.





**Trial Counsel failed to argue I should receive a reduced sentence as a cooperator & remain available to assist**

As well, I should be considered a cooperator for my ongoing assistance of the FBI/NYPD task force, and that should be factored into any sentencing as I am at heightened risk in prison.

Furthermore, I cannot maintain these systems from prison, and that puts ongoing investigations (the task force continues to have access to these properties' devices) at risk.

The NYPD/Federal Task Force losing evidence of alleged drug gangs and their visitors would be a great cost to these properties and the families that want to live safely in those neighborhoods, but I cannot help maintain these systems from prison and that would mean a loss of critical evidence. This is another reason I should be kept out at-last until the argument of a 2255 and a motion for a reduced sentence or time served.

**There are other "significant issues" identified by Mr. Commissiong and by Appellate Counsel and others.**

**Mr. Commissiong agrees that I should be assigned counsel, and has written so to Your Honor.**

These are complicated matters and should be argued by competent counsel who is able to meet deadlines (of their own and of the court), communicate with their client, and to provide outlines and plans so that the defendant can provide any required documents.

The Federal Defenders have indicated a willingness to represent me, and they have the resources and investigators to address the issues of missing evidence and witnesses willfully violating subpoenas.

The heavy load of "significant issues" identified by Mr. Commissiong and Appellate counsel (who is battling an illness and recent loss of his father, so cannot step in to help) may be too much for a single CJA attorney to handle. A Federal Defender has a team who can help them.

Therefore, I respectfully request that Your Honor assign the Federal Defenders to defend me and give them and me 90 days to prepare a 2255 on these and other "significant issues" identified by Mr. Commissiong (some on recorded calls, disclosed).

**A stay to allow the defendant to coordinate with counsel is ethical and *needed by counsel***

I believe that Your Honor will find the 2255 compelling evidence of ineffective counsel causing the defendant to forfeit rights to a fair trial.

Because of the potential that Your Honor might order a dismissal or retrial, starting incarceration earlier than a ruling on the 2255 would be an unfortunate and unfair punishment of a defendant who did not have protected rights of a fair trial.

Because we continue (even today) to discover emails I sent to trial counsel and other evidence and items they neglected, I could not possibly search and find these items from prison camp, and therefore reiterate my request to stay the report date until the filing and ruling on a 2255.

Therefore, if only for the assistance of the counsel Your Honor will assign, Your Honor should please stay the reporting to prison until the resolution of the 2255.

**Mr. Commissiong confirms there are "significant issues to be briefed"**

Mr. Commissiong has also asserted that there are "significant issues to be briefed", and that "ineffective assistance of counsel is an understatement". There are more issues than we were even able to get to discuss, and Mr. Commissiong has been unable to make time to speak with me and has missed multiple deadlines, as noted.

He agrees and has written to Your Honor that I should be assigned counsel, and Your Honor has already agreed that I should remain available to work with counsel and provide evidence to them, which I cannot do from prison camp.

16

**The Second Circuit agrees that the 2255 Motion should be argued by counsel**

The Second Circuit and Your Honor both agreed that I should argue this topic under a 2255, and Your Honor agreed that I should be assigned counsel.

There are more issues that Mr. Commissiong has identified, as has Mr. Quainton (Appellate counsel), as has Ms. Kelman according to Mr. Commissiong. (The defendant is grateful for Ms. Kelman's assistance and reiterates that he motioned for her request to withdraw to be *denied*. (Dkt. No. 352-2).)

**Your Honor has sufficient evidence to assign counsel, stay reporting to prison, or order a new trial today**

In the alternative I offer that Your Honor has the discretion to vacate this conviction and set this for a new trial.

Your Honor has discretion to vacate convictions and/or order new trials in the interest of justice and can find the attached experts letters persuasive enough, especially combined with:

1. The overwhelming evidence of ineffective assistance of counsel, including their hiding that I was medically unfit to prepare-for and stand trial according to multiple experts

2. The sworn statement of Ms. Pecot, and evidence that I had warned them of the RCCs

3. The sworn statement of Mr. Pearlmutter and evidence that I warned them of the RCCs and that Coney and Signature regularly and knowingly processed fraudulent chargebacks

4. Hom's relationship had been terminated and thus she was no longer authorized to represent 18 Mercer and file a chargeback

5. Hom and Soon-Osberger hid emails where Soon-Osberger and Crimmins admitted the condo would be "legally liable" for these fees.

Ms. Pecot and Mr. Pearlmutter and Ms. Grant have all confirmed to Your Honor that I notified clients before ordering that we had the right to draft these amounts via RCCs, and reminded clients of this before ordering and before drafting fees. Your Honor can now see that Soon-Osberger and Crimmins both said they were "legally liable" for these fees. This evidence shows there was never *mens rea* to hide these fees or defraud anyone.

Had I been mentally fit to prepare for trial, had trial counsel not been "sleazy" and "hid the ball" as Your Honor called it, Your Honor would have seen this evidence four years ago.

Your Honor was angered by what I wrote about you in my suicide note, which was forwarded by defendants in GateGuard v MVI and GateGuard v Goldmont to Mr. Soleimani, who gave it to the Government, who did not

17

disclose the paper trail (a Brady violation, as explained in Dkt. No. 295). I did not send it to Your Honor, nor was it addressed to Your Honor in any way. Yet because Trial Counsel hid that I had repeatedly emailed them that I was in excruciating physical pain and was severely mentally unwell, Your Honor took personal offense at that letter rather than understand it was the result of extreme illness and psychosis and was *opposite* my beliefs and life's work.

Your Honor did not know then that I had spent much of my life helping the Jewish people though founding JCorps, assisting Chabad, the IDF, Hatzalah, and many other organizations (Dkt. No. 326), and could not see that this "flip" in my personality was an obvious sign of mental illness. But trial counsel could, especially Mr. Gelfand who knew me from college, and they had a moral and ethical responsibility to tell Your Honor this and to adjourn the case and seek medical intervention.

**Your Honor mentions multiple times in the transcript where trial counsel did things that could harm their client and were unethical.** A defendant should, at the very least, have trustworthy counsel that does not rush a "psychotic" patient suffering extreme physical pain, heavily sedated, with a recent diagnosis of narcolepsy, into a complex case, while they neglect to call witnesses they knew to hold exculpatory evidence.

This document is not intended to replace a 2255 or Rule 33 motion, but to give color to some of the topics (not all) discussed and reviewed with Mr. Commissiong, which is why **he has recommended Your Honor assign counsel that has the time to work with me to understand the issues fully and file and argue a 2255.**

I ask that Your Honor assign competent counsel to argue a 2255 motion, and any motions warranted by the additional evidence and "significant issues" referenced by Mr. Commissiong.

 Or, if Your Honor finds the above compelling, with the discretion and power you hold, please dismiss this case.


Thank you. Shabbat Shalom.

Ari Teman, Defendant *pro se*


----
Attachments:
1. Letter from Dr. Alon Seifen
2. Letter from Therapist Scheidt
3. Letter from Therapist Villeta
4. Three Emails to counsel saying I was unfit (no privilege waived) (inline)
5. Affidavit of Russel Pearlmutter re: Signature Banks willful fraud
6. Affidavit of Jamie Grant
7. Medical Records re: Narcolepsy Diagnosis Dec 11, Mt. Sinai