**EXHIBIT 6 - Selected transcript from Curcio violation disclosure**

[Docket 182, Page  23]

[Court] All right. So, Mr. Biale, let me just pursue that with you. Before you took on this representation, was Mr. Teman notified by you of the fact that your wife is presently employed by the office that is prosecuting Mr. Teman, and that she has been employed there during the entire course of this prosecution?

MR. BIALE: Your Honor, I apologize. I don't recall having a conversation about that with Mr. Teman. And it sounds like I did not. Perhaps what makes sense is for -- I think where your Honor is headed, that we should break and have a discussion with Mr. Teman about this.

THE COURT: Well, we're going to do a little more than that. But, yes, you and I are on the same page.

But, look, to be very blunt -- and this is something that -- **this is obviously pivotally important. Mr. Biale's wife status as an employee of the United States Attorney's Office for the Southern District of New York - - Mr. Teman's adversary in this case -- presents a potential conflict.**

[Docket 182, Page 24-25]

[Court] Absent a properly conducted Curio proceeding resulting in a knowing waiver by Mr. Teman of the potential conflict here - - and it needs to be a waiver that I find knowing and intelligent -- <u>**we simply cannot proceed further with Mr. Biale representing Mr. Teman.**</u>

…

Let me ask you, **Mr. Bhatia, were you aware that Mr. Biale is married to one of your colleagues?**

MR. BHATIA: <u>**Yes, I was.**</u>

THE COURT: Is there a reason you didn't alert me to the potential conflict?

MR. BHATIA: I apologize, your Honor. I wasn't aware this is one of the situations that triggers a Curio hearing; although now that you mention it, we are happy to proceed and conduct one.

THE COURT: Mr. Biale, are you also of the view that you didn't think this might be a potential conflict, or it just didn't -- just sort of blipped on it and didn't think about it?

MR. BIALE: So, your Honor, I will say that - - s**o Mr. Teman retained Ms. Harris in the summer.** And I was brought into the case a little bit later to assist her. I've obviously been working closely with her. I am not saying that to suggest that it was her responsibility to disclose it, but I was not part of the initial conversations.

I certainly understand that this is something that, **had we discussed it before, we wouldn't be addressing it for the first time with your Honor now.**

[Docket 182 Page 28]

[Court] What I want to have happen is as follows: I want defense counsel first to review the issue carefully with Mr. Teman. **And Mr. Teman's look of shock was obvious to me, even from 1,000 miles away on video,** when he learned that one of his lawyers works -- is a colleague of Mr. Bhatia's.

…

[Docket 182 Page 31]

[THE DEFENDANT] I'm concerned about an even larger issue, which is, without going into the details that your Honor is undoubtedly aware -- and a lot of paper has been exchanged electronically back and forth, the questions -- the core questions we have raised about this trial in two words would be prosecutorial misconduct.

And I have just learned that the attorneys representing me are literally married to the prosecution. I think that raises a much larger question about the entire case and privileged communications and strategy and advice I've gotten throughout this trial.

[Docket 182 Page 32]

[THE DEFENDANT] But I think **there's a much bigger concern here, which is we will never, never be able to know what I gave that was privileged to my counsel that was just funneled to people we've accused over and over of cheating.** And not only have we accused them of cheating, Professor Dershowitz has accused them of cheating, Ron Coleman has accused them of cheating, Molly McCann has accused them of cheating. They've been accused of cheating. The Southern District of New York has been accused of burying evidence in U.S. v. Najad, U.S. v. Ahuja. You can go up and down the halls of the Southern District of New York and they will talk about these attorneys -- one of whom he's married to --emailing each other about "burying evidence."

[Docket 182 Page 53]

[THE DEFENDANT] I very much expect to show up with new counsel. And I don't know of the technical means of doing this, but **I very much expect to ask for some sort of outside independent hearing, where it's an independent cour**t. You have a personal relationship with this guy. He does a major significant thing. And, your Honor, it may be all accidental, you know? Like hiring the wrong person at a company who leaks information to a competitor, that might be all accidental, **but it's still a spy on the team.** And this is shocking.

[Docket 182 Page 54]

[JUDGE] And Mr. Teman, I regret that, you know, the challenge of being a criminal defendant at this time has been **compounded by the challenge of being, you know, cooped up in a worldwide pandemic** with all the concerns that must be on your mind. So you're in my thoughts.