

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 4, 2023

**BY CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    <u>United States v. Ari Teman</u>, S2 19 Cr. 696 (PAE)

Dear Judge Engelmayer:

      The Government respectfully writes in response to the Court's September 27, 2023 Order (Dkt. 397) and in opposition to Ari Teman's ("Teman" or the "defendant") motion to extend his surrender date (Dkt. 394, "Motion to Extend"), presently set for October 10, 2023. The Motion to Extend is based principally on assertions also made in the defendant's motion, pursuant to Federal Rule of Criminal Procedure 33, filed on September 15, 2023, more than three years after the defendant's January 2020 trial conviction of two counts each of bank and wire fraud. (Dkt. 386, the "September 15, 2023 Rule 33 Motion"). The defendant sets forth no valid basis to extend his surrender date. Rather, he makes a general claim that due process requires the Court to resolve these belated, meritless motions—the substance of which the Court has ruled will be considered in the defendant's forthcoming § 2255 motion (*see* Dkts. 387, 389)—in advance of his surrender. Even if resolution of the defendant's September 15, 2023 Rule 33 Motion were a valid basis to extend the defendant's surrender date—and it is not—that motion is meritless. In short, the defendant claims that evidence purportedly discovered post-trial demonstrates that witnesses who testified about the defendant's fraud on one of his victims, 18 Mercer Equity, Inc. ("18 Mercer"), did so falsely, and that the resulting injustice is a basis to vacate his convictions. The defendant's claim is flatly contradicted by the trial testimony of Bonnie Soon-Osberger and Gina Hom, as well as documentary evidence admitted as Government Exhibits at trial; additionally, the defendant's argument is undermined by his own direct communications with Pecot, of which he was aware prior to trial and that contain substantive discussion about topics he now characterizes as newly discovered. Accordingly, the Government respectfully submits that the Court should deny the defendant's Motion to Extend and keep in place his October 10, 2023 surrender date.[1]

---

[1] Consistent with the Court's September 27, 2023 Order, the Government does not address in this submission the defendant's second recent *pro se* Rule 33 motion, filed on September 21, 2023 (Dkt. 388), the substance of which the Government understands will be addressed in response to the defendant's forthcoming motion pursuant to 18 U.S.C. § 2255.

## I. Background

The Court's September 27, 2023 Order set out the relevant procedural history, and the substantive background of the case has been detailed in prior rulings and filings. (*See also* Dkt. 138 ("Rule 29/33 Decision")). Accordingly, this submission focuses on the background relevant to the defendant's present motion.

The trial evidence demonstrated that Teman obtained corporate bank account information from customers of businesses he ran, then misused that information to create fraudulent checks drawing funds from the customers' accounts without their authorization. The principal business Teman used to execute his fraud was GateGuard, Inc. ("GateGuard"), a company he used to sell intercom devices to apartment buildings. (*E.g.*, Trial Tr. 312-13, 420-21, 489-90). 18 Mercer was one of the customers to which the defendant sold his intercom system.

### A. The Defendant Defrauds 18 Mercer

Bonnie Soon-Osberger, a former board member of the cooperative at 18 Mercer Street, testified that, from approximately October 2017 to January 2019, she was on the board of directors of the cooperative at 18 Mercer Street. (Trial Tr. at 416). In her capacity as a board member, Soon-Osberger was responsible for, *inter alia*, "[m]aintaining the expenditures, the budgets, and mak[ing] sure that all expenditures [did not] exceed our budget." (*Id.*). She also managed projects, including looking for vendors and obtaining bids that then were submitted to the board for approval. (*Id.*). Soon-Osberger also testified that 18 Mercer had a management company, Crystal Real Estate Management ("Crystal Management"), responsible for paying 18 Mercer's bills, including issuing checks to pay invoices. (Trial Tr. at 417-18).

