# EDEN P. QUAINTON
## QUAINTON LAW, PLLC

2 PARK AVE., 20TH FL.
NEW YORK, NY 10016

245 NASSAU ST.
PRINCETON, NJ 08540

TELEPHONE (212) 419-0575, (609) 356-0526
CELL: (202) 360-6296
EDEN.QUAINTON@QUAINTONLAW.NET

October 5, 2023

**VIA ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

    Re: *United States v. Ari Teman, 19-cr-0696 (PAE) – Motion to Extend Surrender Date*

Dear Judge Englemayer,

    I represent the Defendant, Ari Teman (the "Defendant" or "Teman") in the above-referenced matter. I am writing to request an opportunity to respond to the Government's letter in opposition (the "Opp.") to Defendant's Motion to Extend His Surrender Date (the "Mot. to Extend") filed last night. Should your Honor grant the request, the response itself is contained further in the body of this letter.

    By way of background, on September 15, 2023, Teman filed a Rule 33 Motion presenting new evidence with respect to a number of issues, including what he believes to be materially new evidence relating to several of the commercial counterparties of GateGuard, Inc. ("GateGuard"), the entity of which Teman is CEO and that deposited the remotely created checks at issue in Teman's trial. Dkt. 386. Concerned that your Honor might not consider and rule on the new evidence before his contemplated surrender date of October 10, 2023, Teman and his family requested that I enter an appearance to seek an extension of the surrender date so that your Honor could rule on the new evidence before Teman is incarcerated. Dkt. 393. If, as Defendant believes it does, the new evidence establishes that Teman did not have the requisite *mens rea* to commit a crime, that his customers knew of and accepted the Terms and Conditions pursuant to which RCC's were drawn on their accounts, and that material evidence was either suppressed or withheld, it would be fundamentally unfair for Teman to surrender before these issues have been addressed. This is particularly true after your Honor ruled nearly two years ago that he would not consider any *pro se* motions before the Court of Appeals had ruled on Teman's motion. Dkt. 304. Since the mandate of the Second Circuit affirming Teman's conviction was sent to the District Court on August 18, 2023, this left relatively little time to rule on the various motions

Teman had filed since his sentencing. With this overall timing constraint, the Mot. to Extend was filed on September 26, 2023. Dkt. 394. Ordinarily, under Local Rule 49.1, the Government would have 14 days to respond and Defendant would have a week to reply. However, given the timing constraints surrounding the motion, the standard briefing schedule would not have been consistent with the relief sought. Accordingly, your Honor required the Government to respond to the motion by October 4, 2023 and indicated a decision would be made rapidly. Dkt. 397. Your Honor did not indicate whether a reply would be permitted. The general intent of Local Rule 49.1 is that the moving party should be given an opportunity to reply. Moreover, there are a certain number of misleading or inaccurate statements in the Opp. that call out for correction. Accordingly, Defendant respectfully requests that your Honor permit the filing of a response to the Opp. If your Honor is inclined to grant this request, the response follows.

I.   <u>Teman's Rule 33 Motion Is Timely</u>.

The Government first asserts at several points that Defendant's Rule 33 motion is untimely. Opp. at 4, 7. There is no basis for this assertion. Leaving aside that Teman had attempted to raise issues of new evidence promptly after sentencing and to file a Rule 33 motion in early 2022, Dkt. 303, Rule 33 itself clearly provides that a motion under the Rule based on new evidence may be made at any time within three years of the date of conviction. Fed. R. Crim. Pro. 33. The Government's assertion to the contrary is meritless.

