

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 10, 2024

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Ari Teman, S2 19 Cr. 696 (PAE)**

Dear Judge Engelmayer:

The Government respectfully submits this letter in opposition to defendant Ari Teman's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkts. 405, 411). Teman has failed to establish entitlement to a reduction in sentence because: (i) he has not established "extraordinary and compelling reasons" justifying a reduction in sentence; and (ii) the Section 3553(a) factors continue to weigh in support of the original sentence of 12 months and one day of imprisonment, which this Court imposed in July 2021 and Teman began serving on or about October 10, 2023. Moreover, as set forth in the attached declaration of FCI Miami Unit Manager Ronnie Matthews (attached hereto as Exhibit A, the "BOP Declaration"),[1] the Bureau of Prisons ("BOP") anticipates that Teman, whose current projected release date is on or about August 1, 2024, is likely to be transferred from FCI Miami to a residential reentry center ("RRC") on or about May 14, 2024, and, from there, potentially to home confinement on or about June 27, 2024. Accordingly, and for the reasons set forth below, Teman's motion should be denied.

## I. BACKGROUND

### A. Teman's Offense Conduct

The Court's September 27, 2023 Order set out the relevant procedural history. (Dkt. 397). The substantive background of the case has been detailed in prior rulings and filings, most recently in the Court's October 6, 2023 Order denying Teman's motion to extend his surrender date. (Dkt. 402; *see also* Dkt. 138 ("Rule 29/33 Decision")). In short, in January 2020, following a four-day trial, a jury convicted Teman of two counts each of bank and wire fraud. (Dkt. 92). As part of his fraud scheme, Teman drew and deposited checks on the accounts of three of his home-security company's customers, totaling $333,000, while falsely representing to the depository and clearing banks that the customers had knowingly authorized the checks.

[1] Attachments 1 and 2 to the BOP Declaration are respectfully being filed under seal.

**B. Procedural History**

On January 29, 2020, following a four-day trial, a jury convicted Teman of all four counts alleged in the Indictment. (Dkt. 92). On July 29, 2021, the Court sentenced Teman, *inter alia*, to a sentence of 12 months and one day of imprisonment, which was well below the sentencing Guidelines range of 30 to 37 months' imprisonment calculated by the Court at sentencing. The Court granted Teman's application to remain on bail pending appeal. On June 8, 2023, a unanimous panel of the United States Court of Appeals for the Second Circuit affirmed Teman's convictions. On August 18, 2023, the Court's mandate issued. (Dkt. 380). Subsequently, Teman made a series of motions seeking to delay his surrender date, which the Court denied. (*See* Dkt. 402). Teman surrendered into BOP custody on or about October 10, 2023.

As of the filing of this letter, Teman has served approximately three months in prison, or approximately just over 30% of his sentence. (*See* BOP Decl. ¶ 2). Teman's current projected release date under the First Step Act is August 1, 2024, or, in the alternative, August 11, 2024, assuming maximum good time credit. (*Id.*). As set forth above and in the BOP Declaration, the BOP anticipates that Teman could be released to an RRC as early as on or about May 14, 2024, and then to home confinement as early as on or about June 27, 2024. (*Id.* ¶ 8). Since his sentencing, Teman has been housed at FCI Miami in Florida.

**C. Teman's Motion for a Sentence Reduction**

On October 18, 2023, the Court issued an Order appending a letter from Teman, as of the same date, and which the Court treated as an application seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 405, 405-1 (the "Motion")). In the Motion, Teman claimed that, during his approximate week-long period of incarceration, he had "been unable to see a doctor despite multiple requests." (Mot. at 1). Teman then identified a number of symptoms he claimed to be experiencing, including, *inter alia*, fever, nausea, dizziness, body tremors, throat soreness, and respiratory issues. (*Id.*). As a result of these medical issues, as well as those relating to Teman's claimed susceptibility to COVID-19, he requested that the Court grant him compassionate release, or, in the alternative, resentence Teman to home confinement. (*Id.* at 2).

Also on October 18, 2023, the same date the Court issued the Order, the Government provided to FCI Miami, via email, the Court's Order and the Motion. As set forth in the Government's October 20, 2023 letter, FCI Miami responded that, as of October 19, 2023, there was no record of a request from Teman for compassionate release. (Dkt. 406). At the Court's direction and the Government's request, FCI Miami confirmed that it would consider the Motion. On December 5, 2023, the Warden of FCI Miami denied Teman's request, and the Government advised the Court of that decision. (Dkt. 408).

