**Eden P. Quainton**
**Quainton Law, PLLC**

2 Park Ave., 20th Fl.
New York, NY 10016

245 Nassau St.
Princeton, NJ 08540

Telephone (212) 419-0575, (609) 356-0526
Cell: (202) 360-6296
Eden.quainton@quaintonlaw.net

April 19, 2022

**VIA ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Ari Teman, 19-cr-0696 (PAE) –*
*Update in Response to Dkt. 441 and Request for Immediate Release to Home Confinement*

Dear Judge Englemayer,

I represent the Defendant, Ari Teman (the "Defendant" or "Mr. Teman") in the above-referenced matter.

I.  Investigation and Evaluation of Mr. Teman's Previous Claims in Response to April 8, 2024 Court Order.

On April 8, 2024, your Honor directed counsel for Mr. Teman to investigate and evaluate claims made by Mr. Teman in a letter supplied to the Court by Mr. Teman's parents, "prior to any relief being sought by counsel." Dkt. 441. Mr. Teman's claims relate to case law Mr. Teman believes should have been presented to the Court, his inability to communicate effectively with counsel, and his claim of retaliation against the Jewish inmates as a whole at FCI Miami Low as a result of dietary issues raised by Mr. Teman. With respect to the compassionate release case law cited by Mr. Teman, I believe the Court is familiar with the cases, one of which is your Honor's own case, and I will leave assessment of the cases to the Court.[1] With respect to Mr.

---

[1] A number of the cases were mis-cited in the communication to the Court. The correct case citations are the following: *United States v. Hatcher*, No. 18 CR. 454-10 (KPF), 2021 WL 1535310, at *1 (S.D.N.Y. Apr. 19, 2021); *United States v. Mcrae*, No. 17 CR. 643 (PAE), 2021 WL 142277, at *1 (S.D.N.Y. Jan. 15, 2021); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020); *United States v. Macfarlane*, 438 F. Supp. 3d 125, 126 (D. Mass. 2020) (14 days of harsh confinement equated to two months of originally contemplated confinement).

Teman's two substantive claims, I am still in the process of gathering evidence, but I have preliminarily advised Mr. Teman that he may have meritorious claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUPA"), 42 U.S.C. § 2000cc–1. I would note that I can confirm the extreme difficulty of arranging attorney-client calls with a represented inmate, as I have been attempting unsuccessfully to schedule an attorney client call with Mr. Teman for this week since last Friday. In addition, I would note that I have received an email from an inmate confirming disparate treatment of Jewish inmates and Muslim inmates with respect to "carrying out" of food for religious purposes.

II.     Request for Immediate Release to Home Confinement.[2]

Mr. Teman remains in excruciating pain, which radiates from his foot through his groin to the top of his spine. This pain appears most likely related to degenerative back disease issues that are also likely to be at the source of the severe testicular pain of which Mr. Teman has complained for months.[3] As your Honor knows from the Government's submission to you yesterday, the BOP has confirmed that Mr. Teman needs immediate care and that the failure to obtain proper diagnosis and treatment could result in "lasting impairment and death." *See* Teman medical records, Dkt 443-1 at 143. Mr. Teman has not refused diagnosis and treatment; on the contrary, he asks that such care be provided immediately. However, inmates transferred from FCI Miami Low to Larkin Community Hospital are "black box" shackled with heavy arm restraints that increase the strain on the back and body, exacerbating Mr. Teman's pain and potentially causing further spinal damage. Mr. Teman reports that Dr. Alarcone, the physician who noted the urgency of performing an MRI and/or CT scan, acknowledged Mr. Teman's concerns, but stated that FCI Miami Low could not alter its transportation procedures.[4]

---

[2] Defendant conferred with the Government prior to filing the present request. The Government was unable to provide a definitive answer as to whether it would consent to the relief sought and indicated that Mr. Teman should assume the Government would oppose.

[3] *See* Exhibit A, April 5, 2024 letter from orthopedic surgeon, Dr. Georgiy Brusovanik and Exhibit B, March 29, 2024 letter from Dr. Jonathan Harrison, MD/FACP.

[4] The "black box" shackling method of transportation caused Mr. Teman's pain to increase and spread throughout his spine, back, arm, and legs during and after Mr. Teman's prior transport to Larkin (the chains weigh approximately 20lbs, by Teman's estimation, and do not allow him to adjust his back or posture during bumpy rides to reduce strain on the spine). For this reason, Mr. Teman and his family have made multiple requests for Mr. Teman to be medically furloughed or released to home detention so that Mr. Teman could receive critical medical care without aggravating his condition, but these have been denied. Other requests by counsel, Teman, and Teman's family to BOP to make accommodations to reduce pain and risk (issuance of a "Short Pass" to reduce walking, a second mattress to reduce impact of steel bed on spine, and firm insoles for plantar fischitis to hold Teman's spine in the correct posture as prescribed by one of Mr. Teman's outside medical care providers, Dr. Neil Blitz DPM) have all been denied.

