**Eden P. Quainton**

**Quainton Law, PLLC**

**2 Park Ave., 20ᴛʜ Fl.**
**New York, NY 10016**

**245 Nassau St.**
**Princeton, NJ 08540**

_____

**Telephone (212) 419-0575, (609) 356-0526**
**Cell: (202) 360-6296**
**Eden.quainton@quaintonlaw.net**

June 26, 2024

**VIA ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re: _United States v. Ari Teman, 19-cr-0696 (PAE) –_
_Letter Motion to Modify Conditions of Supervised Release_

Dear Judge Englemayer,

I represent the Defendant, Ari Teman (the "Defendant" or "Mr. Teman") in the above-referenced matter.

As your Honor knows, Mr. Teman was released from FCI Miami (Low) on May 14, 2024 and from a residential re-entry facility on May 28, 2024. Mr. Teman is now subject to supervised release under the direction of a Probation Officer, Jimmy Wong. Mr. Teman has been receiving medical care from his spine specialist, Dr. Brusavonik, and has had a series of MRIs taken that confirm spinal herniation and degenerative disc disease. Although he remains in severe pain, Mr. Teman is focusing on returning to work, both at GateGuard, Inc., ("GateGuard"), the smart intercom company he founded in 2016, and as a stand-up comic. He is also hoping to visit his parents in Israel, who need comfort in light of all the tragic developments over the past months. As your Honor also knows, Mr. Teman's mother has serious health issues of her own and Mr. Teman hopes to be able to visit her at some point soon. In addition, Mr. Teman has a deposition scheduled for July 8 and 9 in New York in connection with a pending lawsuit, _GateGuard, Inc. v. Amazon.com, Inc., et al._, 21-cv-9321.

In light of the foregoing, Mr. Teman is seeking the modification of certain of his conditions of supervised release. I have discussed Mr. Teman's requests with both AUSA Jacob Gutwillig and Mr. Teman's Probation Officer, Jimmy Wong. _See_ Ex. A. Reproduced below for the convenience of the Court are Mr. Teman's requests (as I communicated them to Mr. Gutwillig) and the responses of Mr. Gutwillig and Mr. Wong (in blue):

1.     Mr. Teman does not need to do drug testing. Mr. Teman has no history of drug use, and this condition was already removed post-trial. **Probation does not object to removing this condition. The Government defers to Probation.**

2.     Mr. Teman may travel domestically within the United States for comedy performances, volunteering, and work. He may travel to New York and New Jersey for medical, family, and religious reasons as well. Mr. Teman is due to sit for a two-day deposition in New York next week. While he must notify his probation officer of his travel plans, he should not need to seek approval for each trip, but should be required to notify his probation officer about the times and destinations of contemplated travel. **Probation does not object Teman's travel within the United States. Probation requires that Teman notify his Probation Officer, in writing, seven days prior to any such travel, and to provide the details of that travel, including the location, dates, and itinerary.**

3.     Following 60 days of probation, Mr. Teman may travel to Israel to visit and assist in care for his mother who is unable to travel due to recent surgeries, for religious purposes, work, volunteering, and/or to perform standup comedy for periods of up to 40 days at a time. **Probation objects to Teman's request for blanket permission for international travel. For any international travel, Teman must provide notice to his Probation Officer, in writing, 14 days prior to such travel, and provide the details of that travel, including the location, dates, and itinerary. After obtaining Probation's position on the travel request, Teman must then make an application to the Court requesting permission for such travel. If any such international travel is permitted, Teman must contact his Probation Officer to check in on the days of his departure and return to the United States, and, consistent with the conditions currently in place, Teman must surrender his passport to his Probation Officer 48 hours after returning to the U.S.**

4.     He may travel to any other international destination for any of the above reasons with 14 days-notice to his probation officer. **See above.**

5.     Mr. Teman may interact with individuals who have been convicted (and may still be incarcerated) for volunteering, work, and religious purposes. **Neither Probation nor the Government has an objection to Teman's contact with such individuals for**

**volunteering and religious purposes.  However, for any "work" purposes, before having any such contact, Teman must identify for the Probation Office the individual(s) he seeks to contact and the nature of the work purpose, and obtain Probation's position on any such contact.**

6.      Mr. Teman may run JCorps volunteering and a Jewish Prison Book Project to fulfill his community service. The Prison Book project would involve providing books to incarcerated men and their children so that inmates could maintain a bond with their children that would also help the children escape the difficult circumstances in which many of them find themselves. **No objection from Probation or the Government.**

7.      As Mr. Teman has paid off his restitution and assessment, he should be permitted to maintain a credit card for travel and car rental (which requires a credit card), and to pay for basic goods and services. In addition, he would request the ability to apply for a line of credit to cover such things as housing and overdraft protection.  **Probation does not object to these requests, provided Teman provides (i) advance notice of any such applications, *i.e.*, for credit cards or lines of credit; and (ii)  full information to the Probation Office about the use of any such credit cards, lines of credit, or bills, and any other relevant information requested by the Probation Office.**

Under 18 U.S.C.A. § 3583(e), after considering the factors set forth in 18 § 3553(a)(1), (the nature and circumstances of the offense and history and characteristics of the defendant) (a)(2)(B) (the need for adequate deterrence), (a)(2)(C) (the protection of the public), (a)(2)(D) (the goal of facilitating rehabilitation and reentry), (a)(4) (the range of sentences available), (a)(5) (any relevant policy statements), (a)(6) (the avoidance of sentencing disparities), and (a)(7) (the need to provide restitution), the Court may:

> extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision

18 U.S.C.A. § 3583 (e)(2).  *See United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).

3

Consideration of the above factors supports approval of the proposed modifications to Mr. Teman's supervised release conditions. As noted in my communication with Mr. Gutwillig, pre-trial services has already found, in connection with Mr. Teman's release on bail, that drug testing for Mr. Teman is not required, given the total absence of any history of drug abuse in Mr. Teman's background. Dkt. 8. Accordingly, in light of the response of Mr. Gutwillig and Mr. Wong, Mr. Teman respectfully requests that the Court modify his conditions of release as set forth in point No. 1 above, consistently with 18 U.S.C.A. § 3553(a)(1).

