# 21-1920-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

ARI TEMAN, AKA Sealed Defendant 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 7 of 11 (Pages A-1201 to A-1440)

KEDAR S. BHATIA
WON S. SHIN
    *Assistant U.S. Attorney*
UNITED STATES ATTORNEY'S OFFICE
    SOUTHERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2200

EDEN QUAINTON
QUAINTON LAW
*Attorneys for Defendant-Appellant*
2 Park Avenue, 20th Floor
New York, New York 10169
(212) 419-0575

i

## TABLE OF CONTENTS

**Page**

District Court Docket Entries .................................... A-1

Complaint, filed June 20, 2019................................. A-46.2

Notice of Appearance, dated August 27, 2019........... A-47

Indictment, filed September 26, 2019....................... A-49

Waiver of Appearance for Arraignment, dated
  October 14, 2019 ................................... A-53

Transcript of Proceedings held before the
  Honorable Paul A. Engelmayer, dated
  October 21, 2019 ................................... A-55

Supeseding Indictment, filed November 12, 2019 .... A-96.1

Transcript of Proceedings held before the
  Honorable Paul A. Engelmayer, dated November
  21, 2019 ................................. A-96.7

Opinion and Order of the Honorable Paul A.
  Engelmayer, dated December 20, 2019 ................ A-97

Second Superseding Indictment, filed
  January 3, 2020.................................... A-121

Defendant Teman's Requested Voir Dire Questions,
  filed January 6, 2020............................. A-129

Excerpts of Transcript of Conference Proceedings
  held before the Honorable Paul A. Engelmayer,
  dated January 10, 2020 ........................... A-137.1

Transcript of Conference Proceedings held before
  the Honorable Paul A. Engelmayer, dated
  January 10, 2020.................................. A-137.6

Letter from Kedar S. Bhatia to the Honorable Paul
  A. Engelmayer, dated January 14, 2020 ............... A-137.96

ii

**Page**

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 21, 2020 ..................................................... A-138

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 22, 2020 ..................................................... A-265

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 23, 2020 ..................................................... A-398

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 24, 2020 ..................................................... A-672

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 27, 2020 ..................................................... A-998

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 28, 2020 ..................................................... A-1187

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 29, 2020 ..................................................... A-1264

Verdict Sheet, dated January 29, 2020 ...................... A-1298.1

Order of the Honorable Paul A. Engelmayer, dated
    January 29, 2020 ..................................................... A-1299

Defendant's Motion for Judgment of Acquittal or in
    the Alternative, Motion for New Trial, filed
    February 26, 2020 ................................................. A-1437

Motion for New Trial Based on Undisclosed Brady
    and Jencks Act Evidence, filed April 9, 2020 ....... A-1473

iii

**Page**

Exhibit A to Motion -
Excerpts of Transcript of Proceedings, dated
August 9, 2018................................................. A-1498

Exhibit B to Motion -
Report of Violations of New York City's Housing
Maintenance Code ............................................. A-1512

Exhibit C to Motion -
Report of Violations of New York City's Housing
Maintenance Code ............................................. A-1513

Exhibit D to Motion -
HPD's Housing Maintenance Code Violations
User Guide ....................................................... A-1514

Exhibit E to Motion -
Report re: New York Civil Litigation – Joseph
Soleimani ........................................................ A-1548

Exhibit F to Motion -
Report re: New York Civil Litigation – Elie
Gabay .............................................................. A-1549

Exhibit G to Motion -
Glossary of Terms for Litigation Status Report
from HPD.......................................................... A-1550

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated April 9, 2020............... A-1552

Letter from Kedar S. Bhatia, Assistant United States
Attorney to the Honorable Paul A. Engelmayer,
dated May 1, 2020 re: Trial Exhibits ..................... A-1554

Government's Exhibits:

GX 101-
GateGuard Account Opening Documents ............. A-1555

GX 102 -
GateGuard Bank Statements................................. A-1559

iv

                                                                 **Page**

GX 103-
Friend or Fraud Account Opening Documents ...... A-1581

GX 104-
Friend or Fraud Bank Statements .......................... A-1585

GX 105-
Touchless Labs Account Opening Documents ...... A-1609

GX 106-
Touchless Labs Bank Statements........................... A-1613

GX 107 -
Ari Teman Account Opening Document................ A-1629

GX 108-
Ari Teman Bank Statements .................................. A-1631

GX 110-
April 19, 2019 2:37 PM Surveillance
Photographs ........................................................... A-1649

GX 111-
April 19, 2019 6:00 PM Surveillance
Photographs ........................................................... A-1652

GX 112-
May 8, 2019 3_04 PM Surveillance
Photographs ........................................................... A-1655

GX 113-
Bank Records Spreadsheet
(CD-Rom)*............................................................ A-1657.1

GX 114 -
Returned Check Records ...................................... A-1658

GX 121 -
ABJ Lenox Account Opening Document .............. A-1660

_____

* GX 113 is a Microsoft Excel file. CD-Rom with the Excel
spreadsheet provided to Court and Service parties.

v

**Page**

GX 122 -
ABJ Lenox Bank Statements .................................. A-1661

GX 123 -
ABJ Milano Account Opening Documents ........... A-1669

GX 124 -
ABJ Milano Bank Statements................................ A-1670

GX 127 -
May 2, 2019 Letter - ABJ Lenox ........................... A-1678

GX 129 -
May 2, 2019 Letter - ABJ Milano......................... A-1679

GX 130 -
ABJ Lenox Checks ................................................ A-1680

GX 131 -
ABJ Milano Checks............................................... A-1682

GX 141 -
18 Mercer Account Opening Documents .............. A-1685

GX 142 -
18 Mercer Bank Statements.................................. A-1694

GX 143 -
April 4, 2018 Check from 18 Mercer Equity to
GateGuard............................................................. A-1699

GX 144 -
518 W 204 Account Opening Documents ............. A-1700

GX 145 -
518 W 204 Bank Statements................................. A-1707

GX 146 -
January 31, 2018 Check from 518 W 204 to
GateGuard............................................................. A-1725

vi

                                                                    **Page**

GX 147 -
March 28, 2019 Check from 518 West 205 to
GateGuard ................................................................... A-1726

GX 150 -
Affidavit ...................................................................... A-1727

GX 201 -
March 28, 2019 Check from Coney Realty to
GateGuard ................................................................... A-1728

GX 202 -
March 28, 2019 Check from 18 Mercer Equity to
GateGuard ................................................................... A-1729

GX 203 -
April 19, 2019 Check from 518 West 205 to
GateGuard ................................................................... A-1730

GX 204 -
April 19, 2019 Check from ABJ Milano to
GateGuard ................................................................... A-1733

GX 205 -
April 19, 2019 Check from ABJ Lennox to
GateGuard ................................................................... A-1739

GX 206 -
April 19, 2019 GateGuard Counter Deposit .......... A-1757

GX 401 -
September 9, 2017 E-mail - 'We're Live' ............. A-1758

GX 402 -
November 6, 2017 E-mail - 'Current Issues' ......... A-1760

GX 403 -
March 9, 2018 E-mail - 'Ending GateGuard' ........ A-1761

GX 404 -
May 7, 2018 E-mail - 'All Communication in
Writing' ...................................................................... A-1762

vii

**Page**

GX 405 -
May 22, 2018 E-mail - 'GateGuard' ...................... A-1763

GX 406 -
August 26, 2018 E-mail - 'Dispute on Charge...' .. A-1765

GX 407 -
September 18, 2018 E-mail - 'Sublet Spy Hits...' . A-1767

GX 408 -
December 14, 2018 E-mail - 'Notice of Intent' ..... A-1773

GX 409 -
June 14, 2019 GateGuard Invoice ........................ A-1775

GX 409A -
Invoices (1) ............................................... A-1777

GX 409B -
Invoices (2) ............................................... A-1785

GX 409C -
Conversation between Teman and Soleimani ........ A-1786

GX 412 -
January 1, 2018 E-mail - 'Tenant Ana Esterg' ....... A-1787

GX 413 -
January 19, 2018 E-mail - 'Invoice Sent' .............. A-1788

GX 414 -
January 24, 2018 E-mail - 'Form for the 10
Buildings' ............................................... A-1791

GX 415 -
March 25, 2018 E-mail - 'Invoice for 20
Buildings' ............................................... A-1795

GX 416 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (1) ........................................... A-1815

viii

**Page**

GX 417 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (2) ......................................................... A-1820

GX 418 -
March 27, 2018 E-mail - 'Proof it's Your...' .......... A-1829

GX 431 -
April 4, 2018 E-mail - 'Invoice' ............................ A-1831

GX 441 -
GateGuard Terms and Conditions.......................... A-1834

GX 442 -
April 2, 2018 E-mail - 'References' ...................... A-1856

GX 443 -
January 7, 2019 E-mail - 'Contract' ...................... A-1862

GX 501 -
Bank Records Stipulation ...................................... A-1868

GX 702 -
January 2, 2019 WhatsApp Messages ................... A-1872

GX 704 -
April 2, 2019 WhatsApp Messages ...................... A-1874

GX 727 -
April 2, 2019 Whatsapp Messages (2)................... A-1875

GX 728 -
April 3, 2019 Whatsapp Messages ....................... A-1876

GX 729 -
April 10, 2019 WhatsApp Messages ..................... A-1877

Defense Exhibits:

DX 2 -
Payment Terms (1/27/2019).................................. A-1880

DX 14 -
October 11, 2018 E-mail – 'ABJ Properties'.......... A-1887

ix

**Page**

DX 15 -
October 22, 2018 E-mail - 'SubletSpy hits' .......... A-1889

DX 16 -
'Notice of Hold' ..................................................... A-1892

DX 29 -
Affidavit ................................................................. A-1893

DX 36 -
March 28, 2018 E-mail – 'Invoice for 20
Buildings' .............................................................. A-1894

DX 49 -
Declaration ............................................................ A-1902

DX 51 -
Chase Information Request ................................... A-1903

DX 52 -
Chase Information Request ................................... A-1904

DC 62 -
March 9, 2018 E-mail Correspondence ................. A-1928

DX 70 -
GateGuard Logs ..................................................... A-1930

DX 71 -
May 22, 2018 E-mail – 'Re: Gateguard' ............... A-1932

Order of the Honorable Paul A. Engelmayer, dated
May 6, 2020 .......................................................... A-1933

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated May 8, 2020 ............... A-1935

Opinion and Order of the Honorable Paul A.
Engelmayer, dated June 5, 2020 ........................... A-1937

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated June 29, 2020 ............. A-2044

x

                                                              **Page**

Sentencing Memorandum and Motion for
    Downward Variance, filed July 7, 2020................. A-2045

Exhibit 1 to Sentencing Memorandum -
    Letter from Dr. Rami Cohen, M.D to the
    Honorable Paul A. Engelmayer, dated
    June 29, 2020........................................................ A-2070

Exhibit 2 to Sentencing Memorandum -
    Letter from Juhan Sonin to the Honorable Paul A.
    Engelmayer, dated July 6, 2020............................ A-2074

Exhibit 3 to Sentencing Memorandum -
    Letter from Jeffrey Katz to the Honorable Paul A.
    Engelmayer ........................................................... A-2076

Exhibit 4 to Sentencing Memorandum -
    Letter from Oliver Josephs t to the Honorable
    Paul A. Engelmayer, dated June 6, 2020 ............... A-2077

Exhibit 5 to Sentencing Memorandum -
    Letter from Thomas Orosz to the Honorable Paul
    A. Engelmayer ....................................................... A-2079

Exhibit 6 to Sentencing Memorandum -
    Letter from David Diwby to the Honorable Paul
    A. Engelmayer ....................................................... A-2080

Exhibit 7 to Sentencing Memorandum -
    Letter from Nachum Klar to the Honorable Paul
    A. Engelmayer, dated July 6, 2020 ........................ A-2082

Exhibit 8 to Sentencing Memorandum -
    Letter from Anthony Zachariadis to the
    Honorable Paul A. Engelmayer, dated
    July 6, 2020............................................................ A-2084

Exhibit 9 to Sentencing Memorandum -
    eJewish Philanthrophy- Coverage of Teman's
    Award ..................................................................... A-2085

xi

**Page**

Exhibit 10 to Sentencing Memorandum -
HarvardX Verified Certificate of Achievement,
issued May 11, 2020 ............................................... A-2094

Exhibit 11 to Sentencing Memorandum -
Letter from Avi Ganz to the Honorable Paul A.
Engelmayer, dated July 7, 2020 ............................ A-2095

Exhibit 12 to Sentencing Memorandum -
Letter from Steven Oved to the Honorable Paul
A. Engelmayer, dated June 15, 2020 ..................... A-2098

Exhibit 13 to Sentencing Memorandum -
Letter from Rabbi Chaim Lipskar to the
Honorable Paul A. Engelmayer, dated
July 7, 2020 ............................................................. A-2099

Exhibit 14 to Sentencing Memorandum -
Letter from Jonathan Lubin to the Honorable
Paul A. Engelmayer ................................................. A-2101

Exhibit 15 to Sentencing Memorandum -
Letter from Talia Reiss to the Honorable Paul A.
Engelmayer ............................................................... A-2103

Exhibit 16 to Sentencing Memorandum -
Letter from Rivka Korf to the Honorable Paul A.
Engelmayer ............................................................... A-2104

Exhibit 17 to Sentencing Memorandum -
Letter from Russell DiBona to the Honorable
Paul A. Engelmayer ................................................. A-2105

Letter from Justin K. Gelfand to the Honorable Paul
A. Engelmayer, dated September 8, 2020 .............. A-2107

Appearance of Counsel, dated November 2, 2020 .... A-2108.1

Letter from Justin Harris to the Honorable Paul
Engelmayer, dated November 2, 2020 ................... A-2108.2

xii

Page

Exhibit B to Letter -
Letter from Justine A. Harris to Kedar Bhatia and
Edward A. Imperatore, dated October 23, 2020 .... A-2108.6

Exhibit C to Letter -
Letter from Kedar S. Bhatia to Justine A. Harris,
dated October 29, 2020 ......................................... A-2108.9

Order of the Honorable Paul A. Engelmayer, dated
November 19, 2020 ................................................ A-2109

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 20, 2020 ................. A-2111

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 30, 2020 ................. A-2113

Letter from Audrey Strauss to the Honorable Paul
A. Engelmayer, dated November 30, 2020 ............ A-2114

Transcript of Remote Conference Proceedings held
before the Honorable Paul A. Engelmayer, dated
December 1, 2020 ................................................... A-2116

Order of the Honorable Paul A. Engelmayer, dated
January 28, 2021 .................................................... A-2170

Letter Motion from Audrey Strauss to the
Honorable Paul A. Engelmayer, dated
April 23, 2021 ........................................................ A-2173

Exhibit A to Letter -
Proposed Order of Restitution ............................... A-2181

Exhibit B to Letter -
Proposed Preliminary Order of Forfeiture/Money
Judgment ................................................................. A-2185

Exhibit C to Letter -
Document - Finocchiaro 3503-19 .......................... A-2189

Exhibit D to Letter -
Revised Document - Finocchiaro 3503-19 ............ A-2190

xiii

Page

Exhibit E to Letter -
Affidavit of Karen Finocchiaro, dated
April 2, 2021 ......................................................... A-2191

Letter from Andrew J. Frisch to the Honorable Paul
A. Engelmayer, dated April 23, 2021 .................... A-2195.1

Attachment to Letter -
*Curriculum Vitae* of Richard M. Fraher................. A-2195.3

Letter Motion to Vacate Conviction from Andrew J.
Frisch to the Honorable Paul A. Engelmayer,
dated April 28, 2021 ............................................... A-2196

Exhibit A to Letter Motion -
Document - Finocchiaro 3503-19 .......................... A-2211

Exhibit B to Letter Motion -
Revised Document - Finocchiaro 3503-19 ............. A-2213

Exhibit C to Letter Motion -
E-mail Correspondence, dated
November 30, 2020 ................................................ A-2215

Exhibit D to Letter Motion -
E-mail Correspondence, dated March 10, 2021 ..... A-2217

Exhibit E to Letter Motion -
E-mail Correspondence, dated March 12, 2021 ..... A-2219

Exhibit F to Letter Motion -
Copies of Various Cashier's Checks ...................... A-2221

Order of the Honorable Paul A. Engelmayer, dated
May 5, 2021 ........................................................... A-2223

Letter from Andrew J. Frisch to Kedar Bhatia, dated
May 12, 2021 ......................................................... A-2225

Annexed to Letter -
Declaration of Richard M. Fraher, executed
May 11, 2021 ......................................................... A-2226

xiv

Page

Letter from Audrey Strauss to the Honorable Paul
    A. Engelmayer, dated June 9, 2021 ...................... A-2236

Letter from Andrew J. Frisch to the Honorable Paul
    A. Engelmayer, dated June 14, 2021 .................... A-2246.1

Letter from Audrey Strauss to the Honorable Paul
    A. Engelmayer, dated June 29, 2021 .................... A-2246.4

Transcript of Conference Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    July 9, 2021........................................................... A-2247

Sentencing Submission Letter from Susan G.
    Kellman to the Honorable Paul A. Engelmayer,
    dated July 16, 2021 ................................................ A-2315

Transcript of Sentencing Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    July 28, 2021......................................................... A-2333

Notice of Appeal, dated August 2, 2021 ................... A-2458

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated March 3, 2022 ............ A-2459

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated April 12, 2022............. A-2462

Order of the Honorable Paul A. Engelmayer, dated
    April 13, 2022....................................................... A-2463

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated April 13, 2022............. A-2465

Letter from Eden P. Quainton to the Honorable Paul
    A. Engelmayer, dated April 13, 2022 .................... A-2467

Notice of Appearance, filed April 13, 2022 ............... A-2469

Letter Motion from Ari B. Teman to the Honorable
    Paul A. Engelmayer, dated April 14, 2022............. A-2470

xv

**Page**

Order of the Honorable Paul A. Engelmayer, dated
April 15, 2022....................................................... A-2473

Emergency Letter Motion from Ari B. Teman to the
Honorable Paul A. Engelmayer, dated April 20,
2022 ...................................................................... A-2476

Order of the Honorable Paul A. Engelmayer, dated
April 20, 2022....................................................... A-2479

Emergency Letter Motion from Ari B. Teman to the
Honorable Paul A. Engelmayer, dated April 20,
2022 ...................................................................... A-2481

Letter from Kedar S. Bhatia, Asst. United States
Attorney to the Honorable Paul A. Engelmayer,
dated April 21, 2022 ............................................. A-2482

Order of the Honorable Paul A. Engelmayer, dated
April 21, 2022....................................................... A-2483

K1S7TEM1

1    testimony.

2          In other words, what you must try to do in deciding

3    credibility is to size a witness up in light of his or her

4    demeanor, the explanations given, and all of the other evidence

5    in the case.  You should use your common sense, your good

6    judgment, and your everyday experiences in life to make your

7    credibility determinations.

8          In passing upon the credibility of a witness, you may

9    also take into account any inconsistencies or contradictions as

10   to material matters in his or her testimony.

11         If you find that any witness has willfully testified

12   falsely as to any material fact, you have the right to reject

13   the testimony of that witness in its entirety.  On the other

14   hand, even if you find that a witness has testified falsely

15   about one matter, you may reject as false that portion of his

16   or her testimony and accept as true any other portion of the

17   testimony which commends itself to your belief or which you may

18   find corroborated by other evidence in the case.  A witness may

19   be inaccurate, contradictory, or even untruthful in some

20   aspects, and yet be truthful and entirely credible in other

21   aspects of his or her testimony.

22         The ultimate question for you to decide in passing

23   upon credibility is:  Did the witness tell the truth before

24   you?  It is for you to say whether his or her testimony at this

25   trial is truthful in whole or in part.

K1S7TEM1

1    Now a discussion of witness bias.  In deciding whether

2   to believe a witness, you should specifically note any evidence

3   of hostility or affection that the witness may have towards one

4   of the parties.  Likewise, you should consider evidence of any

5   interest or motive that the witness may have in cooperating

6   with a particular party.  You should also take into account any

7   evidence of any benefit that a witness may receive from the

8   outcome of the case.

9    It is your duty to consider whether the witness has

10   permitted any such bias or interest to color his or her

11   testimony.  In short, if you find that a witness is biased, you

12   should view his or her testimony with caution, weigh it with

13   care, and subject it to close and searching scrutiny.

14    Of course, the mere fact that a witness is interested

15   in the outcome of the case does not mean that he or she has not

16   told the truth.  It is for you to decide from your observations

17   and applying your common sense and experience and all of the

18   other considerations mentioned whether the possible interest of

19   any witness has intentionally or otherwise colored or distorted

20   his or her testimony.  You are not required to disbelieve an

21   interested witness; you may accept as much of his or her

22   testimony as you deem reliable and reject as much as you deem

23   unworthy of acceptance.

24    You've heard evidence that, at some earlier time,

25   witnesses have said or done something that counsel argues is

1    inconsistent with their trial testimony.

2          Evidence of a prior inconsistent statement was placed

3    before you not because it is itself evidence of the guilt or

4    innocence of the defendant, but only for the purpose of helping

5    you decide whether to believe the trial testimony of a witness

6    who may have contradicted a prior statement.  If you find that

7    the witness made an earlier statement that conflicts with the

8    witness's trial testimony, you may consider that fact in

9    deciding how much of the witness's trial testimony, if any, to

10   believe.

11         In making this determination, you may consider whether

12   the witness purposely made a false statement or whether it was

13   an innocent mistake; whether the inconsistency concerns an

14   important fact or whether it had to do with a small detail;

15   whether the witness had an explanation for the inconsistency;

16   and whether that explanation appealed to your common sense.

17         It is exclusively your duty, based upon all the

18   evidence and your own good judgment, to determine whether the

19   prior statement was inconsistent, and if so, how much, if any,

20   weight to give to the inconsistent statement in determining

21   whether to believe all or part of the witness's testimony.

22         You have heard evidence that certain witnesses made

23   earlier statements that were consistent with their trial

24   testimony.  Such statements were admitted into evidence not as

25   independent evidence of guilt or innocence, but solely for

A-1204

K1S7TEM1

1    whatever light they may shed on the witness's credibility.  If

2    you find that a witness had a motive to testify as he did, but

3    also that he told the same story before he had that motive, you

4    may take that into account in deciding whether the witness's

5    interest or motive colored his testimony.

6           Now a word about the witness preparation.  You heard

7    evidence during the trial that witnesses discussed the facts of

8    this case with the lawyers before the witnesses appeared in

9    court.  Although you may consider that fact when you are

10   evaluating a witness's credibility, I should tell you that

11   there is nothing either unusual or improper about a witness

12   meeting with lawyers before testifying so that the witness can

13   be made aware of the subjects that he or she will be questioned

14   about, focus on those subjects, and have the opportunity to

15   review relevant exhibits before being questioned about them.

16           (Continued on next page)

17

18

19

20

21

22

23

24

25

A-1205

1068

K1SVTEM2                    Charge

1    THE COURT:  In fact, it would be unusual for a lawyer

2   to call a witness without such consultation.  Again, the weight

3   that you should give to the fact or the nature of the witness's

4   preparation for his or her testimony and what inferences you

5   should draw from such preparation are matters completely within

6   your discretion.

7    In this case, you've heard evidence in the form of

8   stipulations of fact.  A stipulation of fact is an agreement

9   between the parties that a certain fact is true.  You must

10   regard such agreed-upon facts as true; however, it's for you to

11   determine the effect to be given to those facts.

12    Various bank records and other electronic

13   communications, such as emails, have been admitted into

14   evidence.  I instruct you that this evidence was all obtained

15   in a lawful manner, and that no one's rights were violated, and

16   that a party's use of this evidence is entirely lawful.

17    Therefore, regardless of any personal opinions you

18   might have regarding the obtaining of such evidence, you must

19   give such evidence full consideration, along with any -- excuse

20   me, along with all the other evidence in this case in

21   determining whether the government has proved the defendant's

22   guilt beyond a reasonable doubt.  What significance you attach

23   to this evidence is entirely your decision.

24    During the trial, you've heard testimony of witnesses

25   bearing on the investigative techniques used in this case.  You

K1SVTEM2                    Charge

1    may consider these facts in deciding whether the government has

2    met its burden of proof because, as I told you, you should look

3    to all of the evidence -- or lack of evidence -- in deciding

4    whether the defendant is guilty.  However, you are also

5    instructed that there is no legal requirement that the

6    government use any of these specific investigative techniques

7    to prove its case.  Whether you approve or disapprove of

8    various law enforcement techniques, or whether you might have

9    chosen to use or not use any particular technique is not the

10   question.  Your concern, as I've said, is to determine whether

11   or not, on the evidence or lack of evidence, the defendant's

12   guilt has been proved beyond a reasonable doubt.

13        Both the government and the defendant have the same

14   power to subpoena witnesses to testify on their behalf.  If a

15   potential witness could have been called by the government or

16   by the defendant, and neither called the witness, then you may

17   draw the conclusion that the testimony of the absent witness

18   might have been unfavorable to the government or to the

19   defendant or to both.

20        On the other hand, it's equally within your province

21   to draw no inference at all from the failure of either side to

22   call a witness.  You should remember that there is no duty on

23   either side to call a witness whose testimony would be merely

24   cumulative of testimony already in evidence or who would merely

25   provide additional testimony to facts already in evidence.  You

K1SVTEM2                    Charge

1   should, however, remember my instruction that the law does not

2   impose on a defendant in a criminal case the burden or duty of

3   calling any witnesses or producing any evidence.

4        The defendant, Ari Teman, did not testify in this

5   case.  Under our Constitution, a defendant has no obligation to

6   testify or to present any evidence because it's the

7   government's burden to prove the defendant guilty beyond a

8   reasonable doubt.  That burden remains with the government

9   throughout the entire trial and never shifts to the defendant.

10  A defendant is never required to prove that he is innocent.

11       You may not attach any significance to the fact that

12  Mr. Teman did not testify.  No adverse inference against him

13  may be drawn by you because he did not take the witness stand.

14  You may not consider this against him in any way in your

15  deliberations.

16       Now, ladies and gentlemen, I'm about to turn to part

17  2.  That concludes part 1, instructions that would apply in

18  just about any case.

19       I'm going to stretch my legs, I invite you to do the

20  same, because we are about to dig into the instructions that

21  are specific to this case.

22       (Pause)

23       THE COURT:  All right.  I will turn now to my

24  instructions to you relating to the charges brought against the

25  defendant in this case.

K1SVTEM2                    Charge

1      The defendant is formally charged in an indictment.

2  As I instructed you at the outset of this case, an indictment

3  is merely a charge or accusation.  It is not evidence and it

4  does not prove or even indicate guilt.  As a result, you are

5  not to give it any weight in deciding the defendant's guilt or

6  lack of guilt.  What matters is the evidence you heard at this

7  trial.  Indeed, as I previously noted, the defendant is

8  presumed innocent, and it is the prosecution's burden to prove

9  the defendant's guilt beyond a reasonable doubt.

10      The indictment contains four counts.  Each count is a

11  separate offense or crime.  Each count must, therefore, be

12  considered separately by you, and you must return a separate

13  verdict on each count.

14      Counts One and Two of the indictment charge the

15  defendant with committing the offense of bank fraud.  Count One

16  charges him with a bank fraud scheme committed between in or

17  about April 2019, up to and including in or about June 2019.

18  Count Two charges him with a bank fraud scheme committed in or

19  about March 2019.

20      Similarly, Count Three and Four charge the defendant

21  with two separate instances of wire fraud.  Count Three charges

22  him with a wire fraud scheme committed between in or about

23  April 2019, up to and including in or about June 2019.  Count

24  Four charges him with committing a wire fraud scheme in or

25  about March 2019.

K1SVTEM2                        Charge

1        I'm now going to instruct you on the applicable law

2   for each of the four counts.

3        So let's begin with bank fraud.

4        As I said, Counts One and Two both charge the

5   defendant with bank fraud, in violation of a statute known as

6   Title 18, United States Code, Section 1344.  In other words,

7   each count charges that the defendant devised a scheme to

8   defraud a federally insured bank.

9        Count One charges the defendant with committing a bank

10  fraud scheme in connection with the deposit in April 2019 of 27

11  checks, allegedly by creating, and then making the false

12  pretense and representation to the bank that he had the account

13  holders' authority to deposit these checks.

14        Count One of the indictment reads, and I'm quoting

15  now:  "From at least in or about April 2019, up to and

16  including at least in or about June 2019, in the Southern

17  District of New York and elsewhere, Ari Teman, the defendant,

18  willfully and knowingly did execute and attempt to execute a

19  scheme and artifice to defraud a financial institution, the

20  deposits of which were then insured by the Federal Deposit

21  Insurance Corporation; and to obtain monies, funds, credits,

22  assets, securities and other property owned by and under the

23  custody and control of such financial institution by means of

24  false and fraudulent pretenses, representations, and promises,

25  to wit, Teman deposited counterfeit checks in the name of three

K1SVTEM2                    Charge

1    third parties, respectively Entity 1, Entity 2, and Entity 3,

2    into an account held at a particular financial institution,

3    Financial Institution 1, and subsequently attempted to and did

4    use those funds for his personal benefit."

