# 21-1920-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

ARI TEMAN, AKA Sealed Defendant 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 8 of 11 (Pages A-1441 to A-1680)

KEDAR S. BHATIA
WON S. SHIN
  *Assistant U.S. Attorney*
UNITED STATES ATTORNEY'S OFFICE
  SOUTHERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2200

EDEN QUAINTON
QUAINTON LAW
*Attorneys for Defendant-Appellant*
2 Park Avenue, 20th Floor
New York, New York 10169
(212) 419-0575

**i**

# TABLE OF CONTENTS

**Page**

District Court Docket Entries .................................... A-1

Complaint, filed June 20, 2019 ................................. A-46.2

Notice of Appearance, dated August 27, 2019 ........... A-47

Indictment, filed September 26, 2019 ....................... A-49

Waiver of Appearance for Arraignment, dated
    October 14, 2019 .................................... A-53

Transcript of Proceedings held before the
    Honorable Paul A. Engelmayer, dated
    October 21, 2019 .................................... A-55

Supeseding Indictment, filed November 12, 2019 .... A-96.1

Transcript of Proceedings held before the
    Honorable Paul A. Engelmayer, dated November
    21, 2019 .................................... A-96.7

Opinion and Order of the Honorable Paul A.
    Engelmayer, dated December 20, 2019 ................. A-97

Second Superseding Indictment, filed
    January 3, 2020 .................................... A-121

Defendant Teman's Requested Voir Dire Questions,
    filed January 6, 2020 ............................. A-129

Excerpts of Transcript of Conference Proceedings
    held before the Honorable Paul A. Engelmayer,
    dated January 10, 2020 .......................... A-137.1

Transcript of Conference Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    January 10, 2020 .................................... A-137.6

Letter from Kedar S. Bhatia to the Honorable Paul
    A. Engelmayer, dated January 14, 2020 ............... A-137.96

ii

**Page**

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 21, 2020 .................................................... A-138

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 22, 2020 .................................................... A-265

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 23, 2020 .................................................... A-398

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 24, 2020 .................................................... A-672

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 27, 2020 .................................................... A-998

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 28, 2020 .................................................... A-1187

Transcript of Trial Proceedings held before the
    Honorable Paul A. Engelmayer, dated
        January 29, 2020 .................................................... A-1264

Verdict Sheet, dated January 29, 2020 ...................... A-1298.1

Order of the Honorable Paul A. Engelmayer, dated
    January 29, 2020 .................................................... A-1299

Defendant's Motion for Judgment of Acquittal or in
    the Alternative, Motion for New Trial, filed
        February 26, 2020 ................................................. A-1437

Motion for New Trial Based on Undisclosed Brady
    and Jencks Act Evidence, filed April 9, 2020 ....... A-1473

iii

                                                                    **Page**

Exhibit A to Motion -
Excerpts of Transcript of Proceedings, dated
August 9, 2018......................................................  A-1498

Exhibit B to Motion -
Report of Violations of New York City's Housing
Maintenance Code .................................................  A-1512

Exhibit C to Motion -
Report of Violations of New York City's Housing
Maintenance Code .................................................  A-1513

Exhibit D to Motion -
HPD's Housing Maintenance Code Violations
User Guide .............................................................  A-1514

Exhibit E to Motion -
Report re: New York Civil Litigation – Joseph
Soleimani ...............................................................  A-1548

Exhibit F to Motion -
Report re: New York Civil Litigation – Elie
Gabay .....................................................................  A-1549

Exhibit G to Motion -
Glossary of Terms for Litigation Status Report
from HPD.................................................................  A-1550

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated April 9, 2020...............  A-1552

Letter from Kedar S. Bhatia, Assistant United States
Attorney to the Honorable Paul A. Engelmayer,
dated May 1, 2020 re: Trial Exhibits ....................  A-1554

Government's Exhibits:

GX 101-
GateGuard Account Opening Documents .............  A-1555

GX 102 -
GateGuard Bank Statements...................................  A-1559

iv

Page

GX 103-
Friend or Fraud Account Opening Documents ...... A-1581

GX 104-
Friend or Fraud Bank Statements .......................... A-1585

GX 105-
Touchless Labs Account Opening Documents ...... A-1609

GX 106-
Touchless Labs Bank Statements........................... A-1613

GX 107 -
Ari Teman Account Opening Document................ A-1629

GX 108-
Ari Teman Bank Statements ................................... A-1631

GX 110-
April 19, 2019 2:37 PM Surveillance
Photographs ........................................................... A-1649

GX 111-
April 19, 2019 6:00 PM Surveillance
Photographs ........................................................... A-1652

GX 112-
May 8, 2019 3_04 PM Surveillance
Photographs ........................................................... A-1655

GX 113-
Bank Records Spreadsheet
(CD-Rom)*........................................................... A-1657.1

GX 114 -
Returned Check Records ....................................... A-1658

GX 121 -
ABJ Lenox Account Opening Document .............. A-1660

---

* GX 113 is a Microsoft Excel file. CD-Rom with the Excel
spreadsheet provided to Court and Service parties.

v

**Page**

GX 122 -
ABJ Lenox Bank Statements ................................. A-1661

GX 123 -
ABJ Milano Account Opening Documents ........... A-1669

GX 124 -
ABJ Milano Bank Statements................................ A-1670

GX 127 -
May 2, 2019 Letter - ABJ Lenox .......................... A-1678

GX 129 -
May 2, 2019 Letter - ABJ Milano......................... A-1679

GX 130 -
ABJ Lenox Checks ................................................ A-1680

GX 131 -
ABJ Milano Checks............................................... A-1682

GX 141 -
18 Mercer Account Opening Documents .............. A-1685

GX 142 -
18 Mercer Bank Statements.................................. A-1694

GX 143 -
April 4, 2018 Check from 18 Mercer Equity to
GateGuard.............................................................. A-1699

GX 144 -
518 W 204 Account Opening Documents ............. A-1700

GX 145 -
518 W 204 Bank Statements................................. A-1707

GX 146 -
January 31, 2018 Check from 518 W 204 to
GateGuard.............................................................. A-1725

vi

**Page**

GX 147 -
March 28, 2019 Check from 518 West 205 to
GateGuard............................................................ A-1726

GX 150 -
Affidavit.............................................................. A-1727

GX 201 -
March 28, 2019 Check from Coney Realty to
GateGuard............................................................ A-1728

GX 202 -
March 28, 2019 Check from 18 Mercer Equity to
GateGuard............................................................ A-1729

GX 203 -
April 19, 2019 Check from 518 West 205 to
GateGuard............................................................ A-1730

GX 204 -
April 19, 2019 Check from ABJ Milano to
GateGuard............................................................ A-1733

GX 205 -
April 19, 2019 Check from ABJ Lennox to
GateGuard............................................................ A-1739

GX 206 -
April 19, 2019 GateGuard Counter Deposit.......... A-1757

GX 401 -
September 9, 2017 E-mail - 'We're Live' ............. A-1758

GX 402 -
November 6, 2017 E-mail - 'Current Issues'......... A-1760

GX 403 -
March 9, 2018 E-mail - 'Ending GateGuard' ........ A-1761

GX 404 -
May 7, 2018 E-mail - 'All Communication in
Writing'................................................................ A-1762

vii

**Page**

GX 405 -
May 22, 2018 E-mail - 'GateGuard' ...................... A-1763

GX 406 -
August 26, 2018 E-mail - 'Dispute on Charge...' .. A-1765

GX 407 -
September 18, 2018 E-mail - 'Sublet Spy Hits...' . A-1767

GX 408 -
December 14, 2018 E-mail - 'Notice of Intent' ..... A-1773

GX 409 -
June 14, 2019 GateGuard Invoice ......................... A-1775

GX 409A -
Invoices (1) .............................................. A-1777

GX 409B -
Invoices (2) .............................................. A-1785

GX 409C -
Conversation between Teman and Soleimani ........ A-1786

GX 412 -
January 1, 2018 E-mail - 'Tenant Ana Esterg' ....... A-1787

GX 413 -
January 19, 2018 E-mail - 'Invoice Sent' .............. A-1788

GX 414 -
January 24, 2018 E-mail - 'Form for the 10
Buildings' .............................................. A-1791

GX 415 -
March 25, 2018 E-mail - 'Invoice for 20
Buildings' .............................................. A-1795

GX 416 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (1) ....................................... A-1815

viii

**Page**

GX 417 -
March 26, 2018 E-mail - 'Invoice for 20
Buildings' (2) ......................................................... A-1820

GX 418 -
March 27, 2018 E-mail - 'Proof it's Your...' .......... A-1829

GX 431 -
April 4, 2018 E-mail - 'Invoice' ............................ A-1831

GX 441 -
GateGuard Terms and Conditions........................... A-1834

GX 442 -
April 2, 2018 E-mail - 'References' ....................... A-1856

GX 443 -
January 7, 2019 E-mail - 'Contract' ....................... A-1862

GX 501 -
Bank Records Stipulation ...................................... A-1868

GX 702 -
January 2, 2019 WhatsApp Messages ................... A-1872

GX 704 -
April 2, 2019 WhatsApp Messages ....................... A-1874

GX 727 -
April 2, 2019 Whatsapp Messages (2).................... A-1875

GX 728 -
April 3, 2019 Whatsapp Messages ........................ A-1876

GX 729 -
April 10, 2019 WhatsApp Messages ..................... A-1877

Defense Exhibits:

DX 2 -
Payment Terms (1/27/2019)................................... A-1880

DX 14 -
October 11, 2018 E-mail – 'ABJ Properties'.......... A-1887

ix

**Page**

DX 15 -
October 22, 2018 E-mail - 'SubletSpy hits' .......... A-1889

DX 16 -
'Notice of Hold' ....................................... A-1892

DX 29 -
Affidavit ................................................. A-1893

DX 36 -
March 28, 2018 E-mail – 'Invoice for 20
Buildings' ............................................... A-1894

DX 49 -
Declaration ............................................. A-1902

DX 51 -
Chase Information Request.................... A-1903

DX 52 -
Chase Information Request.................... A-1904

DC 62 -
March 9, 2018 E-mail Correspondence ................. A-1928

DX 70 -
GateGuard Logs ...................................... A-1930

DX 71 -
May 22, 2018 E-mail – 'Re: Gateguard' ............... A-1932

Order of the Honorable Paul A. Engelmayer, dated
May 6, 2020 .......................................... A-1933

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated May 8, 2020 ............... A-1935

Opinion and Order of the Honorable Paul A.
Engelmayer, dated June 5, 2020 ........................... A-1937

Letter from Joseph A. DiRuzzo, III to the Honorable
Paul A. Engelmayer, dated June 29, 2020 ............. A-2044

x

| | Page |
|---|---|
| Sentencing Memorandum and Motion for Downward Variance, filed July 7, 2020 | A-2045 |
| Exhibit 1 to Sentencing Memorandum - Letter from Dr. Rami Cohen, M.D to the Honorable Paul A. Engelmayer, dated June 29, 2020 | A-2070 |
| Exhibit 2 to Sentencing Memorandum - Letter from Juhan Sonin to the Honorable Paul A. Engelmayer, dated July 6, 2020 | A-2074 |
| Exhibit 3 to Sentencing Memorandum - Letter from Jeffrey Katz to the Honorable Paul A. Engelmayer | A-2076 |
| Exhibit 4 to Sentencing Memorandum - Letter from Oliver Josephs t to the Honorable Paul A. Engelmayer, dated June 6, 2020 | A-2077 |
| Exhibit 5 to Sentencing Memorandum - Letter from Thomas Orosz to the Honorable Paul A. Engelmayer | A-2079 |
| Exhibit 6 to Sentencing Memorandum - Letter from David Diwby to the Honorable Paul A. Engelmayer | A-2080 |
| Exhibit 7 to Sentencing Memorandum - Letter from Nachum Klar to the Honorable Paul A. Engelmayer, dated July 6, 2020 | A-2082 |
| Exhibit 8 to Sentencing Memorandum - Letter from Anthony Zachariadis to the Honorable Paul A. Engelmayer, dated July 6, 2020 | A-2084 |
| Exhibit 9 to Sentencing Memorandum - eJewish Philanthrophy- Coverage of Teman's Award | A-2085 |

xi

**Page**

Exhibit 10 to Sentencing Memorandum -
HarvardX Verified Certificate of Achievement,
issued May 11, 2020 .............................................. A-2094

Exhibit 11 to Sentencing Memorandum -
Letter from Avi Ganz to the Honorable Paul A.
Engelmayer, dated July 7, 2020............................. A-2095

Exhibit 12 to Sentencing Memorandum -
Letter from Steven Oved to the Honorable Paul
A. Engelmayer, dated June 15, 2020 ..................... A-2098

Exhibit 13 to Sentencing Memorandum -
Letter from Rabbi Chaim Lipskar to the
Honorable Paul A. Engelmayer, dated
July 7, 2020............................................................ A-2099

Exhibit 14 to Sentencing Memorandum -
Letter from Jonathan Lubin to the Honorable
Paul A. Engelmayer .............................................. A-2101

Exhibit 15 to Sentencing Memorandum -
Letter from Talia Reiss to the Honorable Paul A.
Engelmayer ............................................................. A-2103

Exhibit 16 to Sentencing Memorandum -
Letter from Rivka Korf to the Honorable Paul A.
Engelmayer ............................................................. A-2104

Exhibit 17 to Sentencing Memorandum -
Letter from Russell DiBona to the Honorable
Paul A. Engelmayer .............................................. A-2105

Letter from Justin K. Gelfand to the Honorable Paul
A. Engelmayer, dated September 8, 2020.............. A-2107

Appearance of Counsel, dated November 2, 2020 .... A-2108.1

Letter from Justin Harris to the Honorable Paul
Engelmayer, dated November 2, 2020................... A-2108.2

xii

**Page**

Exhibit B to Letter -
Letter from Justine A. Harris to Kedar Bhatia and
Edward A. Imperatore, dated October 23, 2020 .... A-2108.6

Exhibit C to Letter -
Letter from Kedar S. Bhatia to Justine A. Harris,
dated October 29, 2020 ........................................ A-2108.9

Order of the Honorable Paul A. Engelmayer, dated
November 19, 2020 ................................................ A-2109

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 20, 2020 ................ A-2111

Letter from Justine Harris to the Honorable Paul A.
Engelmayer, dated November 30, 2020 ............... A-2113

Letter from Audrey Strauss to the Honorable Paul
A. Engelmayer, dated November 30, 2020 ........... A-2114

Transcript of Remote Conference Proceedings held
before the Honorable Paul A. Engelmayer, dated
December 1, 2020 ................................................... A-2116

Order of the Honorable Paul A. Engelmayer, dated
January 28, 2021 ................................................... A-2170

Letter Motion from Audrey Strauss to the
Honorable Paul A. Engelmayer, dated
April 23, 2021 ....................................................... A-2173

Exhibit A to Letter -
Proposed Order of Restitution .............................. A-2181

Exhibit B to Letter -
Proposed Preliminary Order of Forfeiture/Money
Judgment ............................................................... A-2185

Exhibit C to Letter -
Document - Finocchiaro 3503-19 ......................... A-2189

Exhibit D to Letter -
Revised Document - Finocchiaro 3503-19 ............ A-2190

xiii

Page

Exhibit E to Letter -
Affidavit of Karen Finocchiaro, dated
April 2, 2021 ......................................................... A-2191

Letter from Andrew J. Frisch to the Honorable Paul
A. Engelmayer, dated April 23, 2021 ................... A-2195.1

Attachment to Letter -
*Curriculum Vitae* of Richard M. Fraher................. A-2195.3

Letter Motion to Vacate Conviction from Andrew J.
Frisch to the Honorable Paul A. Engelmayer,
dated April 28, 2021 ............................................... A-2196

Exhibit A to Letter Motion -
Document - Finocchiaro 3503-19 ......................... A-2211

Exhibit B to Letter Motion -
Revised Document - Finocchiaro 3503-19 ............ A-2213

Exhibit C to Letter Motion -
E-mail Correspondence, dated
November 30, 2020 ............................................... A-2215

Exhibit D to Letter Motion -
E-mail Correspondence, dated March 10, 2021 .... A-2217

Exhibit E to Letter Motion -
E-mail Correspondence, dated March 12, 2021 .... A-2219

Exhibit F to Letter Motion -
Copies of Various Cashier's Checks ...................... A-2221

Order of the Honorable Paul A. Engelmayer, dated
May 5, 2021 .......................................................... A-2223

Letter from Andrew J. Frisch to Kedar Bhatia, dated
May 12, 2021 ........................................................ A-2225

Annexed to Letter -
Declaration of Richard M. Fraher, executed
May 11, 2021 ........................................................ A-2226

xiv

Page

Letter from Audrey Strauss to the Honorable Paul
    A. Engelmayer, dated June 9, 2021 ...................... A-2236

Letter from Andrew J. Frisch to the Honorable Paul
    A. Engelmayer, dated June 14, 2021 .................... A-2246.1

Letter from Audrey Strauss to the Honorable Paul
    A. Engelmayer, dated June 29, 2021 .................... A-2246.4

Transcript of Conference Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    July 9, 2021........................................... A-2247

Sentencing Submission Letter from Susan G.
    Kellman to the Honorable Paul A. Engelmayer,
    dated July 16, 2021 .................................. A-2315

Transcript of Sentencing Proceedings held before
    the Honorable Paul A. Engelmayer, dated
    July 28, 2021......................................... A-2333

Notice of Appeal, dated August 2, 2021 ................... A-2458

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated March 3, 2022 ............ A-2459

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated April 12, 2022............. A-2462

Order of the Honorable Paul A. Engelmayer, dated
    April 13, 2022........................................ A-2463

Letter Motion from Ari Teman to the Honorable
    Paul A. Engelmayer, dated April 13, 2022............. A-2465

Letter from Eden P. Quainton to the Honorable Paul
    A. Engelmayer, dated April 13, 2022 ................. A-2467

Notice of Appearance, filed April 13, 2022 ............... A-2469

Letter Motion from Ari B. Teman to the Honorable
    Paul A. Engelmayer, dated April 14, 2022............. A-2470

xv

**Page**

Order of the Honorable Paul A. Engelmayer, dated
    April 15, 2022......................................................  A-2473

Emergency Letter Motion from Ari B. Teman to the
    Honorable Paul A. Engelmayer, dated April 20,
    2022 .......................................................................  A-2476

Order of the Honorable Paul A. Engelmayer, dated
    April 20, 2022......................................................  A-2479

Emergency Letter Motion from Ari B. Teman to the
    Honorable Paul A. Engelmayer, dated April 20,
    2022 .......................................................................  A-2481

Letter from Kedar S. Bhatia, Asst. United States
    Attorney to the Honorable Paul A. Engelmayer,
    dated April 21, 2022 ............................................  A-2482

Order of the Honorable Paul A. Engelmayer, dated
    April 21, 2022......................................................  A-2483

A.    **The Government Did Not Prove What It Alleged in the Indictment: That Teman "Deposited Counterfeit Checks"**

1.    *Overview*

An unauthorized remotely created check ("RCC") is not the same as a "counterfeit check." Indeed, the Federal Reserve Board's Federal Register Notice dated November 21, 2005 regarding amendments to its Regulation CC states that RCC's "typically are created when the holder of a checking account authorizes a payee to draw a check on that account but does not actually sign the check." *See* Proposed Defense Exhibit A (excluded by this Court before trial).[2] The Federal Reserve Board further explained that an RCC is sometimes called a "telecheck," a "preauthorized draft[]," and a "paper draft." *See id.* at n. 1. The term "counterfeit check" appears nowhere in the notice filed in the Federal Register or in the federal regulations governing remotely created checks. *See id.* Rather, the notice explains that, "[i]n place of the signature of the account-holder, the remotely created check generally bears a statement that the customer authorized the check or bears the customer's printed or typed name." *Id.; see also* 12 C.F.R. § 229.2(fff) ("Definitions") ("Remotely created check means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose account the check is drawn").

An RCC—whether authorized or not—is not a "counterfeit check," regardless of what it is. In fact, the Electronic Check Clearing House Organization (ECCHO) rules governing breach of warranty claim processes and deadlines expressly apply different rules and different warranties for unauthorized RCCs and for counterfeit checks. *Compare* Rule 8 which "applies to an

---

[2] Also available at https://www.federalreserve.gov/boarddocs/press/bcreg/2005/20051121/attachment.pdf (last accessed February 25, 2019).

unauthorized remotely created check (RCC) otherwise referred to as an 'unsigned draft'" and Rule 9 claims which "are for signature items and refer to a forged or counterfeit check…").[3] In that regard, because all RCCs are created by the payee (not the paying bank), an RCC cannot, by definition, be "counterfeit."

In this case, Teman was not charged with depositing unauthorized RCCs. *See* Second Superseding Indictment (Doc. 55). The terms "remotely created check," "RCC," or "unauthorized" appear nowhere within the four corners of the indictment. (*Id.*) Rather, each count expressly alleges that Teman "deposited counterfeit checks." (Doc. 55). The grand jury did not find probable cause for bank fraud or wire fraud on the basis that Teman deposited unauthorized RCCs—a form of payment that is markedly different from conventional checks under both federal regulations and banking protocols. The grand jury only found probable cause that Teman "deposited counterfeit checks." (*Id.*) Thus, to sustain a conviction on any of the counts of conviction, the Government had to prove beyond a reasonable doubt that Teman "deposited counterfeit checks," *not* that Teman deposited unauthorized RCCs. (*Id.*)

To further illustrate the distinction, consider the following hypothetical: Sara gives John a check signed by Sara for $100. While John is on the way to the bank to deposit the check, Sara calls John, the two speak, and Sara expressly tells John that he is not authorized to deposit the check because she accidentally provided it under the mistaken belief that she still owed $100 to John. If John proceeds in depositing the check, he may well have deposited an *unauthorized* check. But regardless of the legality of John's conduct, the check he deposited cannot be characterized as

---

[3] *See* "Understanding 'Rule 8' and 'Rule 9' Warranty and Claims Processes" (Sept. 2018), available at https://www.eccho.org/wordpress/wp-content/uploads/Rules89WhitePaper52016final-2018.pdf (last accessed February 25, 2019).

"counterfeit" under any definition. In other words, "unauthorized" is not a synonym for "counterfeit" because, as this hypothetical demonstrates, a check—whether remotely created or not—can be *unauthorized* and yet in no way even arguably be *counterfeit*.

2.    *This Court Constructively Amended the Indictment*

The Fifth Amendment provides, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]" The "right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Stirone v. United States*, 361 U.S. 212, 218-19 (1960). "[A] constructive amendment occurs either where (1) an additional element sufficient for conviction is added, or (2) an element essential to the crime charged is altered[.]" *United States v. Dove,* 884 F.3d 138, 146 (2d Cir. 2018) (internal citations omitted).

"After an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002) (citing *Stirone*, 361 U.S. at 215-16) (emphasis added). As the Eighth Circuit has explained, "[a] constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007) (internal citations omitted). A "constructive amendment of an indictment is reversible error per se." *Id.*

"An amendment of form and not of substance occurs when the defendant is not misled in any sense, is not subjected to any added burdens, and is not otherwise prejudiced." *United States v. Cook*, 745 F.2d 1311, 1316 (10th Cir. 1984). A "court may amend an indictment in any way that does not strike any portion of the charging paragraph and thus does not change the charged offense." *Id.* "As further protection for the defendant, the amendment must be sufficiently definite and certain; it is not to take the defendant by surprise; and any evidence the defendant had before the amendment should be equally available after the amendment." *Id.*

Teman has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and dismissed as harmless error." *Stirone*, 361 U.S. at 217.

In determining whether an unconstitutional constructive amendment of an indictment has occurred, the focal point is "whether the change involves an expansion or a narrowing of the charges." *United States v. Hall*, 536 F.2d 313, 319 (10th Cir. 1976). "[T]he trial court is precluded from amending an indictment so as to...broaden the possible bases for conviction[.]" *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006). As the Tenth Circuit explained, "to decide that question, we therefore compare the indictment with the district court proceedings to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document." *United States v. Farr*, 536 F.3d 1174, 1180 (10th Cir. 2008) (reversing tax evasion conviction for constructive amendment of indictment).

In *Howard v. Daggett*, the Ninth Circuit grappled with similar circumstances. 526 F.2d 1388 (9th Cir. 1975). There, the defendant was charged with inducing two particular women, specifically named in the indictment, to engage in prostitution. *Id.* at 1389. However, the

Government's evidence at trial dealt with more than two women. *Id.* A jury instruction permitted conviction based on evidence regarding women other than the two named in the indictment. *Id.* at 1390. Reversing, the court explained,

> The grand jury might have indicted appellant in a general allegation, without specifying the women to whom his alleged illegal acts or purposes related. But it did not do so. To allow the jury to consider the evidence respecting the other alleged prostitutes was to allow the jury to convict of a charge not brought by the grand jury. The supplemental instruction constituted an impermissible amendment of the indictment that 'destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury.'

*Id.*

The Ninth Circuit is not alone in its insistence that the Government prove what it alleges in an indictment returned by a grand jury in order to secure a conviction. In *Farr*, a tax evasion case, "the district court essentially allowed the jury to consider two possible bases for conviction—the flawed one outlined in the indictment and another more accurate one added at trial." 536 F.3d at 1181. That court noted, "the government opted to include in its indictment particulars" and "the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that if an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." *Id.* Farr was charged with evading the quarterly employment tax for a business and his attorney waited until opening statement to argue that an individual cannot personally owe the employment taxes of the corporation. *Id.* Reversing the conviction because the district court gave a jury instruction that did not hold the Government to what the indictment alleged, the Tenth Circuit explained that the Government may have been "in a 'ditch' but it was a ditch created by the government's own charging document." *Id.* The

"charging document"—not the prosecution's conception of what the Executive Branch meant by certain terminology—was determinative. *Id.*

In instructing the jury as it did, this Court shifted the focus away from the language of the indictment itself—and instead impermissibly focused on Government counsel's *ex post facto* representation as to what the prosecution intended the phrase "counterfeit check" to mean. (*See* TR. at 887) ("That aligns with my understanding of the government's meaning of 'counterfeit' as presented to the grand jury"). The fatal flaw in that approach is that the charging document included particulars—namely that Teman committed all four counts by committing specific acts: "depositing counterfeit checks." (Doc. 55). By charging particulars the Government could not prove at trial (because the RCCs were not "counterfeit checks" regardless of whether they were authorized), the Government was no doubt "in a 'ditch' but it was a ditch created by the government's own charging document." *Farr*, 536 F.3d at 1181. As the Tenth Circuit explained in its thoughtful analysis of the constructive amendment issue, "to decide that question, we therefore *compare the indictment with the district court proceedings* to discern if those proceedings broadened the possible bases for conviction *beyond those found in the operative charging document.*" *Farr*, 536 F.3d at 1180 (emphasis added). In other words, the analysis is limited to comparing what actually transpired at trial and the four corners of the charging document— because the indictment reflects the words of the grand jury, regardless of what the prosecution may have intended.

By refusing to require the jury to find that Teman "deposited counterfeit checks," this Court unconstitutionally broadened the bases for possible conviction. *See Brooks*, 438 F.3d at 1237 ("[T]he trial court is precluded from amending an indictment so as to...broaden the possible bases

for conviction"); *see also United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir. 1991) ("Any 'broadening [of] the possible bases for conviction from that which appeared in the indictment is fatal. It is reversible per se") (internal citations omitted); *Whirlwind Soldier*, 499 F.3d at 870 (Eighth Circuit explaining that "a constructive amendment of an indictment is reversible error per se).

Even more, in doing so, this Court struck a portion of the charging paragraph as to each count. *See Cook*, 745 F.2d at 1316 (a "court may amend an indictment in any way that does not strike any portion of the charging paragraph and thus does not change the charged offense"). This too constitutes reversible error.

The Second Circuit has noted that "an indictment drawn in more general terms may support a conviction on alternate bases, even though an indictment with specific charging terms will not." *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988). The indictment in this case could not be more specific: it alleged that Teman "deposited counterfeit checks" as the manner and means on which both the bank fraud and wire fraud counts are premised. *See also United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997) (where indictment alleging conspiracy to possess with intent to distribute controlled substances involving cocaine and methamphetamine, jury instruction that permitted conviction on basis of marijuana transaction was an unconstitutional constructive amendment because defendant "was not given notice of the core criminality to be proven at trial").

The bottom line is this: an RCC—even if unauthorized—is not a counterfeit check. The grand jury did *not* charge Teman with committing bank fraud or wire fraud by depositing unauthorized checks or RCCs. Nevertheless, this Court permitted the jury to convict on these grounds, without any factual finding that Teman deposited a single counterfeit check, as charged

11

in the indictment. While this forms the basis for a new trial under Rule 33 (*see infra*), this also forms the basis for a judgment of acquittal because the Government failed to carry its burden of proving that Teman deposited counterfeit checks. In this case, the actions of this Court broadened the possible bases for conviction from the bases which appeared within the four corners of the indictment—Teman could be convicted for depositing unauthorized RCCs despite such RCCs not being "counterfeit checks." *See United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014) ("A constructive amendment occurs where the actions of the court 'broaden the possible bases for conviction from that which appeared in the indictment'") (quoting *United States v. Banki*, 685 F.3d 99, 118 (2d Cir.2011), *as amended* (Feb. 22, 2012) (internal quotation marks omitted)). "Even if an indictment might have been drawn in more general terms to encompass the ultimate conviction, where 'only one particular kind of [criminal conduct] is charged ... a conviction must rest on that charge and not another.'" *Id*. (quoting *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir.1988) (internal quotation marks omitted)).

As a matter of law, "constructive amendments are *per se* violations of the Fifth Amendment that require reversal even without a showing of prejudice to the defendant." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996) (internal quotations and citations omitted).

        3.   *The Government Did Not Attempt to Establish—and Did Not Establish—That the RCCs Were "Counterfeit Checks"*

The record—both at the close of the Government's case and at the close of the defense case—contains no evidence upon which a reasonable jury could possibly conclude that the 29 RCCs at issue were "counterfeit checks." Indeed, over Teman's adamant objection at every opportunity, this Court did not require the jury to find that Teman "deposited counterfeit checks" as expressly alleged in the indictment. (*See* Doc. 55). Instead, even at the jury instructions

conference, this Court posited that "counterfeit in this case means created by the defendant without the authorization of the account holder, meaning the authorization of this particular check or the particular checks in question."[4] (TR. at 887). This Court continued, "[t]hat aligns with my understanding of the government's meaning of 'counterfeit' as presented to the grand jury." (*Id.*). Accordingly, rather than being required to conclude that the RCCs at issue were "counterfeit checks," the jury was incorrectly instructed it could convict Teman even if the Government did not prove the RCCs were "counterfeit"—as expressly alleged in the indictment—but did prove the checks were unauthorized RCCs—an allegation conspicuously absent from the indictment. This is manifest error which entitles Teman to a judgment of acquittal.

Even in the light most favorable to the Government, the evidence is insufficient to support a conviction on any count because there is no evidence whatsoever that the RCCs at issue were "counterfeit checks."

> 4. *Even Proof that Teman Deposited RCCs Without Authorization—a Fact Teman Adamantly Disputes and the Evidence Overwhelmingly Rebuts—is Insufficient to Survive a Rule 29 Motion Because the RCCs Did Not Contain any Material Misrepresentations*

All four counts of conviction expressly alleged that the bank and wire fraud was carried out "by means of false and fraudulent pretenses, representations, and promises." (Doc. 55.)

The Supreme Court has expressly held that "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'" *Williams v. United States*, 458 U.S. 279,

---

[4] Whether this Court constructively amended the indictment turns on a comparison between the four corners of the indictment and what transpired at trial. However, over Teman's objection, this Court focused the inquiry on what the prosecution presented to the grand jury regarding the meaning of the term "counterfeit checks." Teman has no way of verifying the accuracy of the Government's representations on this issue. Thus, to the extent this remains a relevant consideration, Teman moves this Court to permit him access to the grand jury transcripts or, in the alternative, Teman moves this Court to conduct an *in camera* review. Considering the prosecution also did not understand what an RCC was when it filed its motion *in limine* regarding seized check stock *after* the case was presented to the grand jury, it is unlikely the grand jury was instructed that "counterfeit check" meant unauthorized RCC.

284-85 (1982). The circuit courts have appropriately acknowledged and respected this limitation. *See, e.g., United States v. Briggs*, 939 F.2d 222, 226 (5th Cir. 1991) ("Although this reasoning has been criticized as overly technical, we are of course bound by it"). Indeed, as the Second Circuit has recognized, a "course of conduct consisting of simply depositing checks into a bank account where the depositor knows that he/she is not entitled to the funds does not alone constitute false or fraudulent pretenses or representations." *United States v. Rodriguez*, 140 F.3d 163, 168 (2d Cir. 1998).

Thus, it is black letter law that the act of depositing checks (or RCCs)—regardless of whether Teman believed he was entitled the funds or knew he was not—is insufficient to sustain a conviction for bank fraud or wire fraud. Instead, the checks themselves had to contain some material factual misrepresentation. *See id.* ("A misrepresentation is material if it is capable of influencing a bank's actions"). On this issue, the evidence could not be clearer.

The March checks each state: "Draw per contract, no signature required." The April checks each state: "Draw per contract, no signature required" followed by:

> "NOTE TO BANK: This is a valid check. You are required by law It
> Contract at gateguard.xyz/legal/terms.php accepted by above client.
> Contact us 212-203-3714 with questions[.]"

As the Bank of America witness readily admitted under oath on cross-examination, each of the RCCs was immediately identifiable as an RCC:

Q. And as you testified, those were two of the 29 total RCCs that are at issue in this case; correct?

A. That is correct.

Q. And you're familiar with all of the RCCs, not just the two that we discussed; correct?

14

A. Correct.

Q. Okay. *And as we talked about yesterday, all 29 of those RCCs clearly bear indicia to the bank that they are, in fact, RCCs; correct?*

A. *Correct.*

(TR. at 270) (emphasis added).

As the undisputed testimony revealed, "[d]raw per contract, no signature required" simply referenced that these were RCCs.[5] Thus, unless there was no contract, this statement clearly cannot constitute a material misrepresentation (or a misrepresentation at all). And as the evidence clearly established, there was a contract between the relevant parties consisting of Terms and Conditions and Payment Terms. Indeed, the April checks correctly directed the bank to the contract by providing the URL and represented that the contract was accepted by the "above client"—all of which each of the three customers who testified at trial admitted under oath.

Specifically, Elie Gabay (Coney Realty) testified:

Q. January 23rd, you send a markup of terms and conditions with proposed changes; correct?

A. Yes.

Q. January 31st, eight days after that, you send in the check for the invoice?

A. That is accurate.

Q. And the invoice expressly says that you agree to the terms and conditions that we just read?

A. That's what the invoice says.

(TR. at 386-387).

---

[5] *See* 12 CFR Appendix E to Part 229: "Remotely Created Check[:]... A check authorized by a consumer... that is not created by the paying bank *and bears a legend on the signature line, such as "Authorized by Drawer,"* is an example of a remotely created check" (emphasis added).

Bonnie Soon Osberger (Mercer) testified:

Q. Following the show, when you were thinking about purchasing an intercom, did there

come a time when you saw the terms and conditions?

A. Yes.

Q. What was your reaction to them?

Q. It was very lengthy and I went through all of it.

(TR. at 421-422).

Soleimani (ABJ) testified:

Q. The bottom of the invoice expressly said that you agreed to be bound by the
terms and conditions; correct?

A. I did not see that at the time.

Q. That wasn't my question. You've seen it since then; correct?

A. Correct.

Q. And you'd agree with me that that's actually what it says; correct?

A. Yes.

(TR. at 591).

Finally, the evidence was undisputed that the contact number printed on each RCC was the

accurate phone number for GateGuard and the combination of GateGuard being indicated as the

payee and referring to itself as "us" further underscores that the checks contained no false or

fraudulent statements—much less any that are material.

Thus, while Teman clearly lacked the requisite *mens rea* to commit any of the charged

crimes, the bottom line is that a judgment of acquittal is warranted regardless of Teman's intent

because the checks did not contain any material misrepresentations.

### B.    The Government Did Not Establish Venue by a Preponderance of the Evidence

"Article III of the United States Constitution states that '[t]he Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed.'" *United States v. Magassouba*, 619 F.3d 202, 204 (2d Cir. 2010) (quoting U.S. Const. art. III, § 2, cl. 3). The Sixth Amendment demands that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const., amend. VI. As such, the "government *must* prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18 (emphasis added).

"Congress may prescribe specific venue requirements for particular crimes. Where it has not, as is the case here, we must determine the crime's *locus delicti.*" *United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014) (internal citation omitted). "[T]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Id.* (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). Accordingly, courts "must [1] initially identify the conduct constituting the offense ... and then [2] discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279 (1999). Venue is narrowly construed. *See United States v. Johnson*, 323 U.S. 273, 276 (1944).

"In determining whether an offense was committed in a particular district, we look 'to the nature of the crime alleged and the location of the act or acts constituting it.'" *Magassouba*, 619 F.3d at 205 (citing *United States v. Cabrales*, 524 U.S. 1, 5 (1998)). "In making this inquiry," this Court "'must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" *Id.* (quoting *Rodriguez-Moreno*,

526 U.S. at 279). The Second Circuit has emphasized that the focus of this inquiry is on the physical conduct—*i.e.*, the "essential conduct elements"—criminalized by Congress. *See United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005).

Further, in this Circuit, district courts must also apply the "substantial contacts" test to ensure that "the application of a venue provision in a given prosecution comports with constitutional safeguards[.]"*United States v. Saavedra*, 223 F.3d 85, 92-93 (2d Cir. 2000) (citing *United States v. Reed*, 773 F.2d 447, 481 (2d Cir. 1985)). The *Saavedra* court stated:

> The substantial contacts rule offers guidance on how to determine whether the location of venue is constitutional, especially in those cases where the defendant's acts did not take place within the district selected as the venue for trial. While it does not represent a formal constitutional test, *Reed* is helpful in determining whether a chosen venue is unfair or prejudicial to a defendant. This test takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding.

*Id.* at 93. To satisfy this test, there must be "more than some activity in the situs district; instead, *there must be substantial contacts*[.]" *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012) (internal quotation marks omitted and emphasis added).

### 1.    *Miami Beach Deposits (Counts 1 and 3)*

Generally, a criminal offense is committed when the offense has been completed. *See Toussie v. United States*, 397 U.S. 112, 115 (1970). And, regarding bank fraud and wire fraud, a scheme to defraud is complete when the proceeds have been received. *See United States v. Vilar*, 729 F.3d 62, 95 (2d Cir. 2013); *see also Pereira v. United States*, 347 U.S. 1, 7-9 (1954) (criminal act complete when the proceeds have been received and use of the mail or wires to obtain the proceeds satisfies the jurisdictional element).

In this case, to the extent there was a crime (which Teman adamantly contests), the crime was complete when Teman walked into a Bank of America branch in Miami Beach, Florida, and presented the RCCs and Bank of America credited the GateGuard bank account so that Teman had access to the funds. *Accord United States v. Sindona*, 636 F.2d 792, 802 (2d Cir. 1980) (finding that until the criminal defendant arranged to transfer the funds to his accounts at the Bank of Montreal, the crime was not complete and, therefore, these latter wires were sufficient for jurisdictional purposes); *see also United States v. Feldman*, 647 F.3d 450, 457 (2d Cir. 2011) (affirming sentence where defendant's convictions on "wire fraud counts were based on two wire transfers by the first [victim], two wire transfers by the fourth [victim], and one wire transfer by the fifth [victim], all to [defendant's] bank account"). Accordingly, venue is not appropriate in this district as the crime—if there even was a crime—was completed in Miami Beach, and this Court must grant Teman relief under Rule 29(c).

Furthermore, there were no "substantial contacts" with respect to Counts 1 and 3 in the Southern District of New York as the weight of the four *Reed* factors weighs heavily in favor of a determination that the Southern District of Florida is the proper venue. *First,* the site of the alleged crime as to Counts 1 and 3 was Miami Beach. *Second,* the elements of bank fraud and wire fraud, and their very nature, demonstrate that the alleged crimes were complete when the allegedly counterfeit checks were deposited into GateGuard's Bank of America account. *See Toussie, supra. Third,* the place where the effect of the allegedly criminal conduct occurred was Miami Beach by virtue of Bank of America reflecting that GateGuard had its address in Miami Beach. *Fourth,* the Southern District of New York was less suitable a venue than the Southern District of Florida given the nexus of GateGuard's Bank of America account to Florida. To be clear, the evidence

was undisputed that the criminal acts alleged in the indictment—the depositing of "counterfeit checks"—occurred entirely in the Southern District of Florida, not in the Southern District of New York. While no single factor is controlling, the overall weight of the *Reed* factors militates strongly in favor of concluding that the Southern District of Florida was the appropriate venue for counts 1 and 3.

2.    *Mobile Deposits (Counts 2 and 4)*

To the extent that there was a crime (again, a point Teman adamantly contests), the crimes were complete upon the execution of the mobile deposits that underlie Counts 2 and 4. *See* discussion *supra* regarding Counts 1 and 3.

At trial, the only evidence linking the mobile deposits to the Southern District of New York was Government Exhibit 113 (a Microsoft Excel spreadsheet file). Indeed, the Bank of America witness testified that Bank of America's internal servers are located in Texas. (TR. at 203:24-25). In Government Exhibit 113, under a tab labeled "Device," there was a column (column P) that reflected locations. A sampling of the locations (rows 1-53) appears as follows:



But no witness testified as to the location of the mobile deposits and Government counsel notably failed to question the Bank of America witness if the mobile deposits actually occurred at a location that would fall within the Southern District of New York.

Notwithstanding the complete absence of any witness testimony as to the location of the mobile deposits, the prosecution argued that "New York" (as used in Government Exhibit 113) means "New York County." (*See* TR. at 704). However, a close inspection of Government Exhibit 113 reveals that the listed locations cannot refer to *county* as the exhibit lists, for example, "Miami Beach, FL" (*not* "Miami-Dade County"), "Brooklyn, NY" (*not* "Kings County"), and "Orlando, FL" (*not* "Orange County").

Thus, the exhibit cannot be used to establish that "New York" meant "New York County." But that is precisely what the prosecution represented. (*See* TR. at 704). Instead, at most, the exhibit could be used to establish "New York City" at large, which, by definition, includes both the Southern District of New York and the Eastern District of New York. (If venue lies exclusively in the Eastern District of New York, venue does *not* lie in the Southern District of New York.) Accordingly, the Government has failed to meet its evidentiary burden with respect to Counts 2 and 4 and a judgment of acquittal must be entered in favor of Teman.

Furthermore, the Government also failed to introduce any evidence whatsoever regarding the accuracy of geolocation techniques that rely on internet protocol (IP) addresses. And especially in the absence of specific, compelling testimony about the accuracy of the geolocation tools used in a particular case, federal courts have been appropriately resistant to relying on IP address geolocation data. *See, e.g., Celestial Inc. v. Swarm Sharing Hash*, Case No. CV 12-00204 DDP (SSx) (C.D.CA. May 1, 2012) (Order dismissing civil case based on information presented to court by the party relying on IP address geolocation that determining "the physical location down to a city or ZIP code, however, is more difficult and less accurate because there is no official source for the information, users sometimes share IP addresses and Internet service providers often base IP addresses in a city where the company is basing operations"). Thus, the Government's blind reliance on an Excel spreadsheet that purports to have IP address geolocation information without any testimony as to its reliability is insufficient to establish venue.

### C.    No Reasonable Jury Could Have Concluded Teman Acted with the Requisite Criminal Intent

Ariel Reinitz's testimony could not have been more clear:

A-1459

Q. Between January 2nd of 2019 and March 28, 2019, what if any advice did you give Mr. Teman about whether or not it was legal to deposit RCCs against the accounts of Coney, ABJ and Mercer?

A. My advice to Mr. Teman was that it was technically legal. His agreement, GateGuard's terms and payment terms gave GateGuard the explicit authority to deposit the RCCs drawn on the accounts of those entities you mentioned, Coney, ABJ and Mercer, but I was concerned that practically there may be consequences that Mr. Teman may encounter if the dispute from those customers was escalated by them.

TR. at 921.

Reinitz continued, "my advice to Mr. Teman, direct and unambiguous advice, was legally he had the authority to draw the payments, specifically to deposit RCCs drawn on the accounts of the entities we've mentioned [Coney, ABJ, and Mercer]...." (TR. at 921-922). This testimony was plainly undisputed—and the Government's argument that the jury should simply disbelieve this licensed attorney's under-oath testimony was insufficient to survive Teman's valid and timely Rule 29 motion.

Furthermore, the Government introduced into evidence the GateGuard Terms and Conditions, which like virtually every internet-based company's Terms and Conditions, included embedded hyperlinks—in this case, to GateGuard's Payment Terms, which the defense introduced into evidence through the testimony of Ariel Reinitz. The Payment Terms plainly and in simple English authorized the company to draw the RCCs at issue in this case. Thus, as a matter of law, there was no crime—and, at a bare minimum, Teman lacked the requisite *mens rea*. In that vein, if relying on a company's contract constitutes a felony, every CEO is at risk of criminal exposure—and that is clearly not what Congress intended or what the law provides.

As such, this Court should step in and grant a judgment of acquittal pursuant to Rule 29(c).

### III.    In the Alternative, this Court Should Grant Teman a New Trial

Rule 33(a) provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." When ruling on a motion for a new trial under Rule 33, this Court has much broader discretion than on a motion for judgment of acquittal under Rule 29. *See United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). This Court, therefore, *may* "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). "The Court's broad discretion empowers it to grant relief based not only on the sufficiency of the evidence at trial but on any other circumstance that might render the trial 'essentially unfair,' including trial errors." *United States v. D'Amelio*, 636 F.Supp.2d 234, 238 (S.D.N.Y. 2009).

### A.    The Rule of Sequestration was Violated

#### 1.    *Governing Law*

"Rule 615 codified a well-established common law tradition of sequestering witnesses as a means of discouraging and exposing fabrication, inaccuracy, and collusion." *United States v. Jackson*, 60 F.3d 128, 133 (2d Cir. 1995) (citations and quotations omitted). "Rule 615 grants a party the right to request the exclusion of a witness from the courtroom in order to prevent the witness from hearing the testimony of other witnesses. The rule seeks to prevent the 'tailoring' of a witness's testimony to that evidence given earlier in the trial and helps to uncover fabrication." *Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 762 (2d Cir. 1998), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) (internal citation omitted).

"Put differently, sequestration helps to smoke out lying witnesses: It is now well recognized that sequestering witnesses is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice." *United States v. Rhynes*, 218 F.3d 310, 317–18 (4th Cir. 2000) (internal quotation marks and citations omitted); *see also United States v. Rugiero*, 20 F.3d 1387, 1392 (6th Cir. 1994) (purpose of broad sequestration rule is "to preclude coaching or the influencing of a witness' testimony by another witness").

"This shaping, or tailoring of testimony, may occur maliciously in that a witness may deliberately change his testimony based upon what another witness says, or it may even occur subconsciously without the witness realizing he has been influenced by another's testimony." EXCLUSION OF JUSTICE: THE NEED FOR A CONSISTENT APPLICATION OF WITNESS SEQUESTRATION UNDER FEDERAL RULE OF EVIDENCE 615, 30 U. Dayton L. Rev. 63, (citing *Queen City Brewing Co. v. Duncan*, 42 F.R.D. 32, 33 (D. Md. 1966) ("[d]efendant's purpose in seeking the [sequestration] order is to secure the independent recollection . . . without that recollection having been influenced, properly or improperly")). "The subconscious influencing is common where one of two witnesses called by the same party may be sympathetic to the cause and may subconsciously mold his testimony into greater consistency with the other, or may unconsciously have his memory refreshed by what he has heard." *Id.*

If a witness is permitted to learn of "the testimony of another witness, he may try to adapt his statements to avoid inconsistencies, avoid the impact of cross-examination, or undercut the testimony of the other witness." *Id.* "If any of this tailoring were to occur, the trier of fact could be prevented from 'receiving the unvarnished truth.'" *Id.*

"While the purpose of the rule is apparent; its purview is not. Circuits have split on the question of whether the scope of Rule 615 extends beyond the courtroom to permit the court to preclude out-of-court communication between witnesses about the case during trial." *United States v. Solorio*, 337 F.3d 580, 592 (6th Cir. 2003) (internal quotation marks and citation omitted).

2.      *Violation of Rule 615 Requires a New Trial*

It appears that the Second Circuit has not explicitly weighed in on the matter.[6] This Court should adopt the broad view of Rule 615 and the Rule of Sequestration based on its common law origins and its aid to the truth-finding process. Indeed, some courts have concluded that Rule 615 will be frustrated if a sequestration order does not automatically include an instruction that the witnesses are not to discuss the case outside of the trial. *See United States v. Johnston,* 578 F.2d 1352, 1355 (10th Cir. 1978) (concluding that Rule 615 Rule must be interpreted to extend to communications outside the courtroom because failing to apply the Rule this way allows witnesses to "indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify"). *See also United States v. Prichard*, 781 F.2d 179, 183 (10th Cir. 1986) ("sequestration order pursuant to Fed. R. Evid. 615 requires not only that witnesses be excluded from the courtroom, but that witnesses also refrain from discussing their testimony outside the courtroom").

While not expressly ruling on the issue, the Fourth, Fifth, and Sixth Circuits have indicated that they prefer the approach Teman advocates here. *See e.g., United States v. Milanovich*, 275 F.2d 716 (4th Cir. 1960), *rev'd in part on other grounds* 365 U.S. 551 (1961); *United States v. McMahon*, 104 F.3d 638 (4th Cir. 1997); *United States v. Womack*, 654 F.2d 1034 (5th Cir. 1981);

---

[6] The undersigned have shepardized Fed. R. Evid. 615, which resulted in 21 Second Circuit cases. None of the cases expressly state the side of the circuit split on which the Second Circuit stands.

*United States v. Green*, 293 F.3d 886 (5th Cir. 2002); *United States v. Rugiero,* 20 F.3d 1387 (6th Cir. 1994); *United States v. Solorio*, 337 F.3d 580 (6th Cir. 2003).

In *McMahon*, the Fourth Circuit reaffirmed its view on Rule 615 where a criminal defendant was charged with criminal contempt for violating a Rule 615 order. *McMahon*, 104 F.3d at 644. McMahon asserted that he was only instructed to stay out of the courtroom during his son's trial and that the Rule 615 order was not violated when he read notes taken by his secretary at the trial. *Id.* The Fourth Circuit rejected this argument and stated that "an instruction that he could not circumvent the sequestration order by reviewing trial transcripts would simply have stated the obvious... The Defendant knew about the sequestration order and understood its scope." *Id.* Accordingly, the *McMahon* court held that the witness willfully violated a Rule 615 order by obtaining communications about the trial, even though the judge had not expressly instructed him on this issue.

Furthermore, the Supreme Court has indicated[7] support for the approach here advocated. In *Perry v. Leeke*, 488 U.S. 272, 281 (1989), the Court stated that it is common for a witness to be told to refrain from discussing his testimony with anyone until after the end of trial. Such orders are viewed as:

> [A] corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections.

*Id.* at 281-82. The Supreme Court cited the Tenth Circuit opinions of *Johnston, supra,* and *United States v. Greschner*, 802 F.2d 373 (10th Cir. 1986), noting that these cases held that Rule 615

---

[7] While Supreme Court dictum is not binding, "it must be given considerable weight and cannot be ignored in the resolution of the close question[s] [courts have] to decide." *United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975).

extends beyond the courtroom. *Perry,* 488 U.S. at 281-82. Additionally, the Supreme Court quoted the Fourth Circuit's *Milanovich* decision:

> We wish to indicate our view, however, that ordinarily, when a judge exercises his discretion to exclude witnesses from the courtroom, it would seem proper for him to take the further step of making the exclusion effective to accomplish the desired result of preventing the witnesses from comparing the testimony they are about to give. If witnesses are excluded but not cautioned against communicating during the trial, the benefit of the exclusion may be largely destroyed.

*Id.* (quoting *Milanovich,* 275 F.2d at 720). Accordingly, this Court should adopt the broad approach in construing Rule 615.

There can be no doubt that Rule 615 was violated here. Both counsel for the Government and the Government's case agent who was also a fact witnesses that the Government was potentially calling at trial (*see* TR. at 521), spoke to the Government's witness (Soleimani) about his testimony. Making matters worse, the timing of the Rule 615 violation only exacerbated the problem, as Soleimani's testimony was discussed during the middle of his direct examination on topics of *potential cross-examination* by defense counsel. This violation of 615 was just as egregious (if not more so) than the violation in *McMahon*. And, as in *McMahon*, the fact that Rule 615 had been violated even though the Court failed to instruct Soleimani on this issue, is of no moment.

Moreover, even if this violation of Rule 615 was unintentional (a point Teman in no way concedes), Soleimani's testimony could have been subconsciously shaped without Soleimani realizing he had been influenced by his conversation the Government. *See Queen City Brewing Co.,* 42 F.R.D. at 33. Indeed, the salutary goal of Rule 615 is to minimize the possibility that a witness is "adapt[ing] his statements to avoid inconsistencies, avoid[ing] the impact of cross-examination, or undercut[ing] the testimony of the other witness." EXCLUSION OF JUSTICE,

*supra.* But that is what happened here, as the purported purpose of the telephonic conversation with Soleimani was to discuss "some facts that [the Government] thought might come up in the trial" and to address "possible prior inconsistent statements." (TR. at 538). This, in turn, operated to disarm Teman's cross-examination and to preclude Teman the opportunity to call the NYPD detective who interviewed Soleimani. (*See* TR. at 516).

Furthermore, in the Second Circuit, the "burden to demonstrate lack of prejudice, or harmless error, properly falls on the party that had opposed sequestration." *Jackson*, 60 F.3d at 136. While the Government did not expressly oppose Teman's invocation of Rule 615, under the circumstances it necessarily follows that the Government (as the party violating Rule 615) must be the one to demonstrate the lack of prejudice—but it cannot do so. This case was a close one and could very well have resulted in a complete defense verdict. Under the circumstances of such a hotly contested trial, effective cross-examination of Soleimani and/or being able to call an NYPD detective to impeach Soleimani's testimony could very well have swung the pendulum in Teman's favor. The Government cannot carry its burden and, thus, this Court should enter an order granting Teman a new trial.

###### B.    Teman's Expert Should Not Have Been Excluded

Teman's expert witness's testimony was clearly relevant concerning whether the checks at issue were "counterfeit" or were, instead, RCCs (or, at worst, unauthorized RCCs). Indeed, Davis's testimony would have been that the checks were not "counterfeit" as alleged in the indictment. This testimony—which fully complied with Federal Rule of Evidence 702—would have gone to the very core of the allegations that the Government contended were criminal. This testimony fully complied with Federal Rule of Evidence 702. And, this testimony would not have invaded the

province of the jury (as the Government incorrectly argued) as Rule 704(a) expressly provides that an "opinion is not objectionable just because it embraces an ultimate issue." *See also Restivo v. Hessemann*, 846 F.3d 547, 578 (2d Cir. 2017).

Moreover, with respect to bank procedures in general, and RCCs in particular, Davis's "specialized knowledge, [his] testimony [would have] be[en] extremely valuable and probative." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). To that end, Davis's expert testimony would deal with matters not within "the ken of the average juror," *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991) and, as such, was improperly excluded.

Furthermore, at the jury instructions conference, this Court expressly explained, "counterfeit in this case means created by the defendant without the authorization of the account holder, meaning the authorization of this particular check or the particular checks in question." (TR. at 887). And this sentiment was conveyed to the jury. However, Davis would have testified that RCCs may be authorized by contract without subsequent authorization for each particular RCC provided the fees were otherwise due and the contractual terms allowed for the company to obtain those funds by using an RCC.

The Due Process Clause requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." *Cal.fornia v. Trombetta*, 467 U.S. 479, 485 (1984). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element

of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Based on the allegations in the indictment and especially in a case where the Government repeatedly described the 29 RCCs at issue as "fake checks," Teman should have been permitted to introduce testimony that the RCCs were not counterfeit checks. *See Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) ("the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" and "that opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence…when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing") (internal citations omitted).

By preventing Teman from introducing this testimony, Teman was deprived of his opportunity to fully present a defense which, given that this case was such a close one, militates in favor of finding that a new trial is warranted.

### C.    An Alternate Juror Lied During *Voir Dire*

This Court should grant a new trial because an alternate juror lied during *voir dire*, depriving Teman of his constitutional right to a fair trial. Specifically, Juror #13 (as designated by juror number during trial) did not acknowledge knowing Teman or GateGuard when asked under oath, despite this juror's initiating contact with Teman via social media (LinkedIn) *before* trial. Furthermore, Juror #13 appears to be a direct business competitor of Teman/GateGuard—at a minimum requiring further inquiry by the Court on this issue.

"*Voir dire* is an important method of protecting a defendant's right to trial by an impartial jury." *United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989) (citing *McDonough*

*Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554 (1984)). The Second Circuit has held "that the defense deserves a full and fair opportunity to expose bias or prejudice on the part of veniremen." *Id.* (internal quotation marks omitted) (quoting *United States v. Barnes,* 604 F.2d 121, 139 (2d Cir.1979); *United States v. Robinson,* 475 F.2d 376, 380–81 (D.C.Cir.1973)). "[T]here must be sufficient information elicited on voir dire to permit a defendant to intelligently exercise not only his challenges for cause, but also his peremptory challenges, the right to which has been specifically acknowledged by the Supreme Court despite the lack of a constitutional statutory source." *Barnes*, 604 F.2d at 142 (citing *Swain v. Alabama*, 380 U.S. 202 (1965)).

"[D]eliberate concealment or purposefully incorrect responses during *voir dire* suffice to show a prejudicial impairment of the right to the exercise of peremptory challenges." *Colombo,* 869 F.2d at 151 (quoting *McCoy v. Goldston,* 652 F.2d 654, 658 (6th Cir. 1981)). Knowingly lying during the *voir dire* violates, *inter alia,* 18 U.S.C. § 1621, and subjects a juror to possible criminal contempt pursuant to 18 U.S.C. § 401, as well as to possible substantial restitution claims by the government. *See id.* A juror hiding the fact that he knows the defendant exhibits "a personal interest in this particular case that was so powerful as to cause the juror to commit a serious crime. Such an interest not only suggests a view on the merits and/or knowledge of evidentiary facts but is also quite inconsistent with an expectation that a prospective juror will give truthful answers concerning her or his ability to weigh the evidence fairly and obey the instructions of the court." *Id.* at 151-52 (footnote omitted). *See also United States v. Bynum,* 634 F.2d 768, 771 (4th Cir.1980) ("[c]ertainly when possible non-objectivity is secreted and compounded by the deliberate untruthfulness of a potential juror's answer on *voir dire,* the result

is deprivation of the defendant's rights to a fair trial.") (footnote omitted); *see also McCoy,* 652 F.2d at 659 (district judge shall presume bias where juror deliberately concealed information).

"[C]ourts cannot administer justice in circumstances in which a juror can commit a federal crime in order to serve as a juror in a criminal case and do so with no fear of sanction so long as a conviction results." *Columbo,* 869 F.2d at 152. To be clear, it is important for this Court to recognize that a juror's dishonesty during *voir dire* is not subject to harmless error analysis. *See id.* (remanding to determine only if the juror's answer was true or false; if false, Second Circuit determined that was sufficient for the "conviction to be vacated"); *see also United States v. Perkins,* 748 F.2d 1519, 1531-33 (11th Cir. 1984) (refusal to disclose that juror knew defendant gives rise to presumption of actual bias). Had Juror #13 not lied, Teman would have had the ability to strike that juror for cause and/or to exercise a peremptory challenge. While Juror #13 ended up as an alternate, it is impossible for this Court to conclude that this did not impact the overall composition of the panel to which Teman exercised his peremptory challenges.

Because the alternate juror lied, Teman is entitled to a new trial because Teman was denied access to accurate and honest information when exercising his peremptory strikes and when given the opportunity to strike jurors for cause. At a minimum, Teman requests an evidentiary hearing to determine whether the venire panel was influenced by the alternate juror who knew Teman and lied about it.

> **D.    Teman's Grounds for a Rule 29 Judgment of Acquittal Also Apply with Full Force to Teman's Request for a New Trial**

Teman respectfully incorporates herein each argument in support of his motion for a Rule 29 judgment of acquittal as an argument also in support of his motion for a new trial. In the event this Court denies Teman's motion for judgment of acquittal, Teman respectfully requests that this

33

Court consider those grounds (*e.g.* constructive amendment, venue, etc.) as sufficient grounds to grant Teman a new trial at a minimum.

## IV.    Conclusion

Based on the foregoing, Teman respectfully requests that this Court grant him a judgment of acquittal on all counts pursuant to Rule 29(c). In the alternative, this Court should enter an order granting Teman a new trial on all counts.

Respectfully submitted,

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com

— and —

*/s/ Joseph A. DiRuzzo, III*
Joseph A. DiRuzzo, III
NY Bar # 4417853
DIRUZZO & COMPANY
Joseph A. DiRuzzo, III
401 East Las Olas Blvd., Suite 1400 Ft.
Lauderdale, FL 33301
Telephone: (954) 615-1676
Facsimile: (954) 827-0340
jd@diruzzolaw.com

***Attorneys for Teman***

*/s/ Alan Dershowitz*
ALAN DERSHOWITZ*
1575 Massachusetts Avenue
Cambridge, MA 02138

***Of Counsel***

A-1471

*Member of the Massachusetts Bar and the United States Court of Appeals for the Second Circuit; will seek pro hac vice admission in this case*

A-1472

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
**Attorney for Teman**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:19-CR-696-PAE** |
| | ) | |
| **ARI TEMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR NEW TRIAL BASED ON UNDISCLOSED *BRADY* AND JENCKS ACT EVIDENCE

Defendant Ari Teman ("Teman"), by and through undersigned counsel, Justin Gelfand and Joseph A. DiRuzzo, III, respectfully moves this Court to grant a new trial based on *Brady* and Jencks Act evidence that was not disclosed to the defense.

### I.      Introduction

On January 19, 2020—less than 48 hours before trial—the Government first disclosed the existence of critical impeachment evidence regarding witness Joseph Soleimani ("Soleimani"). This evidence originated from a decision in a New York Housing Court action[1] that found Soleimani's company, ABJ Milano LLC, used dishonest tactics in attempting to evict an elderly, disabled tenant, Stanley Howell ("Howell"), from his apartment.

Recognizing the centrality of Soleimani's testimony—and his credibility—to its case, the Government immediately moved to preclude Teman from cross-examining Soleimani regarding

---

[1] *ABJ Milano LLC v. Stanley Howell*, 2018 NY Slip Op 2833. (Doc. 83-1).

his dealings with Howell. (Doc. 83). The Government represented that "there is nothing in [the Housing Court] Order to suggest that… Soleimani… acted dishonestly…[.]" (*Id.* at 3).

This Court was not yet convinced. On the first day of trial, this Court noted the importance of Soleimani's testimony to this case[2] and observed that the disclosed Housing Court Order "is indistinct if Soleimani is among the people dealing with the tenant." (TR. at 33). This Court directed the Government to "inquire of Soleimani *whether there was evidence in the housing court case that he was among the ABJ personnel who dealt with Howell*. If his answer leaves any doubt in your mind, you need to follow up and do so immediately. Then promptly report back to the Court and the defense." (*Id.* at 29) (emphasis added). This Court further explained that "the issue is whether there was evidence at the [Housing Court] proceeding…that he interacted with the tenant. *If there was evidence that he interacted with the tenant, this is coming in*." (*Id.* at 32) (emphasis added).

But the Government never followed up; instead, the Government continued to maintain that nothing in the Housing Court case was relevant to Soleimani's credibility. At trial, the Government questioned Soleimani about this issue:

> Q.    In 2018, did the housing court find in one case that your company had
>        misled a tenant about whether he could renew his lease?
> A.    Yes.
> Q.    And did you misrepresent anything to the tenant or was it others in your
>        company?
> A.    *It was others.*

(TR. at 502) (emphasis added).

---

[2] "The testimony of these witnesses [(Soleimani and Elie Gabay)] appears likely to be important at trial." (TR. at 24).

However, new evidence that the Government never disclosed to the defense reveals that the Government's representations regarding Soleimani and the evidence in the Housing Court case were false. The full record of the Housing Court case—specifically, Soleimani's under-oath testimony in that case—establishes Soleimani's *personal* involvement in his company's dealings with Howell.[3] And these actions by Soleimani are the very interactions upon which the Housing Court's findings are based.

This evidence cannot be reconciled with the Government's representations regarding Soleimani and his testimony at trial. This Court correctly anticipated the existence of additional impeachment evidence in the Housing Court case and ordered the Government to obtain it and make any necessary disclosures to the defense. But the Government failed to disclose this critical evidence—either because the Government disregarded this Court's order and failed to follow up or because the Government obtained this evidence and failed to disclose it to the defense.

As a result of the prosecution's leading question and Soleimani's responsive perjurious testimony, Teman was precluded from questioning Soleimani about Howell and the Housing Court case.

This is a textbook *Brady* and Jencks Act violation which materially prejudiced Teman's defense. The Government's suppression of this evidence prevented Teman from presenting to the jury critical evidence of Soleimani's credibility: that a court determined he was personally involved in using dishonest tactics to evict a vulnerable tenant, and that he perjured himself in this

---

[3] As discussed further *infra*, the underlying records of Soleimani's Housing Court testimony can only be obtained via written request to the New York County Civil Court Clerk—a process that can take several weeks. Even had Teman immediately sought this evidence upon the Government's disclosure of the Housing Court action (on the eve of trial), he would not have received the underlying evidence of Soleimani's testimony until after trial concluded. In any event, Teman reasonably relied on the Government's representations regarding the scope of this evidence and fully expected Government counsel to comply with this Court's order to seek out and disclose this evidence.

case during the prosecution's direct examination when testifying that only "others" were involved and that he was not.

This outcome—which this Court correctly anticipated in directing the Government to further investigate Soleimani's involvement with Howell—was clearly prejudicial to Teman. Indeed, this Court expressly and appropriately admonished the Government not to rely only on Soleimani's representations:

> I expect that you will not credulously take Mr. Soleimani's point of view on this... Realistically, if he is among the people interacting with the tenant, I think the safer course here is to... permit the line of [impeachment]..., *rather than creating an open appellate issue* about whether you too aggressively took Soleimani's side in...arguing... it was somebody else in his company who made the misrepresentations.

(TR. at 33) (emphasis added).

It also appears this was not the only evidence the Government suppressed. In the same Motion to Preclude (Doc. 83), the Government represented that even though Soleimani and witness Elie Gabay ("Gabay") were landlords with lengthy histories of tenant complaints and lawsuits, "there is *no indication* that *any* landlord-tenant complaints or lawsuits against Soleimani, Gabay, or their companies would be probative of their 'character for truthfulness or untruthfulness.'" (*Id.* at 3) (emphasis added). This important representation by the Government is also false. New evidence never disclosed to the defense reveals numerous actions against both Soleimani and Gabay that encompass dishonest business practices including "false certifications." The Government's motion also misrepresented the significance of Gabay being fined "treble damages," which constitutes a finding of *willful* fraud. Thus, in stark contrast with the Government's representations, this undisclosed evidence *is* probative of Soleimani's and Gabay's credibility and should have been presented to the jury through cross-examination by the defense.

4

## II.    Relevant Background

Teman proceeded to trial on a second superseding indictment charging him with two counts of bank fraud and two counts of wire fraud. (Doc. 55).

This case was tried before a jury commencing on January 22, 2020. On January 23 and January 24, the Government called Gabay and Soleimani as witnesses in its case-in-chief.

Before trial commenced, on January 19, 2020, the Government filed an under-seal motion[4] seeking an order prohibiting Teman from cross-examining Gabay and Soleimani about "lawsuits and regulatory actions filed against them and their respective companies in landlord-tenant actions." (Doc. 83). Regarding Soleimani, the Government represented to this Court: "The allegations against Soleimani cover a range of topics that plainly do not bear upon his credibility, including, among other things, complaints about 'slip and fall' accidents and the physical condition of housing." (*Id*. at 1-2). The Government then stated there was a single "Housing Court Case" in which the "allegations...center on a tenant who agreed to leave his apartment in exchange for a monetary payment." (*Id*. at 2). The Government couched the action by stating, "because Soleimani initiated negotiations with the tenant, his conduct constituted 'harassment' within the meaning of New York City Administrative Code § 27-2004(48)(f-2)." (*Id*.)

In seeking the prohibition on cross-examination, the Government expressly represented to the defense and this Court: "Here, there is no indication that any landlord-tenant complaints or lawsuits against Soleimani...would be probative of [his] 'character for truthfulness or untruthfulness.'" (*Id*. at 3). The Government continued:

> Neither the Order in the Housing Court Case nor the facts that underlie it is admissible under Rule 608(b). Although the Housing Court Case resulted in the issuance of an Order against Soleimani's business, there is nothing in that Order to

---

[4] This Court subsequently ordered the Government to file the motion on the public record. (*See* TR. at 23).

suggest that either Soleimani or his business acted dishonestly toward the tenant or in the housing proceeding before the housing court. The facts at issue are not probative of Soleimani's character for truthfulness or untruthfulness. At most, Soleimani's business improperly contacted the tenant in violation of New York City administrative code.

(*Id.*).

In advance of Soleimani's testimony, this Court expressly addressed Soleimani's conduct in the Housing Court Case. This Court explained:

> Soleimani's trial testimony here would not be meaningfully discredited merely because of an employee of his misled a tenant. But it is possible that Soleimani was among the employees who personally made that misrepresentation to Howell. If so, although the question under 403 is a close one under which a court could rule either way, I would then permit the defense at this trial, as a means of impeachment, to establish through a single question or two put to Soleimani that a judge found that in 2017, he had misled a tenant to believe wrongly that his lease could not be renewed... [A] targeted leading question that elicits from Soleimani the fact of this discrete finding by a judge that he misled a tenant on this subject would assist the jury to assess Soleimani's credibility without turning this proceeding into a trial within a trial about the episode relating to landlord ABJ and tenant Howell. And so, government, I will ask you to please inquire of Soleimani whether there was evidence in the housing court case that he was among the ABJ personnel who dealt with Howell. If his answer leaves any doubt in your mind, you need to follow up and do so immediately. Then promptly report back to the Court and the defense. I expect that if the answer is yes, that Soleimani was among the ABJ personnel who dealt with Howell, that Soleimani will have no difficulty on the stand here answering yes to a question from defense counsel about whether a judge so found. Obviously the government is at liberty to pull the poison and ask the question on direct as well. Cross-examination will then move on to other issues.

(TR. at 28-30).

This Court then expressly prohibited the defense from referring to these matters in opening statement and directed: "you are not to inquire into them in court unless and until I have given you the affirmative green light to do so." (*Id.* at 30). Government counsel stated: "We'll inquire with Mr. Soleimani and we'll give an update to the Court." (*Id.* at 33).

The Government never provided an update to the Court or to the defense. Instead, during its direct examination, Government counsel asked Soleimani:

> Q.    In 2018, did the housing court find in one case that your company had misled a tenant about whether he could renew his lease?
> A.    Yes.
> Q.    And did you misrepresent anything to the tenant or was it others in your company?
> A.    *It was others.*

(TR. at 502) (emphasis added).

But the Government hid the ball from Teman and the Court. Soleimani himself *was* personally and directly involved in the dealings with Howell which form the basis of the Housing Court's findings. And one need look no further than Soleimani's under-oath testimony in that proceeding—the contents of which were never disclosed to the defense under *Brady* or pursuant to the Jencks Act. Moreover, by only first disclosing the Housing Court decision on the eve of trial, the Government made it impossible for Teman to independently procure this evidence for use at trial.

As documented in the accompanying transcript (attached as Exhibit A), on August 8, 2018, Soleimani testified under oath in Housing Court that:

(a) He went to Howell's apartment and *personally* convinced Howell to sign the agreement on the spot (Housing TR. at 58, 60);

(b) He *personally* showed Howell other apartments to further induce Howell to accept the agreement and vacate the apartment (Housing TR. at 61);

(c) He *personally* signed the agreement (Housing TR. at 57-58);

(d) He was *personally* involved in drafting the agreement which the court found to be predatory (Housing TR. at 56-57); and

(e) He *personally* directed his attorney to evict Howell (Housing TR. at 55).

This evidence flies in the face of the Government's representation that "there is nothing in [the Housing Court] Order to suggest that... Soleimani... acted dishonestly..." (Doc. 83 at 3). And Soleimani's sworn testimony in the Housing Court—which the Government suppressed over this Court's explicit directive—directly contradicts Soleimani's blanket denial under oath in this case. Indeed, the Government represented to the defense and to this Court that the "facts at issue [in the Housing Court Case] are not probative of Soleimani's character for truthfulness or untruthfulness." (Doc. 83 at 3). But as it turns out, these facts are *highly probative* of Soleimani's character for truthfulness and willingness to deceive an elderly, disabled tenant.

The Government's representations to the defense and to this Court, and its failure to disclose impeachment evidence that was also discoverable under the Jencks Act, dramatically prejudiced Teman at trial. As a result of the Government's conduct, Teman was prohibited from cross-examining Soleimani about his dishonesty toward a vulnerable tenant. Teman was further precluded from confronting Soleimani with prior under-oath testimony that directly contradicted his testimony in this case during the Government's direct examination. By misleading this Court and the defense in its disclosures, the Government exploited the suppression of this evidence to its considerable advantage. This Court gave the Government the opportunity to ask a leading question to Soleimani which precluded the defense from cross-examining Soleimani about this topic. As a result, not only did the prosecution elicit perjurious testimony from Soleimani; the prosecution prevented the defense from exposing this perjury in front of this jury through cross-examination.

### III.    This Motion is Timely Pursuant to Federal Rule of Criminal Procedure 33(b)(1)

Pursuant to Rule 33(b)(1), "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Any other motion for

new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

This motion is grounded entirely on evidence that, to this day, has never been disclosed to Teman and that was only discovered by Teman after the 14-day Rule 33 deadline had passed. As such, this motion is timely as it is being filed before January 29, 2023. *See* Fed. R. Crim. P. 33(b)(1).

## IV.    This Court Should Grant a New Trial Based on the Government's *Brady* Violation

The United States Supreme Court and the Second Circuit have spoken forcefully about the Government's discovery obligations regarding the production of exculpatory and/or impeachment evidence. "The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment. Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (internal citations to *Brady* and *Giglio* omitted). Thus, it is black letter law that "[i]mpeachment evidence…as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

A prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). But, as the Supreme Court made clear in no uncertain terms,

> whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

A-1482

*Id.* at 437-38 (internal citation to *Brady* omitted).

Indeed, "the Government's obligations under *Brady* encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence favorable to the defense." *United States v. Meregildo*, 920 F. Supp. 2d 434, 438–39 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015); *see also United States v. Rodriguez,* 496 F.3d 221, 225-26 (2d Cir. 2007) ("This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions").

In *Giglio*, the Supreme Court explained that *Brady* "held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution." *Giglio v. United States*, 405 U.S. 150, 153 (1972). Courts have universally granted new trials where the Government violates *Brady* and/or *Giglio. See, e.g., United States v. Andrews*, 532 F.3d 900, 905 (D.C. Cir. 2008) ("If the undisclosed evidence is material, a new trial is required") (internal citations omitted); *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005) ("the Court has assumed that *Brady* violations that have affected the judgment of a jury normally will be remedied by a new trial . . . ."); *United States v. Cuffie*, 80 F.3d 514, 517 (D.C. Cir. 1996) ("Evidence is material if the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict") (internal citations omitted). "To demonstrate such a deprivation, a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140.

A.  The Government Suppressed Evidence

In this case, there is no question the Government suppressed evidence the defense would have used to impeach Soleimani. This Court imposed upon the Government an express obligation to "inquire of Soleimani *whether there was evidence in the housing court case that he was among the ABJ personnel who dealt with Howell*. If his answer leaves any doubt in your mind, you need to follow up and do so immediately. Then promptly report back to the Court and the defense." (TR. at 28-30) (emphasis added). The Court further warned the Government "not [to] credulously take Mr. Soleimani's point of view on this." (*Id.*). And Government counsel expressly acknowledged this duty imposed upon the prosecution by this Court: "We'll inquire with Mr. Soleimani and we'll give an update to the Court." (*Id.* at 33).

It is now apparent that the Government either ignored this Court's directive and failed to conduct this inquiry or conducted it and failed to disclose the evidence to the defense.

Rather than upholding its constitutional duty, the Government elicited misleading, if not perjurious, testimony in its direct examination of Soleimani.

> Q.  In 2018, did the housing court find in one case that your company had misled a tenant about whether he could renew his lease?
> A.  Yes.
> Q.  And did you misrepresent anything to the tenant or was it others in your company?
> A.  *It was others*.

(TR. at 502) (emphasis added).

There can be no question a *Brady* violation occurred here because it is immediately apparent from the Housing Court evidence that Soleimani *was* among the ABJ personnel who dealt with Howell. In fact, Soleimani was ABJ's sole witness in the Housing Court Case, and his testimony regarding his personal dealings with Howell forms the basis for the Housing Court's

11

ruling. This Court ordered the Government to seek out precisely this evidence. But the Government failed to do so.

The Government did not disclose the truth to the defense or to this Court—and, in doing so, prevented the truth from ever being known and considered by the jury.

### B.   The Evidence Is Favorable to the Defendant

This suppressed evidence—namely, Soleimani's personal involvement in a scheme to use dishonest tactics in an attempt to evict an elderly tenant, and his subsequent dishonest testimony in this case about his own involvement—is overwhelmingly favorable to Teman. The Government called Soleimani as a critical witness in its case-in-chief and asked the jury throughout trial to rely on the veracity of his claims.

The evidence personally implicating Soleimani in the Housing Court Case is, alone, profoundly favorable to Teman. But this was even more significant. On direct examination in this case, Soleimani *lied* about his involvement with Howell. He said only "others" in his company made misrepresentations to Howell. (TR. at 502). But the undisclosed *Giglio* material proves otherwise. Soleimani's own testimony in Housing Court establishes he was personally involved in the misrepresentations made to Howell which form the basis for the Housing Court's findings.

Had the Government disclosed this information to Teman—which was Constitutionally required and which this Court expressly ordered the Government to do—Teman would have established through cross-examination that Soleimani deceived Howell and was personally implicated in his company's dishonesty by a Housing Court judge. Teman would have further demonstrated to the jury that the Government's star witness lied under oath when questioned on direct examination in this case. A witness who lies directly to the jury loses all credibility with that

jury. *See United States v. Payne,* 591 F.3d 46, 60 (2d Cir.2010) ("Assessments of witness credibility and choices between competing inferences lie solely within the province of the jury. Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses") (internal quotation marks and citation omitted); *see also United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (a Court must defer to "the jury's assessment of witness credibility"); *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112–13 (2d Cir. 2015) (it is the jury's role to determine whether a witness is credible and to decide what weight to give to that witness's testimony).

### C. The Failure to Disclose this Evidence Resulted in Prejudice

Soleimani was the Government's critical witness. He personally made the initial complaint that led the NYPD to initiate a criminal investigation, his statements to law enforcement constituted the entire basis on which the Government obtained a criminal complaint against Teman, and his testimony at trial was critical to the Government's prosecution theory.

The credibility of the Government's witnesses was a key issue. At trial, the evidence clearly established that Coney Realty's Michael Haas swore in an affidavit to Signature Bank that Coney had *no knowledge* of GateGuard—a representation Haas' partner, Gabay, admitted under oath was *false*:

> Q.    Yes. You knew exactly who GateGuard was, as you've previously testified about?
> A.    Correct.
>         …
> Q.    And [in the affidavit] your company is telling the bank that you don't know who GateGuard is; correct?
> A.    That's what it says.

13

(TR. at 399-401). Evidence that another witness—Soleimani—also committed perjury would have been unambiguously favorable to Teman. *See Smith v. Cain*, 565 U.S. 73, 76 (2012) (evidence impeaching a witness is material when the witness's testimony is the only evidence linking the defendant to the crime).

And here, this prejudice is magnified because this Court specifically ordered the Government to learn and disclose this evidence to the defense—and to report back to this Court. Regardless of whether the Government disregarded this Court's order, or whether the Government obtained but did not disclose this evidence, the bottom line remains: the defense reasonably relied on the Government's representations and had no choice but to take the Government at its word as the Government first disclosed the Housing Court decision on a holiday weekend 48 hours before trial.

Instead, the Government not only failed to disclose this critical evidence but actually used a leading question to elicit materially false testimony from Soleimani on this precise issue. The concealment of this evidence from the defense—coupled with the false testimony elicited by the prosecution during the Government's direct examination of this witness—unambiguously affected the outcome at trial, especially since the evidence proves that the witness lied to *this jury*.

## V.    The Introduction of Perjured Testimony Alone Requires a New Trial

Where, as here, "the prosecution knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) (internal quotations omitted); *see also Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir. 1988) (question is whether the jury's verdict "might" be altered). If the Government knowingly permitted the

introduction of false testimony, reversal is "virtually automatic." *United States v. Stofsky*, 527 F.2d 237, 243 (2d. Cir. 1975). Indeed, even if the Government did not knowingly permit the introduction of false testimony, "once it is shown that a material witness has intentionally lied with respect to any matter, it is difficult to deny that the jury, had it known of the lie, 'might' have acquitted." *Id*. at 246-47.

In this case, there can be no denying that the Government knew—or, at a bare minimum, "should have known"—that Soleimani committed perjury. This Court had already imposed on the Government the specific duty to inquire about whether Soleimani personally dealt with Howell and the Government expressly acknowledged this task. The prosecution then proceeded to ask the leading question, "And did you misrepresent anything to the tenant or was it others in your company?" and Soleimani answered, "It was others." (TR. at 502). When the prosecutor asked this leading question, he, at a minimum, "should have known" the truth because the Government was ordered by this Court to learn the truth. Given that Soleimani was such a key witness in the Government's case-in-chief, the jury—if made aware of Soleimani's perjury—certainly "'might' have acquitted." *Stofsky*, 527 F.2d at 246-47. Indeed, the jury would likely have rejected the prosecution's consistent pleas to believe Soleimani's testimony and would have acquitted.

## VI.    The Government Also Violated the Jencks Act

The Government failed to disclose Soleimani's prior under-oath testimony about a very subject the Government elicited testimony about during its direct examination. By eliciting that testimony, Soleimani's testimony in the Housing Court Case fell within the scope of the Jencks Act. This violation alone necessitates a new trial.

Even if this Court were to determine that the Government's failure to disclose this evidence was inadvertent, the law requires a new trial. "The Supreme Court has stated that, '[s]ince courts cannot speculate whether (Jencks material) could have been utilized effectively at trial, the harmless-error doctrine must be strictly applied in Jencks Act cases.'" *United States v. Jackson*, 345 F.3d 59, 77 (2d Cir. 2003) (quoting *Goldberg v. United States*, 425 U.S. 94, 111 n.21 (1976) (internal quotations omitted)). As explained *supra*, this was far from harmless and the prejudice to Teman was substantial.

Thus, based on the Jencks Act violation alone, this Court should grant Teman a new trial.

## VII.    The Government Suppressed Additional Evidence

To this day, the Government has also failed to disclose additional evidence—the suppression of which also necessitates a new trial.

### A.    The Government Misrepresented the Scope of the Actions Against Soleimani and Gabay Which Encompass Claims of Dishonesty

The Housing Court evidence was not the only evidence the Government suppressed. As discussed *supra*, the Government moved to exclude all evidence concerning the involvement of Soleimani and Gabay in numerous tenant complaints, lawsuits, and regulatory actions. (*See* Doc. 83). In so doing, the Government unequivocally represented to the defense and to this Court that "there is *no indication* that *any* landlord-tenant complaints or lawsuits against Soleimani, Gabay, or their companies would be probative of their 'character for truthfulness or untruthfulness.' Routine landlord-tenant disputes such as complaints or lawsuits about appliances, conditions in a building, and rent charges *are not probative of the witnesses' truthfulness or untruthfulness*." (*Id.* at 3) (emphasis added).

At trial, this Court accepted the Government's representations and completely precluded Teman from cross-examining Soleimani and Gabay about these matters. In doing so, this Court explicitly relied on the Government's representations regarding the underlying evidence: "These violations relate to vermin, defective doors, and the perpetuation of hazards. These regulatory violations or alleged violations do not, however, bear on Soleimani's character for truth-telling. They are inadmissible to impeach his trial testimony." (TR. at 26). "As to Gabay, I will exclude the evidence proffered by the government... [The evidence] addressed in the government's letter does not involve false statements or falsehoods." (*Id.* at 30).

However, evidence never disclosed by the Government reveals that the Government's representations regarding these complaints and lawsuits were not true. Specifically, the New York City Department of Housing Preservation and Development ("HPD") has brought numerous claims against both Soleimani and Gabay that encompass "false certification of correction of violations." That is, both Soleimani and Gabay appear to be charged with falsely certifying—*under the penalties of perjury*—that housing violations in their respective buildings had been corrected, when, in fact, they had not.

Attached are reports generated from HPD's data showing violations of New York City's Housing Maintenance Code asserted against properties managed by Soleimani (Exhibit B) and Gabay (Exhibit C). These reports do confirm the Government's representation that Soleimani and Gabay are charged with violations including "vermin, defective doors, and the perpetuation of hazards." However, the Government failed to disclose that both Soleimani and Gabay are not charged merely with these code violations, but with *falsely certifying* such violations had been corrected. *See* HPD's Housing Maintenance Code Violations User Guide (Exhibit D) which

17

explains that "FALSE CERTIFICATION" status means: "The violation was certified as corrected by the Owner... HPD found that condition had not been properly corrected. The violation is open *and is subject to civil penalties for false certification.*" (*Id.*) (emphasis added).

Moreover, the Government failed to disclose that HPD has further initiated litigation against both Soleimani and Gabay for such false certifications. Attached as Exhibits E and F are reports generated from the HPD's data showing both Soleimani and Gabay personally named as defendants in New York Civil Court litigation initiated by HPD.[5] Also attached as Exhibit G is a litigation report 'Glossary' from HPD, demonstrating that the 'False Certification' and 'Comprehensive' cases brought against Soleimani and Gabay pertain to *false certifications* each has submitted.

Thus, contrary to the Government's representations, these are *not* "routine" landlord complaints. Rather, these "false certification" actions demonstrate numerous instances in which government regulators have found both Soleimani and Gabay have engaged in "false" or dishonest business practices. This evidence is *highly* probative of these witnesses' credibility. And here, too, the Government appears to have suppressed this evidence, by representing—both to the defense and to this Court—that these matters were categorically irrelevant to the credibility of Soleimani and Gabay. This is even more concerning because the United States Attorney's Office for the Southern District of New York has a deep understanding of housing violations, including the extent to which landlords in this district may systematically engage in dishonesty by falsely certifying building repairs. *See* Complaint in *United States v. N.Y.C. Housing Authority*, No. 1:18-cv-05213

---

[5] The underlying documents in these cases are not electronically accessible and can only be obtained in person at the New York County Clerk. Due to travel restrictions and closures resulting from the current COVID-19 pandemic, Teman is presently unable to procure the underlying documents.

(WHP) (S.D.N.Y. 2018) (documenting this U.S. Attorney's Office prosecution of claims of dishonest certification of building repairs).

This, too, was a *Brady* violation. There can be no denying that both Soleimani and Gabay were central witnesses in this case. And there were critical "holes" in each witness's respective testimony, specifically regarding documents in this case. For example, Soleimani curiously testified to failing to submit a declaration requested by Chase Bank and acknowledged his financial interest in ensuring the subject RCCs could not be shown to be "authorized." (*See* TR. 617-28). And Gabay testified that Michael Haas, his business partner, falsely signed an affidavit in which their company denied any knowledge of GateGuard to obtain reimbursement from Signature Bank. (TR. 397-403). In this context, it would certainly be relevant for the jury to consider that Soleimani and Gabay have faced numerous claims relating to false certifications each has made to governmental authorities. But here, too, the Government suppressed this evidence and misrepresented the nature and substance of this evidence to the defense and to this Court, thereby successfully (but unconstitutionally) preventing Teman from impeaching Soleimani and Gabay with this evidence at trial. This too necessitates a new trial.

    B.   The Government's Additional Representations Regarding Gabay are Not Credible

As set out *supra*, the bulk of the Government's representations in its eleventh-hour motion filed January 19, 2020 motion (Doc. 83) have proven to be false. By way of further example, in its motion, the Government volunteered that Gabay "is a party to several landlord-tenant actions" and provided an "example" of an action in which his company was fined for improperly overcharging a tenant. (*Id.* at 2-3). The Government's motion notably included a shorthand moniker for this case (the "Rent Charge Case"), but the Government failed to provide any citation, reference, or

underlying documentation.[6] Instead, the Government represented unequivocally that this evidence was not probative of Gabay's credibility.

Here, too, the Government misled this Court and the defense. In its motion *in limine*, the Government acknowledged Gabay was fined "treble damages" for rent overcharges, but in the same breath, the Government maintained he never acted dishonestly. What the Government failed to disclose is that treble damages are only applied in housing cases in which the owner is found to have *wil.fully* overcharged the tenant. (*See* Exhibit E) (New York State Division of Housing and Community Renewal Office of Rent Administration, Policy Statement 2019-1 (dated October 16, 2019)) (explaining that treble damages indicates a finding that "the overcharge is deemed to be willful"). Though Teman remains unable to locate further documentation on what the Government characterized as the "Rent Charge Case,"[7] the representations made by the Government regarding this case are not credible on their face. Irrespective of the Government's attempts to downplay this evidence, the imposition of treble damages against Gabay constitutes a finding he *wil.fully* engaged in fraud and deceit. This, too, is undisclosed *Brady*.

## VIII.    The Government's *Brady* Violations Do Not Turn on Whether the Defense Could Have Discovered the Undisclosed Evidence

As an initial matter, the evidence suppressed by the Government is not available electronically through a database similar to the federal PACER system. For example, records of Soleimani's Housing Court testimony can only be obtained via written request to the New York

---

[6] In contrast, the Government did provide a copy of the Housing Court's opinion in *ABJ Milano LLC v. Stanley Howell* (despite suppressing critical underlying evidence in that case, as discussed *supra*).

[7] As discussed *supra*, even had the Government provided a citation to its "Rent Charge Case," Teman could not have obtained the underlying Housing Court records in time for use at trial. In any event, the extent of the Government's disclosure—an unnamed "Rent Charge Case"—is plainly insufficient, and to this day, Teman has been unable to identify this case (let alone obtain the underlying records) despite significant efforts.

County Civil Court Clerk—a process that can take several weeks. In processing the request, the Clerk first retrieves archived audio recordings of the requested court proceeding, and then provides the recordings to a court reporter who prepares a certified transcript. Given the timing of the Government's eleventh-hour disclosure of this information just before trial, it was literally impossible for Teman independently to obtain the relevant records from the Housing Court in time to learn the information and to use it at trial.

Nevertheless, as a matter of constitutional law, Teman's ability to independently discover the undisclosed evidence has no bearing on the Government's due process violation under *Brady* that necessitates a new trial.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. And 41 years later, the Supreme Court affirmed that *Brady* is first and foremost a disclosure obligation imposed on the prosecution. *Banks v. Dretke*, 540 U.S. 668, 695 (2004) (flatly rejecting the "notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed"). Instead, defendants such as Teman are entitled to presume that "public officials have properly discharged their official duties" when they claim they have. *Id.* at 696.

In the Second Circuit and at least five others (Third, Sixth, Ninth, Tenth, and D.C. Circuits), a defendant's *Brady* claim only fails if the defendant had *actual knowledge* of the information the Government failed to disclose, not "those [facts] that might be unearthed" through an exercise of due diligence. *See Lewis v. Connecticut Commissioner of Correction*, 790 F.3d 109 (2d Cir. 2015) (holding that a state court's imposition of "an affirmative 'due diligence' requirement" was

impermissible because it "plainly violated clearly established federal law under *Brady* and its progeny"). The Second Circuit drew a clear line: "'[e]vidence is not 'suppressed' [under *Brady*] if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.'" *Id.* at 121. But this requirement "speaks to facts already within the defendant's purview" based on the defendant's *actual knowledge*, not facts "that might be unearthed" through diligence. *Id.*; *see also Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 468 (6th Cir. 2015) (*Brady* requires "the State to turn over *all* material exculpatory and impeachment evidence to the defense," not merely "*some* evidence, on the assumption that defense counsel will find the cookie from a trail of crumbs"); *Amado v. Gonzalez*, 758 F.3d 1119, 1136 (9th Cir. 2014) (defendant is entitled to "rely on the prosecutor's obligation to produce that which *Brady* and *Giglio* require him to produce," regardless of whether or not defense "counsel could have found the information himself"); *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995) (whether the defense "knew or should have known" about the information is *irrelevant* to whether the prosecution had an obligation to disclose [the evidence]") (emphasis added); *United States v. Nelson*, 979 F.Supp.2d 133 (D.D.C. 2013) ("*Brady* does not excuse the government's disclosure obligation where reasonable investigation and due diligence by the defense could also lead to discovering exculpatory evidence" (explaining binding Circuit authority in *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887 (D.C. Cir. 1999)); *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263, 290 (3d Cir. 2016) (en banc) ("*Brady*'s mandate and its progeny are entirely focused on prosecutorial disclosure, not defense counsel's diligence").

In this case, the prosecution had a constitutional duty to disclose the information it hid from the defense. Over and above this duty, this Court gave the Government a direct order requiring

A-1495

further inquiry and disclosure—an order the prosecution explicitly acknowledged and accepted. As the Supreme Court has made clear, *Brady* is predicated on a view of "the prosecutor as the representative of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Kyles*, 514 U.S. at 439 (citations and ellipses omitted). Where the prosecution not only fails to disclose impeachment evidence to the defense—but instead elicits perjury from its star witness through a leading question that, by this Court's order, foreclosed any cross-examination on the subject by the defense—"justice" has not been "done." *Id.*

## IX.    Conclusion

Based on the foregoing, it is clear the Government suppressed evidence that was favorable to Teman and the Government's failure to disclose this evidence resulted in prejudice. *See Coppa*, 267 F.3d at 140. Thus, as a matter of law, Teman is entitled to a new trial. Where, as here, the *Brady* violation is coupled with false testimony elicited by the prosecution from the Government's star witness on the very topic of the undisclosed evidence, due process mandates a new trial.

Respectfully submitted,

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND
MO Bar # 62265
MARGULIS GELFAND, LLC
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com

—  and  —

*/s/ Joseph A. DiRuzzo, III*
Joseph A. DiRuzzo, III
NY Bar # 4417853
DIRUZZO & COMPANY
Joseph A. DiRuzzo, III
401 East Las Olas Blvd., Suite 1400 Ft.
Lauderdale, FL 33301
Telephone: (954) 615-1676
Facsimile: (954) 827-0340
jd@diruzzolaw.com

**Attorneys for Teman**

*/s/ Alan Dershowitz*
ALAN DERSHOWITZ*
1575 Massachusetts Avenue
Cambridge, MA 02138

**Of Counsel**

*\*Member of the Massachusetts Bar and the
United States Court of Appeals for the
Second Circuit; will seek pro hac vice
admission in this case*

A-1497

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

/s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
**Attorney for Teman**

25

50

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    Q    It was after you signed the check?

2    A    Yes.

3    Q    But there was no discussion beforehand?

4    A    No, there was no discussion with anyone before I

5    signed that check.

6              MR. EHRLICH:  I have no further questions.

7              THE COURT:  Any redirect?

8              MS. BRAUDY:  No, Your Honor.

9              THE COURT:  Okay.  You can have a seat with

10   your attorneys.  Um, would you like to call your next

11   witness?

12             MS. BRAUDY:  Yes.  I would like to call—

13             MR. SOLEIMANI:  Can we have just a minute?

14   Can  we just talk outside?

15             MS. BRAUDY:  Yeah.

16             THE COURT:  Sure.  Um, I-I have a thing I

17   got to do.

18   [BREAK]

19             THE COURT:  Recalling ABJ against Howell.

20   Did you want to call another witness?

21             MS. BRAUDY:  Yes.  I would like to call, um,

22   Mr. Soleimani.

23             THE COURT:  The gentleman who's here?

24             MS. BRAUDY:  Yes.  I believe that's his name.

25

51

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1          THE COURT:  Alright.  Sir, you're being

2     called as a- . . . no, no, no, Mr. Howell, you're-

3     you're back with your attorneys.  Uh, Sir, I'm going

4     to ask you to come up here to the witness stand, and

5     before you sit down I'm going to ask you to please

6     raise your right hand.  Do you swear or affirm that

7     the testimony you give shall be the truth under

8     penalty of perjury?

9          MR. SOLEIMANI:  Yes.

10          THE COURT:  Please have a seat.  Can you

11     spell your name for me, please?

12          MR. SOLEIMANI:  Sure.  First name, J-o-s-e-p-

13     h.  Last name, S-o-l-e-i-m-a-n-i.

14          THE COURT:  And, uh, can you give me a

15     business address, please?

16          MR. SOLEIMANI:  1652 Park Avenue, Suite LL,

17     New York, New York, 10035.

18          THE COURT:  Ms. Braudy, please feel free to

19     inquire.

20          MS. BRAUDY:  Okay.

21  DIRECT-EXAMINATION BY MS. BRAUDY:

22     Q    So, you're the managing agent for the petitioner?

23     A    Yes.

24     Q    And how long have you worked with them?

25

52

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    A    Um, since 2016.

2    Q    2016?

3    A    I believe, 15 or 16.

4    Q    Okay.  Were you the managing agent in December of

5  2016?

6    A    Yes.

7    Q    And what type of, um . . . what's your highest

8  level of education?

9    A    Bachelor's Degree.

10            THE COURT:  I'm sorry?

11    A    Bachelor's.

12    Q    In what area?

13    A    Uh, economics.

14    Q    So, would you say you have business training?

15    A    Somewhat.

16    Q    Experience in business?

17    A    Okay.

18    Q    I was asking.

19    A    Yes.

20    Q    Have you negotiated buy-outs before?

21    A    Yes.

22    Q    How many?

23    A    Not sure.

24    Q    More than five?

25

A-1501

53

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    A    Yes.

2    Q    More than 10?

3    A    I don't recall. I'm not sure.

4    Q    But you're sure of more than five.

5    A    I'm sorry?

6    Q    You're sure of more than five?

7    A    Yes.

8    Q    So, your client bought this building just two

9  years ago, right?  In 2016?

10   A    Yes.

11   Q    And do you know how many buildings the petitioner

12 owns altogether in the city?

13   A    Six.

14   Q    Six?

15        MR. HOWELL:  We're talking about sixty.

16        MS. BRAUDY:  All right, Mr. Howell.

17        MR. HOWELL:  Mm-hmm.

18   Q    So, are you aware that Mr. Howell is a senior

19 citizen?

20   A    Yes.

21   Q    Does it surprise you to know that his, um, source

22 of income is Social Security Disability?

23   A    No.

24

25

A-1502

54

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    Q    Did you know Mr. Howell is a-is a recipient of
2  Section 8?

3    A    Yes.

4    Q    Uh, Mr. Howell has a lease in this apartment,
5  right?

6    A    Yes.

7    Q    And the lease, which was introduced before . . .
8  do you know how much the apartment rent is total?

9    A    No.

10    Q    Do you wanna take a look at the lease?

11          THE COURT:  Sure.

12    Q    It's, uh, Exhibit 1.

13          THE COURT:  Sure, I'm showing Exhibit 1 to

14    the witness.

15    A    Uh, $659.79.

16    Q    And is this a rent stabilized apartment?

17    A    Yes.

18    Q    And the renewal lease, do you know when this term
19  started?

20    A    Uh, October 15th of 16.

21    Q    So, when the December 2016 agreement was signed,
22  was Mr. Howell still within his lease term?

23    A    Yes.

24

25

A-1503

55

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)


1    Q     And when the March 2017 time elapsed that he was

2    supposed to vacate, was he still within his lease term?

3    A     Yes.

4    Q     And so around May 2017 in this case, you served—

5                THE COURT:  Does he-does he still need that?

6                MS. BRAUDY:  Oh, no.  I'm sorry.  That's it.

7    Q     And in this case around May 2017 you directed your

8    attorney to serve notice to quit?

9    A     Yes.

10   Q     Is that the only notice that you served?

11   A     I believe so.

12   Q     Did you ever direct your attorney to serve a

13   notice of termination?

14   A     I don't recall.

15   Q     Did you direct your attorney to then, after that,

16   sen-serve a petition on Mr. Howell?  A petition and notice

17   of petition, commencing this case?

18   A     If they had required it, yes.

19   Q     And that petition incorporated the notice to quit,

20   made reference to it?

21   A     I don't recall.

22               MR. EHRLICH:  Your Honor, the documents

23         speak-speak to itself.

24

25

**A-1504**

56

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1          THE COURT:  Yeah, I'm going to ask what

2      additional probative value is there to this gentleman

3      testifying anything I can just take judicial notice

4      of?

5          MS. BRAUDY:  Alright, and so, I wanted to

6      show this, uh, witness the-the exhibit number 2, the

7      surrender agreement.

8          THE COURT:  Sure, I'll show 2 in evidence to

9      the witness.

10      Q    So, under Mr. Howell's signature on the second

11  page, he's listed as a tenant, right?

12      A    Yes.

13      Q    And then the first line of the agreement it says

14  it's an agreement between the landlord and the tenant?

15      A    Correct.

16      Q    And every single paragraph lists Mr. Howell as a

17  tenant, right?

18      A    Correct.

19      Q    And then paragraph four, it states that if he

20  doesn't vacate by a time certain in March, the consequences

21  that the tenant shall be subject to eviction proceedings?

22      A    Yes.

23      Q    Okay.  Thank you.  No further questions for that

24  document.  Who drafted-who drafted the buy-out agreement?

25

A-1505

57

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1     A    Uh, it's an agreement we've used and just changed

2  the name around and (inaudible).

3     Q    So, who originally drafted it?

4     A    It was drafted by an attorney.

5          THE COURT:  I'm sorry?

6          MR. SOLEIMANI:  An attorney.

7          THE COURT:  An attorney?

8          MR. SOLEIMANI:  Yes.

9          MS. BRAUDY:  So, what's that?  Yeah . . . can

10     I, um, I'm sorry.  I would like to show this witness

11     number 2, exhibit number 2 one more time.

12          THE COURT:  No problem.

13     Q    On the second page, um, can you tell me who signed

14  on the second page?

15     A    Um, Mr. Howell signed, um, I signed, as a notary,

16  and it was signed by Benjamin Soleimani on behalf of the

17  landlord.

18          MR. HOWELL:  (Inaudible).

19     Q    Okay, so—

20          MR. EHRLICH:  Your Honor?

21          THE COURT:  Yeah, sir, what you're saying

22     right now is not evidence.

23          MR. HOWELL:  All right.

24          THE COURT:  So, we'll just leave it at

25

58

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    that.

2        Q    Do you know when, um, Benjamin Soleimani signed?

3        A    December 23rd.

4        Q    And were-where were you when you signed this

5    document?

6        A    I was in Mr. Howell's apartment.

7        Q    Did you see him sign this document?

8        A    Yes, I did.

9        Q    You did?

10       A    Yes.

11           MS. BRAUDY:  Okay.  So, um, actually he's

12       gonna need that for the next part.  I'm sorry.

13       Q    So, in the provision in-in paragraph 10, part of

14   it states that if-if Mr. Howell defaults to a certain

15   provision, that the Petitioner is able to, uh, seek legal

16   fees, right?

17       A    Yes.

18       Q    Does anywhere in this agreement, um, have a

19   provision where Mr. Howell can seek attorney's fees upon

20   the default?

21       A    I don't see anything.

22       Q    And in paragraph three it states that the

23   agreement terms are irrevocable and unconditional, right?

24       A    Correct.

25

A-1507

59

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1    Q    So, there's no provision made in here should Mr.

2    Howell need a little bit more time if he needed a few more

3    weeks to move?

4    A    No.

5    Q    And in paragraph four, Mr. Howell gives up his

6    security deposit?

7    A    Correct.

8    Q    And in paragraph eight he withdraws any claim,

9    complaint with prejudice that he might've had against the

10   agencies?

11          MR. EHRLICH:  Your Honor, the document speaks

12      for itself.

13          THE COURT:  I really don't understand why

14      this witness has to testify what's in the document

15      that's already in evidence.

16          MS. BRAUDY:  Okay, that's fair.

17          THE COURT:  I mean, maybe different courts

18      have different procedures.  The record's made.

19          MS. BRAUDY:  The record's made, okay.

20          THE COURT:  There's no additional probative

21      value to having somebody read what I can already read.

22          MS. BRAUDY:  Okay.  So, then I will be done

23      with that.

24

25

A-1508

60

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1     Q    Alright, let me ask you one more question, um,

2  should Mr. Howell move out of this apartment, what do you

3  anticipate doing with the apartment?

4     A    Renovating the apartment.

5     Q    And the market rate for a renovated apartment on

6  Mr. Howell's side, what do you think you can get for this

7  apartment?

8     A    Probably around $1,900, $2,000.

9     Q    Thank you.  No further questions.

10         THE COURT:  Alright.  You can hand that back

11    to me.  Any cross?

12         MR. EHRICH:  Yes.

13  CROSS-EXAMINATION BY MR. EHRLICH:

14     Q    Um, Mr. Soleimani, so, um, you were there.  You

15  were in the apartment.  Correct?

16     A    Yes.

17     Q    Okay, and you had heard Mr. Howell testify that no

18  one else was there, but you were there.  Correct?

19     A    Correct.

20     Q    Okay, and, um, did you . . . there was money that

21  was tendered to Mr. Howell?

22     A    Yes.

23     Q    And that money was cash?

24     A    It was a check.

25

A-1509

61

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)


1      Q    It was a check.  Check was cashed?

2      A    Yes.

3      Q    Okay, and did you attempt to find, uh, other

4  housing for Mr. Howell?

5      A    Yes.

6      Q    And where was that building?

7      A    It was on Park Avenue and 117th Street.

8      Q    And where is the specific premise that we're

9  talking about?

10     A    122nd and 7th.

11     Q    Okay.  And the building that you showed him, was

12  there an elevator in it?

13     A    Yes.

14     Q    And is there laundry facilities?

15     A    Yes.

16     Q    And how old is that building?

17     A    About 12 or 13 years.

18     Q    Okay, and what type of building is that?

19     A    It's, um, low income housing.

20              MS. BRAUDY:  Your Honor, objection.  This is

21     outside the scope of our direct.

22              MS. EHRLICH:  They opened-they opened the can

23     of worms, Judge, when they asked about the rent of the

24

25

62

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1     unit.  They're trying to make my client out to be the

2     bad guy, they opened up the can of worms.

3               MS. BRAUDY:  But we did not speak to this at

4     all.

5               THE COURT:  You'll have a chance to redirect,

6     and I think the concept of scope is . . . cause I

7     understand the purpose for which you wanted to have,

8     uh, this witness testify, and it seems to me that for

9     that purpose this testimony is within the scope of

10    that, and you'll have a chance to redirect in a

11    moment.  So, overruled.

12    Q     Um, Mr. Soleimani, was Mr. Howell . . . during the

13 context of the negotiations and the execution of the

14 agreement, was Mr. Howell advised to speak to counsel?

15    A     Yes.

16    Q     Okay.  Did you advise him to speak to counsel?

17    A     Yes.

18    Q     And did you advise him when you were in the

19 apartment that day to speak to counsel?

20    A     Yes.

21               MR. EHRLICH:  Okay.  Um, I have nothing else.

22               THE COURT:  Alright, uh, redirect?

23 RE-DIRECT BY MS. BRAUDY:

24

25

63

ABJ MILANO LLC, vs. STANLEY HOWELL (08/08/2018)

1      Q    Do you know how long the conversations around this

2  agreement took place before December 23rd?  How long the

3  weeks-how many weeks went by?

4      A    I'm not sure how much time.

5      Q    At any time prior to December 23rd, did you tell

6  Mr. Howell that he should speak to an attorney?

7      A    Yes.

8      Q    Prior to December 23rd?

9      A    Yes.

10          MS. BRAUDY:  Okay.  Um, no further questions,

11      Your Honor.

12          THE COURT:  Alright, you can have a seat.  Do

13      you have any other witnesses?

14  [TESTIMONY CONCLUDES]

15

16

17

18

19

20

21

22

23

24

25

| ViolationID | House#StreetName | Postcode | InspectionID | NOVDescription | CurrentStatus | ViolationStatus | BBL |
|---|---|---|---|---|---|---|---|
| 11716937 | 2550 MARION AVENUE | 10458 | 4/1/2017 | SECTION 27-2005 ADM CODE REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN A UNIFORM COLOR CEILI | FALSE CERTIFICATION | Open | 2032820015 |
| 11795508 | 2550 MARION AVENUE | 10458 | 5/23/2017 | SECTION 27-2033 ADM CODE PROVIDE READY ACCESS TO BUILDINGS HEATING SYSTEM AT CELLAR AT BOILER ROOM | FALSE CERTIFICATION | Open | 2032820015 |
| 11810305 | 2650 MARION AVENUE | 10458 | 6/2/2017 | SECTION 27-2018 ADMIN. CODE: ABATE THE NUISANCE CONSISTING OF MICE IN THE ENTIRE APARTMENT LOCATED AT APT 4FS | FALSE CERTIFICATION | Open | 2032820016 |
| 13092472 | 2601 MARION AVENUE | 10458 | 5/24/2019 | SECTION 27-2005 ADM CODE REPLACE WITH NEW THE MISSING ESCUTCHEON PLATE AT RISER AT CEILING IN THE KITCHEN LOC | FALSE CERTIFICATION | Open | 2032870018 |
| 13092473 | 2601 MARION AVENUE | 10458 | 5/24/2019 | SECTION 27-2026 ADM CODE REMOVE ALL OBSTRUCTIONS AND REPAIR ALL DEFECTS IN IN THE WASTE LINE AT THE BATHTUB IN | FALSE CERTIFICATION | Open | 2032870018 |
| 13174995 | 672 EAST 138 STREET | 10454 | 7/13/2019 | HMC ADM CODE: §26/26 27-2017.4 ABATE THE INFESTATION CONSISTING OF- ROACHES IN THE ENTIRE APARTMENT LOCATED AT | FALSE CERTIFICATION | Open | 2025660001 |
| 13095864 | 502 EAST 189 STREET | 10458 | 5/29/2019 | SECTION 27-2005 ADM CODE PROPERLY REPAIR THE BROKEN OR DEFECTIVE LOWER WINDOW SASH SPRING BALANCE AT NORTH | FALSE CERTIFICATION | Open | 2030580019 |
| 13092467 | 2601 MARION AVENUE | 10458 | 5/24/2019 | SECTION 27-2005 ADM CODE REPLACE WITH NEW THE MISSING DOOR IN THE 3rd ROOM FROM NORTH AT WEST LOCATED AT | FALSE CERTIFICATION | Open | 2032870018 |
| 13133443 | 2601 MARION AVENUE | 10458 | 6/18/2019 | SECTION 27-2005 ADM CODE REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN A UNIFORM COLOR THE C | FALSE CERTIFICATION | Open | 2032870018 |
| 13133461 | 2601 MARION AVENUE | 10458 | 6/20/2019 | SECTION 27-2005 ADM CODE REPLACE WITH NEW THE BROKEN OR DEFECTIVE MARBLE SADDLE IN THE BATHROOM LOCATED A | FALSE CERTIFICATION | Open | 2032870018 |
| 13133560 | 2601 MARION AVENUE | 10458 | 6/18/2019 | SECTION 27-2005 ADM CODE PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN OR DEFECTIVE FIRE RETARDANT MATERI | FALSE CERTIFICATION | Open | 2032870018 |
| 13133607 | 2601 MARION AVENUE | 10458 | 6/18/2019 | SECTION 27-2005 ADM CODE PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN OR DEFECTIVE FIRE RETARDANT MATERI | FALSE CERTIFICATION | Open | 2032870018 |
| 13061616 | 226 WILLIS AVENUE | 10454 | 5/9/2019 | SECTION 62 M/D LAW REARRANGE TELEVISION AND/OR RADIO ANTENNA TO BE AT LEAST 10 FEET ABOVE ROOF AND NOT ATTA | FALSE CERTIFICATION | Open | 2022820003 |
| 13272221 | 2175 BELMONT AVENUE | 10457 | 9/6/2019 | SECTION 27-2017.3 HMC. TRACE AND REPAIR THE SOURCE AND ABATE THE VISIBLE MOLD CONDITION... AT CEILING AND WALLS | FALSE CERTIFICATION | Close | 2030620036 |
| 13562703 | 612 EAST 168 STREET | 10456 | 1/23/2020 | SECTION 27-2033 ADM CODE POST NOTICE, IN FORM APPROVED BY THE DEPARTMENT, STATING THE NAME AND LOCATION OF | FALSE CERTIFICATION | Open | 2026140026 |

Source: https://data.cityofnewyork.us/Housing-Development/Housing-Maintenance-Code-Violations/wvxf-dwi5/data

| ViolationID | House | StreetName | Postcod | InspectionDate | NOVDescription | CurrentStatus | ViolationStatus | BBL |
|---|---|---|---|---|---|---|---|---|
| 13296003 | 14 | THAYER STREET | 10040 | 09/23/2019 | HMC ADM CODE ¿½¿½ 27-2017.4 ABATE THE INFESTATION CONSISTING OF ROACHES | FALSE CERTIFICATION | Open | 1021740224 |
| 13117172 | 618 | ACADEMY STREET | 10034 | 06/10/2019 | SECTION 27-2005 ADM CODE PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN | FALSE CERTIFICATION | Open | 1022240022 |
| 13023438 | 605 | WEST 177 STREET | 10033 | 04/18/2019 | SECTION 27-2005 ADM CODE PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN | FALSE CERTIFICATION | Open | 1021440025 |

Source: https://data.cityofnewyork.us/Housing-Development/Housing-Maintenance-Code-Violations/wvxf-dwi5/data

A-1514



**Housing Maintenance Code Violations User Guide**

*Created January 11, 2019*
*Last Updated December 11, 2019*
*NYC Department of Housing Preservation and Development*

**What's In This Dataset?**

Pursuant to New York City's Housing Maintenance Code, the Department of Housing Preservation and Development (HPD) issues violations against conditions, in rental dwelling units and buildings, that have been verified to violate the New York City Housing Maintenance Code (HMC) or the New York State Multiple Dwelling Law (MDL).

Each row in this dataset contains discrete information about one violation of the New York City Housing Maintenance Code or New York State Multiple Dwelling Law. Each violation is identified using a unique Violation ID. These Laws are in place to provide requirements for the maintenance of residential dwelling units within New York City.

Violations are issued by Housing Inspectors after a physical inspection is conducted (except for class I violations which are generally  administratively issued).  Violations are issued in four classes: Class A (non-hazardous), Class B (hazardous), Class C (immediately hazardous) and Class I (information orders).  For more information on violations, see https://www1.nyc.gov/site/hpd/owners/compliance-clear-violations.page

The base data for this file is all violations **open as of October 1, 2012**.  Violation data is updated daily.  The daily update includes both new violations and updates to the status of previously issued violations. An open violation is a violation which is still active on the Department records. See the status table for determining how to filter for open violations versus closed violations, and within open violations for a more detailed current status.

The property owner may or may not have corrected the physical condition if the status is open. The violation status is closed when the violation is observed/verified as corrected by HPD or as certified by the landlord.   The processes for having violations dismissed are described at http://www1.nyc.gov/site/hpd/owners/compliance-clear-violations.page

Using other HPD datasets, such as the Building File or the Registration File, a user can link together violations issued for given buildings or for given owners.

**Who Manages This Data?**



As a significant area of the agency's mission, HPD protects the quality and affordability of our city by rigorously enforcing the New York City Housing Maintenance Code, which covers heat and hot water, mold, pests, gas leaks, fire safety, and more. Our inspectors work tirelessly to keep tenants safe and hold building owners accountable, performing over 500,000 inspections annually.

We proactively use a variety of other enforcement tools to address building conditions, from performing owner outreach to bringing cases in Housing Court to performing emergency repairs. Learn more about Property Owner and Landlord Responsibilities on our website.

**Get Started With This Data:**

How many violations did HPD issue in Calendar year 2018 in Manhattan?

What types of violations did HPD issue in Calendar year 2018 in Brooklyn?

How many violations that HPD issued are currently open in Staten Island?

**Columns (Fields, Attributes):**

Violations

Building ID

Registration ID

BoroID

Borough

House Number

Low House Number

High House Number

Street Name

Street Code

Postcode

Apartment

Story

A-1516

NYC OpenData

Block
Lot

Class

Inspection Date

Approved Date

OriginalCertifyByDate

OriginalCorrectByDate

NewCertifyByDate

NewCorrectByDate

CertifiedDate

OrderNumber

NOVID

NOVDescription

NOVIssueDate

CurrentStatusID/CurrentStatus

CurrentStatusDate

NovType

Violation Status

Latitude

Longitude

Community Board

Council District

CensusTract

BIN

BBL

NTA



## Violations
Unique identifier of Violation

## Building ID

Unique identifier of building

## Registration ID

Unique identifier of valid registration information

## BoroID

Borough code

## Borough

The borough where the building is located

## House Number

The street number in the building's address. E.g.: the house number is '100' in '100 Gold Street'

## Low House Number

If there is a range for a building, the lowest house number in the building's address.

## High House Number

If there is a range for a building, the highest house number in the building's address.

## Street Name

The name of the street in the building's address. E.g.: the street name is 'Gold Street' in '100 Gold Street'

## Street Code

## Geocoded field for a street (CONFIRM WITH HPDTECH)

## Postcode

The postcode where the building is located

## Apartment

Apartment in violation, if applicable

## Story

Floor of violation

## Block

A-1518



Tax block for building

## Lot

Tax lot for building

## Class

Indicator of seriousness of the violations, where A is the least serious and C is the most serious. Class I violation are informational notices that do not have certification periods associated; they indicate something about the status of the property: that an Order is open against the property (example: Order to Repair/Vacate Order) or that a property is vacant or that a property is not validly registered.

## Inspection Date

Date when the violation was observed

## Approved Date

Date when the violation was approved

## OriginalCertifyByDate

Original date by which the owner was to inform HPD that the violation was corrected

## OriginalCorrectByDate

Original date by which the owner was to correct the violation

## NewCertifyByDate

If a postponement is granted, a new certify by date is established

## NewCorrectByDate

If a postponement is granted, a new correct by date is established

## CertifiedDate

Date when the violation was certified by the owner

## OrderNumber

Reference to the abstract description of the violation condition which cites a specific section of the law which is in violation. See the table below for the definition of each order number referenced in the dataset:

| Order No. | Order Number Description |
|---|---|
| 965 | § 27-2028  ADMIN. CODE:  INSTALL CENTRAL HEATING SYSTEM OR, IF LAWFULLY FEASIBLE, INDIVIDUAL SPACE HEATERS, AND FILE APPLICATION FOR APPROVAL BEFORE DOING WORK |
| 966 | § 27-2029  ADMIN. CODE:  PROVIDE AN ADEQUATE SUPPLY OF HEAT FOR THE APARTMENT |



| 969 | § 27-2031  ADMIN. CODE:  INSTALL CENTRAL HOT WATER SYSTEM OR, IF FEASIBLE, INDIVIDUAL HOT WATER HEATERS, AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING WORK |
|---|---|
| 975 | § 27-2032, 2034  ADMIN. CODE:  DISCONTINUE USE OF ILLEGAL SPACE AND/OR HOT WATER HEATER AND PROVIDE FILED FOR & APPROVED HEATER WHICH OBTAINS COMBUSTION AIR DIRECTLY FROM OUTSIDE THE BUILDING OR APPROVED CENTRAL SYSTEM |
| 977 | § 27-2035  ADMIN. CODE:  DISCONTINUE THE USE OF THE ILLEGAL GAS FIRED REFRIGERATOR |
| 897 | § 27-2026  ADMIN. CODE:  REMOVE DISUSED PLUMBING FIXTURES AND PROPERLY SEAL PIPE CONNECTIONS |
| 946 | § 27-2026 ADMIN. CODE: PROPERLY CLOSE AND SEAL OPENING AS DESCRIBED BELOW6 |
| 952 | § 27-2027 ADMIN. CODE:  REPAIR THE BROKEN OR DEFECTIVE RAIN LEADER |
| 953 | § 27-2027 ADMIN. CODE:  PROVIDE A GUTTER, PROPERLY CONNECTED TO DRAINAGE SYSTEM, FOR PROPER DRAINAGE |
| 958 | § 27-2027 ADMIN. CODE:  PROPERLY REPAIR THE BROKEN OR DEFECTIVE PAVING |
| 959 | § 27-2027 ADMIN. CODE:  GRADE WITH PROPER SLOPE TO EXISTING DRAIN AND PAVE WITH 4 INCHES OF CONCRETE THE SURFACE |
| 960 | § 27-2027 ADMIN. CODE:  REGRADE WITH PROPER SLOPE TO EXISTING DRAIN THE SURFACE |
| 964 | § 27-2028, 2032 ADMIN.CODE:  PROVIDE AN ADEQUATE SUPPLY OF HEAT FROM AN APPROVED CENTRAL HEATING SYSTEM OR AN APPROVED SYSTEM OF GAS OR ELECTRICAL HEATING IN GOOD OPERATING CONDITION FOR THE DWELLING UNIT |
| 866 | § 27-2018  ADMIN. CODE:  ABATE THE NUISANCE CONSISTING OF VERMIN |
| 867 | § 27-2018 ADMIN. CODE:  ABATE THE INFESTATION CONSISTING OF RODENTS |
| 871 | § 27-2023 ADMIN. CODE:  PROVIDE SUFFICIENT,PROPER AND SEPARATE METAL RECEPTACLES FOR THE DEPOSIT OF GARBAGE, RUBBISH AND OTHER WASTE MATERIAL AND ARRANGE FOR COLLECTION AND DISPOSAL OF SUCH MATERIAL. |
| 872 | § 27-2023 ADMIN. CODE:  PROVIDE PLACE WITHIN THE BUILDING FOR THE STORAGE OF WASTE RECEPTACLES AND DISINFECT SAME REGULARLY. |
| 894 | § 27-2026 ADMIN. CODE:  REPAIR LEAKY WATER CLOSET FLUSH PIPE CONNECTION |

NYC OpenData

| 895 | § 27-2026 ADMIN. CODE:  REMOVE ALL OBSTRUCTIONS FROM WATER CLOSET |
|-----|---|
| 896 | § 27-2026 ADMIN. CODE:  REPLACE THE BROKEN OR DEFECTIVE |
| 812 | § 27-2005 ADMIN. CODE: FIRE ESCAPE DEFECTIVE.  REPLACE WITH NEW THE BROKEN, DEFECTIVE AND/OR MISSING |
| 813 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE. ADJUST THE DROPLADDER SO THAT IT WILL SLIDE EASILY IN THE GUIDE RODS |
| 817 | § 27-2005 ADMIN. CODE: FIRE ESCAPE DEFECTIVE.  REMOVE AND REPLACE WITH NEW THE BROKEN AND DEFECTIVE BRACKET AND LEAVE ALL ANCHORAGES UNCOVERED FOR INSPECTION |
| 852 | § 27-2010, 2011, 2012  ADMIN. CODE:  REMOVE THE ACCUMULATION OF REFUSE AND/OR RUBBISH AND MAINTAIN IN A CLEAN CONDITION THE |
| 856 | § 27-2013 ADMIN. CODE:  PAINT WITH LIGHT COLORED PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
| 861 | § 27-2014  ADMIN. CODE AND DEPARTMENT RULES AND REGULATIONS:  SCRAPE AND REMOVE RUST SCALES AND PAINT WITH TWO COATS OF PAINT THE |
| 462 | § 212 M/D LAW  ARRANGE THE DOOR OR WINDOW SO THAT IT MAY BE READILY OPENED AND PROPER ACCESS AFFORDED TO THE BOTTOM OF |
| 464 | § 212 M/D LAW  PROVIDE A STATIONARY IRON LADDER, EXTENDING FROM THE SILL OF THE LOWEST WINDOW TO THE BOTTOM OF |
| 483 | § 62 M/D LAW  REARRANGE TELEVISION AND/OR RADIO ANTENNA TO BE AT LEAST 10 FEET ABOVE ROOF AND NOT ATTACHED TO ANY FIRE ESCAPE OR SOIL OR VENT LINE |
| 491 | § 300 M/D LAW  FILE PLANS AND APPLICATION AND LEGALIZE THE FOLLOWING ALTERATION OR RESTORE TO THE LEGAL CONDITION EXISTING PRIOR TO THE MAKING OF SAID ALTERATION |
| 176 | § 53,187,231 M/D LAW & DEPT RULES & REG. PROVIDE MEANS OF EGRESS FROM YARD TO STREET BY FIREPROOF PASSAGEWAY FOR WHICH APPLICATION MUST BE FILED FOR APPROVAL,OR BY UNLOCKED DOOR OR GATE IN FENCE TO ADJOINING PREMISES WITH CONSENT OF ADJACENT OWNER. |
| 181 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  PROVIDE A FIREPROOF PASSAGEWAY FROM FIRE ESCAPES AT REAR TO STREET AND FILE APPLICATION FOR APPROVAL BEFORE DOING THIS WORK. |
| 188 | § 185, 240  M/D LAW  PROPERLY FIRE RETARD IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT THE CELLAR CEILING |
| 208 | § 66, 67, 104, 147, 188, 233 M/D LAW  PROVIDE WITH PROPER HINGES THE SCUTTLE COVER AT ROOF. |

**NYC OpenData**

| | |
|---|---|
| 209 | § 233 M/D LAW  REMOVE DOOR FROM CLOSET LEADING TO SCUTTLE OPENING IN ROOF AT |
| 219 | § 190 M/D LAW  SOLIDLY CLOSE THE SPACE BETWEEN THE TREADS OF INSIDE STAIRS |
| 6 | § 36, 66, 67, 178, 217 M/D LAW  MAINTAIN PROPER VENTILATION BY REMOVING WRAPPINGS AND/OR OBSTRUCTIONS FROM THE LOUVRES OR VENTILATORS OR WINDOWS OR SKYLIGHT |
| 30 | § 78 M/D LAW  PROPERLY PAVE THE FLOOR WITH 4 INCHES OF CONCRETE |
| 57 | § 12 M/D LAW  DISCONTINUE THE UNLAWFUL KEEPING OF |
| 106 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  PROVIDE A SHOE PROPERLY SECURED TO BOTTOM OF STRING OF DROPLADDER |
| 109 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  PROVIDE A STOP AT TOP OF GUIDE RODS SO AS TO PREVENT REMOVAL OF DROPLADDER |
| 118 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  PROPERLY BRACE |
| 121 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  SPLICE WITH ADEQUATE SPLICE PLATE |
| 135 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  CLOSE THE UNNECESSARY OPENING |
| 778 | § 27-2104 ADM CODE  POST AND MAINTAIN A PROPER SIGN ON WALL OF ENTRANCE STORY SHOWING THE REGISTRATION NUMBER ASSIGNED BY THE DEPARTMENT AND THE ADDRESS OF THE BUILDING. |
| 779 | § 27-2105 ADM CODE  RENT BILL OR RECEIPT NOT PROVIDED FOR TENANT WITH NAME AND ADDRESS OF INDIVIDUAL ACTING AS MANAGING AGENT OR NAME AND ADDRESS OF OWNER PRINTED OR STAMPED THEREON |
| 803 | § 27-2005 ADMIN. CODE:  MAKE SAFE BY PROPERLY REPAIRING THE STRUCTURAL DEFECT. |
| 805 | § 27-2005 ADMIN. CODE: REPLACE WITH NEW THE BROKEN OR DEFECTIVE |
| 810 | § 27-2005 ADMIN. CODE:  ABATE THE NUISANCE  CONSISTING OF |
| 811 | § 27-2005 ADMIN. CODE:  REPAIR AND OPERATE THE GAS APPLIANCE SO AS TO PREVENT CARBON MONOXIDE |



| 776 | § 27-2100 ADM CODE  FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT WITH A PROPER ADDRESS FOR REGISTERED PARTY. |
|---|---|
| 767 | § 27-2089 ADM CODE  THE PREMISES HAVE BEEN VACATED BY AN ORDER OF THIS DEPARTMENT AND CANNOT BE REOCCUPIED EXCEPT FOR CARETAKER UNTIL A NEW CERTIFICATE OF OCCUPANCY HAS BEEN OBTAINED. |
| 768 | § 27-2089 ADM CODE  THE PREMISES FORMERLY A VACANT BUILDING ARE NOW OCCUPIED BY OTHER THAN A CARETAKER WITHOUT OBTAINING A CERTIFICATE OF OCCUPANCY |
| 769 | § 27-2004 ADM CODE  DISCONTINUE THE YEAR-ROUND USE OF THESE PREMISES, CLASSIFIED FOR SUMMER RESORT OCCUPANCY EXCEPT BY OWNER OR CARETAKER |
| 771 | § 27-2096 ADM CODE  FILE WITH THIS DEPARTMENT A TRUE REGISTRATION STATEMENT FOR BUILDING. |
| 772 | § 27-2098 ADM CODE  FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT FOR BUILDING. |
| 775 | § 27-2099 ADM CODE  FILE WITH THIS DEPARTMENT REGISTRATION STATEMENT FOR CHANGE OF OWNERSHIP OF BUILDING. |
| 761 | § 27-2081 ADM CODE  DISCONTINUE USE OF ROOMS FOR LIVING, DISCONNECT PLUMBING FIXTURES AND PROPERLY SEAL PIPE CONNECTIONS |
| 736 | § 27-2067 ADM CODE  PROVIDE UNDER COMPLETED PERMIT SANITARY FACILITIES FOR EACH 6 PERSONS OR REMAINDER THEREOF FOR CLASS B ROOMS BY INSTALLING |
| 737 | § 27-2067 ADM CODE  PROVIDE UNDER COMPLETED PERMIT, WATER CLOSET, WASHBASIN, BATHTUB OR SHOWER FOR EACH 6 PERSONS OR REMAINDER THEREOF FOR SINGLE ROOM OCCUPANCY APTS. AT |
| 748 | § 27-2075 ADM CODE  POST A SIGN IN ROOMING UNIT SHOWING MAXIMUM LAWFUL OCCUPANCY FOR SLEEPING PURPOSES |
| 750 | § 27-2076 ADM CODE  DISCONTINUE UNLAWFUL OCCUPANCY FOR LIVING PURPOSES BY CHILD OR CHILDREN UNDER 16 YEARS OF AGE |
| 751 | § 27-2077 ADM CODE  DISCONTINUE THE ROOMING UNIT |
| 734 | § 27-2067 ADM CODE  PROVIDE AT LEAST ONE WATER CLOSET ON THE SAME FLOOR FOR THE ROOMS USED FOR CLASS B OCCUPANCY. WORK MUST BE COMPLETED UNDER PERMIT |
| 713 | § 27-2050 ADM CODE  PROVIDE A PIECE OF GARDEN HOSE 10 FEET IN LENGTH WITH FEMALE COUPLING AND A 10 QUART PAIL ON PREMISES TO TEST SPRINKLER SYSTEM. |
| 715 | § 27-2050 ADM CODE  PROVIDE 3 EXTRA SPRINKLER HEADS AND SUITABLE WRENCH FOR EMERGENCY PURPOSES AT O.S.Y. VALVE OF SPRINKLER IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT |

A-1523



| 716 | § 27-2051 ADM CODE  PROVIDE A MANAGER WHO SHALL BE RESPONSIBLE FOR THE CONDUCT, OPERATION AND MAINTENANCE OF PREMISES AND WHO SHALL LIVE ON PREMISES OR BE REGULARLY PRESENT THEREIN. |
|---|---|
| 721 | § 27-2053 ADM CODE  PROVIDE DWELLING WITH A JANITOR OR RESPONSIBLE PERSON OR JANITORIAL SERVICE. |
| 724 | § 27-2055 ADM CODE  FILE WITH THIS DEPARTMENT A CERTIFICATION THAT THE PERSON DOING JANITORIAL SERVICES IS COMPETENT TO PERFORM SAME. |
| 733 | § 27-2065 ADM CODE  PROVIDE VENTILATION FOR WATER CLOSET COMPARTMENT AND/OR BATHROOM AND FILE APPLICATION FOR APPROVAL BEFORE DOING WORK |
| 712 | § 27-2050 ADM CODE  PROVIDE AN ANGLE HOSE VALVE OR SILL COCK AT EXTREME END OF HIGHEST LINE OF SPRINKLERS. |
| 696 | § 27-2044 ADM CODE  PROPERLY FIRE-RETARD, IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT, THE CEILING |
| 701 | § 27-2045, 2046 ADM CODE  PROVIDE AN APPROVED AND OPERATIONAL SMOKE DETECTING DEVICE, INSTALLED IN ACCORDANCE WITH DEPARTMENT OF BUILDINGS RULES AND REGULATIONS |
| 702 | § 27-2045 ADM CODE  REPAIR OR REPLACE THE SMOKE DETECTOR |
| 703 | § 27-2045, 2046 ADM CODE  FILE CERTIFICATION OF SATISFACTORY INSTALLATION OF SMOKE DETECTING DEVICE IN ACCORDANCE WITH H.P.D. RULES AND REGULATIONS. |
| 707 | § 27-2047 ADM CODE  PROVIDE AND MAINTAIN APPROVED MAIL RECEPTACLES AND DIRECTORIES FOR THE PERSONS RESIDING IN THE DWELLING AS PROVIDED IN THE U.S. POSTAL REGULATIONS. |
| 693 | § 27-2044 ADM CODE  ARRANGE AND MAKE SELF-CLOSING THE DOORS |
| 670 | § 27-2031 ADM CODE  PROVIDE HOT WATER AT ALL HOT WATER FIXTURES |
| 672 | §  27-2033 ADM CODE  PROVIDE READY ACCESS TO BUILDINGS HEATING SYSTEM |
| 680 | § 27-2037, 2039 ADM CODE  PROVIDE ADEQUATE LIGHTING FOR THE LAUNDRY ROOM |
| 687 | § 27-2040 ADM CODE  INSTALL AND MAINTAIN SUFFICIENT LIGHT OR LIGHTS OF AT LEAST 100 WATTS INCANDESCENT OR EQUIVALENT EACH, TO LIGHT ADEQUATELY FROM SUNSET TO SUNRISE THE |
| 690 | § 27-2041 ADM CODE  PROVIDE A PEEP HOLE IN ENTRANCE DOOR OF THE DWELLING UNIT SO LOCATED SO AS TO PERMIT A PERSON INSIDE THE DWELLING TO VIEW ANY PERSON OUTSIDE ENTRANCE DOOR |

A-1524



| 692 | § 27-2043 ADM CODE  PROVIDE A LOCK AND KEY TO THE ENTRANCE DOOR OF DWELLING UNIT AND, IF A CL A MULTIPLE DWELLING, ALSO |
|---|---|
| 668 | § 27-2028 ADM CODE  REPAIR AND OPERATE THE HEATING APPLIANCE SO AS TO PREVENT COAL GAS |
| 596 | § 27-2026 ADM CODE  REPLACE THE BROKEN OR DEFECTIVE |
| 646 | § 27-2026 ADM CODE  PROPERLY CLOSE AND SEAL OPENING AS DESCRIBED BELOW |
| 652 | § 27-2027 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE RAIN LEADER |
| 653 | § 27-2027 ADM CODE  PROVIDE A GUTTER, PROPERLY CONNECTED TO DRAINAGE SYSTEM, FOR PROPER DRAINAGE |
| 654 | § 27-2027 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE GUTTER |
| 655 | § 27-2027 ADM CODE  READJUST AND GRADE WITH A PROPER SLOPE TOWARD THE RAIN LEADER, THE GUTTER |
| 657 | § 27-2005 ADM CODE  REMOVE THE BROKEN OR DEFECTIVE FLOORING AND PAVE THE FLOOR WITH 4 INCHES OF CONCRETE |
| 591 | § 27-2026 ADM CODE  RESET, SO AS TO SECURE A PROPER AND TIGHT CONNECTION, THE WATER CLOSET BOWL |
| 659 | § 27-2027 ADM CODE  GRADE WITH PROPER SLOPE TO EXISTING DRAIN AND PAVE WITH 4 INCHES OF CONCRETE THE SURFACE |
| 564 | § 27-2081 ADM CODE  THOROUGHLY WHITEWASH OR PAINT WITH A LIGHT COLOR THE SURFACES |
| 572 | § 27-2021 ADM CODE  PROVIDE PLACE WITHIN THE BUILDING FOR THE STORAGE OF WASTE RECEPTACLES AND DISINFECT SAME REGULARLY. |
| 573 | § 27-2022 ADM CODE  POST A SIGN INDICATING HOURS OF COLLECTION AND METHOD OF COLLECTION OF WASTE MATERIAL WHERE DUMBWAITER SERVICE IS NOT PROVIDED. |
| 577 | § 27-2024 ADM CODE  PROVIDE ADEQUATE SUPPLY OF HOT WATER FOR THE FIXTURES |
| 579 | § 27-2026 ADM CODE  REPAIR THE LEAKY AND/OR DEFECTIVE FAUCETS |
| 563 | § 27-2015 ADM CODE  THOROUGHLY WHITEWASH OR PAINT WITH A LIGHT COLOR THE SURFACES |

A-1525



| 580 | § 27-2024 ADM CODE  PROVIDE SUITABLE TIGHT COVER MADE OF METAL OR WOOD COVERED WITH METAL FOR WATER SUPPLY TANK ON ROOF. |
|---|---|
| 581 | § 27-2024 ADM CODE  EMPTY AND THOROUGHLY CLEANSE THE INTERIOR SIDES AND BOTTOM OF WATER SUPPLY TANK ON ROOF. |
| 559 | § 27-2013 ADM CODE  NO DECORATING IN 3 YEARS. REMOVE THE DIRTY AND/OR LOOSE PAPER AND REPAPER OR PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
| 560 | § 27-2013 ADM CODE  MAINTAIN AND KEEP ON PREMISES SUCH RECORDS RELATING TO TIME WHEN WINDOW FRAMES AND SASHES AND DWELLING UNITS WERE LAST PAINTED. |
| 561 | § 27-2014 ADM CODE  AND DEPT. RULES AND REGULATIONS. SCRAPE AND REMOVE RUST SCALES AND PAINT WITH 2 COATS OF PAINT |
| 562 | § 27-2014 ADM CODE  PAINT TO THE SATISFACTION OF THIS DEPARTMENT THE EXTERIOR WINDOW FRAMES AND SASHES |
| 557 | § 27-2013 ADM CODE  REMOVE THE DIRTY AND/OR LOOSE PAPER AND REPAPER OR PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
| 528 | § 27-2005 ADM CODE  REPLACE WITH STANDARD WIRE GLASS THE PRESENT GLASS |
| 534 | § 27-2005 ADM CODE  PROVIDE A PROPER SEAT FOR WATER CLOSET |
| 535 | § 27-2005 ADM CODE  REMOVE THE TORN AND/OR LOOSE FLOOR COVERING |
| 537 | § 27-2005, 2007 ADM CODE  REMOVE UNLAWFUL WOOD OR METAL LOUVRED OR SCREEN DOORS AND ASSEMBLIES FROM ENTRANCE TO |
| 552 | § 27-2010, 2011, 2012 ADM CODE  REMOVE THE ACCUMULATION OF REFUSE AND/OR RUBBISH AND MAINTAIN IN A CLEAN CONDITION THE |
| 526 | § 27-2005, 2007 ADM CODE  REMOVE THE ILLEGAL FASTENING |
| 556 | § 27-2013 ADM CODE  PAINT WITH LIGHT COLORED PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
| 516 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. RESET THE BRACES OF THE BRACKETS SO THAT THEY SHALL BEAR AGAINST WALL |
| 517 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. REMOVE AND REPLACE WITH NEW THE BROKEN AND DEFECTIVE BRACKET AND LEAVE ALL ANCHORAGES UNCOVERED FOR INSPECTION |
| 518 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. REPLACE WITH 2 X 1/2 INCH IRON BAR EXTENDING ACROSS AND SECURED TO 2 BRACKETS, THE BROKEN OR DEFECTIVE ANGLE IRON OR BAR AT FOOT OF GOOSENECK LADDER |



| 519 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE.  REMOVE OR MAKE SAFE THE ADDITIONAL FIRE ESCAPES |
| --- | --- |
| 522 | § 27-2005, 2007 ADM CODE  FIRE EGRESS DEFECTIVE. REMOVE OBSTRUCTING BARS OR UNLAWFUL GATES FROM AT LEAST 1 WINDOW OR PROVIDE APPROVED TYPE GATE |
| 525 | § 27-2005, 2007 ADM CODE  FIRE EGRESS DEFECTIVE. MAKE STATIONARY THE IRON LADDER LEADING TO SCUTTLE OPENING IN ROOF |
| 515 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. FILL IN HOLES IN WALL AROUND BRACKETS AND/OR RAILS |
| 214 | § 189, SUBD. 5 M/D LAW  REMOVE SASH IN PARTITION BETWEEN ROOM AND PUBLIC HALL AND SEAL OPENING WITH MATERIAL SIMILAR TO ADJACENT WALL |
| 222 | § 242 M/D LAW PROVIDE UNDER COMPLETED PERMIT,A PROPER ENCLOSURE WITH FIREPROOF SELFCLOSING DOORS AND ASSEMBLIES,AT THE TOP AND THE BOTTOM OF THE CELLAR STAIRS, |
| 225 | § 51 M/D LAW  PROVIDE UNDER COMPLETED PERMIT, A PROPER ENCLOSURE FOR THE ELEVATOR SHAFT, |
| 226 | § 65 M/D LAW  PROVIDE UNDER COMPLETED PERMIT, A PROPER ENCLOSURE FOR THE CENTRAL HEATING PLANT, |
| 230 | § 192 M/D LAW  PROVIDE AN INDEPENDENT ENTRANCE FROM OUTSIDE THE DWELLING TO CELLAR AND FILE APPLICATION FOR APPROVAL BEFORE DOING THE WORK |
| 509 | § 27-2005 ADM CODE  PROPERLY SECURE THE LOOSE |
| 213 | § 61 M/D LAW  SEAL WITH FIRE RETARDING MATERIAL OR PROVIDE WITH FIREPROOF SELF-CLOSING DOOR AND ASSEMBLY THE OPENING LEADING FROM STORE TO PUBLIC HALL |
| 81 | § 187 M/D LAW  PROVIDE A SPRINKLER SYSTEM OR A LEGAL SECOND MEANS OF EGRESS AND FILE APPLICATION FOR APPROVAL BEFORE DOING THIS WORK |
| 081B | § 194 M/D LAW  PROVIDE SPRINKLER HEADS IN ALL CLASS B ROOMS AND FILE APPLICATION FOR APPROVAL BEFORE DOING THIS WORK |
| 84 | § 67 M/D LAW  POST A PRINTED SCALE FLOOR PLAN SHOWING MEANS OF EGRESS, AT |
| 142 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  BRACE AND SUPPORT BALCONY WITH SUITABLE TIE RODS OR SUSPENSION RODS |
| 159 | § 53, 187, 231 M/D LAW AND DEPARTMENT RULES AND REGULATIONS.  SAFEGUARD EGRESS BY PROVIDING IRON GUARD RAILS 3 FT 6 IN HIGH AROUND SKYLIGHT |
| 80 | § 231 M/D LAW  PROVIDE LEGAL SECOND MEANS OF EGRESS AND FILE APPLICATION FOR APPROVAL BEFORE DOING THE WORK |



| 10 | § 178, 217 M/D LAW  PROVIDE SKYLIGHT VENTILATION OF AT LEAST 40 SQ.IN. OR FIXED OR MOVABLE LOUVRES, OR MOVABLE SASH |
| 11 | § 178, 217 M/D LAW  MAKE EFFECTIVE THE LIGHT AND VENTILATION OF SKYLIGHT BY REMOVING FROM BENEATH SAME THE DOMELIGHT LOCATED IN CEILING |
| 51 | § 12 M/D LAW  DISCONTINUE THE STORAGE OF COMBUSTIBLE MATERIAL |
| 65 | § 66 M/D LAW  DISCONTINUE THE UNLAWFUL USE AS A LODGING HOUSE UNLESS AND UNTIL A CERTIFICATE OF OCCUPANCY IS OBTAINED FOR SUCH USE. |
| 69 | § 61 M/D LAW  DISCONTINUE USE UNLESS AND UNTIL AN APPROVED APPLICATION IS FILED AND A CERTIFICATE OF OCCUPANCY IS OBTAINED |
| 72 | § 61 M/D LAW  DISCONTINUE THE MANUFACTURING BUSINESS |
| 8 | § 178, 217 M/D LAW  PROVIDE A VENTILATING SKYLIGHT DIRECTLY OVER THE STAIRWELL |
| 982 | § 27-2038 ADMIN CODE:  PROVIDE ADEQUATE LIGHTING FOR |
| 7 | § 178, 217 M/D LAW  PROVIDE FIXED VENTILATION OF AT LEAST 40 SQ.IN. DIRECTLY OVER STAIRWELL |
| 754 | § 27-2078 ADM CODE  DISCONTINUE THE UNLAWFUL USE AS SEPARATELY OCCUPIED SLEEPING ROOMS OR, PROVIDE UNOBSTRUCTED ACCESS TO EACH REQUIRED MEANS OF EGRESS |
| 555 | § 27-2013 ADM CODE  REMOVE OR COVER IN A MANNER APPROVED BY THE DEPARTMENT THE PEELING LEAD PAINT |
| 686 | § 27-2040 ADM CODE  PROVIDE ADEQUATE LIGHTING AT OR NEAR THE OUTSIDE OF THE FRONT ENTRANCEWAY OF THE BUILDING AND KEEP SAME BURNING FROM SUNSET EVERY DAY TO SUNRISE ON THE DAY FOLLOWING |
| 976 | § 27-2032, 2034  ADMIN. CODE: EITHER DISCONTINUE USE OF ILLEGAL SPACE AND/OR HOT WATER HEATER OR PROVIDE FILED FOR & APPROVED HEATER WHICH OBTAINS COMBUSTION AIR DIRECTLY FROM OUTSIDE THE BUILDING OR APPROVED CENTRAL SYSTEM |
| 949 | § 27-2026 ADMIN. CODE:  REMOVE ALL OBSTRUCTIONS AND REPAIR ALL DEFECTS IN |
| 950 | § 27-2027 ADMIN. CODE: PROVIDE PROPERLY TRAPPED, SEWER CONNECTED, RAIN LEADER SO AS TO PROVIDE PROPER DRAINAGE AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING THE WORK |
| 954 | § 27-2027 ADMIN. CODE:  REPAIR THE BROKEN OR DEFECTIVE GUTTER |



| 955 | § 27-2027 ADMIN. CODE:  READJUST AND GRADE WITH A PROPER SLOPE TOWARD THE RAIN LEADER THE GUTTER |
| --- | --- |
| 948 | § 27-2026 ADMIN. CODE:  PROPERLY REAM OUT, TAP AND PLUG, WITH SCREW PLUGS, THE HOLES IN |
| 970 | § 27-2031  ADMIN. CODE:  PROVIDE HOT WATER AT ALL HOT WATER FIXTURES |
| 892 | § 27-2026 ADMIN. CODE:  REPLACE WITH NEW THE DEFECTIVE FLUSH PIPE OF WATER CLOSET |
| 893 | § 27-2026  ADMIN. CODE:  REPAIR THE FLUSHING APPARATUS AND MAINTAIN SAME SO AS TO FLUSH EFFECTIVELY THE WATER CLOSET |
| 898 | § 27-2026 ADMIN. CODE:  REPAIR THE BROKEN OR DEFECTIVE CONNECTION |
| 899 | § 27-2026 ADMIN. CODE:  REPAIR BY CLOSING SO AS TO BE GAS TIGHT ALL OPENINGS IN THE |
| 900 | § 27-2026  ADMIN. CODE:  PROVIDE A PROPER SCREW CAP FOR THE CLEANOUT OF TRAP |
| 891 | § 27-2026 ADMIN. CODE:  RESET, SO AS TO SECURE A PROPER AND TIGHT CONNECTION, THE WATER CLOSET BOWL |
| 947 | § 27-2026  ADMIN. CODE:  PROPERLY  CLOSE AND SEAL THE HUB OPENING AFTER REMOVING THE DISUSED, BROKEN OR DEFECTIVE |
| 862 | § 27-2014 ADMIN. CODE:  PAINT TO THE SATISFACTION OF THIS DEPARTMENT THE EXTERIOR WINDOW FRAMES AND SASHES |
| 876 | § 27-2024  ADMIN. CODE:  PROVIDE ADEQUATE SUPPLY OF COLD WATER FOR THE FIXTURES |
| 877 | § 27-2024 ADMIN. CODE:  PROVIDE ADEQUATE SUPPLY OF HOT WATER FOR THE FIXTURES |
| 878 | § 27-2026 ADMIN. CODE:  REPAIR THE LEAKY AND/OR DEFECTIVE WATER SUPPLY PIPE |
| 879 | § 27-2026 ADMIN. CODE:  REPAIR THE LEAKY AND/OR DEFECTIVE FAUCETS |
| 888 | § 27-2026 ADMIN. CODE:  PROVIDE SUITABLE STRAINER FOR THE DRAIN |
| 889 | § 27-2026 ADMIN. CODE: PROVIDE SUITABLE TIGHT COVER FOR HANDHOLE OPENING OF TRAP |

A-1529



| 857 | § 27-2013 ADMIN. CODE:  REMOVE THE DIRTY AND/OR LOOSE PAPER AND REPAPER OR PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
|---|---|
| 834 | § 27-2005 ADMIN. CODE: PROVIDE A PROPER SEAT FOR WATER CLOSET |
| 835 | § 27-2005 ADMIN. CODE:  REMOVE THE TORN AND/OR LOOSE FLOOR COVERING |
| 838 | § 27-2005, 2007 ADMIN. CODE:  REMOVE ALL ENCUMBRANCES CONSISTING OF |
| 839 | § 27-2005,2007 ADMIN. CODE AND DEPARTMENT RULES AND REGULATIONS: REMOVE THE ENCUMBRANCE OBSTRUCTING EGRESS FROM FIRE ESCAPES |
| 851 | § 27-2010,2011,2012  ADMIN. CODE:  CLEANSE AND DISINFECT TO THE SATISFACTION OF THIS DEPARTMENT AFTER REMOVING THE |
| 853 | § 27-2010, 2011, 2012 ADMIN CODE: CLEANSE TO THE SATISFACTION OF THIS DEPARTMENT THE |
| 829 | § 27-2005 ADMIN. CODE: REFIT |
| 819 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE.  REMOVE OR MAKE SAFE THE ADDITIONAL FIRE ESCAPES |
| 820 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE.  REMOVE THE ADDITIONAL, DANGEROUS, INADEQUATE FIRE ESCAPE |
| 821 | § 27-2005,2007 ADMIN. CODE:  FIRE EGRESS DEFECTIVE. REMOVE OBSTRUCTING BARS OR GATES FROM WINDOW TO FIRE ESCAPE |
| 822 | § 27-2005,2007 ADMON. CODE:  FIRE EGRESS DEFECTIVE.  REMOVE OBSTRUCTING BARS OR GATES FROM AT LEAST 1 WINDOW. |
| 826 | § 27-2005 ADMIN. CODE:  REMOVE THE ILLEGAL FASTENING |
| 818 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE. REPLACE WITH 2" X1/2" IRON BAR EXTENDING ACROSS AND SECURED TO TWO BRACKETS, THE BROKEN OR DEFECTIVE ANGLE IRON OR BAR AT FOOT OF GOOSENECK LADDER |
| 806 | § 27-2005 ADMIN. CODE:  REPLACE WITH NEW THE MISSING |
| 807 | § 27-2005 ADMIN. CODE: REPAIR THE ROOF SO THAT IT WILL NOT LEAK |
| 808 | § 27-2005 ADMIN. CODE:  REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN UNIFORM COLOR |



| 809 | § 27-2005 ADMIN. CODE:  PROPERLY SECURE THE LOOSE |
| --- | --- |
| 814 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE.  PROPERLY SECURE |
| 815 | § 27-2005 ADMIN. CODE:  FIRE ESCAPE DEFECTIVE. FILL IN HOLES IN WALL AROUND BRACKETS AND/OR RAILS |
| 804 | § 27-2005 ADMIN. CODE: PROVIDE |
| 816 | § 27-2005 ADMIN. CODE:  FIRE ESCAPR DEFECTIVE. RESET THE BRACES OF THE BRACKETS SO THAT THEY SHALL BE AGAINST WALL |
| 766 | § 27-2089 ADM CODE  ABOVE PREMISES HAVE BEEN VACANT AND UNTENANTED EXCEPT FOR CARETAKER FOR 60 DAYS OR MORE, AND CANNOT BE REOCCUPIED UNTIL A NEW CERTIFICATE OF OCCUPANCY HAS BEEN OBTAINED. PREMISES HAVE BEEN VACANT SINCE |
| 773 | § 27-2098 ADM CODE  FILE WITH THIS DEPARTMENT A TELEPHONE NUMBER AT WHICH THE OWNER OR A RESPONSIBLE PERSON CAN BE REACHED AT ALL HOURS IN THE EVENT OF AN EMERGENCY. |
| 774 | § 27-2101 ADM CODE  FILE WITH THIS DEPARTMENT A WRITTEN DESIGNATION FOR CHANGE IN MANAGING AGENT OF BUILDING. |
| 777 | § 27-2102 ADM CODE  FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT FOR LESSEE. |
| 765 | § 27-2142 ADM CODE  APTS HAVE BEEN VACATED BY THIS DEPARTMENT AND CANNOT BE REOCCUPIED UNTIL SO ORDERED AFTER PROOF OF COMPLIANCE FOR APTS |
| 801 | § 27-2005 ADMIN. CODE:  PROPERLY REPAIR THE BROKEN OR DEFECTIVE |
| 802 | § 27-2005 ADMIN. CODE:  PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN OR DEFECTIVE |
| 753 | § 27-2077, 2078 ADM CODE  DISCONTINUE UNLAWFUL USE FOR SINGLE ROOM OCCUPANCY PURPOSES |
| 756 | § 27-2080 ADM CODE  PROVIDE TENANT REGISTER ON PREMISES PURSUANT TO RULES AND REGULATIONS OF THIS DEPARTMENT. |
| 762 | § 27-2081 ADM CODE  DISCONTINUE USE OF ROOMS FOR LIVING PURPOSES |
| 764 | § 27-2081 ADM CODE  DISCONTINUE USE FOR LIVING |



| 752 | § 27-2078 ADM CODE  DISCONTINUE USE FOR SINGLE ROOM OCCUPANCY PURPOSES THE APARTMENTS WHICH ARE OCCUPIED BY MORE THAN 2 BOARDERS, ROOMERS OR LODGERS |
|---|---|
| 741 | § 27-2070 ADM CODE  DISCONTINUE UNLAWFUL COOKING SPACE OR FILE PLANS AND APPLICATION WITH THIS DEPARTMENT TO LEGALIZE SAME, IF LAWFULLY FEASIBLE, |
| 742 | § 27-2070 ADM CODE  PROVIDE AN ADEQUATE SUPPLY OF GAS TO THE FIXTURES |
| 745 | § 27-2074 ADM CODE  DISCONTINUE USE OF ROOMS LESS THAN 6 FEET WIDE FOR LIVING |
| 746 | § 27-2075 ADM CODE  DISCONTINUE UNLAWFUL OVERCROWDING |
| 749 | § 27-2076 ADM CODE  DISCONTUNUE UNLAWFUL USE OF KITCHEN FOR SLEEPING PURPOSES |
| 739 | § 27-2068 ADM CODE  PROVIDE ADDITIONAL WATER CLOSET AND WASH BASIN SO THERE SHALL BE NOT LESS THAN 1 WATER CLOSET AND WASH BASIN FOR EVERY 7 SLEEPING ROOMS AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING THIS WORK. |
| 727 | § 27-2061 ADM CODE  DISCONTINUE USE OF INTERIOR ROOM FOR LIVING |
| 731 | § 27-2064 ADM CODE  PROVIDE PROPER PLASTERED PARTITIONS EXTENDING FROM FLOOR TO CEILING FOR WATER CLOSET COMPARTMENT AND/OR BATHROOM |
| 732 | § 27-2064 ADM CODE  PROVIDE IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT A WATERPROOF FLOOR AND BASE FOR THE WATER CLOSET |
| 735 | § 27-2067 ADM CODE  PROVIDE A WATER CLOSET, WASH BASIN, BATHTUB OR SHOWER FOR EACH SIX PERSONS OR REMAINDER THEREOF FOR ANY ROOM USED FOR CLASS B OCCUPANCY. WORK MUST BE COMPLETED UNDER PERMIT. |
| 738 | § 27-2067 ADM CODE  PROVIDE UNDER COMPLETED PERMIT, SANITARY FACILITIES FOR EACH 6 PERSONS OR REMAINDER THEREOF FOR SINGLE ROOM OCCUPANCY APT., BY INSTALLING |
| 726 | § 27-2059 ADM CODE  DISCONTINUE USE OF INTERIOR ROOM FOR LIVING OR PROVIDE AN ALCOVE OPENING OF AT LEAST 32# SQ FT TO ROOM HAVING A WINDOW OPENING DIRECTLY TO STREET OR YARD |
| 706 | § 27-2047 ADM CODE  ARRANGE FOR MAIL TO BE DELIVERED TO OWNER, HIS AGENT OR EMPLOYEES FOR PROMPT DISTRIBUTION TO OCCUPANTS. |
| 708 | § 27-2048 ADM CODE  PAINT OR POST A SIGN INDICATING FLOORS |
| 709 | § 27-2049 ADM CODE  POST AND MAINTAIN A STREET NUMBER ON THE FRONT OF THE DWELLING PLAINLY VISIBLE FROM THE SIDEWALK. |



| 710 | § 27-2050 ADM CODE  FILE WITH THE BOROUGH CHIEF INSPECTOR OF THIS DEPARTMENT A SPRINKLER TEST REPORT FOR THE CURRENT YEAR. |
| 704 | § 27-2045, 2046 ADM CODE  MAINTAIN ON THE PREMISES AND MAKE AVAILABLE TO THE DEPARTMENT UPON REQUEST RECORDS OF INSTALLATION AND MAINTENANCE OF SMOKE DETECTORS IN THE BUILDING. |
| 711 | § 27-2050 ADM CODE  MAINTAIN ON THE PREMISES A COPY OF THE SPRINKLER TEST FOR THE CURRENT YEAR. |
| 714 | § 27-2050 ADM CODE  SEAL IN OPEN POSITION THE O.S.Y. VALVE OF THE SPRINKLER SYSTEM IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT |
| 722 | § 27-2053 ADM CODE  POST SIGN ON WALL OF ENTRANCE STORY BEARING NAME, ADDRESS INCLUDING APARTMENT NUMBER IF ANY, AND TELEPHONE NUMBER OF SUPERINTENDENT, JANITOR OR HOUSEKEEPER. |
| 695 | § 27-2044 ADM CODE  REMOVE UNLAWFUL SASH IN PARTITION SEPARATING APARTMENT FROM PUBLIC HALL AND SEAL OPENING WITH FIRE RETARDED MATERIAL |
| 697 | § 27-2005, 2044 ADM CODE  PROVIDE APPROVED ONE-HOUR FIRE RESISTANCE RATED SELF-CLOSING DOOR WITH KEY-OPERATED DEAD BOLT & LATCH SET, PEEP HOLE & CHAIN GUARD AT MAIN ENTRANCE TO |
| 698 | § 27-2044 ADM CODE  PROVIDE APPROVED ONE-HOUR FIRE RESISTANCE RATED SELF-CLOSING DOOR AT ALL OPENINGS TO PUBLIC HALL OTHER THAN APT MAIN ENTRANCE DOOR FROM |
| 699 | § 27-2044 ADM CODE  PROVIDE SEAL OF ONE-HOUR FIRE RETARDING MATERIAL FOR TRANSOMS OVER ALL DOOR OPENINGS TO PUBLIC HALL FROM |
| 700 | § 27-2045 ADM CODE  POST A PROPER NOTICE OF SMOKE DETECTOR REQUIREMENTS, IN A FORM APPROVED BY THE COMMISSIONER, AT OR NEAR THE MAIL BOX |
| 677 | § 27-2035 ADM CODE  DISCONTINUE THE USE OF THE GAS FIRED REFRIGERATOR |
| 678 | § 27-2036 ADM CODE  MAINTAIN ON THE REEMISES A SELF INSPECTION REPORT OF EACH GAS FUELED SPACE HEATER AND EACH GAS APPLIANCE FOR THE CURRENT YEAR. SUCH REPORT SHALL BE SUBMITTED TO THE DEPARTMENT UPON REQUEST. |
| 681 | § 27-2037 ADM CODE  PROVIDE A PROPER MEANS OF LIGHTING FOR WATER CLOSET COMPARTMENT |
| 683 | § 27-2039 ADM CODE  PROVIDE ADEQUATE LIGHT OF NOT LESS THAN 60 WATTS INCANDESCENT OR EQUIVALENT ILLUMINATION |
| 684 | § 27-2037 ADM CODE  PROVIDE ADEQUATE LIGHTING |
| 685 | § 27-2039 ADM CODE  PROVIDE AND MAINTAIN A LIGHT DIRECTLY OVER THE MAIL BOXES IN PUBLIC HALL |

A-1533



| 691 | § 27-2042 ADM CODE  PROVIDE A MIRROR IN SELF-SERVICE ELEVATOR ARRANGED SO AS TO ENABLE A PERSON ENTERING, TO VIEW INSIDE OF ELEVATOR NUMBER |
|---|---|
| 694 | § 27-2044 ADM CODE  REPLACE WITH WIRE GLASS THE PRESENT GLASS IN DOORS AND/OR TRANSOMS |
| 669 | § 27-2031 ADM CODE  INSTALL CENTRAL HOT WATER SYSTEM OR, IF FEASIBLE, INDIVIDUAL HOT WATER HEATERS, AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING WORK |
| 671 | § 27-2033 ADM CODE  POST NOTICE, IN FORM APPROVED BY THE DEPARTMENT, STATING THE NAME AND LOCATION OF THE PERSON DESIGNATED BY THE OWNER TO HAVE KEY TO BUILDINGS HEATING SYSTEM |
| 673 | § 27-2030 ADM CODE  REPAIR AND OPERATE THE APPLIANCE SO AS TO PREVENT CARBON MONOXIDE |
| 674 | § 27-2029 ADM CODE  DEVICE PRESENT ON CENTRAL HEATING SYSTEM WHICH IS CAPABLE OF CAUSING AN OTHERWISE OPERABLE SYSTEM TO BECOME INOPERABLE |
| 675 | § 27-2032, 2034 ADM CODE  DISCONTINUE USE OF ILLEGAL SPACE AND/OR HOT WATER HEATER AND PROVIDE FILED FOR & APPROVED HEATER WHICH OBTAINS COMBUSTION AIR DIRECTLY FROM OUTSIDE THE BUILDING OR APPROVED CENTRAL SYSTEM |
| 649 | § 27-2026 ADM CODE  REMOVE ALL OBSTRUCTIONS AND REPAIR ALL DEFECTS IN |
| 650 | § 27-2027 ADM CODE  PROVIDE PROPERLY TRAPPED, SEWER CONNECTED, RAIN LEADER SO AS TO PROVIDE PROPER DRAINAGE AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING THE WORK |
| 658 | § 27-2005 ADM CODE  PROPERLY REPAIR THE BROKEN OR DEFECTIVE PAVING |
| 660 | § 27-2027 ADM CODE  REGRADE WITH THE PROPER SLOPE TO EXISTING DRAIN THE SURFACE |
| 664 | § 27-2028, 2032 ADM CODE  PROVIDE AN ADEQUATE SUPPLY OF HEAT FROM AN APPROVED CENTRAL HEATING SYSTEM, OR AN APPROVED SYSTEM OF GAS OR ELECTRICAL HEATING IN GOOD OPERATING CONDITION FOR THE DWELLING UNIT |
| 665 | § 27-2028 ADM CODE  INSTALL CENTRAL HEATING SYSTEM OR, IF LAWFULLY FEASIBLE, INDIVIDUAL SPACE HEATERS, AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING WORK |
| 666 | § 27-2029 ADM CODE  PROVIDE AN ADEQUATE SUPPLY OF HEAT FOR THE APARTMENT |
| 593 | § 27-2026 ADM CODE  REPAIR THE FLUSHING APPARATUS AND MAINTAIN SAME SO AS TO FLUSH EFFECTIVELY THE WATER CLOSET |



| 594 | § 27-2026 ADM CODE  REPAIR LEAKY WATER CLOSET FLUSH PIPE CONNECTION |
| --- | --- |
| 595 | § 27-2026 ADM CODE  REMOVE ALL OBSTRUCTIONS FROM WATER CLOSET |
| 597 | § 27-2026 ADM CODE  REMOVE DISUSED PLUMBING FIXTURES AND PROPERLY SEAL PIPE CONNECTIONS |
| 598 | § 27-2026 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE CONNECTION |
| 599 | § 27-2026 ADM CODE  REPAIR BY CLOSING SO AS TO BE GAS TIGHT ALL OPENINGS IN THE |
| 600 | § 27-2026 ADM CODE  PROVIDE A PROPER SCREW CAP FOR THE CLEANOUT OF TRAP |
| 647 | § 27-2026 ADM CODE  PROPERLY CLOSE AND SEAL THE HUB OPENING AFTER REMOVING THE DISUSED, BROKEN OR DEFECTIVE |
| 648 | § 27-2026 ADM CODE  PROPERLY REAM OUT, TAP AND PLUG, WITH SCREW PLUGS, THE HOLES IN |
| 578 | § 27-2026 ADM CODE  REPAIR THE LEAKY AND/OR DEFECTIVE WATER SUPPLY PIPE |
| 582 | § 27-2024 ADM CODE  PROVIDE A BALL COCK FOR THE WATER SUPPLY TANK ON ROOF. |
| 586 | § 27-2026 ADM CODE  PROVIDE A SEPARATE HOUSE SEWER AND HOUSE DRAIN PROPERLY CONNECTED TO PLUMBING SYSTEM OF THE BUILDING AND TO MAIN SEWER AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING THIS WORK. |
| 587 | § 27-2026 ADM CODE  REMOVE CESSPOOL AND ALL SEWAGE SATURATED EARTH, DISINFECT SITE AND FILL WITH FRESH EARTH. CONNECT PLUMBING SYSTEM OF BUILDING TO MAIN SEWER BY INSTALLING HOUSE SEWER AND DRAIN. FILE APPLICATION FOR APPROVAL BEFORE DOING WORK. |
| 588 | § 27-2026 ADM CODE  PROVIDE A SUITABLE STRAINER FOR THE DRAIN |
| 589 | § 27-2026 ADM CODE  PROVIDE SUITABLE TIGHT COVER FOR THE HANDHOLE OPENING OF TRAP |
| 590 | § 27-2066 ADM CODE  PROVIDE A WATER CLOSET FOR EACH FAMILY WITHIN THE BUILDING AND FILE AN APPLICATION FOR APPROVAL BEFORE DOING THIS WORK |
| 592 | § 27-2026 ADM CODE  REPLACE WITH NEW THE DEFECTIVE FLUSH PIPE OF WATER CLOSET |



| 554 | § 27-2005 ADM CODE  PAINT METAL IN ACCORDANCE WITH DEPT. REGULATION |
|---|---|
| 558 | § 27-2013 ADM CODE  NO DECORATING IN 3 YEARS. PAINT WITH LIGHT COLORED PAINT TO THE SATISFACTION OF THIS DEPARTMENT |
| 565 | § 27-2015 ADM CODE  THOROUGHLY CLEANSE TO THE SATISFACTION OF THIS DEPARTMENT THE DIRTY AND UNSANITARY EXTERIOR WALLS AT |
| 566 | § 27-2018 ADM CODE  ABATE THE NUISANCE CONSISTING OF VERMIN |
| 567 | § 27-2018 ADM CODE  ABATE THE INFESTATION CONSISTING OF RODENTS |
| 571 | § 27-2021 ADM CODE  PROVIDE SUFFICIENT, PROPER AND SEPARATE METAL RECEPTACLES FOR THE DEPOSIT OF GARBAGE, RUBBISH AND OTHER WASTE MATERIAL AND ARRANGE FOR COLLECTION AND DISPOSAL OF SUCH MATERIAL. |
| 576 | § 27-2024 ADM CODE  PROVIDE ADEQUATE SUPPLY OF COLD WATER FOR THE FIXTURES |
| 533 | § 27-2005 ADM CODE  REMOVE ILLEGAL FASTENINGS FROM GRATING DOOR TO OUTSIDE CELLAR ENTRANCE |
| 536 | § 27-2005, 2007 ADM CODE  REMOVE DEVICE PREVENTING DOOR FROM BEING SELF-CLOSING |
| 538 | § 27-2005, 2007 ADM CODE  REMOVE ALL ENCUMBRANCES CONSISTING OF |
| 539 | § 27-2005, 2007 ADM CODE  AND DEPT. RULES AND REGULATIONS. REMOVE THE ENCUMBRANCE OBSTRUCTING EGRESS FROM FIRE ESCAPES |
| 540 | § 27-848 ADMIN CODE & DEPT. RULES AND REGS.  REPLACE REFUSE CHUTE WARNING SIGN PUBLIC HALL DOOR TO SERVICE CLOSET OR ON WALL OVER HOPPER DOOR AT |
| 551 | § 27-2010, 2011, 2012 ADM CODE  CLEANSE AND DISINFECT TO THE SATISFACTION OF THIS DEPARTMENT AFTER REMOVING THE |
| 553 | § 27-2011 ADM CODE  CLEANSE TO THE SATISFACTION OF THIS DEPARTMENT THE |
| 520 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. REMOVE THE ADDITIONAL, DANGEROUS, INADEQUATE FIRE ESCAPE |
| 521 | § 27-2005, 2007 ADM CODE  FIRE EGRESS DEFECTIVE. REMOVE OBSTRUCTING BARS OR UNLAWFUL GATES FROM WINDOW TO FIRE ESCAPE OR PROVIDE APPROVED TYPE GATE |
| 523 | § 27-2005, 2007 ADM CODE  FIRE EGRESS DEFECTIVE. RESTORE EGRESS BY REMOVING LOCKING DEVICE AND ARRANGE TO OPEN READILY THE GATE IN FENCE AT LOT LINE |



| 527 | § 27-2005, 2007 ADM CODE  EGRESS OBSTRUCTED. PROVIDE PROPER MEANS OF EGRESS BY REMOVING PARTITIONS FORMING CLOSET ENCLOSING SCUTTLE LADDER TO ROOF |
|---|---|
| 529 | § 27-2005 ADM CODE  REFIT |
| 530 | § 27-2005, 2007 ADM CODE  ARRANGE AND MAKE SELF-CLOSING THE DOORS |
| 531 | § 27-2005 ADM CODE  MAKE STATIONARY THE TRANSOM OVER DOOR |
| 532 | § 27-2005 ADM CODE  PROVIDE A STATIONARY IRON LADDER OR FIREPROOF STAIR FOR THE OUTSIDE CELLAR ENTRANCE |
| 506 | § 27-2005 ADM CODE  REPLACE WITH NEW THE MISSING |
| 507 | § 27-2005 ADM CODE  REPAIR THE ROOF SO THAT IT WILL NOT LEAK |
| 508 | § 27-2005 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN A UNIFORM COLOR |
| 510 | § 27-2005 ADM CODE & 309 M/D LAW  ABATE THE NUISANCE CONSISTING OF |
| 511 | § 27-2005 ADM CODE  REPAIR AND OPERATE THE GAS APPLIANCE SO AS TO PREVENT CARBON MONOXIDE |
| 512 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. REPLACE WITH NEW THE BROKEN, DEFECTIVE AND/OR MISSING |
| 513 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. ADJUST THE DROPLADDER SO THAT IT WILL SLIDE EASILY IN THE GUIDE RODS |
| 514 | § 27-2005 ADM CODE  FIRE ESCAPE DEFECTIVE. PROPERLY SECURE |
| 494 | § 4, 8, 25, 67 M/D LAW  THE PREMISES IS CLASSIFIED AS A MULTIPLE DWELLING AND IS BEING MAINTAINED IN VIOLATION OF THE ABOVE SECTIONS. FILE AN ALTERATION APPLICATION AND PLANS 1/8 INCH SCALE AND OBTAIN A CERTIFICATE OF OCCUPANCY TO LEGALIZE SUCH USE. |
| 495 | § 300, 301, 302, M/D LAW  FILE PLANS AND OBTAIN A CERTIFICATE OF OCCUPANCY TO LEGALIZE THE FOLLOWING ALTERATION OR RESTORE PREMISES TO PRIOR LEGAL CONDITION |
| 501 | § 27-2005 ADM CODE  PROPERLY REPAIR THE BROKEN OR DEFECTIVE |



| 502 | § 27-2005 ADM CODE  PROPERLY REPAIR WITH SIMILAR MATERIAL THE BROKEN OR DEFECTIVE |
|---|---|
| 503 | § 27-2005 ADM CODE  MAKE SAFE BY PROPERLY REPAIRING THE STRUCTURAL DEFECT |
| 504 | § 27-2005 ADM CODE  PROVIDE |
| 505 | § 27-2005 ADM CODE  REPLACE WITH NEW THE BROKEN OR DEFECTIVE |
| 981 | § 27-2037  ADMIN. CODE:  PROVIDE PROPER MEANS OF LIGHTING FOR WATER CLOSET COMPARTMENT |
| 990 | § 27-2041  ADMIN. CODE:  PROVIDE A PEEP HOLE IN ENTRANCE DOOR OF THE DWELLING UNIT SO LOCATED AS TO PERMIT A PERSON INSIDE THE DWELLING UNIT TO VIEW ANY PERSON OUTSIDE ENTRANCE DOOR |
| 992 | § 27-2043  ADMIN. CODE:  PROVIDE A LOCK AND KEY TO THE ENTRANCE DOOR OF DWELLING UNIT |
| 4 | § 213, SUBD. 5 M/D LAW  DISCONTINUE USE OF INTERIOR ROOM FOR LIVING OR PROVIDE A SINGLE OPENING OF AT LEAST 60 PERCENT OF AREA OF THE PARTITION TO ROOM HAVING WINDOW OPENING DIRECTLY TO STREET OR YARD |
| 160 | § 62, 187, 231 M/D LAW AND DEPT. RULES AND REGS.  SAFEGUARD EGRESS BY PROVIDING IRON GUARD RAILS OR PARAPET WALLS 3 FT 6 IN HIGH AND EXTENDING A MINIMUM OF 4 FT 0 IN BEYOND EITHER SIDE OF BULKHEAD/SCUTTLE OPENING AT ROOF |
| 484 | § 329, M/D LAW AND DEPT. RULES AND REGS.  PROVIDE A COMPLETED CERTIFICATE OF INSPECTION VISITS IN A PROPER FRAME AT OR NEAR MAILBOXES, BOTTOM EDGE OF FRAME BETWEEN 48-62 INCHES ABOVE FLOOR |
| 485 | § 329, M/D LAW AND DEPT. RULES AND REGS.  PROVIDE A COMPLETED CERTIFICATE OF INSPECTION VISITS IN A PROPER FRAME READILY ACCESSIBLE FOR SIGNATURE, BOTTOM EDGE OF FRAME BETWEEN 48-62 INCHES ABOVE FLOOR AT |
| 524 | § 27-2005, 2007 ADM CODE  FIRE EGRESS DEFECTIVE. REMOVE THE OBSTRUCTION IN FIREPROOF PASSAGEWAY |
| 682 | § 27-2038 ADM CODE  PROVIDE ADEQUATE LIGHTING FOR |
| 755 | § 27-2079 ADM CODE  DISCONTINUE THE USE OF THE PREMISES FOR SINGLE ROOM OCCUPANCY |
| 999 | |
| 606 | § 27-2056.5 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PAINT THAT TESTED POSITIVE FOR LEAD CONTENT AND THAT IS PEELING OR ON A DETERIORATED |



|  | SUBSURFACE - USING EXCLUSIVE INTERIM CONTROLS. |
|---|---|
| 612 | § 27-2056.5 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PRESUMED LEAD PAINT THAT IS ON A DETERIORATED SUBSURFACE THAT IS UNSTABLE OR UNSOUND USING EXCLUSIVE INTERIM CONTROLS. |
| 611 | § 27-2056.5 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PRESUMED LEAD PAINT THAT IS PEELING OR ON A DETERIORATED SUBSURFACE ON WOOD TRIM, DOORS, OR WINDOWS - USING EXCLUSIVE INTERIM CONTROLS, WHICH INCLUDE A SURFACE DUST TEST IN ACCORDANCE WITH STATUTE. |
| 610 | § 27-2056.5 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PRESUMED LEAD PAINT THAT IS PEELING OR IS ON A DETERIORATED SUBSURFACE - USING EXCLUSIVE INTERIM CONTROLS. |
| 607 | § 27-2056.5 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PAINT THAT TESTED POSITIVE FOR LEAD CONTENT AND THAT IS PEELING OR IS ON A DETERIORATED SUBSURFACE ON WOOD TRIM, DOORS, OR WINDOWS - USING EXCLUSIVE INTERIM CONTROLS, WHICH INCLUDE A SURFACE DUST TEST IN ACCORDANCE WITH STATUTE. |
| 614 | § 27-2056.8 ADM CODE - CERTIFY COMPLIANCE WITH LEAD-BASED PAINT HAZARD CONTROL REQUIREMENTS DURING PERIOD OF UNIT VACANCY - APARTMENT _____ . |
| 1009 | § 27-2049 ADM CODE - POST AND MAINTAIN A STREET NUMBER ON THE FRONT OF THE DWELLING PLAINLY VISIBLE FROM THE SIDEWALK |
| 1000 | § 27-2045 ADM CODE - POST A PROPER NOTICE OF SMOKE DETECTOR REQUIREMENTS, IN A FORM APPROVED BY THE COMMISSIONER , AT OR NEAR THE MAILBOX |
| 1001 | § 27-2045 ADM CODE - PROVIDE AN APPROVED AND OPERATIONAL SMOKE DETECTING DEVICE, INSTALLED IN ACCORDANCE WITH DEPARTMENT OF BUILDINGS RULES AND REGULATIONS |
| 1002 | § 27-2044 ADM CODE - REPAIR OR REPLACE SMOKE DETECTOR |
| 1003 | § 27-2045 ADM CODE - FILE CERTIFICATION OF SATISFACTORY INSTALLATION OF SMOKE DETECTING DEVICE IN ACCORDANCE WITH HPD RULES AND REGULATIONS |
| 1026 | § 27-2062 ADM CODE - DISCONTINUE USE OF INTERIOR ROOM FOR LIVING OR PROVIDE AN ALCOVE OPENING OF AT LEAST 32 1/2 SQ.FT. TO ROOM HAVING A WINDOW OPENING DIRECTLY TO STREET OR YARD |
| 1027 | § 27-2062 ADM CODE - DISCONTINUE USE OF INTERIOR ROOM FOR LIVING |
| 1028 | § 27-2062 ADM CODE - DISCONTINUE THE USE OF THE INTERIOR ROOM FOR LIVING OR PROVIDE AN ALCOVE OPENING OF 60 SQ.FT. TO A ROOM HAVING A WINDOW OPENING DIRECTLY TO STREET OR YARD |



| 1030 | § 27-2069 ADM CODE - PROVIDE UNDER COMPLETED PERMIT, A WATER CLOSET, WASH BASIN AND BATH OR SHOWER ON THE SAME STORY FOR APARTMENT |
| --- | --- |
| 1031 | § 27-2064 ADM CODE - PROVIDE PROPER PLASTERED PARTITIONS EXTENDING FROM FLOOR TO CEILING FOR WATER CLOSET COMPARTMENT AND/ OR BATHROOM |
| 1032 | § 27-2064 ADM CODE - PROVIDE IN ACCORDANCE WITH THE RULES AND REGULATIONS OF THIS DEPARTMENT A WATERPROOF FLOOR AND BASE FOR THE WATER CLOSET |
| 1033 | § 27-2065 ADM CODE - PROVIDE VENTILATION FOR WATER CLOSET COMPARTMENT AND/ OR BATHROOM AND FILE APPLICATION FOR APPROVAL BEFORE DOING WORK |
| 1041 | § 27-2073 ADM CODE - DISCONTINUE UNLAWFUL COOKING SPACE OR FILE PLANS AND APPLICATION WITH THIS DEPARTMENT TO LEGALIZE SAME, IF LAWFULLY FEASIBLE |
| 1042 | § 27-2073 ADM CODE - PROVIDE AN ADEQUATE SUPPLY OF GAS TO THE FIXTURES |
| 1046 | § 27-2075 ADM CODE - DISCONTINUE UNLAWFUL OVERCROWDING |
| 1049 | § 27-2076 ADM CODE - DISCONTINUE UNLAWFUL USE OF KITCHEN FOR SLEEPING PURPOSES |
| 1051 | § 27-2077 ADM CODE - DISCONTINUE THE ROOMING UNIT |
| 1054 | § 27-2078-ADM CODE - DISCONTINUE THE UNLAWFUL OCCUPANCY BY MORE THAN TWO ROOMERS, BOARDERS OR LODGERS |
| 1061 | § 27-2087 ADM CODE - DISCONTINUE USE OF ROOMS FOR LIVING, DISCONNECT PLUMBING FIXTURES WHERE ILLEGAL AND PROPERLY SEAL PIPE CONNECTIONS |
| 1062 | § 27-2087 ADM CODE - DISCONTINUE USE OF ROOMS FOR LIVING PURPOSES OR OBTAIN A CERTIFICATE OF OCCUPANCY |
| 1067 | § 27-2142 ADM CODE - THE PREMISES OR APTS. HAVE BEEN VACATED BY THE DEPARTMENT AND CANNOT BE REOCCUPIED UNTIL SO ORDERED AFTER PROOF OF COMPLIANCE FOR |
| 1068 | § 27-2142 ADM CODE - THE PREMISES VACATED BY THIS DEPARTMENT, HAVE BEEN REOCCUPIED WITHOUT OBTAINING REQUIRED APPROVAL |
| 1071 | § 27-2096 ADM CODE - FILE WITH THIS DEPARTMENT A TRUE REGISTRATION STATEMENT FOR BUILDING |
| 1072 | § 27-2098 ADM CODE - FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT FOR BUILDING |
| 1074 | § 27-2098 ADM CODE - FILE WITH THIS DEPARTMENT A WRITTEN DESIGNATION OF MANAGING AGENT OF BUILDING |



| 1075 | § 27-2099 ADM CODE - FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT FOR CHANGE OF OWNERSHIP OF BUILDING |
|------|------|
| 1076 | § 27-2100 ADM CODE - FILE WITH THIS DEPARTMENT A REGISTRATION STATEMENT WITH A PROPER ADDRESS FOR REGISTERED PARTY |
| 1079 | § 27-2105 ADM CODE - RENT BILL OR RECIEPT NOT PROVIDED FOR TENANT WITH NAME AND ADDRESS OF INDIVIDUAL ACTING AS MANAGING AGENT OR NAME AND ADDRESS OF OWNER PRINTED OR STAMPED THEREON |
| 1492 | § 9, 170, 171, 300, 301, 302 M.D.LAW-FILE PLANS AND APPLICATION AND OBTAIN A CERTIFICATE OF OCCUPANCY TO LEGALIZE THE CONVERSION FROM A PRIVATE DWELLING TO MULTIPLE DWELLING USE IF LAWFULLY FEASIBLE OR RESTORE TO LAWFUL OCCUPANCY |
| 1493 | § 9, 56, 193, 300, 302 M.D. LAW- ABOVE FRAME BUILDING HAS BEEN CONVERTED FROM A PRIVATE DWELLING TO A MULTIPLE DWELLING AND IS NOW OCCUPIED AND MAINTAINED AS SUCH CONTRARY TO LAW.RESTORE PREMISES TO LAWFUL OCCUPANCY |
| 759 | § 27-2091 HMC, § 302 MDL : APARTMENTS HAVE BEEN ISSUED A COMMISSIONER'S ORDER AND OCCUPANTS ARE IN NEED OF RELOCATION SERVICES. APARTMENTS CANNOT BE RE-OCCUPIED UNTIL THE COMMISSIONER'S ORDER IS REVOKED AFTER HPD INSPECTION OF APARTMENTS. |
| 760 | § 27-2091 HMC, § 302 MDL: THE PREMISES HAVE BEEN ISSUED A COMMISSIONER'S ORDER AND OCCUPANTS ARE IN NEED OF RELOCATION SERVICES. APARTMENTS CANNOT BE REOCCUPIED UNTIL THE COMMISSIONER'S ORDER IS REVOKED AFTER HPD INSPECTION OF APARTMENTS. |
| 616 | § 27-2056.6 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PRESUMED LEAD PAINT THAT IS PEELING OR ON A DETERIORATED SUBSURFACE USING WORK PRACTICES SET FORTH IN 28 RCNY §11-06(B)(2) |
| 617 | § 27-2056.6 ADM CODE - CORRECT THE LEAD-BASED PAINT HAZARD - PAINT THAT TESTED POSITIVE FOR LEAD CONTENT AND THAT IS PEELING OR ON A DETERIORATED SUBSURFACE - USING WORK PRACTICES SET FORTH IN 28 RCNY §11-06(B)(2) |
| 618 | § 27-2056.7 ADM CODE -CORRECT FAILURE TO PROVIDE TO THE DEPARTMENT WITHIN 45 DAYS OF DEMAND ALL RECORDS REQUIRED TO BE MAINTAINED BY OWNER |
| 550 | § 27-2005 HMC:TRACE AND REPAIR THE SOURCE AND ABATE THE NUISANCE CONSISTING OF MOLD ... |
| 1501 | § 27-2046.1 HMC: POST A PROPER NOTICE OF CARBON MONOXIDE DETECTING DEVICE REQUIREMENTS, IN A FORM APPROVED BY THE COMMISSIONER, IN A COMMON AREA OF A CLASS A MULTIPLE DWELLING NEAR INSPECTION CERTIFICATE OR PROVIDE NOTICE TO TENANTS IN A PRIVATE DWELLING. |
| 1502 | § 27-2046.1, 2046.2 HMC: PROVIDE AN APPROVED AND OPERATIONAL CARBON MONOXIDE DETECTING DEVICE, INSTALLED IN ACCORDANCE WITH APPLICABLE LAW AND RULES. |



| 1503 | § 27-2046.1 HMC: REPAIR OR REPLACE THE CARBON MONOXIDE DETECTING DEVICE(S). |
| --- | --- |
| 1504 | § 27-2046.1, 2046.2 HMC: FILE CERTIFICATION OF SATISFACTORY INSTALLATION OF CARBON MONOXIDE DETECTING DEVICE(S) IN ACCORDANCE WITH HPD RULE. |
| 1505 | § 27-2046.1, 2046.2 HMC: MAINTAIN ON THE PREMISES AND MAKE AVAILABLE TO THE DEPARTMENT UPON REQUEST RECORDS OF INSTALLATION AND MAINTENANCE OF CARBON MONOXIDE DETECTING DEVICE(S) IN THE BUILDING. |
| 729 | §27-2153 ADM CODE THE PREMISES HAS BEEN SELECTED TO PARTICIPATE IN THE ALTERNATIVE ENFORCEMENT PROGRAM WHICH MAY RESULT IN BUILDING-WIDE INSPECTIONS, FEES, AND EXTENSIVE REPAIR WORK TO CORRECT VIOLATIONS AND UNDERLYING CONDITIONS. CHARGES FOR REPAIR WORK DONE PURSUANT TO THIS ORDER, IF NOT PAID, WILL BECOME LIENS ON THE PROPERTY |
| 568 | § 27-2018  ADMIN. CODE:  ABATE THE INFESTATION CONSISTING OF ROACHES |
| 569 | § 27-2018  ADMIN. CODE:  ABATE THE INFESTATION CONSISTING OF MICE |
| 570 | § 27-2018  ADMIN. CODE:  ABATE THE NUISANCE CONSISTING OF BEDBUGS |
| 868 | § 27-2018  ADMIN. CODE:  ABATE THE INFESTATION CONSISTING OF ROACHES |
| 869 | § 27-2018  ADMIN. CODE:  ABATE THE INFESTATION CONSISTING OF MICE |
| 870 | § 27-2018  ADMIN. CODE:  ABATE THE NUISANCE CONSISTING OF BEDBUGS |
| 790 | § 27-2043.1 HMC INSTALL THE MISSING OR REPAIR/REPLACE THE DEFECTIVE WINDOW GUARD(S) IN ACCORDANCE WITH THE SPECIFICATIONS OF THE NEW YORK CITY HEALTH CODE SECTION 24 RCNY CHAPTER 12. |
| 791 | § 27-2043.1 HMC INSTALL THE MISSING OR REPAIR/REPLACE THE DEFECTIVE WINDOW GUARD(S) THROUGHOUT THE PUBLIC AREAS IN ACCORDANCE WITH THE SPECIFICATIONS OF THE NEW YORK CITY HEALTH CODE SECTION 24 RCNY CHAPTER 12. |
| 583 | § 27-2026, 2027 HMC: PROPERLY REPAIR THE SOURCE AND ABATE THE EVIDENCE OF A WATER LEAK |
| 883 | § 27-2026, 2027 HMC: PROPERLY REPAIR THE SOURCE AND ABATE THE EVIDENCE OF A WATER LEAK |
| 688 | § 27-2037, 2038 HMC: PROVIDE A SAFE AND ADEQUATE SUPPLY OF ELECTRIC SERVICE TO THE FIXTURES |



| 988 | § 27-2037, 2038 HMC: PROVIDE A SAFE AND ADEQUATE SUPPLY OF ELECTRIC SERVICE TO THE FIXTURES |
|---|---|
| 689 | § 27-2005, 2006, 2037 HMC: PROPERLY REPAIR AND ABATE UNSAFE ELECTRIC WIRING CONDITION CONSISTING OF |
| 989 | § 27-2005, 2006, 2037 HMC: PROPERLY REPAIR AND ABATE UNSAFE ELECTRIC WIRING CONDITION CONSISTING OF |
| 717 | § 27-2005, 2050 HMC: PROVIDE AN ADEQUATE SUPPLY OF WATER FOR THE WET SPRINKLER AND/OR STANDPIPE SYSTEM AT |
| 1017 | § 27-2005, 2050 HMC: PROVIDE AN ADEQUATE SUPPLY OF WATER FOR THE WET SPRINKLER AND/OR STANDPIPE SYSTEM AT |
| 730 | § 27-2091(C) ADM CODE   THE PROPERTY HAS BEEN ISSUED AN ORDER TO IDENTIFY AND ADDRESS  UNDERLYING CONDITIONS AND VIOLATIONS RELATED TO THE ORDER. FAILURE TO COMPLY MAY RESULT IN EXTENSIVE REPAIR WORK TO CORRECT UNDERLYING CONDITIONS AND RELATED VIOLATIONS BY HPD. CHARGES FOR REPAIR WORK DONE PURSUANT TO THIS ORDER, IF NOT PAID, WILL BECOME TAX LIENS ON THE PROPERTY |
| 780 | §27-2107 ADM CODE   OWNER FAILED TO FILE A VALID REGISTRATION STATEMENT WITH THE DEPARTMENT AS REQUIRED BY ADM CODE §27-2097 AND IS THEREFORE SUBJECT TO CIVIL PENALTIES, PROHIBITED FROM CERTIFYING VIOLATIONS, AND DENIED THE RIGHT TO RECOVER POSSESSION OF PREMISES FOR NONPAYMENT OF RENT UNTIL A VALID REGISTRATION STATEMENT IS FILED. |
| 500 | § 26-1103 ADMIN. CODE: POST AND MAINTAIN A PROPER NOTICE ON WALL OF THE ENTRANCE STORY IN ENGLISH AND SPANISH ON THE AVAILABILITY OF THE AGENCY'S HOUSING INFORMATION GUIDE. A SAMPLE NOTICE CAN BE FOUND AT WWW.NYC.GOV/HPD. |
| 546 | § 27-2005, 2007 HMC: REMOVE THE ILLEGAL DOUBLE CYLINDER KEY OPERATED LOCKING DEVICE AT DOOR |
| 846 | § 27-2005, 2007 HMC: REMOVE THE ILLEGAL DOUBLE CYLINDER KEY OPERATED LOCKING DEVICE AT DOOR |
| 549 | § 27-2005, 2012 HMC & § 309 MDL: ABATE THE NUISANCE CONSISTING OF EXCESSIVE STORAGE OF MATERIAL |
| 849 | § 27-2005, 2012 HMC & § 309 MDL: ABATE THE NUISANCE CONSISTING OF EXCESSIVE STORAGE OF MATERIAL |
| 728 | §27-2153 ADM CODE POST AND MAINTAIN A NOTICE, WRITTEN IN ENGLISH AND IN SPANISH, ON THE BUILDING ENTRANCE DOOR OR OTHER CONSPICUOUS LOCATION IN THE BUILDING COMMON AREA, STATING THAT: (1) THE BUILDING IS IN THE ALTERNATIVE ENFORCEMENT PROGRAM, (2) THAT OCCUPANTS MAY CALL 311 OR THE AEP AT 212-863-8262 TO REPORT HOUSING MAINTENANCE COMPLAINTS, (3) THE NAME, TELEPHONE, AND ADDRESS OF THE OWNER, AND, (4) THE IDENTITY OF ANY FINANCIAL INSTITUTION THAT HOLDS A MORTGAGE ON THE PROPERTY. POST |

A-1543



| 1506 | § 27-2005 HMC: POST, IN A FORM APPROVED BY THE COMMISSIONER, AND MAINTAIN A NOTICE IN A COMMON AREA OF THE BUILDING REGARDING THE PROCEDURES THAT SHOULD BE FOLLOWED WHEN A GAS LEAK IS SUSPECTED |
| --- | --- |
| 630 | (C) 27-2142(A) HMC: THE FOLLOWING DWELLING UNITS WERE REOCCUPIED WHILE BEING SUBJECT TO AN ORDER TO REPAIR/VACATE ORDER ISSUED BY THE DEPARTMENT; ORDER CONDITIONS OBSERVED EXISTING. |
| 631 | (B) 27-2142(A) HMC: THE FOLLOWING DWELLING UNITS WERE REOCCUPIED WHILE BEING SUBJECT TO AN ORDER TO REPAIR/VACATE ORDER ISSUED BY THE DEPARTMENT; FILE FOR A DISMISSAL REQUEST RELATED TO THE ISSUED ORDER (SEE WWW.NYC.GOV/HPD). |
| 632 | (B) 27-2141(C) HMC: ORDER TO REPAIR/VACATE ORDER MUST REMAIN POSTED UNTIL SUCH TIME AS THE ORDER IS RESCINDED.  A COPY FOR POSTING CAN BE FOUND THROUGH HPDONLINE (WWW.NYC.GOV/HPD). |
| 744 | § 27-2046.4 HMC: PROVIDE CONTROL KNOB SAFETY COVERS FOR THE GAS STOVE. |

## NOVID

Unique identifier of the Notice of Violation sent to the owner

## NOVDescription

Description of the violation

## NOVIssueDate

Date when the NOV was sent

## CurrentStatusID, CurrentStatus

Violation status, see the table below for details:

| SeqNo | ShortName | LongName | Definition | OPEN OR CLOSED? |
| --- | --- | --- | --- | --- |
| 1 | OPEN | VIOLATION OPEN | The violation is active and still requires action from the owner or the violation has been properly certified and is pending the statutory period for reinspection or dismissal. | OPEN |



| 2 | NOV SENT | NOV SENT OUT | The Notice of Violation was sent to the registered owner or "Owner of the Premises". | OPEN |
|---|---|---|---|---|
| 3 | NOV CERT | NOV CERTIFIED ON TIME | The violation was certified as corrected by the Owner on time and properly. | OPEN |
| 4 | NOV LATE | NOV CERTIFIED LATE | The violation was certified as corrected by the Owner but was not submitted to HPD in a timely manner.  Therefore, the certification was not acceptable. | OPEN |
| 6 | POSTP GRANT | CERTIFICATION POSTPONMENT GRANTED | The property owner applied to HPD to extend the correction date for the violation, and HPD granted the request. The new correction and certification date is in the columns NEW CORRECT BY DATE and  NEW CERT BY DATE. | OPEN |
| 7 | POSTP DENIED | CERTIFICATION POSTPONMENT DENIED | The property owner applied to HPD to extend the correction date for the violation, and HPD denied the request. The condition must be corrected by the original correction date. | OPEN |
| 8 | FALSE CERT | FALSE CERTIFICATION | The violation was certified as corrected by the Owner on time and properly.  A subsequent re-inspection of the condition by HPD found that condition had not been properly corrected.  The violation is open and is subject to civil penalties for false certification. | OPEN |

A-1545

NYC OpenData

| | | | | |
|---|---|---|---|---|
| 10 | CIV14 MAILED | | | |
| 11 | OPEN | VIOLATION WILL BE REINSPECTED | HPD will be attempting to reinspect this violation. | OPEN |
| 19 | DISMISSED | VIOLATION CLOSED | The violation has been closed. | CLOSED |
| 20 | DEFECT LETTER | DEFECT LETTER ISSUED | The violation condition was observed corrected by the Department.  However, documentation required to close the violation has not yet been received and the violation remains open. | OPEN |
| 21 | NOT COMPLIED | NOT COMPLIED WITH | A reinspection of the violation found that the condition still exists as of the status date. | OPEN |
| 22 | 1 NO ACCESS | FIRST NO ACCESS TO RE- INSPECT VIOLATION | HPD attempted to reinspect the violation but there was no access.  The violation remains open. | OPEN |
| 23 | 2 NO ACCESS | SECOND NO ACCESS TO RE-INSPECT VIOLATION | HPD made a second attempt to reinspect the violation but there was no access. The violation remains open. | OPEN |
| 24 | OPEN | VIOLATION REOPEN | The violation was returned to open status from closed. | OPEN |



| | | | | OPEN |
|---|---|---|---|---|
| 27 | INFO NOV SENT | INFO NOV SENT OUT | Info NOVs are notice that an order has been issued by the Department.  These orders do not have associated certification or correction dates and are used to serve notice upon current and future owners regarding open agency Orders. | |
| 28 | CERT INVALID | INVALID CERTIFICATION | A certification has been submitted but was not acceptable due to a defect in the certification documentation. | OPEN |
| 36 | PARTIAL ACCESS | COMPLIED IN ACCESS AREA | This status applies only to window guard violations.  An inspection resulted in a finding that some window guards had been installed, but that there was no access to confirm installation in all windows. | OPEN |

CurrentStatusDate

Date when the current status went into effect

NovType

Original/Reissued Notice of Violation.

Violation Status

Status of Violation

Latitude/Longitude

Latitude and longitude specify the location of the property on the earth's surface. The coordinates provided are an estimate of the location based on the street segment and address range.

Community Board

Community Board indicates the New York City Community District where the building is located

Council District

Council District indicates the New York City Council District where the building is located

CensusTract

Census Tract indicates the 2010 U.S. Census Tract where the building is located.

## BIN

The BIN (Building Identification Number) is a unique identifier for each building in the City.

## BBL

BBL is a unique identifier for each tax lot in the city.

## NTA

Neighborhood Tabulation Area indicates the New York City Neighborhood Tabulation Area where the building is located.

| LitigationID | HouseN | StreetName | Zip | CaseType | CaseOpenDate | Respondent |
|---|---|---|---|---|---|---|
| 341405 | 102 | WEST 138 STREET | 10030 | False Certification Non-Lead | 11/15/2018 0:00 | ABJ LENOX LLC,JOSEPH SOLEIMANI |
| 358105 | 526 | WEST 173 STREET | 10032 | Comprehensive | 7/19/2019 0:00 | 173 HEIGHTS LLC,JOSEPH SOLEIMANI |
| 358107 | 506 | WEST 173 STREET | 10032 | Comprehensive | 7/18/2019 0:00 | 173 HEIGHTS LLC,JOSEPH SOLEIMANI |
| 358106 | 524 | WEST 173 STREET | 10032 | Comprehensive | 7/19/2019 0:00 | 173 HEIGHTS LLC,JOSEPH SOLEIMANI |
| 354050 | 169 | EAST 105 STREET | 10029 | False Certification Non-Lead | 8/20/2019 0:00 | ABJ 105, LLC.,JOSEPH SOLEIMANI |
| 358070 | 169 | EAST 105 STREET | 10029 | False Certification Non-Lead | 9/4/2019 0:00 | ABJ 105, LLC.,JOSEPH SOLEIMANI |
| 355934 | 2601 | MARION AVENUE | 10458 | False Certification Non-Lead | 1/13/2020 0:00 | JOSEPH SOLEIMANI,SCG 311, LLC. |

Source: **https://data.cityofnewyork.us/Housing-Development/Housing-Litigations/59kj-x8nc/data**

| LitigationID | House | StreetName | Zip | CaseType | CaseOpenDate | Respondent |
|---|---|---|---|---|---|---|
| 342076 | 14 | THAYER STREET | 10040 | Comprehensive | 10/12/2018 0:00 | 14-28 THAYER  LLC, ELIE GABAY, MICHAEL HAAS, PETER REBENWURZEL |
| 329453 | 520 | WEST 204 STREET | 10034 | Comprehensive | 3/1/2018 0:00 | 518 WEST 204, LLC, ELIE GABAY, MICHAEL HAAS, PETER REBENWURZEL |
| 342078 | 28 | THAYER STREET | 10040 | Comprehensive | 10/16/2018 0:00 | 14-28 THAYER LLC, ELIE GABAY, MICHAEL HAAS, PETER REBENWURZEL |

Source: **https://data.cityofnewyork.us/Housing-Development/Housing-Litigations/59kj-x8nc/data**

A-1550

LMS Glossary                                                 https://hpdonline.hpdnyc.org/HPDonline/GlossaryLMS.aspx

| Glossary of Terms for Litigation Status Report | |
|---|---|
| **Tenant Action** | Cases commenced by one or more residential tenants against their landlords (and naming HPD as a party) seeking an order to correct violations and civil penalties for failure to timely correct violations. |
| **Tenant Action-Harassment** | Cases against owners commenced by one or more residential lawful occupant(s)/tenants who allege that conduct and/or conditions have occurred which constitutes harassment. In such cases, the lawful occupant(s)/tenants seek an order directing the owners to cease harassing the lawful occupant(s)/tenants and, where appropriate, an award of civil penalties for the harassment that has occurred. |
| **Comprehensive cases** | HPD seeks the correction of all outstanding violations in a building and/or civil penalties for owners' failure to timely certify correction of violations; for false certification of correction of violations; and/or for failure to file a Multiple Dwelling Registration |
| **Comprehensive Supplemental cases** | Cases in which HPD seeks a finding of contempt and/or additional civil penalties against landlords who have failed to comply with orders to correct violations. |
| **Heat and Hot Water cases** | In these cases HPD seeks orders directing that heat and/or hot water be provided and maintained. Civil penalties may also be assessed and, if the owner is particularly recalcitrant. HPD also offers landlords with first-time heat and hot water violations the opportunity to certify the correction of the violations and pay a fine in lieu of going to court. |
| **Heat and Hot Water Supplemental cases** | Cases in which HPD seeks a finding of contempt and/or additional civil penalties against landlords who have failed to comply with orders to provide heat and/or hot water. Contempt sanctions including incarceration may be imposed. |
| **False Certification Non-Lead** | HPD commences false certification cases, where the owners have falsely certified correction of violations issued by the Department. |
| **Lead False Certification** | HPD commences false certification cases, where the owners have falsely certified correction of lead paint violations issued pursuant to Local Law 1 of 2004 by the Department. |
| **Access Warrant Lead** | HPD seeks access warrants based upon violations issued pursuant to Local Law 1 of 2004 by the Department of Health and Mental Hygiene or HPD, where owners have denied access to HPD inspectors to inspect for the presence of lead paint in buildings or to contractors and crews sent by HPD's Emergency Service Bureau to correct overdue lead paint hazard violations. |
| **Access Warrant Non-Lead** | HPD seeks access warrants based upon violations issued where owners have denied access to HPD inspectors or to contractors and crews sent by HPD's Emergency Service Bureau to correct the hazardous condition. |
| **Judgments** | Formal decisions made by the courts following court cases. a. Default Judgments –Judgments entered for an order and/or civil penalties upon default where there was no appearance in court by the required respondent(s). b. Judgments after Trial – Judgments awarded by the Court after a trial and presentation of the evidence. c. Judgments after Payment Default – Judgments that are imposed after a payment schedule from settlements or consent orders was violated. |
| **Settlements or Consent Orders** | Stipulations or Orders negotiated by the parties involved in a case that were so ordered by a judge. |
| **Judgment Enforcement** | When the Court issues a judgment against the owners of a building awarding civil penalties to HPD and the owners do not pay the amount due, HPD undertakes a variety of methods to collect the |

|  | money due. The actions that HPD takes are called judgment enforcement. |
|---|---|
| **7A Cases** | HPD also brings litigation to have Article 7A Administrators appointed to buildings. The goal of the 7A program is to improve the quality of life for residential tenants living in buildings that have experienced severe decay, harassment and/or a lack of services because of landlord actions, neglect or abandonment. HLD attorneys and/or tenants seek to have the Court appoint 7A Administrators who will have interim management control, oversee required repairs to privately-owned buildings, and obtain Court authorization for HPD-funded repairs. HLD also represents HPD when the owner seeks to have the 7A Administrator discharged and the building returned to the owner's control. |
| **CONH** | Before applying to the Department of Buildings for a permit to demolish or reconfigure some buildings, including single room occupancy multiple dwellings and some multiple dwellings in several zoning districts, the owner must obtain a Certification of No Harassment ("CONH") from HPD. The owner submits an application and HPD investigates and determines whether to issue a CONH. If HPD determines that there is reasonable cause to believe that harassment occurred, a hearing is held before the Office of Administrative Trials and Hearings ("OATH"). After OATH issues its findings and recommendation, HPD determines whether to issue a CONH. A finding of harassment prevents the owner from obtaining certain types of demolition and alteration permits for three years in the case of single room occupancy multiple dwellings and permanently (unless the owner complies with an affordable housing requirement) in the case of other properties. |
| **Harassment Finding after Inquest** | Judgments entered for an order and/or civil penalties upon default where there was no appearance in court by the required respondent(s). If any of these judgments are vacated by the Court, they will be removed from this list. |
| **Harassment Finding after Trial** | Judgments awarded by the Court after a trial and presentation of the evidence. |
| **No Harassment Finding** | A determination by the Court that the lawful occupant(s)/tenants has/have not properly alleged facts and/or presented sufficient evidence that harassment occurred. |
| **Finding Date** | The date that the decision was made in court. |
| **Harassment Penalty** | The penalty awarded by the Court when harassment is found. |
| **Case Start Date** | Date on which the case was started in Court. |
| **Penalties** | The penalties awarded by the Court in the case when harassment is found. This amount includes all penalties, including harassment penalties. |



DiRuzzo & Company

Joseph A. DiRuzzo, III, Esq., CPA
954.615.1676
jd@diruzzolaw.com

April 9, 2020

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

   Re: *United States v. Teman,* case no. 1:19-cr-696

Dear Judge Engelmayer:

Pursuant to your "individual rules of practice in criminal cases," this letter serves as the Defendant Ari Teman's request for the Court to authorize disclosure of the grand jury transcripts under Fed. R. Crim. P. 6(e)(3)(E)(i) & (ii).

Teman has continuously argued that the indictment was constructively amended, and the Government did not prove what was alleged in the indictment, *viz.* that Teman deposited "counterfeit checks." However, the Court made the following observation at trial:

> Look, let me offer this thought: If what you're suggesting is that there might have been a mischaracterization of what was put before the grand jury, in the event of a conviction in this case, I expect there will be post-trial motions. You're at liberty to seek the Court's ~ to invite the Court to review the grand jury transcript to test that proposition.

Tr. 888-889.

The parties have a profound disagreement as to what the grand jury indicted Teman on, and by necessary extension, what the Government had to prove in its case in chief. *See Stirone v. United States,* 361 U.S. 212, 217 (1960) (criminal defendants have a substantial right to be tried only on charges presented in an indictment returned by a grand jury).

The Government claims that "unauthorized" was the term used before the grand jury and that "counterfeit" was just a stylistic choice in the verbiage in the indictment. There can only be one way of ascertaining the truth – disclosure under Rule 6(e).

401 East Las Olas Blvd., Suite 1400, Ft. Lauderdale, FL 33301
FAX/ 954.827.0340 WEB/ WWW.DIRUZZOLAW.COM

A-1553

Accordingly, the Court should enter an order authorizing the disclosure under Rule 6(e)(3)(E)(i) and/or (ii) and permit Teman and the Court to review the grand jury transcripts to verify whether Teman was convicted on what the grand jury indicted him on.

Kind Regards,

Page | 2

/s/ Joseph A. DiRuzzo, III    Digitally signed by /s/ Joseph A. DiRuzzo, III
Date: 2020.04.09 17:00:34 -04'00'

Joseph A. DiRuzzo, III

JAD/

cc: AUSA K. Bhatia, via ECF
AUSA E. Imperatore, via ECF
J. Gelfand, via ECF

A-1554

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 1, 2020

**BY CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    <u>United States v. Ari Teman,</u>
               S2 19 Cr. 696 (PAE)

Dear Judge Engelmayer:

    The Government submits this letter and accompanying attachments in response to the Court's Order instructing the Government to file electronic copies of the exhibits introduced at trial on the docket in this matter. Dkt. 127. In consultation with the defense, the Government has isolated the exhibits introduced at trial, and attaches them to this filing. One exhibit, GX 113, is a Microsoft Excel file that cannot be submitted as an attachment on CM/ECF, so the Government will send a copy of that exhibit to the Court via email.

                        Respectfully submitted,

                        GEOFFREY S. BERMAN
                        United States Attorney for the
                        Southern District of New York

      By:    /s/
                 Kedar S. Bhatia
                 Assistant United States Attorney
                 (212) 637-2465

A-1555

Date: 11/18/2016 Time: 4:35:15 PM (US Central Time) Scanned From IP:10.60.113.11
Case 1:19-cr-00696-PAE   Document 128-1   Filed 05/01/20   Page 1 of 4

# Bank of America

**BANK OF AMERICA, N.A. (THE "BANK")**

### Certified Copy of Corporate Resolutions - Opening and Maintaining Deposit Accounts and Services

Account Number    483067038085

Name of Corporation    GATEGUARD, INC

I the undersigned, hereby certify to    BANK OF AMERICA, N.A

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of

GATEGUARD, INC    , duly organized and existing under the laws of the

State of    Delaware    (the "Corporation"), that the following is a true copy of resolutions duly adopted by the Board of

Directors of said Corporation at a meeting duly held on the    17    day of    November 2016    , at which a quorum was present and acted

throughout or adopted by the unanimous written consent of the Board of Directors, and that such resolutions are in full force and effect and have not been amended

or rescinded

**1. Resolved,** that    BANK OF AMERICA, N.A    (the "Bank,") is hereby designated
as a depository of the Corporation and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in
accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts, that any one of the
following officers or employees of the Corporation

ARI B. TEMAN    President

Name    Title

Name    Title

Name    Title

Name    Title

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other
documentation required by Bank to open said accounts, to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment
of money, to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection
or discount by Bank, to accept drafts, acceptances, and other instruments payable at Bank, to place orders with Bank for the purchase and sale of foreign currencies
on behalf of this Corporation, to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of
the Corporation, to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's accounts) that may be used for
the purpose of initiating electronic fund transfers [Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor
Regulation E (12 C.F.R. Part 205) are applicable to any such access device], to establish and maintain a night deposit relationship, to execute and deliver a wire
transfer agreement and to request, or to appoint or delegate from time to time such persons who may request, wires of funds, to enter into any agreements with the
Bank for the provision by Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole
discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the
Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate
given in accordance with the terms of any such agreement shall have been received by Bank, and that such termination shall not affect any action taken by the Bank
prior to such termination, to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the
rental agreement or lease, to take whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts
with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or
employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary, and to waive presentment, demand,
protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation, and

**2. Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual
obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to
inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such
instrument or the proceeds thereof, and further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds
whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee, and

**3. Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for
the payment of money drawn or purportedly drawn in this Corporation's name, including those payable to the individual order of any person whose name appears
thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall
be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual
or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by
the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any
check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation,
thereby ratifying the use of such facsimile signature, and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or
expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature,
and

NNY
00-14-9012M  11-2013





GOVERNMENT
EXHIBIT
101
19 Cr. 696 (PAE)

SDNY_000170

A-1556

Date: 11/18/2016 Time: 4:35:15 PM (US Central Time) Scanned From IP:10.60.113.11

Account Number    483067038085

**4.  Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection, and

**5.  Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified, and

**6.  Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto, and

**7.  Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted, and

**8.  Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holders of the above authorized titles and their signatures on any signature card or other documentation required by said Bank.

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this ___17___ day of ___NOVEMBER 2016___ .

_____
**Secretary/Assistant Secretary**

(Corporate Seal)    *No seal*

| Bank Information | |
|---|---|
| Date | 11/17/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Joe Quinones |
| Associate's Phone Number | 212-946-8708 |

NNY
00-14-9012M  11-2013

SDNY_000171

A-1557

Date: 11/18/2016 Time: 4:35:15 PM (US Central Time) Scanned From IP:10.60.113.11

# Bank of America 🇺🇸

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card**
**with Substitute Form W-9**

**Account Number:** 4830 6703 8085                  **Bank Number:** 487

**Account Type:** ☒ DDA    ☐ SAV    ☐ CD

**Account Title:**

GATEGUARD, INC.

**Legal Designation:**

☐ Individual/Sole Proprietor    ☐ Trust/Estate    ☐ Unincorporated Association    ☒ C Corporation    ☐ S Corporation

☐ Partnership (Enter the type of partnership: General, LP, LLP or LLLP)

☐ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)

☐ Other (Defined in W-9 instructions)

**Social Security Number** _____ (or) **Employer Identification Number** 81-4443812

**By signing below, I/we acknowledge and agree** that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, **I/we acknowledge** the receipt of these documents. **By signing below, I/we acknowledge and agree** that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which **I/we** want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

**Substitute Form W-9.** Certification - Under penalties of perjury, I certify that (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions:** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN (Please refer to the IRS instructions for Form W-9).

> **The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

**Exempt payee code (if any)** _____

**Exemption from FATCA reporting code (if any)** _____

☐ **Nonresident Alien Status (if applicable)** If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8

| | Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|---|
| 1 | ARI B TEMAN | PRESIDENT | | 12/7/16 |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |

NNY
00-14-9297MW  08-2014

© 2012 Bank of America, N.A. All Rights Reserved
Page 1 of 2

SDNY_000172

A-1558

Date: 11/18/2016 Time: 4:35:15 PM (US Central Time) Scanned From IP:10.60.113.11

**Account Number:** 4830 6703 8085

☐ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

_____                    PResiDeNt
Authorized Signer                                                  Title

---

**Review Information**

**Customer 1:**

Name    ARI B TEMAN

| | | | | |
|---|---|---|---|---|
| ID Type  US Passport W/Photo | ID# 469084748 | ID Issuer | Iss Date 05/2010 | Exp Date 05/2020 |
| ID Type  US Driver License W Photo | ID# T24440576205822 | ID Issuer New Jersey | Iss Date 10/2013 | Exp Date 06/2017 |

**Customer 2:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 3:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 4:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 5:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

---

**Bank Information**

| | |
|---|---|
| Date | 11/17/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Joe Quinones |
| Associate's Phone Number | 212-946-8708 |

NNY
00-14-9297MW  08-2014

Page 2 of 2

A-1559


**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

GATEGUARD, INC.
350 LINCOLN RD
SUITE 5060
MIAMI BEACH, FL  33139

**Business Advantage**

**Customer service information**

🌐 1.888.BUSINESS (1.888.287.4637)

✎ bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Fundamentals Checking

for May 1, 2019 to May 31, 2019                    Account number: 4830 6703 8085
**GATEGUARD, INC.**

### Account summary

| | | |
|---|---:|---|
| Beginning balance on May 1, 2019 | $4,458.69 | # of deposits/credits: 0 |
| Deposits and other credits | 0.00 | # of withdrawals/debits: 5 |
| Withdrawals and other debits | -264,490.50 | # of items-previous cycle[1]: 30 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -288.00 | Average ledger balance: -$209,150.50 |
| **Ending balance on May 31, 2019** | **-$260,319.81** | [1]Includes checks paid,deposited items&other debits |

GOVERNMENT
EXHIBIT
102
19 Cr. 696 (PAE)

Bank of America **Business Advantage**

### What's on your mind?

Business owners like you can join the Bank of America® Advisory Panel to help us understand what you like and don't like.
Enter code **SBDD** at **bankofamerica.com/AdvisoryPanel** to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.                SSM-01-19-2128D1 | ARG377KX

SDNY_000952

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  May 1, 2019 to May 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us -** You may call us at the telephone number listed on the front of this statement.

**Updating your contact information -** We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement -** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers-** If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems -** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits -** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



**Bank of America, N.A. Member FDIC and**  **Equal Housing Lender**

SDNY_000953



**Your checking account**

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   May 1, 2019 to May 31, 2019

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 05/07/19 | RETURN ITEM CHARGEBACK | -264,000.00 |

Card account # XXXX XXXX XXXX 2943

| Date | Description | Amount |
|------|-------------|--------|
| 05/02/19 | CHECKCARD 0501 GOOGLE*GSUITE 12GURUS. CC GOOGLE.COMCA 2401308912209003156158 CKCD 7311 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -87.10 |
| 05/02/19 | CHECKCARD 0502 WEWORK-WW 350 LINCOLN 855-593-9675 FL 24692169122100519048240 CKCD 6513 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -373.45 |
| 05/03/19 | CHECKCARD 0501 SendGrid 1-877-969-8647 877-9698647 CO 24906419121072418128369 RECURRING CKCD 7399 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -29.95 |

**Subtotal for card account # XXXX XXXX XXXX 2943**  **-$490.50**
**Total withdrawals and other debits**  **-$264,490.50**

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

| | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft fees | $0.00 | $350.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

**We want to help you avoid overdraft and returned item fees. Here are a few ways to manage your account and stay on top of your balance:**

- Set up Overdraft Protection in Online Banking to avoid declined transactions and save on overdraft fees
- Sign up for Alerts (footnote 1) to get an email or text message when your balance becomes low

Please call us or visit us if you have any questions or to discuss your options.

(footnote 1) You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.

*continued on the next page*

Bank of America **Business Advantage**

# Thank you for your business

We're committed to finding the smartest path to long-term growth for your business.

Our Small Business Specialists will work with you to help strengthen your business and plan for the future.
Please visit **bankofamerica.com/SmallBusiness** to learn more.

AR7RNN9G|SSM-01-19-2811.B

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   May 1, 2019 to May 31, 2019

## Service fees - continued

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 04/30/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ☑ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ○ $3,000+ minimum daily balance in primary checking account
- ☑ $5,000+ average monthly balance in primary checking account
- ☑ $15,000+ combined average monthly balance in linked business accounts
- ○ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 05/07/19 | RETURNED ITEM CHARGEBACK FEE | -288.00 |
| **Total service fees** | | **-$288.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|-----------|------|-------------|
| 05/01 | 4,458.69 | 05/03 | 3,968.19 | 05/07 | -260,319.81 |
| 05/02 | 3,998.14 | | | | |

SDNY_000955



P.O. Box 15284
Wilmington, DE 19850

GATEGUARD, INC.
350 LINCOLN RD
SUITE 5060
MIAMI BEACH, FL  33139

## Business Advantage

**Customer service information**

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Fundamentals Checking

for April 1, 2019 to April 30, 2019                         Account number: 4830 6703 8085
**GATEGUARD, INC.**

## Account summary

| | | |
|---|---|---|
| Beginning balance on April 1, 2019 | $3,995.96 | # of deposits/credits: 11 |
| Deposits and other credits | 307,762.27 | # of withdrawals/debits: 30 |
| Withdrawals and other debits | -306,888.30 | # of items-previous cycle[1]: 3 |
| Checks | -0.00 | # of days in cycle: 30 |
| Service fees | -411.24 | Average ledger balance: $46,062.92 |
| **Ending balance on April 30, 2019** | **$4,458.69** | [1]Includes checks paid, deposited items & other debits |

Bank of America **Business Advantage**

THE POWER TO
## build a thriving business

During National Small Business Week and throughout the month of May, we're celebrating the dedication
of small business owners and their commitment to achieving success.

Join in the conversation with other business owners by visiting the Small Business Community at
**bankofamerica.com/SBcelebrate.**

SSM-11-18-0541.B | ARQSHK8M

PULL: E   CYCLE: 60   SPEC: E   DELIVERY: E   TYPE:    IMAGE: I   BC: NY

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   April 1, 2019 to April 30, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and      Equal Housing Lender

A-1565

 **Bank of America**

**Your checking account**

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   April 1, 2019 to April 30, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|-------:|
| 04/01/19 | Online Banking transfer from CHK 0351 Confirmation# 5313542211 | 1,800.00 |
| 04/02/19 | BKOFAMERICA MOBILE 04/02 3620393852 DEPOSIT          *MOBILE     NY | 2,048.76 |
| 04/02/19 | BKOFAMERICA MOBILE 04/02 3620392900 DEPOSIT          *MOBILE     NY | 2,048.76 |
| 04/03/19 | CHECKCARD  0401 THE HOME DEPOT 6175 NEW YORK      NY 7469216909210005609 | 487.96 |
| 04/03/19 | CHECKCARD  0402 ECHOD GRAPHICS INC BROOKLYN      NY 7424760909230053913 | 26.13 |
| 04/03/19 | CHECKCARD  0401 THE HOME DEPOT #6175 NEW YORK     NY 7461043909201018671 | 26.06 |
| 04/05/19 | CHECKCARD  0404 AMZN MKTP US AMZN.COM/B AMZN.COM/BILLWA 7443106909508300832 | 76.20 |
| 04/05/19 | CHECKCARD  0404 AMZN MKTP US AMZN.COM/B AMZN.COM/BILLWA 7443106909508300434 | 76.20 |
| 04/15/19 | CHECKCARD  0412 AMZN MKTP US AMZN.COM/B AMZN.COM/BILLWA 7443106910208300749 | 76.20 |
| 04/19/19 | Counter Credit | 297,000.00 |
| 04/19/19 | BKOFAMERICA ATM 04/19 #000005703 DEPOSIT LINCOLN ROAD MAL   MIAMI BEACH   FL | 4,096.00 |
| **Total deposits and other credits** | | **$307,762.27** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|-------:|
| 04/02/19 | RETURN ITEM CHARGEBACK | -36,000.00 |
| 04/24/19 | RETURN ITEM CHARGEBACK | -33,000.00 |
| 04/26/19 | Online Banking transfer to CHK 0351 Confirmation# 2128234392 | -225,000.00 |
| 04/26/19 | Online Banking transfer to CHK 5580 Confirmation# 1328254696 | -3,600.00 |
| 04/29/19 | Online Banking transfer to CHK 5580 Confirmation# 7443490767 | -5,500.00 |

**Card account # XXXX XXXX XXXX 2943**

| Date | Description | Amount |
|------|-------------|-------:|
| 04/01/19 | CHECKCARD  0328 TAXI SVC 41-25 36TH ST LONG IS CITY NY 24869489088464169187893 CKCD 4121 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -13.41 |
| 04/01/19 | CHECKCARD  0328 RA CUNY  EDU  11210432 NEW YORK    NY 24164079088937311466282 CKCD 5814 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -3.16 |
| 04/01/19 | CHECKCARD  0330 AMZN MKTP US*MW0G85V82 AMZN.COM/BILLWA 2443106908908331212136587 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -228.60 |

*continued on the next page*

Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®


Your
Digital
Tip

## Dreading the shredding?

Go paperless—stop storing or shredding old statements. Enjoy the convenience online access offers.

Enroll today by logging in to Online Banking at **bankofamerica.com/smallbusiness**.
Then click on **Profiles & Settings** (in the upper right, next to **Sign Out**).

©2018 Bank of America Corporation  |  ARG4G3KD  |  SSM-04-18-0041 B

A-1566

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  April 1, 2019 to April 30, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 04/01/19 | CHECKCARD  0330 WHITEHALL FERRY TERMINA NEW YORK    NY 24765019090839000632213 CKCD 5812 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -20.41 |
| 04/01/19 | THE HOME DEPOT  03/30 #000931301 PURCHASE THE HOME DEPOT #1  STATEN ISLAND NY | -537.98 |
| 04/01/19 | THE HOME DEPOT  04/01 #000573823 PURCHASE THE HOME DEPOT 61  NEW YORK    NY | -87.10 |
| 04/02/19 | CHECKCARD  0401 ECHOD GRAPHICS INC 718-643-1454 NY 24247609091300526671412 CKCD 7333 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -1,646.19 |
| 04/02/19 | CHECKCARD  0401 GOOGLE *GSUITE_12gurus cc@google.comCA 24692169091100414491757 CKCD 7311 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -89.19 |
| 04/03/19 | CHECKCARD  0401 THE HOME DEPOT #6175 NEW YORK    NY 24610439092010186720447 CKCD 5200 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -581.62 |
| 04/03/19 | CHECKCARD  0402 WEWORK-WW 350 LINCOLN 855-593-9675 FL 24692169092100811811325 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -373.45 |
| 04/29/19 | CHECKCARD  0427 ATLASSIAN ATLASSIAN B.V  74697049118060860132516 CKCD 5734 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -41.37 |
| 04/30/19 | CHECKCARD  0429 VBS*VONAGE BUSINESS 866-901-0242 GA 24692169119100055096467 RECURRING CKCD 4814 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -165.82 |
| **Subtotal for card account # XXXX XXXX XXXX 2943** | | **-$3,788.30** |
| **Total withdrawals and other debits** | | **-$306,888.30** |

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
|------|-------------|--------|
| Total Overdraft fees | $350.00 | $350.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 03/29/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✓ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ◯ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts
- ◯ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|-------------|--------|
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |

*continued on the next page*

A-1567

 **Bank of America**

**Your checking account**

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   April 1, 2019 to April 30, 2019

## Service fees - continued

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |
| 04/01/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-01 | -35.00 |
| 04/02/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-02 | -35.00 |
| 04/02/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-02 | -35.00 |
| 04/02/19 | RETURNED ITEM CHARGEBACK FEE | -24.00 |
| 04/03/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-03 | -35.00 |
| 04/03/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 04-03 | -35.00 |
| 04/24/19 | RETURNED ITEM CHARGEBACK FEE | -36.00 |
| 04/29/19 | CHECKCARD  0427 ATLASSIAN ATLASSIAN B.V 7469704911806086013251.6 CKCD 5734 XXXXXXXXXXXX2943 INTERNATIONAL TRANSACTION FEE | -1.24 |

**Total service fees**       **-$411.24**

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|------------|------|-----------|------|------------|
| 04/01 | 4,695.30 | 04/15 | -29,292.88 | 04/26 | 10,167.12 |
| 04/02 | -29,036.56 | 04/19 | 271,803.12 | 04/29 | 4,624.51 |
| 04/03 | -29,521.48 | 04/24 | 238,767.12 | 04/30 | 4,458.69 |
| 04/05 | -29,369.08 | | | | |

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   April 1, 2019 to April 30, 2019

This page intentionally left blank



**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

GATEGUARD, INC.
350 LINCOLN RD
SUITE 5060
MIAMI BEACH, FL  33139

**Business Advantage**

**Customer service information**

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Fundamentals Checking

for March 1, 2019 to March 31, 2019

**GATEGUARD, INC.**

Account number: 4830 6703 8085

## Account summary

| | | |
|---|---|---|
| Beginning balance on March 1, 2019 | $26,959.21 | # of deposits/credits: 5 |
| Deposits and other credits | 45,877.46 | # of withdrawals/debits: 62 |
| Withdrawals and other debits | -68,704.47 | # of items-previous cycle[1]: 46 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -136.24 | Average ledger balance: $16,239.25 |
| **Ending balance on March 31, 2019** | **$3,995.96** | [1]Includes checks paid,deposited items&other debits |

Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

Your Digital
Tip of the
Month

## Sign up for online alerts today[1]

Stay up to date on your balances, and receive alerts when transactions have posted and when your payments are due.

Log in or enroll at **bankofamerica.com/smallbusiness** and click on **Alerts** in the Activity Center.

[1] You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.
©2018 Bank of America Corporation  |  ARTCJRPG  |  SSM-03-18-0017.B

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  March 1, 2019 to March 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and    Equal Housing Lender



**Your checking account**

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  March 1, 2019 to March 31, 2019

## Deposits and other credits

| Date | Description | | | Amount |
|------|-------------|---|---|--------|
| 03/06/19 | CHECKCARD  0305 THE YARD 5 800-998-4392 NY 7480166906402701308 | | | 50.00 |
| 03/20/19 | Online Banking transfer from CHK 1046 Confirmation# 7106261411 | | | 7,070.00 |
| 03/28/19 | BKOFAMERICA MOBILE 03/29 3616189776 DEPOSIT | *MOBILE | NY | 18,000.00 |
| 03/28/19 | BKOFAMERICA MOBILE 03/29 3616186424 DEPOSIT | *MOBILE | NY | 18,000.00 |
| 03/28/19 | BKOFAMERICA MOBILE 03/29 3616185022 DEPOSIT | *MOBILE | NY | 2,757.46 |

**Total deposits and other credits**                                                       **$45,877.46**

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 03/04/19 | Online Banking transfer to CHK 5580 Confirmation# 1274710970 | -571.86 |
| 03/08/19 | WIRE TYPE:INTL OUT DATE:190308 TIME:1558 ET TRN:2019030800406241 SERVICE REF:199455 BNF:JUNGENG SU ID:1562714211030001 BNF BK:ZHEJIANG  CHOUZHOU COMME ID:006550890252 PMT DET:257338992 POP GOODS CONT ARMSTRONG SU | -1,000.00 |
| 03/11/19 | Online Banking transfer to CHK 0351 Confirmation# 2134388956 | -4,500.00 |
| 03/18/19 | Online Banking transfer to CHK 5580 Confirmation# 2292944266 | -1,900.00 |
| 03/20/19 | WIRE TYPE:INTL OUT DATE:190320 TIME:0512 ET TRN:2019032000122690 SERVICE REF:632549 BNF:ZHUHAI TAICHUAN CLOUD TECH ID:4440009161463000 BNF BK:BANK OF COMMUNICATIONS ID:COMMCNSHZHI PMT DET:258228708 POP GOODS CONT JOY PANG | -7,020.00 |
| 03/22/19 | Online Banking transfer to CHK 5580 Confirmation# 5326952341 | -1,800.00 |
| 03/25/19 | Customer Withdrawal Image | -4,000.00 |
| 03/26/19 | Online Banking transfer to CHK 0351 Confirmation# 5462519269 | -2,000.00 |
| 03/26/19 | WIRE TYPE:INTL OUT DATE:190326 TIME:1442 ET TRN:2019032600384671 SERVICE REF:006991 BNF:TELEPOWER COMMUNCATION CO. ID:665257763927 BNF BK:BANK OF CHINA ID:BKCHCNBJ44E PMT DET:258796 222 PROTOTYPE POP SERVICES CONT NICOLE | -1,500.00 |
| 03/29/19 | Online Banking transfer to CHK 0351 Confirmation# 5386785014 | -35,000.00 |

Card account # XXXX XXXX XXXX 2943

| | | |
|------|-------------|--------|
| 03/01/19 | CHECKCARD  0228 AMZN MKTP US*MI1KP6SY1 AMZN.COM/BILLWA 2443106905908330536581 9 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -35.97 |
| 03/04/19 | CHECKCARD  0301 AMZN MKTP US*MI4FF1761 AMZN.COM/BILLWA 2443106906008331009251 2 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -1,221.24 |

*continued on the next page*

---

Bank of America **Business Advantage**                                    LIFE / BETTER CONNECTED®

Your Digital Tip of the Month

## Guaranteed bank-to-bank transfers

Pay individuals, vendors and suppliers who bank at other financial institutions — right from Online Banking.

Just log in and click the **Transfers I Send** tab, then select **Send Money to Someone or a Business.**

ARH98YHQ | SSM-03-18-0013.B

A-1572

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  March 1, 2019 to March 31, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| 03/04/19 | CHECKCARD  0301 SendGrid 1-877-969-8647 877-9698647  CO 24906419060069141464627 RECURRING CKCD 7399 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -29.95 |
| 03/04/19 | CHECKCARD  0301 METAL SUPERMARKETS (MIA 305-7280456  FL 24003419060900011904668 CKCD 5051 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -80.25 |
| 03/04/19 | CHECKCARD  0301 THE YARD 5 800-998-4392 NY 24801669060027013688463 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -50.00 |
| 03/04/19 | CHECKCARD  0302 WEWORK-WW 350 LINCOLN 855-593-9675 FL 24692169061100442754933 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -383.93 |
| 03/04/19 | CHECKCARD  0302 GOOGLE *GSUITE_12gurus cc@google.comCA 24692169061100634771703 CKCD 7311 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -76.38 |
| 03/04/19 | CHECKCARD  0303 AMZN MKTP US*MI3XT4921 AMZN.COM/BILLWA 24431069062083722249096 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -65.30 |
| 03/04/19 | BKOFAMERICA ATM 03/01 #000007909 WITHDRWL HERALD SQUARE CE  NEW YORK       NY | -200.00 |
| 03/04/19 | BKOFAMERICA ATM 03/03 #000004825 WITHDRWL 13TH & 3RD         NEW YORK      NY | -300.00 |
| 03/06/19 | CHECKCARD  0305 AMZN MKTP US*MI8V30RD1 AMZN.COM/BILLWA 24431069065083720445073 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -15.99 |
| 03/07/19 | BKOFAMERICA ATM 03/06 #000006908 WITHDRWL ONE PENN PLAZA     NEW YORK       NY | -560.00 |
| 03/12/19 | CHECKCARD  0311 AMZN Mktp US*MW2KG4CP0 Amzn.com/billWA 24692169070100989225171 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -129.99 |
| 03/12/19 | CHECKCARD  0311 AMAZON.COM*MW5UW0L01 AM AMZN.COM/BILLWA 24431069070083324911036 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -489.40 |
| 03/12/19 | CHECKCARD  0311 AMZN Mktp US*MI3YV3KU2 Amzn.com/billWA 24692169070100097499015 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -108.86 |
| 03/14/19 | CHECKCARD  0313 AMZN MKTP US*MI61G4UT2 AMZN.COM/BILLWA 24431069072083308632440 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -238.42 |
| 03/14/19 | CHECKCARD  0313 VBS*VONAGE BUSINESS 866-901-0242 GA 24692169072100391927404 RECURRING CKCD 4814 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -165.82 |
| 03/14/19 | CHECKCARD  0313 POSTAGE GOSHIPPO.COM HTTPSGOSHIPPOCA 24492159072637562243056 RECURRING CKCD 7399 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -9.75 |
| 03/14/19 | CHECKCARD  0313 AMAZON.COM*MW6Z86LE0 AM AMZN.COM/BILLWA 24431069072083712664476 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -15.54 |
| 03/18/19 | CHECKCARD  0315 AMZN MKTP US*MW6EC03B1 AMZN.COM/BILLWA 24431069074083707634581 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -17.98 |
| 03/18/19 | CHECKCARD  0315 AMZN MKTP US*MW40N8ZI0 AMZN.COM/BILLWA 24431069074083714851608 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -15.99 |
| 03/18/19 | CHECKCARD  0315 AMZN MKTP US*MI4XH1WO2 AMZN.COM/BILLWA 24431069074083715460763 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -8.99 |
| 03/18/19 | CHECKCARD  0316 AMZN MKTP US*MW3N18TI1 AMZN.COM/BILLWA 24431069075083712203678 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -104.46 |
| 03/19/19 | CHECKCARD  0318 RIETS/YU NEW YORK     NY 24013399077002471368493 CKCD 8220 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -1,000.00 |
| 03/19/19 | CHECKCARD  0318 B&H PHOTO 800-606-6969 800-2215743  NY 24906419077070015303033 CKCD 5969 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -269.88 |
| 03/20/19 | CHECKCARD  0319 LYFT   *RIDE TUE 7AM 8552800278  CA 24492159078637825191831 CKCD 4121 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -31.94 |
| 03/20/19 | CHECKCARD  0319 LYFT   *RIDE TUE 11AM 8552800278  CA 24492159078637848097817 CKCD 4121 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -23.47 |
| 03/20/19 | CHECKCARD  0319 EIG*SITE5.COM 866-8975421  TX 24906419078070070856585 RECURRING CKCD 7379 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -99.00 |
| 03/21/19 | CHECKCARD  0320 LYFT   *RIDE TUE 9PM 855-865-9553 CA 24055239080400965774824 CKCD 4121 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -6.22 |

*continued on the next page*

A-1573

 **Bank of America**

**Your checking account**

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   March 1, 2019 to March 31, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 03/21/19 | CHECKCARD  0320 LYFT   *RIDE WED 9AM 855-865-9553 CA 24055239080400965974614 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -5.36 |
| 03/21/19 | CHECKCARD  0320 COURTS/USDC-NY-S 914-390-4001 NY 24240989080600129793109 CKCD 9399 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -400.00 |
| 03/21/19 | CHECKCARD  0320 COURTS/USDC-NY-S 914-390-4001 NY 24240989080600129793281 CKCD 9399 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -200.00 |
| 03/21/19 | CHECKCARD  0320 LYFT   *RIDE WED 6PM 855-865-9553 CA 24055239080400965952966 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -10.08 |
| 03/21/19 | CHECKCARD  0321 LYFT   *RIDE WED 7PM 855-865-9553 CA 24055239080400965491544 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -10.90 |
| 03/22/19 | CHECKCARD  0320 THE SHUL OF DOWNTOWN 305-373-8303 FL 24412899080030022898271 CKCD 8398 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -40.00 |
| 03/22/19 | CHECKCARD  0320 AMERICAN AIR00123439342 FORT WORTH  TX 24431069080978000889091 CKCD 3001 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -238.30 |
| 03/22/19 | CHECKCARD  0321 LYFT   *RIDE WED 8PM 855-865-9553 CA 24055239081400966181952 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -12.56 |
| 03/22/19 | CHECKCARD  0321 LYFT   *RIDE WED 11PM 855-865-9553 CA 24055239081400966693683 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -12.76 |
| 03/25/19 | CHECKCARD  0322 RMG*REGUS 972-340-2021 TX 24692169081100319355034 CKCD 6513 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -2,321.34 |
| 03/25/19 | CHECKCARD  0322 HIS*HISCOX INC 888-202-3007 NY 24692169081100723235186 RECURRING CKCD 6300 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -70.50 |
| 03/25/19 | CHECKCARD  0322 HIS*HISCOX INC 888-202-3007 NY 24692169081100723237489 RECURRING CKCD 6300 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -70.50 |
| 03/25/19 | CHECKCARD  0323 LYFT   *RIDE FRI 9AM 855-865-9553 CA 24055239083400968192476 CKCD 4121 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -16.02 |
| 03/25/19 | CHECKCARD  0322 NYCDOT PARKING METERS LONG IS CITY NY 24755419081260818266281 CKCD 7523 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -11.00 |
| 03/26/19 | CHECKCARD  0325 AMAZON.COM*MW8QF2AY2 AM AMZN.COM/BILLWA 24431069084083320341000 CKCD 5942 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -66.19 |
| 03/27/19 | CHECKCARD  0325 MTA*METROCARD MACHINE NEW YORK    NY 24692169085100060465038 CKCD 4111 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -40.00 |
| 03/27/19 | CHECKCARD  0326 POSTAGE GOSHIPPO.COM HTTPSGOSHIPPOCA 24492159085637145149379 RECURRING CKCD 7399 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -45.02 |
| 03/28/19 | CHECKCARD  0327 AMZN MKTP US*MW21N1M00 AMZN.COM/BILLWA 24431069086083723412133 CKCD 5942 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -45.99 |
| 03/28/19 | CHECKCARD  0327 ATLASSIAN ATLASSIAN B.V  74697049087050373306647 CKCD 5734 XXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -41.37 |
| **Subtotal for card account # XXXX XXXX XXXX 2943** | | **-$9,412.61** |
| **Total withdrawals and other debits** | | **-$68,704.47** |

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  March 1, 2019 to March 31, 2019

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 02/28/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ☑ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ☑ $3,000+ minimum daily balance in primary checking account
- ☑ $5,000+ average monthly balance in primary checking account
- ☑ $15,000+ combined average monthly balance in linked business accounts
- ○ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 03/08/19 | Wire Transfer Fee | -45.00 |
| 03/20/19 | Wire Transfer Fee | -45.00 |
| 03/26/19 | Wire Transfer Fee | -45.00 |
| 03/28/19 | CHECKCARD 0327 ATLASSIAN ATLASSIAN B.V 7469704908705037330647 CKCD 5734 XXXXXXXXXXX2943 INTERNATIONAL TRANSACTION FEE | -1.24 |

**Total service fees** — **-$136.24 service fees**

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|------------|------|-----------|------|------------|
| 03/01 | 26,923.24 | 03/12 | 17,145.09 | 03/22 | 10,512.67 |
| 03/04 | 23,944.33 | 03/14 | 16,715.56 | 03/25 | 4,023.31 |
| 03/06 | 23,978.34 | 03/18 | 14,668.14 | 03/26 | 412.12 |
| 03/07 | 23,418.34 | 03/19 | 13,398.26 | 03/27 | 327.10 |
| 03/08 | 22,373.34 | 03/20 | 13,248.85 | 03/28 | 38,995.96 |
| 03/11 | 17,873.34 | 03/21 | 12,616.29 | 03/29 | 3,995.96 |



P.O. Box 15284
Wilmington, DE 19850

GATEGUARD, INC.
106 W 32ND ST
SUITE 2D15
NEW YORK, NY 10001-0074

**Business Advantage**

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖱 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Fundamentals Checking

for February 1, 2019 to February 28, 2019

Account number: 4830 6703 8085

**GATEGUARD, INC.**

### Account summary

| | | |
|---|---|---|
| Beginning balance on February 1, 2019 | $9,662.35 | # of deposits/credits: 6 |
| Deposits and other credits | 78,947.44 | # of withdrawals/debits: 37 |
| Withdrawals and other debits | -61,604.34 | # of items-previous cycle[1]: 11 |
| Checks | -0.00 | # of days in cycle: 28 |
| Service fees | -46.24 | Average ledger balance: $17,925.42 |
| **Ending balance on February 28, 2019** | **$26,959.21** | [1]Includes checks paid,deposited items&other debits |



Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

Thank you for your business.
Here's to your continued success.

We're committed to finding the smartest path to long-term growth for your business.

Our small business specialists will work with you to help strengthen your business and
plan for the future. Please visit **bankofamerica.com/smallbusiness** to learn more.

AR634K95 | SSM-01-18-2949.B

SDNY_000968

PULL: E   CYCLE: 60   SPEC: E   DELIVERY: E   TYPE:   IMAGE: I   BC: NY

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   February 1, 2019 to February 28, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and         Equal Housing Lender

SDNY_000969

A-1577



**Your checking account**

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  February 1, 2019 to February 28, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 02/13/19 | BKOFAMERICA MOBILE 02/13 3614082541 DEPOSIT          *MOBILE       NY | 2,600.00 |
| 02/15/19 | Online Banking transfer from CHK 1046 Confirmation# 2325328995 | 15,000.00 |
| 02/15/19 | Online Banking transfer from CHK 1046 Confirmation# 1525853252 | 5,000.00 |
| 02/19/19 | BKOFAMERICA ATM 02/18 #000002474 DEPOSIT HERALD SQUARE CE   NEW YORK        NY | 52,789.44 |
| 02/25/19 | BKOFAMERICA MOBILE 02/23 3621623663 DEPOSIT          *MOBILE       NY | 2,600.00 |
| 02/27/19 | WIRE TYPE:BOOK IN DATE:190227 TIME:1245 ET TRN:2019022700534738 SNDR REF:BOA1846-27FEB19 ORIG:ZHEJIANG CHOUZHOU COMMERC ID:006550890252 PMT DET:256130482 20190226-00316274 26-FEB-19 1,00 0.00/USD RTND BBK STS UTA BENE'S NAME DOES NOT MAT | 958.00 |
| **Total deposits and other credits** | | **$78,947.44** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | Online Banking transfer to CHK 0351 Confirmation# 5131245804 | -3,500.00 |
| 02/11/19 | Online Banking transfer to CHK 0351 Confirmation# 3190271943 | -2,000.00 |
| 02/13/19 | Online Banking transfer to CHK 5580 Confirmation# 3306981306 | -820.00 |
| 02/20/19 | Online Banking transfer to CHK 5580 Confirmation# 7167602125 | -6,500.00 |
| 02/20/19 | Online Banking transfer to CHK 1046 Confirmation# 6367604331 | -20,000.00 |
| 02/20/19 | Online Banking transfer to CHK 5580 Confirmation# 5167611154 | -1,250.00 |
| 02/26/19 | Online Banking transfer to CHK 0351 Confirmation# 7319927418 | -3,000.00 |
| 02/26/19 | WIRE TYPE:INTL OUT DATE:190226 TIME:1147 ET TRN:2019022600316274 SERVICE REF:467144 BNF:XAX METAL ID:1562714211030001 BNF BK:ZHEJIANG CHOUZHOU COMME ID:006550890252 PMT DET:256130482 M ETAL CASE SAMPLES ONLY POP SERVICES CONT ARMSTRONG | -1,000.00 |
| 02/27/19 | NY TLR cash withdrawal from CHK 8085 | -605.00 |

**Card account # XXXX XXXX XXXX 2943**

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | CHECKCARD  0202 WEWORK-WW 350 LINCOLN 855-593-9675 FL 24692169033100072678977 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -373.45 |
| 02/04/19 | CHECKCARD  0201 THE YARD 5 800-998-4392 NY 24801669032027013524333 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -50.00 |

*continued on the next page*

---



Bank of America **Business Advantage**                                    L I F E / B E T T E R   C O N N E C T E D ®

Online Banking

**Tip of the month**

## Banking at your fingertips

Our Mobile Banking app[1] is certified by J.D. Power® for providing "An Outstanding Customer Experience."[2]

To learn more, and download it for free, visit **bankofamerica.com/getmobileapp**.

[1] Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.
[2] For J.D. Power award information, visit jdpower.com.
©2018 Bank of America Corporation  |  ARF3TRPR  |  SSM-02-18-0009 B

**A-1578**

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  February 1, 2019 to February 28, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | CHECKCARD  0201 GOOGLE *GSUITE_12gurus cc@google.comCA 24692169032100696043880 CKCD 7311 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -56.53 |
| 02/04/19 | CHECKCARD  0202 SendGrid 1-877-969-8647 877-9698647 CO 24906419033067655724182 RECURRING CKCD 7399 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -29.95 |
| 02/04/19 | USPS PO 359660  02/04 #000720394 PURCHASE USPS PO 35966000  NEW YORK      NY | -25.50 |
| 02/06/19 | CHECKCARD  0205 AMZN MKTP US*MB0159SA2 AMZN.COM/BILLWA 24431069036083716685662 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -222.46 |
| 02/11/19 | CHECKCARD  0209 GARBER HARDWARE-WEST VI NEW YORK    NY 24269799040300496428011 CKCD 5072 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -31.85 |
| 02/11/19 | CHECKCARD  0210 SQ *VILLAGE COPIER INC New York    NY 24692169041100001669642 CKCD 5999 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -16.98 |
| 02/12/19 | CHECKCARD  0211 METAL SUPERMARKETS (MIA 305-7280456  FL 24003419042900010504132 CKCD 5051 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -105.40 |
| 02/15/19 | CHECKCARD  0214 MR. BROADWAY 212-921-2152 NY 24688089045017046786128 CKCD 5812 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -54.64 |
| 02/19/19 | CHECKCARD  0215 POSTAGE GOSHIPPO.COM HTTPSGOSHIPPOCA 24492159046637380147680 RECURRING CKCD 7399 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -37.76 |
| 02/19/19 | CHECKCARD  0215 RMG*REGUS 972-340-2021 TX 24692169046100932622897 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -3,059.05 |
| 02/19/19 | CHECKCARD  0215 KPI THEREALDEAL 212-260-1332 NY 24431069047207305500019 CKCD 7311 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -15,000.00 |
| 02/19/19 | CHECKCARD  0218 RMG*REGUS 972-340-2021 TX 24692169049100247796888 CKCD 6513 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -2,265.34 |
| 02/20/19 | CHECKCARD  0219 FEDEX 178736882 800-4633339  TN 24164079050741208498950 RECURRING CKCD 4215 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -326.22 |
| 02/22/19 | CHECKCARD  0220 BASICSON84_6 NEW YORK CITYNY 24275399052900019277559 CKCD 5251 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -13.02 |
| 02/25/19 | CHECKCARD  0222 HIS*HISCOX INC 888-202-3007 NY 24692169053100949241830 RECURRING CKCD 6300 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -70.50 |
| 02/25/19 | CHECKCARD  0222 HIS*HISCOX INC 888-202-3007 NY 24692169053100949218606 RECURRING CKCD 6300 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -70.50 |
| 02/26/19 | CHECKCARD  0225 AMZN MKTP US*MI9XQ98S1 AMZN.COM/BILLWA 24431069056083301145937 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -45.99 |
| 02/27/19 | CHECKCARD  0225 AMERICAN AIR00123393145 FORT WORTH  TX 24431069057978001060311 CKCD 3001 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -243.30 |
| 02/27/19 | CHECKCARD  0226 OEC GROUP 718-5277171  NY 24251379057018025237056 CKCD 4214 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -97.00 |
| 02/27/19 | CHECKCARD  0225 B&H PHOTO 800-606-6969 800-2215743  NY 24906419056068830079767 CKCD 5969 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -25.00 |
| 02/28/19 | CHECKCARD  0227 AMZN Mktp US*MI2OT1DY1 Amzn.com/billWA 24692169058100560249208 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -359.85 |
| 02/28/19 | CHECKCARD  0227 ATLASSIAN ATLASSIAN B.V  74547069059050368263013 CKCD 5734 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -41.37 |
| 02/28/19 | CHECKCARD  0227 AMZN MKTP US*MI01G3SB1 AMZN.COM/BILLWA 24431069059083302780648 CKCD 5942 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -127.68 |
| 02/28/19 | CHECKCARD  0227 CANAL ALARM DEVICES NEW YORK    NY 24247609058300526621269 CKCD 7393 XXXXXXXXXXXX2943 XXXX XXXX XXXX 2943 | -180.00 |

**Subtotal for card account # XXXX XXXX XXXX 2943**          **-$22,929.34**

**Total withdrawals and other debits**          **-$61,604.34**



**Your checking account**

GATEGUARD, INC.   |   Account # 4830 6703 8085   |   February 1, 2019 to February 28, 2019

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 01/31/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✓ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ○ $15,000+ combined average monthly balance in linked business accounts
- ○ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 02/26/19 | Wire Transfer Fee | -45.00 |
| 02/28/19 | CHECKCARD  0227 ATLASSIAN ATLASSIAN B.V<br>74547069059050368263013 CKCD 5734 XXXXXXXXXXXX2943<br>INTERNATIONAL TRANSACTION FEE | -1.24 |
| **Total service fees** | | **-$46.24** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 02/01 | 9,662.35 | 02/13 | 5,030.23 | 02/25 | 31,772.64 |
| 02/04 | 5,626.92 | 02/15 | 24,975.59 | 02/26 | 27,681.65 |
| 02/06 | 5,404.46 | 02/19 | 57,402.88 | 02/27 | 27,669.35 |
| 02/11 | 3,355.63 | 02/20 | 29,326.66 | 02/28 | 26,959.21 |
| 02/12 | 3,250.23 | 02/22 | 29,313.64 | | |

A-1580

GATEGUARD, INC.  |  Account # 4830 6703 8085  |  February 1, 2019 to February 28, 2019

This page intentionally left blank

A-1581

Date: 4/7/2016 Time: 9:31:22 AM (US Central Time) Scanned From IP:10.60.113.8

# Bank of America ⬎

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Corporate Resolutions - Opening
and Maintaining Deposit Accounts and Services**

Account Number   483063787673

Name of Corporation   FRIEND OR FRAUD INC

I, the undersigned, hereby certify to   BANK OF AMERICA, N.A.

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of

FRIEND OR FRAUD INC                                                      , duly organized and existing under the laws of the

State of   New York                          (the "Corporation"), that the following is a true copy of resolutions duly adopted by the Board of

Directors of said Corporation at a meeting duly held on the   16th   day of   April 2016   , at which a quorum was present and acted

throughout or adopted by the unanimous written consent of the Board of Directors, and that such resolutions are in full force and effect and have not been amended

or rescinded

**1.   Resolved,** that   BANK OF AMERICA, N.A                                         (the "Bank") is hereby designated
as a depository of the Corporation and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in
accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts, that any one of the
following officers or employees of the Corporation

| Name   Ari B. Teman | Title   President |
|---|---|
| Name | Title |
| Name | Title |
| Name | Title |

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other
documentation required by Bank to open said accounts, to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment
of money, to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection
or discount by Bank, to accept drafts, acceptances, and other instruments payable at Bank, to place orders with Bank for the purchase and sale of foreign currencies
on behalf of this Corporation, to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of
the Corporation, to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's accounts) that may be used for
the purpose of initiating electronic fund transfers [Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor
Regulation E (12 C.F.R. Part 205) are applicable to any such access device], to establish and maintain a night deposit relationship, to execute and deliver a wire
transfer agreement and to appoint or delegate from time to time such persons who may request, wires of funds, to enter into any agreements with the
Bank for the provision by Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole
discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the
Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate
given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank
prior to such termination, to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the
rental agreement or lease, to take whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts
with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or
employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary, and to waive presentment, demand,
protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation, and

**2.   Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual
obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to
inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such
instrument or the proceeds thereof, and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds
whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee, and

**3.   Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for
the payment of money drawn or purportedly drawn in this Corporation's name, including those payable to the individual order of any person whose name appears
thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall
be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual
or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by
the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any
check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation,
thereby ratifying the use of such facsimile signature, and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or
expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature,
and

NNY
00-14-9012M  11-2013

GOVERNMENT
EXHIBIT
103
'19 Cr. 696 (PAE)

SDNY_000166

A-1582

Account Number　483063787673

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection, and

**5. Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified, and

**6. Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto, and

**7. Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted, and

**8. Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holders of the above authorized titles and their signatures on any signature card or other documentation required by said Bank

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this ___10th___ day of ___April 2016___ .

_____
Secretary/Assistant Secretary

(Corporate Seal)
NO SEAL



| Bank Information | |
|---|---|
| Date | 04/06/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Naqi Bokhari |
| Associate's Phone Number | 212-290-1988 |

NNY
00-14-9012M 11-2013

SDNY_000167

A-1583

Date: 4/7/2016 Time: 9:31:22 AM (US Central Time) Scanned From IP:10.60.113.8

**Bank of America** ⤳

BANK OF AMERICA, N A  (THE "BANK")

**Business Signature Card**
**with Substitute Form W-9**

**Account Number:** 4830 6378 7673                                    **Bank Number:** 487

**Account Type:** ☐ DDA  ☒ SAV  ☐ CD

**Account Title:**

FRIEND OR FRAUD INC

___

**Legal Designation:**

☐ Individual/Sole Proprietor  ☐ Trust/Estate  ☐ Unincorporated Association  ☒ C Corporation  ☐ S Corporation

☐ Partnership  (Enter the type of partnership: General, LP, LLP or LLLP)

☐ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)

☐ Other (Defined in W-9 instructions)

**Social Security Number** _____  (or)  **Employer Identification Number**  47-3581194

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time  The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees  Furthermore, I/we acknowledge the receipt of these documents  By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported  The Deposit Agreement includes a provision for alternative dispute resolution

**Substitute Form W-9:**  Certification - Under penalties of perjury, I certify that  (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because  (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct

**Certification Instructions:**  You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return  For real estate transactions, item 2 does not apply  For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Exempt payee code (if any)** _____

**Exemption from FATCA reporting code (if any)** _____

☐ **Nonresident Alien Status (if applicable)** If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 ARI B TEMAN | PRESIDENT | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

NNY
00-14-9297MW  08-2014

© 2012 Bank of America, N A  All Rights Reserved
Page 1 of 2

A-1584

Date: 4/7/2016 Time: 9:31:22 AM (US Central Time) Scanned From IP:10.60.113.8
Case 1:19-cr-00696-PAE   Document 128-3   Filed 05/01/20   Page 4 of 4

**Account Number:** 4830 6378 7673

☑ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

_____    _President_____
Authorized Signer                              Title

---

**Review Information**

**Customer 1**

Name    ARI B TEMAN

| | | | | |
|---|---|---|---|---|
| ID Type US Passport W/Photo | ID# 469084748 | ID Issuer | Iss Date 05/2010 | Exp Date 05/2020 |
| ID Type US Driver License W/Photo | ID# T24440576205822 | ID Issuer New Jersey | Iss Date 10/2013 | Exp Date 06/2017 |

**Customer 2:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 3:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 4:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

**Customer 5:**

Name

| | | | | |
|---|---|---|---|---|
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |
| ID Type | ID# | ID Issuer | Iss Date | Exp Date |

---

**Bank Information**

| | |
|---|---|
| Date | 04/06/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Naqi Bokhari |
| Associate's Phone Number | 212-290-1988 |

NNY
00-14-9297MW  08-2014



Page 2 of 2

SDNY_000169



P.O. Box 15284
Wilmington, DE 19850

FRIEND OR FRAUD INC
106 W 32ND ST
NEW YORK, NY 10001-0074

Business Advantage
Relationship Rewards

**Customer service information**

🌐 1.888.BUSINESS (1.888.287.4637)

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Business Fundamentals Checking
## Relationship Rewards Platinum Honors

for May 1, 2019 to May 31, 2019                    Account number: 4830 5610 0351

**FRIEND OR FRAUD INC**

### Account summary

| | | |
|---|---|---|
| Beginning balance on May 1, 2019 | $47,655.50 | # of deposits/credits: 3 |
| Deposits and other credits | 101.69 | # of withdrawals/debits: 22 |
| Withdrawals and other debits | -39,318.86 | # of items-previous cycle¹: 0 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -27.33 | Average ledger balance: $10,174.58 |
| **Ending balance on May 31, 2019** | **$8,411.00** | ¹Includes checks paid, deposited items & other debits |

GOVERNMENT
EXHIBIT
104
19 Cr. 696 (PAE)

---

Bank of America **Business Advantage**

### What's on your mind?

Business owners like you can join the Bank of America® Advisory Panel to help us understand what you like and don't like.
Enter code **SBDD** at **bankofamerica.com/AdvisoryPanel** to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.                    SSM-01-19-2128.D1 | ARG377KX

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   May 1, 2019 to May 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and          Equal Housing Lender

A-1587



**Your checking account**

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   May 1, 2019 to May 31, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 05/13/19 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-10) | 19.00 |
| 05/14/19 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-13) | 57.69 |
| 05/15/19 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-14) | 25.00 |
| **Total deposits and other credits** | | **$101.69** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 05/01/19 | WIRE TYPE:FX OUT DATE:190507 TIME:1242 ET TRN:2019050100247636 FX:CNY 173493.37 6.4676 BNF:ZBT INTERNATIONAL LIMITED ID:801124140838 BNF BK:HONGKONG AND SHANGHAI B ID:HSBCHKHHHKH PMT DET:262297548 ROUTERS POP GOODS PHN 0755297350 | -26,825.00 |
| 05/08/19 | Customer Withdrawal Image | -4,000.00 |
| 05/10/19 | SC EVERCODER SOF DES:IAT PAYPAL ID:1005594729295  INDN:FRIEND OR FRAUD INC    CO ID:XXXXXXXXXC IAT  PMT INFO: WEB 000000000000001900 | -19.00 |
| 05/13/19 | PAYPAL          DES:INST XFER  ID:ADOBE INC  INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -57.69 |
| 05/14/19 | PAYPAL          DES:INST XFER  ID:GITHUB INC  INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -25.00 |

Card account # XXXX XXXX XXXX 2238

| Date | Description | Amount |
|------|-------------|--------|
| 05/02/19 | CHECKCARD  0501 CHB*Chubb Insurance-PL 800-682-4822 NJ 24692169121100231394428 RECURRING CKCD 6300 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -133.25 |
| 05/02/19 | CHECKCARD  0501 DIGITALOCEAN.COM DIGITALOCEAN.NY 24492159121637030971750 RECURRING CKCD 5734 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -603.99 |
| 05/02/19 | CHECKCARD  0501 CRUNCH100A 212-993-0300 NY 24431069121083928325400 RECURRING CKCD 7997 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -93.49 |
| 05/02/19 | CHECKCARD  0501 WWW.OVH.COM MONTREAL    74766689121917856148414 CKCD 4816 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -259.99 |
| 05/02/19 | CHECKCARD  0501 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159121637109529588 RECURRING CKCD 7372 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 05/03/19 | CHECKCARD  0502 WWW.OVH.COM MONTREAL    74766689122917860434551 CKCD 4816 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -56.44 |
| 05/03/19 | CHECKCARD  0502 KPI THEREALDEAL 212-260-1332 NY 24431069123207305200146 CKCD 7311 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -4,500.00 |

*continued on the next page*

Bank of America **Business Advantage**

## Thank you for your business

We're committed to finding the smartest path to long-term growth for your business.

Our Small Business Specialists will work with you to help strengthen your business and plan for the future.

Please visit **bankofamerica.com/SmallBusiness** to learn more.

AR7RNN9G|SSM-01-19-2811-B

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  May 1, 2019 to May 31, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 05/06/19 | CHECKCARD 0503 Amazon web services aws.amazon.coWA 24692169123100267243802 CKCD 7399 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -300.79 |
| 05/07/19 | CHECKCARD 0506 Upwork -236246717REF 165-08534100 CA 24483479126284271604945 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,288.11 |
| 05/07/19 | CHECKCARD 0506 Upwork -236366612REF 165-08534100 CA 24204299126283007414835 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -51.38 |
| 05/09/19 | CHECKCARD 0508 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159129637729646475 RECURRING CKCD 7372 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 05/09/19 | CHECKCARD 0508 ATLASSIAN ATLASSIAN B.V 74697049129030344689487 CKCD 5734 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -94.73 |
| **Subtotal for card account # XXXX XXXX XXXX 2238** | | **-$8,392.17** |
| **Total withdrawals and other debits** | | **-$39,318.86** |

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

| | Total for this period | Total year-to-date | |
|---|---|---|---|
| Total Overdraft fees | $0.00 | $385.00 | We refunded to you a total of $665.00 in fees for Overdraft and/or NSF: Returned Items this year. |
| Total NSF: Returned Item fees | $0.00 | $0.00 | |

**We want to help you avoid overdraft and returned item fees. Here are a few ways to manage your account and stay on top of your balance:**

- Set up Overdraft Protection in Online Banking to avoid declined transactions and save on overdraft fees
- Sign up for Alerts (footnote 1) to get an email or text message when your balance becomes low

Please call us or visit us if you have any questions or to discuss your options.

(footnote 1) You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 04/30/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✓ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ○ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ○ $15,000+ combined average monthly balance in linked business accounts
- ✓ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 05/01/19 | Bus Adv Rel Rwds-Intl Wire Fee Waiver of $35 | -0.00 |
| 05/02/19 | CHECKCARD 0501 WWW.OVH.COM MONTREAL 7476668912191785614841 CKCD 4816 XXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -7.80 |
| 05/03/19 | CHECKCARD 0502 WWW.OVH.COM MONTREAL 7476668912291786043455 CKCD 4816 XXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -1.69 |

*continued on the next page*



## Your checking account

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   May 1, 2019 to May 31, 2019

## Service fees - continued

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 05/07/19 | ONLINE BUSINESS SUITE ACCT MGMT SERVICES | -15.00 |
| 05/09/19 | CHECKCARD 0508 ATLASSIAN ATLASSIAN B.V 74697049129030344689487 CKCD 5734 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -2.84 |

| **Total service fees** | **-$27.33** |
|---|---|

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 05/01 | 20,830.50 | 05/07 | 12,513.57 | 05/13 | 8,353.31 |
| 05/02 | 19,726.98 | 05/08 | 8,513.57 | 05/14 | 8,386.00 |
| 05/03 | 15,168.85 | 05/09 | 8,411.00 | 05/15 | 8,411.00 |
| 05/06 | 14,868.06 | 05/10 | 8,392.00 | | |

A-1590

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   May 1, 2019 to May 31, 2019

This page intentionally left blank



P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

FRIEND OR FRAUD INC
106 W 32ND ST
NEW YORK, NY  10001-0074

# Your Business Fundamentals Checking Relationship Rewards Platinum Honors

for April 1, 2019 to April 30, 2019                                      Account number: 4830 5610 0351
**FRIEND OR FRAUD INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on April 1, 2019 | $12,874.10 | # of deposits/credits: 4 |
| Deposits and other credits | 352,870.00 | # of withdrawals/debits: 42 |
| Withdrawals and other debits | -318,061.28 | # of items-previous cycle[1]: 0 |
| Checks | -0.00 | # of days in cycle: 30 |
| Service fees | -27.32 | Average ledger balance: $10,615.17 |
| **Ending balance on April 30, 2019** | **$47,655.50** | [1]Includes checks paid,deposited items&other debits |

*Your account has overdraft protection provided by deposit account number
4830 6378 7673.*

Bank of America **Business Advantage**

THE POWER TO

build a thriving business

During National Small Business Week and throughout the month of May, we're celebrating the dedication
of small business owners and their commitment to achieving success.

Join in the conversation with other business owners by visiting the Small Business Community at
**bankofamerica.com/SBcelebrate.**

SSM-11-18-0541.B | ARQSHKBM

SDNY_000928

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  April 1, 2019 to April 30, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and          Equal Housing Lender

SDNY_000929



**Your checking account**

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  April 1, 2019 to April 30, 2019

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 04/12/19 | Online Banking transfer from CHK 1046 Confirmation# 6410835498 | 1,870.00 |
| 04/23/19 | Online Banking transfer from CHK 1046 Confirmation# 5503446551 | 600.00 |
| 04/26/19 | Online Banking transfer from CHK 8085 Confirmation# 2128234392 | 225,000.00 |
| 04/29/19 | Online Banking transfer from CHK 1046 Confirmation# 7247440134 | 125,400.00 |
| **Total deposits and other credits** | | **$352,870.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 04/01/19 | Online Banking transfer to CHK 8085 Confirmation# 5313542211 | -1,800.00 |
| 04/05/19 | Online Banking transfer to CHK 5580 Confirmation# 7549338373 | -2,266.00 |
| 04/10/19 | SC EVERCODER SOF DES:IAT PAYPAL ID:1005365269800 INDN:FRIEND OR FRAUD INC    CO ID:XXXXXXXXC IAT  PMT INFO: WEB 000000000000001900 | -19.00 |
| 04/12/19 | PAYPAL         DES:INST XFER  ID:ADOBE INC INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -57.69 |
| 04/15/19 | PAYPAL         DES:INST XFER  ID:GITHUB INC INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -25.00 |
| 04/23/19 | WIRE TYPE:INTL OUT DATE:190423 TIME:1155 ET TRN:2019042300327285 RELATED REF:261389926 BNF:VENICE GROUP OF COMPANIES ID:817356256838 BNF BK:HONGKONG AND SHANGHAI B ID:HSBCHKHHHKH PMT DET:USB CABLES POP GOODS | -568.00 |
| 04/26/19 | Online Banking transfer to CHK 1046 Confirmation# 3328239782 | -180,000.00 |
| 04/26/19 | Online Banking transfer to CHK 5580 Confirmation# 3528245260 | -4,500.00 |
| 04/29/19 | WIRE TYPE:INTL OUT DATE:190429 TIME:0945 ET TRN:2019042900330714 SERVICE REF:693430 BNF:ZHUHAI TAICHUAN CLOUD TECH ID:4440009161463000 BNF BK:BANK OF COMMUNICATIONS ID:COMMCNSHZHI PMT DET:261911794 500 NEW INTERCOMS 100 BALANCE PO | -117,100.00 |
| 04/29/19 | PAYPAL         DES:INST XFER  ID:CLOUDFLARE INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -25.00 |

*continued on the next page*



Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

Your Digital Tip

## Dreading the shredding?

Go paperless—stop storing or shredding old statements. Enjoy the convenience online access offers.

Enroll today by logging in to Online Banking at **bankofamerica.com/smallbusiness**. Then click on **Profiles & Settings** (in the upper right, next to **Sign Out**).

©2018 Bank of America Corporation | ARG4G3KD | SSM-04-18-0041B

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  April 1, 2019 to April 30, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| Card account # XXXX XXXX XXXX 2238 | | |
| 04/01/19 | CHECKCARD  0330 CHB*Chubb Insurance-PL 800-682-4822 NJ 24692169089100381817244 RECURRING CKCD 6300 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -133.25 |
| 04/02/19 | CHECKCARD  0401 DIGITAL OCEAN.COM DIGITALOCEAN.NY 24492159091637389146463 RECURRING CKCD 5734 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -602.75 |
| 04/02/19 | CHECKCARD  0401 Upwork -230375063REF 165-08534100 CA 24483479091270979533925 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,395.46 |
| 04/02/19 | CHECKCARD  0401 WWW.OVH.COM MONTREAL    74766689091912730746901 CKCD 4816 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -315.05 |
| 04/02/19 | CHECKCARD  0401 CRUNCH100A 212-993-0300 NY 24431069091083913926150 RECURRING CKCD 7997 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -93.49 |
| 04/02/19 | CHECKCARD  0401 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159091637434090716 RECURRING CKCD 7372 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 04/03/19 | CHECKCARD  0402 BUILDINGS EXHSP 8004623519  CT 24001759092286259200081 CKCD 7399 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,800.00 |
| 04/04/19 | CHECKCARD  0403 CANAL ALARM DEVICES NEW YORK    NY 24247609093300529661962 CKCD 7393 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -142.00 |
| 04/04/19 | CHECKCARD  0403 Amazon web services aws.amazon.coWA 24692169093100644629703 CKCD 7399 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -306.58 |
| 04/09/19 | CHECKCARD  0408 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159099637752390617 RECURRING CKCD 7372 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 04/09/19 | CHECKCARD  0408 ATLASSIAN ATLASSIAN B.V  74697049099030371027532 CKCD 5734 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -94.73 |
| 04/09/19 | CHECKCARD  0408 Upwork -231581186REF 165-08534100 CA 24204299098284902313928 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,102.71 |
| 04/12/19 | CHECKCARD  0411 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159101637858106236 RECURRING CKCD 7372 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 04/16/19 | CHECKCARD  0414 PAYPAL *UBER 402-935-7733 CA 24492159105894242537057 CKCD 4121 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -8.59 |
| 04/16/19 | CHECKCARD  0415 Upwork -232764766REF 165-08534100 CA 24483479105389974344940 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,679.00 |
| 04/17/19 | CHECKCARD  0416 Upwork -233001815REF 165-08534100 CA 24483479106000098243921 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -51.38 |
| 04/18/19 | CHECKCARD  0417 HIS*HISCOX INC 888-202-3007 NY 24692169107100182495933 RECURRING CKCD 6300 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -70.83 |
| 04/22/19 | CHECKCARD  0418 STARBUCKS STORE 08242 MIAMI BEACH  FL 24692169109100082711759 CKCD 5814 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -3.48 |
| 04/22/19 | CHECKCARD  0419 TMOBILE*AUTO PAY 800-937-8997 WA 24692169109100140646682 RECURRING CKCD 4814 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -73.00 |
| 04/23/19 | CHECKCARD  0422 WWW.OVH.COM MONTREAL    74766689112915814922814 CKCD 4816 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1.01 |
| 04/23/19 | CHECKCARD  0422 Upwork -233897227REF 165-08534100 CA 24483479112000049304949 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,708.06 |
| 04/25/19 | CHECKCARD  0425 Upwork -234318166REF 165-08534100 CA 24483479114000105984830 RECURRING CKCD 7361 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -51.38 |
| 04/26/19 | CHECKCARD  0425 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159115637541318648 RECURRING CKCD 7372 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -10.00 |
| 04/29/19 | CHECKCARD  0426 MAILCHIMP  *MONTHLY MAILCHIMP.COMGA 24692169116100312264505 CKCD 5968 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -272.19 |
| 04/29/19 | CHECKCARD  0428 HIS*HISCOX INC 888-202-3007 NY 24692169118100506694580 RECURRING CKCD 6300 XXXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -79.00 |

*continued on the next page*



**Bank of America**                                               **Your checking account**

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   April 1, 2019 to April 30, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 04/30/19 | CHECKCARD 0429 Upwork -235071251REF 165-08534100 CA 24483479119328484614941 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,691.65 |
| **Subtotal for card account # XXXX XXXX XXXX 2238** | | **-$11,700.59** |
| **Total withdrawals and other debits** | | **-$318,061.28** |

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
|--|----------------------|--------------------|
| Total Overdraft fees | $0.00 | $385.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

We refunded to you a total of $665.00 in fees for Overdraft and/or NSF: Returned Items this year.

**To help avoid overdraft and returned item fees, you can set up:**

Customized alerts – get email or text message alerts (footnote 1) to let you know if your balance is low
Overdraft Protection – enroll to help protect yourself from overdrafts and declined transactions

To enroll, go to bankofamerica.com/online, call us at the number listed on this statement, or come see us at your nearest financial center.

(footnote 1) Alerts received as text messages on your mobile access device may incur a charge from your mobile access service provider. This feature is not available on the Mobile website. Wireless carrier fees may apply.

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 03/29/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✔ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ○ $3,000+ minimum daily balance in primary checking account
- ○ $5,000+ average monthly balance in primary checking account
- ○ $15,000+ combined average monthly balance in linked business accounts
- ✔ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 04/02/19 | CHECKCARD 0401 WWW.OVH.COM MONTREAL 74766689091912730746901 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -9.45 |
| 04/05/19 | ONLINE BUSINESS SUITE ACCT MGMT SERVICES | -15.00 |
| 04/09/19 | CHECKCARD 0408 ATLASSIAN ATLASSIAN B.V 74697049099030371027532 CKCD 5734 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -2.84 |
| 04/23/19 | CHECKCARD 0422 WWW.OVH.COM MONTREAL 74766689112915814922814 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -0.03 |

*continued on the next page*

A-1596

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   April 1, 2019 to April 30, 2019

## Service fees - continued

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 04/23/19 | Bus Adv Rel Rwds-Intl Wire Fee Waiver of $45 | -0.00 |
| 04/29/19 | Bus Adv Rel Rwds-Intl Wire Fee Waiver of $45 | -0.00 |
| **Total service fees** | | **-$27.32** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 04/01 | 10,940.85 | 04/10 | 2,765.79 | 04/22 | 2,661.82 |
| 04/02 | 8,519.65 | 04/12 | 4,573.10 | 04/23 | 984.72 |
| 04/03 | 6,719.65 | 04/15 | 4,548.10 | 04/25 | 933.34 |
| 04/04 | 6,271.07 | 04/16 | 2,860.51 | 04/26 | 41,423.34 |
| 04/05 | 3,990.07 | 04/17 | 2,809.13 | 04/29 | 49,347.15 |
| 04/09 | 2,784.79 | 04/18 | 2,738.30 | 04/30 | 47,655.50 |

A-1597



P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

FRIEND OR FRAUD INC
106 W 32ND ST
NEW YORK, NY  10001-0074

## Your Business Fundamentals Checking
## Relationship Rewards Platinum Honors

for March 1, 2019 to March 31, 2019                    Account number: 4830 5610 0351
**FRIEND OR FRAUD INC**

### Account summary

| | | |
|---|---|---|
| Beginning balance on March 1, 2019 | $5,108.87 | # of deposits/credits: 4 |
| Deposits and other credits | 41,561.65 | # of withdrawals/debits: 36 |
| Withdrawals and other debits | -33,734.15 | # of items-previous cycle[1]: 0 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -62.27 | Average ledger balance: $3,113.55 |
| **Ending balance on March 31, 2019** | **$12,874.10** | [1]Includes checks paid,deposited items&other debits |

*Your account has overdraft protection provided by deposit account number
4830 6378 7673.*

Bank of America **Business Advantage**                                    LIFE / BETTER CONNECTED®

Your Digital
Tip of the
Month

# Sign up for online alerts today[1]

Stay up to date on your balances, and receive alerts when transactions have posted and when
your payments are due.

Log in or enroll at **bankofamerica.com/smallbusiness** and click on **Alerts** in the Activity Center.

[1] You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's
message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.
©2018 Bank of America Corporation | ARTCJRPG | SSM-03-18-0017.B

SDNY_000934

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   March 1, 2019 to March 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us -** You may call us at the telephone number listed on the front of this statement.

**Updating your contact information -** We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement -** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers-** If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems -** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits -** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and    Equal Housing Lender

Case 1:19-cr-00696-PAE   Document 128-4   Filed 05/01/20   Page 15 of 24



**Your checking account**

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  March 1, 2019 to March 31, 2019

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 03/11/19 | Online Banking transfer from CHK 8085 Confirmation# 2134388956 | 4,500.00 |
| 03/25/19 | CHECKCARD 0322 Upwork -213704844REF 165-08534100 CA 7448347908100003303 | 61.65 |
| 03/26/19 | Online Banking transfer from CHK 8085 Confirmation# 5462519269 | 2,000.00 |
| 03/29/19 | Online Banking transfer from CHK 8085 Confirmation# 5386785014 | 35,000.00 |
| **Total deposits and other credits** | | **$41,561.65** |

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 03/11/19 | SC EVERCODER SOF DES:IAT PAYPAL ID:1005127644548 INDN:FRIEND OR FRAUD INC    CO ID:XXXXXXXXXC IAT  PMT INFO: WEB 000000000000001900 | -19.00 |
| 03/12/19 | PAYPAL          DES:INST XFER  ID:ADOBE INC INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -57.69 |
| 03/12/19 | PAYPAL          DES:INST XFER  ID:CLOUDFLARE INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -5.00 |
| 03/14/19 | PAYPAL          DES:INST XFER  ID:GITHUB INC INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -25.00 |
| 03/14/19 | PAYPAL          DES:INST XFER  ID:CLOUDFLARE INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -20.00 |
| 03/29/19 | Online Banking transfer to CHK 1046 Confirmation# 5386788041 | -20,000.00 |
| 03/29/19 | Online Banking transfer to CHK 5580 Confirmation# 5486791875 | -2,000.00 |
| 03/29/19 | PAYPAL          DES:INST XFER  ID:CLOUDFLARE INDN:FRIEND OR FRAUD INC    CO ID:PAYPALSI77 WEB | -25.00 |

**Card account # XXXX XXXX XXXX 2238**

| Date | Description | Amount |
|---|---|---|
| 03/01/19 | CHECKCARD 0228 HIS*HISCOX INC 888-202-3007 NY 24692169059100440922320 RECURRING CKCD 6300 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -79.00 |
| 03/01/19 | CHECKCARD 0228 CHB*Chubb Insurance-PL 800-682-4822 NJ 24692169059100382785818 RECURRING CKCD 6300 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -128.53 |
| 03/04/19 | CHECKCARD 0301 DIGITALOCEAN.COM DIGITALOCEAN.NY 24492159060637986748932 RECURRING CKCD 5734 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -610.64 |
| 03/04/19 | CHECKCARD 0301 CRUNCH100A 212-993-0300 NY 24431069060083910077459 RECURRING CKCD 7997 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -93.49 |

*continued on the next page*

Bank of America **Business Advantage**                                    LIFE / BETTER CONNECTED®

Your Digital Tip of the Month

## Guaranteed bank-to-bank transfers

Pay individuals, vendors and suppliers who bank at other financial institutions — right from Online Banking.

Just log in and click the **Transfers I Send** tab, then select **Send Money to Someone or a Business.**

ARH98YHQ | SSM-03-18-0013.B

A-1600

FRIEND OR FRAUD INC  |  Account # 4830 5610 0351  |  March 1, 2019 to March 31, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 03/04/19 | CHECKCARD  0301 WWW.OVH.COM MONTREAL     74766689060908603503467 CKCD 4816 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -259.99 |
| 03/04/19 | CHECKCARD  0301 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159060637040283363 RECURRING CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 03/04/19 | CHECKCARD  0303 Amazon web services aws.amazon.coWA 24692169062100021743918 CKCD 7399 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -299.42 |
| 03/05/19 | CHECKCARD  0304 Upwork -225580987REF 165-08534100 CA 24204299063287100694941 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,626.01 |
| 03/05/19 | CHECKCARD  0304 WWW.OVH.COM MONTREAL     74766689063908614503511 CKCD 4816 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -54.31 |
| 03/11/19 | CHECKCARD  0308 ATLASSIAN ATLASSIAN B.V  74697049068020399666038 CKCD 5734 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -94.73 |
| 03/11/19 | CHECKCARD  0308 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159068637366591557 RECURRING CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 03/12/19 | CHECKCARD  0311 Upwork -226771593REF 165-08534100 CA 24483479070309480474834 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,895.35 |
| 03/12/19 | CHECKCARD  0311 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159070637481521998 RECURRING CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 03/15/19 | CHECKCARD  0314 Upwork -227205666REF 165-08534100 CA 24204299073000708614940 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -203.45 |
| 03/18/19 | CHECKCARD  0317 HIS*HISCOX INC 888-202-3007 NY 24692169076100796292764 RECURRING CKCD 6300 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -70.83 |
| 03/19/19 | CHECKCARD  0318 Upwork -227963329REF 165-08534100 CA 24204299077311051753920 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,670.34 |
| 03/20/19 | CHECKCARD  0319 TMOBILE*AUTO PAY 800-937-8997 WA 24692169078100692357222 RECURRING CKCD 4814 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -73.00 |
| 03/20/19 | CHECKCARD  0319 PAYPAL *MYDOMAINCOM 402-935-7733 MA 24492159078894178689727 CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -3.94 |
| 03/26/19 | CHECKCARD  0325 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159084637105984261 RECURRING CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -10.00 |
| 03/26/19 | CHECKCARD  0325 EIG*MyDomain 866-5392854  MA 24906419084070395942062 CKCD 5968 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -34.97 |
| 03/27/19 | CHECKCARD  0326 MAILCHIMP   *MONTHLY MAILCHIMP.COMGA 24692169085100065561260 CKCD 5968 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -272.19 |
| 03/28/19 | CHECKCARD  0327 Upwork -229469119REF 165-08534100 CA 24483479086000027004943 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,008.27 |
| 03/29/19 | CHECKCARD  0328 HIS*HISCOX INC 888-202-3007 NY 24692169087100264105206 RECURRING CKCD 6300 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -79.00 |
| **Subtotal for card account # XXXX XXXX XXXX 2238** | | **-$11,582.46** |
| **Total withdrawals and other debits** | | **-$33,734.15** |



**Your checking account**

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   March 1, 2019 to March 31, 2019

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
| --- | --- | --- |
| Total Overdraft fees | $35.00 | $385.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

We refunded to you a total of $665.00 in fees for Overdraft and/or NSF: Returned Items this year.

**To help avoid overdraft and returned item fees, you can set up:**

Customized alerts – get email or text message alerts (footnote 1) to let you know if your balance is low

Overdraft Protection – enroll to help protect yourself from overdrafts and declined transactions

To enroll, go to bankofamerica.com/online, call us at the number listed on this statement, or come see us at your nearest financial center.

(footnote 1) Alerts received as text messages on your mobile access device may incur a charge from your mobile access service provider. This feature is not available on the Mobile website. Wireless carrier fees may apply.

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 02/28/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✔ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ◯ $3,000+ minimum daily balance in primary checking account
- ◯ $5,000+ average monthly balance in primary checking account
- ◯ $15,000+ combined average monthly balance in linked business accounts
- ✔ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
| --- | --- | --- |
| 03/04/19 | CHECKCARD  0301 WWW.OVH.COM MONTREAL 74766689060908603503467 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -7.80 |
| 03/05/19 | CHECKCARD  0304 WWW.OVH.COM MONTREAL 74766689063908614503511 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -1.63 |
| 03/07/19 | ONLINE BUSINESS SUITE ACCT MGMT SERVICES | -15.00 |
| 03/11/19 | CHECKCARD  0308 ATLASSIAN ATLASSIAN B.V 74697049068020399666038 CKCD 5734 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -2.84 |
| 03/28/19 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 03-28 | -35.00 |

**Total service fees**     **-$62.27**

*Note your Ending Balance already reflects the subtraction of Service Fees.*

A-1602

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   March 1, 2019 to March 31, 2019

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 03/01 | 4,901.34 | 03/14 | 3,298.44 | 03/25 | 338.53 |
| 03/04 | 3,625.00 | 03/15 | 3,094.99 | 03/26 | 2,293.56 |
| 03/05 | 943.05 | 03/18 | 3,024.16 | 03/27 | 2,021.37 |
| 03/07 | 928.05 | 03/19 | 353.82 | 03/28 | -21.90 |
| 03/11 | 5,306.48 | 03/20 | 276.88 | 03/29 | 12,874.10 |
| 03/12 | 3,343.44 | | | | |

SDNY_000939



P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖱 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

FRIEND OR FRAUD INC
106 W 32ND ST
NEW YORK, NY 10001-0074

# Your Business Fundamentals Checking
# Relationship Rewards Platinum Honors

for February 1, 2019 to February 28, 2019                    Account number: 4830 5610 0351

**FRIEND OR FRAUD INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on February 1, 2019 | $2,165.72 | # of deposits/credits: 4 |
| Deposits and other credits | 15,000.00 | # of withdrawals/debits: 32 |
| Withdrawals and other debits | -12,031.22 | # of items-previous cycle[1]: 0 |
| Checks | -0.00 | # of days in cycle: 28 |
| Service fees | -25.63 | Average ledger balance: $2,757.20 |
| **Ending balance on February 28, 2019** | **$5,108.87** | [1]Includes checks paid,deposited items&other debits |

*Your account has overdraft protection provided by deposit account number
4830 6378 7673.*



Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

## Thank you for your business.
## Here's to your continued success.

We're committed to finding the smartest path to long-term growth for your business.

Our small business specialists will work with you to help strengthen your business and
plan for the future. Please visit **bankofamerica.com/smallbusiness** to learn more.

AR634K95 | SSM-01-18-2949 B

SDNY_000940

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   February 1, 2019 to February 28, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us -** You may call us at the telephone number listed on the front of this statement.

**Updating your contact information -** We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement -** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers -** If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems -** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits -** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and    Equal Housing Lender

A-1605



**Your checking account**

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   February 1, 2019 to February 28, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | Online Banking transfer from CHK 8085 Confirmation# 5131245804 | 3,500.00 |
| 02/11/19 | Online Banking transfer from CHK 8085 Confirmation# 3190271943 | 2,000.00 |
| 02/20/19 | Online Banking transfer from CHK 5580 Confirmation# 5267608415 | 6,500.00 |
| 02/26/19 | Online Banking transfer from CHK 8085 Confirmation# 7319927418 | 3,000.00 |
| **Total deposits and other credits** | | **$15,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | PAYPAL        DES:INST XFER  ID:HOVERDOTCOM  INDN:FRIEND OR FRAUD INC     CO ID:PAYPALSI77 WEB | -15.17 |
| 02/11/19 | SC EVERCODER SOF DES:IAT PAYPAL ID:1004916932656  INDN:FRIEND OR FRAUD INC     CO ID:XXXXXXXXXC IAT  PMT INFO: WEB 000000000000001900 | -19.00 |
| 02/12/19 | PAYPAL        DES:INST XFER  ID:ADOBE INC  INDN:FRIEND OR FRAUD INC     CO ID:PAYPALSI77 WEB | -54.43 |
| 02/14/19 | PAYPAL        DES:INST XFER  ID:GITHUB INC  INDN:FRIEND OR FRAUD INC     CO ID:PAYPALSI77 WEB | -25.00 |

Card account # XXXX XXXX XXXX 2238

| Date | Description | Amount |
|------|-------------|--------|
| 02/01/19 | CHECKCARD  0131 Upwork -220155478REF 165-08534100 CA 24204299031000666024836 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -61.65 |
| 02/04/19 | CHECKCARD  0201 DIGITALOCEAN.COM DIGITALOCEAN.NY 24492159032637760728519 RECURRING CKCD 5734 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -671.32 |
| 02/04/19 | CHECKCARD  0201 CRUNCH100A 212-993-0300 NY 24431069032083929055327 RECURRING CKCD 7997 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -93.49 |
| 02/04/19 | CHECKCARD  0201 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159033637800808692 RECURRING CKCD 7372 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 02/04/19 | CHECKCARD  0202 WWW.OVH.COM MONTREAL      74766689033904485308996 CKCD 4816 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -243.06 |
| 02/04/19 | CHECKCARD  0202 Upwork -220356394JobPos 165-08534100 CA 24483479033000072054946 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -29.99 |
| 02/04/19 | CHECKCARD  0202 Upwork -220356949REF 165-08534100 CA 24483479033000073264940 RECURRING CKCD 7361 XXXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -20.55 |

*continued on the next page*



Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

Online Banking

Tip of
the month

# Banking at your fingertips

Our Mobile Banking app[1] is certified by J.D. Power® for providing "An Outstanding Customer Experience."[2]

To learn more, and download it for free, visit **bankofamerica.com/getmobileapp**.

[1]Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.
[2]For J.D. Power award information, visit jdpower.com.
©2018 Bank of America Corporation  |  ARF3TRPR  |  SSM-02-18-0009.B

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   February 1, 2019 to February 28, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| 02/04/19 | CHECKCARD  0203 Amazon web services aws.amazon.coWA 24692169034100626254761 CKCD 7399 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -304.60 |
| 02/05/19 | CHECKCARD  0205 Upwork -221034761REF 165-08534100 CA 24483479036000029354834 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,331.97 |
| 02/07/19 | CHECKCARD  0207 Upwork -221302510REF 165-08534100 CA 24483479038000147714941 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -61.65 |
| 02/11/19 | CHECKCARD  0208 ATLASSIAN ATLASSIAN B.V  74547069040020390895589 CKCD 5734 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -94.73 |
| 02/11/19 | CHECKCARD  0208 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159040637107411670 RECURRING CKCD 7372 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 02/12/19 | CHECKCARD  0211 Upwork -222036222REF 165-08534100 CA 24483479042372792244944 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,746.71 |
| 02/12/19 | CHECKCARD  0211 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159042637215204155 RECURRING CKCD 7372 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -5.00 |
| 02/14/19 | CHECKCARD  0214 Upwork -222454005REF 165-08534100 CA 24204299045000654134948 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -25.69 |
| 02/19/19 | CHECKCARD  0217 HIS*HISCOX INC 888-202-3007 NY 24692169048100438348003 RECURRING CKCD 6300 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -70.87 |
| 02/20/19 | CHECKCARD  0219 TMOBILE*AUTO PAY 800-937-8997 WA 24692169050100638304868 RECURRING CKCD 4814 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -73.00 |
| 02/21/19 | CHECKCARD  0221 Upwork -223617325REF 165-08534100 CA 24204299052000648034949 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -2,451.71 |
| 02/22/19 | CHECKCARD  0222 Upwork -223712385REF 165-08534100 CA 24204299053000688053923 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -288.98 |
| 02/25/19 | CHECKCARD  0222 WWW.OVH.COM MONTREAL     74766689053907571748665 CKCD 4816 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -16.57 |
| 02/26/19 | CHECKCARD  0225 Upwork -224355947REF 165-08534100 CA 24483479056330757324948 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -1,982.51 |
| 02/26/19 | CHECKCARD  0225 WEBFLOW.COM HTTPSWEBFLOW.CA 24492159056637821925253 RECURRING CKCD 7372 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -10.00 |
| 02/27/19 | CHECKCARD  0226 MAILCHIMP  *MONTHLY MAILCHIMP.COMGA 24692169057100157083789 CKCD 5968 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -272.19 |
| 02/28/19 | CHECKCARD  0228 Upwork -224790517REF 165-08534100 CA 24204299059000203594835 RECURRING CKCD 7361 XXXXXXXXXXX2238 XXXX XXXX XXXX 2238 | -51.38 |
| **Subtotal for card account # XXXX XXXX XXXX 2238** | | **-$11,917.62** |
| **Total withdrawals and other debits** | | **-$12,031.22** |



**Your checking account**

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   February 1, 2019 to February 28, 2019

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft fees | $0.00 | $350.00 |
| Total NSF: Returned Item fees | $0.00 | $0.00 |

We refunded to you a total of $665.00 in fees for Overdraft and/or NSF: Returned Items this year.

**To help avoid overdraft and returned item fees, you can set up:**

Customized alerts – get email or text message alerts (footnote 1) to let you know if your balance is low

Overdraft Protection – enroll to help protect yourself from overdrafts and declined transactions

To enroll, go to bankofamerica.com/online, call us at the number listed on this statement, or come see us at your nearest financial center.

(footnote 1) Alerts received as text messages on your mobile access device may incur a charge from your mobile access service provider. This feature is not available on the Mobile website. Wireless carrier fees may apply.

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 01/31/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✔ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ◯ $3,000+ minimum daily balance in primary checking account
- ◯ $5,000+ average monthly balance in primary checking account
- ◯ $15,000+ combined average monthly balance in linked business accounts
- ✔ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|---|---|---|
| 02/04/19 | CHECKCARD  0202 WWW.OVH.COM MONTREAL 7476668903390448530899 6 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -7.29 |
| 02/07/19 | ONLINE BUSINESS SUITE ACCT MGMT SERVICES | -15.00 |
| 02/11/19 | CHECKCARD  0208 ATLASSIAN ATLASSIAN B.V 7454706904002039089558 9 CKCD 5734 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -2.84 |
| 02/25/19 | CHECKCARD  0222 WWW.OVH.COM MONTREAL 7476668905390757174866 5 CKCD 4816 XXXXXXXXXXXX2238 INTERNATIONAL TRANSACTION FEE | -0.50 |

**Total service fees**      **-$25.63**

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 02/01 | 2,104.07 | 02/04 | 4,213.60 | 02/05 | 1,881.63 |

*continued on the next page*

A-1608

FRIEND OR FRAUD INC   |   Account # 4830 5610 0351   |   February 1, 2019 to February 28, 2019

## Daily ledger balances - continued

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 02/07 | 1,804.98 | 02/19 | 755.71 | 02/25 | 4,424.95 |
| 02/11 | 3,683.41 | 02/20 | 7,182.71 | 02/26 | 5,432.44 |
| 02/12 | 877.27 | 02/21 | 4,731.00 | 02/27 | 5,160.25 |
| 02/14 | 826.58 | 02/22 | 4,442.02 | 02/28 | 5,108.87 |

SDNY_000945

A-1609

Date: 3/31/2016 Time: 11:27:41 AM (US Central Time) Scanned From IP:10.60.113.12
Case 1:19-cr-00696-PAE  Document 128-5  Filed 05/01/20  Page 1 of 4

# Bank of America

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Limited Liability Company Resolutions
Opening and Maintaining Deposit Accounts and Services**

Account Number  483056101046

Name of Limited Liability Company  TOUCHLESS LABS LLC

I, the undersigned, hereby certify to  BANK OF AMERICA, N.A.

, that I am the a/the  *Sole member*  and the designated keeper

of the records and minutes of  TOUCHLESS LABS LLC

☒ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of  *Delaware*

(the "Company"), that I have full authority to manage, represent, sign for and bind the Company, that the following is a true copy of resolutions duly adopted by a majority of the members/managers of said Company at a meeting duly held on the  *29th*  day of  *March*  , *2016*, at which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers, and that such resolutions are in full force and effect and have not been amended or rescinded

1. **Resolved,** that  BANK OF AMERICA, N.A.  (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) to be opened and maintained in the name of this Company with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts, that any one of the following members, managers, or employees of this Company

| Name | Title/Status |
|------|-------------|
| *Ari D. Teman* | *Sole member* |
| | |
| | |
| | |

is hereby authorized, on behalf of this Company and its name, to execute and sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts, to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money, to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by Bank, to accept drafts, acceptances, and other instruments payable at Bank, to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Company, to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company, to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of initiating electronic fund transfers [Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device], to establish and maintain a night deposit relationship, to execute and deliver a wire transfer agreement and to request, or to appoint and delegate from time to time such persons who may request, wires of funds, to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's obligations there under, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to such termination, to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease, to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in connection with said accounts that the member, manager or employee deems necessary, and to waive presentment, demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company, and

2. **Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment of the individual obligation of such member, manager or employee, or for deposit to such member, manager's or employee's personal account and Bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof, and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized member, manager or employee, and

NNY
00-14-9258M  11-2013

Page 1 of 2


GOVERNMENT
EXHIBIT
105
19 Cr. 696 (PAE)

SDNY_000174

Date: 3/31/2016 Time: 11:27:41 AM (US Central Time) Scanned From IP:10.60.113.12

Account Number  483056101046

**3.  Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an member, manager or employee authorized in the foregoing resolutions and the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the use of such facsimile signature, and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature, and

**4.  Further Resolved,** that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection, and

**5.  Further Resolved,** that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified, and

**6.  Further Resolved,** that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank, prior thereto, and

**7.  Further Resolved,** that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted, and

**8.  Further Resolved,** that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company

**In Witness Whereof,** and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this _29_ day of _March_ , _2016_

_____
**Member/Manager**

| Bank Information | |
| --- | --- |
| Date | 03/29/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Naqi Bokhari |
| Associate's Phone Number | 212-290-1988 |

Page 2 of 2



SDNY_000175

A-1611

Date: 3/31/2016 Time: 11:27:41 AM (US Central Time) Scanned From IP:10.60.113.12
Case 1:19-cr-00696-PAE   Document 128-5   Filed 05/01/20   Page 3 of 4

# Bank of America

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card**
**with Substitute Form W-9**

**Account Number:** 4830 5610 1046                                    **Bank Number:** 487

**Account Type:**  ☒ DDA     ☐ SAV     ☐ CD

**Account Title:**

TOUCHLESS LABS LLC

**Legal Designation:**

☐ Individual/Sole Proprietor    ☐ Trust/Estate    ☐ Unincorporated Association    ☐ C Corporation    ☐ S Corporation

☐ Partnership (Enter the type of partnership: General, LP, LLP or LLLP)

☒ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)  M

☐ Other (Defined in W-9 instructions)

**Social Security Number** _____    (or)   **Employer Identification Number**  46-4923648

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for all transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

Substitute Form W-9. Certification - Under penalties of perjury, I certify that (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct

Certification Instructions:  You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Exempt payee code (if any)** _____

**Exemption from FATCA reporting code (if any)** _____

☐ **Nonresident Alien Status (if applicable)** If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1  ARI B TEMAN | SOLE MEMBER | AC | 3/27/16 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

NNY
00-14-9297MW  08-2014

© 2012 Bank of America, N.A. All Rights Reserved
Page 1 of 2

SDNY_000176

A-1612

Date: 3/31/2016 Time: 11:27:41 AM (US Central Time) Scanned From IP:10.60.113.12
Case 1:19-cr-00696-PAE    Document 128-5    Filed 05/01/20    Page 4 of 4

**Account Number:** 4830 5610 1046

☑ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

_____          SOLE MEMBER
Authorized Signer                                              Title

**Review Information**

**Customer 1:**

Name    ARI B TEMAN

| ID Type | US Passport W/Photo | ID# | 469084748 | ID Issuer | | Iss Date | 05/2010 | Exp Date | 05 2020 |
| ID Type | US Driver License W/Photo | ID# | T24440576205822 | ID Issuer | New Jersey | Iss Date | 10 2013 | Exp Date | 06 2017 |

**Customer 2:**

Name

| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |
| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |

**Customer 3:**

Name

| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |
| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |

**Customer 4:**

Name

| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |
| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |

**Customer 5:**

Name

| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |
| ID Type | | ID# | | ID Issuer | | Iss Date | | Exp Date | |

**Bank Information**

| | |
|---|---|
| Date | 03/29/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Naqi Bokhari |
| Associate's Phone Number | 212-290-1988 |

NNY
00-14-9297MW  08-2014

Page 2 of 2

A-1613



P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

🌐  1.888.BUSINESS (1.888.287.4637)

🖥  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

TOUCHLESS LABS LLC
106 W 32ND ST
NEW YORK, NY  10001-0074

## Your Business Fundamentals Checking
## Relationship Rewards Platinum Honors

for May 1, 2019 to May 31, 2019

**TOUCHLESS LABS LLC**

Account number: 4830 5610 1046

### Account summary

| | | |
|---|---|---|
| Beginning balance on May 1, 2019 | $86,910.71 | # of deposits/credits: 1 |
| Deposits and other credits | 352.53 | # of withdrawals/debits: 1 |
| Withdrawals and other debits | -352.53 | # of items-previous cycle¹: 0 |
| Checks | -0.00 | # of days in cycle: 31 |
| Service fees | -0.00 | Average ledger balance: $86,910.71 |
| **Ending balance on May 31, 2019** | **$86,910.71** | ¹Includes checks paid,deposited items&other debits |

GOVERNMENT
EXHIBIT
106
19 Cr. 696 (PAE)

---

Bank of America **Business Advantage**

### What's on your mind?

Business owners like you can join the Bank of America® Advisory Panel to help us understand what you like and don't like.
Enter code **SBDD** at **bankofamerica.com/AdvisoryPanel** to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.                                    SSM-01-19-2128D1 | ARG377KX

PULL: E  CYCLE: 60  SPEC: E  DELIVERY: E  TYPE:    IMAGE: I  BC: NY

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  May 1, 2019 to May 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



**Bank of America, N.A. Member FDIC and** **Equal Housing Lender**



**Your checking account**

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  May 1, 2019 to May 31, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 05/15/19 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-14) | 352.53 |
| **Total deposits and other credits** | | **$352.53** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 05/14/19 | TRINET        DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -352.53 |
| **Total withdrawals and other debits** | | **-$352.53** |

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 04/30/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ✓ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts
- ✓ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

---

Bank of America **Business Advantage**

# Thank you for your business

We're committed to finding the smartest path to long-term growth for your business.

Our Small Business Specialists will work with you to help strengthen your business and plan for the future.
Please visit **bankofamerica.com/SmallBusiness** to learn more.

AR7RNN9G|SSM-01-19-2811.B

A-1616

TOUCHLESS LABS LLC   |   Account # 4830 5610 1046   |   May 1, 2019 to May 31, 2019

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 05/01 | 86,910.71 | 05/14 | 86,558.18 | 05/15 | 86,910.71 |

A-1617



P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

📞  1.888.BUSINESS (1.888.287.4637)

🖥  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

TOUCHLESS LABS LLC
106 W 32ND ST
NEW YORK, NY  10001-0074

## Your Business Fundamentals Checking
## Relationship Rewards Platinum Honors

for April 1, 2019 to April 30, 2019

**TOUCHLESS LABS LLC**

Account number: 4830 5610 1046

## Account summary

| | | |
|---|---|---|
| Beginning balance on April 1, 2019 | $56,762.08 | # of deposits/credits: 2 |
| Deposits and other credits | 180,003.00 | # of withdrawals/debits: 26 |
| Withdrawals and other debits | -149,848.37 | # of items-previous cycle¹: 0 |
| Checks | -0.00 | # of days in cycle: 30 |
| Service fees | -6.00 | Average ledger balance: $72,526.68 |
| **Ending balance on April 30, 2019** | **$86,910.71** | ¹Includes checks paid,deposited items&other debits |

Bank of America **Business Advantage**

THE POWER TO

build a thriving business

During National Small Business Week and throughout the month of May, we're celebrating the dedication
of small business owners and their commitment to achieving success.

Join in the conversation with other business owners by visiting the Small Business Community at
**bankofamerica.com/SBcelebrate**.

SSM-11-18-0541.B | ARQSHK8M

SDNY_000990

PULL: E   CYCLE: 60   SPEC: E   DELIVERY: E   TYPE:     IMAGE: I   BC: NY

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  April 1, 2019 to April 30, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers**- If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems**- You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



**Bank of America, N.A. Member FDIC and**   **Equal Housing Lender**

A-1619



## Your checking account

TOUCHLESS LABS LLC   |   Account # 4830 5610 1046   |   April 1, 2019 to April 30, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 04/22/19 | Bus Adv Rel Rwds-ATM Operator Refund of $3 | 3.00 |
| 04/26/19 | Online Banking transfer from CHK 0351 Confirmation# 3328239782 | 180,000.00 |
| **Total deposits and other credits** | | **$180,003.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 04/08/19 | Online Banking transfer to CHK 5580 Confirmation# 1368070971 | -3,500.00 |
| 04/12/19 | Online Banking transfer to CHK 0351 Confirmation# 6410835498 | -1,870.00 |
| 04/12/19 | TRINET       DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -352.53 |
| 04/15/19 | CAPITAL ONE CARD DES:ONLINE DEP ID:SW22EJED8O50UT4  INDN:Ari Teman        CO ID:9541719881 WEB | -300.00 |
| 04/23/19 | Online Banking transfer to CHK 0351 Confirmation# 5503446551 | -600.00 |
| 04/29/19 | Online Banking transfer to CHK 0351 Confirmation# 7247440134 | -125,400.00 |
| 04/29/19 | TRANSFER TOUCHLESS LABS LLC:FischerBroyles Confirmation# 1754584381 | -15,000.00 |
| 04/29/19 | TRANSFER TOUCHLESS LABS LLC:FischerBroyles Confirmation# 0454591900 | -1,500.00 |
| 04/29/19 | TRINET       DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -352.53 |

Card account # XXXX XXXX XXXX 2253

| Date | Description | Amount |
|------|-------------|--------|
| 04/08/19 | CHECKCARD  0407 SEAMLSSGOLDENWOKS SEAMLESS.COM NY 24492159097715373853544 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -33.68 |
| 04/15/19 | CHECKCARD  0415 SEAMLSSRIVOLIPIZZAII SEAMLESS.COM NY 24492159105717904681105 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -20.90 |
| 04/16/19 | CHECKCARD  0414 MEME MEDITERRANEAN W.VI NEW YORK    NY 2420785910516630148084 7 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -58.54 |
| 04/17/19 | CVS/PHARMACY # 04/17 #000530264 PURCHASE CVS/PHARMACY #05   Miami        FL | -4.26 |
| 04/19/19 | CHECKCARD  0417 STARBUCKS STORE 08242 MIAMI BEACH  FL 24692169108100480475297 CKCD 5814 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -3.38 |
| 04/19/19 | CHECKCARD  0418 LE PIMENT MIA MIAMI BEACH  FL 24251389108030045471118 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -43.81 |
| 04/19/19 | CHECKCARD  0418 POSTAGE GOSHIPPO.COM HTTPSGOSHIPPOCA 24492159108637140904631 RECURRING CKCD 7399 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -21.80 |

*continued on the next page*

Bank of America **Business Advantage**                                    LIFE / BETTER CONNECTED®


Your
Digital
Tip

### Dreading the shredding?

Go paperless—stop storing or shredding old statements. Enjoy the convenience online access offers.

Enroll today by logging in to Online Banking at **bankofamerica.com/smallbusiness**.
Then click on **Profiles & Settings** (in the upper right, next to **Sign Out**).

©2018 Bank of America Corporation  |  ARG4G3KD  |  SSM-04-18-0041.B

A-1620

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  April 1, 2019 to April 30, 2019

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 04/19/19 | CHECKCARD  0418 SLACK SLACK.COM   CA 2449215910863715187204 0 CKCD 5734 XXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -326.49 |
| 04/22/19 | CHECKCARD  0418 HIRO'S SUSHI EXPRESS SO MIAMI BEACH  FL 2476147910903012082550 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -21.95 |
| 04/22/19 | CHECKCARD  0420 SEAMLSSBELLANAPOLIPIZ SEAMLESS.COM NY 2449215911071321191430 8 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -28.51 |
| 04/22/19 | WA033162000000  04/22 #000000119 WITHDRWL Cardtronics CCS1   MIAMI BEACH   FL | -203.00 |
| 04/25/19 | CHECKCARD  0424 HIS*HISCOX INC 888-202-3007 GA 2469216911410012044678 3 RECURRING CKCD 6300 XXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -70.50 |
| 04/25/19 | CHECKCARD  0424 HIS*HISCOX INC 888-202-3007 GA 2469216911410012044626 2 RECURRING CKCD 6300 XXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -70.50 |
| 04/26/19 | CHECKCARD  0425 TWC*TIME WARNER NYC 718-358-0900 NY 2469216911510043533871 6 RECURRING CKCD 4899 XXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -65.99 |
| **Subtotal for card account # XXXX XXXX XXXX 2253** | | **-$973.31** |
| **Total withdrawals and other debits** | | **-$149,848.37** |

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 03/29/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ○ $250+ in new net purchases on a linked Business debit card
- ○ $250+ in new net purchases on a linked Business credit card
- ✔ $3,000+ minimum daily balance in primary checking account
- ✔ $5,000+ average monthly balance in primary checking account
- ✔ $15,000+ combined average monthly balance in linked business accounts
- ✔ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 04/22/19 | Bus Adv Rel Rwds-ATM Wthdrwl Fee Waiver of $2.50 | -0.00 |
| 04/30/19 | External transfer fee - Next Day - 04/29/2019 | -5.00 |
| 04/30/19 | External transfer fee - 3 Day -  04/29/2019 | -1.00 |
| **Total service fees** | | **-$6.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|-----------|------|-------------|
| 04/01 | 56,762.08 | 04/17 | 50,622.17 | 04/25 | 49,235.23 |
| 04/08 | 53,228.40 | 04/19 | 50,226.69 | 04/26 | 229,169.24 |
| 04/12 | 51,005.87 | 04/22 | 49,976.23 | 04/29 | 86,916.71 |
| 04/15 | 50,684.97 | 04/23 | 49,376.23 | 04/30 | 86,910.71 |
| 04/16 | 50,626.43 | | | | |

SDNY_000993



**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

Business Advantage
Relationship Rewards

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

TOUCHLESS LABS LLC
106 W 32ND ST
NEW YORK, NY 10001-0074

# Your Business Fundamentals Checking
# Relationship Rewards Platinum Honors

for March 1, 2019 to March 31, 2019

Account number: 4830 5610 1046

**TOUCHLESS LABS LLC**

## Account summary

| | | | |
|---|---|---|---|
| Beginning balance on March 1, 2019 | $74,161.19 | # of deposits/credits: 1 | |
| Deposits and other credits | 20,000.00 | # of withdrawals/debits: 10 | |
| Withdrawals and other debits | -37,393.11 | # of items-previous cycle[1]: 0 | |
| Checks | -0.00 | # of days in cycle: 31 | |
| Service fees | -6.00 | Average ledger balance: $65,721.76 | |
| **Ending balance on March 31, 2019** | **$56,762.08** | [1]Includes checks paid,deposited items&other debits | |

Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

Your Digital
Tip of the
Month

## Sign up for online alerts today[1]

Stay up to date on your balances, and receive alerts when transactions have posted and when
your payments are due.

Log in or enroll at **bankofamerica.com/smallbusiness** and click on **Alerts** in the Activity Center.

[1] You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's
message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.
©2018 Bank of America Corporation | ARTCJRPG | SSM-03-18-0017.B

SDNY_000994

PULL: E   CYCLE: 60   SPEC: E   DELIVERY: E   TYPE:   IMAGE: I   BC: NY

TOUCHLESS LABS LLC   |   Account # 4830 5610 1046   |   March 1, 2019 to March 31, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us -** You may call us at the telephone number listed on the front of this statement.

**Updating your contact information -** We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement -** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers-** If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  – Tell us your name and account number.
  – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
  – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems -** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits -** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and          Equal Housing Lender

A-1623



**Your checking account**

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  March 1, 2019 to March 31, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 03/29/19 | Online Banking transfer from CHK 0351 Confirmation# 5386788041 | 20,000.00 |
| **Total deposits and other credits** | | **$20,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 03/14/19 | TRINET      DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -328.56 |
| 03/20/19 | Online Banking transfer to CHK 8085 Confirmation# 7106261411 | -7,070.00 |
| 03/20/19 | TRANSFER TOUCHLESS LABS LLC:135 Charles Street L Confirmation# 0609427879 | -12,900.00 |
| 03/25/19 | Online Banking transfer to CHK 5580 Confirmation# 7251114687 | -2,500.00 |
| 03/28/19 | Online Banking transfer to CHK 5580 Confirmation# 2181086087 | -1,000.00 |
| 03/28/19 | TRANSFER TOUCHLESS LABS LLC:Carioca 79 LLC Busin Confirmation# 0681285820 | -13,200.00 |
| 03/28/19 | TRINET      DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -328.56 |

Card account # XXXX XXXX XXXX 2253

| Date | Description | Amount |
|------|-------------|--------|
| 03/26/19 | CHECKCARD  0325 TWC*TIME WARNER NYC 718-358-0900 NY 24692169084100179792000 RECURRING CKCD 4899 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -65.99 |
| **Subtotal for card account # XXXX XXXX XXXX 2253** | | **-$65.99** |
| **Total withdrawals and other debits** | | **-$37,393.11** |

---

Bank of America **Business Advantage**                                    L I F E / B E T T E R  C O N N E C T E D®

Your Digital
Tip of the
Month

## Guaranteed bank-to-bank transfers

Pay individuals, vendors and suppliers who bank at other financial institutions — right from Online Banking.

Just log in and click the **Transfers I Send** tab, then select **Send Money to Someone or a Business.**

ARH98YHQ | SSM-03-18-0013.B

A-1624

TOUCHLESS LABS LLC   |   Account # 4830 5610 1046   |   March 1, 2019 to March 31, 2019

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 02/28/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ◯ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts
- ✓ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 03/21/19 | External transfer fee - Next Day - 03/20/2019 | -5.00 |
| 03/29/19 | External transfer fee - 3 Day -  03/28/2019 | -1.00 |
| **Total service fees** | | **-$6.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|------------|------|-----------|------|------------|
| 03/01 | 74,161.19 | 03/21 | 53,857.63 | 03/28 | 36,763.08 |
| 03/14 | 73,832.63 | 03/25 | 51,357.63 | 03/29 | 56,762.08 |
| 03/20 | 53,862.63 | 03/26 | 51,291.64 | | |



**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

TOUCHLESS LABS LLC
106 W 32ND ST
NEW YORK, NY 10001-0074

Business Advantage
Relationship Rewards

**Customer service information**

📞 1.888.BUSINESS (1.888.287.4637)

🖱 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Business Fundamentals Checking
# Relationship Rewards Platinum Honors

for February 1, 2019 to February 28, 2019                    Account number: 4830 5610 1046

**TOUCHLESS LABS LLC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on February 1, 2019 | $74,885.30 | # of deposits/credits: 1 |
| Deposits and other credits | 20,000.00 | # of withdrawals/debits: 6 |
| Withdrawals and other debits | -20,724.11 | # of items-previous cycle[1]: 1 |
| Checks | -0.00 | # of days in cycle: 28 |
| Service fees | -0.00 | Average ledger balance: $71,089.92 |
| **Ending balance on February 28, 2019** | **$74,161.19** | [1]Includes checks paid,deposited items&other debits |



Bank of America **Business Advantage**

LIFE / BETTER CONNECTED®

## Thank you for your business.
## Here's to your continued success.

We're committed to finding the smartest path to long-term growth for your business.

Our small business specialists will work with you to help strengthen your business and plan for the future. Please visit **bankofamerica.com/smallbusiness** to learn more.

AR634K95 | SSM-01-18-2949 B

SDNY_000998

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  February 1, 2019 to February 28, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



**Bank of America, N.A. Member FDIC and**     **Equal Housing Lender**

A-1627

 **Bank of America**                                   <span style="color:red">**Your checking account**</span>

TOUCHLESS LABS LLC   |   Account # 4830 5610 1046   |   February 1, 2019 to February 28, 2019

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 02/20/19 | Online Banking transfer from CHK 8085 Confirmation# 6367604331 | 20,000.00 |
| **Total deposits and other credits** | | **$20,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 02/14/19 | TRINET        DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -328.56 |
| 02/15/19 | Online Banking transfer to CHK 8085 Confirmation# 2325328995 | -15,000.00 |
| 02/15/19 | Online Banking transfer to CHK 8085 Confirmation# 1525853252 | -5,000.00 |
| 02/27/19 | TRINET        DES:INVOICE   ID:9Q0F00  INDN:SUBLETSPY        CO ID:4481304650 CCD | -328.56 |

<span style="color:red">Card account # XXXX XXXX XXXX 2253</span>

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/19 | CHECKCARD  0203 SEAMLSSRIVOLIPIZZAII SEAMLESS.COM NY 24492159034719352436483 CKCD 5812 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -22.00 |
| 02/26/19 | CHECKCARD  0225 TWC*TIME WARNER NYC 718-358-0900 NY 24692169056100358724885 RECURRING CKCD 4899 XXXXXXXXXXXX2253 XXXX XXXX XXXX 2253 | -44.99 |
| **Subtotal for card account # XXXX XXXX XXXX 2253** | | **-$66.99** |
| **Total withdrawals and other debits** | | **-$20,724.11** |

## Service fees

The Monthly Fee on your Business Fundamentals Checking account was waived for the statement period ending 01/31/19. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ◯ $250+ in new net purchases on a linked Business debit card
- ◯ $250+ in new net purchases on a linked Business credit card
- ✓ $3,000+ minimum daily balance in primary checking account
- ✓ $5,000+ average monthly balance in primary checking account
- ✓ $15,000+ combined average monthly balance in linked business accounts
- ✓ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

---

Bank of America **Business Advantage**                                   LIFE / BETTER CONNECTED®



Online Banking

**Tip of the month**

# Banking at your fingertips

Our Mobile Banking app[1] is certified by J.D. Power® for providing "An Outstanding Customer Experience."[2]

To learn more, and download it for free, visit **bankofamerica.com/getmobileapp**.

[1] Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.
[2] For J.D. Power award information, visit jdpower.com.
©2018 Bank of America Corporation  |  ARF3TRPR  |  SSM-02-18-0009.B

A-1628

TOUCHLESS LABS LLC  |  Account # 4830 5610 1046  |  February 1, 2019 to February 28, 2019

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|-------------|------|------------|------|-------------|
| 02/01 | 74,885.30 | 02/15 | 54,534.74 | 02/26 | 74,489.75 |
| 02/04 | 74,863.30 | 02/20 | 74,534.74 | 02/27 | 74,161.19 |
| 02/14 | 74,534.74 | | | | |

A-1629

Date: 10/15/2016 Time: 1:01:20 PM (US Central Time) Scanned From IP:10.60.113.8

## Bank of America

BANK OF AMERICA, N A  (THE "BANK")

**Personal Signature Card
with Substitute Form W-9**

**Account Number:** 4830 6661 5580                    **Bank Number:** 487

**Account Type:** ☒ DDA    ☐ SAV    ☐ CD

**Account Title:**

ARI B ELMAN

---

**OWNERSHIP TYPES:**

☑ Individual Owner

**TX & NC: IF JOINT OWNERS, THE JOINT OWNER SURVIVORSHIP MUST BE SELECTED ON PAGE 2.  ALL OTHER STATES:  IF JOINT OWNERS, SELECT FROM THE APPROPRIATE SURVIVORSHIP BELOW.**

☐ **Joint with Right of Survivorship**

☐ **Tenants by Entireties (Form of Joint with Right of Survivorship for spousal co-owners only. Note:  Defaults to Joint with Right of Survivorship if state law does not recognize Tenants by Entireties for bank accounts.)**

Check if designating beneficiaries  ☐ Payable on Death (POD) / In Trust For (ITF) / Totten Trust (Refer to Beneficiary Addendum for details)

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents including the Deposit Agreement and Disclosures and the Personal Schedule of Fees.  I/we acknowledge the receipt of these documents.  I/we understand and agree that the Bank may change these documents at any time by adding new terms, or deleting or amending existing terms.  The Deposit Agreement includes a provision for jury trial waiver or reference to a judicial referee.  A joint account with right of survivorship is the property of each co-owner and payable to either co-owner or to the surviving co-owner(s) if a co-owner dies.

By checking the box marked "ATM/Debit Card Requested?"  I/we hereby request an Automatic Teller Machine Card and/or a Debit Card.  By signing below, I/we consent to the issuance of an ATM card and/or Debit Card to the other account holders indicated below.  By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transaction in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN).

**Substitute Form W-9**
**Certification – Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me); and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) the IRS has notified me that I am no longer subject to backup withholding; (3) I am a US citizen or other US person (Defined in the W-9 instructions); and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.**

**Certification Instructions**
You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an Individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

☐ Nonresident Alien Status (if applicable)  If you and all of the joint owners of this account are foreign persons, check here and complete and sign the applicable Form(s) W-8

| Tax ID Number | Rpt. Interest On Yes/No | Printed Name | Signature | Date | ATM/Debit Card Request? Check if Yes (Dep. Accts. Only) |
|---|---|---|---|---|---|
| 1. ▓▓▓▓▓ | ☒ | ARI B ELMAN | *(signature)* | 10 14 16 | ☐ |
| 2. | ☐ | | | | ☐ |
| 3. | ☐ | | | | ☐ |
| 4. | ☐ | | | | ☐ |
| 5. | ☐ | | | | ☐ |

NNY
00-14-9295M  06-2014



© 2012 Bank of America, N A  All Rights Reserved

Page 1 of 2



GOVERNMENT
EXHIBIT
107
19 Cr. 696 (PAE)

SDNY_000178

Date: 10/15/2016 Time: 1:01:20 PM (US Central Time) Scanned From IP:10.60.113.8
Case 1:19-cr-00696-PAE   Document 128-7   Filed 05/01/20   Page 2 of 2

**Account Number:** 4830 6661 5580

| TEXAS & NORTH CAROLINA ONLY: | JOINT OWNERSHIP TYPE SELECTION: (VA'S PROBATE CODE§ 439  NCGS §53-146 1) |
|---|---|

During the lifetime of the co-owners of the account, the Bank may pay the money in the account to, or on the order of, any person named on the account.

**Joint Accounts can be with or without survivorship.**

> **With survivorship** means upon the death of one joint owner, the money remaining in the account will belong to the surviving joint owner(s), and will not be inherited by the heirs of the deceased joint owner or controlled by the deceased owner's will.

> **Without survivorship** means if one of the owners dies, the deceased owner's ownership interest in the account passes as part of the owner's estate under the owner's will or by intestacy if there is no will

**Joint Account Survivorship Selection** (Select One of the following options, all owners must sign and date):

☐ Joint Account - With Survivorship/Tenants by Entireties (with Survivorship for Spouses)   **OR**

☐ Joint Account – Without Survivorship

**Signer Information**

Customer 1 _____
          Account Owner's Signature                    Date

Customer 2 _____
          Account Owner's Signature                    Date

Customer 3 _____
          Account Owner's Signature                    Date

Customer 4 _____
          Account Owner's Signature                    Date

Customer 5 _____
          Account Owner's Signature                    Date

**Customer 1** ARI B TEMAN
Name _____   US Passport W Photo
Review Information  EXPERIAN          Approved Existing          469084748

**Customer 2**
Name _____
Review Information _____

**Customer 3**
Name _____
Review Information _____

**Customer 4**
Name _____
Review Information _____

**Customer 5**
Name _____
Review Information _____

| Bank Information | |
|---|---|
| Date | 10 11/2016 |
| Banking Center Name | HERALD CENTER |
| Associate's Name | Rhol Dharu |
| Associate's Phone Number | 718-896-0680 |

NNY
00-14-9295M  06-2014



Page 2 of 2

SDNY_000179



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

🔊 Customer service: 1.800.432.1000

    TDD/TTY users only: 1.800.288.4408

    En Español: 1.800.688.6086

ARI B TEMAN
106 W 32ND ST 2D15
NEW YORK, NY 10001-0074

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Adv Plus Banking

for April 24, 2019 to May 23, 2019

**ARI B TEMAN**

Account number: 4830 6661 5580

### Account summary

| | |
|---|---|
| Beginning balance on April 24, 2019 | $1,368.84 |
| Deposits and other additions | 13,600.00 |
| Withdrawals and other subtractions | -1,491.47 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on May 23, 2019** | **$13,477.37** |

GOVERNMENT
EXHIBIT
108
19 Cr. 696 (PAE)

PULL: B  CYCLE: 15  SPEC: E  DELIVERY: E  TYPE:  IMAGE: I  BC: NY

ARI B TEMAN   |   Account # 4830 6661 5580   |   April 24, 2019 to May 23, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



**Bank of America, N.A. Member FDIC and** **Equal Housing Lender**

A-1633



ARI B TEMAN  |  Account # 4830 6661 5580  |  April 24, 2019 to May 23, 2019

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 04/26/19 | Online Banking transfer from CHK 0351 Confirmation# 3528245260 | 4,500.00 |
| 04/26/19 | Online Banking transfer from CHK 8085 Confirmation# 1328254696 | 3,600.00 |
| 04/29/19 | Online Banking transfer from CHK 8085 Confirmation# 7443490767 | 5,500.00 |
| **Total deposits and other additions** | | **$13,600.00** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 04/25/19 | WHOLEFDS SBE 1  04/25 #000226738 PURCHASE WHOLEFDS SBE 102  MIAMI BEACH  FL | -33.19 |
| 04/25/19 | FPL DIRECT DEBIT DES:ELEC PYMT  ID:8238015302 WEBI  INDN:ARI TEMAN          CO  ID:3590247775 WEB | -57.30 |
| 04/26/19 | CHECKCARD  0424 TANUKI, LLC 724-2831878  FL 24000979115403401683761 | -114.30 |
| 04/29/19 | CHECKCARD  0425 ACE HARDWARE - MIAMI B MIAMI BEACH  FL 24269799116100318207224 | -3.20 |
| 04/29/19 | CHECKCARD  0425 STARBUCKS STORE 08242 MIAMI BEACH  FL 24692169116100021889337 | -3.48 |
| 04/29/19 | CHECKCARD  0426 SQ *KETAMINE HEALTH CORAL GABLES FL 24492159116741352274897 | -500.00 |
| 04/30/19 | Zelle Transfer Conf# e22a493b0; Orosz, Thomas | -60.00 |
| 05/03/19 | Zelle Transfer Conf# 269d60b8e; Orosz, Thomas | -720.00 |
| **Total withdrawals and other subtractions** | | **-$1,491.47** |

A-1634

ARI B TEMAN   |   Account # 4830 6661 5580   |   April 24, 2019 to May 23, 2019

This page intentionally left blank



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

🔊 Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

ARI B TEMAN
106 W 32ND ST 2D15
NEW YORK, NY 10001-0074

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Adv Plus Banking

for March 23, 2019 to April 23, 2019

Account number: 4830 6661 5580

**ARI B TEMAN**

## Account summary

| | |
|---|---|
| Beginning balance on March 23, 2019 | $720.37 |
| Deposits and other additions | 14,316.73 |
| Withdrawals and other subtractions | -13,656.26 |
| Checks | -0.00 |
| Service fees | -12.00 |
| **Ending balance on April 23, 2019** | **$1,368.84** |

SDNY_000904

PULL: B   CYCLE: 15   SPEC: E   DELIVERY: E   TYPE:   IMAGE: I   BC: NY

ARI B TEMAN   |   Account # 4830 6661 5580   |   March 23, 2019 to April 23, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us** - You may call us at the telephone number listed on the front of this statement.

**Updating your contact information** - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement** - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers** - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

   –   Tell us your name and account number.
   –   Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
   –   Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems** - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits** - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and       Equal Housing Lender

A-1637



ARI B TEMAN | Account # 4830 6661 5580 | March 23, 2019 to April 23, 2019

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 03/25/19 | Online Banking transfer from CHK 1046 Confirmation# 7251114687 | 2,500.00 |
| 03/28/19 | Online Banking transfer from CHK 1046 Confirmation# 2181086087 | 1,000.00 |
| 03/28/19 | BKOFAMERICA ATM 03/28 #000009277 DEPOSIT HERALD SQUARE CE  NEW YORK      NY | 50.73 |
| 03/29/19 | Online Banking transfer from CHK 0351 Confirmation# 5486791875 | 2,000.00 |
| 04/05/19 | Online Banking transfer from CHK 0351 Confirmation# 7549338373 | 2,266.00 |
| 04/08/19 | Online Banking transfer from CHK 1046 Confirmation# 1368070971 | 3,500.00 |
| 04/16/19 | Zelle Transfer Conf# XXXXXXXXX; 570 WEST PROPERTIES, LLC | 1,000.00 |
| 04/16/19 | Zelle Transfer Conf# XXXXXXXXX; 517 WEST PROPERTIES, LLC | 1,000.00 |
| 04/16/19 | Zelle Transfer Conf# XXXXXXXXX; 517 WEST PROPERTIES, LLC | 1,000.00 |
| **Total deposits and other additions** | | **$14,316.73** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 03/25/19 | CHECKCARD  0321 LAGUARDIAAUBONPAIN722A NEW YORK     NY 24692169081100404103562 | -3.26 |
| 03/25/19 | CHECKCARD  0322 NY KETAMINE MEDICAL PR NEW YORK     NY 24692169082100757842716 | -425.00 |
| 03/25/19 | CHECKCARD  0323 KUMO SUSHI NEW YORK     NY 24013399082003051644413 | -99.00 |
| 03/25/19 | Zelle Transfer Conf# 4a86ee44d; KEVIN | -50.00 |
| 03/25/19 | Zelle Transfer Conf# ea4b99ed3; uber | -1,000.00 |
| 03/26/19 | CHECKCARD  0325 BLACK BURGER- CANAL ST. NEW YORK     NY 24426299084027015340264 | -9.27 |
| 03/26/19 | CHECKCARD  0325 NY KETAMINE MEDICAL PR NEW YORK     NY 24692169085100523288191 | -425.00 |
| 03/26/19 | CVS/PHARMACY #  03/26 #000950292 PURCHASE CVS/PHARMACY #10  NEW YPRK      NY | -6.02 |
| 03/26/19 | Zelle Transfer Conf# d5f136be4; KEVIN | -50.00 |
| 03/27/19 | CHECKCARD  0325 ZEYTUNA NEW YORK     NY 24688089085017028886681 | -11.32 |
| 03/27/19 | CHECKCARD  0326 MARKET PLACE 312 / SHE NEW YORK     NY 24692169086100121309638 | -15.72 |

continued on the next page

## What's on your mind?

When you join the Bank of America® Advisory Panel, you can help us understand what you like and don't like.
Enter code **CADD** at bankofamerica.com/AdvisoryPanel to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.                                   SSM-01-19-2128 A1 | ARG377KX

SDNY_000906

A-1638

ARI B TEMAN  |  Account # 4830 6661 5580  |  March 23, 2019 to April 23, 2019

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|--------|
| 03/27/19 | CVS/PHARMACY #  03/27 #000528736 PURCHASE CVS/PHARMACY #10  NEW YPRK    NY | -10.68 |
| 03/27/19 | 7-ELEVEN        03/27 #000427638 PURCHASE 7-ELEVEN      NEW YORK    NY | -7.07 |
| 03/28/19 | CHECKCARD  0326 NY PIZZA SUPREMA NEW YORK    NY 24323049086391700009662 | -10.50 |
| 03/28/19 | CHECKCARD  0327 MARKET PLACE 312 / SHE NEW YORK    NY 24692169087100704561075 | -5.74 |
| 03/28/19 | CHECKCARD  0327 NY KETAMINE MEDICAL PR NEW YORK    NY 24692169087100696121417 | -425.00 |
| 03/28/19 | Zelle Transfer Conf# 4a612fcb4; Nachshon Engle | -225.00 |
| 03/29/19 | CHECKCARD  0327 TAIM MAIDEN LANE NEW YORK    NY 24707529087017048753226 | -14.96 |
| 03/29/19 | CHECKCARD  0329 PANERA BREAD #601533 P NEW YORK    NY 24692169088100348220681 | -3.49 |
| 03/29/19 | RITE AID STORE  03/28 #000130800 PURCHASE RITE AID STORE -  NEW YORK    NY | -7.47 |
| 03/29/19 | Zelle Transfer Conf# fd2c5fc50; Orosz, Thomas | -360.00 |
| 04/01/19 | CHECKCARD  0328 NY PIZZA SUPREMA NEW YORK    NY 24323049088397300009349 | -11.00 |
| 04/01/19 | CHECKCARD  0329 SQ *READY TO EAT NY NEW YORK    NY 24492159088855380943929 | -9.74 |
| 04/01/19 | CHECKCARD  0329 KUMO SUSHI NEW YORK    NY 24013399089004009770147 | -18.25 |
| 04/01/19 | CHECKCARD  0329 WOORI JIP NEW YORK    NY 24207859089160101859342 | -11.98 |
| 04/01/19 | CHECKCARD  0329 CAFFEBENE KTOWN NEW YORK    NY 24248339090900017604030 | -3.00 |
| 04/01/19 | Zelle Transfer Conf# dbf087ba2; Alex B. integrator | -731.00 |
| 04/01/19 | Zelle Transfer Conf# 78c7506ec; Orosz, Thomas | -180.00 |
| 04/05/19 | CHECKCARD  0404 VENMO 855-812-4430 NY 24493989094602154392870 | -240.00 |
| 04/05/19 | Zelle Transfer Conf# 60f8364eb; Alex B. integrator | -1,226.00 |
| 04/05/19 | Zelle Transfer Conf# a000782d7; Orosz, Thomas | -1,040.00 |
| 04/08/19 | CHECKCARD  0407 CITIPET VILLAGE NEW YORK    NY 24493989097206139600238 | -2,721.88 |
| 04/09/19 | CHECKCARD  0408 KUMO SUSHI NEW YORK    NY 24013399098001051183871 | -14.47 |
| 04/11/19 | PMNT SENT  0411 VENMO* Visa Direct  NY | -120.00 |
| 04/12/19 | Zelle Transfer Conf# 1bcb03d56; Tina. Cleaning Lady | -120.00 |
| 04/12/19 | Zelle Transfer Conf# 7cd5e4e18; Alex B. integrator | -1,070.00 |
| 04/12/19 | Zelle Transfer Conf# 7562c55ed; Orosz, Thomas | -870.00 |
| 04/15/19 | PMNT SENT  0414 VENMO* Visa Direct  NY | -225.00 |
| 04/15/19 | PETCO 778       04/14 #000365401 PURCHASE PETCO 778        NEW YORK    NY | -61.66 |
| 04/15/19 | FLATIRONFAMILYME DES:FLATIRONFA ID:ST-S1B0P6Q7K4L2  INDN:FLATIRON FAMILY MEDICA CO ID:1800948598 CCD | -50.00 |
| 04/16/19 | CHECKCARD  0415 HEART OF CHELSEA ANIMAL NEW YORK    NY 24559309105900010900178 | -17.29 |
| 04/16/19 | CHECKCARD  0415 ASIAN CHAO FLUSHING    NY 24210739105286588801827 | -15.87 |
| 04/16/19 | WHOLEFDS SBE 1  04/16 #000140323 PURCHASE WHOLEFDS SBE 102  MIAMI BEACH   FL | -10.83 |
| 04/16/19 | PETCO 1521      04/16 #000260395 PURCHASE PETCO 1521        MIAMI BEACH   FL | -50.95 |
| 04/16/19 | PUBLIX SUPER M  04/16 #000927351 PURCHASE PUBLIX SUPER MAR  MIAMI BEACH   FL | -73.85 |
| 04/17/19 | CHECKCARD  0415 MURRAYS BAGELS CHELSEA NEW YORK    NY 24551939106017033930271 | -13.61 |

*continued on the next page*

Case 1:19-cr-00696-PAE    Document 128-8    Filed 05/01/20    Page 9 of 18


**Bank of America**

ARI B TEMAN  |  Account # 4830 6661 5580  |  March 23, 2019 to April 23, 2019

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|--------|
| 04/17/19 | CHECKCARD 0415 AMERICAN AIR00106462260 FORT WORTH   TX 2443106910697800293704 | -18.48 |
| 04/18/19 | CHECKCARD 0416 HIRO'S SUSHI EXPRESS SO MIAMI BEACH  FL 24761479107030011861378 | -16.38 |
| 04/18/19 | CHECKCARD 0416 MCDONALD'S F14372 MIAMI BEACH  FL 24427339107710054452100 | -8.50 |
| 04/19/19 | Zelle Transfer Conf# 32fca93be; Orosz, Thomas | -690.00 |
| 04/19/19 | Zelle Transfer Conf# dbb63521c; Alex B. integrator | -690.00 |
| 04/22/19 | CHECKCARD 0419 BURGERFI-SOUTHBCH MIAMI BEACH  FL 2443106911079629255814 | -15.09 |
| 04/22/19 | CHECKCARD 0420 FRITZ'S SKATE MIAMI BEACH  FL 24270099111900016000160 | -53.50 |
| 04/22/19 | WALGREENS STOR 04/21 #000317916 PURCHASE WALGREENS STORE 1  MIAMI BEACH  FL. | -6.28 |
| 04/22/19 | CVS/PHARMACY # 04/21 #000804007 PURCHASE CVS/PHARMACY #05   Miami           FL | -4.26 |
| 04/23/19 | CHECKCARD 0421 DORAKU SUSHI MIAMI BEACH  FL 24013399112002935296931 | -30.80 |
| 04/23/19 | CHECKCARD 0421 FRITZ'S SKATE MIAMI BEACH  FL 24270099112900016100324 | -32.09 |
| 04/23/19 | Zelle Transfer Conf# 25d0b6324; Orosz, Thomas | -20.00 |
| **Total withdrawals and other subtractions** | | **-$13,656.26** |

## Service fees

| Date | Transaction description | Amount |
|------|-------------------------|--------|
| 04/23/19 | Monthly Maintenance Fee | -12.00 |
| **Total service fees** | | **-$12.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

A-1640

ARI B TEMAN   |   Account # 4830 6661 5580   |   March 23, 2019 to April 23, 2019

This page intentionally left blank

A-1641



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ARI B TEMAN
106 W 32ND ST 2D15
NEW YORK, NY 10001-0074

## Your Adv Plus Banking

for February 22, 2019 to March 22, 2019

Account number: 4830 6661 5580

**ARI B TEMAN**

## Account summary

| | |
|---|---|
| Beginning balance on February 22, 2019 | $1,892.25 |
| Deposits and other additions | 4,271.86 |
| Withdrawals and other subtractions | -5,431.74 |
| Checks | -0.00 |
| Service fees | -12.00 |
| **Ending balance on March 22, 2019** | **$720.37** |

Our Mobile Banking app[1] and Online Banking are both certified by J.D. Power[2] for providing

## "An Outstanding Customer Experience."

Download the app today from your app store or visit bankofamerica.com.

[1] Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.
[2] J.D. Power 2019 Mobile App Certification Program℠ and 2019 Website Certification Program℠ recognition is based on successful completion of an audit and exceeding a
customer experience benchmark through a survey of recent servicing interactions. For more information, visit jdpower.com/awards.     SSM-11-18-0529C | ARFVGMFT

SDNY_000910

ARI B TEMAN  |  Account # 4830 6661 5580  |  February 22, 2019 to March 22, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

**How to Contact Us -** You may call us at the telephone number listed on the front of this statement.

**Updating your contact information-** We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

**Deposit agreement -** When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

**Electronic transfers: In case of errors or questions about your electronic transfers-** If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

**Reporting other problems -** You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

**Direct deposits -** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and   Equal Housing Lender



**Bank of America**

ARI B TEMAN   |   Account # 4830 6661 5580   |   February 22, 2019 to March 22, 2019

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 03/04/19 | Online Banking transfer from CHK 8085 Confirmation# 1274710970 | 571.86 |
| 03/18/19 | Online Banking transfer from CHK 8085 Confirmation# 2292944266 | 1,900.00 |
| 03/22/19 | Online Banking transfer from CHK 8085 Confirmation# 5326952341 | 1,800.00 |
| **Total deposits and other additions** | | **$4,271.86** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 02/22/19 | Zelle Transfer Conf# 5e5377a33; Nachshon Engle | -390.00 |
| 02/27/19 | Zelle Transfer Conf# 12ca85128; KEVIN | -40.00 |
| 02/27/19 | Zelle Transfer Conf# 92e478f42; KEVIN | -10.00 |
| 03/04/19 | Zelle Transfer Conf# 42c727d2e; yoseff shachor | -573.86 |
| 03/05/19 | Zelle Transfer Conf# 102f47973; Nachshon Engle | -180.00 |
| 03/05/19 | Zelle Transfer Conf# 2db89b750; FRANCIS | -60.00 |
| 03/13/19 | FLATIRONFAMILYME DES:FLATIRONFA ID:FLATIRONFAMILYM INDN:FLATIRON FAMILY MEDICA CO ID:1800948598 CCD | -50.00 |
| 03/15/19 | Zelle Transfer Conf# 5ff1fb3c9; Orosz, Thomas | -900.00 |
| 03/18/19 | Zelle Transfer Conf# fb4466f40; KEVIN | -62.50 |
| 03/19/19 | CVS/PHARMACY # 03/19 #000753159 PURCHASE CVS/PHARMACY #05   Miami        FL | -4.26 |
| 03/20/19 | CHECKCARD  0318 17 RESTAURANT . MIAMI BEACH  FL 24765799078030031070374 | -46.99 |
| 03/20/19 | CHECKCARD  0319 VENMO 855-812-4430 NY 24493989078602113370702 | -155.00 |
| 03/20/19 | CHECKCARD  0319 SQ *KETAMINE HEALTH CORAL GABLES FL 24492159078741392983081 | -500.00 |
| 03/20/19 | CHECKCARD  0319 LIME FRESH MEXICAN GRIL MIAMI BEACH  FL 24428069079001201212985 | -11.27 |
| 03/20/19 | FPL DIRECT DEBIT DES:ELEC PYMT  ID:8238015302 WEBI  INDN:ARI TEMAN         CO ID:3590247775 WEB | -90.24 |
| 03/21/19 | ZEYTUNA      03/21 #000041226 PURCHASE ZEYTUNA        NEW YORK    NY | -10.19 |

*continued on the next page*

Are you on track for
the retirement you want?
Run the numbers at merrilledge.com/Learn.



Bank of America Corporation

Merrill Lynch is the marketing name for Merrill Lynch Wealth Management, and Merrill Edge®, both of which are made available through Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"). Merrill Edge is available through MLPF&S, and consists of the Merrill Edge Advisory Center (investment guidance) and self-directed online investing. Merrill Lynch makes available products and services offered by MLPF&S and other subsidiaries of Bank of America Corporation ("BofA Corp").
Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of BofA Corp.
Investment products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|

SSM-11-18-0530.C | ARK.MMY8

ARI B TEMAN  |  Account # 4830 6661 5580  |  February 22, 2019 to March 22, 2019

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|--------|
| 03/21/19 | Zelle Transfer Conf# 80ecc7628; Orosz, Thomas | -80.00 |
| 03/22/19 | CHECKCARD  0320 5GUYS 0459 QSR MIAMI BEACH  FL 24445009080500251104903 | -8.93 |
| 03/22/19 | CHECKCARD  0321 NY KETAMINE MEDICAL PR NEW YORK     NY 24692169081100120486085 | -375.00 |
| 03/22/19 | Zelle Transfer Conf# a4ca43e9f; Orosz, Thomas | -900.00 |
| 03/22/19 | Zelle Transfer Conf# f3121c692; Alex B. integrator | -980.00 |
| 03/22/19 | CVS/PHARMACY #  03/22 #000238684 PURCHASE CVS/PHARMACY #02  NEW YORK      NY | -3.50 |
| **Total withdrawals and other subtractions** | | **-$5,431.74** |

## Service fees

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 03/22/19 | Monthly Maintenance Fee | -12.00 |
| **Total service fees** | | **-$12.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

SDNY_000913

A-1645



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

Customer service: 1.800.432.1000

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ARI B TEMAN
106 W 32ND ST 2D15
NEW YORK, NY  10001-0074

# Your Adv Plus Banking

for January 25, 2019 to February 21, 2019

**ARI B TEMAN**

Account number: 4830 6661 5580

## Account summary

| | |
|---|---|
| Beginning balance on January 25, 2019 | $2,177.08 |
| Deposits and other additions | 8,570.00 |
| Withdrawals and other subtractions | -8,842.83 |
| Checks | -0.00 |
| Service fees | -12.00 |
| **Ending balance on February 21, 2019** | **$1,892.25** |

SDNY_000914

PULL: B   CYCLE: 15   SPEC: E   DELIVERY: E   TYPE:   IMAGE: I   BC: NY

ARI B TEMAN   |   Account # 4830 6661 5580   |   January 25, 2019 to February 21, 2019

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- – Tell us your name and account number.
- – Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- – Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2019 Bank of America Corporation



Bank of America, N.A. Member FDIC and      Equal Housing Lender

A-1647



ARI B TEMAN   |   Account # 4830 6661 5580   |   January 25, 2019 to February 21, 2019

## Deposits and other additions

| Date | Description | Amount |
|------|-------------|--------|
| 02/13/19 | Online Banking transfer from CHK 8085 Confirmation# 3306981306 | 820.00 |
| 02/20/19 | Online Banking transfer from CHK 8085 Confirmation# 7167602125 | 6,500.00 |
| 02/20/19 | Online Banking transfer from CHK 8085 Confirmation# 5167611154 | 1,250.00 |
| **Total deposits and other additions** | | **$8,570.00** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 01/28/19 | FPL DIRECT DEBIT DES:ELEC PYMT  ID:8238015302 WEBI  INDN:ARI TEMAN          CO ID:3590247775 WEB | -66.31 |
| 02/11/19 | Zelle Transfer Conf# fc1b275c0; MILTON | -315.00 |
| 02/11/19 | Zelle Transfer Conf# b25cc8378; MILTON | -250.00 |
| 02/11/19 | Zelle Transfer Conf# ffe83168b; Donnell. integrator | -120.00 |
| 02/13/19 | Zelle Transfer Conf# def298cb5; Yaakov Plotkin | -450.00 |
| 02/13/19 | FLATIRONFAMILYME DES:FLATIRONFA ID:FLATIRONFAMILYM  INDN:FLATIRON FAMILY MEDICA CO ID:1800948598 CCD | -50.00 |
| 02/19/19 | Zelle Transfer Conf# b047b1132; MILTON | -521.52 |
| 02/19/19 | Zelle Transfer Conf# c362777b1; Jean-Laurent, Phillip | -70.00 |
| 02/19/19 | Zelle Transfer Conf# 6f620779d; Nachshon Engle | -360.00 |
| 02/20/19 | Online Banking transfer to CHK 0351 Confirmation# 5267608415 | -6,500.00 |
| 02/20/19 | Zelle Transfer Conf# a0a7dbfec; Jean-Laurent, Phillip | -140.00 |
| **Total withdrawals and other subtractions** | | **-$8,842.83** |

A-1648

ARI B TEMAN   |   Account # 4830 6661 5580   |   January 25, 2019 to February 21, 2019

## Service fees

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 02/21/19 | Monthly Maintenance Fee | -12.00 |
| **Total service fees** | | **-$12.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*



04/19/2019 14:37:07.95
Surveillance
LINCOLN-ROAD-108J75

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity, for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America. Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE

SDNY_000016

GOVERNMENT
EXHIBIT
110
19 Cr. 696 (PAE)



04/19/2019 14:37:43.95
Surveillance
LINCOLN-ROAD-108175

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America. Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE



04/19/2019 14:39:18.45
Surveillance
LINCOLN-ROAD-108175

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America. Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE

A-1652



Case 1:19-cr-00696-PAE    Document 128-10    Filed 05/01/20    Page 1 of

04/19/2019 18:00:00.03
LT 1
Surveillance
LINCOLN-ROAD-108175

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America. Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE

**GOVERNMENT EXHIBIT 111**
19 Cr. 696 (PAE)

SDNY_000014

A-1653



04/19/2019 18:05:03.85
LT 1
Surveillance
LINCOLN-ROAD-108175

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America. Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE                         SDNY_000019



Case 1:19-cr-00696-PAE    Document 128-10    Filed 05/01/20    Page 3 of

04/19/2019 18:05:34.89
LT 1
Surveillance
LINCOLN-ROAD-108175

The images contained in this transmission were generated for the internal use of Bank of
America and are being shared with law enforcement solely for use by law enforcement.
Written consent must be obtained from Bank of America prior to sharing an image with a
third party.  Bank of America makes no representation or warranty of any kind with respect
to any photograph, film, videotape or digital image and specifically disclaims liability
to any person or entity for all damages, losses, claims, or expenses (including attorney's
fees) arising from the furnishing or subsequent use, distribution or publication of any
photograph, film, videotape or digital image provided to law enforcement by Bank of
America.  Any use or further distribution of this photograph, film, videotape or digital
image by any party not employed directly by Bank of America is the sole responsibility of
the user/distributor. Bank of America will only certify or attest to records or images
provided under valid legal process.

SENSITIVE

SDNY_000015

A-1655



Case 1:19-cr-00696-PAE    Document 128-11    Filed 05/01/20    Page 1 of

05/08/2019 15:04:05.94
LT 3
Surveillance
ONE-PENN-PLAZA-144011

The images contained in this transmission were generated for the internal use of Bank of
America and are being shared with law enforcement solely for use by law enforcement.
Written consent must be obtained from Bank of America prior to sharing an image with a
third party.  Bank of America makes no representation or warranty of any kind with respect
to any photograph, film, videotape or digital image and specifically disclaims liability
to any person or entity for all damages, losses, claims, or expenses (including attorney's
fees) arising from the furnishing or subsequent use, distribution or publication of any
photograph, film, videotape or digital image provided to law enforcement by Bank of
America.  Any use or further distribution of this photograph, film, videotape or digital
image by any party not employed directly by Bank of America is the sole responsibility of
the user/distributor. Bank of America will only certify or attest to records or images
provided under valid legal process.

SENSITIVE

**GOVERNMENT
EXHIBIT
112**
19 Cr. 696 (PAE)

SDNY_000022

A-1656



Case 1:19-cr-00696-PAE     Document 128-11     Filed 05/01/20     Page 2 of

05/08/2019 15:04:09.45
LT 3
Surveillance
ONE-PENN-PLAZA-144011

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party. Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America.  Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE

SDNY_000020

A-1657



05/08/2019 15:04:20.96
LT 3
Surveillance
ONE-PENN-PLAZA-144011

The images contained in this transmission were generated for the internal use of Bank of America and are being shared with law enforcement solely for use by law enforcement. Written consent must be obtained from Bank of America prior to sharing an image with a third party.  Bank of America makes no representation or warranty of any kind with respect to any photograph, film, videotape or digital image and specifically disclaims liability to any person or entity for all damages, losses, claims, or expenses (including attorney's fees) arising from the furnishing or subsequent use, distribution or publication of any photograph, film, videotape or digital image provided to law enforcement by Bank of America.  Any use or further distribution of this photograph, film, videotape or digital image by any party not employed directly by Bank of America is the sole responsibility of the user/distributor. Bank of America will only certify or attest to records or images provided under valid legal process.

SENSITIVE

SDNY_000021

A-1657.1

Data Start Date: 11/8/2018    Data End Date: 1/7/2020

Account No: 483067038085    Check No: [  ]    Region: ALL    Submit

Previous Next

| Report Date | Dollar Amount | Reason | Check Seq (Model, NE Only) | Deposit Seq (Model, NE Only) | Deposit Date | Region | Deposit Acct (Model, NE Only) | Check No (NE Only) | Micr Acct (NE Only) |
|---|---|---|---|---|---|---|---|---|---|
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350620195 | 0047521007320 | 4/19/2019 | NorthEast | 483067038085 | 41905 | 782121672 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350620199 | 0047521007440 | 4/19/2019 | NorthEast | 483067038085 | 41920 | 833579100 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622000 | 0047521007460 | 4/19/2019 | NorthEast | 483067038085 | 41914 | 833579100 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622201 | 0047521007480 | 4/19/2019 | NorthEast | 483067038085 | 41908 | 833579100 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622208 | 0047521007330 | 4/19/2019 | NorthEast | 483067038085 | 41902 | 782121672 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622216 | 0047521007470 | 4/19/2019 | NorthEast | 483067038085 | 41911 | 833579100 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622217 | 0047521007430 | 4/19/2019 | NorthEast | 483067038085 | 41923 | 833579100 |
| 05-07-2019 | $5,000.00 | RCC WARRANTY BREACH | 0020350622218 | 0047521007450 | 4/19/2019 | NorthEast | 483067038085 | 41917 | 833579100 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350621970 | 0047521007360 | 4/19/2019 | NorthEast | 483067038085 | 41903 | 782121672 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622202 | 0047521007520 | 4/19/2019 | NorthEast | 483067038085 | 41915 | 833579100 |

| Report Date | Dollar Amount | Reason | Check Seq (Model, NE Only) | Deposit Seq (Model, NE Only) | Deposit Date | Region | Deposit Acct (Model, NE Only) | Check No (NE Only) | Micr Acct (NE Only) |
|---|---|---|---|---|---|---|---|---|---|
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622203 | 0047521007530 | 4/19/2019 | NorthEast | 483067038085 | 41912 | 833579100 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622204 | 0047521007540 | 4/19/2019 | NorthEast | 483067038085 | 41909 | 833579100 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622207 | 0047521007310 | 4/19/2019 | NorthEast | 483067038085 | 41906 | 782121672 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622213 | 0047521007510 | 4/19/2019 | NorthEast | 483067038085 | 41918 | 833579100 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622214 | 0047521007500 | 4/19/2019 | NorthEast | 483067038085 | 41921 | 833579100 |
| 05-07-2019 | $10,000.00 | RCC WARRANTY BREACH | 0020350622215 | 0047521007490 | 4/19/2019 | NorthEast | 483067038085 | 41924 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 0020350621996 | 0047521007350 | 4/19/2019 | NorthEast | 483067038085 | 41901 | 782121672 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 0020350622198 | 0047521007410 | 4/19/2019 | NorthEast | 483067038085 | 41910 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 0020350622205 | 0047521007420 | 4/19/2019 | NorthEast | 483067038085 | 41907 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 0020350622206 | 0047521007340 | 4/19/2019 | NorthEast | 483067038085 | 41904 | 782121672 |

GOVERNMENT EXHIBIT 114
19 Cr. 696 (PAE)

A-1659

Case 1:19-cr-00696-PAE    Document 128-12    Filed 05/01/20    Page 2 of 2

Previous Next

| Report Date | Dollar Amount | Reason | Check Seq (Model, NE Only) | Deposit Seq (Model, NE Only) | Deposit Date | Region | Deposit Acct (Model, NE Only) | Check No (NE Only) | Micr Acct (NE Only) |
|---|---|---|---|---|---|---|---|---|---|
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 002035062209 | 004752100738 | 04-19-2019 | NorthEast | 483067038085 | 41913 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 002035062210 | 004752100738 | 04-19-2019 | NorthEast | 483067038085 | 41919 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 002035062211 | 000000000000 | | NorthEast | 483067038085 | 41922 | 833579100 |
| 05-07-2019 | $18,000.00 | RCC WARRANTY BREACH | 002035062212 | 004752100739 | 04-19-2019 | NorthEast | 483067038085 | 41916 | 833579100 |
| 04-24-2019 | $5,000.00 | COUNTERFEIT CHECK | 002035045680 | 004752100730 | 04-19-2019 | NorthEast | 483067038085 | 141903 | 1503226525 |
| 04-24-2019 | $10,000.00 | COUNTERFEIT CHECK | 002035045681 | 004752100728 | 04-19-2019 | NorthEast | 483067038085 | 141902 | 1503226525 |
| 04-24-2019 | $18,000.00 | COUNTERFEIT CHECK | 002035045679 | 004752100730 | 04-19-2019 | NorthEast | 483067038085 | 141901 | 1503226525 |
| 04-02-2019 | $18,000.00 | INSUFFICIENT FUNDS | 002033263231 | 007852069719 | 03-28-2019 | NorthEast | 483067038085 | 1 | 1502968293 |
| 04-02-2019 | $18,000.00 | COUNTERFEIT CHECK | 002033263229 | 007852086051 | 03-28-2019 | NorthEast | 483067038085 | 1 | 1503226525 |

SDNY_000951



A-1660

CHASE

## Business Signature Card

ACCOUNT TITLE ("DEPOSITOR")
ABJ LENOX, LLC

BUSINESS ADDRESS
347 PLEASANT AVE APT 1A

NEW YORK, NY 10035-4370

ACCOUNT NUMBER 833579100
ACCOUNT TYPE Chase Total Business Checking
TAXPAYER ID NUMBER 81-2638745
DATE OPENED 05/18/2016
FORM OF BUSINESS Limited Liability Company - Member Managed (LLC)
ISSUED BY JPMorgan Chase Bank, N.A. ( 802 )
Yellowstone Blvd - 922
LARISA GAVRIELOV
(718) 459-4572
05/18/2016

| PRIMARY ID TYPE | PRIMARY ID NUMBER | ISSUER | ISSUANCE DATE | EXPIRATION DATE |
|---|---|---|---|---|
| Website Documentation | 4944167 | NY | 05/10/2016 | |
| **SECONDARY ID TYPE** | **SECONDARY ID NUMBER** | **ISSUER** | **ISSUANCE DATE** | **EXPIRATION DATE** |
| None | | | | |

**ACKNOWLEDGEMENT** - By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the "Bank"). The Depositor represents and warrants that (i) the signatures appearing below are genuine or facsimile signatures of the person(s) authorized to transact business and (ii) all necessary actions or formalities, where necessary, have been taken to authorize the named person(s) to so act. The Bank is entitled to rely on the authority of the named person(s) until written revocation of such authority is received by the Bank. The Depositor certifies that the information provided to the Bank is true to the best of its knowledge and authorizes the Bank, at its discretion, to obtain credit reports on the Depositor. The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, and agree to be bound by the terms and conditions contained therein as amended from time to time.

** When you give us your mobile phone number, we have your permission to contact you at that number about all your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences.

| | PRINTED NAME | **TELEPHONE NUMBER | TAXPAYER ID # | TITLE | DATE | SIGNATURE |
|---|---|---|---|---|---|---|
| 1) | BENJAMIN SOLEIMANI | **(516) 669-6250 | [redacted] | Member | 05/27/16 | [signature] |
| 2) | JOSEPH SOLEIMANI | **(516) 509-9674 | [redacted] | Member | 05/27/16 | [signature] |
| 3) | | | | | | |
| 4) | | | | | | |

Page 1 of 1

SB1087342-F1

GOVERNMENT EXHIBIT 121
19 Cr. 696 (PAE)

4

A-1661

## CHASE

JPMorgan Chase Bank, N.A.
P O Box 182061
Columbus, OH 43218 - 2051

March 30, 2019 through April 30, 2019
Account Number:  **000000833579100**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | **1-877-425-8100** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00031627 DRE 802 219 12319 NNNNNNNNNNN  1 000000000 D2 0000
ABJ LENOX, LLC
1652 PARK AVE STE LL
NEW YORK NY 10035-4643

---

### CHECKING SUMMARY    Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $260,484.85 |
| Deposits and Additions | 26 | 140,941.86 |
| Checks Paid | 36 | -264,077.34 |
| Electronic Withdrawals | 8 | -90,389.64 |
| **Ending Balance** | **70** | **$46,959.73** |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

---

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Abj Properties,  Settlement 000005682627993 CCD ID: 9000337317 | $10,807.78 |
| 04/01 | Santander US Bcs (617)514  1777602.22   CCD ID: D231237295 | 7,963.65 |
| 04/02 | Abj Properties,  Settlement 000005698741773 CCD ID: 9000337317 | 20,907.42 |
| 04/03 | Abj Properties,  Settlement 000005721697689 CCD ID: 9000337317 | 15,201.93 |
| 04/04 | Abj Properties,  Settlement 000005734505589 CCD ID: 9000337317 | 1,700.00 |
| 04/04 | Appfolio Inc  8666481536          PPD ID: 3260359894 | 250.00 |
| 04/05 | Remote Online Deposit      12 | 13,251.06 |
| 04/05 | Deposit    1851779926 | 10,000.00 |
| 04/05 | Appfolio Inc  8666481536          PPD ID: 3260359894 | 1,360.00 |
| 04/05 | Abj Properties,  Settlement 000005744059725 CCD ID: 9000337317 | 859.45 |
| 04/08 | Abj Properties,  Settlement 000005751793985 CCD ID: 9000337317 | 7,109.81 |
| 04/08 | Appfolio Inc  8666481536          PPD ID: 3260359894 | 1,368.71 |
| 04/09 | Remote Online Deposit      75 | 1,178.89 |
| 04/09 | Abj Properties,  Settlement 000005765022585 CCD ID: 9000337317 | 16.00 |
| 04/10 | Remote Online Deposit      12 | 10,609.00 |
| 04/10 | Abj Properties,  Settlement 000005772773493 CCD ID: 9000337317 | 5,788.33 |
| 04/12 | Abj Properties,  Settlement 000005784276441 CCD ID: 9000337317 | 1,469.59 |

Page 1 of 4



GOVERNMENT
EXHIBIT
122
19 Cr. 696 (PAE)

A-1662

## CHASE

March 30, 2019 through April 30, 2019
Account Number   000000833579100

### DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/17 | Deposit    1830535473 | 1,212.00 |
| 04/18 | Remote Online Deposit        12 | 12,187.98 |
| 04/18 | Remote Online Deposit        12 | 780.00 |
| 04/18 | Abj Properties,  Settlement 000005813462205 CCD ID: 9000337317 | 614.00 |
| 04/25 | Remote Online Deposit        12 | 4,735.85 |
| 04/25 | Abj Properties,  Settlement 000005837796769 CCD ID: 9000337317 | 1,504.50 |
| 04/26 | Abj Properties,  Settlement 000005842268921 CCD ID: 9000337317 | 1,034.45 |
| 04/29 | Abj Properties,  Settlement 000005847181117 CCD ID: 9000337317 | 1,375.00 |
| 04/30 | Abj Properties,  Settlement 000005853054741 CCD ID: 9000337317 | 7,656.46 |
| **Total Deposits and Additions** | | **$140,941.86** |

### CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1548   ^ | | 04/09 | $157.86 |
| 1559  * ^ | | 04/16 | 148.85 |
| 1560   ^ | | 04/05 | 2,200.00 |
| 1568  * ^ | | 04/02 | 602.00 |
| 1569   ^ | | 04/09 | 108.87 |
| 1570   ^ | | 04/03 | 5,720.00 |
| 1572  * ^ | | 04/09 | 2,175.00 |
| 1574  * ^ | | 04/11 | 9,500.00 |
| 1575   ^ | | 04/22 | 5,192.17 |
| 1576   ^ | | 04/16 | 1,736.56 |
| 1577   ^ | | 04/17 | 50.00 |
| 1578   ^ | | 04/17 | 50.00 |
| 1579   ^ | | 04/16 | 299.22 |
| 1580   ^ | | 04/15 | 15,600.00 |
| 1581   ^ | | 04/15 | 18,400.00 |
| 1582   ^ | | 04/19 | 150.00 |
| 1583   ^ | | 04/24 | 807.00 |
| 1588  * ^ | | 04/30 | 3,181.81 |
| 41907  * ^ | | 04/19 | 18,000.00 |
| 41908   ^ | | 04/19 | 5,000.00 |
| 41909   ^ | | 04/19 | 10,000.00 |
| 41910   ^ | | 04/19 | 18,000.00 |
| 41911   ^ | | 04/19 | 5,000.00 |
| 41912   ^ | | 04/19 | 10,000.00 |
| 41913   ^ | | 04/19 | 18,000.00 |
| 41914   ^ | | 04/19 | 5,000.00 |
| 41915   ^ | | 04/19 | 10,000.00 |
| 41916   ^ | | 04/19 | 18,000.00 |
| 41917   ^ | | 04/19 | 5,000.00 |
| 41918   ^ | | 04/19 | 10,000.00 |

A-1663

## CHASE ⬡

March 30, 2019 through April 30, 2019
Account Number    000000833579100

### CHECKS PAID  *(continued)*

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 41919 ^ | | 04/19 | 18,000.00 |
| 41920 ^ | | 04/19 | 5,000.00 |
| 41921 ^ | | 04/19 | 10,000.00 |
| 41922 ^ | | 04/19 | 18,000.00 |
| 41923 ^ | | 04/19 | 5,000.00 |
| 41924 ^ | | 04/19 | 10,000.00 |
| **Total Checks Paid** | | | **$264,077.34** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

### ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Abj Properties, Settlement 000005690701921 CCD ID: 9000286874 | $17,699.54 |
| 04/04 | Abj Properties, Return    000005733119169 CCD ID: 9000337317 | 1,000.00 |
| 04/10 | San Cre Loan    Payment    PPD ID: 1111350490 | 63,365.26 |
| 04/11 | Abj Properties, Settlement 000005783651073 CCD ID: 9000286874 | 6,341.54 |
| 04/16 | Nyc Dept of Fin  Nycdof Ptx C    77996409 CCD ID: 1136400434 | 993.56 |
| 04/16 | Nyc Dept of Fin  Nycdof Ptx C    77995873 CCD ID: 1136400434 | 527.35 |
| 04/16 | Nyc Dept of Fin  Nycdof Ptx C    77996039 CCD ID: 1136400434 | 431.46 |
| 04/17 | Abj Properties, Settlement 000005808858025 CCD ID: 9000286874 | 30.93 |
| **Total Electronic Withdrawals** | | **$90,389.64** |

### DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 04/01 | $261,556.74 | 04/10 | 275,828.35 | 04/19 | 39,834.45 |
| 04/02 | 281,862.16 | 04/11 | 259,986.81 | 04/22 | 34,642.28 |
| 04/03 | 291,344.09 | 04/12 | 261,456.40 | 04/24 | 33,835.28 |
| 04/04 | 292,294.09 | 04/15 | 227,456.40 | 04/24 | 40,075.63 |
| 04/05 | 315,564.60 | 04/16 | 223,321.40 | 04/26 | 41,110.08 |
| 04/08 | 324,043.12 | 04/17 | 224,402.47 | 04/29 | 42,485.08 |
| 04/09 | 322,796.28 | 04/18 | 237,984.45 | 04/30 | 46,959.73 |

### SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

Page 3 of 4

Case 1:19-cr-00696-PAE   Document 128-14   Filed 05/01/20   Page 4 of 8



March 30, 2019 through April 30, 2019

Account Number    **000000833579100**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 4 of 4

A-1665

## CHASE

JPMorgan Chase Bank, N.A
P O Box 182061
Columbus, OH 43218-2051

May 01, 2019 through May 31, 2019
Account Number:  **000000833579100**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **www.Chase.com** |
| Service Center: | **1-877-425-8100** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00034535 DRE 802 219 15619 NNNNNNNNNN  1 000000000 D2 0000
ABJ LENOX, LLC
1652 PARK AVE STE LL
NEW YORK NY 10035-4643



### CHECKING SUMMARY

Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $46,959.73 |
| Deposits and Additions | 21 | 223,988.06 |
| Checks Paid | 1 | -198.75 |
| Electronic Withdrawals | 1 | -13,504.39 |
| Other Withdrawals | 2 | -257,244.65 |
| Ending Balance | 25 | $0.00 |

Your Chase Platinum Business Checking account provides:
• No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
• 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
• $25,000 in cash deposits per statement cycle
• Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account
Agreement for more information.

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Santander US Bos (617)514   1784803.22    CCD ID: D231237295 | $7,791.50 |
| 05/01 | Abj Properties, Settlement 000005862970985 CCD ID: 9000337317 | 7,006.19 |
| 05/03 | Orig CO Name Abj Properties,        Orig ID:9000337317 Desc Date 050219 CO Entry<br>Descr Settlementsec:CCD    Traceit:0815035080779055 Eed:190502  Ind<br>ID:0000058759680057        Ind Name:Abj Properties, Inc. Tm: 1228077955Tc | 11,190.37 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |

Page 1 of 4

**SB1102121-F1**

A-1666

**CHASE** ⬡

May 01, 2019 through May 31, 2019
Account Number     000000833579100

## DEPOSITS AND ADDITIONS  *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| **Total Deposits and Additions** | | **$223,988.06** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1573  ^ | | 05/01 | $198.75 |
| **Total Checks Paid** | | | **$198.75** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/01 | Abj Properties,  Settlement 000005871761865 CCD ID: 9000286874 | $13,504.39 |
| **Total Electronic Withdrawals** | | **$13,504.39** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/02 | 05/02 Withdrawal | $59,244.65 |
| 05/07 | 05/07 Withdrawal | 198,000.00 |
| **Total Other Withdrawals** | | **$257,244.65** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 05/01 | $48,054.28 |
| 05/02 | -11,190.37 |
| 05/03 | 0.00 |
| 05/06 | 198,000.00 |
| 05/07 | 0.00 |

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

Page 2 of 4



May 01, 2019 through May 31, 2019

Account Number    **000000833579100**

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**  Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 3 of 4

A-1668

**CHASE** ⬡

May 01, 2019 through May 31, 2019
Account Number     **000000833579100**

This Page Intentionally Left Blank

Page 4 of 4

**CHASE**

**Business Signature Card**

ACCOUNT TITLE ("DEPOSITOR"):
ABU MILANO, LLC

ACCOUNT NUMBER  752121672
ACCOUNT TYPE  Chase Total Business Checking
TAXPAYER ID NUMBER  47-5534975
DATE OPENED  11/16/2015
FORM OF BUSINESS  Limited Liability Company - Member Managed (LLC)
ISSUED BY  JPMorgan Chase Bank, N.A (802 )

BUSINESS ADDRESS
347 PLEASANT AVE APT 1A

NEW YORK, NY 10035-4370

Yellowstone Blvd - 922
LARISA GAVREI-OV
(718) 459-4572
11/16/2015

| PRIMARY ID TYPE | PRIMARY ID NUMBER | ISSUER | ISSUANCE DATE | EXPIRATION DATE |
|---|---|---|---|---|
| Website Documentation | 4843417 | NY | 11/02/2015 | |
| SECONDARY ID TYPE | SECONDARY ID NUMBER | ISSUER | ISSUANCE DATE | EXPIRATION DATE |
| None | | | | |

ACKNOWLEDGEMENT - By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the "Bank"). The Depositor represents and warrants that (i) the signatures appearing below are genuine or facsimile signatures of the person(s) authorized to transact business and (ii) all necessary actions or formalities, where necessary, have been taken to authorize the named person(s) to do so. This Bank is entitled to rely on the authority of the named person(s) until written revocation of such authority is received by the Bank. The Depositor certifies that the information provided to the Bank is true to the best of its knowledge and authorizes the Bank, at its discretion, to obtain credit reports on the Depositor. The Depositor acknowledges receipt of the Bank's Deposit Account Agreement or other applicable account agreement, which include all provisions that apply to this deposit account, and other agreements and service terms for account analysis and other treasury management services (if applicable), and agree to be bound by the terms and conditions contained therein as amended from time to time.

** When you give us your mobile phone number, we have your permission to contact you at that number about all your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences.

| | PRINTED NAME | **TELEPHONE NUMBER | TAXPAYER ID # | TITLE | DATE | SIGNATURE |
|---|---|---|---|---|---|---|
| 1) | JOSEPH SOLEIMANI | **(396) 500-9624 | | Member | 11/8/15 | |
| 2) | BENJAMIN SOLEIMANI | **(516) 509-8250 | | Member | 11/7/15 | |
| 3) | | | | | | |
| 4) | | | | | | |

Page 1 of 1

SB1087342-F1

GOVERNMENT
EXHIBIT
123
19 Cr. 696 (PAE)

9

SENSITIVE

SDNY_000196

A-1670



**CHASE**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

March 30, 2019 through April 30, 2019
Account Number: **000000782121672**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls | 1-713-262-1679 |

00027734 DRE 802 219 12319 NNNNNNNNNNN  1 000000000 D2 0000
ABJ MILANO, LLC
1652 PARK AVE STE LL
NEW YORK NY 10035-4643



### CHECKING SUMMARY
Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $292,435.14 |
| Deposits and Additions | 25 | 163,521.17 |
| Checks Paid | 30 | -141,681.83 |
| Electronic Withdrawals | 4 | -91,483.70 |
| Other Withdrawals | 1 | -1,860.00 |
| Ending Balance | 60 | $220,930.78 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Abj Properties,  Settlement 000005582628017 CCD ID: 9000337317 | $6,211.62 |
| 04/02 | Abj Properties,  Settlement 000005698741817 CCD ID: 9000337317 | 29,078.45 |
| 04/03 | Abj Properties,  Settlement 000005721258741 CCD ID: 9000337317 | 14,151.50 |
| 04/04 | Abj Properties,  Settlement 000005731691381 CCD ID: 9000337317 | 7,414.89 |
| 04/04 | Remote Online Deposit        13 | 15,436.63 |
| 04/05 | Deposit      1830535470 | 1,025.05 |
| 04/05 | Abj Properties,  Settlement 000005742600261 CCD ID: 9000337317 | 2,947.71 |
| 04/08 | Abj Properties,  Settlement 000005752466609 CCD ID: 9000337317 | 4,246.50 |
| 04/09 | Remote Online Deposit        78 | 2,084.92 |
| 04/09 | Abj Properties,  Settlement 000005761663805 CCD ID: 9000337317 | 3,255.08 |
| 04/09 | Appfolio Inc   8566481536          PPD ID: 3260359894 | 1,008.75 |
| 04/10 | Remote Online Deposit        13 | 12,000.00 |
| 04/10 | Abj Properties,  Settlement 000005777354133 CCD ID: 9000337317 | 100.00 |
| 04/11 | Abj Properties,  Settlement 000005778420761 CCD ID: 9000337317 | 992.80 |
| 04/16 | Abj Properties,  Settlement 000005795246957 CCD ID: 9000337317 | 993.00 |
| 04/18 | Remote Online Deposit        13 | 27,671.31 |

Page 1 of 4



**GOVERNMENT
EXHIBIT
124**
19 Cr. 696 (PAE)

SDNY_002380        **395**

A-1671

CHASE

March 30, 2019 through April 30, 2019
Account Number    000000782121672

## DEPOSITS AND ADDITIONS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/18 | Deposit     1830535476 | 2,785.00 |
| 04/19 | Abj Properties,  Settlement 000005813839865 CCD ID: 9000337317 | 1,788.00 |
| 04/23 | Abj Properties,  Settlement 000005823704813 CCD ID: 9000337317 | 1,150.00 |
| 04/25 | Remote Online Deposit          13 | 14,815.46 |
| 04/25 | Abj Properties,  Settlement 000005837464937 CCD ID: 9000337317 | 4,550.00 |
| 04/26 | Abj Properties,  Settlement 000005840899149 CCD ID: 9000337317 | 1,961.89 |
| 04/29 | Abj Properties,  Settlement 000005846138001 CCD ID: 9000337317 | 1,405.54 |
| 04/29 | The City of New  Payments  20190425678234    ID: 7136400434 | 1,301.99 |
| 04/30 | Abj Properties,  Settlement 000005853054825 CCD ID: 9000337317 | 5,145.08 |
| **Total Deposits and Additions** | | **$163,521.17** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1619 ^ | | 04/09 | $288.50 |
| 1630 * ^ | | 04/16 | 92.49 |
| 1642 * ^ | | 04/02 | 1,653.00 |
| 1643 ^ | | 04/09 | 8,200.11 |
| 1646 * ^ | | 04/04 | 300.65 |
| 1648 * ^ | | 04/12 | 612.01 |
| 1650 * ^ | | 04/02 | 1,000.00 |
| 1651 ^ | | 04/02 | 4,500.00 |
| 1652 ^ | | 04/04 | 33.00 |
| 1653 ^ | | 04/09 | 310.28 |
| 1654 ^ | | 04/08 | 23.52 |
| 1655 ^ | | 04/05 | 1,300.00 |
| 1658 * ^ | | 04/23 | 163.31 |
| 1659 ^ | | 04/11 | 13,500.00 |
| 1660 ^ | | 04/11 | 10,500.00 |
| 1661 ^ | | 04/11 | 9,500.00 |
| 1662 ^ | | 04/15 | 934.14 |
| 1663 ^ | | 04/15 | 1,000.00 |
| 1664 ^ | | 04/22 | 1,197.65 |
| 1665 ^ | | 04/16 | 612.28 |
| 1666 ^ | | 04/15 | 15,200.00 |
| 1668 * ^ | | 04/23 | 1,904.25 |
| 1669 ^ | | 04/24 | 546.00 |
| 1676 * ^ | | 04/30 | 2,310.64 |
| 41901 * ^ | | 04/19 | 18,000.00 |
| 41902 ^ | | 04/19 | 5,000.00 |
| 41903 ^ | | 04/19 | 10,000.00 |
| 41904 ^ | | 04/19 | 18,000.00 |
| 41905 ^ | | 04/19 | 5,000.00 |
| 41906 ^ | | 04/19 | 10,000.00 |
| **Total Checks Paid** | | | **$141,681.83** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

Page 2 of 4

A-1672

## CHASE

March 30, 2019 through April 30, 2019
Account Number  **000000782121672**



### ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Abj Properties,  Settlement 000005690702037 CCD ID: 9000286874 | $46,114.81 |
| 04/05 | 04/05 Online Transfer 8104507670 To Milano - Customers ###3778 Transaction #: 8104507670 | 37,340.37 |
| 04/11 | Abj Properties,  Settlement 000005783651137 CCD ID: 9000286874 | 7,982.40 |
| 04/17 | Abj Properties,  Settlement 000005808858209 CCD ID: 9000286874 | 46.12 |
| **Total Electronic Withdrawals** | | **$91,483.70** |

### OTHER WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 04/29 | Deposited Item Returned    Frozen/Blocked 099007057 Items00001Ck# 0000001003         Dep Amt0001481546 Date042519Ck Amt0000186000 | # of Dep | $1,860.00 |
| **Total Other Withdrawals** | | | **$1,860.00** |

### DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 04/01 | $252,531.95 | 04/11 | 249,842.40 | 04/22 | 197,385.02 |
| 04/02 | 274,457.40 | 04/12 | 249,230.39 | 04/23 | 196,467.46 |
| 04/03 | 288,608.90 | 04/15 | 232,096.25 | 04/24 | 195,921.46 |
| 04/04 | 295,690.14 | 04/16 | 232,384.48 | 04/25 | 215,286.92 |
| 04/05 | 276,459.16 | 04/17 | 232,338.36 | 04/26 | 217,248.81 |
| 04/08 | 280,682.14 | 04/18 | 262,794.67 | 04/29 | 218,096.34 |
| 04/09 | 278,232.00 | 04/19 | 198,582.67 | 04/30 | 220,930.78 |
| 04/10 | 290,332.00 | | | | |

### SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

The monthly service fee was waived on your Chase Platinum Business Checking account because you maintained the required relationship balance.

### SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/UNIT | TOTAL |
|---|---|---|---|---|---|
| **Monthly Service Fee** | | | | | |
| Monthly Service Fee Waived | 0 | | | $95.00 | $0.00 |
| **No Hassle Fees** | | | | | |
| Return Item | 1 | Unlimited | 0 | $12.00 | $0.00 |
| **Other Service Charges:** | | | | | |
| **Electronic Credits** | | | | | |
| Electronic Items Deposited | 51 | Unlimited | 0 | $0.40 | $0.00 |
| Electronic Credits | 16 | Unlimited | 0 | $0.40 | $0.00 |
| **Credits** | | | | | |
| Non-Electronic Transactions | 36 | 500 | 0 | $0.40 | $0.00 |
| Branch Deposit - Immediate Verification | $3,810 | $25,000 | $0 | $0.0025 | $0.00 |
| **Subtotal Other Service Charges** | | | | | **$0.00** |

Page 3 of 4

**CHASE** 

March 30, 2019 through April 30, 2019
Account Number    **000000782121672**

## SERVICE CHARGE DETAIL *(continued)*

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/UNIT | TOTAL |
|---|---|---|---|---|---|
| **ACCOUNT 000000782121672** | | | | | |
| **No Hassle Fees** | | | | | |
| Return Item | 1 | | | | |
| **Other Service Charges:** | | | | | |
| **Electronic Credits** | | | | | |
| Electronic Items Deposited | 51 | | | | |
| Electronic Credits | 18 | | | | |
| **Credits** | | | | | |
| Non-Electronic Transactions | 36 | | | | |
| Branch Deposit - Immediate Verification | $3,810 | | | | |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

**JPMorgan Chase Bank, N.A. Member FDIC**

Page 4 of 4

A-1674

## CHASE ◯

JPMorgan Chase Bank, N.A
P O Box 182061
Columbus, OH 43218 - 2051

May 01, 2019 through May 31, 2019
Account Number:   **000000782121672**

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **www.Chase.com** |
| Service Center: | **1-877-425-8100** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00090428 DRE 802 219 15619 NNNNNNNNNN  1 000000000 D2 0000
ABJ MILANO, LLC
1652 PARK AVE STE LL
NEW YORK NY 10035-4643



---

### CHECKING SUMMARY
Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $220,930.78 |
| Deposits and Additions | 8 | 98,285.13 |
| Checks Paid | 2 | -6,307.50 |
| Electronic Withdrawals | 1 | -61,623.14 |
| Other Withdrawals | 2 | -251,285.27 |
| **Ending Balance** | **13** | **$0.00** |

Your Chase Platinum Business Checking account provides:
• No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
• 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
• $25,000 in cash deposits per statement cycle
• Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account – please refer to your Deposit Account Agreement for more information.

---

### DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Abj Properties,  Settlement 000005862971105 CCD ID: 9000337317 | $8,304.25 |
| 05/03 | Orig CO Name:Abj Properties,     Orig ID:9000337317 Desc Date:050219 CO Entry Descr Settlementsec:CCD   Trace#:091503508077956 Eed:190502  Ind ID:000005879580093     Ind Name:Abj Properties, Inc. Trn: 1228077956Tc | 23,980.88 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 18,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 10,000.00 |
| 05/06 | Reversal | 5,000.00 |
| 05/06 | Reversal | 5,000.00 |
| | **Total Deposits and Additions** | **$98,285.13** |

Page 1 of 4

A-1675

**CHASE** ⬡

May 01, 2019 through May 31, 2019
Account Number   **000000782121672**

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 1656  ^ | | 05/01 | $307.50 |
| 1671 * ^ | | 05/01 | 6,000.00 |
| **Total Checks Paid** | | | **$6,307.50** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Abj Properties, Settlement 000005871761997 CCD ID: 9000286874 | $61,623.14 |
| **Total Electronic Withdrawals** | | **$61,623.14** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/02 | 05/02 Withdrawal | $185,285.27 |
| 05/07 | 05/07 Withdrawal | 66,000.00 |
| **Total Other Withdrawals** | | **$251,285.27** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/01 | $161,304.39 |
| 05/02 | -23,980.88 |
| 05/03 | 0.00 |
| 05/06 | 66,000.00 |
| 05/07 | 0.00 |

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $95.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$95.00** |

Your service charges were waived for this statement cycle. We value your relationship, and thank you for your banking business.

## SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/UNIT | TOTAL |
|---|---|---|---|---|---|
| **Monthly Service Fee** | | | | | |
| Monthly Service Fee | 1 | | | $95.00 | $95.00 |
| **Other Service Charges:** | | | | | |
| **Electronic Credits** | | | | | |
| Electronic Credits | 1 | Unlimited | 0 | $0.40 | $0.00 |
| **Credits** | | | | | |
| Non-Electronic Transactions | 1 | 500 | 0 | $0.40 | $0.00 |
| **Subtotal Other Service Charges** | | | | | **$95.00** |

Page 2 of 4

**CHASE**

May 01, 2019 through May 31, 2019
Account Number:  000000782121672



**SERVICE CHARGE DETAIL** *(continued)*

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/UNIT | TOTAL |
|---|---|---|---|---|---|
| ACCOUNT 000000782121672 | | | | | |
| **Monthly Service Fee** | | | | | |
| Monthly Service Fee | 1 | | | | |
| **Other Service Charges:** | | | | | |
| **Electronic Credits** | | | | | |
| Electronic Credits | 1 | | | | |
| **Credits** | | | | | |
| Non-Electronic Transactions | 1 | | | | |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
• Your name and account number
• The dollar amount of the suspected error
• A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 3 of 4

A-1677

**CHASE** ⬤

May 01, 2019 through May 31, 2019
Account Number    **000000782121672**

This Page Intentionally Left Blank

Page 4 of 4

A-1678

# CHASE ✦

Mail Code TX3-7849
PO Box 659809
San Antonio, TX 78265-9109

**Questions?**
☎ 1-866-564-2262
TTY 1-800-242-7383
💻 www.chase.com
FAX 1-866-661-4125

00045 LAW 802 001 13019 NNNNNNNNNNNN CLMS0023
**ABJ LENOX, LLC**
1652 PARK AVE STE LL
NEW YORK NY 10035-4643

May 02, 2019

## *Update:*          **We credited your account**

Date of Inquiry:    05/02/2019
Account ending in:    9100
Check(s):   41908

Dear ABJ LENOX, LLC,

We received your request to research the transactions and determined they were unauthorized. We may reverse the credit if we receive information that your transactions were authorized.

We credited your account for the amount of the transaction(s). If you haven't already, we recommend closing this account.

If your refund earns interest, you'll receive it as a part of your regular interest payment or as a separate credit plus any applicable fees.

We recommend setting up alerts on www.chase.com to protect against fraud. If closing your account is not an option, please contact your local branch or assigned banker to discuss other options available to you to help prevent unauthorized transactions.

If you have questions, please call us anytime at 1-866-564-2262.

Sincerely,

Customer Claims Department

Enclosure

GOVERNMENT
EXHIBIT
127
19 Cr. 696 (PAE)

JPMorgan Chase Bank, N.A. Member FDIC

**SB1102121-F2**                    SDNY_005128    **1824**

CLMS0023

A-1679

## CHASE ◯

Mail Code TX3-7849
PO Box 659809
San Antonio, TX 78265-9109

**Questions?**

☎ 1-866-564-2262
TTY 1-800-242-7383
🖥 www.chase.com
FAX 1-866-661-4125

00014 LAW 802 001 12919 NNNNNNNNNNNN CLMS0023
**ABJ MILANO, LLC**
1652 PARK AVE STE LL
NEW YORK NY 10035-4643

May 02, 2019

### *Update:*                    **We credited your account**

Date of Inquiry:   05/02/2019
Account ending in:   1672
Check(s):   41902

Dear ABJ MILANO, LLC,

We received your request to research the transactions and determined they were unauthorized. We may reverse the credit if we receive information that your transactions were authorized.

We credited your account for the amount of the transaction(s). If you haven't already, we recommend closing this account.

If your refund earns interest, you'll receive it as a part of your regular interest payment or as a separate credit plus any applicable fees.

We recommend setting up alerts on www.chase.com to protect against fraud. If closing your account is not an option, please contact your local branch or assigned banker to discuss other options available to you to help prevent unauthorized transactions.

If you have questions, please call us anytime at 1-866-564-2262.

Sincerely,

Customer Claims Department

Enclosure

**GOVERNMENT
EXHIBIT
129**
19 Cr. 696 (PAE)

JPMorgan Chase Bank, N.A. Member FDIC

**SB1102121-F2**        SDNY_007779   **4475**

CLMS0023

THIS CHECK IS VOID WITHOUT A COLORED BORDER AND VOID PANTOGRAPH. SEE BACK FOR COMPLETE LIST OF SECURITY FEATURES INCLUDED ON THIS CHECK.

1154

ABJ Lenox, LLC.
347 Pleasant Avenue
Suite 1A
New York, NY 10035

JP Morgan Chase Bank N.A
349 Fifth Avenue
New York, NY 10016

Date: 04/28/2017

Pay to the order of: GATEGUARD INC.

This amount: **** FOUR THOUSAND, ONE HUNDRED THIRTY AND 00/100 DOLLARS $4,130.00

Gateguard Inc.
106 W. 32nd Street
2D15
New York, NY 10001

MEMO New Intercom

⑈1154⑈ ⑆021000021⑆ 833579100⑈

THIS CHECK IS VOID IF THE FOLLOWING SECURITY FEATURES ARE NOT PRESENT:

1. THE BACKGROUND ON THE FACE OF THE CHECK HAS (2) DIFFERENT VOID PANTOGRAPHS WHICH SHOW THE WORD VOID IF COPIED.
2. ON THE FACE OF THIS CHECK, A SECURITY LOCK ICON APPEARS IN THERMOCHROMIC INK. IN ADDITION, ON THE BACK OF THIS CHECK, THE DOCUMENT SECURITY WORDING APPEARS IN THERMOCHROMIC INK - BOTH OF WHICH WILL FADE WHEN TOUCHED OR BREATHED ON.
3. ON THE BACK THE TECH CHECKS LOGO IS PRINTED IN COIN REACTIVE INK AND WILL APPEAR WHEN RUBBED WITH THE EDGE OF A COIN.
4. THE BACK OF THIS CHECK HAS AN ARTIFICIAL TECH CHECKS WATERMARK WHICH MAY BE SEEN BY HOLDING THIS CHECK AT AN ANGLE.
5. BORDERS ON THE FACE AND THE BACK OF CHECK ARE MICRO-PRINTED. LOOK UNDER MAGNIFICATION FOR TECH CHECKS WORDING.

Seq: 181
Batch: 694499
Date: 05/01/17

Seq:00181 05/01/17
BAT:694499 CC:4870060093
WT:01 LTPS:Jacksonville
BC:Herald Center BC NY5-140

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE RESERVED FOR FINANCIAL INSTITUTION USE

GOVERNMENT EXHIBIT 130
19 Cr. 696 (PAE)



