UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case: 1:19-cr-00696                                                                                   Dec 29, 2024

**Motion to move to non-reporting probation due to escalating war, religious, medical & mental health reasons. Alternatively to extend for 4 months to allow for safer, more affordable travel during peacetime.**

Honorable Judge Engelmayer:

Defendant Ari Teman files this motion respectfully pro se, as Mr. Butler is on limited appearance for the 2255 only, and Mr. Quainton is dealing with a family health issue.

Pursuant to the Court's prior ruling recognizing that Mr. Teman was authorized to remain in Israel until January 15, 2024, due to his commitments assisting his elderly parents, engaging in productive volunteer work, and the challenges and safety concerns associated with international travel, we respectfully move the Court for further relief in light of recent and significant developments including that situation is only more unsafe and challenging now, and the needs more intense. As well, Mr. Teman needs medical care that is better given in Israel with family to support his recovery.

Your Honor previously gave as the reasons to allow Mr. Teman to remain in Israel, "in recognition of the fact that Teman, with the Court's authorization, is presently situated in Israel assisting his elderly parents and doing productive volunteer work, and in light of Teman's representation that travel out of Israel is unsafe and/or challenging."

Furthermore, it is the recommendation of Mr. Teman's mental health providers, physicians, and clergy that Mr. Teman remains in close proximity to family for additional health & religious reasons outlined below.

Furthermore, Probation has confirmed that Mr. Teman can be effectively supervised on "non-reporting probation."

I. Background and Current Circumstances

The Court previously acknowledged the complexities of Mr. Teman's situation, including the unsafe travel conditions stemming from the ongoing conflict in Israel. Since that time, the security environment has deteriorated further. The Houthi regime has escalated attacks, with nightly rocket fire targeting Tel Aviv and Central Israel. Mr. Teman, like millions of others, is required to take shelter during these attacks, often during early morning hours, significantly disrupting daily life and volunteer efforts.

Further, this past week multiple planes were shot out of the sky or downed by shrapnel from nearby ballistic missiles and counter-attacks. It is so unsafe to fly that every US airline refuses to do so and El Al has just begun cancelling certain flights out of Tel Aviv.

Additionally, Mr. Teman has made substantial progress in his volunteer work, including building an advisory team for Sunflower Centers with experts from top Israel institutions. However, the conflict has caused unavoidable delays as key personnel have been called into reserve duty, and frequent middle of the night sirens also impact productivity. These delays impact not only Mr. Teman but also the broader community he is assisting.

## II. Health Concerns and Financial Considerations

Contrary to prior representations by the Boro of Prisons, medical imaging taken after his release proves Mr. Teman suffers from significant *physical* health issues requiring medical intervention. Independent medical experts, including spine surgeons and a urologist at Mount Sinai (Dr. Wayne of Mount Sinai Miami Beach: https://www.msmc.com/doctor/george-wayne/ ), have confirmed the need for surgery, which would be more accessible, affordable, and safer for Mr. Teman to undergo in Israel.

Medical care in Israel is substantially less expensive, and Mr. Teman's financial condition, exacerbated by prior incarceration costs, makes seeking treatment in the United States an undue burden.

Furthermore, Mr. Teman's mental health providers agree the psychological toll of past delays in medical care, including severe pain rated at 9/10, necessitates immediate attention in a supportive environment surrounded by family.

## III. Practical and Safety Barriers to Travel

U.S. airlines continue to refuse flights into and out of Israel due to the ongoing conflict, and available alternatives, such as El Al, are prohibitively expensive. A single flight before January 15 costs thousands of dollars—an unreasonable expense given Mr. Teman's financial and medical circumstances.

The recent downing of a civilian aircraft due to shrapnel highlights the grave risks associated with air travel in the region. So much so that El Al has canceled more flights. Forcing Mr. Teman to travel under such conditions would be unnecessarily dangerous and inhumane.

It is also impractical. With flights being canceled this very week, it is not possible to guarantee Mr. Teman can return by January 15. It places him under extreme stress and undo burden without a reasonable means to travel to the United States at this time.

Furthermore, because Mr. Teman travels with an Emotional Support Animal, a small dog named Tzahala, it is not easy to quickly book and change flights as such an animal requires USDA veterinary certification and this is not as easily and reliably gotten in Israel during the ongoing war-caused delays and rescheduling.

## IV. Probation's Recommendations

Probation has confirmed that Mr. Teman can be effectively supervised on "non-reporting probation."

Monitoring Mr. Teman's financial activities is seamlessly achievable through electronic banking records, as all such records are maintained online.

There is no material difference between supervision of banking activity in Tel Aviv and Miami that would justify requiring Mr. Teman's physical presence in the United States.

## V. Constitutional and Religious Considerations

Forcing Mr. Teman to leave Israel would infringe on his religious beliefs, which hold that residing in Israel is a fundamental obligation.

