

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 9, 2025

**By CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    **United States v. Ari Teman**, S2 19 Cr. 696 (PAE)

Dear Judge Engelmayer:

      The Government respectfully writes pursuant to the Court's December 30, 2024 Order and in response to defendant Ari Teman's *pro se* motion requesting that he be permitted to reside in Israel beyond his present return date of January 15, 2025. For the reasons set forth below, the Government opposes Teman's request. (*See* Dkts. 471, 472, 473). Conversely, the Government has been advised by the United States Probation Office for the Southern District of Florida (the "Probation Office"), which supervises Teman, that the USPO is not opposed to Teman's motion to extend his stay in Israel.

### I.    Background

      On July 28, 2021, this Court sentenced Teman to a term of one year and one day in prison, to be followed by three years' supervised release. The Court also imposed $333,000 in forfeiture, $259,340.32 in restitution, and a mandatory $400 special assessment. (*See* Dkt. 253). The Court granted Teman bail pending appeal. On June 8, 2023, the U.S. Court of Appeals for the Second Circuit affirmed Teman's conviction, and, on or about October 10, 2023, Teman surrendered into the custody of the Bureau of Prisons ("BOP"). Teman was released from BOP custody in approximately May of 2024. Following Teman's release, he moved to modify the terms of his supervised release. In response, counsel for Teman and the Government jointly proposed modified terms, which the Court largely adopted. (*See* Dkt. 453).

      As relevant here, the modified terms set forth specific procedures for Teman, after receiving authorization from the Court and the Probation Office, to travel internationally. Pursuant to those procedures, Teman later requested authorization to travel to Israel from September 18 through November 6, 2024, to which the Government did not object and the Court granted. *See* Dkt. 456. Several days before Teman was scheduled to return to the United States, counsel asked that he be permitted to remain in Israel indefinitely. There was no forewarning of that, with either the Government or the Court. While apparently a last-minute request, it also seems—at a minimum—like a course of action that would have required at least some advanced planning by Teman to get certain affairs in order in the United States were he not to return. Notwithstanding

those circumstances, on November 5, 2024, the Government advised Teman's counsel that it had no objection to Teman extending his stay in Israel for approximately two weeks, so that he could assist in caring for his parents and continue his charitable work, among other things—including negotiating complicated travel logistics and maintaining his personal safety. The Government also made clear that it had no objection to further international travel requested ahead of time, or to making reasonable accommodations for Teman, his family, and the ongoing war. Rather, the Government's objection was rooted in a request for a months-long extension that was not previewed ahead of time, and which was made only as a fallback to the Government's objection to transferring Teman to non-reporting supervision—especially in view of Teman having served well short of even one year of his three-year term of supervised release. In response, also on November 5, 2024, Teman filed a *pro se* motion to transfer his supervised release to non-reporting status. (*See* Dkt. 463).[1]

On November 7, 2024, the Court granted Teman's request, extending Teman's stay in Israel until January 15, 2025, while noting that "Teman should not expect the Court to further extend his stay in Israel. The Court ordered Teman to serve a three-year supervised release term, which the Court intended as a meaningful component of Teman's overall sentence." (*See* Dkt. 465). Nevertheless, on December 29, 2024, Teman filed another *pro se* request to transfer his supervision to non-reporting and extend his stay in Israel indefinitely, which was later supplemented by a declaration from his attorney. (*See* Dkts. 471, 473).

## II.   The Government's Position

In its December 30, 2024 Order, the Court directed the Government to set forth its position on Teman's request and that of the Probation Office. The Government's position remains unchanged. The Government remains more than willing to consider any travel requests by Teman consistent with the modified terms of his supervised release; moreover, the Government is sympathetic to Teman's desire to care for his parents and contribute to volunteer efforts, and is of course mindful of the ongoing war and attendant fears and challenges. These considerations are measured against the evident need for the sentence this Court imposed on Teman—and the entire sentence, including the need for a period of supervised release. As the Court has summarized on numerous occasions, the reasons for that sentence included "the brazen $333,000 wire and bank fraud Teman had carried out, his vindictive treatment of customers whose checks he fabricated for deposit, and his continuing failure to accept responsibility." (*See, e.g.*, Dkt. 449 at 5). And while Teman raises significant personal, family, and safety concerns in his recent request—and the Government gives those serious consideration—the Government also notes Teman's long track record in this case of specious claims, which have been rejected by this Court and the Second Circuit. (*See, e.g.*, Dkt. 380 at 7-8 & n.3). At bottom, Teman committed a serious crime—one that involved significant, premeditated dishonesty—and the below-Guidelines, carefully considered sentence the Court imposed is a just one. That sentence included a three-year term of supervised release for well-founded reasons.

---

[1] [redacted]

Accordingly, the Government respectfully submits that the Court should deny Teman's motion; and, of course, has no objection to making reasonable accommodations for Teman's travel and safety.

### III.     The Probation Office's Position

The Probation Office does not object to Teman extending his time in Israel past the present January 15, 2025 deadline for him to return to the United States. With the Probation Office's permission, their position is set forth below:

> The U.S. Probation Office would not be opposed to the defendant's motion to extend his time in Israel as the defendant has satisfied all his monetary obligations and has been compliant with his conditions of supervised release since he started supervision. Additionally, he has also been responsive to requests from the U.S. Probation Office.
>
> The U.S. Probation Office currently utilizes the evidence-based practice of the Risk-Needs- Responsivity Principle in supervising clients. As part of this principle, the Post-Conviction Risk Assessment Tool (PCRA) is utilized to determine the risk of recidivism posed by an individual. The PCRA indicated a low risk of recidivism for Mr. Teman with no dynamic risk factors identified. Based on the PCRA, low risk individuals have only a 3% re-arrest rate within the first 180 days from the initial assessment performed at the onset of supervision and less than a 1% revocation rate. Additionally, Mr. Teman was also categorized and scored with a Criminal History Category 1 during his presentence interview.
>
> Mr. Teman's compliance appears consistent with what is normally expected by clients under low-risk supervision, and he has not presented extenuating circumstances regarding the burden probation has on him. Evidence shows placing these individuals on a "Low Intensity Supervision" caseload is appropriate, in which clients require minimal supervision and field work is not required unless there is a change in circumstances.
>
> The U.S. Probation Office does not object to the defendant's motion to extend his time in Israel. If approved the defendant's case would be supervised as noted. The defendant has a supervised release file in the National Crime Information Center (NCIC) system which would alert the U.S. Probation Office if Mr. Teman returned to the United States at any time. Additionally, if needed Mr. Teman could be instructed to conduct telephonic check ins or monthly online reports to account for his whereabouts. All if any financial documents requested by U.S. Probation could also be collected through email and credit checks could be conducted if needed through a Credit Bureau Inquiry from U.S. Probation. If Mr. Teman were to not be in compliance with any of his conditions, he would be subject to the consequences and violations of supervised release.

### IV.  Conclusion

For the reasons set forth above, the Government opposes Teman's request to transfer to non-reporting supervision and remain in Israel indefinitely; however, the Government has no objection to making reasonable accommodations for Teman's travel and safety. The Probation Office, as also set forth above, does not object to Teman's request.

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney for the
Southern District of New York

By: /s/
 Jacob H. Gutwillig
 Assistant United States Attorney
 (212) 637-2215

Cc: Defense counsel (by CM/ECF)