# EXHIBIT A

**United States Government**
**M E M O R A N D U M**

| | |
|---|---|
| **DATE:** | January 17, 2025 |
| **FROM:** | Jimmy Wong *(signed)*<br>United States Probation Officer<br>Miami, Florida<br>Office: ▮<br>Cellular: ▮ |
| **SUBJECT:** | **TEMAN, Ari**<br>**Docket No.: 19-CR-696 (PAE)**<br>**SD/FL PACTS No.:** ▮ |
| **TO:** | The Honorable Paul A. Engelmayer<br>United States District Judge<br>Southern District of New York |

**CONFIDENTIAL**
**DO NOT FILE  DO NOT SCAN**
**RETURN TO PROBATION**

### RESPONSE TO DEFENDANT'S MOTION TO TRAVEL EXTENSION

**I.   COMPLIANCE WITH SUPERVISION CONDITIONS**

On July 28, 2021, the defendant appeared before Your Honor having been found guilty of the following offenses: Counts One and Two: Bank Fraud, 18 U.S.C. § 1344, and Counts Three and Four: Wire Fraud, 18 U.S.C. § 1343. He was sentenced to one year and one day imprisonment, followed by three years' supervised release and a $400 special assessment. Thereafter, on July 18, 2023, the defendant's judgment was amended to include restitution in the amount of $259,340.32. The following special conditions were subsequently imposed: 1) the defendant shall provide the probation officer with access to any requested financial information unless the defendant has satisfied his financial obligations; 2) not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule; 3) participate in an outpatient mental health and anger management program approved by the U.S. Probation Office; 4) complete 300 hours of community service under the direction of the Probation Department; and 5) the defendant shall be supervised in the district of residence.

The defendant was released from the custody of the Bureau of Prisons and commenced his term of supervised release on May 28, 2024. On May 29, 2024, the defendant reported to our office and submitted a urinalysis sample that resulted negative for the presence of any illicit substances. Thereafter, on June 4, 2024, this officer contacted the defendant to go over his conditions of supervised release. Subsequently, on June 10, 2024, a home visit was conducted, and the defendant's residence was verified at ▮.

On June 14, 2024, the defendant reported to our office and submitted another urinalysis sample that resulted negative for the presence of any illicit substances.

Since the onset of supervision, the defendant has participated in mental health and anger management therapy sessions virtually with his therapist ███████████████████████████. According to ██████████, the defendant began his mental health treatment prior to his incarceration and now they have resumed to having a 70-minute online therapy session weekly focusing largely on the defendant's emotional and mood management. ██████████ also advised anger management is an important part of the defendant's therapeutic process and despite the progress made already they will continue to work long term on managing the defendant's emotions of anger and sadness. I was able to confirm with ██████████ that the defendant has attended mental health and anger management treatment sessions for the following dates listed:

| | | |
|---|---|---|
| June 6, 2024 | July 2, 2024 | August 11, 2024 |
| June 13, 2024 | July 9, 2024 | August 16, 2024 |
| June 20, 2024 | July 15, 2024 | August 23, 2024 |
| June 25, 2024 | July 22, 2024 | August 28, 2024 |
| | July 29, 2024 | |

| | | | |
|---|---|---|---|
| September 4, 2024 | October 1, 2024 | November. 9, 2024 | December 4, 2024 |
| September 11, 2024 | October 8, 2024 | November 27, 2024 | December 10, 2024 |
| September 18, 2024 | October 15, 2024 | | December 20, 2024 |
| September 26, 2024 | October 22, 2024 | | January 11, 2025 |
| | October 30, 2024 | | |

With regards to the remaining special condition of community service, the defendant has completed all his community service hours ordered with Yehudi, Inc. Yehudi, Inc. a non-profit 501(c)3 organization that offers a wide variety of programs, events, and fellowship trips to help students and young professionals connect with the Jewish culture. This officer previously confirmed with ██████████████ that the defendant completed 170 community service hours prior to his travel in September of 2024. Thereafter, ██████████ confirmed the defendant completed his remaining 130 hours in Israel. According to ██████████, the defendant spends about 10-15 hours per week in Isarel working on the Jewish Prison Book Project (JJRP) and other volunteer projects for the organization. Specifically, the defendant has secured book donations for men and women who are incarcerated from Koren publishers, generated children books on lessons for parents and children impacted by incarceration to read together, generated a website for the book project, met with and/or communicated with leaders of other Jewish organizations to gain their participation and support, hosted communal shabbat dinners in Miami, Florida and Tel Aviv, Israel, arranged for education materials to be donated to men who are incarcerated, visited nonprofits and those rehabilitating from the war, and organized volunteer comedy shows for families of soldiers.

