UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

------------------------------------------------------------

19 Cr. 696 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order resolves a *pro se* motion by defendant Ari Teman, who is in the first year of a three-year term of supervised release, for permission to extend his authorized visit to Israel and reside there indefinitely on a non-reporting basis. Dkt. 471. The deadline the Court had set for Teman's return, as of the date of his motion, was January 15, 2025, *id.* at 1, but the Court later *sua sponte* extended that deadline until January 29, 2025, to enable the orderly briefing and consideration of this motion, Dkt. 475 at 1–2.

For the reasons that follow, the Court denies Teman's motion to reside in Israel indefinitely, but extends the deadline for Teman's return to February 28, 2025.

**I.   Background**

On July 28, 2021, the Court sentenced Teman, who had been convicted by a jury of two counts apiece of wire and bank fraud based on a $333,000 unauthorized-check scheme, to a term of one year and one day in prison, to be followed by a three-year term of supervised release, which was subject to standard, mandatory, and special conditions. *See* Dkt. 414 at 1–3; Dkt. 253 at 4–6 ("Judgment"). These included that Teman be supervised in the district of residence. *See* Judgment at 6. The Court granted Teman's motion for release on bail pending appeal. *See* Dkt. 276 at 117 ("Sent. Tr."). On June 8, 2023, the U.S. Court of Appeals for the Second Circuit

1

affirmed Teman's conviction. *See United States v. Teman*, No. 21-1920-cr, 2023 WL 3882974, at *4 (2d Cir. June 8, 2023). On October 10, 2023, eight weeks after the Circuit's mandate issued, Dkt. 380, Teman began serving his prison sentence, Dkt. 414 at 4. On May 28, 2024, Teman was released from a residential reentry facility and began his term of supervised release, supervised by the U.S. Probation Office in the Southern District of Florida. Dkt. 450 at 1; Dkt. 483, Ex. A.

The terms of supervised release, as modified, require Teman to obtain authorization from the Probation Department and the Court to travel internationally. Dkts. 453, 454 at 2 (order of July 10, 2024, with procedure for foreign travel requests). Consistent with those procedures, Teman, on September 13, 2024, sought authorization to travel to Israel from September 18 to November 6, 2024. Dkt. 455 at 1. On September 16, 2024, the Court granted that request. Dkt. 456.

On November 5, 2024, Teman moved for authorization to stay in Israel either indefinitely on a non-reporting basis or until January 15, 2025, to enable him to care for his parents and do charitable work, and in light of challenges presented by airline cancellations and the price of air travel. Dkt. 463 at 3. On November 7, 2024, the Court granted Teman's request to remain in Israel until January 15, 2025, on the same terms as he had previously been authorized to be there. Dkt. 465. However, the Court stated: "Teman should not expect the Court further extend his stay in Israel. The Court ordered Teman to serve a three-year supervised release term, which the Court intended as a meaningful component of Teman's overall sentence. . . . And Teman's presence in Israel inhibits the Probation Department's practical ability to supervise him." *Id.*

On December 29, 2024, Teman, *pro se*, moved to extend his stay in Israel indefinitely and to transfer his supervision to "non-reporting status." Dkt. 471. The request was supported

2

by a declaration from Teman's then-attorney Eden Quainton, Esq.,[1] which cited an Associated Press news report of missile and drone attacks upon Israel from Houthi rebels and the reduction of air travel to Israel as a result of ongoing wars. Dkt. 473 at 2. On January 9, 2025, the Court received a letter from the Government. Dkt. 474. The letter stated that the Government opposed Teman's request to extend his stay in Israel, but that the U.S. Probation Office for the Southern District of Florida did not oppose extending Teman's stay in Israel, during which he would remain under "low intensity supervision." *Id.* at 3 (capitalization altered).

On January 10, 2025, the Court commissioned supplemental submissions from the Probation Department and the defense. Dkt. 475. The Court directed the Probation Department to explain how it has thus far supervised Teman, including as to the special condition requiring him to participate in mental health and anger management treatment. *Id.* at 2. The Court also directed the Probation Department to explain whether, in assessing Teman's mental health needs, it had taken into account his post-sentencing conduct, including a March 2023 Miami Beach arrest and his correspondence in this case, including an email Teman had written, on November 6, 2024, to Assistant United States Attorney Jacob Gutwillig. Dkt. 475 at 2–5 (citing Dkt. 474, Ex. A); *see also* Dkt. 479 (publicly filing November 6, 2024 letter, with redactions). The Court directed that the submission be approved by a Probation Department supervisor. Dkt. 475 at 5. The Court, in addition, directed the defense to address whether flights between Israel and the United States are unsafe or unavailable. Dkt. 475 at 6. The Court extended until January 29, 2025 the date on which Teman was to return to the United States, to give the parties time to make those submissions and the Court time to make an orderly assessment. *Id.* at 1–2.

