**Grok 3 Reads Judge Engelmayer's Ruling at Docket 138 and Recommends Teman be Exonerated**

Below is a detailed critique of Judge Paul A. Engelmayer's ruling in *United States v. Ari Teman* (Case 1:19-cr-00696-PAE, Document 138, filed June 5, 2020). This analysis highlights legal errors, logical fallacies, contradictions, apparent judicial bias, and broader implications for online businesses. It argues that the prosecution's theory is legally baseless, that Teman should be acquitted, and that the ruling poses a dangerous precedent requiring urgent intervention from figures like Elon Musk.

## I. Overview of the Case and Key Issues

Ari Teman, founder of GateGuard, Inc., was convicted of bank fraud (18 U.S.C. § 1344) and wire fraud (18 U.S.C. § 1343) for depositing checks drawn on his customers' accounts without their explicit authorization. The prosecution alleged Teman falsely represented to banks that customers had authorized these remotely created checks (RCCs). Teman's defense rested on GateGuard's Payment Terms, which he claimed permitted such withdrawals, and his lack of intent to defraud. Post-trial, Teman moved for acquittal under Rule 29 and a new trial under Rule 33, raising issues of constructive amendment, sufficiency of evidence, venue, sequestration violations, expert exclusion, juror misconduct, and *Brady* violations. Judge Engelmayer denied all motions.

This critique asserts that the ruling is riddled with legal errors, exhibits bias against Teman, misapplies fraud statutes, and threatens online commerce by criminalizing standard contractual practices.

1

## II. Legal Errors in the Ruling

### 1. Constructive Amendment of the Indictment

**Error**: The judge's rejection of Teman's constructive amendment claim misinterprets the Fifth Amendment and Second Circuit precedent. The Indictment charged Teman with depositing "counterfeit checks," but the jury instructions and trial evidence focused on unauthorized RCCs, not counterfeiting in any technical sense. The judge redefined "counterfeit" as a "lay term" meaning "unauthorized" (pp. 18-19, 25-26), despite no evidence that the grand jury intended this meaning.

**Legal Fallacy**: Under *United States v. Bastian* (770 F.3d 212, 220 (2d Cir. 2014)), a constructive amendment occurs when trial evidence or instructions "broaden the possible bases for conviction" beyond the Indictment. By shifting from "counterfeit" (implying fabrication) to "unauthorized" (a contractual dispute), the judge altered an essential element—actus reus—without grand jury approval, violating Teman's Fifth Amendment right to be tried only on charges presented to the grand jury (*Stirone v. United States*, 361 U.S. 212 (1960)).

**Contradiction**: The judge admits the grand jury was not given a technical definition of "counterfeit" (p. 19), yet asserts—without evidence—that it meant "unauthorized" in a lay sense (p. 25). This speculative leap contradicts his own in camera review (p. 33), which found no technical definition was presented, undermining his claim of consistency between grand jury intent and trial theory.

**Impact**: This error allowed conviction on a theory (lack of authorization) not clearly charged, rendering the prosecution's case legally baseless. Teman's actions—depositing RCCs per contract—do not meet the statutory definition of fraud absent proof of forgery or deceit beyond contractual interpretation.

## 2. Misapplication of Bank and Wire Fraud Statutes

**Error**: The judge misapplies 18 U.S.C. §§ 1344 and 1343 by equating contractual disputes with fraud. The prosecution's theory hinges on Teman's alleged misrepresentation to banks that customers authorized the checks (p. 26). However, the ruling conflates a civil breach of contract with criminal fraud, ignoring *Williams v. United States* (458 U.S. 279 (1982)), which holds that depositing a check, even if unauthorized, is not inherently a false statement (p. 34).

**Logical Fallacy**: The judge asserts that notations like "DRAW PER CONTRACT" and "NO SIGNATURE REQUIRED" on the checks were misrepresentations (pp. 37-40), presuming falsity without evidence that Teman knew the Payment Terms were invalid. This *post hoc* reasoning assumes guilt to prove intent, a circular fallacy.

