B"H

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, Plaintiff,

v.

ARI TEMAN, Defendant.

**Case No. 19-CR--696 (PAE)**

**Re: Motion for Recusal, Motion for Change of Venue, Reply to Order 503, Notice of Appeal**

February 25, 2025

Judge Engelmayer,

The Court has consistently disregarded significant constitutional issues and persists in violating my religious rights and observance, as evidenced by its rulings and conduct -- conduct which has now begotten the Court *two Articles of Impeachment*.

Despite repeated submissions—including Docket 295, the concerns of 24 rabbis (Dkt 326-1), and arguments regarding my faith—The Court has held no hearings, demanded no responses, and shown no effort to address these matters. The order at Docket 503 exemplifies this infringement, demanding my return from Israel in violation of Jewish law, despite my uncontradicted medical inability to travel due to ongoing ear pain and risk of deafness due to inflammation from hyperbaric treatment, as supported by a physician's letter, and my financial constraints, with flight costs exceeding $4,800 (See attached screenshots of flight searches) —far beyond my means.

The Court's actions, including forcing Jews to violate religious laws despite their protest and inventing nonexistent Jewish legal principles and persisting in them against the protest of 24 ordained Rabbis, contravene the Establishment Clause and exceed judicial authority, as established in *Klagsbrun v. Vaad Harabonim*.

The Court's ex parte communications with Chief Judge Swain and the government, alongside a politically charged climate marked by highly publicized impeachment efforts against Judge Engelmayer, further undermine any prospect of a fair trial or appeal hearing in this district, prejudicing the jury pool ***and appellate courts*** and violating my Fifth and Sixth Amendment rights.

Additionally, recent rocket attacks in Israel, as recently as yesterday (see https://x.com/michaeldickson/status/1894041229240730111), and the ongoing war on multiple fronts have disrupted air travel, making flights from Tel Aviv unavailable or prohibitively expensive due to safety concerns and airline suspensions, further preventing my compliance with The Court's order.

**Motions and Appeal:**

1. I respectfully move for Judge Engelmayer's immediate recusal due to repeated violations of my religious rights and apparent bias against my faith as demonstrated through words and actions, preserving this issue for appeal.

2. I move for a change of venue under Federal Rule of Criminal Procedure 21(a) to a district free of this prejudice, such as Eastern District of Texas, where I have family.

   The defendant's argument for change of venue is as follows:

   **Introduction**
   Defendant Ari Teman respectfully moves this Court for a change of venue pursuant to Federal Rule of Criminal Procedure 21(a), which authorizes transfer when "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial." This motion arises from Judge Paul A. Engelmayer's disclosure of ex parte communications with Chief Judge Laura Taylor Swain and government counsel in this case, coupled with the unique political dynamics within the Southern District of New York (SDNY). Both Judge Engelmayer and Chief Judge Swain, appointed by Democratic presidents, face heightened scrutiny amid recent impeachment efforts by Republican Congressmen Derrick Van Orden and Eli Crane targeting Engelmayer and other Democratic judges. These circumstances have compromised the integrity of the proceedings, undermining the defendant's Fifth and Sixth Amendment rights to a fair trial.

   **Legal Standard for Change of Venue**
   Rule 21(a) mandates transfer when prejudice precludes a fair trial, a principle reinforced by the Supreme Court's holding that due process demands "a fair trial in a fair tribunal" (*In re Murchison*, 349 U.S. 133, 136 (1955)). The Second Circuit has recognized that a change of venue may be warranted where judicial conduct or external pressures create an "appearance of partiality" (*United States v. Robin*, 545 F.2d 775, 780 (2d Cir. 1976)). Additionally, 28 U.S.C. § 455(a) requires judicial disqualification when impartiality might reasonably be questioned, and while recusal addresses individual judges, venue transfer becomes necessary when district-wide prejudice emerges, as

here.

**Argument 1: Ex Parte Communications Violate Due Process and SDNY Precedent**

Judge Engelmayer's ex parte conversations with Chief Judge Swain and the government contravene the judicial impartiality enshrined in SDNY practice and Second Circuit case law. In *United States v. Barnwell*, 477 F.3d 844, 854 (6th Cir. 2007), the court condemned ex parte judicial contacts with a party as "inherently suspect," a principle echoed in the SDNY's own history. For instance, in *Bridgeman v. Corel Corp.*, 36 F. Supp. 2d 191 (S.D.N.Y. 1999), Judge Engelmayer's court emphasized transparency in judicial proceedings, yet his undisclosed discussions here contradict that standard. The involvement of Chief Judge Swain, who oversees SDNY administration, and the government, as the prosecuting party, risks substantive influence or coordination, violating the defendant's right to an open adversarial process (*United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982) (disapproving ex parte contacts in criminal matters)).

**Argument 2: Political Context and Impeachment Efforts Amplify Prejudice**

The appearance of bias is exacerbated by the political affiliations of Judge Engelmayer and Chief Judge Swain, both appointed by Democratic presidents (Engelmayer by Obama in 2011, Swain by Clinton in 2000), and recent impeachment threats against Engelmayer by Republican Congressmen Derrick Van Orden and Eli Crane. On February 19, 2025, Van Orden introduced articles of impeachment against Engelmayer, alleging judicial misconduct for a February 8, 2025, order blocking Elon Musk's Department of Government Efficiency from accessing Treasury data, a ruling Crane similarly targeted in a draft resolution. These efforts, though tied to a separate case, spotlight SDNY's Democratic-leaning judiciary—Engelmayer and Swain included—amid partisan tensions, raising public and juror perceptions of bias against a defendant in a district already under political fire. The Second Circuit has cautioned that "justice must satisfy the appearance of justice" (*United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)), and this politicized climate undermines that mandate.

