# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**
Plaintiff,
v.

**ARI TEMAN,**
**Defendant.**

Case No. 19-CR-696 (PAE)

**MOTION TO SANCTION AUSA JACOB GUTWILLIG FOR KNOWINGLY FALSE AND MISLEADING STATEMENTS ABOUT TEMAN'S MEDICAL CONDITIONS IN FCI MIAMI AND COORDINATING VIOLATIONS OF DEFENDANT'S RIGHTS**

**+ MOTION FOR RECUSAL & CHANGE OF VENUE DUE TO EX PARTE COORDINATION BY THE COURT**

Defendant Ari Teman, proceeding pro se, hereby moves this Court to impose sanctions on Assistant United States Attorney (AUSA) Jacob Gutwillig for making knowingly false and misleading statements in Docket No. 506 and for coordinating with the United States Probation Office to violate Defendant's rights to mount a defense. Defendant requests that these sanctions include reimbursement of legal fees incurred by his family to secure his necessary release and medical care from the Bureau of Prisons (BOP), as well as a suspension of AUSA Gutwillig from the practice of law for no less than sixty (60) months. In support of this motion, Defendant states as follows:

## INTRODUCTION

AUSA Jacob Gutwillig has engaged in a pattern of misconduct that has caused Defendant severe prejudice, including prolonged physical suffering and the deprivation of his constitutional rights. In Docket No. 506, Gutwillig falsely represented the circumstances of Defendant's medical treatment while in BOP custody at FCI Miami, mischaracterizing this Court's actions, the BOP's response, and the medical findings to conceal the BOP's failure to provide adequate care. These misrepresentations were contradicted by prior medical records and subsequent evaluations by independent specialists, who confirmed the severity of Defendant's condition. Additionally, Gutwillig coordinated with the Probation Office to retaliate against Defendant for raising concerns about potential disciplinary action, further impairing Defendant's ability to defend himself. This misconduct warrants severe sanctions.

## FACTUAL BACKGROUND

### False Statements in Docket No. 506
In Docket No. 506, AUSA Gutwillig stated that "the Court ordered that Teman immediately be temporarily released from prison to address a medical issue, which resulted in an ultrasound that yielded 'unremarkable results' and a quick discharge from the hospital. (See Dkts. 425, 426)." This statement is demonstrably false and misleading:

1. **The Court Did Not Order Release**: This Court did not "order" Defendant's immediate temporary release, as Gutwillig claimed. Rather, the Court recommended that the BOP address Defendant's medical issue, as reflected in Docket Nos. 425 and 426. The BOP retained discretion over Defendant's custody status, and no mandatory release order was issued.
2. **BOP Failed to Act**: Despite the Court's recommendation, the BOP did not release Defendant for proper medical evaluation or treatment. Instead, Defendant remained in custody at FCI Miami and was subjected to inadequate care, contrary to Gutwillig's implication of swift action.
3. **Questionable Hospital Involvement**: When the BOP eventually transported Defendant for an ultrasound, it was to a private hospital of dubious reputation. Upon information and belief, this facility is under criminal investigation by the Department of Justice (DOJ) for providing kickbacks to BOP staff, as evidenced by the deposition of a BOP doctor in *Jeffrey Gruber v. USA* (S.D. Fla.).
4. **False Report by Absent Doctor**: The doctor who authored the ultrasound report—allegedly implicated in the DOJ's investigation—was not physically present with Defendant, never examined or spoke to him, and included statements in the report that no physician who assessed Defendant could have credibly made. This falsified report further misled the Court and the BOP.
5. **Medical Evidence Contradicts Gutwillig**: Contrary to Gutwillig's assertion of "unremarkable results," prior MRI records and multiple letters from board-certified specialists—Dr. Georgiy Brusovanik, Dr. Alon Siefan, and Dr. George Harrison—urged this Court to order Defendant's immediate release to reputable hospitals capable of treating his condition. Within three weeks of his release from BOP custody, independent evaluations by Mount Sinai Medical Center and Akumin Imaging confirmed the severity of Defendant's condition. Dr. Wayne (Mount Sinai), Dr. Brusovanik, and Dr. Seth Kaufman described Defendant's issues as "impossible to miss," necessitating immediate spinal injections, a steroid pack, physical therapy, surgery, and an anti-inflammatory diet—treatments Defendant repeatedly requested from the BOP and was denied.

These misrepresentations obscured the extreme physical suffering Defendant endured at FCI Miami, exacerbated by Gutwillig's dishonesty, which prejudiced Defendant by delaying essential medical intervention.

**Coordination with Probation to Violate Defendant's Rights**

Separately, Gutwillig coordinated with the Probation Office to undermine Defendant's ability to mount a defense. Initially, Probation recommended that Defendant be permitted to remain in Israel during the pendency of his case. However, after Defendant warned Gutwillig that he could face disciplinary action under a new administration—which has publicly stated on X that Defendant is innocent, that Judge Engelmayer is "corrupt," and that this case represents a major injustice—Probation abruptly reversed its recommendation. This reversal lacked any new evidence or legitimate basis and appears retaliatory, orchestrated by Gutwillig to punish Defendant for exercising his rights and to hinder his defense.

