B"H

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Docket No.   25-332, 25-452, 25-543 |
| Plaintiff-Appellee, | (To be consolidated, please) |
| v. | |
| **ARI TEMAN,** | |
| Defendant-Appellant. | |

On Appeal from the United States District Court for the Southern District of New York

Case No. 19-CR-696 (PAE)

Honorable Paul A. Engelmayer, District Judge

---

**MOTION FOR RELIEF**

**TO THE HONORABLE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT:**

Ari Teman, Defendant-Appellant, respectfully moves this Court for the following relief: (1) an order directing the recusal of District Judge Paul A. Engelmayer; (2) a stay of the District Court's orders requiring Appellant's return from Israel pending appeal; (3) permission to be added to the Electronic Case Filing (ECF) system or, alternatively, to receive timely ECF alerts at ari@teman.com; (4) consolidation of all appeals except the one filed by Thomas Butler, Esq., into one, with Mr. Butler still handling the appeal he filed, as he is on limited appearance; (5) an opportunity to respond to any government response; (6) a stay of Appellant's return to the United States until a decision on this matter; (7) reversal of the District Court's orders for failing to address Appellant's religious rights arguments; and (8) immediate termination of probation and permission to remain in Israel indefinitely due to excessive punishment and judicial

1 of 14

misconduct. Appellant also requests excusal of any filing delays due to notification errors and permission for Thomas Butler, Esq., to remain as counsel for his specific appeal while Appellant proceeds pro se herein.

## INTRODUCTION

This appeal challenges a series of District Court orders reflecting judicial misconduct and bias by Judge Paul A. Engelmayer, who faces two articles of impeachment in Congress, supported by thousands—including congressmen, Elon Musk, Vice President J.D. Vance, Attorney General Pamela Bondi, rabbis, and community leaders—citing abuses in this case as grounds for his removal. Appellant, a potential fact witness in these proceedings, cannot receive an impartial hearing from a judge publicly accused of criminal conduct and personally adversarial to him.

The orders at issue—requiring Appellant's return from Israel, denying recusal, and imposing burdensome requirements—lack justification, ignore Appellant's religious rights, and serve as retaliation for his participation in impeachment efforts.

Moreover, Appellant's work on a therapy center for trauma survivors and terror victims (SunflowerCenters.com) and five years of destabilizing uncertainty amplify the harm of Engelmayer's actions, necessitating immediate relief, including freedom from probation.

Appellant has been under supervision in one form or another since July 3, 2019 and has never violated. Even Judge Engelmayer has stated multiple times on the record that the Appellant is not a flight risk or risk to the community. No benefit and only harm comes from tearing Appellant away from his family and volunteer work in Israel, especially during an ongoing war with rockets falling as recently as 2 hours ago.

## STATEMENT OF FACTS

- **Impeachment Proceedings Against Judge Engelmayer**: On February 18, 2025, Representative Derrick Van Orden introduced House Resolution 143, alleging "high crimes and misdemeanors" by Judge Engelmayer, including abuses in this case (Dkt. 496 at 4). On or about February 21, 2025, Representative Eli Crane filed articles of impeachment against Judge Engelmayer, following a call

with Appellant's office, identifying Appellant as a potential fact witness (Dkt. 497 at 2). Public figures, including Elon Musk, Vice President J.D. Vance, and Attorney General Pamela Bondi, have denounced Engelmayer as "corrupt" on X and television, amplifying a campaign for his removal (Dkt. 496 at 2-5).

- **Judicial Bias and Conflict**: Judge Engelmayer's confessed *ex parte* communications with prosecutors (Dkt. 321-1) and his personal ties to defense counsel Noam Biale (Dkt. 495 at 2) undermine any appearance of impartiality. Judge Engelmayer's admitted regular habit of *ex parte* calls to aid the prosecution (Dkt. 321-1) resulted in a change of the entire prosecution team and prosecution theory 10 days before trial—which trial counsel labeled a constructive amendment, akin to a bait and switch—further evidencing bias. Appellant's status as a potential fact witness in Engelmayer's impeachment creates an irreconcilable conflict, as adjudicating this case pits Engelmayer against his accuser (Dkt. 496 at 5).

