UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

---

19 Cr. 696 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order addresses the deadline for defendant Ari Teman to return to the United States.

## I.   Background

On January 24, 2025, this Court ordered Teman, who is presently in his first year of a three-year supervised release term following service of a 12-months-and-one-day prison sentence on two counts apiece of bank and wire fraud, to return to the United States by February 28, 2025. Dkt. 484. As of then, Teman had been in Israel for four-and-a-half months, with the Court's permission. As the Court, supported by the United States Probation Office ("Probation"), explained, Teman's return to the United States was important, to enable Probation to meaningfully supervise him, in particular, with respect to the special condition of supervised release requiring Teman to obtain mental health treatment. *Id.* at 7. The Court, however, *sua sponte* extended the deadline for Teman's return (then, January 29, 2025) to enable Teman (and Probation) to plan for his return, to enable Teman to investigate economical air travel options, and to give Teman time to appeal the order to the U.S. Court of Appeals for the Second Circuit should he choose to do so. *Id.* at 9–10. The Court emphasized that its order was final, that it would not alter the February 28 deadline unless ordered to do so by the Second Circuit, and that

if Teman were to fail to return that day, he would be in violation of the supervised release condition prohibiting unauthorized international travel. *Id.* at 10.

Following that date, Teman, who is otherwise represented, instead repeatedly moved, *pro se*, for sanctions and for the Court's recusal, recycling claims of misconduct rejected by Second Circuit in its June 2023 summary order affirming Teman's convictions for wire and bank fraud. *See United States v. Teman*, No. 21-1920-cr, 2023 WL 3882974, at *3 (2d Cir. June 8, 2023) ("There is nothing to Teman's argument that Judge Engelmayer was required to recuse himself[.]"). The Court denied these motions as meritless. *See, e.g.*, Dkt. 514 (denying motion at Dkt. 513); Dkt. 498 (denying motion at Dkt. 496); Dkt. 480 (denying motion at Dkt. 478); Dkt. 477 (denying motion made by email).

On February 24, 2025, Teman, *pro se*, moved anew for relief from the Court's January 24, 2025 order, contending, for the first time that his return to the United States would be medically contra-indicated. *See* Dkt. 502. In support of this late argument, Teman attached a brief doctor's note from a Maurice Budow, MD, dated February 24, 2025, stating that, although Teman was "well," the change in air pressure caused by air travel could trigger his chronic sinusitis and cause acute sinusitis, and that his guidance is that Teman not fly for eight weeks. Dkt. 502-1. In an order the same day, the Court noted that Teman, with the Court's permission, had repeatedly engaged in air travel since his conviction in January 2020, including having flown to and from Australia to perform comedy while his appeal was pending and to Israel while on supervised release. *See* Dkt. 503. The Court directed the Government to investigate Teman's claim, including by determining, through inquiry of Dr. Budow, the extent to which the doctor had been aware, prior to signing the note, of Teman's prior plane travel and the impact, if any, it had had on his sinusitis. *Id.* at 1–2. The Court also directed Teman, by the following day, to file

records documenting the plane ticket, if any, that he had purchased to enable him to return to the United States by February 28. *Id.* at 2.

In a letter response filed on February 26, 2025, the Government explained that it had determined from public records that Dr. Budow is a doctor based in Israel. *See* Dkt. 506. However, the Government stated, it was unable to obtain the information requested by the Court or confirm Teman's representations about Dr. Budow's diagnosis, given limitations on evidence-gathering abroad. *Id.* at 1. The Government confirmed with Teman's Probation Officer that Teman had not provided him with any such documentation. *Id.* The Government urged the Court either to adhere to its order that Teman return to the United States on February 28, 2025, or direct Teman to produce supplemental medical records corroborating his claim. *Id.* at 2. Early on February 27, 2025, Teman, *pro se*, replied, demanding that sanctions be imposed on the Assistant United States Attorney who authored the letter. Dkt. 507.