In approximately October 2017, Soon-Osberger met the defendant at a convention, where she was searching for an intercom system to purchase for 18 Mercer Street . (*Id.* at 420-21). Soon-Osberger recalled that the defendant demonstrated to her his intercom panel, *i.e.*, the GateGuard system, and told her that the panel cost approximately $2,500, and that he did not mention anything to Soon-Osberger about a cancellation fee or device removal fee. (*Id.*).

Following the convention, Soon-Osberger communicated with the defendant about purchasing a GateGuard unit, and in particular about the price for doing so. Soon-Osberger testified that she asked the defendant for the specific amount "because when we do bidding, I have to have the exact amount. So I asked him to send me the pricing." (Trial Tr. at 427). Thereafter, the defendant provided an invoice, dated March 26, 2018, which itemized $2,499 for the intercom system, $849 for installation, and $49.99 for a monitoring plan, totaling $3,947. (GX 431). The invoice included, in the bottom left-hand corner, text that read, "Buyer accepts terms & conditions at https://gateguard.xyz." (*Id.*). Soon-Osberger testified that she did not click on that link, see an agreement that referenced a thirty-year contract with the defendant, or see a document that allowed the defendant to write a check on behalf of 18 Mercer. (Trial Tr. at 428). When asked what her reaction would have been had she seen those terms, Soon-Osberger testified: "I would not agree to that. It's not a practice that our co-op would abide by. We wouldn't do that. The only people that can write checks is our management, approved by the board. All the invoices are submitted, approved, and then handed over to the management to write the check." (*Id.*).

After receiving the invoice, on or about March 29, 2018, Soon-Osberger emailed the defendant a series of questions about the "Terms & Conditions," including about a provision allowing an increase on "monthly fees at a rate of up to 100% per year" and one granting GateGuard broad permission to install its equipment. (*See* GX 442). In response, the defendant reassured Soon-Osberger and wrote, in effect, that certain of those provisions would not be applicable to 18 Mercer Street; in particular, he assured her that the provision relating to whether the intercom was being licensed to 18 Mercer, *i.e.*, along with any terms and conditions, or sold outright was a "tax loophole" and that he could "waive this if it's an issue for your board." (*Id.*). Approximately a week later, on April 4, 2018, Soon-Osberger forwarded the invoice and an email summary to Gina Hom, then a vice president for Crystal Management responsible for servicing 18 Mercer. (*See* GX 431). Thereafter, having received the requisite invoice and board approval for the expenditure, Hom issued a check to GateGuard, dated April 4, 2018, in the amount of $3,947.88. (Trial Tr. at 473, GX 143).

Soon after the defendant's intercom system was installed at 18 Mercer Street, Soon-Osberger and others began having concerns about the device. (Trial Tr. 436-37). Soon-Osberger relayed those concerns to the defendant and, ultimately, after trying various solutions suggested by the defendant, members of the board of 18 Mercer determined it was necessary to remove the GateGuard system. (Trial Tr. at 437). Soon-Osberger testified that she conveyed this to the defendant by email, mentioning to the defendant that "it's not working; the system, we plug it in, it's not working," and that they had "tried the IP addresses [the defendant] was asking, just multiple requests he had related to our services and each time it just didn't work." (Trial Tr. at 438). At that point, Soon-Osberger "said we need to move on, we do need to have the system removed." (*Id.*). That was when, Soon-Osberger continued, the defendant "was sending an email that we would be charged" and that "he would put a lien on the building." (Trial Tr. at 438). Soon-Osberger testified further that she was "shocked" to receive one such email from the defendant, dated January 7, 2019, stating that "you are not allowed to touch or move our device and there's an $18,000 fine for removing it." (Trial Tr. 439, GX 443). Soon-Osberger also recalled another email in which the defendant threatened to place a lien on 18 Mercer Street. (Trial Tr. 440).