II.   <u>The Soon-Osberger and Hom Testimony Was Inaccurate</u>.

The Government attempts to distract from the issues with overblown rhetoric (Teman is "gaslighting" and acting in a "craven" manner, Opp. at 7). The real question is whether the Crimmins-Soon-Osberger email exchange that the Government concedes was not produced to Defendant materially affects the testimony of Soon-Osberger and Hom or Teman's culpability. The Government's answer is that the email exchange is incomplete because it does not include a previous communication from Teman. Opp. at 7. But this is the point. Teman *did not know* and was never told that there was a subsequent internal email exchange, manifestly one among many others that were also never produced, given that Margaret Crimmins is pointedly asking for additional information in the exchange that was furnished by Shelly Pecot. Mot. to Extend at 7. Teman *did not know* and was never told that a Board member had directly confronted Soon-Osberger and told her she was "legally liable" for removing the GateGuard intercom months before Soon-Osberger claimed to be "shocked" by GateGuard's demands. Mot. to Extend at 4. Teman *did not know* and was never told that, months before she claimed GateGuard's RCC came completely out of the blue, Gina Hom was copied on the email exchange in which a visibly upset Board member is demanding additional information about GateGuard's assertion of a right to draw $18,000 as damages for removal of an intercom. Mot. to Extend at 5-6. Teman *did not know* and was never told that the other member of 18 Mercer's management company, Jackie Monzon, was also copied on the email chain. Teman *did not know* and was never told that a Board member had explicitly raised the issue of the binding nature of GateGuard's Terms and Conditions with other Board members and both members of Crystal Management (Gina Hom and Jackie Monzon), when Gina Hom feigned complete ignorance of the contractual nature of GateGuard's claims at trial. Mot. to Extend at 6 and Note 2. With the newly discovered evidence, an even moderately skilled defense attorney could have completely undermined the credibility of

Soon-Osbergerger's and Hom's testimony they were unaware of and "shocked" by GateGuard's insistence on the validity of its contractual terms and conditions.

In attempting to deflect the sting of the new emails, the Government places great reliance on the fact that Teman had provided Soon-Osberger with assurances that certain provisions of the Terms and Condition not at issue in the criminal trial would be waived. Opp. at 3. This is irrelevant, however: there was *no* testimony that GateGuard had waived the key provisions of the Terms and Conditions, notably the device removal fee and the use of RCC's, which are the only issues on which a waiver argument would be probative. Moreover, Soon-Osberger did not operate in a vacuum. The GateGuard contract had to be approved by the Board as a whole and payments thereunder had to be validated by the Board and then effected by Crystal Management. The Crimmins-Soon Osberger exchange makes clear that Board members beyond Soon-Osberger who were called on to approve the GateGuard contract believed there was a contract and contractual liability around the payment of an $18,000 device removal fee, and that far from being "stolen," the amount drawn on 18 Mecer's account was due and payable.

III.     **The New Pecot/Soon-Osberger/Hom Evidence Was Not "Available" to Defendant Prior to Sentencing.**

The Government's argument depends to a large extent on the claim that the evidence discussed in the Mot. to Extend is not "new" because it was all available to Teman. Opp. 4, 6-7. In support of this argument, the Government submits a lengthy pre-sentencing text exchange between Teman and Shelly Pecot. Opp. Ex. A. In a characteristic *non sequitur*, the Government insinuates that this text exchange somehow means Teman must have known about communications between Ms. Pecot and other parties on which he was *not* copied. *See* Opp. at 4. That Ms. Pecot knew what Teman thought is irrelevant to what Soon-Osberger and Hom thought—and it was their testimony which falsely presented their "shock," surprise and complete ignorance that provided the core of the Government's case on Counts II and IV. Put simply, the Pecot text exchange cannot establish that the Soon-Osberger-Cummins exchange, copying other Board members and both members of Crystal Management, was "available" to the defense. On the contrary, the Government subpoenaed Soon-Osberger and Ms. Hom, and the emails provided by Ms. Pecot were *not* included in the Government's production, which either means they were suppressed by the Government in violation of *Brady/Giglio* obligations, or that they were withheld by Ms. Soon-Osberger and Ms. Hom. Assuming, *arguendo*, the second hypothesis is correct, material witnesses' deliberate withholding of evidence would destroy their credibility, a problem the Government attempts to dance around by shifting the focus to the Pecot exchange.

But the Pecot exchange itself raises troubling questions. Ex. A begins with a request that the Government stipulate to the Pecot statements in the exchange. It is evident the Government did not agree to the stipulation and Ms. Pecot was (or made herself) unavailable for trial, preventing the admission of the text messages. There is an element of bad faith in arguing that evidence that could only have come in with the Government's assent was available to the defense when the Government withheld that very assent. The Government now concedes that this exchange – to which it refused to stipulate at trial – in fact establishes that Teman believed he had a contract that entitled him to draw the $18,000 device removal fee—directly negating

any *mens rea*. Opp at 7.[1] But no worries, says the Government, disingenuously quoting the Court after having effectively admitted to keeping out damning evidence, this a "between-the -eyes case of bank fraud."