On December 5, 2023, the Court issued an Order finding that, in light of the Warden's denial, Teman had met the administrative exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A), and authorizing Teman to submit a response in further support of his application for compassionate release. (Dkt. 409). On December 19, Teman submitted a counseled motion in support of his request. (Dkt. 411, the "Supplemental Motion"). In the Supplemental Motion, Teman further argues that "Teman presents extraordinary and compelling circumstances in that he suffers from

respiratory, inflammatory, and dietary issues resulting from taking the COVID-19 vaccine and suffering from long-COVID." (Supp. Mot. at 3). Teman also argues that the Section 3553(a) factors warrant his release. (*Id.*). Additionally, in the Supplemental Motion, Teman stated that BOP had considered placing Teman on home confinement, but had not yet made a decision. (*Id.* at 8, n.2).

## II. LEGAL STANDARD

Pursuant to Section 3582(c), a court "may not modify a term of imprisonment once it has been imposed except" as provided in that section. As relevant here:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, a defendant seeking a reduction in sentence must first request such a reduction from the warden of the facility in which he is housed. This exhaustion requirement is a mandatory claim-processing rule, *see United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021), and as such a defendant's failure to exhaust is not subject to judicial excusal, *see Ross v. Blake*, 578 U.S. 632, 638-39 (2016) ("[M]andatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion" to waive their requirements.); *accord United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020) (concluding court may not waive Section 3582(c)(1)(A)(i)'s exhaustion requirement).

Where a defendant has exhausted his administrative remedies, a court may reduce the defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the Section 3553(a) factors weigh in favor of a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (recognizing that both "extraordinary and compelling reasons" and support of Section 3553(a) factors are necessary to grant relief). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release . . . and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020).

The relevant Sentencing Guidelines policy statement is U.S.S.G. § 1B1.13 and is no longer advisory; it now sets forth binding requirements that must be met before a court can reduce a sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring reduction in sentence to be "consistent with

applicable policy statements issued by the Sentencing Commission").[2] Section 1B1.13 both defines "extraordinary and compelling reasons" and imposes an additional requirement that the defendant not be "a danger to the safety of any other person or to the community" as determined under the Bail Reform Act. *See* U.S.S.G. § 1B1.13(a)(2), (b).

As relevant here, the policy statement defines the circumstances in which a defendant's medical condition qualifies as "extraordinary and compelling reasons":

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
> (i) suffering from a serious physical or medical condition,
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1). The policy statement also permits a finding of extraordinary and compelling reasons where the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described [above], are similar in gravity to those described [above]." U.S.S.G. § 1B1.13(b)(5). Rehabilitation of the defendant is not itself an extraordinary and compelling reason for a reduction in sentence, 28 U.S.C. § 994(t), but it may be considered in combination with other circumstances in determining whether and to what extent a reduction in sentence is warranted, U.S.S.G. § 1B1.13(d).

As the proponent of the motion, the defendant bears the burden of proving each of the four requirements for relief: exhaustion, extraordinary and compelling reasons, lack of danger to the community, and support of the Section 3553(a) factors. *See United States v. Butler*, 970 F.2d

---

[2] A prior version of Section 1B1.13 was held to be outdated and therefore non-binding on district courts after passage of the First Step Act of 2018. *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Section 1B1.13 was amended as of November 1, 2023, however, so as to fix the issue identified in *Brooker*, among other changes. Accordingly, *Brooker* has been abrogated, and the policy statement is once again binding on district courts considering reduction in sentence motions.

1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *accord, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020).

## III. DISCUSSION

The Government respectfully submits that: (1) Teman has not established "extraordinary and compelling reasons" justifying a reduction in sentence; and (2) the Section 3553(a) factors continue to weigh in favor of adhering to the original sentence that this Court imposed in July 2021. The Court should deny Teman's motion.

### A. There Are No "Extraordinary and Compelling Reasons" for a Reduction in Sentence

There are no "extraordinary and compelling reasons" that would warrant reducing Teman's sentence. Teman bases his motion on a variety of purported health issues. Those include, *inter alia*, "respiratory, inflammatory, and digestive issues resulting from COVID infection and taking the COVID vaccine," as well as "sleep disorders, acute sinusitis, respiratory illness that causes inflammation, fainting spells, and dietary issues relating to his illness." (Supp. Mot. at 4). Teman also claims that his "health has deteriorated while in custody, and the BOP has failed to provide adequate medical and dietary treatment for his serious medical conditions." (*Id.*). The Government does not minimize the significance or seriousness of Teman's health conditions, many of which he has identified previously (*id.* (citing prior filings)), but respectfully submits that, taken together and in light of the BOP medical records discussed below, they do not rise to the level necessary to satisfy the definition of "extraordinary and compelling reasons" set forth in Section 1B1.13.

Teman's claims about his condition and purported lack of medical care are contradicted by BOP medical records.[3] Indeed, the records indicate that Teman has received regular attention while in BOP custody; and, beyond that, that his medical condition is stable. For example, Teman's BOP medical records reflect that Teman received BOP medical evaluations on or about October 10, 2023, the day he surrendered into BOP custody, *see* Ex. D at 26-31, and then again, on or about October 23, 2023, approximately two weeks after surrendering into custody and several days after making the Motion, *see* Ex. D at 32-45. The notes of the October 23, 2023 evaluation reflect, for example, no issues with Teman's cardiovascular or respiratory system, no fever or chills, and that his lungs were "clear." (*Id.* at 38, 40). Teman also appears to have been evaluated on or about November 7, 2023, which notes that his chief complaint was "dizziness," and that he also identified "chest pressure, left arm and leg weakness from food services." (*Id.* at 13). That evaluation, like the earlier ones, indicates no issues with Teman's cardiovascular or respiratory systems. (*Id.*). The BOP medical records reflect that Teman continued to receive medical care—and, in at least once instance, on or about December 1, 2023, appears to have declined a medical examination. (*Id.* at 7).

[3] The Government respectfully submits Exhibits B, C, and D, which contain Teman's BOP medical records from 2023 and 2024, under seal. The Government previously submitted Exhibit B as an attachment to its October 20, 2023 letter, and is including it here for ease of reference.

In short, the record reflects that BOP is providing Teman with appropriate treatment, including regular examinations, and the records do not reflect that Teman is suffering from conditions that "require[] long-term or specialized medical care that is not being provided." U.S.S.G. § 1B1.13(b)(1)(C). In fact, to the contrary—BOP's records do not indicate respiratory or COVID-related issues, such as those on which Teman bases his application. Accordingly, there are no extraordinary or compelling reasons for a reduction in sentence.

**B. Teman Remains a Danger to the Community, and the Section 3553(a) Factors Weigh Heavily Against a Reduction in Sentence**

In any event, the Section 3553(a) factors weigh against any reduction in the sentence this Court imposed in July 2021. *See United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021) ("[T]he District Court's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release."). The seriousness of Teman's offense, as well as the need for just punishment, specific deterrence, and to promote respect for the law all weigh heavily against releasing Teman approximately three months into his well-below-Guidelines sentence of 12 months and one day of imprisonment.

At sentencing, the Court carefully considered and balanced the Section 3553(a) factors. (*See* Dkt. 276, Sent. Tr. at 64-94). In analyzing Teman's conduct, the Court noted as aggravating factors that: the fraud scheme "took and attempted to take . . . close to a third of a million dollars"; it "took a fair amount of time and effort," that spanned approximately a month and "consisted really of two waves of negotiating bogus checks"; that Teman "engaged in the scheme with eyes open to its criminal nature"—including that Teman "persisted and escalated" his scheme, even after being warned by his attorney that he could face criminal exposure if he continued; and that, "on a very real and human level, [Teman's] scheme also exposed your customers, who were a small co-op board and two landlords, to the risk of meaningful financial loss." (*Id.* at 67-72). On the other side of the ledger, the Court weighed and took into account Teman's history and characteristics, including reviewing multiple letters submitted in support of Teman. (*Id.* at 80-88). Ultimately, although the Court "considered seriously" whether a sentence within the Guidelines range of 30 to 37 months' imprisonment was appropriate, in view of mitigating and countervailing factors, the Court imposed a "significant downward variance" of 12 months and one day of imprisonment. (*Id.* at 91-92). Moreover, in imposing sentence, the Court specifically added one day in contemplation of Teman potentially receiving good time credit, effectively allowing the ability for Teman to reduce his time in BOP custody. (*Id.* at 93-94).

For the reasons the Court set forth at sentencing, and in rulings in the years since, the Government respectfully submits that the Court should adhere to its sentencing decision now. Indeed, one primary objective at sentencing was just punishment; especially, as the Court observed then and in denying meritless motions Teman made in subsequent years, because throughout the course of the case Teman disclaimed responsibility for his criminal conduct. Here, Teman made the Motion little more than a week after surrendering into BOP custody and, as of the date of this letter, has served approximately three months—just over approximately a third—of his total sentence. This fact weighs heavily against any reduction in sentence. *See, e.g.*, *United States v. Seshan*, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release for defendant who had served less than six years of ten-year sentence); *United States v. George*,

No. 19 Cr. 171 (KMK), Doc. No. 45, at 3 (S.D.N.Y. May 5, 2020) (denying release in part because defendant had "served a small percentage of his sentence"). Moreover, as set forth in the BOP Declaration, Teman could be released to an RRC as early as mid-May 2024, meaning that he would ultimately serve approximately seven-to-eight months in custody—well short of the below-Guidelines sentence imposed by the Court.

Accordingly, and for the reasons set forth above, the Court should continue to adhere to its evaluation of the Section 3553(a) factors set forth at sentencing.

## IV. CONCLUSION

For the reasons set forth above, no "extraordinary and compelling reasons" for a reduction in sentence exist and the Section 3553(a) factors continue to weigh heavily in favor of maintaining the original sentence, especially in light of the BOP's anticipated release plan. Teman's motion for a reduction in sentence should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: ______________________________
Jacob H. Gutwillig
Assistant United States Attorney
(212) 637-2215

cc: All Counsel (via ECF)