Separately, Mr. Teman reports that he has been approved for transfer to the satellite camp attached to FCI Miami Low. Mr. Teman's Unit Team, Unit Manager Ronnie Matthews and Mr. Gregory Kost, have confirmed to Mr. Teman they are beginning the camp transfer process, because the camp would allow a medical furlough, but this process can take weeks, as it requires signatures from representatives of FCI Miami and BOP regional and central offices. The approval of Mr. Teman for camp transfer suggests that he will be cleared for "out custody." *See, e.g., Barber v. Perdue*, No. 9:11-CV-0127 NAM/DEP, 2012 WL 5996342, at *2 and Note 5 (N.D.N.Y. Nov. 9, 2012), *report and recommendation adopted*, No. 9:11-CV-0127 NAM/DEP, 2012 WL 5996866 (N.D.N.Y. Nov. 30, 2012). Prisoners with "out custody" status are eligible for home confinement under BOP rules. *See, e.g.*, *United States v. Herman*, No. 2:08-CR-00146-LRS-1, 2020 WL 5437733, at *3 (E.D. Wash. Sept. 10, 2020).

The Court has previously recommended that Mr. Teman be temporarily released to obtain medical treatment. Dkt. 425 ("[t]he Court's strongly held view is that the request that Teman be temporarily released today to obtain urgent specialized medical care in an outside medical facility is justified and reasonable." Mr. Teman's need for treatment is no less urgent than it was on February 27, 2024 when the Court expressed its "strongly held view" that Mr. Teman receive immediate specialized medical care. Moreover, the reports that both I and Mr. Teman's parents continue to receive from Mr. Teman indicate that he is in intense, agonizing pain. The BOP itself has acknowledged that a delay in diagnostic and medical care could be potentially fatal. *See* supra at 2. Mr. Teman's circumstances, as supported by Dr. Brusovanik, Dr. Harrison and Dr. Alarcone, thus provide "extraordinary and compelling" reasons for Mr. Teman's immediate release to home confinement within the meaning of 18 U.S.C.A. § 3582(c)(1)(A). *See, e.g, United States v. Torres-Nunez*, No. 87-CR-00419-DC-16, 2021 WL 1668024, at *1 (S.D.N.Y. Apr. 28, 2021) (risk of serious illness or death constitutes extraordinary and compelling reason for immediate release from prison).

Because Mr. Teman is currently scheduled to be released from FCI on May 14, 2024, only 25 days from the date of this request, the Court would be amply justified in exercising its discretion under *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), to release Mr. Teman to home confinement. At bottom, given the common agreement of medical experts that Mr. Teman requires urgent care and the decision to transfer Mr. Teman to the FCI satellite camp, all that stands between Mr. Teman and appropriate medical care are bureaucratic formalities. No legitimate carceral purpose would be served by prioritizing these formalities over the life and medical care of a first-time, non-violent offender who has served the bulk of his sentence at a facility with much harsher conditions of confinement than those prevailing at the satellite camp where the Court had initially recommended Mr. Teman be confined.

Moreover, with Passover imminent, the exercise of the Court's discretion to order Mr. Teman's release to home confinement would resolve an additional issue that threatens to further heighten the burden on Mr. Teman beyond the punitive and rehabilitative goals of incarceration. Mr. Teman has established dietary constraints that prevent him from consuming wheat and dairy

3

products.[5] During Passover, Mr. Teman can only consume oat-based matzah, which the prison does not stock and which cannot be sent into the prison from outside sources.[6] As a result, Mr. Teman will be unable to perform one of the central mitzvahs of Passover, the commemoration of the exodus of the Israelites from Egypt by eating unleavened bread, and will be unable to consume any of the dairy-based Kosher food provided during Passover. Given that but for the bureaucratic formalities noted above, Mr. Teman would be either in the satellite camp where an accommodation could be more easily obtained or on home detention where the practice of his faith would not be burdened, there is no reasonable punitive or rehabilitative goal in continuing Mr. Teman's current confinement.

For the foregoing reasons, Mr. Teman respectfully requests that the Court order Mr. Teman's immediate transfer to home detention from now until May 14, 2024, and to order the BOP to release Mr. Teman to home detention immediately upon receipt of the Court's order.

Respectfully submitted,

*Eden Quainton*
Eden P. Quainton

cc: All counsel of record (via ECF)

---

[5] The allergen tests conducted by Quest Diagnositcs for the BOP and referenced by the Government in its April 18, 2024, letter to the Court, Dkt. 433 at 2, should not be viewed as definitive and excluding Mr. Teman's reported wheat allergy confirmed by outside doctors. The Quest Diagnostic test includes the following disclaimer:

> This test was performed using a kit that has not been cleared or approved by the FDA. The analytical performance characteristics of this test have been determined by Quest Diagnostics. This test, and any food specific allergen IgG result, should not be used for the diagnosis of allergic or atopic disease states (except for sensitivity to milk in neonates and gluten sensitivity). The use of food specific allergen IgG results should be restricted to the assessment of response to therapeutic interventions.

*See* 433-1 at 128.
In addition, Mr. Teman's lactose intolerance has not been disputed by the BOP.

[6] Mr. Teman's parents have confirmed to me the refusal of FCI Miami to allow oat-based matzah to be sent to Mr. Teman.

4