With respect to domestic and international travel, your Honor has already found that Mr. Teman is not a flight risk, Dkt. 425, and has authorized domestic and international travel on multiple occasions. Dkts. 78, 297, 299, 302, 323, 362. Accordingly, Mr. Teman requests that the Court modify his conditions of release in accordance with the responses of Mr. Gutwillig and Mr. Wong in points 2-4 above, and the considerations in 18 U.S.C.A. § 3553(a)(1) and (a)(2)(C).

Points 5 and 6 relate to two separate issues. First, while he was incarcerated, Mr. Teman developed the concept of creating a book program for inmates with children. Mr. Teman would coordinate with existing Jewish charities to provide reading material for the children that would be shared with fathers "on the inside" thus encouraging the literacy of the children and creating a shared bond between incarcerated fathers and their children. This is the Jewish Prison Book Project, "Jewish" only in that Mr. Teman would work with existing Jewish groups in providing reading materials, not that the reading materials would have any necessary religious component. In addition, Mr. Teman intends to continue running the JCorps volunteering program with which the Court is familiar and hopes to contact incarcerated men in connection with volunteering opportunities. As noted, the Government and the Probation Office do not have any objection to the foregoing and an order memorializing this modification, which would be consistent with 18 U.S.C.A.§ 3553(a)(2)(D). I have further spoken to Officer Wong, and he recommends requesting that any volunteering work performed by Mr. Teman through JCorps or as part of the Jewish Prison Book Project described above be explicitly credited towards the fulfillment of Mr. Teman's required 300 hours of community service. This is a helpful clarification that Mr. Teman respectfully requests the Court include in any order modifying his conditions of supervised release.

Second, Mr. Teman is considering providing re-entry opportunities for inmates at GateGuard and potentially other business with which he is or may become affiliated. The Government responds that Mr. Teman should be free to contact incarcerated individuals for volunteering and religious purposes, but that he must identify the individuals to whom any "work" would be given and the nature of such work, and obtain the position of the Probation Office for any such work-related contacts.

Mr. Teman believes the Government's and Probation Office's response to points 5 and 6 above is fair and urges the Court to endorse this response, which is consistent with § 3553(a)(2)(D).

Finally, Mr. Teman needs a credit card for car rental, hotel accommodations and every-day living expenses, and requests the ability to apply for a mortgage or other lines credit, such as for overdraft protection. The Government and the Probation Office do not object to this proposal, provided the Probation Office has advance notice of any credit application and Mr. Teman supplies the Probation Office with all requested information relating to the application for, and intended use of, any credit card, lines of credit or other forms of credit. Mr. Teman accepts the conditions of the Probation Office, which he submits appropriately reflect the considerations set forth in 18 U.S.C.A §§ 3531(a)(1), (a)(2)(D) and (a)(7).

Accordingly, Mr. Teman respectfully requests the entry of an order modifying his conditions of release by:

1. Removing any requirement that Mr. Teman undergo drug testing;
2. Authorizing Mr. Teman to engage in domestic travel without further Court approval, provided he notifies his Probation Officer in writing seven days prior to any such travel, and provides the details of such travel, including the location, dates, and itinerary, to the Probation Office.
3. Authorizing Mr. Teman to engage in international travel, provided (i) he gives his Probation Officer, in writing, 14 days prior to such travel, the details of the travel, including its location, dates, and itinerary; (ii) after obtaining the Probation Office's position on the travel request, Mr. Teman seeks and obtains Court permission for such travel; (iii) if such travel is authorized, Mr. Teman checks in with his Probation Officer on the days of his departure and return to the United States; and (iv) consistently with the conditions currently in place, Mr. Teman surrenders his passport to his Probation Officer 48 hours after returning to the U.S.
4. Authorizing Mr. Teman to contact incarcerated individuals for religious and volunteering purposes and crediting any volunteering work conducted through JCorps or in connection with his Jewish Prison Book Initiative towards his obligation to perform 300 hours of community service.
5. Allowing Mr. Teman to contact incarcerated individuals for work purposes, provided he furnishes his Probation Officer with the names of any such individuals and the nature of any work to be performed, and obtains the position of the Probation Office.
6. Permitting Mr. Teman to obtain one or more credit cards, lines of credit or other forms of credit, provided he gives his Probation Officer advance notice of any credit

application and supplies the Probation Office will all requested information relating to the application for, and intended use of, any form of credit.

Please do not hesitate to contact me if your Honor requires clarification on any of the above points.

A proposed order is attached to this Letter Motion.

Respectfully submitted,

*Eden Quainton*

Eden P. Quainton

cc: All counsel of record (via ECF)