5           That ends that quote.  That's the quote of Count One.

6           Count Two charges the defendant with committing a bank

7    fraud scheme in connection with a deposit in March 2019 of two

8    checks, again, allegedly by creating, and then making the false

9    pretense and representation to the bank that he had the account

10   holders' authority to deposit, those checks.

11          Count Two of the indictment reads, and I'm quoting:

12   "In or about March 2019, in the Southern District of New York

13   and elsewhere, Ari Teman, the defendant, willfully and

14   knowingly did execute and attempt to execute a scheme and

15   artifice to defraud a financial institution, the deposits of

16   which were then insured by the Federal Deposit Insurance

17   Corporation, and to obtain monies, funds, credits, assets,

18   securities, and other property owned by and under the custody

19   and control of such financial institution by means of false and

20   fraudulent pretenses, representations, and promises, to wit,

21   Teman deposited counterfeit checks in the name of Entity 3 and

22   another third party, Entity 4, into an account held at

23   Financial Institution 1, and subsequently attempted to aid --

24   attempted to and did use those funds for his personal benefit."

25          I instruct you that in connection with this

K1SVTEM2                    Charge

1    indictment, Entity 1 refers to ABJ Milano LLC, operated by ABJ

2    Properties; Entity 2 refers to ABJ Lenox LLC, operated by ABJ

3    Properties; Entity 3 refers to 518 West 204 LLC, operated by

4    Coney Realty; Entity 4 refers to 18 Mercer Equity, Inc.,

5    operated by Crystal Real Estate Management; and Financial

6    Institution 1 refers to Bank of America.

7            To find the defendant guilty of the crimes charged in

8    Counts One and Two of the indictment, the government must

9    establish each of the following elements beyond a reasonable

10   doubt, and there are three:

11           First, that there was a scheme or artifice to defraud

12   a bank, as alleged in the indictment, or that there was a

13   scheme or artifice to obtain money or other property owned by a

14   financial institution by means of materially false or

15   fraudulent pretenses, representations, or promises, as alleged

16   in the indictment.

17           Second, that the defendant knowingly and willfully

18   executed or attempted to execute the scheme or artifice; that

19   is, that the defendant acted with knowledge of the fraudulent

20   nature of the scheme, and with the specific intent to defraud

21   the bank or to obtain, by deceiving the bank, money or other

22   property owned or controlled by the bank.

23           And third, that the deposits of the bank involved

24   were, at the time of the scheme, insured by the Federal Deposit

25   Insurance Corporation.

K1SVTEM2                        Charge

1        Now I will explain each of the three elements of bank

2   fraud in more detail.

3        The first element that the government must prove

4   beyond a reasonable doubt is that on or about the dates set

5   forth in the indictment, (1) there was a scheme or artifice to

6   defraud a bank; or, (2) there was a scheme or artifice to

7   obtain money or other property owned by or under the custody or

8   control of such a bank by means of false or fraudulent

9   pretenses, representation, or promises that were material to

10   the scheme.

11        The government must prove the existence of only one of

12   these schemes.  These two concepts are not necessarily mutually

13   exclusive.  If you find that either one type of scheme or

14   artifice or both existed, then the first element of bank fraud

15   is satisfied.  However, you must be unanimous in your view as

16   to at least one type of scheme or artifice that existed.  If

17   half of you think (1), but not (2); and the other half think

18   (2), but not (1), then you must vote to acquit the defendant.

19        I'll now explain what these terms mean, and I'll begin

20   with the key terms from (1), which, again requires the

21   government to prove beyond a reasonable doubt that there was a

22   scheme or artifice to defraud a bank.

23        A "scheme or artifice" is a plan, a device, or course

24   of conduct to accomplish an objective.  "Fraud" is a general

25   term.  It is a term that includes all the possible means by

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1SVTEM2                    Charge

1  which a person seeks to gain some unfair advantage over another

2  person by false representations, false suggestions, false

3  pretenses, or concealment of the truth.  The unfair advantage

4  sought can involve money, property, or anything of value.

5         And thus, a scheme to defraud a bank is a pattern or

6  course of conduct concerning a material matter designed to

7  deceive a federally insured bank into releasing money or

8  property with the intent to cause the bank to suffer an actual

9  or potential loss.  This term "scheme to defraud" thus embraces

10 all dishonest means, however ingenious, clever, or crafty, by

11 which a person seeks to trick another out of their property.

12 For example, a scheme to defraud may be accomplished through

13 trickery, deceit, deception, or swindle.

14        The government does not need to show that the

15 defendant's conduct actually caused the bank to release money

16 or property, but rather only needs to show that the defendant's

17 conduct was designed to deceive the bank into releasing money

18 or property.

19        This defines a scheme or artifice to defraud a bank,

20 the first type of scheme prohibited by the federal bank fraud

21 statute.  You may find that a scheme to defraud existed only if

22 the government has proven beyond a reasonable doubt the

23 existence of the scheme alleged in the indictment, which I read

24 to you a few moments ago.

25        Now, the second type of scheme charged, described at

K1SVTEM2                          Charge

1    the beginning of this section as (2), is a scheme to obtain

2    money or other property owned by or under the custody and

3    control of a bank by means of false or fraudulent pretenses,

4    representations, or promises.  As to this type of scheme, the

5    government must show that false and fraudulent pretenses,

6    representations, or promises were employed, and that they were

7    directed at the bank with the intention of deceiving it.

8         And this brings me to false or fraudulent pretenses,

9    representations, or promises.

10        A representation is fraudulent if it was made falsely

11   with the intent to deceive.  The deceptive means that are

12   prohibited are not limited to active misrepresentations or lies

13   told to the bank.  Just as affirmatively stating facts as true

14   when the facts are not true may constitute a false

15   representation, the law recognizes that false representations

16   need not be based on spoken words alone.  The deception may

17   arise from the intentional omission or concealment of facts

18   that make what was written, said, or done deliberately

19   misleading.

20        The arrangement of the words or the circumstances in

21   which they are used may convey a false and deceptive

22   appearance.  Accordingly, the misrepresentation may be written,

23   oral, or rise from a course of conduct intended to communicate

24   false facts to the bank.  If there is intentional deception,

25   the manner in which it is accomplished does not matter.

A-1215

K1SVTEM2                    Charge

1           These false representations must be "material," which

2    is a term I'll define momentarily.  In short, it doesn't matter

3    whether any decision-makers at the bank actually relied upon

4    the misrepresentation; it is sufficient if the

5    misrepresentation is one that is capable of influencing the

6    bank's decision and is intended by the defendant to do so.

7           Let me repeat again that there are two ways the

8    government may satisfy this first element beyond a reasonable

9    doubt:  First, by proving that there was a scheme to defraud a

10   bank; or second, by proving that there was a scheme to obtain

11   money or other property owned by or under the custody or

12   control of the bank by false and fraudulent pretenses,

13   representations, or promises.

14          Now, I've referred, in the context of both ways the

15   government may satisfy this first element, to a "materiality"

16   requirement.  We use the word "material" to distinguish between

17   the kinds of statements we care about and those that are of no

18   real importance.

19          A material fact is one that would reasonably be

20   expected to be of concern to a reasonable and prudent person

21   relying on the representation or statement in making a

22   decision.  This means that if you find a particular statement

23   of fact made by the defendant to have been false, you must then

24   determine whether that statement of fact was one that a

25   reasonable person might have considered important in making his

K1SVTEM2                        Charge

1   or her decision.  And the same principle applies to fraudulent

2   half-truths or omissions of material facts.

3           The government must -- excuse me.

4           The government need not prove an actual loss of funds

5   by the bank; nor is it necessary for the government to

6   establish that the defendant actually realized any gain from

7   the scheme.  The success of the scheme to defraud is

8   irrelevant.  What matters is whether there existed a scheme to

9   defraud.  The bank fraud statute prohibits successfully

10  defrauding a financial institution, as well as attempts to do

11  so.  You must concentrate on whether there is a scheme -- there

12  was such a scheme.

13          It does not matter whether the bank involved might

14  have discovered the fraud, had it probed further or been more

15  careful.  If you find that a scheme or artifice existed, it is

16  irrelevant whether you believe the bank was careless, gullible,

17  or even negligent.

18          Finally, in order to establish the existence of a

19  scheme, the government is not required to establish that the

20  defendant himself started the scheme to defraud; it's

21  sufficient if you find that a scheme to defraud existed, even

22  if initiated by another.

23          If you find that the government has sustained its

24  burden of proof that a scheme to defraud a bank or to obtain

25  money by false pretenses did exist as charged, you next should

K1SVTEM2                    Charge

1    consider the second element.

2            I'm about to turn now to the second element.

3            The second element that the government must establish

4    beyond a reasonable doubt is that the defendant executed or

5    attempted to execute the scheme knowingly, willfully, and with

6    the intent to defraud the bank or to obtain money or property

7    owned by the bank or under the bank's custody or control.

8            A person acts knowingly when he acts voluntarily and

9    deliberately, rather than mistakenly or inadvertently.  A

10   person acts willfully when he acts knowingly and purposely,

11   with an intent to do something the law forbids, that is to say,

12   with a bad purpose either to disobey or disregard the law.

13   It's not necessary that the defendant knew that he was

14   violating a particular law; it is enough if you find that he

15   was aware that what he was doing was, in general, unlawful.

16           To act with the intent to defraud means to act

17   knowingly and with a specific intent to deceive for the purpose

18   of causing some financial loss to another.

19           The question of whether a person acted knowingly,

20   willfully, and with intent to defraud is a question of fact for

21   you to determine, like any other question of fact.  Direct

22   proof of knowledge and fraudulent intent is almost never

23   available.  It would be a rare case where it could be shown

24   that a person wrote or stated that as of a given time in the

25   past, he committed an act with fraudulent intent.  Such direct

K1SVTEM2                        Charge

1    proof is not required.

2          Accordingly, the ultimate facts of knowledge and

3    criminal intent may be established by circumstantial evidence,

4    based on a person's outward manifestations, his words, his

5    conduct, his acts, all the surrounding circumstances disclosed

6    by the evidence, and the rational or logical inferences that

7    may be drawn from the evidence.  Use your common sense.  But

8    regardless of whether you look to direct evidence,

9    circumstantial evidence, or a combination thereof, the

10   government must establish the essential elements of the crime

11   charged beyond a reasonable doubt, including the requisite

12   mental states.

13         The government must prove beyond a reasonable doubt

14   that the defendant participated in the alleged scheme with an

15   understanding of its fraudulent or deceptive character and with

16   the intent to help it succeed.  There are certain things the

17   government need not prove in order to meet that burden.  It

18   need not prove that the defendant participated in or even knew

19   about all operations of the scheme.

20         It need not prove that the defendant originated the

21   scheme or participated in it from its inception, since a person

22   who participates in a scheme -- even after it begins -- is just

23   as guilty as those who participated from the beginning, as long

24   as he becomes aware of the scheme's general purpose and

25   operation and acts intentionally to further its unlawful goal

K1SVTEM2                              Charge

1    or goals.  It need not prove that the defendant participated in

2    the scheme to the same degree as other participants.  And

3    finally, the government need not prove actual or potential loss

4    to the bank, so long as there's evidence that the defendant

5    intended to expose the bank to such loss.

6            Turning to the third element.

7            The third and final element that the government must

8    prove beyond a reasonable doubt is that the bank that was the

9    subject of the defendant's scheme or artifice was a

10   federally-insured financial institution.  This simply means

11   that the bank's deposits had to be insured by the Federal

12   Deposit Insurance Corporation.  The government need not show

13   that the defendant knew that the bank in question was federally

14   insured to establish -- excuse me, to satisfy this first --

15   this third element; it must prove, however, that the defendant

16   intended to defraud a financial institution.

17           Now, the bank fraud statute prohibits not only

18   successfully defrauding a financial institution, but also

19   attempting, which means trying to do so.  And thus, the

20   government is required to prove only that the defendant

21   attempted or tried to execute the alleged scheme or artifice.

22   There is no need for the government to prove that the defendant

23   was successful in this endeavor.

24           In order to prove that the defendant attempted bank

25   fraud or wire fraud, the -- excuse me, bank fraud, the evidence

K1SVTEM2                    Charge

1    must show beyond a reasonable doubt that, (1) the defendant

2    intended to commit the bank fraud; and (2) the defendant

3    willfully took some action that was a substantial step in an

4    effort to bring about or accomplish the crime.  Mere intention

5    to commit a specific crime does not amount to an attempt.  In

6    order to convict the defendant of an attempt, you must find

7    beyond a reasonable doubt both that he intended to commit the

8    crime of bank fraud, and that he took some action that was a

9    substantial step towards the commission of that crime.

10            Merely preparing to commit a crime is not the same

11    thing as taking a substantial step towards the commission of

12    the crime.  The defendant must go beyond simply preparing and

13    perform an act that confirms his intention to execute the

14    scheme.  The government does not have to prove that the

15    defendant did everything except take the last step necessary to

16    complete the scheme; any substantial step beyond mere

17    preparation is enough.

18            That concludes my discussion of bank fraud.

19            In a moment, I'm going to turn to Counts Three and

20    Four, which charge the offense of wire fraud.

21            All right.  I'm now going to turn to Counts Three and

22    Four, both of which charge the defendant with wire fraud, in

23    violation of Title 18, United States Code, Section 1343.

24            Count Three charges the defendant with a wire fraud

25    scheme in connection with the deposit in April 2019 of the 27

K1SVTEM2                          Charge

1    checks which are the subject of Count One, allegedly by

2    creating, and then making the false pretense and representation

3    to the bank that the defendant had the account holders'

4    authorization to deposit those checks.

5           Count Three charges -- and again, I'm reading from the

6    indictment -- that -- and I'm quoting:  "From at least in or

7    about April 2019, up to and including at least in or about June

8    2019, in the Southern District of New York and elsewhere, Ari

9    Teman, the defendant, willfully and knowingly, having devised

10   and intending to devise a scheme and artifice to defraud, and

11   for obtaining money and property by means of false and

12   fraudulent pretenses, representations, and promises, did

13   transmit and cause to be transmitted by means of wire, radio,

14   and television communication in interstate and foreign

15   commerce, writings, signs, signals, pictures, and sounds, for

16   the purpose of executing such scheme and artifice, to wit,

17   Teman deposited counterfeit checks, drawing funds from accounts

18   belonging to 'Entity 1,' 'Entity 2,' and 'Entity 3,' and

19   subsequently attempted to and did use those funds for his

20   personal benefit and, in furtherance of such a scheme, caused a

21   wire communication to be sent."

22          Count Four charges the defendant with a wire fraud

23   scheme in connection with a deposit in March 2019 of the two

24   checks which are the subject of Count Two, allegedly by

25   creating, and then making the false pretense and representation

K1SVTEM2                        Charge

1    to the bank that the defendant had the account holders'

2    authorization to deposit those checks.

3            Count Four charges -- and again, I'm reading from the

4    indictment -- that, and I quote:  "In or about March 2019, in

5    the Southern District of New York and elsewhere, Ari Teman, the

6    defendant, willfully and knowingly, having devised and

7    intending to devise a scheme and artifice to defraud, and for

8    obtaining money and property by means of false and fraudulent

9    pretenses, representations, and promises, did transmit and

10   caused to be transmitted by means of wire, radio, and

11   television communication, in interstate or foreign commerce,

12   writings, signs, signals, pictures, and sounds, for the purpose

13   of executing such scheme and artifice, to wit, Teman deposited

14   counterfeit checks, drawing funds from accounts belonging to

15   Entity 3 and Entity 4, and subsequently attempted to and did

16   use those funds for his personal benefit and, in furtherance of

17   such a scheme, caused a wire communication to be sent."

18           Earlier -- I'm done quoting.

19           Earlier, I instructed you about who the terms "Entity

20   1," "Entity 2," "Entity 3," and "Entity 4," as used in Counts

21   One and Two, refer to.  Those instructions equally apply to

22   Counts Three and Four.

23           I'm now going to turn to the elements of wire fraud.

24           In order to prove the defendant guilty of wire fraud

25   in both Counts Three and Four, the government must establish

K1SVTEM2                    Charge

1   each of the following three elements beyond a reasonable doubt:

2          First, that there was a scheme or artifice to defraud

3   or to obtain money or property by materially false or

4   fraudulent pretenses, representations, or promises.

5          Second, that the defendant knowingly and willfully

6   devised or participated in the scheme or artifice to defraud,

7   with knowledge of the fraudulent nature of the scheme, and with

8   a specific intent to defraud.

9          And third, in execution of that scheme, the defendant

10  used or caused others to use interstate or foreign wires as

11  specified in the indictment.

12         My instructions as to Counts One and Two related to

13  bank fraud cover a number of the concepts relevant to Counts

14  Three and Four; and so my instructions as to Counts Three and

15  Four will be brief.

16         The first element that the government must prove

17  beyond a reasonable doubt is that there was a scheme to defraud

18  or obtain money or property.  I've already instructed you in

19  connection with Counts One and Two what it means to employ a

20  scheme or artifice to defraud.  Those instructions apply here

21  as well.

22         The scheme that the government alleges in Count Three

23  is the same scheme involving the defendant's depositing of 27

24  checks in April 2019, which is the subject of Count One.  To

25  find the first element as to Count Three, you must therefore

A-1224

K1SVTEM2                    Charge

1  find that the scheme had as an object the use of the funds from

2  these checks for the defendant's personal benefit.

3       And similarly, the scheme the government alleges in

4  Count Four is the same scheme involving the defendant's

5  depositing of two checks in March 2019, which is the subject of

6  Count Two.  To find the first element as to Count Four, you

7  must therefore find that the scheme had as an object the use of

8  the funds from these checks for the defendant's personal

9  benefit.

10      Turning to the second element.

11      The second element that the government must prove

12 beyond a reasonable doubt is that the defendant devised or

13 participated in the scheme knowingly, willfully, and with a

14 specific intent to defraud.  I've already defined for you

15 "knowingly," "willfully," and "with a specific intent to

16 defraud."  My earlier instructions apply here as well.  I'm

17 going to quickly define a few additional terms as to this

18 element.

19      To "devise" a scheme to defraud is to concoct or plan

20 it.  To "participate" in the scheme to defraud means to

21 associate oneself with it with the intent of making it succeed.

22      And the third and final element of the wire fraud

23 charge that the government must establish beyond a reasonable

24 doubt is that interstate or foreign wires were used in

25 furtherance of the scheme to defraud.

K1SVTEM2                    Charge

1        So "wires" includes telephone calls, faxes, email,

2   internet, radio, or television communications.  The use of the

3   wires must have been between states or between the United

4   States and another country.  The wire communication must pass

5   between two or more states as, for example, a telephone call

6   between New York and New Jersey; or it must pass between the

7   United States and a foreign country, such as a telephone call

8   between New York and London.  The government is not required,

9   however, to prove that the defendant knew or could foresee the

10  interstate or international nature of the wire communication.

11       The use of the wires need not itself be fraudulent.

12  Stated another way, the communication need not contain any

13  fraudulent representation.  To be in furtherance of the scheme,

14  the wire communication must be incident to an essential part of

15  the scheme to defraud and must have been caused by the

16  defendant.  It is sufficient if the wires were used to further

17  or assist in carrying out the scheme to defraud or the scheme

18  to obtain money by means of false representations.

19       It is not necessary for the defendant to be

20  personally -- to be directly or personally involved in any wire

21  communication, so long as the communication is reasonably

22  foreseeable in the execution of the alleged scheme to defraud

23  in which the defendant is accused of participating.  In this

24  regard, it's sufficient to establish this element of the crime

25  if the evidence justifies a finding that the defendant caused

K1SVTEM2                    Charge

1   the wires to be used by others.  This doesn't mean that the

2   defendant must have specifically authorized others to execute a

3   wire communication; rather, that when one does an act with

4   knowledge that the use of the wires will follow in the ordinary

5   course of business, or when such use of the wires can

6   reasonably be foreseen -- even if not actually intended -- then

7   he causes the wires to be used.

8          The government must prove beyond a reasonable doubt

9   the particular use of the wires on which the indictment is

10  based.  And here, the wire fraud counts are based on wire

11  communications related to the defendant's depositing of the

12  alleged counterfeit checks.  To convict the defendant on Counts

13  Three and Four, you must unanimously agree on a particular one

14  of these wires, and that it was in furtherance of the charged

15  wire fraud scheme.

16         However, the government does not have to prove that

17  the wire was used on the exact date charged; it's sufficient if

18  the evidence establishes beyond a reasonable doubt that the

19  wires were used on a date reasonably near the date or dates

20  alleged.

21         All right.  That concludes my review of the elements

22  of wire fraud.  I have a few final substantive instructions

23  that are not particular to a specific count.  The first relates

24  to the requirement that the jury's verdict be unanimous.

25         Each of the four counts in the indictment charges the

K1SVTEM2                        Charge

1  defendant with an offense -- either bank fraud or wire fraud --
2  involving multiple checks drawn on the accounts of multiple
3  entities.  And thus, Counts One and Three allege these
4  respective offenses in connection with the defendant's alleged
5  deposit of 27 checks, each drawn on the account of one of three
6  entities:  ABJ Milano LLC, ABJ Lenox LLC, and 518 West 204 LLC.
7  And Counts Two and Four allege these respective offenses in
8  connection with the defendant's alleged deposit of two checks:
9  One drawn on the account of 518 West 204 LLC, and the other
10  drawn on the account of 18 Mercer Equity, Inc.
11         As to each count, I instruct you that the government
12  need not prove and you need not find that the elements of the
13  offense in question have been met with respect to each of the
14  checks or each of the entities to which that count relates.
15  However, to convict the defendant of a particular count, you
16  must unanimously agree that the elements of the offense in
17  question have been established beyond a reasonable doubt with
18  respect to at least one entity to which that count relates.
19         So, for example, on Count Two, you may not return a
20  verdict of guilty unless you unanimously agree that the
21  elements of bank fraud have been established with respect to
22  one of these two entities:  518 West 204 LLC, or 18 Mercer,
23  Inc. to which that count relates.
24         If half of the jury found the elements of bank fraud
25  had been established with respect to the check drawn on the

K1SVTEM2                    Charge

1    account of 518 West 204 LLC, and the other half of the jury

2    found the elements of bank fraud had been established with

3    respect to 18 Mercer, Inc., but the jury was not in unanimous

4    agreement as to one entity, you could not return a verdict of

5    guilty.

6              Next, let me turn to good faith.

7              An essential element of the crimes of bank fraud and

8    wire fraud, as charged in Counts One through Four of the

9    indictment, is intent to defraud.  It follows that good faith

10   on the part of the defendant is an absolute defense to a charge

11   of fraud.  The burden of establishing lack of good faith and

12   criminal intent rests upon the prosecution.  A defendant is

13   under no burden to prove his good faith; rather, the government

14   must prove bad faith or knowledge of falsity beyond a

15   reasonable doubt.

16             Under the bank fraud and wire fraud statutes, even

17   false representations or statements or omissions of material

18   fact do not amount to a fraud unless done with fraudulent

19   intent.  However, misleading or deceptive a plan may be, it is

20   not fraudulent if it was devised or carried out in good faith.

21   If the defendant believed in good faith that he was acting

22   properly -- even if he was mistaken in that belief, and even if

23   others were injured by his conduct -- there is no crime.

24             A venture commenced in good faith may become

25   fraudulent if it is continued after a fraudulent intent has

K1SVTEM2                    Charge

1    been formed; and therefore, good faith is no defense when the

2    defendant first made representations in good faith, but later,

3    during the time charged in the indictment, the defendant

4    realized that the representations were false and nevertheless

5    deliberately continued to make them.

6           You must review and put together all of the

7    circumstances in deciding whether or not it has been

8    established beyond a reasonable doubt that the defendant

9    devised or participated in a scheme to defraud knowingly,

10   willfully, and with the intent to defraud, or whether he acted

11   in good faith.

12          There is a final consideration to bear in mind in

13   deciding whether or not the defendant acted in good faith.  You

14   are instructed that if the defendant participated in the scheme

15   to defraud, then a belief by the defendant -- if such a belief

16   existed -- that ultimately everything would work out so that no

17   one would lose any money, does not require a finding by you

18   that he acted in good faith.  If the defendant participated in

19   the scheme for the purpose of causing financial or property

20   loss to another, then no amount of honest belief on the part of

21   the defendant that the scheme will cause ultimately a profit or

22   cause no harm will excuse fraudulent actions or fraudulent

23   representations by him.

24          Now let's turn to advice of counsel.

25          You've heard evidence that the defendant consulted

K1SVTEM2                    Charge

1   with a lawyer, Ariel Reinitz.  You may consider that evidence

2   in deciding whether the defendant acted knowingly, willfully,

3   and with a specific intent to defraud.

4        The mere fact that the defendant may have received

5   legal advice does not in itself necessarily constitute a

6   complete defense to the charges of bank fraud and wire fraud.

7   Instead, you must ask yourself whether the defendant honestly

8   and in good faith sought the advice of a competent lawyer as to

9   what he may lawfully do, whether he fully and honestly laid all

10  the facts before his lawyer, and whether in good faith he

11  honestly followed such advice, relying on it and believing it

12  to be correct.

13       In short, you should consider whether, in seeking and

14  obtaining advice from a lawyer, the defendant intended that his

15  acts shall be lawful.  If he did so, it is the law that a

16  defendant cannot be convicted of a crime that involves willful

17  and unlawful intent, even if such advice were an inaccurate

18  construction of the law.

19       On the other hand, no man can willfully and knowingly

20  violate the law and excuse himself from the consequences of his

21  conduct by pleading that he followed the advice of his lawyer.

22  Whether the defendant acted in good faith for the purpose of

23  seeking guidance as to the specific acts in this case, and

24  whether he made a full and complete report to his lawyer, and

25  whether he acted substantially in accordance with the advice

A-1231

K1SVTEM2                    Charge

1   received are questions for you to determine.

2          Let's talk now about a concept called "conscious

3   avoidance."

4          I told you earlier that the defendant must have acted

5   knowingly, as I have defined that term, in order to be

6   convicted.  That is true with respect to all four counts

7   charged in the indictment.  In determining whether the

8   defendant acted knowingly, you may consider whether the

9   defendant closed his eyes to what would otherwise have been

10  obvious to him.  That is what the phrase "conscious avoidance"

11  refers to.

12         As I've told you before, acts done knowingly must be a

13  product of a person's conscious intention; they cannot be the

14  product of carelessness, negligence, or foolishness.  But a

15  person may not intentionally remain ignorant of a fact that is

16  material and important to his conduct in order to escape the

17  consequences of the criminal law.

18         Here, the government argues that the defendant

19  consciously avoided material information insofar as he did not

20  invoice or otherwise notify his customers in advance of his

21  drawing and depositing checks on their accounts in March and

22  April 2019 of his claim that they owed his business money in

23  the amounts reflected on those checks.  The government alleges

24  that the defendant was thereby closing his eyes to the fact

25  that the customers did not approve and would not have approved

K1SVTEM2                         Charge

1    those charges.

2         The defendant disputes that he consciously avoided

3    learning such information.  He argues that he believed in good

4    faith, based on his communications with his customers and his

5    understanding of communications he believed his attorney had

6    had with his customers, that the customers had given him

7    advance approve for these charges, and also advance approval to

8    remotely create checks on their accounts as a means of paying

9    the debts that they owed him.

10        As to this point, I instruct you as follows:  An

11   argument by the government of conscious avoidance is not a

12   substitute for proof of knowledge; it's simply another factor

13   that you, the jury, may consider in deciding what the defendant

14   knew.  Thus, if you find beyond a reasonable doubt that the

15   defendant was aware that there was a high probability that a

16   fact was so, but that the defendant deliberately avoided

17   confirming that fact, such as by purposely closing his eyes to

18   it or intentionally failing to investigate it, then you may

19   treat this deliberate avoidance of positive knowledge as the

20   equivalent of knowledge.

21        In sum, if you find that the defendant believed there

22   was a high probability that a fact was so, and that the

23   defendant deliberately and consciously avoided learning the

24   truth of that fact, you may find that the defendant acted

25   knowingly with respect to that fact.  However, if you find that

K1SVTEM2                    Charge

1  the defendant actually believed the fact was not so, then you

2  may not find that he acted knowingly with respect to that fact.

3  You must judge all of the circumstances and all of the proof

4  whether the government did or did not satisfy its burden of

5  proof beyond a reasonable doubt.

6          Now, switching gears.  Variances in dates and amounts,

7  that's the next topic header here.

8          The indictment refers to a range of dates and monetary

9  amounts.  I instruct you that it does not matter if a specific

10  event is alleged to have occurred on or about a certain date,

11  but the testimony indicates that it, in fact, was a different

12  date.  And likewise, it doesn't matter if a transaction is

13  alleged to have involved a certain amount of money, but the

14  testimony indicates that it was a different amount of money.

15  The law only requires a substantial similarity between the

16  dates and amounts alleged in the indictment and the dates and

17  amounts established by the evidence.

18          You've heard testimony that the defendant made

19  statements in which he claimed that his conduct was consistent

20  with innocence and not with guilt.  The government claims that

21  these statements in which the defendant exculpated himself are

22  false.  The defendant disputes this.

23          If you find that the defendant gave a false statement

24  in order to divert suspicion from himself, you may infer -- but

25  you are not required to infer -- that the defendant believed

K1SVTEM2                    Charge

1    that he was guilty.  You may not, however, infer on the basis

2    of this alone that the defendant is, in fact, guilty of the

3    crimes for which he is charged.  Whether or not the evidence as

4    to the defendant's statements shows that the defendant believed

5    he was guilty, and the significance, if any, to be attached to

6    any such evidence, are matters for you, the jury, to decide.

7              One moment.

8              We're nearly done.

9              All right.  Turning now to the concept of venue.

10             In addition to the elements that I've described, in

11   order to convict on each charged offense, you must decide

12   whether the crime occurred within the Southern District of New

13   York.  The Southern District of New York includes Manhattan,

14   the Bronx, Westchester County, as well as some other areas.

15             In this regard, the government need not prove that the

16   crime was committed in its entirety in this district or that

17   the defendant himself was present here.  It's sufficient to

18   satisfy this element if any act in furtherance of the crime

19   occurred in this district.  The act itself may not be a

20   criminal act; it could include, for example, executing a

21   financial transaction within this district.  And the act need

22   not have been taken by the defendant, so long as the act was

23   part of the crime that you find the defendant committed.

24             I should note that on this issue -- and this issue

25   alone -- the government need not offer proof beyond a

K1SVTEM2                    Charge

1    reasonable doubt.  Venue need be proven only by a preponderance

2    of the evidence.  The government has satisfied its venue

3    obligations, therefore, if you conclude that it's more likely

4    than not that the crime occurred within this district.  If you

5    find that the government has failed to prove this venue

6    requirement, you must acquit the defendant of these charges.

7            That concludes Section 2.  And the last and third

8    section of my instructions is, by far, the shortest, and it

9    just refers to the -- deals with the mechanics of jury

10   deliberations.

11           I'm going to stretch my legs.  You're at liberty to

12   follow suit or not.

13           (Pause)

14           THE COURT:  All right.  Ladies and gentlemen, that

15   concludes the substantive portion of my instructions to you.

16           You are about to go into the jury room and begin your

17   deliberations.

18           If during those deliberations you want to see any of

19   the exhibits, you may request that they be brought into the

20   jury room.  If you want any of the testimony read, you may also

21   request that.  Please remember that it's not always easy to

22   locate what you might want, and so please be as specific as you

23   possibly can in requesting exhibits or portions of the

24   testimony.  And please be patient.

25           With respect to requests for testimony, it can

K1SVTEM2                    Charge

1  sometimes take counsel and the Court some time going through

2  the transcript to identify the portions that are responsive to

3  your request.  If you want any further explanation of the law

4  as I have explained it to you, you may also request that.

5          Now, to assist you in your deliberations, I'm

6  providing you with a rather ample care package.  I'm giving you

7  in here -- and there's basically a folder of 12 copies of each

8  of the following things, so that everyone is on equal footing

9  in the jury room:  I'm giving you a list of witnesses in the

10  order in which they testified; a list of exhibits, with a short

11  neutral description of what each exhibit is by exhibit number.

12  I think it also lists the witness who was the first to

13  authenticate or through whose testimony that exhibit was

14  admitted.  A verdict form, which I'll discuss in a moment.  And

15  a copy of these instructions.  Again, there's one for each

16  juror.  I'm also providing you with a copy of the indictment.

17  But, again, I remind you that an indictment is not evidence.

18          Now, communications with the Court.

19          Your requests for exhibits or testimony -- in fact,

20  any communications with the Court -- should be made to me in

21  writing, signed by your foreperson -- I'll get to that in a

22  moment -- and given to one of the marshals.  In any event, do

23  not tell me or anyone else how the jury stands on any issue

24  until a unanimous verdict has been requested.

25          Notes.  Some of you -- many of you -- have taken notes

K1SVTEM2                    Charge

1    periodically throughout this trial.  I want to emphasize, as I

2    did at the start of the trial, that as you're about to begin

3    your deliberations, notes are simply an aid to memory.  Notes

4    that any of you may have made may not be given any greater

5    weight or influence than the recollections or impressions of

6    other jurors -- whether from notes or memory -- with respect to

7    the evidence presented or what conclusions, if any, should be

8    drawn from such evidence.  All jurors' recollections are equal.

9    Here's the key thing:  If you can't agree on what you remember

10   the testimony to have been, you can ask to have the transcript

11   read back.

12           You will now retire in a moment to decide this case.

13   Your function is to weigh the evidence in this case and to

14   determine the guilt or lack of guilt of the defendant with

15   respect to the count charged in the indictment.  You must base

16   your verdict solely on the evidence and these instructions as

17   to the law.  And you are obliged on your oath as jurors to

18   follow the law as I instruct you, whether you agree or disagree

19   with a particular law in question.

20           It is your duty as jurors to consult with one another

21   and to deliberate with a view towards reaching an agreement.

22   Each of you must decide the case for himself or herself, but

23   you should do so only after a consideration of the case with

24   your fellow jurors, and you should not hesitate to change an

25   opinion when convinced that it is erroneous.  Discuss and weigh

K1SVTEM2                    Charge

1    your respective opinions dispassionately, without regard to

2    sympathy, without regard to prejudice, or favor for either

3    party, and adopt that conclusion which, in your good

4    conscience, appears to be in accordance with the truth.

5           When you are deliberating, all 12 jurors must be

6    present in the jury room.  If a juror is absent, you must stop

7    deliberations.

8           Again, your verdict must be unanimous; but you are not

9    bound to surrender your honest convictions concerning the

10   effect or weight of the evidence for the mere purpose of

11   returning a verdict or solely because of the opinion of other

12   jurors.  Each of you must make your own decision about the

13   proper outcome of this case based on your consideration of the

14   evidence and your discussion with your fellow jurors.  No juror

15   should surrender his or her conscientious beliefs solely for

16   the purpose of returning a unanimous verdict.

17          Remember, at all times you are not partisans; you are

18   judges.  You are judges of the facts.  Your sole interest is to

19   seek the truth from the evidence in the case.

20          If you are divided, do not report how the vote stands.

21   If you reach a verdict, do not report what it is until you are

22   asked in open court.

23          Now, I've prepared a verdict form for you to use in

24   guiding your deliberation and recording your decision.  Please

25   use that form to record your verdict.

K1SVTEM2                        Charge

1    And finally, I referred a moment ago to a foreperson.
2  The first thing you should do when you retire to deliberate is
3  to take a vote to select one of you to sit as your foreperson,
4  and then send out a note to me indicating whom you have chosen.
5    The foreperson does not have any more power or
6  authority than any other juror; and his or her vote or opinion
7  doesn't count for any more than any other juror's vote or
8  opinion.  The foreperson is merely your spokesperson to the
9  Court.  He or she will send out any notes.  And when the jury
10 has reached a verdict, he or she will notify the marshal that
11 the jury has reached a verdict, and you will come into open
12 court and, prompted by me, give that verdict.
13    As to the return of the verdict, after you have
14 reached a verdict, your foreperson will fill in and date the
15 form that has been given to you.  All jurors must sign the form
16 reflecting each juror's agreement with the verdict.  The
17 foreperson should then advise the marshal outside your door
18 that you are ready to return to the courtroom.
19    I will stress that each of you must be in agreement
20 with the verdict which is announced in court.  Once your
21 verdict is announced by your foreperson in open court and
22 officially recorded, it cannot ordinarily be revoked.
23    In conclusion, ladies and gentlemen, I am sure that if
24 you listen to the views of your fellow jurors and if you apply
25 your own common sense, you will reach a fair verdict here.

K1SVTEM2                    Charge

1        Members of the jury, that concludes my instructions to

2   you.  I'm going to ask you to remain seated while I see a show

3   of hands from the attorneys to see if there are any additional

4   instructions they want me to have you -- me give to you or if I

5   inadvertently left something out or failed to cover.

6        Show of hands, anyone have anything to take up at the

7   sidebar?  Yes?  All right.  Counsel, I'll see you at the

8   sidebar.

9        (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

K1S7TEM3

1       (At the sidebar)

2       THE COURT:  Mr. Imperatore?

3       MR. IMPERATORE:  I believe the Court may have

4   misspoken on page 37, paragraph B at the top, fourth line down,

5   the typewritten text uses the word "reached".  I heard your

6   Honor say "requested" instead of "reached".  Very minor.

7       THE COURT:  Very good.

8       Anything from you?

9       MR. GELFAND:  Your Honor, the Court read the

10  instruction correctly but the one that goes back to the jury

11  should -- it's on page 25.

12      THE COURT:  Yes, I'll correct that.

13      (In open court)

14      THE COURT:  Ladies and gentlemen, I have two very

15  small things just to draw your attention.

16      One is that a moment or two ago I misspoke.  The

17  following sentence at the top of page 37 of my instruction

18  reads as follows:  "In any event, do not tell me or anyone else

19  how the jury stands on any issue until after a unanimous

20  verdict is reached."  Counsel advised me I inadvertently said

21  the word "requested" instead of "reached".  The word "reached"

22  is what I wrote and meant to say.

23      The other thing is that simply due to an error on my

24  part, on page 25, under the subheadline of attempt, a sentence

25  begins "In order to prove that the defendant attempted bank

A-1242

K1S7TEM3

1    fraud or wire fraud..."  When I spoke to you I omitted the word

2    "or prior fraud" because it wasn't supposed to be here.  That's

3    part of the bank fraud instruction.  When you see that on page

4    25, ignore the three words "or wire fraud".

5            All right.  One moment.  Before you retire to the jury

6    room, I must excuse our two alternates, with the great thanks

7    of the Court.  You two, like everybody else, have been

8    extremely attentive and patient, and I am in your debt, as we

9    all are.  I am sorry that you will miss the experience of

10   deliberating the jury, but the law provides for a jury of 12

11   persons in this case, so before the rest of the jury retires

12   into the jury room, I'm going to ask you if you have any

13   clothing or objects there, to promptly go to the jury room and

14   pick those up and then withdraw at that point.  After I have

15   sworn our marshal, the rest of the jury will then enter the

16   jury room to begin deliberations.

17           Alternates, I have this important instruction to give:

18   Please, do not discuss the case with anyone or research the

19   case over the next few days.  The same instructions that have

20   guided you throughout the trial need to continue to guide you,

21   and here is why:  It is possible -- and I have actually had

22   this occur in a trial -- that unexpected developments such as

23   deliberating juror's serious illness may require the

24   substitution of the deliberating juror by an alternate, and so

25   it's vital that you not speak to anybody about the case, or

K1S7TEM3

1    research the case, or do anything that would compromise your

2    service, until you have been notified that the jury's

3    deliberations are over and the jury has been excused.  If you

4    would like to be advised of the outcome of the trial, please be

5    sure that Mr. Smallman has a phone number to reach you.  He is

6    going to ask you for your contact information.  In the unlikely

7    circumstance that we need to bring you back, Mr. Smallman will

8    need to reach you and reel you back in here.  So with that you

9    have our thanks.  Mr. Smallman is going to bring the two of you

10   into the jury room.  As soon as he has told me that you are out

11   of the jury room, ladies and gentlemen, you will go back.

12            While we're doing that, let me swear in our marshal.

13   Marshal, please come forward.  Good morning.

14            (Marshal sworn)

15            THE COURT:  Ladies and gentlemen, just as to the

16   schedule for today, lunch will appear, and I am assuming it

17   will be in the 12:30 to 1 range.  You are not obliged to still

18   be deliberating at lunch.  It's there if you are still

19   deliberating.  Similarly, the usual afternoon snack will also

20   appear.  Mr. Smallman is on that too, and that will be in the

21   2:30 to 3 range.  Again, I make no presumption that you will be

22   or won't be deliberating then, but I simply order food for you

23   so that it's there.

24            If you are still deliberating at 5 o'clock, I will

25   bring you out to wish you well and say good night to you, and

K1S7TEM3

1    then you will resume your deliberations tomorrow beginning at

2    the same time that we have always started.  So, that's our

3    schedule for today.

4         Mr. Smallman, I have sworn the marshal.  May I ask you

5    to come forward, and I can give you their care package.

6         Again, your first order or business is to choose a

7    foreman.  Thank you.  You may now discuss the case.

8         (Jury retires to begin deliberations at 11:02 a.m.)

9         THE COURT:  Be seated.  Thank you, counsel, for being

10   active readers and catching both of those glitches.  Beginning

11   with the government, anything to raise?

12        MR. BHATIA:  Nothing, your Honor.

13        THE COURT:  Defense?

14        MR. GELFAND:  No, your Honor.

15        THE COURT:  Stay close.  I expect we will have a note

16   both about the foreperson very soon and soon enough asking for

17   certain exhibits.  Mr. Smallman will alert me as soon as we

18   have any notes.  All right.  Thank you.  I will see you all

19   soon.

20        (Time noted 12:07 p.m.; jury not present)

21        THE COURT:  All right.  Welcome back, everyone.  We

22   have two notes from the jury.  The first, which Mr. Smallman

23   has marked as jury note 1, reads "Foreman," and then it gives

24   the name of the person we understand to be Juror 2.  And then

25   Juror Note 2 simply reads "Exhibits," and then it lists a

K1S7TEM3

1  number of exhibits.  I am going to read them out slowly, and

2  then counsel will let me know whether there are any special

3  complications with respect to any of them.  Here they are in

4  the order as listed:  113, 114, 147, 201, 202, 409C, 441, 442

5  and 443."  Then it says "all 700 series" and then it says "D2".

6        Now, all of those except for 113 are recognizable to

7  me as a short documentary exhibit.  Is 113 an electronic

8  document?

9        MR. BHATIA:  Yes, it's the electronic spreadsheet.

10       THE COURT:  So is the right answer then to promptly

11 pull together a set for each of the other exhibits of three,

12 let us say, I will have them up here, and I will bring the jury

13 in and you will put up on the screen 113, and I will explain to

14 them that that is accessible only electronically, but that the

15 others Mr. Smallman will be handing them?  Is that the right

16 way to do this?

17       MR. BHATIA:  Your Honor, we have prepared the sets of

18 three for the hard copy exhibits and those can go back.  For

19 113 we have a laptop that's available that is clean and it

20 can't access the Internet that we can send back with 113 on it.

21       THE COURT:  You've got a clean laptop that has nothing

22 on it except for 113?

23       MR. BHATIA:  That's right.

24       THE COURT:  How did you manage that?

25       MR. BHATIA:  We had prepared for the possibility of

K1S7TEM3

1    sending back --

2        THE COURT:  Right.  But I want to make sure if we're

3    sending them a laptop it's tailored only to the exhibit that

4    they have requested that can't be accessed in hard copy.  So it

5    only has one 113 on it?

6        MR. BHATIA:  One moment.  I think it only has 113, but

7    let me talk to Mr. Magliocco for a moment.

8        THE COURT:  Yes, thank you.

9        MR. BHATIA:  Your Honor, so there is no content on

10   this laptop.  113 is actually on a disk, and we have provided

11   the disk in the laptop, and it can't access anything.

12       THE COURT:  So, in other words, they can play with it

13   in the jury room without having to come out to court each time

14   they want to look at it.

15       MR. BHATIA:  That's right.

16       THE COURT:  Have you shown the laptop yet to the

17   defense?

18       MR. BHATIA:  We have not, your Honor.

19       THE COURT:  Do you have the other exhibits handy?

20       MR. BHATIA:  We do.

21       THE COURT:  Why don't we take a five minute recess.

22   Why don't you do a show-and-tell with the defense, because

23   before I send back the laptop, I want to make sure they have

24   seen the disk, seen the laptop, have confirmed comfortably

25   themselves that there is no risk of any mischief or something

K1S7TEM3

1  like that. I just want to do a double check.  Assuming that

2  that works, defense counsel, is that a workable approach from

3  your perspective?

4         MR. GELFAND:  Yes.

5         THE COURT:  I will be back in five minutes.  Have a

6  folder for me with triplicate.  In other words, have a set of

7  three of each of the others ones, and have shown the defense

8  the laptop and the disk's operation, and give me a few words

9  that I can use when I bring the jury out.

10         Ordinarily, I wouldn't bring the jury out to hand them

11  exhibits, but because there is a laptop, I want to be careful

12  and take a moment to explain what is going on, so give me a few

13  words I can use to make sure that I've adequately explained

14  what they need to do to operate it.  Thank you.  I'll be back

15  in five minutes.

16         (Recess)

17         THE COURT:  All right.  Defense, have you had a chance

18  to look at the laptop?

19         MR. GELFAND:  We have, your Honor.  And the laptop is

20  not clean.  It has a number of files; it has and audio MP3

21  file; it has references to other files that appear to either be

22  unable to be opened or perhaps need some other opening.  So, we

23  are not comfortable with that laptop.

24         THE COURT:  Government, is that correct?

25         MR. BHATIA:  Your Honor, we have removed all the

K1S7TEM3

1    references to the other files, and there is no audio file on

2    the drive anymore.  We were going to show it to defense

3    counsel.

4            THE COURT:  Why don't you show it as amended to

5    defense counsel.

6            (Pause)

7            MR. GELFAND:  Unless I'm misunderstanding, apparently

8    it's not removed.

9            THE COURT:  All right.  I don't want to waste the

10   jury's time while we're fixing this.  It seems to me that it

11   probably makes the most sense to bring them out here and to put

12   up 113 on the screen for now and hand them the other exhibits

13   and, if there is a renewed request for it, tell them that we

14   can try to arrange to have a laptop that is cleared of

15   everything but that.  At least that way they will get a prompt

16   answer from us.

17           MR. BHATIA:  That's right.  And in the interim we will

18   get a laptop in case they have that request.

19           THE COURT:  I think that will be all to the good.

20   Have you reviewed together the copies of these other exhibits,

21   and can you hand those up to me?

22           Government counsel, can Exhibit 113 be printed out?

23   Is there some reason it's uncapable of being printed out?

24           MR. BHATIA:  It's too voluminous lengthwise, so if you

25   print out one part of it, you can't see the other part of it.

K1S7TEM3

1    THE COURT:  Let me ask you as to the hard copies --
2    these are not in any order right now -- have you reviewed these
3    with the defense?
4    MR. BHATIA:  I have reviewed them.  I don't know if
5    defense counsel has.
6    THE COURT:  Counsel, for obvious reasons, before I
7    send something to the jury I want each side to sign off on it
8    to make sure it is what the jury has requested.  You have not
9    shown this to the defense, correct?
10    All right.  Show this to the defense.  Let's get it in
11    the order that the jury requested it, so there is no question
12    that the sorting is out of whack.  Once it's been blessed by
13    the defense, I will bring in the jury.
14    All right.  Have both sides looked at the printouts of
15    three copies of all exhibits other than 113?
16    MR. BHATIA:  Yes, your Honor.
17    MR. DIRUZZO:  Yes.
18    THE COURT:  And those are fine going to the jury?
19    MR. BHATIA:  Yes.
20    MR. DIRUZZO:  Yes.
21    THE COURT:  I will have Mr. Smallman bring out the
22    jury.  When I call on Mr. Magliocco, I will ask you to bring up
23    Exhibit 113.  I will explain it is by its nature not something
24    that reduces to a hard copy; they should look at it here and if
25    they want a further look at it we can arrange for a clean

A-1250

K1S7TEM3

1    laptop to be sent in.

2              Anything else anyone wants me to say to the jury?

3              MR. GELFAND:  Just a question I have is just why 113

4    can't be printed?  I mean Excel can be printed wide.

5              THE COURT:  Mr. Bhatia?

6              MR. BHATIA:  We tried to print it out, your Honor, and

7    when we tried to print it out it affected the way the

8    spreadsheet looked.  Columns would get wider or smaller, they

9    would get longer.  We can try again, your Honor.

10             THE COURT:  Why don't you try.  For the time being I

11   will proceed in this fashion, but it hadn't at least appeared

12   to me to be on a scale that made it inherently unworkable.

13             Why don't you keep trying, but for the time being we

14   will bring in the jury.  But once the jury is gone, let's try

15   on two tracks to assist their review, both the clean laptop

16   track and to defense counsel's point see if we can get a

17   printout.

18             Mr. Smallman, let's get the jury.

19             (Jury present; time noted 12:27 p.m.)

20             THE COURT:  Welcome back, ladies and gentlemen.

21   Please be seated.  I have received your first two notes, the

22   first of which tells me that Juror 2 is your foreperson, the

23   second of which seeks certain exhibits.

24             With the exception of one exhibit, we're going to be

25   giving them to you in this folder.  There are three copies of

K1S7TEM3

1    each of the exhibits you have sought.  The reason I bought you

2    out is that one of the exhibits, 113, at least at this point we

3    have not found a way to reproduce it in a hard paper copy.

4    It's a spreadsheet.  For the time being what we are going to do

5    it put it up on the screen so you can look at it on the screen.

6    If we get a note from you indicating you want to look at it in

7    a different way in the jury room, we are in the process of

8    getting a clean laptop and a disk, and you would then be able

9    to review it in the jury room on a clean laptop and a disk.  I

10   will wait to see if you so request, and if that's the case, we

11   will get it to you as soon as we possibly can in that format,

12   but I wanted to explain to you that that is what is going on.

13   In a moment Mr. Smallman will hand you this binder.

14            But for the time being though, Mr. Magliocco, would

15   you kindly put Exhibit 113 up on the jury screen.

16            Now, counsel, this is an Excel document.

17   Mr. Magliocco, could you just slowly page down to the next

18   page.  Keep going.  Why don't you stop there for a moment.

19            Why don't you, Mr. Magliocco, go do that again.  I

20   want the jury to see the full extent of the document.  I will

21   wait at that point for a jury note whether or not you need this

22   on a laptop or not, but I want the jury just to see the full

23   extent of the document.  Go ahead, Mr. Magliocco.

24            All right, I think I have seen enough to note that

25   this is a long document.

K1S7TEM3

1          Ladies and gentlemen, I don't want to have an

2     interaction with you; I'd prefer to do it in writing.

3          So, go back to the jury room.  If you want this on a

4     laptop, we will be as responsive as we possibly can.  I will

5     also look into whether there is some way of getting this data

6     prepared for you in a hard copy, but counsel advise me that may

7     be a hard ask.  So, it may be that the way you wind up

8     reviewing this is through a laptop and disk, in which case Mr.

9     Smallman will get it to you as soon as possible.

10          Mr. Smallman is handing you the binder.  Why don't you

11     return to the jury room.  Thank you.

12          (Jury resumes deliberations at 11:31 a.m.)

13          THE COURT:  It seems to me close to an inevitability

14     we're going to get a request for the laptop.  It became clear

15     as Mr. Magliocco began to scroll through the document that it's

16     a long spreadsheet and it was not particularly workable to ask

17     them en masse to be scanning it in court.  There is a lot of

18     small print, and it appears to go on for many, many different

19     lines.

20          So, government, let's really jump on the process of

21     getting a clean laptop with the disk and making sure the

22     defense is fine with it so that as soon as they ask I can take

23     a look at it and we can send it in.

24          MR. BHATIA:  We will, your Honor.  And upon looking at

25     the spreadsheet, I recall there are tabs along the bottom, and

K1S7TEM3

1   if we printed this in hard copy they wouldn't be able to see

2   the tab numbers, so I think the only way to really respond to

3   this request is through the laptop.

4          THE COURT:  I'm all for doing it through the laptop.

5   You may be right that there are enough tabs that it would be

6   hard to print it out.  It's not inconceivable that if the

7   number of tabs is modest one could have a printout per tab.  In

8   any event, I would prefer if you tried to pursue this both

9   ways, but the laptop is apparently going to be the first one to

10  achieve success, so let me know as soon as that's ready.

11         MR. BHATIA:  We will.

12         THE COURT:  Thank you.

13         MR. DIRUZZO:  Your Honor, just so it's clear, I want

14  to make sure that the mode of the Excel file is protected so

15  that it can't be altered or changed by the members of the jury.

16  Because I use Excel a lot, and it's very easy to go in there

17  and accidentally mess up a formula, delete something when

18  you're not paying attention, and the next thing you know the

19  problem cascades throughout the entire Excel file.

20         THE COURT:  I took as a given that that would be so,

21  but, government, you obviously should check that.  I want to be

22  sure that we have functionality that doesn't exceed that which

23  was used in the case of the trial or that's necessary to

24  meaningfully review this.

25         MR. BHATIA:  Your Honor, let me speak to defense

K1S7TEM3

1    counsel more about this.  I think we want to provide them the

2    file as we got it, as it's marked on the disk.  I'm not sure

3    about adding extra protections on cells that wouldn't let them

4    be altered.  I think it should be sent to them on the disk as

5    it was received into evidence.

6         THE COURT:  Does the disk -- what is important is that

7    the jury get the information that appears on the front of this

8    document or by clicking separate tabs.  It doesn't appear that

9    mathematical or sorting exercises are needed here.

10         I'm not going to resolve an abstraction.  Mr. DiRuzzo,

11   you should take a look at the laptop with the disk and let me

12   know if there is some functionality there that interferes --

13   that presents some problem.  If the parties can't solve it, I

14   will determine whether that's an issue.  OK?  It makes no sense

15   for me to resolve an abstraction.

16         MR. DIRUZZO:  OK.

17         THE COURT:  Very good.  So operating on the assumption

18   that we're likely to get a request, let's solve this problem

19   pronto; and as soon as we get a request, I will come back down.

20   Thank you.

21         (Time noted 12:36, jury not present)

22         THE COURT:  We have jury note 3 which reads "No

23   laptop.  Thank you."  So, man of few words.

24         So I think Mr. Magliocco can probably stand down.

25   Good news.  All right.  Thank you.

K1S7TEM3

1    Counsel, at 1:15 I will be taking a guilty plea here.

2    I will need to take up some preliminary business with counsel,

3    but eventually I will bring out the parties there.  All I will

4    need is about half of each table kept clear so that I can take

5    charge of that.  So just be mindful at 1:15 I will need a

6    little bit of free space here.  Thank you.

7    MR. DIRUZZO:  And, your Honor, while the jury is

8    deliberating, does counsel get like a set amount of time where

9    like if we're down at the cafeteria mid meal that we're excused

10   from coming up, so to speak?

11   THE COURT:  I need somebody here at all times.  I'm

12   happy for the others to go and eat.  Frankly, I'm OK with you

13   bringing food into the courtroom as long as you conceal it from

14   the jury coming out.  Just when the jury comes out, hide your

15   food.  I think that's your main way to deal with this problem.

16   (jury not present; time noted 1:20 p.m.)

17   THE COURT:  All right.  So in United States v. Teman,

18   we have had two more notes.  One of them was from an

19   unidentified juror simply asking "Can we step out for lunch?

20   Outside of the building?"  And I had Mr. Smallman convey

21   through the marshals regrettably no.

22   More important, we have the following note, jury note

23   5.  It reads "Exhibits" and then it lists the following five:

24   409, 409A, 409B, 413 and 431.

25   Counsel, I take it all of those are capable of being

K1S7TEM3

1     reproduced in triplicate?

2            MR. BHATIA:  That's right, we have them right here:

3     Defense counsel is reviewing them.

4            THE COURT:  Why don't you review them.  One counsel

5     have signed off, I will give them to Mr. Smallman and then we

6     can move from this proceeding and move to the other proceeding

7     in this courtroom.

8            MR. GELFAND:  We have had an opportunity to review

9     them.  We are satisfied that what is here is responsive to the

10    note.

11           THE COURT:  Let me just take a look at them.

12           All right, very good.  Since all counsel are

13    satisfied, I will let Mr. Smallman give this to the marshal.

14    Thank you.  We are adjourned now in United States v. Teman.

15           (Time noted 3:42; jury not present)

16           THE COURT:  Counsel, we have received a note that we

17    marked as jury note 6.  It simply reads "Transcript for Joseph

18    Soleimani testimony, Ariel Reinitz."

19           I interpret that as meaning the entirety of the

20    transcript for both the Soleimani trial testimony and the

21    Reinitz trial testimony.  Anyone disagree that that's clearly

22    what they're seeking?

23           MR. DIRUZZO:  No, your Honor, that sounds right.

24           MR. GELFAND:  No, your Honor.

25           THE COURT:  What is easier about this is, of course,

K1S7TEM3

1    there are no subject matter limitations, it's just lock, stock

2    and barrel the testimony.  In that respect it makes the process

3    of extract can the testimony easier.  However, I want to make

4    sure as you embark on this, we have an understanding on ground

5    rules with respect to sustained objections, which is to say

6    that where an objection was sustained -- you know, I don't know

7    whether the witness then popped off with an answer or something

8    like that -- we should be excluding the objected to question

9    and the court ruling.  And where I have granted a motion to

10   strike or to disregard, obviously you need to be sensitive to

11   that.  So just as you're going through the transcript, in

12   addition of course to colloquies at the side bar, you should be

13   getting rid of sustained objections and the questions to which

14   they relate as well as the testimony that I've struck.

15        It would be my inclination to have at least three

16   copies, let us say, of each of the proposed transcripts so that

17   they can share them around the jury room.

18        My inclination would be to bring the jury out when we

19   have these ready so that I can instruct them that

20   notwithstanding the fact that they have sought this testimony,

21   they shouldn't be undue weight on the testimony merely because

22   they have it as opposed to the balance of it in the jury room.

23        Anyone object to my doing that?

24        MR. BHATIA:  That's fine.

25        MR. GELFAND:  That's fine.

K1S7TEM3

1      THE COURT:  Counsel, you have the transcripts here.

2   Get to work.  I'm hopeful that given the breadth of the request

3   there actually won't be any objections among you as to the

4   blocking and tackling, but let Mr. Smallman know as soon as you

5   have reached agreement or as soon as you've identified areas of

6   disagreement so I can come down and promptly resolve disputes

7   or bless your outcome so we can get this done promptly.

8      Something you wanted to raise?

9      MR. IMPERATORE:  Your Honor, I just wanted to raise a

10  question.  There were instances during the testimony where a

11  witness would give an answer and your Honor might have

12  admonished the witness that the answer was either not

13  responsive to the question or something along those lines.

14  Those are technically not sustained objections.  What is your

15  Honor's practice?

16     THE COURT:  Well, if I wasn't asked to strike the

17  answer, it's still part of the record.  Of course the jury

18  heard my colloquy with the witness, so I think we keep that in.

19  It's really only where I have sustained an objection -- in

20  which case it's legally as if the event didn't happen -- or

21  where I've actually struck something where you should be

22  redacting.  OK?  Does that answer your request he?

23     MR. BHATIA:  Yes.

24     MR. IMPERATORE:  Yes.  Thank you.

25     THE COURT:  I will wait to hear from you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1S7TEM3

1            (Time noted 4:37; jury not present)

2            THE COURT:  All right.  Counsel, I have been handed a

3     copy of Soleimani.  I take it this is your agreed-upon review

4     of Soleimani?

5            MR. BHATIA:  Yes, your Honor.

6            MR. GELFAND:  Yes, your Honor.

7            THE COURT:  And no disputes?

8            MR. GELFAND:  No disputes.

9            THE COURT:  Wonderful.  I will flip through it, and I

10    understand Mr. Magliocco is en route with the other one?

11            MR. BHATIA:  That's correct.

12            THE COURT:  All right.

13            Were you able to resolve Reinitz also without any

14    disputes on how to apply redactions?

15            MR. BHATIA:  Yes, your Honor.

16            THE COURT:  Great news.  Thank you.  As soon as we get

17    the Reinitz one, I will review it and we will get the jury.

18            (Pause)

19            MR. IMPERATORE:  We defer to you, but it's 4:40, if

20    the Court wants to bring them out, we will have the other

21    transcript ready and deliver it as soon as possible.

22            THE COURT:  Unless anyone disagrees, I'm inclined to

23    bring the jury out, so at least they know where's working hard

24    on their behalf.

25            Mr. Smallman, let's bring in the jury.

K1S7TEM3

1          We have just gotten jury note 7, which reads "Can we

2     please resume tomorrow?"

3          THE COURT:  So let me bring them out, and I will tell

4     them what we have and explain it will be available for them

5     first thing tomorrow.

6          OK.  Let's go get the jury.

7          (Jury present; time noted 4:45 p.m.)

8          THE COURT:  All right, welcome back, ladies and

9     gentlemen.  Be seated.

10          I have received two notes which I want to respond to

11     of yours.  The first one is your note of a little while ago

12     that reads "Transcript for Joseph Soleimani testimony, Ariel

13     Reinitz" which I understood to be his testimony as well.  I was

14     just about to bring you these when I got your next note which

15     reads "Can we please resume tomorrow?"  The answer of course is

16     yes.

17          I want to tell you about these transcripts.  As you

18     can tell, it takes a little bit of time because it requires

19     going through on a computer the entirety essentially of the

20     witness's testimony to isolate the portions that are properly

21     given to you.  Sustained objections, items I have asked to be

22     stricken, we have redacted.  Just because of computer

23     functionality, the redactions in the Soleimani testimony are

24     made with black bars and with respect to the Reinitz it's

25     whited out, but it's the same effect.

K1S7TEM3

1    In any event, counsel worked hard to review the

2    transcripts, and I have just received them printed out in

3    triplicate.  So, I will give these to you to be brought back

4    into the jury room.

5    There is one instruction I do need to give you in

6    connection with the review of transcripts, which is, simply

7    because you happen to have those transcripts, there is a

8    natural human risk that you would attach greater weight to the

9    copies of the transcripts you happen to have as opposed to the

10   other ones, the rest of the testimony in the case that you

11   heard.  I just want to make sure you guard against that.  The

12   mere fact that you have happened to ask for that testimony

13   should not lead you to give it outsized importance.  You should

14   consider all of the testimony of the trial in reaching your

15   verdict.

16   So, what I will do is I will have Mr. Smallman give

17   that to you.  I understand right now it's quarter of five, and

18   you would like to break -- just nod.  I take it you would like

19   to break now instead of 5 o'clock.  Happy to grant that.

20   Mr. Smallman will give this to your foreman.  When you

21   all get here tomorrow at 9:30, once you are all here we will

22   bring you out and you can get started.

23   Please don't start deliberating until I have brought

24   you out into the courtroom.  Remember, we need you all here, so

25   if anybody is late tomorrow we won't be able to begin -- the

K1S7TEM3

1    jury won't be able to begin deliberating, so all the more

2    important for everybody to be here on time.

3        As always, breakfast will be served at 8:45, but I

4    need you at 9:30.  And remember we will again be serving you

5    lunch tomorrow in the event you are still deliberating as of

6    the lunch break.  So Mr. Smallman will have you complete lunch

7    menu orders in the morning.

8        As always, have a good evening.  I remind you do not

9    discuss the case.  Notwithstanding the fact that you can

10   discuss it as a group of 12 when you're all together in the

11   jury room, you can't otherwise discuss or research the case.

12   Have a safe trip home.  I will see you tomorrow morning.

13        (Jury retires for the evening)

14        THE COURT:  Counsel, I take it no one has anything to

15   raise.  You are all free to leave.  I will need somebody here

16   at 9 o'clock in the remote event that there is some issue to

17   raise, although I really doubt it, and at 9:30 I will need you

18   here when I bring out the jury to resume their deliberations.

19        Fair warning, I have a three defendant criminal

20   conference tomorrow -- four defendant criminal conference --

21   tomorrow at 10:30 in one of the ceremonial courtrooms

22   downstairs.  I will be bouncing back and forth.  I will give

23   this my priority in the event there is a note or something I

24   need to attend to.  I will bounce upstairs as quickly as I can,

25   but just as fair warning, there may be a little more delay in

K1S7TEM3

1    my responsiveness than I ordinarily like just because of that

2    conference.

3              Have a good evening.  I will see you tomorrow.

4              (Trial adjourned to January 29, 2020 at 9 a.m.)

K1T7TENF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4          v.                          19 CR 696 (PAE)

5   ARI TEMAN,

6              Defendant.              JURY TRIAL

7   ------------------------------x

8                                      New York, N.Y.
                                       January 29, 2020
9                                      9:40 a.m.

10
    Before:
11
                   HON. PAUL A. ENGELMAYER,
12
                                       District Judge
13

14                     APPEARANCES

15

    GEOFFREY S. BERMAN,
16       United States Attorney for the
         Southern District of New York
17  KEDAR S. BHATIA
    EDWARD A. IMPERATORE
18       Assistant United States Attorneys

19  JOSEPH A. DIRUZZO, III
    JUSTIN GELFAND
20       Attorneys for Defendant

21  ALSO PRESENT:  DANIEL ALESSANDRINO, NYPD
                   WILLIAM MAGLIOCCO, Paralegal, USAO
22

23

24

25

K1T7TEN1

1        (Trial resumed; jury not present)

2        (Time noted 9:42 a.m.; jury not present)

3        THE COURT:  Good morning, everyone.  Mr. Smallman

4   tells me the jury is here, and so I will bring them out into

5   the courtroom.  I had an off-the-record conversation with

6   counsel earlier when I appeared.  Nobody had anything to raise,

7   save that counsel noted a change in the handwriting on some of

8   the more recent jury notes, and I will, at counsel's good

9   suggestion, remind them to have the foreperson initial each

10  note.

11        Does anyone have anything to raise before the jury

12  comes in?

13        MR. GELFAND:  No, your Honor.

14        MR. BHATIA:  No, your Honor.

15        (Time noted 9:44 a.m.; jury present).

16        THE COURT:  Good morning, ladies and gentlemen.

17  Please be seated.  All right.  I will note for the record that

18  all 12 members of our jury are here.  I hope everyone had a

19  good evening and a good morning.  You may now, with everyone

20  here, resume your deliberations.

21        One matter purely of housekeeping.  I would ask just

22  for future notes from the jury that each of them be initialed

23  by your foreperson.

24        OK.  Very good.  With that, you may resume your

25  deliberations.  I will see you at a later point.  Thank you.

K1T7TEN1

```
 1              (Jury resumes their deliberations at 9:46 a.m.)
 2              THE COURT:  All right, counsel, be seated.  As I
 3    mentioned yesterday, I have a multi-defendant conference this
 4    morning in one of the downstairs courtrooms.  Mr. Smallman will
 5    be assisting me with that conference.  My law clerk will be
 6    here in Mr. Smallman's sted.  In the event we get a note, the
 7    CSO will notify my law clerk, we will share the note with you,
 8    and I will respond as soon as I can.
 9              Steve our court reporter, who is assisting with this
10    trial, will also be covering that conference, so we will be
11    traveling as a pack back and forth as needed.  I will need one
12    person again from each team to stay close.  My conference
13    begins at 10:30.  I don't know whether or not we will be called
14    upon by our jury to do anything between now and then.  See you
15    soon.
16              (Time noted 10:33; jury not present).
17              THE COURT:  All right.  Be seated.  Ladies and
18    gentlemen, I have gotten a note which we're going to mark as
19    jury note 8.  It reads "Good morning.  We the jury have reached
20    a verdict," and it's signed by the foreperson number 2.
21              So, in a moment I will bring out the jury, and my
22    practice is that I have Mr. Smallman take the verdict form from
23    the foreperson; I review it just to make sure it is in form, in
24    good order; and then I read aloud the verdict and ask the
25    foreperson to confirm that that is in fact the jury's verdict.
```

K1T7TEN1

1    Upon the request of any party, then I poll the jury to make

2    sure that is in fact each member's verdict.  Is there a request

3    for me to poll the jury?

4              MR. DIRUZZO:  Yes, your Honor.

5              THE COURT:  All right, then we will do that.

6              Obviously I am in no position to know what the verdict

7    will be, but my practice regardless is to meet with the jury to

8    thank them for their service.  When I do that I also will tell

9    them that they are at liberty to speak with anybody they wish

10   to, but they're not required to speak with anybody, and I tell

11   them as well that they may wish to consider -- if they are

12   speaking about their experience with anybody -- hesitating to

13   share what other people said in the jury room other than

14   themselves.  In other words, it's one thing to talk about your

15   own views, it's another thing to give up what other jurors

16   said.  It's up to them ultimately, but that's the guidance I

17   give them.

18             I don't know whether or not the nature of the verdict

19   will require us to have any further business together but,

20   regardless, I will ask you all to stay.  When I go visit the

21   jury to thank them, I will then come back out and take care of

22   what, if any, business remains.

23             Anything counsel wishes to raise before Mr. Smallman

24   brings in the jury?

25             MR. BHATIA:  No, your Honor.

K1T7TEN1                    Verdict

1          MR. DIRUZZO:  No, your Honor.

2          THE COURT:  All right.  Mr. Smallman, let's bring in

3     the jury.

4          MR. DIRUZZO:  One thing, your Honor.  I assume you

5     would like counsel and the defendant to stand when you

6     pronounce the verdict?

7          THE COURT:  It's not necessary.

8          MR. DIRUZZO:  OK.

9          (Time noted 10:37 a.m.; jury present)

10          THE COURT:  Ladies and gentlemen, be seated.  I have

11     received a note which reads "Good morning.  We the jury have

12     reached a verdict," and it's signed by your foreperson.  May I

13     ask that the foreperson please hand to Mr. Smallman a copy of

14     your signed verdict form.

15          All right.  I have reviewed the verdict form, and it

16     is in good order, and it has been signed by 12 people.  Here is

17     what I'm going to do.  I'm going to read aloud the verdict form

18     and then I will ask the foreperson whether this is in fact the

19     jury's verdict.  And I will expect -- I will read it, and you

20     will let me know whether or not I have read it correctly.

21          After that, Mr. Smallman one by one will ask each

22     member of the jury whether what I've read aloud is in fact the

23     jury's verdict.  So listen as I read aloud the verdict form so

24     that you can answer his question.

25          After that, I will have some closing words of thanks

K1T7TEN1                    Verdict

1   and excuse you, and then I will be pleased to spend a moment

2   with you in the jury room thanking you in person for your

3   service.

4           All right, with that, the jury's verdict is as

5   follows:

6           On Count one, charging bank fraud with respect to the

7   April 2019 checks:  The jury's verdict is guilty.

8           With respect to Count Two, charging bank fraud with

9   respect to the March 2019 checks:  The jury's verdict is

10  guilty.

11          With respect to Count Three, charging wire fraud with

12  respect to the April 2019 checks:  The jury's verdict is

13  guilty.

14          With respect to Count Four, charging wire fraud as to

15  the March 2019 checks:  The jury's verdict is guilty.

16          And following the verdict appear the signatures of 12

17  people.

18          Juror 2, is that in fact the jury's verdict?

19          JUROR:  Yes, it is, your Honor.

20          THE COURT:  Thank you.

21          Mr. Smallman, if you would kindly poll the jury.

22          DEPURTY CLERK:  Juror 1, is that your verdict?

23          JUROR:  Yes.

24          DEPUTY CLERK:  Number two?

25          JUROR:  Yes.

K1T7TEN1                    Verdict

1          DEPURTY CLERK:  Juror 3?

2          JUROR:  Yes.

3          DEPURTY CLERK:  Juror 4?

4          JUROR:  Yes.

5          DEPURTY CLERK:  Juror 5?

6          JUROR:  Yes.

7          DEPURTY CLERK:  Juror 6?

8          JUROR:  Yes.

9          DEPURTY CLERK:  Juror 7?

10         JUROR:  Yes.

11         DEPURTY CLERK:  Juror 8?

12         JUROR:  Yes.

13         DEPURTY CLERK:  Juror 9?

14         JUROR:  Yes.

15         DEPURTY CLERK:  Juror 10?

16         JUROR:  Yes.

17         DEPURTY CLERK:  11?

18         JUROR:  Yes.

19         DEPURTY CLERK:  And Juror 12?

20         JUROR:  Yes.

21         DEPURTY CLERK:  Thank you.

22         THE COURT:  All right.  Ladies and gentlemen, I am

23  about to excuse you, but I just want to take a moment and thank

24  you.  One of the real honors of my job is being able to watch

25  at least in the detached way that I do jurors do their job --

K1T7TEN1                    Verdict

1    at least the public parts of their job.  It was quite apparent

2    to me that from Wednesday through today all of you have been

3    really locked in and very, very focused on the awesome

4    responsibility you have as jurors.  I could tell that just from

5    the level of attention you were paying during the trial, the

6    active note taking, the active listening that was apparent on

7    all of your faces, and the thoughtful detailed notes and the

8    obvious intensity that you brought to your deliberations.

9            We are all blessed and fortunate to have members of

10   the public serving as jurors like you, doing your job as

11   conscientiously and sincerely as you did, and I thank you from

12   the bottom of my heart for your service.

13           In a moment, what I'm going to do is ask you to go

14   into the jury room, collect your things.  I'm going to come in

15   with the members of my staff so I can shake all of your hands

16   and thank you for your service and answer any questions and get

17   any feedback you have about your jury service.

18           So, with that, you have my thanks.  I will see you in

19   the jury room in just a moment.  As I said at the beginning,

20   with this you are now excused from your jury service.  You will

21   get a letter from me in the mail in short order thanking you

22   formally for your service but as a result of this your jury

23   duty is now complete.  Thank you.  I will see you in the jury

24   room in a moment.

25           (Jury dismissed)

A-1272

K1T7TEN1

1           THE COURT:  All right.  Be seated.  Counsel, I will be

2     out in a few minutes to take care of the various things that

3     one must take care of after a verdict of this nature.  The

4     items I have on my list to cover include the defendant's status

5     between now and the date of sentencing, the date for any

6     post-trial motions, a sentencing date, and then there is the

7     outstanding issue of the grand jury subpoena.

8           There may be other issues we need to take up.  To the

9     extent counsel want to confer on any of those matters, this

10    will be a good time to do that.  When I come out I will take up

11    those and any other issues that counsel wish to raise.

12          (Recess)

13          THE COURT:  We're going to mark the jury's verdict

14    form as juror note 9.  All right.  So, there are a number of

15    issues to take up.  Let's begin with a sentencing date and a

16    motions date.

17          Defense, do you expect to be making post trial

18    motions?

19          MR. DIRUZZO:  Yes, your Honor, we anticipate a 29(c)

20    and a motion for a new trial.  We have asked counsel for the

21    government if they would be amenable for a two-week extension

22    from the normal time, that would be four weeks in total.

23          THE COURT:  Just give me the proposal as to when you

24    would like to submit your motion.  You can expect me to be

25    receptive.

K1T7TEN1

1          MR. DIRUZZO:  Certainly, Judge.  Today is the 29th, so

2     February 26.

3          THE COURT:  For your motion?

4          MR. DIRUZZO:  For our post-trial motions, correct.

5          THE COURT:  Government, when would you want to respond

6     to that?

7          MR. BHATIA:  We would request a month from that date,

8     your Honor.

9          THE COURT:  Four weeks from the 26th?  So that would

10     be March 25, correct?

11          MR. BHATIA:  That's right.

12          THE COURT:  All right.  Defense, I'm happy to set that

13     schedule.  I don't think, knowing the case well as I do, that I

14     will need a reply.  I think after I read the motions, if there

15     is something that I need further help on, I will commission a

16     reply, but I'm not going to build a reply into the schedule and

17     add to the work.  I think I can be able to make an assessment

18     in whatever direction based on the two motions, and if I need a

19     reply, I will commission one.

20          MR. DIRUZZO:  OK, Judge.

21          THE COURT:  So, I'm happy to approve those dates.

22          All right.  With respect to sentencing, I would

23     envision a date approximately four months from now, counsel?

24     Any reason why there is some special problem here that should

25     suggest something shorter?  Defense counsel, I assume you are

K1T7TEN1

1   not seeking an expedited sentencing date which would mean for

2   going the draft PSR?

3           MR. DIRUZZO:  Correct, we are not expediting, so four

4   months would be perfectly fine, your Honor.

5           THE COURT:  The norm in this district is about three

6   and a half months, but given the need to resolve post-trial

7   motions, it seems to me smart to add a couple weeks.

8           Counsel, how about June the 4th at 10 a.m.?

9           MR. BHATIA:  That's good for the government.

10          MR. DIRUZZO:  That's good for us.

11          THE COURT:  Let's assume that is the date.  Obviously,

12  in the event there is some unexpected change of circumstance,

13  I'm certainly open to moving that, but let's set sentencing

14  down for June the 4th.

15          Defense submissions in connection with sentencing are

16  due two weeks before sentencing, and the government's

17  submission is due one week before sentencing.

18          Defense, you should arrange for any pretrial interview

19  of your client by the probation department within the next two

20  weeks and, government, you should get your offense version to

21  the probation department within the next two weeks.

22          MR. BHATIA:  We will.

23          THE COURT:  So, having taken care of motions and

24  sentencing, there is the issue of the defendant's continued

25  release and the terms of that release pending sentencing.

A-1275

K1T7TEN1

1          Government?

2          MR. BHATIA:  Yes, your Honor.  In this case we are

3    seeking remand, and the reason for that is under 3143, your

4    Honor, there is a presumption here at this stage of the

5    proceeding, and of course the circumstances have changed quite

6    a bit from before trial.

7          THE COURT:  One moment.  This is not, of course, the

8    case under 3143 where detention is mandatory, correct?  This is

9    not like a heavy duty narcotics case or something like that.

10         MR. BHATIA:  No.

11         THE COURT:  So, refresh my memory, a post-trial

12   presentencing in a nonmandatory case, what the standards now

13   are.

14         MR. BHATIA:  At this point, your Honor, the Court must

15   find by clear and convincing evidence that the person is not

16   likely to flee or pose a danger of safety to other persons or

17   the community.

18         THE COURT:  So clear and convincing applies both to

19   the flight and danger provisions, and the burden is on the

20   defendant.

21         MR. BHATIA:  That's right.

22         THE COURT:  And which are you invoking here in making

23   that argument?  Danger, flight, or both?

24         MR. BHATIA:  Both, your Honor.

25         THE COURT:  Explain.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1T7TEN1

1    MR. BHATIA:  So, under a risk of flight, your Honor,

2    we have conferred with defense counsel about this.  As we

3    understand it, the defendant does not have substantial assets

4    that could be used to secure a bond otherwise, and we think

5    that those also tend to show lack of ties to the community,

6    which goes to the risk of flight.

7        THE COURT:  I'm sorry, let's slow down here.  What are

8    the current terms of release?

9        MR. BHATIA:  A $25,000 bond cosigned by one

10   financially responsible person.

11       THE COURT:  Who is that?

12       MR. BHATIA:  I don't recall at this point, your Honor,

13   who the FRB is.

14       THE COURT:  Who is it, defense counsel?

15       MR. GELFAND:  An individual named Levi Herman.

16       THE COURT:  Who is that?

17       MR. GELFAND:  A close friend of Mr. Teman's.

18       THE COURT:  OK.  Go ahead, government counsel.  And

19   your concern is that the existing bond and Mr. Herman's

20   signature on it are not enough to insure the defendant's

21   presence?

22       MR. BHATIA:  That's right, your Honor.

23       THE COURT:  What has the defendant's presence been

24   like with pretrial supervision and appearance in court?

25       MR. BHATIA:  The defendant has appeared in court and,

K1T7TEN1

1    as we understand it, he has complied with the terms of his

2    pretrial supervision, except we have noted for your Honor

3    before trial and during trial the defendant's statements about

4    the victims in this case, and the defendant made public

5    statements disparaging witnesses in this case.

6          THE COURT:  Right.  But, look, there was no order in

7    place directing him not to do that.  It wasn't a smart decision

8    but it wasn't against any rule or law.  Once I directed him not

9    to do that, did he comply?

10         Government?  Once I directed him not to disparage the

11   victims, are you aware of any noncompliance by the defendant?

12         MR. BHATIA:  Not after that.

13         THE COURT:  I am trying to understand -- look, I

14   appreciate your views about the defendant, but what's the

15   basis -- articulate for me why you think he is likely to flee?

16         I appreciate that the burden is on the defendant, but

17   the burden is arguably met simply by the track record, which is

18   that Mr. Teman has shown up; he has shown up despite of the

19   distress that the note that we are all aware of reflected.  The

20   facts on the ground suggest that he is going to show up.  Do

21   you have his travel documents?

22         MR. BHATIA:  I believe he has surrendered his

23   passport, your Honor, yes.

24         THE COURT:  All right, you believe he has surrendered

25   his travel documents.  Is there any reason to think he has

K1T7TEN1

1    assets abroad?

2            MR. BHATIA:  We don't, your Honor.

3            THE COURT:  Is there any reason to believe he has any

4    existing travel documents?

5            MR. BHATIA:  No.

6            THE COURT:  Is there any to believe he has friends or

7    family abroad?

8            MR. BHATIA:  I don't know one way or the other.

9            THE COURT:  So, just articulate for me -- beyond the

10   fact that he has now been convicted of this offense and that he

11   is no fan of the customers whose testimony was presented

12   against him, what's the reason to think he is not going to show

13   up?

14           MR. BHATIA:  Your Honor, at this point there is a

15   substantial sentence, at least a guideline sentence -- there is

16   a possibility of a substantial sentence awaiting the defendant,

17   your Honor, and so we think that that is a substantially

18   changed circumstance.  And the defendant, as far as we know,

19   doesn't have other financial ties that tie him to the United

20   States, or that would require him to come to court, and so we

21   think that at this point the defendant can't show by clear and

22   convincing evidence that he will reappear.

23           THE COURT:  What about the fact that he has shown up

24   each time?  I mean he was facing a substantial sentence.  The

25   evidence that you have offered is not different from what he

K1T7TEN1

1      would have realistically expected.

2              You know, day in and day out he has been here.  Why

3      doesn't that clear the legal burden?  I am asking you to

4      explain to me why you're worried about Ari Teman not showing

5      up.

6              MR. BHATIA:  I think prior to trial the defendant had

7      every expectation he would be acquitted, and I think the jury's

8      verdict has changed that fact, and so I think at this point the

9      possibility of a jail sentence has come into more stark relief.

10             THE COURT:  Let me hear from defense counsel briefly

11     on flight, and then we will turn to danger.

12             MR. DIRUZZO:  Your Honor, we submit that Mr. Teman has

13     always showed up; he has always complied.  His compliance

14     demonstrates, as your Honor has noted, that he is not a flight

15     risk.  It is true that Mr. Teman for better or worse does not

16     have substantial assets.  He is not that well healed, so to

17     speak, so he can't give up as a security that which he does not

18     have.

19             THE COURT:  Let me ask you this.  I mean this is a

20     very light bail package and the circumstances have changed.

21     Part of my job is to tailor any bail package to the needs of

22     assuring his appearance.  Surely he has somebody else who has

23     moral suasion over him than Mr. Herman.  Are there other

24     potential signatories here?

25             MR. DIRUZZO:  With the Court's indulgence.

K1T7TEN1

1      THE COURT:  Does he have parents, that kind of thing?

2      MR. DIRUZZO:  Your Honor, we believe that Mr. Teman's

3  college rabbi would be amenable to signing some type of bond to

4  ensure Mr. Teman's appearance between now and sentencing.

5      THE COURT:  What?

6      MR. DIRUZZO:  To ensure Mr. Teman's appearance, that

7  he doesn't leave.

8      THE COURT:  Look, my inclination would be to intensify

9  the conditions of release just to assure his appearance, and

10  I'm trying to work through with you what the tools are in the

11  tool box.

12      There is the possibility of electronic monitoring, and

13  there is the possibility of another cosigner.  I think you're

14  representing to me that there is not a possibility of posting

15  any security because Mr. Teman apparently doesn't have money,

16  or so you represent.

17      MR. DIRUZZO:  Yes, your Honor.  But there is the

18  possibility that Mr. Teman's college rabbi would be willing to

19  sign.

20      THE COURT:  We would need to obviously have the

21  government have access to him to determine whether there is

22  moral suasion, and if not that person there would be somebody

23  else.  Does Mr. Teman have parents?

24      MR. DIRUZZO:  Yes, he does.

25      THE COURT:  Would they be in a position to cosign?

K1T7TEN1

1          MR. DIRUZZO:  No, he has -- my understanding is he is

2     estranged from his family.

3          THE COURT:  Where does his family live?

4          MR. DIRUZZO:  Unfortunately, his parents -- most of

5     his cousins live in the States but his parents do live in

6     Israel.  And he hasn't talked to them for an extended period of

7     time.

8          THE COURT:  Does he have siblings?

9          MR. DIRUZZO:  I believe he has one sister, but he is

10    also estranged from his sister and hasn't spoken to her in

11    quite some time.  He is not exactly sure of her whereabouts.

12         We would submit, your Honor, that the possibility of

13    perhaps an electronic monitor would be sufficient to alleviate

14    any concerns that the prosecution or the Court may have.

15         THE COURT:  Government, what about a revised bail

16    package that puts in place intensified pretrial supervision,

17    essentially electronic monitoring effective immediately by

18    pretrial and adding a cosigner to sign the PRB?  The idea would

19    then be if there is any slip-up, you will be right back in here

20    seeking remand, but at least I'm going step by step and not

21    jumping to the conclusion that Mr. Teman is not going to

22    appear.

23         MR. BHATIA:  Your Honor, I think an intermediary

24    ground might be home detention with electronic monitoring.  I

25    think that would allow the defendant -- that would allow to

K1T7TEN1

1  ensure the defendant appear for sentencing.

2         THE COURT:  Where is the defendant's home?

3         MR. BHATIA:  The defendant, as I understand it, lives

4  in Florida.

5         THE COURT:  So, you're proposing home detention with

6  electronic monitoring?

7         MR. BHATIA:  That's right.

8         THE COURT:  And I take it with leave to attend to

9  medical appointments and the like and otherwise as approved by

10  the pretrial services -- by pretrial services?

11         MR. BHATIA:  That's correct.

12         THE COURT:  All right.  And what's your view about the

13  addition of another signatory?

14         MR. BHATIA:  I think an additional signatory would be

15  appropriate.  I think that makes sense.  And if there were to

16  be an additional signatory, then an increase in the bond value

17  as well.  Right now it's a $25,000 bond.

18         THE COURT:  All right.  Defense counsel, I understood,

19  Mr. DiRuzzo, you to be fine with electronic monitoring.  Often

20  that goes with home detention; that's part of what makes

21  electronic monitoring effective.

22         Obviously, electronic monitoring permits the subject

23  to attend to medical appointments, and if there is another

24  carve-out or two that you need me to put on the record, I can,

25  otherwise it's usually left to the discretion of pretrial

K1T7TEN1

1    services.  What's your view about that?

2              MR. DIRUZZO:  Just for clarity, medical and mental

3    health, the full ambit, but yes.

4              THE COURT:  All right.  But with those carve-outs

5    you're fine with that?

6              MR. DIRUZZO:  Yes.

7              THE COURT:  I mean what I'm concerned about, to be

8    honest -- based on the little exchange I've had with you -- is

9    the level of estrangement that Mr. Teman has from people who

10    are usually close to a defendant.  It's a circumstance that

11    raises a natural concern about rootlessness.

12              Can you tell me something about his roots?  In other

13    words, are their anchors in his life?  He doesn't have any

14    money.  It sounds like his job, therefore, must be in some

15    degree of perilous shape.  The members of his immediate yet

16    family don't speak to him.  Help me out here.

17              MR. DIRUZZO:  With the court's indulgence, your Honor.

18              THE COURT:  Yes.

19              MR. BHATIA:  Your Honor, I just have one comment

20    before you resume with defense counsel.  My recollection is

21    that Levy Herman might have been the individual who received

22    the $4,000 check, the bank deposit from the scheme, as we

23    alleged in the case.

24              THE COURT:  Right.

25              MR. BHATIA:  We wanted to flag that fact for your

A-1284

1147

K1T7TEN1

1    Honor.

2            THE COURT:  Duly flagged, but I'm not sure that

3    changes anything.  I mean --

4            MR. BHATIA:  In addition, the fact that the

5    defendant's parents are abroad also raises questions.

6            THE COURT:  I am hearing you.  I mean I am startled by

7    the level of estrangement in the defendant's life, and that is

8    a source of concern.  I'm working through that with counsel to

9    make sure that my outcome here is measured to the facts as they

10   are emerging.

11           MR. GELFAND:  Your Honor, just kind of backing up for

12   a second, and just because we're on the record now I know that

13   some of these brief at the time immaterial conversations had

14   come out, but I have known Mr. Teman personally since freshman

15   year of college.  We have maintained a friendship since then.

16   What I can represent is that he has built his own roots in New

17   York and subsequently Florida -- in the Southern District of

18   Florida, to be precise.  He was fairly sick several years ago.

19   During that time period, your Honor, his parents, he was

20   estranged from them, they didn't come to see him, they didn't

21   come to help him in any way.  There is no relationship there,

22   and as a practical matter he has built kind of a family

23   environment for himself.

24           There is an individual rabbi KLar -- K-l-a-r -- and

25   that individual's family -- who unremarkable at the time but in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1T7TEN1

1    a remarkable way had showed up to watch portions of this trial

2    and to support Mr. Teman.  They are kind of where Mr. Teman

3    tends to go -- when bond conditions were not at issue -- for

4    religious holidays.

5            THE COURT:  That's in New York?  That person is a New

6    Yorker?

7            Mr. Teman, just in your legal interests, let me hear

8    through counsel.

9            MR. GELFAND:  The sons live in Manhattan, your Honor.

10   The parents live in West Orange.

11           THE COURT:  If I have a home detention with electronic

12   monitoring, will he be in Florida or New York?

13           MR. GELFAND:  Florida, your Honor, in his Miami

14   apartment.

15           THE COURT:  How is Mr. Teman affording the travel back

16   and forth to New York and whatever hotel or stay arrangement he

17   had during and in connection with the trial?

18           MR. GELFAND:  Your Honor, to be candid, he has

19   exhausted most of his resources, and so, as I understand it, he

20   had some money saved up that's basically exhausted.  He has

21   been able to borrow some additional funds to just kind of pay

22   the expenses, as I understand it, your Honor.

23           As a practical matter, I mean he is not going

24   anywhere.  He has fully been engaged with his defense.  He came

25   to St. Louis, to my office, with the Court's permission several

K1T7TEN1

1    weeks ago.  I will represent, your Honor, something I have

2    never done with any other client, he stayed at my house with my

3    family.  You know, he has known about the obvious possible

4    consequences.  Of course, we all hoped the verdict would come

5    down a different way -- that goes without saying in any

6    trial -- however, he is aware of the possible consequences, and

7    obviously the process that the court will go through for

8    sentencing.  He has fully been engaged in his defense.  He has

9    been here every single time.  He has been in regular contact

10   with his pretrial services officer.

11           THE COURT:  You're not aware of any breach of any

12   condition of pretrial supervision.

13           MR. GELFAND:  No, your Honor, I'm not.  And on top of

14   all of this there are pretty serious -- as the Court is

15   aware -- mental health issues that are finally kind of under --

16   as much as mental health conditions can ever be totally under

17   control, they are under control in the sense that he has a team

18   of people and it seems to be working.  I mean candidly we've

19   noticed a difference since the note that we are all aware of,

20   and more common contact in the weeks leading up to trial, and I

21   would like him to continue with that for everyone's benefit,

22   including obviously his own but not limited to his own.

23           THE COURT:  All right.  Does anyone have anything else

24   to add?

25           MR. BHATIA:  No, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1T7TEN1

1           MR. GELFAND:  No.

2           THE COURT:  I think it is actually a closer question

3    than I had first appreciated, but in the end Mr. Teman's

4    consistent compliance with the terms of pretrial supervision,

5    coupled with the Draconian consequences to him were he not to

6    comply, allows me by a narrow margin to conclude that he has

7    met his burden of showing by clear and convincing evidence that

8    he is not a risk of flight.

9           That is contingent on certain conditions being imposed

10   and subject to the conversation I'm about to have with the

11   government about danger to the community.  It seems to me to

12   assure his appearance, I would make the following changes to

13   the existing regimen.

14          Specifically, I will impose a condition of home

15   detention with electronic monitoring, with leave of course to

16   attend to medical and mental health appointments.

17          Second, I will ask that there be a second signatory to

18   the existing $25,000 personal recognizance bond.

19          Government counsel, I don't think the difference

20   between $25,000 and $50,000 is consequential here.  $25,000 is

21   still a lot of money, and somebody is not going to want to

22   forego that.  The central issue here is not between 25 and let

23   us say $50,000.  It turns on whether the individual in question

24   is somebody who has moral suasion over Mr. Teman so that Mr.

25   Teman would not want that person to lose that amount of money.

K1T7TEN1

1    So, I will add home detention with electronic

2  monitoring, with carve-outs for medical and mental health

3  appointments and otherwise as supervised by the probation

4  department.  And I will add the requirement of a second

5  cosigner to the existing bond.

6    This is all contingent on my not being persuaded that

7  there is a danger to the community.

8    Mr. Bhatia, you have an argument, I gather, you want

9  to make as to that?

10    MR. BHATIA:  Yes, your Honor.  The danger to the

11  community is with regard to the comments made about a victim as

12  well as the comments made about the Court in the letter.

13    THE COURT:  What comment did he make about the Court?

14    MR. BHATIA:  There were comments in the note about the

15  prosecutor and the Court.  There is also the tweet that was

16  right before trial.

17    THE COURT:  The comments that I saw about the

18  prosecutor were snarky and went to -- were jibes.  Why is that

19  a danger to the community?  That's just juvenile speech.

20    MR. BHATIA:  Your Honor, I think those are the facts

21  we have, and I think on the defendant's burden I think it also

22  contributes to the need for detention.

23    THE COURT:  Is there any reason to think he is going

24  to hurt somebody?

25    MR. BHATIA:  No.

A-1289

1152

K1T7TEN1

1      THE COURT:  Is there a reason to think he is going to

2  defraud somebody?

3      MR. BHATIA:  Your Honor, I think that's probably a

4  closer call.

5      THE COURT:  That's the issue here.

6      MR. BHATIA:  I think we are aware of instances where

7  we think the defendant has taken action against people who have

8  sort of -- one moment, your Honor.

9      Your Honor, so I wanted to confer with Mr. Imperatore

10  for a moment.  As we mentioned in our grand jury letter, we are

11  aware of other conduct that we believe is fraudulent.

12      THE COURT:  Right.

13      MR. BHATIA:  So that does give us pause.  The

14  defendant -- also as we heard at trial -- has hundreds of

15  GateGuard customers, and so that gives him access.

16      THE COURT:  Why isn't the right answer to say -- to

17  add as a condition the defendant is not to create or deposit

18  any remotely created check and is not to draw on any other

19  person's credit card -- bill any other person's credit card

20  without the express written permission of the pretrial services

21  officer?

22      MR. BHATIA:  I think that would be appropriate.

23      THE COURT:  That should guard against the sort of

24  mischief one would naturally be worried about, right?

25      MR. BHATIA:  I think that's right.  And I think we

K1T7TEN1

1    would also ask for no new lines of credit and some of the other

2    standard bail conditions.

3              THE COURT:  Mr. Gelfand, that sounds reasonable,

4    doesn't it?

5              MR. GELFAND:  Yes, your Honor, it does.  To be blunt,

6    obviously Mr. Teman is well aware of the possible consequences

7    of --

8              THE COURT:  I understand that.  But, look, because he

9    doesn't want the bail to be revoked pending sentencing, if I am

10   explicit that a condition of bail is the ones I just

11   mentioned -- including no remotely created checks -- that gives

12   him an extra determinable incentive.

13             MR. GELFAND:  Yes, your Honor.

14             THE COURT:  So what I am going to do is in addition to

15   what I previous wrote is I'm going to write in the following:

16   "Defendant is not to create or deposit any remotely created

17   check.  Defendant is not to" -- help me, Mr. Gelfand, with the

18   right formulation to the use of credit cards.  He presumably

19   has credit cards from other people.  I don't want him to hit

20   those.  I want to come up with the right formulation.

21             Mr. Gelfand?

22             MR. GELFAND:  I think the way to go is my

23   understanding is that with some historic business transactions

24   there is kind of an infrastructure of what we understand is

25   agreed upon but, in any event, essentially recurring automatic

1154

K1T7TEN1

1    credit card transactions.

2            What we would say is to give Mr. Teman a day or two to

3    basically stop those from happening through I think it's PayPal

4    or whatever the infrastructure is.

5            THE COURT:  I am going to write "Defendant is to

6    immediately terminate all auto pay" --

7            MR. GELFAND:  And then we would ask that any such

8    transactions be permissible upon written approval obtained

9    between now and the time that the transaction occurs.

10           THE COURT:  All right.  "Defendant is to immediately

11   terminate all auto pay credit card arrangements.  Defendant" --

12   one moment -- "with him or any company" -- "any business with

13   which he is affiliated."

14           I want to make it clear that this binds GateGuard and

15   the other companies.

16           Mr. Gelfand, here is what I propose:  "Defendant is

17   not to create or deposit any remotely created check.  Defendant

18   is to immediately terminate all auto pay credit card

19   arrangements with him or any business with which he is

20   affiliated.  Defendant may not invoice or bill any person or

21   business without the written approval of his pretrial services

22   officer."

23           It seems to me that that should protect against any

24   potential fraud, while building in some flexibility and some

25   ability to do business.  But I am worried under the

A-1292

1155

K1T7TEN1

1  circumstances here -- particularly given the financial need

2  that is evident on the face of this case, and is evidence on

3  the colloquy we've had -- I want to avoid any latitude --

4  assuming compliance with these conditions -- to rip somebody

5  off.

6        MR. GELFAND:  One second, your Honor?

7        THE COURT:  Yes.

8        MR. GELFAND:  I don't think this will move the needle

9  one way or the other, but there is just a very practical impact

10  on a word.  Apparently PayPal's interface basically permits the

11  immediate suspension of any sort of auto pay, and what we would

12  ask is that he be ordered to immediately suspend, which

13  effectively --

14        THE COURT:  Why don't I say "suspend or terminate".

15        MR. GELFAND:  Fair enough.

16        THE COURT:  That's fine.

17        MR. GELFAND:  And then could I request two unrelated

18  --

19        THE COURT:  "Immediately suspend or terminate."  One

20  moment.  Go ahead.

21        MR. GELFAND:  Your Honor, these are unrelated to that

22  issue.

23        THE COURT:  All right.  Let me just finish that issue.

24  Are we done with danger to the community?  Anyone have anything

25  else to add?

K1T7TEN1

1          MR. BHATIA:  Your Honor, on the bail, we wanted to get

2     a representation from the defense, if possible, about the fact

3     that Mr. Teman is only a United States citizen and does not

4     have any other travel documents.  I wasn't a part of the case

5     when the initial bail conditions were set, so I'm not familiar.

6          THE COURT:  Mr. Gelfand, I think that's a more than

7     fair question.  Is your client only an American citizen?

8          MR. GELFAND:  Your Honor, my understanding is my

9     client is only a U.S. citizen and that he has no travel

10    documents other than the U.S. passport that was turned over.

11         THE COURT:  I am going to ask that to Mr. Teman.

12         Mr. Teman, are you under oath.  Do you understand

13    that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  If you make a false statement in response

16    to what I am about to say, that could subject you to penalties

17    of perjury.

18         THE DEFENDANT:  I understand.

19         THE COURT:  Are you a citizen of any country other

20    than the United States?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  And have you surrender all of your travel

23    documents including passports?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  OK, very good.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1T7TEN1

1          I think, Mr. Bhatia, that does the trick.  With that

2     then -- again, finding it a close call -- I do find that Mr.

3     Teman by clear and convincing evidence has shown me that

4     subject to the rather muscular conditions I put in place he is

5     not a danger to the community.

6          There is no basis other than speculation for me to

7     assume that Mr. Teman could be a danger in any way other than

8     in a financial or fraud way.  There is no history.  He hasn't

9     been physically harming people or threatening people.  I'm

10    certainly aware that he has made provocative remarks to

11    customers; he has engaged in juvenile speech; he has shown a

12    vindictive streak, including a commentary about taking adverse

13    action against people on days when they are deeply religious

14    observant.  None of this reflects well on him, but in the end

15    none of it suggests an aptitude towards violence or anything

16    like that.  The real risk is that he would financially harm

17    somebody.  The conditions that I have read into the record a

18    moment ago seems to me are sufficient safeguards against that

19    conduct.

20         In the event there is a breach of any of those, Mr.

21    Teman, be aware strict rules apply.  If you breach any of these

22    conditions, you can expect the government to move for your

23    remand, and you can expect me to be receptive to such an

24    application.  Do you understand that?

25         MR. GELFAND:  Yes, Judge.

A-1295

K1T7TEN1

1          THE COURT:  Mr. Teman, do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Government, anything further?

4          MR. BHATIA:  Nothing further.

5          THE COURT:  All right.

6          MR. GELFAND:  Your Honor, I'm sorry.  Two quick issues

7    that I would request the Court to include in its conditions.

8          Number one, my understanding is that his mental health

9    and medical providers -- and I think he had actually referenced

10   this to you early on in this case -- they basically have him

11   doing several mile walks outside on a daily basis.  I would ask

12   that he be permitted to continue that.

13         THE COURT:  Look, I've said defendant has leave to

14   attend to medical and mental health appointments.  I construe

15   that to mean obligations that are ordered by such a

16   professional.

17         MR. GELFAND:  OK.  And then the other issue -- which I

18   think is already embedded in the pretrial conditions -- is I

19   don't know whether this will be necessary, but permission to

20   travel if necessary to St. Louis to meet with me in preparation

21   for sentencing.

22         THE COURT:  Why is that necessary?

23         MR. GELFAND:  It's probably not.

24         THE COURT:  Let's wait and see if it's necessary.

25         MR. GELFAND:  OK.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1T7TEN1

1           THE COURT:  I'm not averse to it, but it's a different

2      type of representation than in connection with trial.  My guess

3      is between phone, Skype and your existing bond of friendship

4      and trust, you can probably get a lot done remotely, but I'm

5      disinclined to needlessly do that.  Right now the travel

6      restrictions are presumably the Southern District of New York

7      and the Southern District of Florida.

8           MR. GELFAND:  That's fine.  And if we need anything

9      more --

10           THE COURT:  I'm sorry.  Right now it's the Southern

11      District and Eastern Districts of New York -- which includes

12      our airports -- and the Southern District of Florida.  If on an

13      ad hoc basis you need leave for him to come visit you, I am

14      certainly not inflexible.

15           MR. GELFAND:  Understand.

16           THE COURT:  Anything else with respect to bail?

17           MR. BHATIA:  Nothing else.

18           THE COURT:  Look, Mr. Teman, let me just speak to you

19      directly.  You know, you've got sentencing coming up in four

20      plus months.  How you behave, how you comply with the

21      conditions of release, has potential consequences in terms of

22      sentencing.  It's an opportunity for you to demonstrate your

23      ability to comply with the law, in particular the rules that I

24      have set out as conditions of your release.

25           So, to begin with, if nothing else, your self interest

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-1297

K1T7TEN1

1    in making as good a presentation as you can in connection with

2    sentencing should lead you to scrupulously comply with these

3    conditions.  Beyond that though there is the risk that if you

4    don't comply, the government will move for your remand and I,

5    if I find a breach, will grant that.  That's the last place you

6    want to be in.  So, you are well advised to turn square corners

7    here, and if you have any doubt about whether something is

8    permissible, be in touch with your very able and dedicated

9    counsel to guide you before you do something.  Understood?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  All right.  I'm going to sign this.

12   Anything else with respect to bail?

13            MR. BHATIA:  No, your Honor.

14            THE COURT:  All right.  Now, in terms of the cosigner,

15   I have given a week to get the second cosigner.  Defense, what

16   you should do is arrange for the government to meet that person

17   soon so we don't need to adjourn that date.

18            Government, your role here is to determine whether the

19   person has moral suasion, whether they are an appropriate

20   cosigner, whether there is a risk to them of losing the

21   $25,000.  The fact that they may have had some business

22   arrangement with the defendant may in some sense factor into

23   the analysis.  It's not clear to me that it makes the person

24   less as opposed to a more suitable signatory.  It would be

25   surprising for a defendant to have a signatory with whom he had

K1T7TEN1

1    more detached -- more close ties -- and sometimes those include

2    financial ones.

3              MR. BHATIA:  Understood.

4              THE COURT:  All right.  Is there anything else I need

5    to take up other than the grand jury subpoena?

6              MR. GELFAND:  Logistically, just for within the

7    Southern District of New York, as far as the ankle bracelet and

8    things like that, where Mr. Teman has to go and when to get

9    that?  Florida?

10             THE COURT:  I think he should report to pretrial right

11   now, and they will guide him as to that.  Pretrial is in 500

12   Pearl.

13             MR. GELFAND:  OK.

14             THE COURT:  Anything else other than the grand jury

15   subpoena?

16             MR. BHATIA:  No, your Honor.

17             MR. GELFAND:  No, your Honor.

18             THE COURT:  All right.  So, we stand adjourned as it

19   relates to the criminal case.  We are now going to create a

20   separate transcript.

21             (Trial concluded)

22

23

24

25

A-1298.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
       UNITED STATES OF AMERICA,                   Verdict Sheet

                -v-                            S2 19 Cr. 696 (PAE)

       ARI TEMAN,

                          Defendant.
------------------------------------------------------------X

*All verdicts must be unanimous.  Please indicate your verdict with a check mark (✓).*

## COUNT ONE:
### Bank Fraud (April 2019 Checks)

GUILTY___✓___        NOT GUILTY_____

## COUNT TWO:
### Bank Fraud (March 2019 Checks)

GUILTY___✓___        NOT GUILTY_____

## COUNT THREE:
### Wire Fraud (April 2019 Checks)

GUILTY___✓___        NOT GUILTY_____

## COUNT FOUR:
### Wire Fraud (March 2019 Checks)

GUILTY___✓___        NOT GUILTY_____

1

A-1298.2

After completing the form, each juror must sign below, reflecting his or her agreement with the forgoing verdict.

_____
Foreperson

Dated:       01/29/2020

JURY NOTE 9

2

A-1299

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
            -v-                                                   :        19-CR-696 (PAE)
                                                                  :
ARI TEMAN,                                                        :        ORDER
                                                                  :
                        Defendant.                                :
                                                                  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Attached to this Order are the following Court Exhibits:

- Exhibit 1: The draft jury charge dated January 27, 2020.

- Exhibit 2: The final jury charge dated January 27, 2020.

- Exhibit 3: The witness list.

- Exhibit 4: The exhibit list.

- Exhibit 5: The trial indictment.

- Exhibit 6: The verdict form.

- Exhibit 7: The Government's powerpoint presentation used during their closing
  argument.

        SO ORDERED.

Dated: January 29, 2020
       New York, New York
                                                        _____
                                                        PAUL A. ENGELMAYER
                                                        United States District Judge

A-1300

**EXHIBIT 1**

A-1301

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                :

UNITED STATES OF AMERICA              :

              -v-                       :        19 Cr. 696 (PAE)

                                         :

ARI TEMAN,                              :

                         :

                       Defendant.     :

                                         :
--------------------------------------------------------------------X

**JURY CHARGE**

JANUARY 27, 2020
**[DRAFT FOR COUNSEL'S REVIEW]**

[1]

A-1302

CONTENTS

I.  **General Instructions** ........................................................................................ **4**
   A.  Introductory Remarks .................................................................................. 4
   B.  Role of the Court.......................................................................................... 4
   C.  Role of the Jury ........................................................................................... 5
   D.  Role of Counsel............................................................................................ 5
   E.  Sympathy or Bias ........................................................................................ 6
   F.  All Persons Equal Before the Law ............................................................... 7
   G.  Presumption of Innocence; Burden of Proof; Reasonable Doubt ................. 7
   H.  What Is and Is Not Evidence ....................................................................... 9
   I.  Direct and Circumstantial Evidence .......................................................... 10
   J.  Witness Credibility .................................................................................... 11
   K.  Bias of Witnesses ...................................................................................... 12
   L.  Prior Inconsistent or Consistent Statements ............................................. 13
   M.  Preparation of Witnesses............................................................................ 14
   N.  Stipulations of Fact ................................................................................... 14
   O.  Bank Records and Electronic Communications ......................................... 14
   P.  Particular Investigative Techniques Not Required ..................................... 15
   Q.  Uncalled Witness—Equally Available ...................................................... 15
   R.  Defendant's Testimony [if applicable] ...................................................... 16
   S.  Defendant's Right Not to Testify [if applicable] ....................................... 16
II.  **Substantive Instructions** ............................................................................... **17**
   A.  The Indictment .......................................................................................... 17
   B.  Summary of the Indictment ....................................................................... 17
   C.  Counts One and Two: Bank Fraud............................................................. 18
      1.  Element One: Existence of Scheme ................................................... 19
      2.  Element Two: Knowing and Willful Participation in the Scheme .............. 23
      3.  Element Three: Federally Insured Financial Institution ..................... 25
      4.  Attempt ............................................................................................. 25
   D.  Counts Three and Four: Wire Fraud .......................................................... 26
      1.  Element One: A Scheme to Defraud................................................... 28
      2.  Element Two: Knowing and Willful Participation in the Scheme .............. 28
      3.  Element Three: Use of Interstate Wires ............................................. 29
   E.  Unanimity .................................................................................................. 30

F.   Good Faith ................................................................................................. 31

G.   Advice of Counsel...................................................................................... 32

H.   Conscious Avoidance................................................................................. 33

I.    Variance in Dates and Amounts ................................................................ 34

J.    False Exculpatory Statements ................................................................... 35

K.   Venue ........................................................................................................ 35

**III. Deliberations of the Jury......................................................................... 36**

A.   Right to See Exhibits and Hear Testimony................................................ 36

B.   Communication with the Court .................................................................. 37

C.   Notes ......................................................................................................... 37

D.   Duty to Deliberate; Unanimous Verdict .................................................... 37

E.   Verdict Form............................................................................................. 38

F.   Duties of Foreperson................................................................................. 38

G.   Return of Verdict ...................................................................................... 39

**IV.  Conclusion .................................................................................................. 39**

A-1304

## I.    GENERAL INSTRUCTIONS

### A.    Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying.

### B.    Role of the Court

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

[4]

A-1305

### C.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts.  Any opinion I might have regarding the facts is of absolutely no consequence.

### D.      Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your business.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

[5]

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

### E.    Sympathy or Bias

Under your oath as jurors, you are not to be swayed by sympathy or prejudice. You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged. You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant. But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty for the defendant.

The question of possible punishment of the defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which

[6]

may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

**F.      All Persons Equal Before the Law**

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

**G.      Presumption of Innocence; Burden of Proof; Reasonable Doubt**

Now, I will instruct you on the presumption of innocence—the Government's burden of proof in this case. The defendant has pleaded not guilty. By doing so, he denies the charges in the Indictment. Thus, the Government has the burden of proving the charges against him beyond a reasonable doubt. A defendant does not have to prove his innocence. On the contrary, he is presumed to be innocent of the charges contained in the Indictment. This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout

[7]

the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

It is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally comes up is—what is a reasonable doubt?  The words almost define themselves.  It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence.  It is doubt that a reasonable person has after carefully weighing all the evidence.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, your common sense.  Reasonable doubt does not mean beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact which by its nature is not susceptible to mathematical certainty.  In consequence, the law in a criminal case is that it is sufficient if the guilt of the defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the guilt of the defendant, if you do not have an abiding conviction of the defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your duty to acquit the defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding belief of the defendant's guilt—such a belief as you would be willing to act upon without hesitation in important matters in the personal affairs of your own life—then you have no reasonable doubt, and under such circumstances it is your duty to convict the defendant.

[8]

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he has told you.

**H.    What Is and Is Not Evidence**

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the lawyers' questions.

[9]

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**I.      Direct and Circumstantial Evidence**

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably

[10]

A-1311

draw from other facts that have been proven. Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences. The defendant asks you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.      Witness Credibility**

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection when viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

[11]

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial is truthful in whole or in part.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying

[12]

A-1313

your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### L.    Prior Inconsistent or Consistent Statements

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendant, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have also heard evidence that certain witnesses made earlier statements that were consistent with their trial testimony. Such statements were admitted into evidence not as

[13]

independent evidence of guilt or innocence, but solely for whatever light they may shed on the witness's credibility.  If you find that a witness had a motive to testify as he did, but also that he told the same story before he had that motive, you may take that into account in deciding whether the witness's interest or motive colored his testimony.

### M.    Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation.  Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### N.    Stipulations of Fact

In this case, you have heard evidence in the form of stipulations of fact.  A stipulation of fact is an agreement between the parties that a certain fact is true.  You must regard such agreed-upon facts as true.  However, it is for you to determine the effect to be given to those facts.

### O.    Bank Records and Electronic Communications

Various bank records and other electronic communications, such as emails, have been admitted into evidence.  I instruct you that this evidence was obtained in a lawful manner and that no one's rights were violated, and a party's use of this evidence is entirely lawful.

[14]

Therefore, regardless of any personal opinions you may have regarding the obtaining of such evidence, you must give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant's guilt beyond a reasonable doubt. What significance you attach to this evidence is entirely your decision.

**P.     Particular Investigative Techniques Not Required**

During the trial, you have heard testimony of witnesses and argument by counsel that the Government did not utilize specific investigative techniques. You may consider these facts in deciding whether the Government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you also are instructed that there is no legal requirement that the Government use any of these specific investigative techniques to prove its case.

Whether you approve or disapprove of various law enforcement techniques, or whether you might have chosen to use or not use any particular technique, is not the question. Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

**Q.     Uncalled Witness—Equally Available**

Both the Government and the defendant have the same power to subpoena witnesses to testify on their behalf. If a potential witness could have been called by the Government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the Government or to the defendant or to both. On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

[15]

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence. You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**R.      Defendant's Testimony [if applicable]**

Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant's guilt beyond a reasonable doubt. A defendant is never required to prove that he is not guilty.

The defendant, Ari Teman, did testify in this case, and he was subject to cross-examination like any other witness. You should examine and evaluate his testimony just as you would the testimony of any other interested witness.

**S.      Defendant's Right Not to Testify [if applicable]**

The defendant, Ari Teman, did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Teman did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against him in any way in your deliberations.

[16]

## II.    SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions to you relating to the charges brought against the defendant in this case.

### A.    The Indictment

The defendant is formally charged in an Indictment.  As I instructed you at the outset of this case, the Indictment is merely a charge or accusation.  It is not evidence, and it does not prove or even indicate guilt.  As a result, you are to give it no weight in deciding the defendant's guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I have previously noted, the defendant is presumed innocent, and it is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

### B.    Summary of the Indictment

The Indictment contains four counts.  Each count is a separate offense or crime.  Each count must therefore be considered separately by you, and you must return a separate verdict on each count.

Counts One and Two of the Indictment charge the defendant with committing the offense of bank fraud.  Count One charges him with a bank fraud scheme committed between in or about April 2019 up to and including in or about June 2019.  Count Two charges him with a bank fraud scheme committed in or about March 2019.

Similarly, Counts Three and Four charge the defendant with two separate instances of wire fraud.  Count Three charges him with a wire fraud scheme committed between in or about April 2019 up to and including in or about June 2019.  Count Four charges him with committing a wire fraud scheme in or about March 2019.

I will now instruct you on the applicable law for each of the four counts.

[17]

### C.    Counts One and Two: Bank Fraud

As I said, Counts One and Two both charge the defendant with bank fraud, in violation of Title 18, United States Code, Section 1344. In other words, each count charges that the defendant devised a scheme to defraud a federally insured bank.

Count One charges the defendant with committing a bank fraud scheme in connection with the deposit in April 2019 of 27 checks, allegedly by creating, and then making the false pretense and representation to the bank that he had the account holders' authority to deposit, those checks. Count One of the Indictment reads:

> From at least in or about April 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks in the name of the three third parties (respectively, "Entity-1," "Entity-2," and "Entity-3") into an account held at a particular financial institution ("Financial Institution-1"), and subsequently attempted to and did use those funds for his personal benefit.

Count Two charges the defendant with committing a bank fraud scheme in connection with the deposit in March 2019 of two checks, again allegedly by creating, and then making the false pretense and representation to the bank that he had the account holders' authority to deposit, those checks. Count Two of the Indictment reads:

> In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks in the name of Entity-3 and another third party ("Entity-4") into an account held at Financial Institution-1, and subsequently attempted to and did use those funds for his personal benefit.

[18]

I instruct you that in connection with the Indictment, "Entity-1" refers to ABJ Milano LLC, operated by ABJ Properties; "Entity-2" refers to ABJ Lenox LLC, operated by ABJ Properties; "Entity-3" refers to 518 West 205 LLC, operated by Coney Realty; "Entity-4" refers to 18 Mercer Equity Inc., operated by Crystal Real Estate Management; and "Financial Institution-1" refers to Bank of America.

To find the defendant guilty of the crimes charged in Counts One and Two of the Indictment, the Government must establish each of the following elements beyond a reasonable doubt:

**First**, that there was a scheme or artifice to defraud a bank, as alleged in the Indictment; OR that there was a scheme or artifice to obtain money or other property owned by a financial institution by means of materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment;

**Second**, that the defendant knowingly and willfully executed or attempted to execute the scheme or artifice—that is, that the defendant acted with knowledge of the fraudulent nature of the scheme and with the specific intent to defraud the bank or to obtain, by deceiving the bank, money or other property owned or controlled by that bank; and

**Third**, that the deposits of the bank involved were, at the time of the scheme, insured by the Federal Deposit Insurance Corporation.

Now I will explain each of three elements of bank fraud in more detail.

1.       **Element One: Existence of Scheme**

The first element that the Government must prove beyond a reasonable doubt is that, on or about the dates set forth in the Indictment, (1) there was a scheme or artifice to defraud a bank; OR (2) there was a scheme or artifice to obtain money or other property owned by or under the

[19]

custody or control of such a bank, by means of false or fraudulent pretenses, representations, or promises that were material to the scheme.

The Government must prove the existence of only one of these schemes. These two concepts are not necessarily mutually exclusive. If you find that either one type of scheme or artifice or both existed, then the first element of bank fraud is satisfied. However, you must be unanimous in your view as to the type of scheme or artifice that existed. If half of you think (1), but not (2), and the other half think (2), but not (1), then you must vote to acquit the defendant.

### a. Scheme to Defraud a Bank

I will now explain what these terms mean and will begin with the key terms from (1), which requires the Government to prove beyond a reasonable doubt that there was a scheme or artifice to defraud a bank.

A "scheme or artifice" is a plan, device, or course of conduct to accomplish an objective.

"Fraud" is a general term. It is a term that includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestions, false pretenses, or concealment of the truth. The unfair advantage sought can involve can involve money, property, or anything of value.

Thus, a "scheme to defraud" a bank is a pattern or course of conduct concerning a material matter designed to deceive a federally insured bank into releasing money or property, with the intent to cause the bank to suffer an actual or potential loss. This term—"scheme to defraud"— thus embraces all dishonest means, however ingenious, clever, or crafty, by which a person seeks to trick another out of their property. For example, a scheme to defraud may be accomplished through trickery, deceit, deception, or swindle.

[20]

The Government does not need to show that the defendant's conduct actually caused the bank to release money or property, but rather only needs to show that the defendant's conduct was designed to deceive the bank into releasing money or property.

This defines a scheme or artifice to defraud a bank, the first type of scheme prohibited by the federal bank fraud statute. You may find that a scheme to defraud existed only if the Government has proven beyond a reasonable doubt the existence of the scheme alleged in the Indictment, which I read to you a few moments ago.

### b. Scheme to Obtain Money or Other Property Using False Pretenses

The second type of scheme charged, described at the beginning of this section as (2), is a scheme to obtain money or other property owned by, or under the custody and control of, a bank by means of false or fraudulent pretenses, representations, or promises. As to this type of scheme, the Government must show that false and fraudulent pretenses, representations, or promises were employed, and that they were directed at the bank with the intention of deceiving it.

This brings me to false and fraudulent pretenses, representations, or promises. A representation is fraudulent if it was made falsely with the intent to deceive. The deceptive means that are prohibited are not limited to active misrepresentations or lies told to the bank. Just as affirmatively stating facts as true when the facts are not true may constitute a false representation, the law recognizes that false representation need not be based on spoken words alone. The deception may arise from the intentional omission or concealment of facts that make what was written, said, or done deliberately misleading. The arrangement of the words, or the circumstances in which they are used, may convey a false and deceptive appearance. Accordingly, the misrepresentation may be written, oral, or arise from a course of conduct intended to communicate

[21]

false facts to the bank. If there is intentional deception, the manner in which it is accomplished does not matter.

These false representations must be "material," which is a term that I will define momentarily. In short, it does not matter whether any decision makers at the bank actually relied upon the misrepresentation. It is sufficient if the misrepresentation is one that is capable of influencing the bank's decision and is intended by the defendant to do so.

### c. *Concepts Applying to Both Schemes*

Let me repeat again that there are two ways the Government may satisfy this first element beyond a reasonable doubt: first, by proving that there was a scheme to defraud a bank; or second, by proving that there was a scheme to obtain money or other property owned by, or under the custody or control of, the bank by false or fraudulent pretenses, representations, or promises.

I have referred, in the context of both ways the Government may satisfy this first element, to a "materiality" requirement. We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance. A "material" fact is one which would reasonably be expected to be of concern to a reasonable and prudent person relying on the representation or statement in making a decision. This means that if you find a particular statement of fact made by the defendant to have been false, you must then determine whether that statement of fact was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

The Government need not prove an actual loss of funds by the bank. Nor is it necessary for the Government to establish that the defendant actually realized any gain from the scheme. The success of a scheme to defraud is irrelevant. What matters is whether there existed a scheme

A-1323

to defraud. The bank fraud statute prohibits successfully defrauding a financial institution as well as attempts to do so. You must concentrate on whether there was such a scheme.

It does not matter whether the bank involved might have discovered the fraud had it probed further, or been more careful. If you find that a scheme or artifice existed, it is irrelevant whether you believe that the bank was careless, gullible, or even negligent.

Finally, in order to establish the existence of a scheme, the Government is not required to establish that the defendant himself started the scheme to defraud. It is sufficient if you find that a scheme to defraud existed, even if initiated by another.

If you find that the Government has sustained its burden of proof that a scheme to defraud a bank or to obtain money by false pretenses did exist, as charged, you next should consider the second element.

### 2.    Element Two: Knowing and Willful Participation in the Scheme

The second element that the Government must establish beyond a reasonable doubt is that the defendant executed or attempted to execute the scheme knowingly, willfully, and with the intent to defraud the bank, or to obtain money or other property owned by the bank or under the bank's custody or control.

A person acts "knowingly" when he acts voluntarily and deliberately, rather than mistakenly or inadvertently.

A person acts "willfully" when he acts knowingly and purposefully, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or disregard the law. It is not necessary that the defendant knew he was violating a particular law. It is enough if you find that he was aware that what he was doing was, in general, unlawful.

[23]

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial loss to another.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other question of fact. Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

Accordingly, the ultimate facts of knowledge and criminal intent may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, all the surrounding circumstances disclosed by the evidence, and the rational or logical inferences that may be drawn from the evidence. Use your common sense. But regardless of whether you look to direct evidence, circumstantial evidence, or a combination thereof, the government must establish the essential elements of the crime charged beyond a reasonable doubt—including the requisite mental states.

The Government must prove beyond a reasonable doubt that the defendant participated in the alleged scheme with an understanding of its fraudulent or deceptive character and with the intent to help it succeed. There are certain things the Government need not prove in order to meet that burden. It need not prove that the defendant participated in, or even knew about, all the operations of the scheme. It need not prove that the defendant originated the scheme, or participated in it from its inception, since a person who participates in a scheme after it begins is just as guilty as those who participated from the beginning, as long as he becomes aware of the scheme's general purpose and operation and acts intentionally to further its unlawful goal or goals. It need not prove that the defendant participated in the scheme to the same degree as other

[24]

participants. Finally, the Government need not prove actual or potential loss to the bank, so long as there is evidence that the defendant intended to expose the bank to such loss.

### 3. Element Three: Federally Insured Financial Institution

The third and final element that the Government must prove beyond a reasonable doubt is that the bank that was the subject of the defendant's scheme or artifice was a federally insured financial institution. This simply means that the bank's deposits had to be insured by the Federal Deposit Insurance Corporation.

The Government need not show that the defendant <u>knew</u> that the bank in question was federally insured to satisfy this third element. It must prove, however, that the defendant intended to defraud a financial institution.

### 4. Attempt

The bank fraud statute prohibits not only successful defrauding of a financial institution, but also attempting, which means trying to do so. Thus, the Government is required to prove only that the defendant attempted, or tried, to execute the alleged scheme or artifice; there is no need for the Government to prove that the defendant was successful in this endeavor.

In order to prove that the defendant attempted bank fraud or wire fraud, the evidence must show beyond a reasonable doubt that (1) the defendant intended to commit the bank fraud, and (2) the defendant willfully took some action that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt. In order to convict the defendant of an attempt, you must find beyond a reasonable doubt both that he intended to commit the crime of bank fraud, and that he took some action that was a substantial step towards the commission of that crime.

[25]

Merely preparing to commit a crime is not the same thing as taking a substantial step toward the commission of the crime. The defendant must go beyond simply preparing and perform an act that confirms his intention to execute the scheme. The Government does not have to prove that the defendant did everything except take the last step necessary to complete the scheme. Any substantial step beyond mere preparation is enough.

### D.    Counts Three and Four: Wire Fraud

That concludes my review of the elements of bank fraud. I will now turn to Counts Three and Four, both of which charge the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

Count Three charges the defendant with a wire fraud scheme in connection with the deposit in April 2019 of the 27 checks which are the subject of Count One, allegedly by creating, and then making the false pretense and representation to the bank that the defendant had the account holders' authorization to deposit, those checks. Count Three charges—and again I am reading from the Indictment—that:

> From at least in or about April 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willingly and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing on funds from accounts belonging to "Entity-1," "Entity-2," and "Entity-3" and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

Count Four charges the defendant with a wire fraud scheme in connection with the deposit in March 2019 of the two checks which are the subject of Count Two, allegedly by creating, and then making the false pretense and representation to the bank that the defendant had the account

[26]

holders' authorization to deposit, those checks. Count Four charges—again reading from the Indictment—that:

> In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to Entity-3 and Entity-4 and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

Earlier, I instructed you about who the terms "Entity-1," "Entity-2," "Entity-3," and "Entity-4," as used in Counts One and Two, refer to. Those instructions apply equally to Counts Three and Four.

I will now turn to the elements of wire fraud. In order to prove the defendant guilty of wire fraud in both Counts Three and Four, the Government must establish each of the following three elements beyond a reasonable doubt:

**First**, that there was a scheme or artifice to defraud, <u>OR</u> to obtain money or property by materially false or fraudulent pretenses, representations, or promises;

**Second**, that the defendant knowingly and willfully devised or participated in the scheme or artifice to defraud, with knowledge of the fraudulent nature of the scheme and with the specific intent to defraud; and

**Third**, in execution of that scheme, the defendant used or caused others to use interstate or foreign wires as specified in the Indictment.

My instructions as to Counts One and Two, the bank fraud counts, cover a number of concepts relevant to Counts Three and Four. And so, my instructions as to Counts Three and Four will be brief.

[27]

### 1.    Element One: A Scheme to Defraud

The first element that the Government must prove, beyond a reasonable doubt, is that there was a scheme to defraud or to obtain money or property. I have already instructed you in connection with Counts One and Two what it means to employ a scheme or artifice to defraud. Those instructions apply here as well.

The scheme that the Government alleges in Count Three is the same scheme involving the defendant's depositing of 27 checks in April 2019, which is the subject of Count One. To find the first element as to Count Three, you must therefore find that the scheme had as an object the use of the funds from these checks for the defendant's personal benefit.

Similarly, the scheme the Government alleges in Count Four is the same scheme involving the defendant's depositing of 2 checks in March 2019, which is the subject of Count Two. To find the first element as to Count Four, you must therefore find that the scheme had as an object the use of the funds from these checks for the defendant's personal benefit.

### 2.    Element Two: Knowing and Willful Participation in the Scheme

The second element that the Government must prove, beyond a reasonable doubt, is that the defendant devised or participated in the scheme knowingly, willfully, and with a specific intent to defraud. I have already defined knowingly, willfully, and with a specific intent to defraud, and my earlier instructions apply here as well. I will quickly define a few additional terms as to this element.

To "devise" a scheme to defraud is to concoct or plan it.

To "participate" in a scheme to defraud means to associate oneself with it, with the intent of making it succeed.

[28]

3.    **Element Three: Use of Interstate Wires**

The third and final element of the wire fraud charge is that the Government must establish beyond a reasonable doubt that interstate or foreign wires were used in furtherance of the scheme to defraud.

"Wires" includes telephone calls, faxes, email, Internet, radio, or television communication. The use of the wires must be between states or between the United States and another country. The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London. The Government is not required, however, to prove that a defendant knew or could foresee the interstate or international nature of the wire communication.

The use of the wires need not itself be fraudulent. Stated another way, the communication need not contain any fraudulent representation. To be in furtherance of the scheme, the wire communication must be incident to an essential part of the scheme to defraud and must have been caused by the defendant. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud or the scheme to obtain money by means of false representations.

It is not necessary for the defendant to be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. This does not mean that the defendant must have specifically authorized others to execute a wire communication. Rather, when one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the

[29]

wires can reasonably be foreseen, even if not actually intended, then he causes the wires to be used.

The Government must prove beyond a reasonable doubt the particular use of the wires on which the Indictment is based. Here, the wire fraud counts are based on wire communications related to the defendant's depositing of alleged counterfeit checks. To convict the defendant on Counts Three and Four, you must unanimously agree on a particular one of these wires and that it was in furtherance of the charged wire-fraud scheme.

However, the Government does not have to prove that the wire was used on the exact date charged. It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date reasonably near the date alleged.

E.      Unanimity

This concludes my review of the elements of wire fraud. I have a few final substantive instructions that are not particular to a specific count.

The first relates to the requirement that the jury verdict be unanimous.

Each of the four counts in the Indictment charges the defendant with an offense—either bank fraud or wire fraud—involving multiple checks drawn on the accounts of multiple entities. Thus, Counts One and Three allege these respective offenses in connection with the defendant's alleged deposit of 27 checks, each drawn on the account of one of three entities: ABJ Milano LLC; ABJ Lenox LLC; and 518 West 205 LLC. And Counts Two and Four allege these respective offenses in connection with the defendant's alleged deposit of two checks, one drawn on the account of 518 West 205 LLC; and the other drawn on the account of 18 Mercer Equity Inc.

As to each count, I instruct you that the Government need not prove, and you need not find, that the elements of the offense in question have been met with respect to each of the checks or

[30]

A-1331

each of the entities to which that count relates. However, to convict the defendant of a particular count, you must unanimously agree that the elements of the offense in question have been established, beyond a reasonable doubt, with respect to at least one entity to which that count relates. So, for example, on Count Two, you may not return a verdict of guilty unless you unanimously agree that the elements of bank fraud have been established with respect to one of the two entities, 518 West 205 LLC or 18 Mercer Equity Inc., to which that count relates. If half of the jury found that the elements of bank fraud had been established with respect to the check drawn on the account of 518 West 205 LLC, and the other half of the jury found that the elements of bank fraud had been established with respect to 18 Mercer Equity Inc., but the jury was not in unanimous agreement as to either entity, you could not return a verdict of guilty.

### F.    Good Faith

An essential element of the crimes of bank fraud and wire fraud as charged in Counts One through Four of the Indictment is intent to defraud. It follows that good faith on the part of the defendant is an absolute defense to a charge of fraud. The burden of establishing lack of good faith and criminal intent rests upon the prosecution. A defendant is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.

Under the bank fraud and wire fraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there is no crime.

[31]

A-1332

A venture commenced in good faith may become fraudulent if it is continued after a fraudulent intent has been formed. Therefore, good faith is no defense when the defendant first made representations in good faith but later, during the time charged in the Indictment, the defendant realized that the representations were false and nevertheless deliberately continued to make them. You must review and put together all the circumstances in deciding whether or not it has been established beyond a reasonable doubt that the defendant devised or participated in a scheme to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

There is a final consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. If the defendant participated in the scheme for the purpose of causing financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme will cause ultimately make a profit or cause no harm will excuse fraudulent actions or false representations by him.

### G.    Advice of Counsel

You have heard evidence that the defendant received advice from a lawyer, Ariel Reinitz. You may consider that evidence in deciding whether the defendant acted knowingly, willfully, and with a specific intent to defraud.

The mere fact that the defendant may have received legal advice does not, in itself, necessarily constitute a complete defense to the charges of bank fraud and wire fraud. Instead, you must ask yourselves whether the defendant honestly and in good faith sought the advice of a

[32]

competent lawyer as to what he may lawfully do; whether he fully and honestly laid all the facts before his lawyer; and whether in good faith he honestly followed such advice, relying on it and believing it to be correct. In short, you should consider whether, in seeking and obtaining advice from a lawyer, the defendant intended that his acts shall be lawful. If he did so, it is the law that a defendant cannot be convicted of a crime that involves willful and unlawful intent, even if such advice were an inaccurate construction of the law.

On the other hand, no man can willfully and knowingly violate the law and excuse himself from the consequences of his conduct by pleading that he followed the advice of his lawyer.

Whether the defendant acted in good faith for the purpose of seeking guidance as to the specific acts in this case, and whether he made a full and complete report to his lawyer, and whether he acted substantially in accordance with the advice received, are questions for you to determine.

### H.    Conscious Avoidance

I told you earlier that the defendant must have acted knowingly, as I have defined that term, in order to be convicted. That is true with respect to all four counts charged in the Indictment. In determining whether the defendant acted knowingly, you may consider whether the defendant closed his eyes to what would have otherwise been obvious to him. That is what the phrase "conscious avoidance" refers to.

As I have told you before, acts done knowingly must be a product of a person's conscious intention. They cannot be the result of carelessness, negligence, or foolishness. But a person may not intentionally remain ignorant of a fact that is material and important to his conduct in order to escape the consequences of the criminal law.

Here, the Government argues that the defendant consciously avoided material information insofar as he did not invoice or otherwise notify his customers, in advance of his drawing and

[33]

A-1334

depositing checks on their accounts in March and April 2019, of his claim that they owed his business money in the amounts reflected on those checks. The Government alleges that the defendant was thereby closing his eyes to the fact that the customers did not approve and would not have approved these charges. The defendant disputes that he consciously avoided learning such information. He argues that he believed in good faith that the customers had given him advance approval for these charges, and also advance approval to remotely create checks on their accounts as a means of paying the debts that they owed him.

As to this point, I instruct you as follows. An argument by the Government of conscious avoidance is not a substitute for proof of knowledge; it is simply another factor that you, the jury, may consider in deciding what the defendant knew. Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that a fact was so, but that the defendant deliberately avoided confirming this fact, such as by purposely closing his eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

In sum, if you find that the defendant believed there was a high probability that a fact was so and that the defendant deliberately and consciously avoided learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact. However, if you find that the defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact. You must judge from all the circumstances and all the proof whether the Government did or did not satisfy its burden of proof beyond a reasonable doubt.

## I.    Variance in Dates and Amounts

The Indictment refers to a range of dates and monetary amounts. I instruct you that it does not matter if a specific event is alleged to have occurred on or about a certain date, but the

[34]

testimony indicates that in fact it was a different date.  Likewise, it does not matter if a transaction is alleged to have involved a certain amount of money, but the testimony indicates that in fact it was a different amount of money.  The law requires only a substantial similarity between the dates and amounts alleged in the Indictment and the dates and amounts established by the evidence.

**J.     False Exculpatory Statements**

You have heard testimony that the defendant made statements in which he claimed that his conduct was consistent with innocence and not with guilt.  The Government claims that these statements in which the defendant exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may infer, but you are not required to infer, that the defendant believed that he was guilty.  You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged.

Whether or not the evidence as to the defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

**K.     Venue**

In addition to the elements I have described for you, in order to convict on each charged offense, you must decide whether the crime occurred within the Southern District of New York.  The Southern District of New York includes Manhattan, the Bronx, Westchester County, as well as other areas.  In this regard, the Government need not prove that the crime was committed in its entirety in this District or that the defendant himself was present here.  It is sufficient to satisfy this element if any act in furtherance of the crime occurred in this District.  The act itself may not be a criminal act.  It could include, for example, executing a financial transaction within this District.

[35]

And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed.

I should note that on this issue—and this issue alone—the Government need not offer proof beyond a reasonable doubt. Venue need be proven only by a preponderance of the evidence. The Government has satisfied its venue obligations, therefore, if you conclude that it is more likely than not that the crime occurred within this District.

If you find that the Government has failed to prove this venue requirement, you must acquit the defendant of these charges.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a copy of these instructions. There is one of each of these for each juror. I am also providing you with a copy of the Indictment. I remind you that the Indictment is not evidence.

[36]

**B.    Communication with the Court**

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**C.    Notes**

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony to have been, you can ask to have the transcript read back.

**D.    Duty to Deliberate; Unanimous Verdict**

You will now retire to decide the case. Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions

[37]

A-1338

dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room. If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands. If you reach a verdict do not report what it is until you are asked in open court.

### E.    Verdict Form

I have prepared a verdict form for you to use in guiding your deliberation and recording your decision. Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson. The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

[38]

A-1339

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have me give to you or anything I may not have covered in my previous statement.

* * * * *

Before you retire into the jury room I must excuse our two alternates with the thanks of the Court. You have been very attentive and very patient. I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case. So before

[39]

the rest of the jury retires into the jury room, if you have any clothing or objects there, you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone, or research the case, over the next few days. It is possible, and I have had this occur in a trial, that unexpected developments such as a juror's serious illness, may require the substitution of a deliberating juror by an alternate. And so it's vital that you not speak to anyone about the case or research the case until you have been notified that the jury's deliberations are over and the jury has been excused. And if you would like to be advised of the outcome of the trial, please make sure that Mr. Smallman has a phone number at which you can be reached.

(Alternates excused)

Members of the jury, you may now retire. The marshal will be sworn before we retire.

(Marshal sworn)

A-1341

**EXHIBIT 2**

A-1342

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
UNITED STATES OF AMERICA                                        :
                                                                :
                          -v-                                   :        S2 19 Cr. 696 (PAE)
                                                                :
ARI TEMAN,                                                      :
                                                                :
                                   Defendant.                   :
                                                                :
----------------------------------------------------------------X

**J**URY **C**HARGE

J**ANUARY** 27, 2020
[**FINAL**]

[1]

CONTENTS

I.  General Instructions ........................................................................................... 4
   A.  Introductory Remarks ................................................................................... 4
   B.  Role of the Court............................................................................................ 4
   C.  Role of the Jury.............................................................................................. 5
   D.  Role of Counsel.............................................................................................. 5
   E.  Sympathy or Bias .......................................................................................... 6
   F.  All Persons Equal Before the Law ................................................................ 7
   G.  Presumption of Innocence; Burden of Proof; Reasonable Doubt ................ 7
   H.  What Is and Is Not Evidence ........................................................................ 9
   I.  Direct and Circumstantial Evidence .......................................................... 10
   J.  Witness Credibility ..................................................................................... 11
   K.  Bias of Witnesses........................................................................................ 12
   L.  Prior Inconsistent or Consistent Statements .............................................. 13
   M.  Preparation of Witnesses............................................................................. 14
   N.  Stipulations of Fact ..................................................................................... 14
   O.  Bank Records and Electronic Communications ......................................... 14
   P.  Particular Investigative Techniques Not Required ..................................... 15
   Q.  Uncalled Witness—Equally Available ....................................................... 15
   R.  Defendant's Right Not to Testify................................................................ 16
II.  Substantive Instructions.................................................................................. 16
   A.  The Indictment ............................................................................................ 16
   B.  Summary of the Indictment ........................................................................ 17
   C.  Counts One and Two: Bank Fraud.............................................................. 17
      1.  Element One: Existence of Scheme...................................................... 19
      2.  Element Two: Knowing and Willful Participation in the Scheme ............... 23
      3.  Element Three: Federally Insured Financial Institution ...................... 24
      4.  Attempt ................................................................................................. 25
   D.  Counts Three and Four: Wire Fraud ........................................................... 26
      1.  Element One: A Scheme to Defraud..................................................... 27
      2.  Element Two: Knowing and Willful Participation in the Scheme ............... 28
      3.  Element Three: Use of Interstate Wires ............................................... 28
   E.  Unanimity .................................................................................................... 30
   F.  Good Faith ................................................................................................... 31

[2]

G.    Advice of Counsel................................................................................................ 32

H.    Conscious Avoidance.......................................................................................... 33

I.    Variance in Dates and Amounts ......................................................................... 34

J.    False Exculpatory Statements ............................................................................ 35

K.    Venue .................................................................................................................. 35

**III. Deliberations of the Jury**............................................................................................ **36**

A.    Right to See Exhibits and Hear Testimony ........................................................ 36

B.    Communication with the Court........................................................................... 37

C.    Notes ................................................................................................................... 37

D.    Duty to Deliberate; Unanimous Verdict ............................................................ 37

E.    Verdict Form ....................................................................................................... 38

F.    Duties of Foreperson .......................................................................................... 38

G.    Return of Verdict ................................................................................................ 39

**IV. Conclusion** ................................................................................................................... **39**

## I.    GENERAL INSTRUCTIONS

### A.    Introductory Remarks

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case.  There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.

### B.    Role of the Court

I have instructed you during the trial as to various matters, and you should of course continue to follow those instructions.  My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that

[4]

you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

### C.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts. Any opinion I might have regarding the facts is of absolutely no consequence.

### D.     Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. It is my job to rule on those objections. Therefore, why an objection was made or why I ruled on it the way I did is not your business. You should draw no inference from the fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

[5]

A-1347

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

**E.      Sympathy or Bias**

Under your oath as jurors, you are not to be swayed by sympathy or prejudice. You are to be guided solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the defendant is guilty of the crimes charged. You must decide solely on the basis of the evidence presented, subject to the law as I explain it to you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal for the defendant. But on the other hand, if you should find that the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty for the defendant.

The question of possible punishment of the defendant is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which

[6]

may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

### F.    All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less deference. The Government and the defendant stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, sex, or age. All persons are entitled to the same presumption of innocence, and the Government has the same burden of proof with respect to all persons. Your verdict must be based solely on the evidence or the lack of evidence.

### G.    Presumption of Innocence; Burden of Proof; Reasonable Doubt

Now, I will instruct you on the presumption of innocence—the Government's burden of proof in this case. The defendant has pleaded not guilty. By doing so, he denies the charges in the Indictment. Thus, the Government has the burden of proving the charges against him beyond a reasonable doubt. A defendant does not have to prove his innocence. On the contrary, he is presumed to be innocent of the charges contained in the Indictment. This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout

[7]

A-1349

the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

It is removed if and only if you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally comes up is—what is a reasonable doubt? The words almost define themselves. It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence. It is doubt that a reasonable person has after carefully weighing all the evidence. Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, your common sense. Reasonable doubt does not mean beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact which by its nature is not susceptible to mathematical certainty. In consequence, the law in a criminal case is that it is sufficient if the guilt of the defendant is established beyond a reasonable doubt, not beyond all possible doubt.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the guilt of the defendant, if you do not have an abiding conviction of the defendant's guilt—in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your duty to acquit the defendant.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding belief of the defendant's guilt—such a belief as you would be willing to act upon without hesitation in important matters in the personal affairs of your own life—then you have no reasonable doubt, and under such circumstances it is your duty to convict the defendant.

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he has told you.

**H.        What Is and Is Not Evidence**

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties.

However, testimony that I have stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

As I told you at the start of this case, statements and arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the lawyers' questions.

[9]

A-1351

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

### I.    Direct and Circumstantial Evidence

Generally, as I mentioned at the start of the case, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably

[10]

A-1352

draw from other facts that have been proven. Many material facts—such as what a person was thinking or intending—can rarely be proved by direct evidence.

Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences. The defendant asks you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.      Witness Credibility**

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection when viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

[11]

A-1353

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety.  On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case.  A witness may be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you?  It is for you to say whether his or her testimony at this trial is truthful in whole or in part.

### K.    Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.  You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying

[12]

A-1354

your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**L.    Prior Inconsistent or Consistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendant, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have also heard evidence that certain witnesses made earlier statements that were consistent with their trial testimony. Such statements were admitted into evidence not as

[13]

A-1355

independent evidence of guilt or innocence, but solely for whatever light they may shed on the witness's credibility. If you find that a witness had a motive to testify as he did, but also that he told the same story before he had that motive, you may take that into account in deciding whether the witness's interest or motive colored his testimony.

### M.  Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### N.  Stipulations of Fact

In this case, you have heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true. However, it is for you to determine the effect to be given to those facts.

### O.  Bank Records and Electronic Communications

Various bank records and other electronic communications, such as emails, have been admitted into evidence. I instruct you that this evidence was obtained in a lawful manner and that no one's rights were violated, and a party's use of this evidence is entirely lawful.

[14]

Therefore, regardless of any personal opinions you may have regarding the obtaining of such evidence, you must give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved the defendant's guilt beyond a reasonable doubt. What significance you attach to this evidence is entirely your decision.

### P.    Particular Investigative Techniques Not Required

During the trial, you have heard testimony of witnesses bearing on the investigative techniques used in this case. You may consider these facts in deciding whether the Government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you also are instructed that there is no legal requirement that the Government use any of these specific investigative techniques to prove its case.

Whether you approve or disapprove of various law enforcement techniques, or whether you might have chosen to use or not use any particular technique, is not the question. Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

### Q.    Uncalled Witness—Equally Available

Both the Government and the defendant have the same power to subpoena witnesses to testify on their behalf. If a potential witness could have been called by the Government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the Government or to the defendant or to both. On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

[15]

A-1357

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence. You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

### R.    Defendant's Right Not to Testify

The defendant, Ari Teman, did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Teman did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against him in any way in your deliberations.

## II.    SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions to you relating to the charges brought against the defendant in this case.

### A.    The Indictment

The defendant is formally charged in an Indictment. As I instructed you at the outset of this case, the Indictment is merely a charge or accusation. It is not evidence, and it does not prove or even indicate guilt. As a result, you are to give it no weight in deciding the defendant's guilt or lack of guilt. What matters is the evidence you heard at this trial. Indeed, as I have previously

[16]

noted, the defendant is presumed innocent, and it is the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt.

**B.    Summary of the Indictment**

The Indictment contains four counts.  Each count is a separate offense or crime.  Each count must therefore be considered separately by you, and you must return a separate verdict on each count.

Counts One and Two of the Indictment charge the defendant with committing the offense of bank fraud.  Count One charges him with a bank fraud scheme committed between in or about April 2019 up to and including in or about June 2019.  Count Two charges him with a bank fraud scheme committed in or about March 2019.

Similarly, Counts Three and Four charge the defendant with two separate instances of wire fraud.  Count Three charges him with a wire fraud scheme committed between in or about April 2019 up to and including in or about June 2019.  Count Four charges him with committing a wire fraud scheme in or about March 2019.

I will now instruct you on the applicable law for each of the four counts.

**C.    Counts One and Two: Bank Fraud**

As I said, Counts One and Two both charge the defendant with bank fraud, in violation of Title 18, United States Code, Section 1344.  In other words, each count charges that the defendant devised a scheme to defraud a federally insured bank.

Count One charges the defendant with committing a bank fraud scheme in connection with the deposit in April 2019 of 27 checks, allegedly by creating, and then making the false pretense and representation to the bank that he had the account holders' authority to deposit, those checks. Count One of the Indictment reads:

[17]

> From at least in or about April 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks in the name of three third parties (respectively, "Entity-1," "Entity-2," and "Entity-3") into an account held at a particular financial institution ("Financial Institution-1"), and subsequently attempted to and did use those funds for his personal benefit.

Count Two charges the defendant with committing a bank fraud scheme in connection with the deposit in March 2019 of two checks, again allegedly by creating, and then making the false pretense and representation to the bank that he had the account holders' authority to deposit, those checks. Count Two of the Indictment reads:

> In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TEMAN deposited counterfeit checks in the name of Entity-3 and another third party ("Entity-4") into an account held at Financial Institution-1, and subsequently attempted to and did use those funds for his personal benefit.

I instruct you that in connection with the Indictment, "Entity-1" refers to ABJ Milano LLC, operated by ABJ Properties; "Entity-2" refers to ABJ Lenox LLC, operated by ABJ Properties; "Entity-3" refers to 518 West 204 LLC, operated by Coney Realty; "Entity-4" refers to 18 Mercer Equity Inc., operated by Crystal Real Estate Management; and "Financial Institution-1" refers to Bank of America.

To find the defendant guilty of the crimes charged in Counts One and Two of the Indictment, the Government must establish each of the following elements beyond a reasonable doubt:

[18]

A-1360

**First**, that there was a scheme or artifice to defraud a bank, as alleged in the Indictment; OR that there was a scheme or artifice to obtain money or other property owned by a financial institution by means of materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment;

**Second**, that the defendant knowingly and willfully executed or attempted to execute the scheme or artifice—that is, that the defendant acted with knowledge of the fraudulent nature of the scheme and with the specific intent to defraud the bank or to obtain, by deceiving the bank, money or other property owned or controlled by that bank; and

**Third**, that the deposits of the bank involved were, at the time of the scheme, insured by the Federal Deposit Insurance Corporation.

Now I will explain each of three elements of bank fraud in more detail.

### 1.    Element One: Existence of Scheme

The first element that the Government must prove beyond a reasonable doubt is that, on or about the dates set forth in the Indictment, (1) there was a scheme or artifice to defraud a bank; OR (2) there was a scheme or artifice to obtain money or other property owned by or under the custody or control of such a bank, by means of false or fraudulent pretenses, representations, or promises that were material to the scheme.

The Government must prove the existence of only one of these schemes. These two concepts are not necessarily mutually exclusive. If you find that either one type of scheme or artifice or both existed, then the first element of bank fraud is satisfied. However, you must be unanimous in your view as to at least one type of scheme or artifice that existed. If half of you think (1), but not (2), and the other half think (2), but not (1), then you **must** vote to acquit the defendant.

[19]

### a.  Scheme to Defraud a Bank

I will now explain what these terms mean and will begin with the key terms from (1), which requires the Government to prove beyond a reasonable doubt that there was a scheme or artifice to defraud a bank.

A "scheme or artifice" is a plan, device, or course of conduct to accomplish an objective.

"Fraud" is a general term.  It is a term that includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestions, false pretenses, or concealment of the truth.  The unfair advantage sought can involve can involve money, property, or anything of value.

Thus, a "scheme to defraud" a bank is a pattern or course of conduct concerning a material matter designed to deceive a federally insured bank into releasing money or property, with the intent to cause the bank to suffer an actual or potential loss.  This term—"scheme to defraud"—thus embraces all dishonest means, however ingenious, clever, or crafty, by which a person seeks to trick another out of their property.  For example, a scheme to defraud may be accomplished through trickery, deceit, deception, or swindle.

The Government does not need to show that the defendant's conduct actually caused the bank to release money or property, but rather only needs to show that the defendant's conduct was designed to deceive the bank into releasing money or property.

This defines a scheme or artifice to defraud a bank, the first type of scheme prohibited by the federal bank fraud statute.  You may find that a scheme to defraud existed only if the Government has proven beyond a reasonable doubt the existence of the scheme alleged in the Indictment, which I read to you a few moments ago.

[20]

### b. *Scheme to Obtain Money or Other Property Using False Pretenses*

The second type of scheme charged, described at the beginning of this section as (2), is a scheme to obtain money or other property owned by, or under the custody and control of, a bank by means of false or fraudulent pretenses, representations, or promises. As to this type of scheme, the Government must show that false and fraudulent pretenses, representations, or promises were employed, and that they were directed at the bank with the intention of deceiving it.

This brings me to false and fraudulent pretenses, representations, or promises. A representation is fraudulent if it was made falsely with the intent to deceive. The deceptive means that are prohibited are not limited to active misrepresentations or lies told to the bank. Just as affirmatively stating facts as true when the facts are not true may constitute a false representation, the law recognizes that false representation need not be based on spoken words alone. The deception may arise from the intentional omission or concealment of facts that make what was written, said, or done deliberately misleading. The arrangement of the words, or the circumstances in which they are used, may convey a false and deceptive appearance. Accordingly, the misrepresentation may be written, oral, or arise from a course of conduct intended to communicate false facts to the bank. If there is intentional deception, the manner in which it is accomplished does not matter.

These false representations must be "material," which is a term that I will define momentarily. In short, it does not matter whether any decision makers at the bank actually relied upon the misrepresentation. It is sufficient if the misrepresentation is one that is capable of influencing the bank's decision and is intended by the defendant to do so.

[21]

A-1363

### c. Concepts Applying to Both Schemes

Let me repeat again that there are two ways the Government may satisfy this first element beyond a reasonable doubt: first, by proving that there was a scheme to defraud a bank; or second, by proving that there was a scheme to obtain money or other property owned by, or under the custody or control of, the bank by false or fraudulent pretenses, representations, or promises.

I have referred, in the context of both ways the Government may satisfy this first element, to a "materiality" requirement. We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance. A "material" fact is one which would reasonably be expected to be of concern to a reasonable and prudent person relying on the representation or statement in making a decision. This means that if you find a particular statement of fact made by the defendant to have been false, you must then determine whether that statement of fact was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

The Government need not prove an actual loss of funds by the bank. Nor is it necessary for the Government to establish that the defendant actually realized any gain from the scheme. The success of a scheme to defraud is irrelevant. What matters is whether there existed a scheme to defraud. The bank fraud statute prohibits successfully defrauding a financial institution as well as attempts to do so. You must concentrate on whether there was such a scheme.

It does not matter whether the bank involved might have discovered the fraud had it probed further, or been more careful. If you find that a scheme or artifice existed, it is irrelevant whether you believe that the bank was careless, gullible, or even negligent.

[22]

Finally, in order to establish the existence of a scheme, the Government is not required to establish that the defendant himself started the scheme to defraud. It is sufficient if you find that a scheme to defraud existed, even if initiated by another.

If you find that the Government has sustained its burden of proof that a scheme to defraud a bank or to obtain money by false pretenses did exist, as charged, you next should consider the second element.

### 2.    Element Two: Knowing and Willful Participation in the Scheme

The second element that the Government must establish beyond a reasonable doubt is that the defendant executed or attempted to execute the scheme knowingly, willfully, and with the intent to defraud the bank, or to obtain money or other property owned by the bank or under the bank's custody or control.

A person acts "knowingly" when he acts voluntarily and deliberately, rather than mistakenly or inadvertently.

A person acts "willfully" when he acts knowingly and purposefully, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or disregard the law. It is not necessary that the defendant knew he was violating a particular law. It is enough if you find that he was aware that what he was doing was, in general, unlawful.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial loss to another.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other question of fact. Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown

that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

Accordingly, the ultimate facts of knowledge and criminal intent may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, all the surrounding circumstances disclosed by the evidence, and the rational or logical inferences that may be drawn from the evidence. Use your common sense. But regardless of whether you look to direct evidence, circumstantial evidence, or a combination thereof, the government must establish the essential elements of the crime charged beyond a reasonable doubt—including the requisite mental states.

The Government must prove beyond a reasonable doubt that the defendant participated in the alleged scheme with an understanding of its fraudulent or deceptive character and with the intent to help it succeed. There are certain things the Government need not prove in order to meet that burden. It need not prove that the defendant participated in, or even knew about, all the operations of the scheme. It need not prove that the defendant originated the scheme, or participated in it from its inception, since a person who participates in a scheme after it begins is just as guilty as those who participated from the beginning, as long as he becomes aware of the scheme's general purpose and operation and acts intentionally to further its unlawful goal or goals. It need not prove that the defendant participated in the scheme to the same degree as other participants. Finally, the Government need not prove actual or potential loss to the bank, so long as there is evidence that the defendant intended to expose the bank to such loss.

### 3.    Element Three: Federally Insured Financial Institution

The third and final element that the Government must prove beyond a reasonable doubt is that the bank that was the subject of the defendant's scheme or artifice was a federally insured

[24]

financial institution. This simply means that the bank's deposits had to be insured by the Federal Deposit Insurance Corporation.

The Government need not show that the defendant <u>knew</u> that the bank in question was federally insured to satisfy this third element. It must prove, however, that the defendant intended to defraud a financial institution.

### 4. Attempt

The bank fraud statute prohibits not only successful defrauding of a financial institution, but also attempting, which means trying to do so. Thus, the Government is required to prove only that the defendant attempted, or tried, to execute the alleged scheme or artifice; there is no need for the Government to prove that the defendant was successful in this endeavor.

In order to prove that the defendant attempted bank fraud, the evidence must show beyond a reasonable doubt that (1) the defendant intended to commit the bank fraud, and (2) the defendant willfully took some action that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt. In order to convict the defendant of an attempt, you must find beyond a reasonable doubt both that he intended to commit the crime of bank fraud, and that he took some action that was a substantial step towards the commission of that crime.

Merely preparing to commit a crime is not the same thing as taking a substantial step toward the commission of the crime. The defendant must go beyond simply preparing and perform an act that confirms his intention to execute the scheme. The Government does not have to prove that the defendant did everything except take the last step necessary to complete the scheme. Any substantial step beyond mere preparation is enough.

[25]

### D.    Counts Three and Four: Wire Fraud

That concludes my review of the elements of bank fraud. I will now turn to Counts Three and Four, both of which charge the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

Count Three charges the defendant with a wire fraud scheme in connection with the deposit in April 2019 of the 27 checks which are the subject of Count One, allegedly by creating, and then making the false pretense and representation to the bank that the defendant had the account holders' authorization to deposit, those checks. Count Three charges—and again I am reading from the Indictment—that:

> From at least in or about April 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willingly and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to "Entity-1," "Entity-2," and "Entity-3" and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

Count Four charges the defendant with a wire fraud scheme in connection with the deposit in March 2019 of the two checks which are the subject of Count Two, allegedly by creating, and then making the false pretense and representation to the bank that the defendant had the account holders' authorization to deposit, those checks. Count Four charges—again reading from the Indictment—that:

> In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication

[26]

A-1368

in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to Entity-3 and Entity-4 and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

Earlier, I instructed you about who the terms "Entity-1," "Entity-2," "Entity-3," and "Entity-4," as used in Counts One and Two, refer to. Those instructions apply equally to Counts Three and Four.

I will now turn to the elements of wire fraud. In order to prove the defendant guilty of wire fraud in both Counts Three and Four, the Government must establish each of the following three elements beyond a reasonable doubt:

**First**, that there was a scheme or artifice to defraud, <u>OR</u> to obtain money or property by materially false or fraudulent pretenses, representations, or promises;

**Second**, that the defendant knowingly and willfully devised or participated in the scheme or artifice to defraud, with knowledge of the fraudulent nature of the scheme and with the specific intent to defraud; and

**Third**, in execution of that scheme, the defendant used or caused others to use interstate or foreign wires as specified in the Indictment.

My instructions as to Counts One and Two, the bank fraud counts, cover a number of the concepts relevant to Counts Three and Four. And so, my instructions as to Counts Three and Four will be brief.

### 1.    Element One: A Scheme to Defraud

The first element that the Government must prove, beyond a reasonable doubt, is that there was a scheme to defraud or to obtain money or property. I have already instructed you in

[27]

A-1369

connection with Counts One and Two what it means to employ a scheme or artifice to defraud. Those instructions apply here as well.

The scheme that the Government alleges in Count Three is the same scheme involving the defendant's depositing of 27 checks in April 2019, which is the subject of Count One. To find the first element as to Count Three, you must therefore find that the scheme had as an object the use of the funds from these checks for the defendant's personal benefit.

Similarly, the scheme the Government alleges in Count Four is the same scheme involving the defendant's depositing of 2 checks in March 2019, which is the subject of Count Two. To find the first element as to Count Four, you must therefore find that the scheme had as an object the use of the funds from these checks for the defendant's personal benefit.

### 2.  Element Two: Knowing and Willful Participation in the Scheme

The second element that the Government must prove, beyond a reasonable doubt, is that the defendant devised or participated in the scheme knowingly, willfully, and with a specific intent to defraud. I have already defined knowingly, willfully, and with a specific intent to defraud, and my earlier instructions apply here as well. I will quickly define a few additional terms as to this element.

To "devise" a scheme to defraud is to concoct or plan it.

To "participate" in a scheme to defraud means to associate oneself with it, with the intent of making it succeed.

### 3.  Element Three: Use of Interstate Wires

The third and final element of the wire fraud charge is that the Government must establish beyond a reasonable doubt that interstate or foreign wires were used in furtherance of the scheme to defraud.

[28]

A-1370

"Wires" includes telephone calls, faxes, email, Internet, radio, or television communication. The use of the wires must be between states or between the United States and another country. The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London. The Government is not required, however, to prove that a defendant knew or could foresee the interstate or international nature of the wire communication.

The use of the wires need not itself be fraudulent. Stated another way, the communication need not contain any fraudulent representation. To be in furtherance of the scheme, the wire communication must be incident to an essential part of the scheme to defraud and must have been caused by the defendant. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud or the scheme to obtain money by means of false representations.

It is not necessary for the defendant to be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. This does not mean that the defendant must have specifically authorized others to execute a wire communication. Rather, when one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even if not actually intended, then he causes the wires to be used.

The Government must prove beyond a reasonable doubt the particular use of the wires on which the Indictment is based. Here, the wire fraud counts are based on wire communications

[29]

related to the defendant's depositing of alleged counterfeit checks. To convict the defendant on Counts Three and Four, you must unanimously agree on a particular one of these wires and that it was in furtherance of the charged wire-fraud scheme.

However, the Government does not have to prove that the wire was used on the exact date charged. It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date reasonably near the date alleged.

### E.    Unanimity

This concludes my review of the elements of wire fraud. I have a few final substantive instructions that are not particular to a specific count.

The first relates to the requirement that the jury verdict be unanimous.

Each of the four counts in the Indictment charges the defendant with an offense—either bank fraud or wire fraud—involving multiple checks drawn on the accounts of multiple entities. Thus, Counts One and Three allege these respective offenses in connection with the defendant's alleged deposit of 27 checks, each drawn on the account of one of three entities: ABJ Milano LLC; ABJ Lenox LLC; and 518 West 204 LLC. And Counts Two and Four allege these respective offenses in connection with the defendant's alleged deposit of two checks, one drawn on the account of 518 West 204 LLC; and the other drawn on the account of 18 Mercer Equity Inc.

As to each count, I instruct you that the Government need not prove, and you need not find, that the elements of the offense in question have been met with respect to each of the checks or each of the entities to which that count relates. However, to convict the defendant of a particular count, you must unanimously agree that the elements of the offense in question have been established, beyond a reasonable doubt, with respect to at least one entity to which that count relates. So, for example, on Count Two, you may not return a verdict of guilty unless you

[30]

unanimously agree that the elements of bank fraud have been established with respect to one of the two entities, 518 West 204 LLC or 18 Mercer Equity Inc., to which that count relates. If half of the jury found that the elements of bank fraud had been established with respect to the check drawn on the account of 518 West 204 LLC, and the other half of the jury found that the elements of bank fraud had been established with respect to 18 Mercer Equity Inc., but the jury was not in unanimous agreement as to one entity, you could not return a verdict of guilty.

**F.    Good Faith**

An essential element of the crimes of bank fraud and wire fraud as charged in Counts One through Four of the Indictment is intent to defraud. It follows that good faith on the part of the defendant is an absolute defense to a charge of fraud. The burden of establishing lack of good faith and criminal intent rests upon the prosecution. A defendant is under no burden to prove his good faith; rather, the prosecution must prove bad faith or knowledge of falsity beyond a reasonable doubt.

Under the bank fraud and wire fraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there is no crime.

A venture commenced in good faith may become fraudulent if it is continued after a fraudulent intent has been formed. Therefore, good faith is no defense when the defendant first made representations in good faith but later, during the time charged in the Indictment, the defendant realized that the representations were false and nevertheless deliberately continued to make them. You must review and put together all the circumstances in deciding whether or not it

[31]

A-1373

has been established beyond a reasonable doubt that the defendant devised or participated in a scheme to defraud knowingly, willfully, and with the intent to defraud, or whether he acted in good faith.

There is a final consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. If the defendant participated in the scheme for the purpose of causing financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme will cause ultimately make a profit or cause no harm will excuse fraudulent actions or false representations by him.

### G.    Advice of Counsel

You have heard evidence that the defendant consulted with a lawyer, Ariel Reinitz. You may consider that evidence in deciding whether the defendant acted knowingly, willfully, and with a specific intent to defraud.

The mere fact that the defendant may have received legal advice does not, in itself, necessarily constitute a complete defense to the charges of bank fraud and wire fraud. Instead, you must ask yourselves whether the defendant honestly and in good faith sought the advice of a competent lawyer as to what he may lawfully do; whether he fully and honestly laid all the facts before his lawyer; and whether in good faith he honestly followed such advice, relying on it and believing it to be correct. In short, you should consider whether, in seeking and obtaining advice from a lawyer, the defendant intended that his acts shall be lawful. If he did so, it is the law that a

defendant cannot be convicted of a crime that involves willful and unlawful intent, even if such advice were an inaccurate construction of the law.

On the other hand, no man can willfully and knowingly violate the law and excuse himself from the consequences of his conduct by pleading that he followed the advice of his lawyer.

Whether the defendant acted in good faith for the purpose of seeking guidance as to the specific acts in this case, and whether he made a full and complete report to his lawyer, and whether he acted substantially in accordance with the advice received, are questions for you to determine.

## H.    Conscious Avoidance

I told you earlier that the defendant must have acted knowingly, as I have defined that term, in order to be convicted. That is true with respect to all four counts charged in the Indictment. In determining whether the defendant acted knowingly, you may consider whether the defendant closed his eyes to what would have otherwise been obvious to him. That is what the phrase "conscious avoidance" refers to.

As I have told you before, acts done knowingly must be a product of a person's conscious intention. They cannot be the result of carelessness, negligence, or foolishness. But a person may not intentionally remain ignorant of a fact that is material and important to his conduct in order to escape the consequences of the criminal law.

Here, the Government argues that the defendant consciously avoided material information insofar as he did not invoice or otherwise notify his customers, in advance of his drawing and depositing checks on their accounts in March and April 2019, of his claim that they owed his business money in the amounts reflected on those checks. The Government alleges that the defendant was thereby closing his eyes to the fact that the customers did not approve and would not have approved these charges. The defendant disputes that he consciously avoided learning

[33]

such information.  He argues that he believed in good faith, based on his communications with his customers and his understanding of communications he believed his attorney had had with his customers, that the customers had given him advance approval for these charges, and also advance approval to remotely create checks on their accounts as a means of paying the debts that they owed him.

As to this point, I instruct you as follows.  An argument by the Government of conscious avoidance is not a substitute for proof of knowledge; it is simply another factor that you, the jury, may consider in deciding what the defendant knew.  Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that a fact was so, but that the defendant deliberately avoided confirming this fact, such as by purposely closing his eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

In sum, if you find that the defendant believed there was a high probability that a fact was so and that the defendant deliberately and consciously avoided learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact.  However, if you find that the defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact.  You must judge from all the circumstances and all the proof whether the Government did or did not satisfy its burden of proof beyond a reasonable doubt.

## I.    Variance in Dates and Amounts

The Indictment refers to a range of dates and monetary amounts.  I instruct you that it does not matter if a specific event is alleged to have occurred on or about a certain date, but the testimony indicates that in fact it was a different date.  Likewise, it does not matter if a transaction is alleged to have involved a certain amount of money, but the testimony indicates that in fact it

[34]

A-1376

was a different amount of money. The law requires only a substantial similarity between the dates and amounts alleged in the Indictment and the dates and amounts established by the evidence.

### J.    False Exculpatory Statements

You have heard testimony that the defendant made statements in which he claimed that his conduct was consistent with innocence and not with guilt. The Government claims that these statements in which the defendant exculpated himself are false. The defendant disputes this.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may infer, but you are not required to infer, that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged.

Whether or not the evidence as to the defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

### K.    Venue

In addition to the elements I have described for you, in order to convict on each charged offense, you must decide whether the crime occurred within the Southern District of New York. The Southern District of New York includes Manhattan, the Bronx, Westchester County, as well as other areas. In this regard, the Government need not prove that the crime was committed in its entirety in this District or that the defendant himself was present here. It is sufficient to satisfy this element if any act in furtherance of the crime occurred in this District. The act itself may not be a criminal act. It could include, for example, executing a financial transaction within this District. And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed.

[35]

A-1377

I should note that on this issue—and this issue alone—the Government need not offer proof beyond a reasonable doubt. Venue need be proven only by a preponderance of the evidence. The Government has satisfied its venue obligations, therefore, if you conclude that it is more likely than not that the crime occurred within this District.

If you find that the Government has failed to prove this venue requirement, you must acquit the defendant of these charges.

## III.    DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a copy of these instructions. There is one of each of these for each juror. I am also providing you with a copy of the Indictment. I remind you that the Indictment is not evidence.

### B.        Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.        Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony to have been, you can ask to have the transcript read back.

### D.        Duty to Deliberate; Unanimous Verdict

You will now retire to decide the case. Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the defendant with respect to the count charged in the Indictment. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions

[37]

dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you are deliberating, all 12 jurors must be present in the jury room. If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands. If you reach a verdict do not report what it is until you are asked in open court.

### E.    Verdict Form

I have prepared a verdict form for you to use in guiding your deliberation and recording your decision. Please use that form to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson. The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

[38]

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you. All jurors must sign the form reflecting each juror's agreement with the verdict. The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

### IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have me give to you or anything I may not have covered in my previous statement.

\* \* \* \* \*

Before you retire into the jury room, I must excuse our two alternates with the thanks of the Court. You have been very attentive and very patient. I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons in this case.

[39]

So before the rest of the jury retires into the jury room, if you have any clothing or objects there, you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone, or research the case, over the next few days. It is possible, and I have had this occur in a trial, that unexpected developments such as a juror's serious illness, may require the substitution of a deliberating juror by an alternate. And so it's vital that you not speak to anyone about the case or research the case until you have been notified that the jury's deliberations are over and the jury has been excused. And if you would like to be advised of the outcome of the trial, please make sure that Mr. Smallman has a phone number at which you can be reached.

(Alternates excused)

Members of the jury, you may now retire. The marshal will be sworn before we retire.

(Marshal sworn)

A-1382

**EXHIBIT 3**

A-1383

*U.S. v. Teman*, 19 Cr. 696 (PAE)                                          **Witness List**

| Witnesses |
|-----------|
| Karin Finocchiaro |
| Elie Gabay |
| Bonnie Soon-Osberger |
| Gina Hom |
| Joseph Soleimani |
| Joseph Motto |
| Ariel Reinitz |

**EXHIBIT 4**

A-1385

*U.S. v. Teman*, 19 Cr. 696 (PAE)                                                                 Exhibit List

| # | Description | Witness | Received |
|---|---|---|---|
| **Government Exhibits** | | | |
| **100 Series - Bank Records - Bank of America** | | | |
| 101 | GateGuard Account Opening Documents | Finocchiaro | 1/22 |
| 102 | GateGuard Bank Statements | Finocchiaro | 1/22 |
| 103 | Friend or Fraud Account Opening Documents | Finocchiaro | 1/22 |
| 104 | Friend or Fraud Bank Statements | Finocchiaro | 1/22 |
| 105 | Touchless Labs Account Opening Documents | Finocchiaro | 1/22 |
| 106 | Touchless Labs Bank Statements | Finocchiaro | 1/22 |
| 107 | Ari Teman Account Opening Document | Finocchiaro | 1/22 |
| 108 | Ari Teman Bank Statements | Finocchiaro | 1/22 |
| 110 | April 19, 2019 2_37 PM Surveillance Photographs | Finocchiaro | 1/22 |
| 111 | April 19, 2019 6_00 PM Surveillance Photographs | Finocchiaro | 1/22 |
| 112 | May 8, 2019 3_04 PM Surveillance Photographs | Finocchiaro | 1/22 |
| 113 | Bank Records Spreadsheet | Finocchiaro | 1/22 |
| 114 | Returned Check Records | Finocchiaro | 1/22 |
| **120 Series - Bank Records - JP Morgan Chase** | | | |
| 121 | ABJ Lenox Account Opening Document | Soleimani | 1/23 |
| 122 | ABJ Lenox Bank Statements | Soleimani | 1/23 |
| 123 | ABJ Milano Account Opening Documents | Soleimani | 1/23 |
| 124 | ABJ Milano Bank Statements | Soleimani | 1/23 |
| 127 | May 2, 2019 Letter - ABJ Lenox | Soleimani | 1/23 |
| 129 | May 2, 2019 Letter - ABJ Milano | Soleimani | 1/23 |
| 130 | ABJ Lenox Checks | Soleimani | 1/23 |
| 131 | ABJ Milano Checks | Soleimani | 1/23 |
| **140 Series - Bank Records - Signature Bank** | | | |
| 141 | 18 Mercer Account Opening Documents | Gabay | 1/23 |
| 142 | 18 Mercer Bank Statements | Gabay | 1/23 |
| 143 | April 4, 2018 Check from 18 Mercer Equity to GateGuard | Gabay | 1/23 |
| 144 | 518 W 204 Account Opening Documents | Gabay | 1/23 |
| 145 | 518 W 204 Bank Statements | Gabay | 1/23 |
| 146 | January 31, 2018 Check from 518 W 204 to GateGuard | Gabay | 1/23 |
| 147 | March 28, 2019 Check from 518 West 205 to GateGuard | Motto | 1/24 |
| 150 (D-29) | Affidavit | Gabay | 1/23 |
| **200 Series - Checks** | | | |
| 201 | March 28, 2019 Check from Coney Realty to GateGuard | Finocchiaro | 1/22 |
| 202 | March 28, 2019 Check from 18 Mercer Equity to GateGuard | Finocchiaro | 1/22 |
| 203 | April 19, 2019 Check from 518 West 205 to GateGuard | Finocchiaro | 1/22 |
| 204 | April 19, 2019 Check from ABJ Milano to GateGuard | Finocchiaro | 1/22 |
| 205 | April 19, 2019 Check from ABJ Lennox to GateGuard | Finocchiaro | 1/22 |

A-1386

*U.S. v. Teman*, 19 Cr. 696 (PAE)                                                    Exhibit List

| # | Description | Witness | Received |
|---|---|---|---|
| **Government Exhibits** | | | |
| 206 | April 19, 2019 GateGuard Counter Deposit | Finocchiaro | 1/22 |
| **400 Series - Correspondence - ABJ Properties** | | | |
| 401 | September 9, 2017 Email - 'We're Live' | Soleimani | 1/23 |
| 402 | November 6, 2017 Email - 'Current Issues' | Soleimani | 1/23 |
| 403 | March 9, 2018 Email - 'Ending GateGuard' | Soleimani | 1/23 |
| 404 | May 7, 2018 Email - 'All Communication in Writing' | Soleimani | 1/23 |
| 405 | May 22, 2018 Email - 'GateGuard' | Soleimani | 1/23 |
| 406 | August 26, 2018 Email - 'Dispute on Charge...' | Soleimani | 1/23 |
| 407 | September 18, 2018 Email - 'Sublet Spy Hits...' | Soleimani | 1/23 |
| 408 | December 14, 2018 Email - 'Notice of Intent' | Soleimani | 1/23 |
| 409 | June 14, 2019 GateGuard Invoice | Soleimani | 1/23 |
| 409A | Invoices (1) | Soleimani | 1/23 |
| 409B | Invoices (2) | Soleimani | 1/23 |
| 409C | Conversation between Teman and Soleimani | Soleimani | 1/23 |
| **410 Series - Correspondence - Coney Realty** | | | |
| 412 | January 1, 2018 Email - 'Tenant Ana Esterg' | Gabay | 1/23 |
| 413 | January 19, 2018 Email - 'Invoice Sent' | Gabay | 1/23 |
| 414 | January 24, 2018 Email - 'Form for the 10 Buildings' | Gabay | 1/23 |
| 415 | March 25, 2018 Email - 'Invoice for 20 Buildings' | Gabay | 1/23 |
| 416 | March 26, 2018 Email - 'Invoice for 20 Buildings' (1) | Gabay | 1/23 |
| 417 | March 26, 2018 Email - 'Invoice for 20 Buildings' (2) | Gabay | 1/23 |
| 418 | March 27, 2018 Email - 'Proof it's Your...' | Gabay | 1/23 |
| **430 Series - Correspondence - Crystal** | | | |
| 431 | April 4, 2018 Email - 'Invoice' | Osberger | 1/23 |
| **440 Series - Correspondence - 18 Mercer** | | | |
| 441 | GateGuard Terms and Conditions | Osberger | 1/23 |
| 442 | April 2, 2018 Email - 'References' | Osberger | 1/23 |
| 443 | January 7, 2019 Email - 'Contract' | Osberger | 1/23 |
| **500 Series – Stipulations** | | | |
| 501 | Bank Records Stipulation | Finocchiaro | 1/22 |
| **700 Series** | | | |
| 702 | January 2, 2019 WhatsApp Messages | Reinitz | 1/24 |
| 704 | April 2, 2019 WhatsApp Messages | Reinitz | 1/24 |
| 727 | April 2, 2019 Whatsapp Messages (2) | Reinitz | 1/27 |
| 728 | April 3, 2019 Whatsapp Messages | Reinitz | 1/27 |
| 729 | April 10, 2019 WhatsApp Messages | Reinitz | 1/27 |

**Page 2 of 3**

A-1387

*U.S. v. Teman*, 19 Cr. 696 (PAE)                                                    Exhibit List

| Defense Exhibits | | | |
|---|---|---|---|
| # | Description | Witness | Received |
| D-2 | Payment Terms (1/27/2019) | **Reinitz** | **1/24** |
| D-14 | October 11, 2018 Email – 'ABJ Properties' | **Soleimani** | **1/24** |
| D-15 | October 22, 2018 Email - 'SubletSpy hits' | **Soleimani** | **1/24** |
| D-16 | 'Notice of Hold' | **Finocchiaro** | **1/23** |
| D-29 | Affidavit | **Gabay** | **1/23** |
| D-36 | March 28, 2018 Email – 'Invoice for 20 Buildings' | **Gabay** | **1/23** |
| D-49 | Declaration | **Soleimani** | **1/24** |
| D-51 | Chase Information Request | **Soleimani** | **1/24** |
| D-52 | 'RCC BREACH' ABJ Lennox Checks | **Finocchiaro** | **1/23** |
| D-62 | | **Soleimani** | **1/24** |
| D-70 | GateGuard Logs | **Soleimani** | **1/24** |
| D-71 | May 22, 2018 Email – 'Re: Gateguard' | **Reinitz** | **1/27** |

A-1388

**EXHIBIT 5**

A-1389

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -    X
                          :
UNITED STATES OF AMERICA     :    <u>INDICTMENT</u>
                          :
      - v. -         :    S2 19 Cr. 696 (PAE)
                          :
ARI TEMAN,                :
                          :
        Defendant.     :
                          :
- - - - - - - - - - - - - - -    X

**<u>COUNT ONE</u>**
**(Bank Fraud)**

The Grand Jury charges:

1.   From at least in or about April 2019 up to and
including at least in or about June 2019, in the Southern
District of New York and elsewhere, ARI TEMAN, the defendant,
willfully and knowingly, did execute and attempt to execute a
scheme and artifice to defraud a financial institution, the
deposits of which were then insured by the Federal Deposit
Insurance Corporation, and to obtain moneys, funds, credits,
assets, securities, and other property owned by, and under the
custody and control of, such financial institution, by means of
false and fraudulent pretenses, representations, and promises,
to wit, TEMAN deposited counterfeit checks in the name of three
third parties (respectively, "Entity-1," "Entity-2," and
"Entity-3") into an account held at a particular financial

A-1390

institution ("Financial Institution-1"), and subsequently

attempted to and did use those funds for his personal benefit.

(Title 18, United States Code, Section 1344.)

## COUNT TWO
## (Bank Fraud)

The Grand Jury further charges:

2.    In or about March 2019, in the Southern District of

New York and elsewhere, ARI TEMAN, the defendant, willfully and

knowingly, did execute and attempt to execute a scheme and

artifice to defraud a financial institution, the deposits of

which were then insured by the Federal Deposit Insurance

Corporation, and to obtain moneys, funds, credits, assets,

securities, and other property owned by, and under the custody

and control of, such financial institution, by means of false

and fraudulent pretenses, representations, and promises, to wit,

TEMAN deposited counterfeit checks in the name of Entity-3 and

another third party ("Entity-4") into an account held at

Financial Institution-1, and subsequently attempted to and did

use those funds for his personal benefit.

(Title 18, United States Code, Section 1344.)

## COUNT THREE
## (Wire Fraud)

The Grand Jury further charges:

3.    From at least in or about April 2019 up to and

including at least in or about June 2019, in the Southern

2

A-1391

District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to "Entity-1," "Entity-2," and "Entity-3" and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

(Title 18, United States Code, Section 1343.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

4.    In or about March 2019, in the Southern District of New York and elsewhere, ARI TEMAN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of

3

A-1392

wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, TEMAN deposited counterfeit checks drawing funds from accounts belonging to Entity-3 and Entity-4 and subsequently attempted to and did use those funds for his personal benefit, and in furtherance of such a scheme caused a wire communication to be sent.

(Title 18, United States Code, Section 1343.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

4

A-1393

**EXHIBIT 6**

A-1394

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                              :

UNITED STATES OF AMERICA,          :           Verdict Sheet

             -v-              :         S2 19 Cr. 696 (PAE)

                              :

ARI TEMAN,                           :

                        Defendant.   :
-------------------------------------------------------------------X

*All verdicts must be unanimous.  Please indicate your verdict with a check mark (✓).*

### COUNT ONE:
### Bank Fraud (April 2019 Checks)


GUILTY_____         NOT GUILTY_____


### COUNT TWO:
### Bank Fraud (March 2019 Checks)


GUILTY_____         NOT GUILTY_____


### COUNT THREE:
### Wire Fraud (April 2019 Checks)


GUILTY_____         NOT GUILTY_____


### COUNT FOUR:
### Wire Fraud (March 2019 Checks)


GUILTY_____         NOT GUILTY_____

1

A-1395

After completing the form, each juror must sign below, reflecting his or her agreement with the forgoing verdict.

_____          _____
Foreperson

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____


Dated:          _____

A-1396

**EXHIBIT 7**





Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/20    Page 100 of 138



GX 203, pp. 2





Case 1:19-cr-00696-PAE   Document 93   Filed 01/20/23   Page 103 of 134

# Criminal Intent

1. Customers Never Gave Permission

Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/23    Page 104 of 134

# Testimony of Elie Gabay

Q. At any point did Mr. Teman ever ask permission to pay himself by issuing checks from Coney's bank accounts?

A. No.

Q. And if he had asked your permission to do that, to write checks from your accounts to himself, what would you have said?

A. I would have said no.

(Tr. 355:21 – 356:5)

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 105 of 134

# Testimony of Joseph Soleimani

**Q.** And what did he ever tell you during those conversations about his authority to draw checks on behalf of those entities?

**A.** He never mentioned anything.

**Q.** If he had mentioned them, would that have stuck out to you?

**A.** Yes.

**Q.** And what would your reaction have been if you had heard about them?

**A.** I would have denied it.

**Q.** What do you mean, denied it?

**A.** Denied his authority to draw any checks out of my account.

(Tr. 568:14–23)

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/21    Page 105 of 134

# Testimony of Bonnie Soon-Osberger

Q. [Y]ou testified previously that you never saw a provision about -- you did not see a provision about allowing him to draw checks from your account.

A. That's true.

Q. If you had seen that, would that have been something you would have included in this message?

A. Absolutely. I just don't have authority to allow people to write checks; I don't have authority for that, so, yes.

. . .

Q. Did you authorize Mr. Teman to deposit this check?

A. Absolutely not.

Tr. 430:4–11, 441:10–11

# Testimony of Gina Hom

**Q. Did you ask the board first whether this was authorized?**

**A. No.**

**Q. Why Not?**

**A. Because the only people that were authorized to issue any payments on this would have been myself or Jackeline. And neither one of us had done it.**

**(Tr. 475:22 – 476:2)**



# Criminal Intent

## 1. Customers Never Gave Permission

# Testimony of Elie Gabay

**Q.  If he had asked you for a form authorizing withdrawals from your bank account, how would you have reacted?**

**A.  He did ask and we said no.**

**Q.  Why did you say no?**

**A.  Because it's not the way we operate.  We only do things by invoice where we issue the check. He had requested that we entered an order using [ACH], and we asked him for invoices only.**

**(Tr. 365:19-25)**



# Criminal Intent

## 1. Customers Never Gave Permission

Case 1:19-cr-00696-PAE   Document 93   Filed 01/20/20   Page 111 of 134

# Criminal Intent

## 1. Customers Never Gave Permission

## 2. Defendant Tried and Failed, then Tried Again

Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/20    Page 112 of 134

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers



Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 113 of 134

**G M a i l**
by Google

## Gateguard
3 messages

Joseph Soleimani <joe@abjny.com>
To: Ari Teman <ari@teman.com>

Ari,

Can you please send me the invoices which you are claiming we owe you?

Not sure why we owe you money but I'm glad to look into it.

GX 405, pp. 1





| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| GateGuard V1 Panel | | $14,999.00 | 1 | $14,999.00 |
| Paid | | $-3,600.00 | | $0.00 |
| Installation (Wired, basement, v1) | Included | $1,499.00 | 1 | $1,499.00 |
| Monthly Service | 1st Year Upfront | $149.00 | 12 | $1,788.00 |

Client failed to keep their end of the deal ordering 10 devices (then increased to 20). That pre-sale period is now over. Therefore, full price for GateGuard v1 and installation is as stated here and payment is due immediately. Any further discussion will only be had after full payment for our product and services is made. Device is disabled until payment is made. (Note: Payment will be due plus penalty for removal if removed.)
- Ari

| | |
|---|---|
| Subtotal | $18,286.00 |
| Paid To Date | $0.00 |
| Balance Due | $18,286.00 |

GX 417, pp. 9

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers

4. Fees Disproportionate to Invoiced Charges

Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/20    Page 117 of 134



**INVOICE**

| | |
|---|---|
| Invoice Number | 0027 |
| Invoice Date | 03/26/2018 |
| Due Date | 03/26/2018 |
| Balance Due | $3,947.88 |

18 Mercer Equities
bsoonosberger@gmail.com

| Item | Description | Unit Cost | Quantity | Line Total |
|---|---|---|---|---|
| CareGuard 2.0 Panel (Corepoller Show Price) | | $2,499.00 | 1 | $2,499.00 |
| CareGuard my2 Panel Installation Surface | Surface Installation | $849.00 | 1 | $849.00 |
| Gold Plan Monitoring | GGryz Monitoring - Gold Plan (1st year Paid Upfront) | $49.99 | 12 | $599.88 |

| | | |
|---|---|---|
| | Subtotal | $3,947.88 |
| | Paid To Date | $0.00 |
| | **Balance Due** | **$3,947.88** |

Delivery in 120-150 days from invoice. We can install Version 1 of the device temporarily until then if there delay is two long (2nd installation fee may apply).

GX 431, pp. 3

**Bill To:**    ABJ Properties
100 W. 138th ( ABJ LENOX,LLC )
Joseph Soleimani
joe@ABJny.com

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 1 | GateGuard.xyz Panel | 499.00 | $499.00 |
| 1 | Installation | 650.00 | $650.00 |
| 6 | Monthly Service (6 months upfront) | 99.00 | $594.00 |

| | |
|---|---|
| SUBTOTAL | $1.743,00 |
| TAX RATE | EXEMPT |
| SALES TAX | |
| SHIPPING & HANDLING | |
| TOTAL | $1.743,00 |

GX 409A

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers

4. Fees Disproportionate to Invoiced Charges

5. Defendant Knew How to Lawfully Recover Money





Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 122 of 134

518 WEST 205 LLC
% CONEY REALTY
1499 CONEY ISLAND AVE
BROOKLYN, NY 11230

SIGNATURE BANK
485 Madison Ave, 11th Floor
New York, NY   10022

Eighteen Thousand and 00 dollars.

DATE
3-28-19

CHECK NO
001

AMOUNT
$18,000.00

Pay to
order of

GateGuard INC
106 West 32nd Street #2
New York, NY 10001

MEMO: DEVICE REMOVAL FEE

DRAW PER CONTRACT. NO SIGNATURE REQUIRED

SECURITY FEATURES INCLUDED DETAILS ON BACK

"000000 1"    ⑉:026013576⑉:    ⑈5032265 25⑈

Case 1:19-cr-00696-PAE Document 93 Filed 01/29/20 Page 123 of 138

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**518 WEST 205 LLC**
% CONEY REALTY
1499 CONEY ISLAND AVE
BROOKLYN, NY 11230

***SIGNATURE BANK***
485 Madison Ave, 11th Floor
New York, NY 10022

| DATE | CHECK NO | AMOUNT |
|---|---|---|
| 4-19-19 | 19001 | $18,000.00 |

Eighteen Thousand and 00 dollars.

Pay to order of GateGuard INC
106 West 32nd Street #2
New York, NY 10001

MEMO: DEVICE REMOVAL FEE

DRAW PER CONTRACT. NO SIGNATURE REQUIRED
NOTE TO BANK: This is a valid check. You are required by law to honor it.
Contract at gateguard xyz/legal/terms php accepted by above client.
Contact us 212-203-3714 with questions.

SECURITY FEATURES INCLUDED. DETAILS ON BACK

⑈019001⑈ ⑆026013576⑆ 1503226525⑈

GX 203, pp. 2



Case 1:19-cr-00696-PAE   Document 93   Filed 01/20/23   Page 124 of 134

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers

4. Fees Disproportionate to Invoiced Charges

5. Defendant Knew How to Lawfully Recover Money

6. The Checks Themselves

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 125 of 134

# Criminal Intent

1. Customers Never Gave Permission

2. Defendant Tried and Failed, then Tried Again

3. Defendant Never Invoiced Customers

4. Fees Disproportionate to Invoiced Charges

5. Defendant Knew How to Lawfully Recover Money

6. The Checks Themselves

7. Defendant Cashed April 2019 Checks Right Before Passover



GX 102, pp. 13



Case 1:19-cr-00696-PAE   Document 93   Filed 01/20/20   Page 127 of 138



| CSTMR NM | Method of | PST AM | LDGR BL AM | PST DT | EV TRAN DE |
|---|---|---|---|---|---|
| GATEGUARD, INC. | Withdraw | $ 3,600.00 | 10,167.12 | 2019-04-26 | Online Banking transfer to CHK 5580 |
| GATEGUARD, INC. | Withdraw | $ 225,000.00 | 10,167.12 | 2019-04-26 | Online Banking transfer to CHK 0351 |
| GATEGUARD, INC. | Withdraw | $ 33,000.00 | 238,767.12 | 2019-04-24 | RETURN ITEM CHARGEBACK |
| GATEGUARD, INC. | Withdraw | $ 36.00 | 238,767.12 | 2019-04-24 | RETURNED ITEM CHARGEBACK FEE |
| GATEGUARD, INC. | Deposit | $ 4,096.00 | 271,803.12 | 2019-04-19 | BKOFAMERICA ATM 04/19 #00005703 DEPOSIT |
| GATEGUARD, INC. | Deposit | $ 297,000.00 | 271,803.12 | 2019-04-19 | Counter Credit |
| GATEGUARD, INC. | Deposit | $ 76.20 | (29,292.88) | 2019-04-15 | CHECKCARD 0412 AMZN MKTP US AMZN.COM/B |

GX 113,
tab 483067038085

Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/20    Page 129 of 134

# Criminal Intent

1. **Customers Never Gave Permission**

2. **Defendant Tried and Failed, then Tried Again**

3. **Defendant Never Invoiced Customers**

4. **Fees Disproportionate to Invoiced Charges**

5. **Defendant Knew How to Lawfully Recover Money**

6. **The Checks Themselves**

7. **Defendant Cashed April 2019 Checks Right Before Passover**

8. **Follow the Money**



Case 1:19-cr-00696-PAE    Document 93    Filed 01/20/20    Page 130 of 134



GX 702

Why? They entered into a contract allowing us to draw from their accounts

3:14 PM

so we're not breaking any law    3:14 PM

What can they say? "We owed this guy money, he took it, and he had permission to do so, but we want it back so... ?"

3:19 PM

there's nothing to say    3:19 PM

Because they are likely to call police. And you will be arrested. And have a criminal case to deal with. And then you can start explaining about your contract and 'not breaking any laws'

3:52 PM ✓✓

GX 702

Case 1:19-cr-00696-PAE   Document 93   Filed 01/20/20   Page 133 of 134

GX 702



My opinion is that you are > 50% likely to be arrested for the activities you propose. How you choose to proceed is up to you

4:00 PM

You asked my opinion. I gave it. Maybe you're right. Maybe they'll just throw up their hands and say "oh well, we tried to stiff him but Teman outsmarted us. Too bad. Have fun ari, don't spend it all in one place!"

3:58 PM

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 134 of 138

Not sure I follow but this sounds bad

6:42 PM

Our contract states explicitly if you remove devices there's an $18K fee, and we can draw your account, again outright saying we can print a check and draw your account (a bank draw -- very common in real estate). Bank of America put a hold on 2 checks. It's legal, sketchy but legal, but I'm more concerned about getting the cash since we need to operate

6:44 PM

Understood. I don't know all the ins and outs of this but sounds like a bad idea. I suggest you provide them with advanced, explicit notification of the charge, amout, and specific basis in the agreement for doing so.

7:01 PM

If you are hitting their accounts out of the blue, I expect this will become a criminal matter sooner or later

7:03 PM

GX 704

I've already told you I think it's a bad idea. You've been back and forth with abj several times now. Your 'threats' carry little weight at this point and they have indicated they don't believe they owe you $. If you hit their accounts I think 50/50 they call cops. If I was advising them that's probably what I would tell them to do

7:17 AM

GX 728

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 136 of 138

Honestly, I don't know anything about this stuff. But there are serious state and fed. regulations on this. You claim that your contract allows you to debit their accounts even after they explicitly protest. I'm just not sure it's that simple

7:09 AM

And it also may be (again... speaking out of ignorance...) a clear violation of some federal banking regulation. In which case your 'simple, can't miss idea' is now a federal crime

7:11 AM

GX 729

Case 1:19-cr-00696-PAE    Document 93    Filed 01/29/20    Page 132 of 134

| Count | Charge | Deposit Date | Customers |
|---|---|---|---|
| 1 | Bank Fraud | April 2019 | Gabay, Soleimani |
| 2 | Bank Fraud | March 2019 | Gabay, Soon-Osberger |
| 3 | Wire Fraud | April 2019 | Gabay, Soleimani |
| 4 | Wire Fraud | March 2019 | Gabay, Soon-Osberger |



Case 1:19-cr-00696-PAE Document 93 Filed 01/29/20 Page 138 of 138

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:19-CR-696-PAE** |
| | ) | |
| **ARI TEMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Defendant Ari Teman ("Teman"), by and through undersigned counsel, Alan Dershowitz[1], Justin Gelfand, and Joseph DiRuzzo, respectfully moves this Court to enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29(c). In the alternative, Teman moves this Court to grant him a new trial pursuant to Rule 33.

### I.    Relevant Background

Teman proceeded to trial on a second superseding indictment charging him with two counts of bank fraud and two counts of wire fraud. (Doc. 55). Each count expressly alleged that Teman "deposited counterfeit checks." (*Id.*). Counts One and Three allege that Teman deposited "counterfeit checks" in April 2019 at a Bank of America branch in the Southern District of Florida. (*See id.*). Counts Two and Four allege that Teman deposited "counterfeit checks" by remote deposit in March 2019. (*See id.*).

---

[1] Mr. Dershowitz is of counsel to Teman and will seek *pro hac vice* admission in this case.

A-1438

Prior to trial, Teman provided notice pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) that he intended to call J. Benjamin Davis ("Davis") as an expert witness. (Doc. 74-1). The Government moved *in limine* to preclude Davis's testimony, asserting three grounds in support: relevance; usurping the Court's role; and lack of reliability. (*See* Doc.  74). Teman opposed the Government's motion, explaining:

> One of Teman's core theories of defense is that the checks at issue were valid remotely created checks ("RCCs"). The relevant bank records expressly include the term "RCCs," the checks at issue were processed by the bank as "RCCs," and the defense anticipates the evidence will show that Teman knew what an RCC was before the incidents alleged in the indictment occurred.

(Doc.  77 at 2). Importantly, and in conjunction with Teman's Rule 29(c) motion filed concurrently, Davis's testimony was critical "[b]ecause the checks at issue were RCCs, the checks at issue were not counterfeit checks and were not processed as counterfeit checks." (Doc. 77 at 3).

At the January 10, 2020 pretrial conference, this Court entered an *ore tenus* order granting the Government's motion *in limine* and precluded Teman from calling Davis at trial.

This case was tried before a jury commencing on January 22, 2020. Teman invoked the "rule of sequestration" under Federal Rule of Evidence 615, which the Court acknowledged. (*See* TR. at 27). On the morning of January 24, 2020, Teman raised the issue of a violation of Rule 615. (TR. at 537). Specifically, on January 23, 2020, this Court adjourned for the day while a Government witness—Soleimani—was on the stand in the middle of his direct examination. Soleimani was *the* witness who initially made a criminal complaint against Teman in connection with this case. Prior to taking the stand the next morning, Soleimani was contacted by Government counsel to discuss his testimony. Remarkably, counsel for the Government asserted that "it was appropriate for us to have a conversation with [Soleimani] about some facts that we thought might

A-1439

come up in the trial, and we did it in part so that we could give the Court and the parties some more information about possible prior inconsistent statements." (TR. at 538). The inconsistent statement addressed the "delta" between the $180,000 reported as lost/stolen/unauthorized versus the full value of the chargeback (*i.e.*, $190,000). Counsel for Teman argued that

> the delta would lead us into grounds that there is the possibility that some of the charges were actually authorized, which then in turn at least allows us to make the argument that perhaps all of these charges in fact were authorized. That vein of cross-examination, that line, you know, was appropriately disclosed to your Honor, but at the same time the government should not have disclosed that to the witness.

(TR. at 541). Ultimately, this Court rejected Teman's contention that the Government's disclosure of what happened on the record and outside the witness's presence constituted a violation of Rule 615. (TR. at 539).

At the close of the Government's case, Teman timely moved for a judgment of acquittal pursuant to Rule 29. Teman again timely moved for a judgment of acquittal at the close of the defense case. In denying Teman's motion for judgment of acquittal, this Court expressly stated, "[i]n the event of a guilty verdict on one or more counts, I would be happy to reassess a new post-trial Rule 29(c) motion with respect to venue on that point, a thoughtfully briefed motion." (TR. at 724).

The jury then returned a guilty verdict as to all counts on January 29, 2020. This Court granted Teman's *ore tenus* motion to extend the time to file his Rule 29 and Rule 33 motion to February 26, 2020. (*See* TR. at 1136). Accordingly, this motion is timely.

## II.    This Court Should Enter a Judgment of Acquittal on All Counts

Rule 29(c)(2) provides, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." To prevail, Teman must demonstrate, "considering all of the

A-1440

evidence, direct and circumstantial, that 'no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Espolito*, 534 F.3d 25, 45 (2d Cir. 2008) (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). In conducting its independent analysis, this Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Caplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quoting *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008)).

However, in doing so, this Court has the responsibility of protecting Teman's Fifth Amendment rights. *See, e.g., United States v. Valle*, 807 F.3d 508, 513-15 (2d Cir. 2015) (If courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine . . . whether a jury could reasonably find guilt beyond a reasonable doubt") (alteration in original) (internal quotations omitted). As the Second Circuit has repeatedly emphasized, this means that

> specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.

*Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).