The Court has already determined that Mr. Teman poses no flight risk or danger to the community. Mr. Teman never violated once during years of bond or supervision -- the Court has already gotten years of supervision of Mr. Teman due to unforeseen delays caused both by COVID and conflicted counsel needing to be replaced (a known conflict willfully hid by both thy Government and the defense attorney for which Mr. Teman should be credited the time).

Compelling him to abandon his faith-based requirement to live in Israel, particularly when Probation supports his continued presence there, raises serious constitutional concerns.

**VI. Pending motions support nonreporting probation**

The Court now has before it clear evidence submitted by Attorney Butler that Mr. Teman did have contractual authority to draft the RCCs and fees in question going back to 2018 and that these online Terms and subpages were emailed to him by corporate counsel who dictated their structure and content. Mr. Teman could have had no *mens rea* to defraud anyone with the structure or content of the terms as he did not structure the terms.

To be clear, multiple Federal and State Courts have since upheld the 2018 Dispute Terms. Surely if Federal and State judges believe the Dispute Terms are enforceable, Mr. Teman cannot be a criminal for believing the same.

Worse, the Court now has evidence that trial counsel -- whom the court already repeatedly chastised for being unscrupulous -- lied to the Court when it claimed it "tried" to get these Terms. Instead, evidence in the 2255 shows that trial counsel ignore multiple emails, sleep tracking records, suicide notes, and hospital visits provided to them by Mr. Teman showing that Mr. Teman was mentally unfit due to extreme illness and resulting sleep deprivation and could not function. The obvious result is that, as multiple experts confirmed in writing to Your Honor, Mr. Teman was in no condition to prepare for trial or make legal strategy decisions.

At the very least, in the same spirit for which Your Honor granted "Bond Pending Appeal", Mr. Teman should be allowed to remain with family and practice his faith and get medical care with them by his side until this issue is fully briefed and ruled-upon.

**VII. Mr. Teman's religious obligation and mental health needs to settle down and build a life and family**

Mr. Teman's post-trial confinement was unique in history because he was kept thousands of miles away from family and his partner for nearly two years and for 20 hours a day in isolation on most days -- worse isolation than most prisoners face. While this was not the Court's intention, it is still something which happened and which caused severe trauma and damage to Mr. Teman's life and relationships.

Worse, because of Mr. Teman's mother's significant health issues, she could not travel to him during post-trial isolation or imprisonment and still cannot travel to him. It would be cruel to deny this connect when Probation agrees to move Mr. Teman to non-reporting probation.

To deny Teman the ability to recover and rebuild with the stable support of his parents and loved ones after these years of 20 hours a day isolation and then painful incarceration (where it is now proven he was denied necessary medical interventions for months due to BOP lacking trained staff and equipment to properly diagnose and treat) thousands of miles away from family while severely ill is not rehabilitative. It would be deeply abusive and cruel torture, disrupting the necessary stability and family support Teman needs to recover, and it would be AGAINST Probation's own recommendation to move Teman now to non reporting supervision.

A period of supervision is meant to guide a person back into society and to be productive and contributory to society. Mr. Teman is that in Israel with family, friends, and loved ones, as the evidence shows. Your Honor has already stated that Mr. Teman is not a risk to the community. Therefore, forcing him to move back temporarily where he does not intend to or wish to settle and build a family overly complicates his ability to find stability and comfort needed to fully rehabilitate and form long lasting relationships.

This, too, has constitutional Establishment Clause implications as it is obvious any young woman whom Mr. Teman met in Miami might or might not want to live in Israel and raise a family here, but clearly someone he here meets in Israel has already made that choice. It is thus a significant harm to his religious faith and conviction to live in and volunteer in Israel to force him to live in an unstable and impermanent condition when Probation supports his moving to and settling in Israel now.

## VII. Conclusion

Given the substantial progress Mr. Teman has made in his volunteer efforts and their incredible importance to victims of terror, the worsening safety conditions in Israel, his documented medical and mental health needs, and the lack of any compelling governmental interest in requiring his return to the United States, we respectfully request that the Court modify Mr. Teman's supervision to non-reporting probation, allowing him to remain in Israel.

**<u>This request is supported by Probation's own recommendations</u>** and serves the interests of justice, safety, and fairness.

**In the alternative, we ask the Court to extend the trip to Israel for 120 days to allow for the wars in Syria, Lebanon, Gaza, and Yemen to be settled, G-d willing, such that air travel becomes more safe and affordable,** and for Mr. Teman to get treatment and recover by family.

**Your Honor, please allow me to stay with family and rebuild my life in a stable and loving environment after years of extremely traumatic isolation and difficulty.**

Please excuse this being filed pro se due to extenuating circumstances explained above.

Respectfully submitted,

    s/Ari Teman/

    Ari Teman