In addition, per the Offender Payment Enhanced Report Access (OPERA), the defendant satisfied his restitution and special assessment obligations on November 25, 2023.

Subsequently, on July 14, 2024, the defendant was instructed on the modifications of his conditions of supervised release as approved by Your Honor on July 10, 2024. I advised the defendant that the Court suspended his drug testing condition, allowed the defendant to travel domestically with

approval of the U.S. Probation Office, travel internationally with approval of the Court, have contact with incarcerated individuals for work purposes only upon approval from the U.S. Probation Officer, and the defendant must obtain approval from the U.S. Probation Office for the applications of any new credit cards, lines of credit, or any other forms of credit. Thereafter, on July 19, 2024, I conducted a routine records check on the defendant, which yielded negative results for any new arrests or charges.

On August 27, 2024, the defendant contacted this officer and inquired about obtaining his U.S. passport for TSA Precheck interview purposes. I reminded the defendant of his supervised release conditions and obtaining approval from the Court before his passport could be released.

On September 4, 2024, the defendant submitted a travel request to travel to Israel. The defendant was reminded once again about obtaining approval from the Court for any international travel. On September 16, 2024, Your Honor approved the defendant be allowed to travel to Israel beginning September 18, 2024, with a return date of November 6, 2024. On September 17, 2024, I advised the defendant of the approval for his international travel and instructed him to provide his travel itinerary once purchased. On that same date, the defendant provided me with his purchased travel itinerary.

On October 27, 2024, the defendant contacted this officer and inquired about extending his travel in Isarel. This officer advised the defendant and his attorney that any travel extension would need to be approved by the Court and that the defendant was ordered to return by November 6, 2024.

On November 7, 2024, the Court extended the defendant's travel until January 15, 2025. On that same date, I instructed the defendant of his return date of January 15, 2025, and advised him to provide this officer with his travel itinerary once purchased. Thereafter, on November 27, 2024, I conducted a routine records check on the defendant, which yielded negative results for any new arrests or charges.

On January 7, 2025, Assistant United States Attorney (AUSA) Jacob H. Gutwillig contacted this officer for a response in the defendant's motion to extend his travel in Isarel and to be placed on non-reporting supervision. In the defendant's motion he indicated he was requesting an extension because of the ongoing war. On this same date, this officer discussed the defendant's motion with his supervisor, and it was agreed U.S. Probation would not oppose to the defendant's motion to extend his travel in Israel, due to the defendant's compliance with his supervised release conditions and low risk of recidivism.

However, on January 9, 2025, AUSA Gutwillig copied this officer in a response to the defendant's motion along with "Exhibit A", which contained an email from the defendant to AUSA Gutwillig. In the email, the defendant stated:

> "I would imagine whomever replaces your boss is going to investigate this case, and it will not be good for you if you continue to cheat and act unethically. I encourage you to dismiss this case today. In the meantime, you can update the court that you concede to switch to Non-Reporting Probation.

   I would be more than happy for you to arrange a settlement with counsel such that we do not have to litigate this further civilly as well despite the massive damage you caused to me and my family and companies. For settlement purposes only, no rights or claims waived herein.

   I've won, Jake. Now is the time to save your own career and do the right thing. Williams cannot help you."

  This officer was unaware of the defendant's email that was sent previously to AUSA Gutwillig on November 6, 2024, at the time this officer responded to AUSA Gutwillig with U.S. Probation's position on January 7, 2025.

## II. RECOMMENDATION

  Based on the defendant's compliance with his conditions of supervised release and the communication noted above, the U.S. Probation Office would not oppose to extending the defendant's travel in Isarel until the defendant could make reasonable accommodations for his safe return. However, the U.S. Probation Office would oppose the defendant's motion to transfer his supervision to non-reporting supervision at this time. The defendant had only been on direct supervision for four months before traveling to Israel. An important component of supervision is managing and reducing the risk to reoffend posed by persons under supervision through monitoring behaviors, and through personal and collateral contacts. Mr. Teman has spent most of his supervision period without the benefit of those interactions. Moreover, the defendant's email to AUSA Gutwillig on November 6, 2024, is concerning and could be characterized as coercive and intimidating. Furthermore, his claims that it is unsafe for him to travel are unfounded as he traveled to Israel in September 2024 and the war began in October 2023.

  If Your Honor has any questions regarding this matter, please do not hesitate to contact this officer at the telephone numbers provided above.

                Respectfully submitted,

JW

**Reviewed and Approved by:** _____
              **John Carles, Supervisory**
              **United States Probation Officer**

**Reviewed and Approved by:** _____
              **Riselda R. Ruiz, Chief**
              **United States Probation Officer**