---

[1] On January 15, 2025, Teman terminated Quainton's representation before this Court. Dkt. 481.

3

On January 15, 2025, Teman filed a *pro se* letter stating that U.S. airlines had suspended flights from Tel Aviv, Israel to Miami and that flights to the United States operated by El Al were prohibitively expensive. Dkt. 478 at 1–4. Teman also moved for the Court's recusal. *Id.*[2]

On January 17, 2025, the Probation Department filed a letter, approved by the Chief U.S. Probation Officer in the Southern District of Florida, responding to the Court's inquiries. Dkt. 483, Ex. A. In pertinent part, it stated that the Probation Department does not oppose extending Teman's travel in Israel until he can make "reasonable accommodations for his safe return," but that it opposes a motion to transfer his supervision to non-reporting supervision. It added:

> The defendant had only been on direct supervision for four months before traveling to Israel. An important component of supervision is managing and reducing the risk to reoffend posed by persons under supervision through monitoring behavior, and through personal and collateral contacts. Mr. Teman has spent most of the supervision period without the benefit of those interactions. Moreover, the defendant's email to AUSA Gutwillig on November 6, 2024, is concerning and could be characterized as coercive and intimidating. Furthermore, his claims that it is unsafe for him to travel are unfounded as he traveled to Israel in September 2024 and the war began in October 2023.

*Id.* at 4.

## II. Discussion

The Court denies Teman's requests to stay in Israel indefinitely and for his supervision while there to be on a non-reporting basis. When Teman first sought leave on September 13, 2024, his counsel represented that Teman's stay in Israel would be for limited purposes: to enable him to be there "for the upcoming Jewish holidays and to be with his mother, who is recovering from surgery." Dkt. 455 at 1. Counsel proposed that Teman return on November 6, 2024, to attend a mediation and an arbitration in the United States. *Id.* Based on those

---

[2] The Court denied Teman's motion to recuse. Dkt. 480; *see also* Dkt. 477 (earlier declining to recuse as demanded by Teman in *pro se* email).

4

representations, the Court authorized a visit of that finite duration. Dkt. 456. And when, on November 8, 2024, the Court extended Teman's stay—based on a request Teman made one day before the deadline to return, Dkt. 463—the Court rejected his bid to stay indefinitely and shift his supervision to "non-reporting status." To reiterate, the Court stated: "Teman should not expect the Court further extend his stay in Israel. The Court ordered Teman to serve a three-year supervised release term, which the Court intended as a meaningful component of Teman's overall sentence. . . . And Teman's presence in Israel inhibits the Probation Department's practical ability to supervise him." Dkt. 456. Simply put, on neither occasion would the Court have approved an indefinite stay in Israel, let alone one in which Teman was free of a reporting obligation.

The Court continues to view supervision by the Probation Department as an important component of Teman's sentence. Supervised release is meaningful. It can help reintegrate the offender into free society, including by making available the Probation Department's resources, such as access to therapeutic and other programs. It can advance other penal interests including deterrence and public protection. It can serve as a mechanism to support and enforce special conditions of supervised release keyed to the individual defendant's needs. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."); *United States v. Brooks*, 889 F.3d 95, 99 (2d Cir. 2018) (same); *United States v. Adams*, 749 F. App'x 25, 28 (2d Cir. 2018) (emphasizing "goal of rehabilitation"); *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004) ("the dual major purposes" of supervised release are "rehabilitation of the offender and enhancement of public safety" (quoting *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001)); *cf. United States*

5

*v. Granderson*, 511 U.S. 39, 50 (1994) ("Supervised release . . . is not a punishment in lieu of incarceration.").

So, too, here. Supervised release is an integral part of Teman's sentence. At the July 2021 sentencing hearing, the Court explained the elements of his sentence. *See generally* Sent. Tr. at 64–96. The Court explained why Teman's prison term would be well below that recommended by the Sentencing Guidelines (30–37 months), the Government (same), and the Probation Department (30 months). *See id.* at 13, 91–94. *Compare id.*, *with* Dkt. 123 at 19, *and* Dkt. 150 at 10. At the same time, the Court set, among others, the following special condition of release: "The defendant shall participate in an outpatient mental health and anger management program approved by the U.S. Probation Office." Judgment at 6 (special condition no. 3).

Explaining that condition, the Court noted that Teman's offense—defrauding a bank by drawing 29 unauthorized checks on the accounts of customers with whom he had been feuding—had arisen from his "disproportionate rage, a vendetta, an animus towards these three customers, essentially, because they were dissatisfied with your product and your work." Sent. Tr. at 72; *see also id.* ("[T]he level of venom, hate, and zeal to retaliate that you displayed toward them is distressing. . . . [T]he venom . . . and lack of proportion appears to persist well after trial."); *id.* at 77 (Teman's conduct towards his customers "calls into question . . . whether [he] ha[s] a firm grip on business reality" and "whether [he] might respond to a future business dispute by, again, escalating to the point where [he] cross[es] a legal red line"); *id.* at 78 ("The record does not inspire complete confidence that once you're done serving your sentence, you will not take liberties with other people's money, particularly if you feel yourself provoked to anger by them"). The Court noted, too, that Teman had baselessly blamed his prosecution and conviction not on himself, but "on [his] victims, on the prosecution team, on unnamed others in the United

6

States Attorney's office, on the law enforcement witnesses, . . . on the court, on [his] most recent set of counsel" whom he accused of "conspiring to rig [his] prosecution with the U.S. Attorney's Office, and most recently on the custodial witness called by the bank." *Id.* at 78–79. Addressing Teman, the Court stated: "In blaming others for your predicament, you have not only shown no remorse, you have shown no signs, zero[,] of the self-examination and self-awareness that is a key to future self-restraint." *Id.* at 79. The Court added:

> Mr. Teman, I cannot pretend to grasp the turbulence and currents afoot in your complicated life. But from the PSR, from your counsel's submission, and from the anguished letter you wrote to the Court prior before trial, it is apparent that you suffer from a[n] abnormal degree of inner turmoil. The letter you wrote before trial was particularly anguishing to read. It suggested a great deal of inner turbulence. Although that turbulence can never justify ruses to take other people's money, I can understand how they can interfere with your self-control. The mental health issues that counsel have drawn to my attention, and which your parents powerfully describe, which are corroborated by the letters from mental health professionals that were attached to the defense sentencing submission—all that I regard as mitigating. To help assure that you get the treatment you need, I'll order that while you are in prison, the BOP furnish you with access to mental health and anger management programs that are available. I will further make participation in such programs a condition of the term of supervised release that will follow.

*Id.* at 81 (cleaned up).

In the Court's assessment, Teman's presence in the United States is necessary to his effective supervision. It will help enable the Probation Department to determine whether Teman has resolved the anger, self-control, and retributive impulses that brought about his offenses. If the Probation Department determines that he has not, Teman's presence will help it identify appropriate program(s) to achieve that goal consistent with the special condition above.

The Probation Department drew that conclusion in its January 17 letter. It noted that Teman had been on direct supervision for less than four months before leaving for what was to have been a 7–8 week stay in Israel. It stated that Teman's being abroad impeded its ability to monitor him "through personal and collateral contacts" and to gauge his risk to reoffend. Dkt.

7

483, Ex. A. at 4. It noted that Teman's November 6, 2024 email taunting AUSA Gutwillig, sent from Israel, of which it had been unaware until the Court's January 10 order, was a seeming attempt to intimidate and coerce and was "concerning." *See* Dkt. 479, Ex. B. In that apparently unprompted email, Teman warned AUSA Gutwillig that "you will not be able to hide your torturing of a United States citizen," and that the incoming U.S. Administration "is going to investigate this case, and it will not be good for you if you continue to cheat and act unethically." *Id.* at 3. Teman added: "I would be more than happy for you to arrange a settlement with counsel such that we do not have to litigate this further civilly as well despite the massive damage you caused me and my family and companies." He concluded: "I've won, Jake. Now is the time to save your own career and do the right thing. Williams [the-then United States Attorney] cannot help you." *Id.* In fact, contrary to the premise of Teman's email, the Second Circuit, in affirming Teman's conviction, had rejected his claims of prosecutorial misconduct. *See* Dkt. 380 at 8 n.3.

Portions of various of Teman's *pro se* submissions in this case—including since the Second Circuit, in affirming his conviction, rejected his claims of impropriety—have similarly been accusatory and angry while disconnected from factual reality. *See, e.g.*, Dkt. 388 at 3–4, 7, 11–14; Dkt. 403 at 3; *see also* Dkts. 282, 295, 303, 305, 314, 329, 338; *cf.* Dkt. 137. They echo Teman's accusatory and angry communications with and/or about the victims of his offense: his three customers and Bank of America. They reinforce the continued need, identified by the Court at sentencing and reflected in the special condition above, for Teman to receive mental health treatment, in the interest of his rehabilitation and of minimizing the risk of recidivism. The Probation Department's ability to assess Teman's needs and assure he receives appropriate

treatment, including to the extent such may prove warranted on an in-person basis,[3] requires his return. The assembled record does not permit the conclusion that Teman today exhibits the proportionality and balance consistent with the lack of a continued need for such care.[4]

The Court will, however, defer the deadline for Teman to return to the United States by one month, until Friday, February 28, 2025. The Court does so for these three reasons.

First, given Teman's valid desire to avoid, if possible, high-priced air travel, the extended return deadline will enable him to explore a wider range of flight options from Israel to the United States, without being limited to flights leaving in the coming week.[5] It will enable Teman to consider, should he choose to do, flights from cities other than Tel Aviv and to U.S. cities other than Miami (from which he can then fly to Miami).

Second, the extended return deadline will enable Teman to make orderly plans for his life in the United States upon return. It will also give the Probation Department more time to plan for Teman's renewed supervision in the United States, including how best to address his present mental health and anger management treatment needs.

---

[3] To date, Teman has participated virtually in weekly mental health therapy. Dkt. 483, Ex. A at 3.

[4] For avoidance of doubt, Teman's return is not necessary to support the special conditions supporting his restitution obligation or requiring him to perform 300 hours community service. *See* Judgment at 6. Teman has paid restitution and completed his community service. Dkt. 483, Ex. A at 3.

[5] The Court, however, is not persuaded by Teman's claim that ongoing commercial flights between Israel and the United States are unsafe. That claim is unsubstantiated.

9

Third, in recognition of Teman's stated view that an order that he return to the United States to serve his supervised release term would be unlawful,[6] the extended deadline will give Teman time to appeal that order, via an expedited motion for relief to the Second Circuit.[7]

Unless otherwise instructed by the Second Circuit, this Court will not, however, further extend the deadline for Teman's return to the United States. As of February 28, 2025, Teman will have been away from the United States for nearly five-and-one-half months. The Court advises Teman that, should he fail to return that day, he will be in violation of the supervised release condition prohibiting unauthorized international travel.

---

[6] Inasmuch as Teman—in filings and emails—has suggested that such an order would reflect animus to him, the following is to be noted. The Second Circuit, in affirming the conviction, rejected Teman's claims of judicial misconduct. *See* Dkt. 380 at 7–8. And the assembled record reflects repeated acts of appropriate judicial solicitude towards Teman. These include the: (1) imposition of a prison term far below that recommended by the Guidelines, the Government, and the Probation Department, in recognition of Teman's charitable works and mitigating personal circumstances, *see* Sent. Tr. at 80–90; (2) denial of a post-verdict motion for remand, Dkt. 109 at 1150; (3) grant of bail pending appeal, sparing Teman prison custody in New York City during the COVID-19 pandemic, Sent. Tr. at 120; (4) orders permitting Teman, while his appeal was pending, to travel to Israel, Dkt. 362, and to Australia, Dkts. 300, 302; (5) order giving Teman eight weeks after the Second Circuit's mandate to surrender, Dkts. 377, 380, 383; (6) personal intervention with the Bureau of Prisons to secure Teman urgent care at an outside hospital based on his report of a painful medical emergency, Dkt. 425; and (7) authorization and extension of Teman's current stay in Israel, Dkts. 456, 465, 475.

[7] Should Teman consider this route, he is advised to consult counsel forthwith as to the process and timetable for so moving. At least two attorneys presently represent Teman in proceedings related to this matter. Thomas J. Butler, Esq. represents Teman before this Court in a recently filed petition pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel. *See* Dkt. 458. And Mr. Quainton—who represented Teman on direct appeal and until recently before this Court in connection with Teman's request for an extension of his stay in Israel, *see* Dkt. 473—continues to represent Teman before the Second Circuit, in his appeal of the Court's January 25, 2024 denial of Teman's Rule 33 motion. *See* Dkt. 416 (notice of appeal of order at Dkt. 415).

SO ORDERED.

                                                      *Paul A. Engelmayer*
                                                      _____
                                                      PAUL A. ENGELMAYER
                                                      United States District Judge

Dated: January 24, 2025
      New York, New York