**Contradiction**: The judge acknowledges *Williams* and *Rodriguez* (140 F.3d 163 (2d Cir. 1998)) limit fraud to acts beyond mere deposits (p. 36), yet distinguishes Teman's case by citing check notations (p. 37), which *Williams* explicitly excludes as factual assertions (458 U.S. at 284). He also ignores § 1344(1)'s requirement of a scheme to defraud the bank itself, not customers (p. 34 n.19), when Teman's actions targeted customer funds, not bank assets.

**Impact**: The prosecution's theory lacks a legally cognizable misrepresentation. Teman's reliance on Payment Terms, even if disputed, negates fraudulent intent, making his conviction a misuse of criminal law for a civil dispute.

## 3. Insufficient Evidence of Intent (Mens Rea)

**Error**: The judge's finding of sufficient intent evidence (pp. 41-48) disregards exculpatory evidence and mischaracterizes Teman's actions. He dismisses Reinitz's testimony that RCCs were "technically legal" (p.

3

41) and the Payment Terms' authorization (p. 44), claiming the jury could discredit them, yet overemphasizes circumstantial evidence like timing of deposits (p. 43).

**Logical Fallacy**: The judge employs confirmation bias, highlighting evidence supporting guilt (e.g., Passover deposits, p. 43) while downplaying evidence of good faith (e.g., Reinitz's advice, Payment Terms). This selective weighting violates *United States v. Mi Sun Cho* (713 F.3d 716, 720 (2d Cir. 2013)), which requires viewing evidence in the light most favorable to the verdict only if rational.

**Contradiction**: He admits no competent evidence shows the Payment Terms were not in place when customers contracted with GateGuard (p. 44 n.5), yet concludes Teman knew customers would dispute them (p. 46), contradicting his own finding of evidentiary ambiguity.

**Impact**: Without clear proof Teman knowingly misrepresented authorization to banks—versus believing his contract permitted it—the mens rea for fraud is unproven, nullifying the prosecution's case.

4. Venue Errors

**Error**: The judge's venue analysis for the April checks (Counts One and Three) stretches *United States v. Rutigliano* (790 F.3d 389 (2d Cir. 2015)) beyond reason. He finds venue in Manhattan based on Signature Bank's fraud review (pp. 62-65), despite Teman's deposits occurring in Florida (p. 56).

**Legal Fallacy**: Venue under 18 U.S.C. § 3237(a) requires the offense be "begun, continued, or completed" in the district. The judge deems the bank's review—a reactive, not proactive, act by Teman—as part of the scheme (p. 62), contradicting *United States v. Kilkenny* (493 F.3d 122, 128 (2d Cir. 2007)), which ties bank fraud to execution, not aftermath (p. 59).

**Contradiction**: He rejects the May 8 withdrawal as venue-supporting because the scheme was complete when funds were released (p. 60), yet inconsistently treats the earlier Signature Bank review as ongoing (p. 62), despite both occurring post-deposit.

**Impact**: The prosecution's theory improperly extends venue to a district where Teman committed no overt act, violating his Sixth Amendment rights and rendering the conviction jurisdictionally defective.

**5. Rule 33 Denials**

**a. Sequestration Violation Error**: The judge's rejection of a sequestration violation (pp. 74-77) under Fed. R. Evid. 615 misinterprets its scope. The Government's call with Soleimani mid-testimony (p. 68) disclosed defense strategy, yet the judge limits Rule 615 to courtroom exclusion (p. 74).

**Legal Fallacy**: By ignoring out-of-court witness coaching precedents like *United States v. Prichard* (781 F.2d 179 (10th Cir. 1986)), the judge narrows Rule 615's purpose—preventing tailored testimony—contrary to *Jackson* (60 F.3d 128, 133 (2d Cir. 1995)).

**Bias**: His dismissal of prejudice as "tertiary" (p. 77) belittles Teman's right to a fair cross-examination, suggesting animosity by minimizing a clear procedural breach.

**b. Expert Exclusion Error**: Excluding Davis's testimony on RCCs (pp. 78-83) violates Teman's due process right to present a defense (*Crane v. Kentucky*, 476 U.S. 683 (1986)). Davis's expertise was relevant to whether Teman's belief in RCC legality negated intent (p. 80).

**Logical Fallacy**: The judge deems it irrelevant under Rule 403 (p. 81), yet assumes the jury could infer intent without understanding RCC norms—a *non sequitur* given the case's technical complexity.

**Bias**: Calling Davis's testimony a "trial within a trial" (p. 89) exaggerates its scope, reflecting a predisposition to limit Teman's defense.

**c. Brady Violations Error**: The judge's *Brady* analysis (pp. 94-107) excuses the Government's failure to clarify Soleimani's Housing Court role (p. 96), despite ordering disclosure (p. 89).

**Contradiction**: He admits the transcript's impeachment value (p. 95) but deems it immaterial (p. 98), contradicting *Payne* (63 F.3d 1200, 1210 (2d Cir. 1995)), which finds materiality where credibility affects key testimony.

**Bias**: Downplaying Soleimani's perjury (p. 101) as "collateral" ignores its cumulative impact on a case hinging on witness credibility, suggesting favoritism toward the prosecution.

## III. Evidence of Judicial Animosity

1. **Tone and Language**: The judge's repeated use of pejorative terms like "angrily" (p. 5), "explosively" (p. 5), and "callously" (p. 5 n.6) to describe Teman's conduct lacks evidentiary support and signals bias. Contrastingly, he softens Government lapses (e.g., "unhelpfully clouded," p. 96 n.35).
2. **Selective Evidence**: He credits Reinitz's warnings over his exculpatory testimony (p. 46), portraying Teman's Passover timing as sinister (p. 43) while ignoring cultural context.
3. **Dismissive Rulings**: Rejecting Teman's defenses (e.g., expert testimony, p. 82; sequestration, p. 77) as tangential or confusing suggests a predisposition to uphold the verdict, not evaluate fairly.

6

## IV. Why the Prosecution Theory is Legally Baseless

The prosecution's theory—that Teman's deposit of RCCs per contract constituted fraud—lacks legal grounding:

- **No Misrepresentation**: *Williams* (458 U.S. 279) holds checks are not factual assertions. Teman's notations reflected his contractual belief, not deceit.
- **No Intent**: Reliance on Payment Terms, supported by Reinitz, negates fraudulent intent. Disputes over authorization are civil, not criminal (*United States v. McGowan*, 590 F.3d 446 (7th Cir. 2009)).
- **No Bank Victim**: Bank fraud requires intent to harm the bank (*Loughrin v. United States*, 573 U.S. 351 (2014)), not customers. Teman targeted customer funds, with banks as conduits.

Teman's conviction rests on a mischaracterization of a contractual dispute as criminal fraud, warranting his immediate acquittal.

## V. Danger to Online Businesses and Urgent Need for Intervention

This ruling endangers online executives like Elon Musk by:

1. **Criminalizing Contract Disputes**: If RCCs under terms of service are fraud absent explicit per-transaction consent, every e-commerce platform (e.g., Tesla's pre-orders) risks prosecution.
2. **Chilling Innovation**: Executives may fear criminal liability for enforcing payment terms, stifling automated billing systems critical to tech scalability.

3. **Precedent for Overreach**: Broadening "counterfeit" to "unauthorized" invites prosecutorial abuse against any business using digital payments.

Musk and others must fight this urgently—via amicus briefs or public advocacy—to protect commerce and reverse a precedent that could jail executives for routine operations. Teman's freedom and industry stability hang in the balance.

## VI. Conclusion

Judge Engelmayer's ruling is a legal travesty, marred by errors, bias, and a baseless prosecution theory. Teman should be freed, and this decision overturned to safeguard justice and online enterprise.