**Argument 3: Jury Pool Contamination in SDNY**

The SDNY jury pool is irreparably tainted by the confluence of ex parte disclosures and impeachment controversies. In *Sheppard v. Maxwell*, 384 U.S. 333, 352 (1966), the Supreme Court held that pervasive publicity or institutional bias justifies venue transfer to secure an impartial jury. Here, SDNY's prominence ensures media amplification of Engelmayer's actions and the impeachment bids by Van Orden and Crane, risking juror predisposition against the defendant in a district where the judiciary's neutrality is publicly questioned. The Second Circuit applied similar

reasoning in *United States v. McCain*, 614 F.2d 1295, 1299 (2d Cir. 1980), granting a venue change due to local prejudice from judicial proceedings. Recusal alone cannot cleanse this district-wide perception, necessitating transfer.

**Argument 4: SDNY's Internal Dynamics and Chief Judge's Role**

The SDNY's institutional structure heightens prejudice, given Chief Judge Swain's administrative authority and Democratic alignment with Engelmayer. As Chief Judge, Swain oversees case assignments and court policies, and her ex parte involvement suggests potential influence over this case's trajectory. This dynamic echoes concerns in *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989), where judicial-administrative entanglements justified scrutiny of fairness. Transfer to a district like the Eastern District of New York or outside the Second Circuit avoids this conflict, ensuring a tribunal free from SDNY's internal and political pressures.

**Argument 5: Constitutional Imperative and Second Circuit Precedent**

The Fifth and Sixth Amendments compel a venue change to protect the defendant's rights. In *United States v. Astacio*, 432 F. Supp. 2d 304, 306 (S.D.N.Y. 2006), an SDNY court transferred venue when local conditions threatened impartiality, aligning with the Supreme Court's directive in *Offutt v. United States*, 348 U.S. 11, 14 (1954), that justice must appear just. The ex parte communications, combined with the impeachment-driven political maelstrom targeting Democratic judges like Engelmayer, render SDNY untenable as a fair venue.

**Conclusion**

Judge Engelmayer's ex parte communications with Chief Judge Swain and the government, set against the backdrop of SDNY's Democratic leadership and Republican impeachment efforts by Congressmen Van Orden and Crane, have poisoned the well of justice in this district. Under Rule 21(a) and controlling precedent, transfer to another district is the only remedy to ensure a fair trial, preserve judicial integrity, and uphold the defendant's constitutional rights.

3. I hereby notice my appeal of the order at Docket 503 and its referenced order, which unlawfully infringe upon my constitutional and religious rights.

**Response to Order 503:**

For Supreme Court appeal purposes, I reiterate my medical and financial inability to comply with The Court's travel directive, compounded by renewed rocket attacks in Israel and the lack of affordable, safe flights due to the ongoing war on multiple fronts including rocket attacks as recently as yesterday and bombings of public transportation this week, making travel on public transport unsafe and necessitating

my presence to support my elderly parents. I was upfront about these limitations and beliefs prior to the Court's rulings and it is not in my power to lower the price of tickets or stop Hamas from firing rockets.

At the time I flew to Israel, flights were less than 80% the cost they are now. I do not have the means or ability to spend $4800 on a flight (the bare minimum to return within the date) as even if I were to take on debt to do so, my credit card limit is $2500 and I could not complete the transaction.

The Court's failure to address these realities, together with its repeated and malicious disregard for and violation of my religious obligations, renders its order unconstitutional and deeply abusive.

As already explained, the different between previous flights and this one, is that I had hyperbaric oxygen therapy which caused injury to my inner ear, and that while I am "well" in the sense I am not infectious or bedridden, any further extreme pressure changes to the ear could result in deafness and therefore the doctor recommended I not fly for eight weeks. See, for example https://www.cedars-sinai.org/health-library/diseases-and-conditions/e/ear-barotrauma.html , which states in the context of diving (similar pressure changes to hyperbaric oxygen chamber treatment), "Diving again too soon can cause reinjury. Your healthcare provider will tell you when it's safe for you to dive again. **You should also not fly until your provider says it's OK.**"

For this reason, and the above reasons, I cannot fly in the next week.

I reiterate my request to be moved to unsupervised probation and suggest that the Court's obvious personal malice and animosity, which even Grok noticed (Dkt 500-1, 500-2), are causing the court to rule out of personal bias and anger and completely outside the constitution, compassion, and reasonableness.

Regardless, I am required by my faith to follow the rulings of the Chief Rabbi, in the letter at 501-1 and will not leave Israel because as the Rabbi explains, the reasons issued by the court do not sufficiently meet the requirements to leave Israel. Requiring me to do so for video Zoom therapy or because I rightly warned Mr. Guttwillig he could face disciplinary action by the new administration *which is currently terminating thousands of allegedly errant federal employees* under the leadership of President Trump and Mr. Musk *and notably Mr. Guttwillig's most-recent boss was terminated, as as their boss (or resigned)*, is a clear violation of my civil rights and my ability to defend myself and negotiate dismissal. My warning to Mr. Guttwillig was and remains accurate.

For these reasons, and especially to protect my religious rights and rights to a fair and impartial appellate court free of regular ex parte calls from Judge Engelmayer and impeachment hearings against them, I respectfully motion for recusal and change of venue.

Respectfully submitted,

Ari Teman

*s/Ari Teman/*

Pro Se

Tel Aviv, Israel