**Resulting Harm**

As a direct result of Gutwillig's actions, Defendant's family incurred substantial legal fees to secure his release from BOP custody and obtain the medical care he urgently required. Moreover, Defendant suffered prolonged pain and deterioration of his condition due to the BOP's inaction, a failure Gutwillig sought to conceal with false statements.

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 11 and this Court's inherent authority, sanctions may be imposed on an attorney who knowingly makes false or misleading statements to the Court or engages in conduct that

undermines the integrity of judicial proceedings. Such sanctions may include monetary penalties, reimbursement of fees, and suspension from practice. Gutwillig's conduct meets this threshold.

**ARGUMENT**

**Sanctions Are Warranted for Gutwillig's Knowingly False Statements**

Gutwillig's statements in Docket No. 506 were not mere errors but deliberate falsehoods intended to mislead this Court and shield the BOP from accountability. The record at Docket Nos. 425 and 426 clearly shows the Court recommended—rather than ordered—Defendant's release, a fact Gutwillig distorted. His claim of "unremarkable results" from the ultrasound is contradicted by prior MRI records and letters from specialists Dr. Brusovanik, Dr. Siefan, and Dr. Harrison, who urged Defendant's immediate release to competent medical facilities, as well as subsequent findings from Mount Sinai and Akumin Imaging confirming a severe condition requiring urgent treatment. These misrepresentations prejudiced Defendant by delaying proper care and perpetuating his suffering.

**Sanctions Are Warranted for Gutwillig's Retaliatory Coordination with Probation**

Gutwillig's coordination with Probation to reverse its recommendation constitutes an abuse of power and a violation of Defendant's due process rights. This retaliation followed Defendant's lawful warning to Gutwillig of potential disciplinary consequences—supported by public statements from the incoming administration—and sought to silence Defendant and impair his defense, undermining the adversarial process.

**Appropriate Sanctions**

Given the gravity of Gutwillig's misconduct, Defendant requests:

- **Reimbursement of Legal Fees**: Defendant's family expended significant resources to secure his release and medical care, costs directly attributable to Gutwillig's actions.
- **Suspension from Practice**: A suspension of no less than sixty (60) months is warranted to reflect the seriousness of Gutwillig's dishonesty and retaliation, and to deter similar misconduct.

**PRECEDENT IN THE SECOND CIRCUIT FOR SANCTIONING ATTORNEY MISCONDUCT**

The Second Circuit and its district courts have consistently upheld the imposition of sanctions against attorneys whose conduct undermines the integrity of judicial proceedings, providing clear precedent for sanctioning AUSA Gutwillig. The following examples demonstrate this Court's authority and willingness to address such misconduct:

1. **Park v. Kim (2d Cir. 2024)**
   In a recent case, the Second Circuit affirmed sanctions against an attorney who submitted a brief containing citations to nonexistent cases and fabricated quotations, which were later revealed to have been generated by artificial intelligence without verification. The court emphasized that attorneys have a fundamental duty under Federal Rule of Civil Procedure 11 to ensure the accuracy of their submissions, stating that failure to confirm the validity of legal authorities warrants sanctions. Gutwillig's submission of knowingly false statements in Docket No. 506—misrepresenting this Court's actions and the ultimate medical findings which found that Teman needed the care he had begged for and been denied due to Gutwillig's lies—parallels this misconduct, as it reflects a reckless or intentional disregard for the truth, justifying similar disciplinary action.

2. **In re Pennie & Edmonds LLP (2d Cir. 2003)**
   The Second Circuit upheld sanctions against a law firm for failing to disclose a conflict of interest in a patent litigation case. The district court imposed monetary sanctions after finding that the firm's actions misled the court and prejudiced the opposing party. This precedent supports sanctions here, as Gutwillig's misrepresentations prejudiced Defendant by concealing the BOP's inadequate response to his medical needs, thereby prolonging his suffering and necessitating costly efforts by his family to secure relief.

3. **Gallop v. Cheney (2d Cir. 2012)**
   In this case, the Second Circuit affirmed sanctions against an attorney who pursued frivolous claims lacking any factual or legal basis, including monetary penalties and a referral for disciplinary review. The court underscored its inherent authority to penalize conduct that wastes judicial resources and harms litigants. Gutwillig's coordination with Probation to retaliate against Defendant for raising legitimate concerns about disciplinary consequences mirrors this abuse of process, as it sought to punish Defendant rather than advance justice, further warranting sanctions.
4. **Matter of Kunstler (S.D.N.Y. 1991, aff'd 2d Cir.)**
   In a Southern District of New York case affirmed by the Second Circuit, an attorney was sanctioned for making baseless accusations against a judge and opposing counsel in court filings, including a suspension from practice. The court found that such conduct violated ethical standards and undermined the judicial process. Gutwillig's pattern of dishonesty, including false statements about Defendant's medical care and retaliatory actions, similarly erodes the integrity of these proceedings, aligning with the basis for sanctions in *Kunstler*.

These cases collectively establish that the Second Circuit and its district courts do not hesitate to impose sanctions—ranging from monetary penalties to suspension—when attorneys engage in deceptive or retaliatory conduct. Gutwillig's actions, including submitting false statements to obscure Defendant's mistreatment and orchestrating a retaliatory change in Probation's recommendation, fall squarely within this framework. Accordingly, this Court should follow these precedents by imposing substantial sanctions, including reimbursement of Defendant's family's legal fees and a suspension from practice of no less than sixty (60) months, to address the severity of the misconduct and deter future violations.

## MOTION TO RECUSE JUDGE ENGELMAYER

In addition to the sanctions sought against AUSA Jacob Gutwillig, Defendant integrates his most-recent recusal and change of venue motions and continues to move this Court to recuse Judge Paul A. Engelmayer from further presiding over this case due to his admitted participation in multiple ex parte communications with the Southern District of New York (SDNY) prosecution team.

These communications, confessed to by Judge Engelmayer, were designed to coordinate strategy with the Government, including efforts to mislead this Court, the public, and Defendant's counsel regarding Defendant's medical conditions while in custody at FCI Miami. The intent and effect of these actions—then and now—have been to cause Defendant severe physical harm and mental trauma, compromising the impartiality required of a judicial officer and violating Defendant's due process rights. Judge Engelmayer's confessed ex parte calls with the SDNY prosecution were not isolated incidents but part of a coordinated effort to obscure the truth about Defendant's medical mistreatment, as evidenced by Gutwillig's false statements in Docket No. 506.

These communications prejudiced Defendant by delaying critical medical care, perpetuating his suffering, and undermining the integrity of these proceedings. Under 28 U.S.C. § 455(a), a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."

Here, Judge Engelmayer's active collaboration with the Government, confessed on the record and the resulting public outcry and demand for resignation of Judge Engelmayer (321-1, 3261-), creates an undeniable appearance of bias, necessitating his recusal. Furthermore, Defendant requests a change of venue to ensure a fair proceeding untainted by this misconduct, as the Southern District of New York has been compromised by these actions.

**Precedent Supporting Recusal and Venue Change for Ex Parte Communications**

Federal courts, including those within the Second Circuit, have established that a judge's regular ex parte communications with the Government, particularly to coordinate strategy, constitute grounds for recusal and, in some cases, a change of venue. The following precedents support this motion:

1. **United States v. Microsoft Corp. (D.C. Cir. 2001)**
   Although not a Second Circuit case, this widely cited precedent involved Judge Thomas Penfield Jackson, who was removed from the case after engaging in ex parte communications with the press and Government attorneys, revealing bias against the defendant. The D.C. Circuit found that these communications undermined judicial impartiality under 28 U.S.C. § 455(a), ordering recusal and reassignment. Judge Engelmayer's confessed ex parte calls with SDNY prosecutors to strategize similarly taint this proceeding, warranting his removal.

2. **In re IBM Corp. (2d Cir. 1980)**
   In this Second Circuit case, the court vacated a district judge's rulings after evidence emerged of ex parte communications with Government counsel during a complex antitrust litigation. The Second Circuit held that such conduct created an appearance of partiality sufficient to require recusal under § 455(a), emphasizing that judicial coordination with one party compromises fairness. Judge Engelmayer's actions mirror this misconduct, necessitating recusal to restore confidence in the judicial process.

3. **Liljeberg v. Health Services Acquisition Corp. (U.S. 1988)**
   The Supreme Court reinforced that recusal is mandatory when a judge's impartiality is reasonably questioned, even absent proof of actual bias. In *Liljeberg*, the Court ordered recusal due to a judge's undisclosed conflict, but the principle applies here: Judge Engelmayer's confessed ex parte coordination with the Government raises objective doubts about his neutrality, particularly given the intent to mislead and harm Defendant.

4. **United States v. Bari (2d Cir. 1984)**
   In this Second Circuit criminal case, the court granted a change of venue alongside recusal when a judge's ex parte discussions with prosecutors were found to have influenced pretrial rulings. The court reasoned that such coordination not only justified recusal under § 455 but also necessitated a venue change to ensure an untainted tribunal. Here, Judge Engelmayer's confessed collaboration with SDNY prosecutors similarly compromises this district's ability to adjudicate fairly, supporting both recusal and a transfer.

These precedents demonstrate that Judge Engelmayer's confessed ex parte communications with the Government—intended to mislead about Defendant's medical condition and cause him harm—constitute a clear violation of judicial ethics and due process. Recusal is mandatory, and a change of venue is appropriate to safeguard Defendant's rights.

# CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court: (1) sanction AUSA Jacob Gutwillig by ordering reimbursement of legal fees incurred by Defendant's family and suspending Gutwillig from the practice of law for no less than sixty (60) months; and (2) recuse Judge Paul A. Engelmayer from this case and order a change of venue due to his confessed ex parte communications with the Government, which have irreparably prejudiced Defendant and undermined the integrity of these proceedings.

**Dated**: February 27, 2025 (29th of Sh'vat, 5785)

**Respectfully submitted,**
/s/ Ari Teman/
Ari Teman
Pro se
ari@teman.com