- **Orders Requiring Return from Israel**: The District Court issued multiple orders mandating Appellant's return: (a) Dkt. 484 (Jan. 24, 2025) set an initial return deadline of February 28, 2025, citing Probation's need to supervise mental health treatment; (b) Dkt. 503 (Feb. 24, 2025) maintained the deadline despite Appellant's medical claims; (c) Dkt. 508 (Feb. 27, 2025) extended the deadline to March 21, 2025, and Dkt 522 until April 11, but imposed extensive documentation requirements focusing the orders entirely on one argument regarding an ear injury, while entirely ignoring remote supervision feasibility (Dkt. 501 at 2) and Appellant's religious obligation to reside in Israel (Dkt. 501-1).

- **Denials of Recusal and Other Relief**: The District Court repeatedly denied Appellant's recusal motions (Dkt. 498, Dkt. 508, Dkt. 514, Dkt. 516), despite overwhelming evidence of bias, and rejected procedural adjustments (Dkt. 510, Dkt. 512), exacerbating Appellant's inability to comply due to medical and religious constraints.

- **Procedural Irregularities**: The Second Circuit incorrectly notified Thomas Butler, Esq., instead of Appellant Ari Teman, despite Teman being registered on ECF, because he is not currently linked to this appeal on ECF. Thomas Butler's representation is limited to Appellant's 28 U.S.C. § 2255

motion and one specific appeal, whereas Appellant proceeds pro se on these district court and appellate issues concerning probation. Appellant was only yesterday at 8:49PM Israel Time notified that Mr. Butler had been contacted about this case, at which point Mr. Butler informed both Appellant and the Second Circuit of Appellant's pro se status (Dkt. 509 at 1). This misunderstanding caused filing delays.

- **Therapy Center for Trauma Survivors**: Appellant is spearheading the Sunflower Centers project (SunflowerCenters.com), a therapy center in Israel for trauma survivors and terror victims. He has invested thousands of hours designing the center, assembling an advisory medical team, and building local support, requiring his in-person presence in Israel. Removing Appellant will delay the center's construction and opening, harming thousands awaiting its services.

- **Five Years of Uncertainty**: For the past five years, Appellant has lived with constant uncertainty about his residence, never knowing month-to-month where he will live due to unpredictable rulings. Engelmayer teased compassionate release -- acknowledging that Appellant's immunocompromised state was established by counsel --  only to deny it and necessary medical care, further destabilizing Appellant's life.

- **Denied Medical Care**: Dr. Georgiy Brusovanik's letter (Exhibit A, attached) details how Engelmayer denied Appellant urgent medical care, leaving him in 9/10 agony for months despite recommendations from three board-certified experts—Drs. Brusovanik, Siefan, and Harrison—based on their treatment and records review. Engelmayer instead relied on a BOP administrator with no medical degree and a doctor who never examined Appellant, issuing demonstrably false statements (Dkt. 509 at 3).

---

**ARGUMENT**

# I. Recusal of Judge Engelmayer Is Mandated by Law

Under 28 U.S.C. § 455(a), a judge must recuse where "his impartiality might reasonably be questioned," as affirmed by *Liteky v. United States*, 510 U.S. 540, 548 (1994), and *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). Judge Engelmayer's conduct necessitates recusal across all appealed orders (Dkt. 484, 498, 503, 508, 510, 512, 514, 516):

- Impeachment proceedings and public accusations render Engelmayer's impartiality untenable. He faces two filed articles of impeachment (Dkt. 496 at 4; Dkt. 497 at 2), with this case cited as evidence of misconduct. High-profile figures, including the Attorney General and Vice President, have publicly condemned him as corrupt, creating an objective appearance of bias under *In re IBM Corp.*, 618 F.2d 923, 929 (2d Cir. 1980), which requires recusal when a reasonable person would doubt fairness.

- Appellant's role as a potential fact witness in Engelmayer's impeachment proceedings creates an irreconcilable conflict. Adjudicating this case pits Engelmayer against his accuser, violating due process as recognized in *United States v. Microsoft Corp.*, 253 F.3d 34, 46 (D.C. Cir. 2001), where ex parte coordination necessitated recusal. This adversarial relationship alone mandates his removal.

- Engelmayer's admitted regular habit of ex parte calls to aid the prosecution (Dkt. 321-1) irreparably taints this case. These communications led to a mid-case change of the prosecution team and theory—termed a constructive amendment by trial counsel—akin to a bait and switch, violating fair process under *United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir. 1984). Such misconduct demands recusal to ensure an impartial tribunal.

- Engelmayer's personal relationship with Biale has caused Engelmayer to ignore motions regarding evidence uncovered after sentencing and after the prior appeal in this case, which show that Engelmayer's close personal friend and mentee, Biale, who hid that he was married to SDNY AUSA Margaret Grama, also lied to the defendant and pro bono counsel assisting the defendant about pursuing exculpatory evidence. Rather than have an honest on-the-record inquiry into these matters, as should be required, Engelmayer threatened the defendant with sanctions. These issues have not been addressed by the Second Circuit --

as they were discovered after Sentencing -- and should be heard by an independent court that did not call himself a close friend and "mentor" to Mr. Biale.

---

## II. A Stay Pending Appeal Is Warranted

A stay pending appeal requires (1) likelihood of success, (2) irreparable harm, (3) no substantial harm to the opposing party, and (4) public interest, per *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), and *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). A stay of the return orders (Dkt. 484, 503, 508) is justified:

- Appellant is likely to succeed on the merits. The impeachment proceedings, Engelmayer's conflicts, ignored arguments, and ignored religious rights across the orders (e.g., Dkt. 508, Dkt. 514) strongly favor reversal, as seen in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988), where objective bias warranted relief.
- Forcing Appellant's return causes irreparable harm. It violates his First Amendment religious rights (Dkt. 501-1), risks permanent ear damage (Dkt. 502-1), delays the Sunflower Centers project, harming thousands of trauma survivors (SunflowerCenters.com), prevents volunteering with injured victims of terror and soldiers, and exacerbates five years of destabilizing uncertainty, constituting irreparable injury under *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
- The government suffers no substantial harm from a stay. Remote supervision is viable (Dkt. 501 at 2), as Probation initially recommended (Dkt. 483), ensuring compliance without Appellant's physical presence.
- The public interest favors a stay. Upholding judicial integrity amid impeachment proceedings and enabling the Sunflower Centers to aid trauma victims align with public welfare, as supported by *United States v. Astacio*, 432 F. Supp. 2d 304, 306 (S.D.N.Y. 2006).

## III. The District Court's Reasons for Return Are Insufficient

Supervised release conditions must be "reasonably related" to sentencing goals and involve "no greater deprivation of liberty than is reasonably necessary" under 18 U.S.C. § 3583(d), per *United States v. Myers*, 426 F.3d 117, 124 (2d Cir. 2005). Conditions burdening religious exercise require a compelling, narrowly tailored interest (*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993)). The District Court's rationale (Dkt. 484, 503, 508)—supervising mental health—is insufficient:

- Probation has confirmed that remote monitoring via Zoom is a viable alternative (Dkt. 501 at 2). This minimally restrictive option, upheld in *United States v. Johnson*, 529 F.3d 493, 498 (2d Cir. 2008), negates any need for Appellant's physical return to the United States, rendering the orders excessive.

- Additionally, Appellant's documented ear injury (Dkt. 502-1) contraindicates travel, a fact the Court dismissed without proper consideration (Dkt. 508, 514). Under *United States v. Lifshitz*, 369 F.3d 173, 183 (2d Cir. 2004), conditions must account for individual circumstances, and the Court's failure to do so undermines its rationale.

- Remote monitoring and required therapy can be conducted in Israel, including by U.S.-trained and licensed professionals, fully satisfying Probation's objectives (Dkt. 501 at 2). This availability eliminates any compelling interest in Appellant's return, which unjustifiably overrides his sincerely held religious belief—affirmed by Rabbi Yaakov Chikotai (Dkt. 501-1)—that he must remain in Israel. *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996), holds that such beliefs prevail absent a narrowly tailored justification, which is absent here.

The return orders must be vacated as disproportionate and unlawful.

## IV. Religious Rights Were Ignored, Requiring Reversal by Default

The First Amendment mandates that courts address free exercise claims or concede them by default, per *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993), and *Ford v. McGinnis*, 352 F.3d 582, 591 (2d Cir. 2003). The District Court's failure to do so warrants reversal:

- Appellant repeatedly raised his religious obligation to reside in Israel (Dkt. 501-1; Dkt. 505 at 1), supported by rabbinical affirmation.
- Yet, across multiple orders (Dkt. 484, 503, 508, 514, 516), the Court offered no rebuttal or analysis, effectively ignoring this constitutional claim.
- Under *United States v. Hamilton*, 699 F.2d 232, 235 (5th Cir. 1983), unaddressed constitutional claims are presumed meritorious. The Court's silence constitutes a default victory for Appellant, requiring reversal of all orders infringing on his religious rights.

---

## V. The § 2255 Motion Has a Strong Chance of Success, Supporting a Stay

A stay is bolstered by a strong § 2255 likelihood where a defendant was unfit for trial, per *Strickland v. Washington*, 466 U.S. 668, 694 (1984), and *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Appellant's pending motion justifies relief:

- Three medical experts—Drs. Brusovanik, Siefan, and Harrison—submitted sworn statements that Appellant was unfit to prepare for or stand trial due to severe impairments (Dkt. 509 at 3). No counter-expert refutes this, and medical records corroborate incapacity, supporting a constitutional violation under *United States v. Auen*, 846 F.2d 872, 878 (2d Cir. 1988).

- Given this uncontroverted evidence, the § 2255 motion is likely to overturn Appellant's conviction. Ordering his return pending resolution is premature and unjust, as it presumes a valid underlying sentence that may soon be vacated.

## VI. Probation as Punishment Is Vindictive and Unlawful

Probation is for rehabilitation, not punishment, per *United States v. Granderson*, 511 U.S. 39, 47 (1994), and *United States v. Dozier*, 119 F.3d 239, 243 (3d Cir. 1997). The return orders (Dkt. 484, 503, 508) are punitive:

- Forcing Appellant from Israel separates him from elderly parents and delays the Sunflower Centers, serving no rehabilitative purpose. Remote supervision suffices (Dkt. 501 at 2), yet the Court insists on return, violating *United States v. Murray*, 692 F.2d 149, 152 (D.C. Cir. 1982), which rejects vindictive conditions.
- Appellant endured 19 months of isolation (Dkt. 509 at 3) and five years of uncertainty, with Engelmayer denying compassionate release and care despite known health issues. This pattern of destabilization, culminating in the return orders, reflects retaliation for the impeachment campaign against Engelmayer by law professors, rabbis, congressmen, and the Executive Branch.

## VII. Engelmayer's Denial of Medical Care Warrants Immediate Release

Deliberate indifference to medical needs violates the Eighth Amendment, warranting relief under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013):

- Dr. Brusovanik's letter (Exhibit A) details Engelmayer's denial of urgent care, leaving Appellant in 9/10 agony for months despite three experts' recommendations (Dkt. 509 at 3).

- Engelmayer relied on a non-medical BOP administrator and a doctor who never examined Appellant, issuing false statements, despite prior knowledge of Appellant's health issues (Dkt. 509 at 3).
- This imposed harder time than sentenced, evidencing intent to torture. Appellant has suffered excessively, justifying immediate termination of probation and permission to remain in Israel indefinitely.

## VIII. Additional Grounds for Reversal

Additional errors compel reversal of the orders (Dkt. 484, 498, 503, 508, 510, 512, 514, 516):

- Probation's reversal of its Israel recommendation (Dkt. 483 to Dkt. 501) after Appellant's warning to AUSA Gutwillig chills his First and Sixth Amendment rights, per *Bounds v. Smith*, 430 U.S. 817, 821 (1977).
- Sealed records confirm prior BOP neglect (Dkt. 509 at 3), further violating *Estelle v. Gamble*, 429 U.S. at 104.
- Notification to Thomas Butler, Esq., instead of Appellant caused delays, excusable under *Pioneer Inv. Servs. Co.*, 507 U.S. 380, 395 (1993).

## IX. Procedural Requests

Appellant seeks procedural accommodations to ensure a fair appeal:

- Appellant requests ECF registration or alerts at ari@teman.com to meet deadlines, per *FRAP 25(a)(2)(B)*.
- Consolidation of all appeals except Butler's into one streamlines review, per *FRAP 3(b)(2)*, with Butler handling his limited appeal.

- Due process requires an opportunity to reply to any government response, per *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).
- Thomas Butler, Esq., should remain counsel for his appeal, with Appellant pro se herein, per *FRAP 46(c)*.

## X. The District Court's Orders Violate Due Process by Imposing Arbitrary and Capricious Conditions

The Fifth Amendment prohibits arbitrary government action (*Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)), and supervised release conditions must be rational and evidence-based (*United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999)). The return orders (Dkt. 484, 503, 508) fail this standard:

- The District Court provided no evidence linking Appellant's physical presence in the U.S. to effective supervision, despite Probation's endorsement of remote monitoring (Dkt. 501 at 2). This lack of factual basis renders the orders arbitrary, violating due process under *United States v. Springston*, 650 F.3d 1153, 1156 (8th Cir. 2011), where unsupported conditions were invalidated.
- The timing of the return orders, following Appellant's public role in impeachment efforts against Engelmayer (Dkt. 496 at 4), suggests a retaliatory motive rather than a legitimate supervisory purpose. Such vindictiveness is capricious and unconstitutional, per *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), which prohibits judicial retaliation.

These due process violations require reversal and termination of probation.

## XI. The Orders Infringe on Appellant's Right to Freedom of Association

The First Amendment protects freedom of association, including familial and community ties (*Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)). Supervised release conditions cannot unduly restrict this right (*United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006)):

- Forcing Appellant's return from Israel severs his ties with elderly parents, a core associational right, without a compelling justification. Remote supervision is feasible (Dkt. 501 at 2), yet the Court imposes this burden, violating *Smith*, 445 F.3d at 716, where familial restrictions required strict scrutiny the government cannot meet here.
- The orders disrupt Appellant's in-person leadership of the Sunflower Centers (SunflowerCenters.com) and  in-person volunteering with injured victims of terror , impairing his association with trauma survivors and medical teams in Israel. This expressive community work is protected under *NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958), and its curtailment without necessity is unconstitutional.
- The orders disrupt Appellant's ability to associate with coreligionists who share the belief that a Jew is required to live in Israel and not to leave Israel, and to build a family in Israel.

The return orders must be vacated to preserve these rights.

---

## XII. Cumulative Error Doctrine Requires Reversal

Even if individual errors are not reversible, their cumulative effect can deny a fair proceeding (*Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978); *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008)):

- Engelmayer's bias (Dkt. 321-1), ignored religious rights (Dkt. 501-1), denied medical care (Exhibit A), procedural irregularities (Dkt. 509 at 1), and arbitrary conditions (Dkt. 484, 503, 508) collectively undermine the orders' legitimacy. Each error compounds the others, creating a fundamentally unfair process.

- This aggregation prejudiced Appellant's ability to defend his liberty, mirroring *Al-Moayad*, 545 F.3d at 178, where cumulative bias necessitated relief. The sheer volume of misconduct—amplified by Engelmayer's personal stake in silencing Appellant—demands reversal of all orders (Dkt. 484, 498, 503, 508, 510, 512, 514, 516).

**RELIEF REQUESTED**

Appellant respectfully requests:

1. Recusal of Judge Paul A. Engelmayer;
2. Stay of return orders (Dkt. 484, 503, 508);
3. ECF access or alerts at ari@teman.com;
4. Consolidation of all appeals except Butler's into one;
5. Opportunity to respond to government response;
6. Stay of return until decision;
7. Reversal of orders (Dkt. 484, 498, 503, 508, 510, 512, 514, 516);
8. Termination of probation and permission to remain in Israel indefinitely;
9. Excusal of filing delays;
10. Butler remains as counsel for his appeal.

**CERTIFICATE OF SERVICE**

I certify that on March 27, 2025, a true copy was served via email and SDNY pro se email on:

- Matthew Podolsky, Acting U.S. Attorney, SDNY (via ECF via Temp Pro Se Email)
- Jacob H. Gutwillig, AUSA  (via ECF via Temp Pro Se Email
- U.S. Probation Office, S.D.F.L. (via email)

/s/ Ari Teman

Ari Teman, Pro Se

27th of Adar, 5785

---

**EXHIBIT A: LETTER FROM DR. GEORGIY BRUSOVANIK**

ATTACHED