In a lengthy order issued February 27, 2025, the Court expressed its firm view, with the Government, that Teman's proffered medical excuse for not complying with the Court's order to return to the United States tomorrow is a pretext. Dkt. 508 (the "February 27 order"). "Every indication," the Court stated, "is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return, which he has repeatedly stated he does not wish to do." *Id.* at 3. Evidence of this, the Court stated, were that (1) as of February 25, 2025, Teman had not purchased a plane ticket for a trip he had been ordered to take by February 28, 2025; (2) alongside the medical excuse, Teman articulated a series of frivolous alternative bases why he purportedly could not travel to the United States; (3) Teman's doctor's note pronounced that, as of February 24, 2025, he was "well" and did not represent that Teman had sought out a medical opinion regarding the compatibility of air travel with his sinusitis condition until four

days before the deadline for his return; and (4) then-recently filed sworn affidavits submitted by

Teman's two trial counsel, Joseph DiRuzzo, Esq., and Justin K. Gelfand, Esq., in connection with

Teman's pending motion pursuant to 28 U.S.C. § 2255, had refuted as factually untrue numerous

representations Teman had made to the Court, and had reported an attempt by Teman—rebuffed

by his ethical counsel—to arrange for an anonymous call to be placed from a burner phone to the

Federal Bureau of Investigation falsely claiming that a juror at his trial engaged in misconduct;

and (5) the overall case record "reveal[ed] a regrettable but persistent pattern of Teman's making

demonstrably false and self-serving statements and accusations." *See id.* at 3-4 (citations

omitted).

The Court's February 27 order stated that, although the Court would be well within its

discretion to deny Teman's application as contrived, in the interest of due care, it would seek out

additional evidence bearing on Teman's claim to be unable to safely fly due to recent sinusitis.

*Id.* at 4–5. The order extended Teman's return date until March 21, 2025, while setting deadlines

for Teman to file designated medical records, chronicle his plane flights since 2015 and identify

any medical complaints arising from them, and purchase a plane ticket for return to the United

States. The order also notified the Government that, on receipt of Teman's medical records, it

would likely be asked to obtain an independent assessment by a qualified medical professional,

*id.* at 5–6.

Teman partly complied with that order. On March 5, 2025, he filed a letter from Dr.

Budow stating that he had examined Teman on February 22, 2025, and had concluded that

Teman had injured his ear during hyperbaric oxygen therapy on January 22, 2025. Dkt. 513 at 6.

Dr. Budow now opined that Teman should not fly until June 1, 2025. *Id.* However, as the Court

noted in an order the next day, Teman had not attached any records of Dr. Budow's examination;

4

the Court directed Teman to file those by the following day. Dkt. 514.  On March 10, 2025, Teman filed a one-page letter, which he stated, reflected his having had "hyperbaric oxygen therapy" on January 22, 2025. Dkt. 518-1.  Teman also filed records of his medical care for an unrelated condition in 2024, while incarcerated.  *Id.* at 518-2–4.  However, notwithstanding having been ordered to do so, Teman did not file underlying records of his examination by Dr. Budow; chronicle his prior plane travel, save flights he had taken during his term of supervised release; or produce evidence of his having purchased a plane ticket to return to the United States by the deadline the Court had set.  Instead, in what the Court understood to express a refusal to return, he stated that he "must remain in Israel until . . . Engelmayer is impeached and this case is dismissed with prejudice."  Dkt. 518 at 2.

Since Teman's March 5, 2025 letter, the Court has extended his return date several times, at the Government's request, to enable it to secure an independent review of the medical records Teman had provided.  *See* Dkt. 522 (extending return date to April 11, 2025); Dkt. 524 (extending return date to April 25, 2025); Dkt. 529 (extending return date to April 29, 2025).

On April 15, 2025, the Government filed a letter, Dkt. 530, attaching a report from Dr. Richard Nass, a specialist in otolaryngology and sinus issues, *id.*, Exh. A.  Dr. Nass's evaluation noted that the medical records Teman has provided did not squarely address his claimed otolaryngological issues.  *Id.*  Teman, Dr. Nass noted, had seen only an internist (Dr. Budow).  *Id.*  Dr. Nass further noted that, although hyperbaric oxygen treatment can cause complications to the middle ear, which increase the risk of injury during air travel, "evaluation and management by an otolaryngologist can accurately make a diagnosis, assess the risk involved in the individual case," and "make air travel safe for the affected ear."  *Id.*  Teman, however, had either not seen a doctor with that specialty or produced records of such an

evaluation. As a result, Dr. Nass stated, the limited records Teman had supplied do "not allow a definitive answer as to whether Mr. Teman can safely fly at this time." *Id.*

The Government's letter stated that Teman's failure to submit relevant records had left Dr. Nass, and the Government, unable to render an opinion whether air travel was safe for Teman. Dkt. 530 at 2. It stated that it questioned "the motivation and provenance of Teman's claims." *Id.* It noted that Teman had agreed to jointly proposed conditions regarding international travel during his supervised release term but thereafter had repeatedly made motions to stay in Israel well past his original proposed return date of November 6, 2024. The Government stated:

> In view of that timeline and the content of the medical records Teman has submitted that he claims, show that it is unsafe for him to fly, the Government maintains its view that Teman is using claims about his medical conditions as a pretext to stay in the Israel and not serve his remaining term of supervised release. By submitting incomplete and irrelevant records, Teman has managed to create a circumstance where, as Dr. Nass' report concludes, it is not possible to determine whether what Teman claims is true; and indeed, Teman theoretically could continue to make such claims, whether or not based in fact.

*Id.* at 2. Nonetheless, the Government stated, because it was constrained to defer to the inconclusive determination in Dr. Nass's report and did not wish to jeopardize Teman's health, it had chosen "not to object to extending the deadline for Teman's return until June 1, 2025, the date by which Teman claims it will be safe for him to fly." *Id.* The Government, however, urged that no further adjournment of that date be granted. *Id.*

## II.    Order

The Court extends, until June 1, 2025, the date by which Teman is required to return to the United States. That is the date before which Teman's internist, Dr. Maurice Budow, recommended Teman not fly. The Court extends the return date based on the assessment of Dr. Nass, the independent medical expert. As Dr. Nass explained, the limited paperwork

6

submitted by Teman—which did not include any assessment by a relevant specialist, like an otolaryngologist—"does not allow a definitive answer as to whether Mr. Teman can fly safely at this time." Dkt. 530, Exh. A at 2. The Court, like the Government, does not wish to jeopardize Teman's health. The Court therefore will extend by 33 days the deadline for Teman to return to the United States from the present April 29, 2025 deadline. It is undisputed that as of June 1, 2025, Teman can safely return.

That said, the Court's firm conclusion—along with the Government —is that Teman's claim that air travel is medically risky is pretextual. Numerous data points support that Teman invoked this in late February as a last-ditch excuse to avoid returning to the United States. These include those chronicled in detail in the Court's February 27 order; Teman's failure to abide by Court's orders to make a plane reservation for a return trip; Teman's non-compliance with other aspects of this Court's recent orders; Teman's offer of other bogus rationalizations for not traveling; and Teman's well-documented pattern in this case—now confirmed by the affidavits submitted by his trial counsel—of proffering bogus claims and accusations to suit his self-interest.

***Accordingly, the Court orders Teman to return to the United States by June 1, 2025.*** A breach of this order will be a breach of Teman's conditions of supervised release, inasmuch as Teman is authorized to travel and be abroad only to the extent of advance authorization by the Court. *See* Dkt. 453, 454. Teman is reminded that, as with any defendant, an adjudicated violation of a condition of supervised release can have a range of serious consequences. *See* 18 U.S.C. § 3583(e)(2)–(3), (h)–(i).

For avoidance of doubt, the Court does not restrict Teman in his mode of travel home. Teman may choose air travel, which he has often used in the past, as such is faster and less costly

than the alternative. But, provided that Teman has complied with his obligation to obtain advance authorization of international travel set out at Docket 454, Teman is at liberty to arrange return travel to the United States by boat, whether departing from Israel or a port elsewhere. The Court will therefore not honor, as a basis to further delay return, a claim by Teman that— contrary to Dr. Budow—air travel on or after June 1, 2025 would be medically contra-indicated.

*The Court further orders Teman, by May 9, 2025, to file on the docket of this case documentation sufficient to show reservations he has made for return travel to the United States on a date consistent with this order.* Teman is at liberty to make refundable reservations, so as to enable him thereafter to secure more favorable price terms for travel within the deadline set above.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: April 17, 2025
       New York, New York

8