On March 28, 2019, the defendant deposited a check, worth $18,000, into an account at Bank of America, N.A., held in the name of "GateGuard INC," ostensibly on behalf of "18 MERCER EQUITY INC c/o Crystal Real Estate Management." (GX 202). Hom, who, along with her partner Jackeline Monzon, was responsible for issuing checks to pay invoices for 18 Mercer, testified that she did not authorize this check and was "shocked" when she learned about it. (Trial Tr. 474-45). Hom explained that she was shocked "[b]ecause I did not issue a check. And it overdrew my account." (*Id.* at 475). Hom testified further that only she and one other individual were authorized to issue a check on behalf of 18 Mercer, that neither had authorized this one, and that Soon-Osberger never provided approval to Hom to issue this check. (*Id.* at 476).

B. The Defendant's Motion

The central argument in the Motion to Extend is that 18 Mercer and, in particular, Soon-Osberger, knew that by removing the GateGuard intercom system, 18 Mercer was "legally liable," including for an $18,000 removal fee. In support of this contention, the defendant points to various items appended to his December 26, 2023 Declaration, filed along with the Motion to Extend. (Dkt. 395, the "Teman Declaration"). In particular, the defendant points to his summary of an

3

August 19, 2021 call with Pecot; a notarized letter purportedly from Pecot; and an email exchange from early December 2018 including Pecot, Soon-Osberger, and Jackie Monzon, a representative from Crystal Management, forwarded by Pecot to the defendant on or about August 19, 2021. (*See* Teman Decl. ¶¶ 2, 5, Exs. A, C, D). Taken together, the defendant argues that these materials undermine Soon-Osberger's and Hom's testimony, and, more generally, the Government's theory that the defendant defrauded 18 Mercer by illegally drawing a $18,000 check on its (Crystal Management) account without 18 Mercer's permission.

### C. The Pecot-Teman Text Messages

The defendant argues that he had warned Pecot and others at 18 Mercer about the relevant Terms and Conditions of his contract to install intercoms, specifically the $18,000 removal fee, $10,000 fee for collections, requirement of binding arbitration, and "[t]hat he believed he had the right to draft owed monies from our bank account." (Teman Decl. Ex. C). This, the defendant argues, proves he had no *mens rea* to defraud 18 Mercer. (*See* Mot. to Extend at 3-7). He also claims this is "new" evidence discovered in August 2021. While the defendant may not have had a notarized letter from Pecot prior to trial, he had extensive communications with her about his intercom system and 18 Mercer Street about topics relevant to the purported "new" evidence.

On or about January 17, 2020, the Friday before trial began, defense counsel advised the Government that their process server had served a subpoena on Pecot's Mercer Street address and, through counsel, Pecot had advised that she would be out of the country and would not appear at trial. (Jan. 17, 2020 Email and Attachment, attached hereto as Exhibit A). In that email, counsel provided the Government with a proposed defense exhibit, which ultimately was not admitted at trial, consisting of communications between Teman and Pecot spanning the period from approximately October 26, 2018 through March 15, 2019. Those communications make clear that, during that time period—*i.e.*, well after 18 Mercer's purchasing the intercom system in April 2018—Teman communicated with Pecot in an effort to maintain his GateGuard intercom system installed at 18 Mercer. Based on the communications, Pecot seemingly attempted, unsuccessfully, to get Teman's intercom system to work, and conveyed to Teman that she would make efforts on his behalf to convince the board of 18 Mercer not to replace his system. Ultimately, however, in January 2019, Teman conveyed to Pecot facts he now presents as "newly discovered" by Pecot after trial, including that Teman believed he had a 10-year contract to keep the intercom installed and that tampering with the device would result in an $18,000 removal fee. (*See, e.g.*, Ex. A at 13). Teman advanced a similar argument in his August 19, 2021 *pro se* letter, which first identified this purportedly new evidence provided to him by Pecot, and which also contained, appended to the emails Pecot ostensibly provided, some of his direct communications with Pecot. (*See* Dkt. 265 at 7-9).

### II. Discussion

The Motion to Extend sets forth no valid basis to further delay the defendant's surrender date. As set forth in the September 27, 2023 Order, the Court previously extended the defendant's surrender date to enable him to observe religious holidays. (*See* Dkts. 374, 375, 377, 378). Now, in the absence of any concrete basis to delay that date further, the defendant raises baseless legal arguments, based on a misplaced conception of due process. An untimely Rule 33 motion filed more than three years after trial, as well as after the defendant's conviction was affirmed by the

4

Second Circuit, is not a basis to delay surrender, especially where the defendant has remained on bail, pending appeal, since his July 2021 sentencing. Even if it were, however, the Court should reject the defendant's argument on the merits. The purportedly new evidence does not, as the defendant argues, contradict the trial record; rather, as set forth below, the materials he cites corroborate Soon-Osberger's and Hom's testimony. Additionally, at a minimum, the defendant appears to have been aware before trial of at least some of the substance of the assertions made by Pecot he now claims absolve him, which were in fact conveyed to Pecot by the defendant himself in late 2018 and early 2019. Accordingly, and for the reasons set forth below, the Court should deny the defendant's Motion to Extend.

    A. <u>Applicable Law</u>

        1. <u>Federal Rule of Criminal Procedure 33</u>[2]

Rule 33 "motions for a new trial are disfavored in the Second Circuit." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33 . . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation and internal quotation marks omitted). Granting a new trial "must be done sparingly and in the most extraordinary circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (internal quotations omitted." "[A] district court may not grant a Rule 33 motion based on the weight of the evidence alone unless the evidence preponderates heavily against the verdict to such an extent that it would be 'manifest injustice' to let the verdict stand." *Id.* at 188. In *Archer*, the Second Circuit explained further:

> We stress that, under this standard, a district court may not 'reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.' To the contrary, absent a situation in which the evidence was 'patently incredible or defie[d] physical realities,' or where an evidentiary or instructional error compromised the reliability of the verdict, a district court must 'defer to the jury's resolution of conflicting evidence.' And, as it must do under Rule 29, a district court faced with a Rule 33 motion must be careful to consider any reliable trial evidence as a whole, rather than on a piecemeal basis.

*Id.* at 188-89.L 6807833, at *4 (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005)).

        2. <u>Government's *Brady* Obligations</u>

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). "To demonstrate such a deprivation, a defendant must show that: (1) the Government,

---

[2] Both the Court and the Government have at various points in the post-trial litigation set forth the legal standard for a motion made under Rule 33. (*E.g.*, Rule 29/33 Decision at 16; Dkt. 112 at 14). That standard is summarized here for reference.

either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different." *Fuentes v. T. Griffin*, 829 F.3d 233, 246 (2d Cir. 2016). However, "evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (internal quotation marks, citations, and alterations omitted). It is well-settled that there exists no specific timeframe within which the Government must disclose potential exculpatory information as "long as a defendant possesses *Brady* evidence in time for its effective use." *United States v. Lawrence*, 767 F. App'x 77, 81-82 (2d Cir. 2019).

*Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Ohle*, No. 08 Cr. 1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011); *United States v. Garcia*, 509 F. App'x 40, 42–43 (2d Cir. 2013) ("In this case, therefore, the government did not 'suppress' any evidence by failing to ask one of the cooperating witnesses a specific question, especially considering that [the defendant] knew all of the essential facts that would have allowed him to ask that witness the same question."). And for good reason. Our "adversarial" justice system presumes that a defendant will be "more highly motivated to uncover exculpatory evidence" and that, to the extent any exculpatory evidence exists, "the defense is in the best position to know what such evidence might be and where it might be located." *Ohle*, 2011 WL 651849, at *4 (citing the district court's "thoughtful and meticulous opinion."). It is not only unreasonable, but also "untenable" to expect the Government "to prepare both sides of the case at once." *Id.* at *4. "Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once." *Id.*

### B. The Defendant's Motion to Extend Should Be Denied

The defendant's Motion to Extend is the latest in a long line of disingenuous attempts to falsely claim innocence and make groundless misconduct accusations. Like his previous efforts, this too should be rejected.

*First*, Soon-Osberger's and Hom's trial testimony was, and remains, accurate. The defendant's basic claim here is that Soon-Osberger and Hom, and 18 Mercer *writ large*, knew that the "Terms and Conditions" for purchasing the GateGuard intercom system included an $18,000 fine for tampering or removing a device, among other things. That is true; they did know – eventually. They learned in approximately October 2018 because that is when the defendant threatened them with legal liability. This was several months <u>after</u> 18 Mercer purchased the defendant's intercom system for $3,947.88 in early April 2018; <u>after</u> they had tried various measures, at the defendant's suggestion, to make the intercom system work properly; and <u>after</u>, finally, Soon-Osberger conveyed to the defendant that they would need to remove the system. The "new evidence" proves nothing more than consistency in the defendant's fraudulent *modus operandi*. As Soon-Osberger testified at trial, she thought 18 Mercer was purchasing an intercom unit for less than $4,000—indeed, Soon-Osberger testified that one of the features that attracted her to GateGuard's system was the relatively lower price (*see* Trial. Tr. at 445-46)—and the

defendant made assurances about certain contractual terms. When the system failed to operate adequately, the defendant began making trumped up threats of legal liability and, ultimately, used this as an excuse to steal $18,000 months later, in March 2019.

According to the defendant, the emails provided by Pecot he cites "directly undercut[] the Government's core theory that GateGuard's enforcement of its Terms and Conditions was a total 'shock'" to Soon-Osberger and Hom. (Mot. to Extend at 11-12). In making this argument, the defendant places great weight on the incomplete email chain, dated October 22, 2018, in which Crimmins purportedly writes to Soon-Osberger, "So I guess you're legally liable." (Mot. to Extend at 4-5; Teman Decl. Ex. D). The version of this email chain the defendant provided in his declaration is missing what, according to his August 19, 2021 letter, was the first email in the chain: one from the defendant asking various people, apparently including Soon-Osberger, Pecot, and Crimmins, who moved the intercom and threatening legal liability. (Dkt. 265). In that context, Crimmins' response, followed shortly thereafter by an email from Soon-Osberger directing others to "discard any communication from Ari Teman," can be interpreted as a response to the defendant's threat and further proof that, prior to that, neither Soon-Osberger nor others at 18 Mercer were aware of the "penalties" associated with purchasing an intercom system for less than approximately $4,000.

The defendant's direct communications with Pecot corroborate Soon-Osberger's testimony: Teman's intercom was installed; it did not work; and, after 18 Mercer informed Teman they would remove the system, Teman began making threats, including that he was owed an $18,000 removal fee and that 18 Mercer had entered into a ten-year contract (for purchasing a single less-than-$4,000 intercom). The trial testimony, admitted exhibits, and Pecot-Teman communications make clear that, prior to approximately October 2018, none of Soon-Osberger, Hom, or Pecot was aware of those "terms"; that is, they were not aware until Teman started threatening them. In effect, Teman's argument is that he put them on notice of the illegal actions he planned to take months before actually stealing their money, in March 2019 through an unauthorized check drawn on 18 Mercer's account. The defendant's attempted gas-lighting is both irrelevant—October 2018 was several months after 18 Mercer purchased the intercom, in April 2018—and a craven attempt by the defendant to reverse-engineer his purported innocence.

*Second*, although the Government does not concede that the defendant's September 15, 2023 Rule 33 Motion is timely, the defendant's arguments plainly do not meet the standard for a new trial under Rule 33. Granting a new trial "must be done sparingly and in the most extraordinary circumstances." *Archer*, 977 F.3d at 187. This is no such circumstance. The defendant argues that, without Soon-Osberger's and Hom's testimony, there was no basis to convict the defendant on the bank fraud (Count Two) and wire fraud (Count Four) counts of which he was convicted. (Mot. to Extend at 14-15). Then, making another unwarranted inferential leap, he argues further, "[a]nd if the 18 Mercer witnesses were willing to lie, so too would have been other witnesses caught up in potential litigation with GateGuard." (*Id.*). In addition to Soon-Osberger's and Hom's truthful testimony—which, if anything, is corroborated by emails appended to the Teman Declaration—there was significant other evidence in this case, to say nothing of the other bank fraud (Count One) and wire fraud (Count Three) counts of conviction. (*See* Rule 29/33 Decision at 2-12, 41-48). And in any event, even *if* the defendant were able to establish that Soon-Osberger and/or Hom testified falsely—which they did not—"the grant of a new trial depends on 'the materiality of the perjury to the jury's verdict and the extent to which the prosecution was

aware of the perjury.'" *United States v. Wong*, 78 F.3d 73, 81 (2d Cir. 1996) (quoting *United States v. Wallach*, 925 F.2d 445 (2d Cir. 1991)).  Here, the Government was unaware of any perjury because there was none.

*Third*, the defendant's assertion of "[p]ossible *Brady-Giglio* violations" is baseless and should be rejected.  The crux of the defendant's meritless argument here is that, having provided as Jencks Act material and admitted as Government Exhibits at trial certain of Soon-Osberger's emails, "it is not credible that the Government was unaware of the relevant emails of its own witnesses, or if it was, it abdicated its basic duties to conduct a proper pre-trial investigation of the facts." (Mot. to Extend at 10).  To the contrary, prior to the start of trial, on or about January 14, 2020, the Government served a subpoena on Soon-Osberger requesting her testimony at trial and, *inter alia*, "[r]ecords regarding any agreement between Ari Teman . . . and 18 Mercer Equity Inc. or the board of the building located at 18 Mercer Street," "[c]ommunications with Teman regarding Teman's authority to draw checks on behalf of 18 Mercer" and "[r]ecords and communications reflecting notice that Teman provided indicating that he could or would draw checks on behalf of 18 Mercer."  The Government, in compliance with its disclosure obligations, provided to the defense the Jencks Act material for Soon-Osberger in its possession.  The Government also obtained records relating to 18 Mercer and Crystal Management from Hom, who testified as a witness at trial, and provided those materials to the defense pursuant to the Jencks Act.  Additionally, beyond those testifying witnesses, prior to trial the Government served a subpoena for testimony and documents on Monzon (substantively like the one served on Soon-Osberger), who worked at Crystal Management and along with Hom was authorized to issue checks on behalf of 18 Mercer, and produced materials received from Monzon—who ultimately did not testify—pursuant to the Jencks Act.  As set forth above, *Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defendant's case."  *Ohle*, 2011 WL 651849, at *4.  The Government actively sought relevant Jencks Act material for Soon-Osberger, Hom, and Monzon, and provided the material it received to the defense.  The Government satisfied its disclosure obligations.

### III. Conclusion

The defendant has filed many motions, both *pro se* and assisted by many lawyers, over many years. None has changed the fact that he committed "a between-the-eyes bank and wire fraud" scheme (Sent. Tr. at 115:18-19) and was convicted of it at trial. The Motion to Extend sets forth no viable basis to adjourn the defendant's surrender date. More than three years after his trial conviction, two years after being sentenced to a year and a day of imprisonment, and months after the Second Circuit affirmed that conviction, the defendant offers no reason, beyond a baseless Rule 33 argument, warranting further delay of his sentence. Even if the Court were to consider his September 15, 2023 Rule 33 Motion on the merits, it should be rejected because the "new" evidence does nothing to undermine the relevant trial testimony and, in any event, at least some of the substance on which it relies appears to have been known to the defendant before trial. Accordingly, and for the reasons set forth above, the Government respectfully submits that the Court should deny the Motion to Extend and maintain the defendant's October 10, 2023 surrender date.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: \_\_\_\_/s/_____
Jacob H. Gutwillig
Assistant United States Attorney
(212) 637-2215