IV. The New Evidence Establishes a *Brady-Giglio* Violation—or Suggests a Concerted Effort by Key Witnesses to Withhold Material Evidence.

The Government claims that Defendant's *Brady* and *Giglio* claims are "baseless" and "without merit" because the Government issued subpoenas to Soon-Osberger, Gina Hom and Jackie Monzon and, allegedly, did not receive the Soon-Osberger-Crimmins emails (copied to Hom and Monzon and other Board members) in response. Opp. at 8. In support of its position, the Government takes Teman to task for not including an email from himself which the Government claims is part of this email "chain." Opp. at 7. But Teman had been clear with the Court that the Pecot/Soon-Osberger/Crimmins emails were a "breakaway" chain of which he had no knowledge. Dkt. 265 at 3. Because Soon-Osberger, Hom and Monzon were all included on emails in question, the Government appears to be promoting the theory that *all three* of these witnesses agreed among themselves to withhold the exact same emails. It is more likely that at least one of the witnesses (say Monzon, who was not called) in fact produced the emails. In this scenario, the Government would come within the cases cited in the Mot. to Extend that the Government cannot willfully turn a blind eye to material evidence. Mot. to Extend at 10-11. Indeed, it is not plausible that, had it exercised the level of diligence required of it, the Government would have come across *no* references to emails that circulated among many members of the 18 Mercer Board and the two members of the 18 Mercer management company directly addressing 18 Mercer's contractual liability and the $18,000 device removal fee, and demanding further information. *Id*.

However, taking the Government at its word, either three different witnesses copied on the same email chain innocently "forgot" to produce the exact same emails, or they coordinated with each other to prevent the emails from being produced to preserve the argument that they were blindsided by Teman's emails in January 2019 and had no knowledge of the GateGuard Terms and Conditions or the legal liability for removing the GateGuard Intercom. Furthermore, the emails provided by Ms. Pecot must logically have created a further paper trail. As Teman argued in the Mot. to Extend, it is not plausible that an email demanding further information from the Board on a matter of legal liability simply went unanswered. Mot. to Extend at 7. Ms. Pecot's trepidation in providing the emails to Teman may relate to knowledge of a degree of coordination between witnesses that prevented Teman from obtaining a fair trial. At a minimum, the Court should order an evidentiary hearing and obtain sworn testimony from the parties on the emails who were subpoenaed by the Government as to how they all conveniently omitted the same emails and, quite likely, many others as well.

---

[1] The Pecot Letter, sworn to before a notary, *would* be admissible and is thus new evidence not available pre-trial confirming that Ms. Pecot knew of the contract terms and that Teman believed he could issue RCC's to enforce GateGuard's contract, again negating Teman's *mens rea*. *See* Mot. to Extend, Ex. C.

V.  **The Court Should Extend the Surrender Date to Consider the Issues Raised in Teman's Rule 33 Motion.**

The Pecot-Soon-Osberger-Crimmins-Hom evidence warrants careful consideration. If evidence was suppressed or withheld, this would go to the integrity of the trial proceedings and Teman should not be incarcerated with such a cloud over his conviction. There is no downside to a modest delay so that the Court can take whatever measures are necessary to assess whether the new evidence merits a further hearing and/or a new trial. In addition, there are other evidentiary issues raised in the pending Rule 33 motion – notably relating to the testimony of another key witness, Joe Soleimani – that the Court should weigh and rule upon before Teman is incarcerated. These issues have also been pending since August 2021 and have been repeatedly raised by Teman during the period the Court had postponed consideration of *pro se* motions. *See, e.g.*, Dkt. 265 at 4-5 and Dkt. 295, Ex. F (admission of communications between defendant in litigation concerning GateGuard Terms and Conditions and Joseph Soleimani). Having deferred consideration of Teman's evidence for two years, it would be unnecessarily harsh for the Court to force Teman to surrender without having ruled on this evidence. Defendant submits this ruling should be made stepping back from the heated rhetoric that has characterized many submissions in this matter and asking whether Teman may not be right after all—that his trial was unfair, and he did not have any criminal intent in enforcing what he believed to be binding contractual terms.

Respectfully submitted,

*Eden Quainton*

Eden P. Quainton

cc: All counsel of record (via ECF)

The Court grants counsel's request to file this reply letter.
The Court is taking the letter under consideration.

SO ORDERED.

Dated: October 6, 2023
New York, New York

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge