# Ari B. Teman

United States v Teman (1:19-cr-00696)

## REBUTTAL TO JOSEPH A. DIRUZZO'S AFFIDAVIT (DKT. 552) & MOTION TO RULE BEFORE MAY 31

Defendant Ari Teman submits this rebuttal and asks the Court to rule before May 31, 2025 so that Teman can avoid violation due to an impossible to obey order to take a non-existent boat from Israel to the USA or cause permanent deafness and injury, as explained below.

Joseph A. DiRuzzo, whom this Court accurately described before trial as "sleazy," persists in his misleading tactics to deflect responsibility for his ineffective assistance as trial counsel. His affidavit misrepresents the timing, relevance, and admissibility of exculpatory documents from Gross, Kleinhendler, Hodak, Halevy, Greenberg & Co. (GKH), ignoring Teman's documented mental unfitness and the clear connection between GateGuard and SubletSpy.

The following rebuts each of DiRuzzo's claims, supported by evidence, including the attached email (Exhibit A: *GateGuard was SubletSpy*), and demonstrates Teman's innocence.

- **DiRuzzo's Claim**: "The Defendant informed Mr. Gelfand and myself of [GKH documents'] existence mere days before trial. Thus, we were unable to verify the veracity of the documents."

  - **Rebuttal**:

    - Trial counsel, DiRuzzo and Justin K. Gelfand, were informed upon retention in 2019 that GKH drafted the online terms for SubletSpy and GateGuard, as Teman consistently communicated this fact (Dkt. 509 at 3; Exhibit B: Teman Declaration).

    - Verification was straightforward, as counsel had access to Teman's laptop, containing GKH emails with verifiable header information, during pre-trial preparation at the same hotel (Exhibit B). Printing full headers would have confirmed their authenticity from GKH, a major international law firm representing clients like Waze with US-licensed counsel.

    - Emails from 2016 and onward show the Terms were in-use and made clear to clients in *every single email* (Exhibit A). Trial counsel had many such emails and could easily see the Terms referenced.

    - Counsel ignored Teman's written objection to rushing to trial, citing his mental unfitness due to severe sleep deprivation, heavy medication, and hospitalizations (Exhibit B; Motion to Extend at 6).

- Teman wanted to testify but was refused by DiRuzzo, who stated Teman was "unlikeable" in his heavily medicated, sleep-deprived state. This refusal was a deliberate attempt to hide Teman's obvious unfitness for trial, which would have been evident to the jury and Court, necessitating a continuance (*Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

- Counsel's failure to call Teman to testify, knowing his visible mental unwellness would reveal his unfitness (heavily medicated, sleep-deprived, unable to recall), prejudiced his defense (*Strickland*, 466 U.S. at 694).

- **DiRuzzo's Claim**: "Because the Defendant did not testify, the only way that the documents could be admitted… would be for the individual(s) to fly to New York to testify. I explicitly asked the Defendant if these individuals would be willing to do so, and he said 'no.'"

    - **Rebuttal**:

        - Teman does not recall counsel asking him to request Yoni Irom or Ran Hammer to testify, though this is possibly due to his drugged and sleep-deprived state.

        - However, it was *trial counsel's obligation* to subpoena GKH or at-least request by email that they appear.

        - Counsel falsely claimed to Teman they contacted GKH directly. Irom confirmed via email (submitted by Thomas Butler) that no such request was made by counsel.

        - Authentication did not require Israeli testimony:

            - Lowenstein Sandler, where Ariel Reinitz worked, recommended GKH, with Yossi Horowitz and Reinitz reviewing GKH's terms. Lowenstein Sandler's counsel could have verified the terms' origin, as they were copied on collections emails (e.g., Gabay emails in evidence in this trial).

            - Under the updated New York Appellate Division, Third Department Rule 805.3(c), updated before trial, trial counsel could have submitted the GKH documents without requiring GKH attorneys to appear in person, as the rule allows courts to specify the scope of pro hac vice participation and does not mandate physical appearance for document authentication when alternative methods, such as affidavits or electronic verification, are available (22 NYCRR 805.3(c);).

            - Thus, Counsel could have authenticated the GKH emails through their verifiable headers or via Lowenstein Sandler's testimony, bypassing the need for Irom or Hammer to travel, especially given the documents' exculpatory nature (*United States v. Bagley*, 473 U.S. 667, 682 (1985)).

        - Teman's written communications to counsel, supported by sleep tracking records and ER visits, confirmed his mental incapacity to gather documents or track tasks.

- Trial counsel had a responsibility to reach-out to GKH directly, especially after Teman made clear he was unfit to prepare for trial, and failed to do so. Counsel's failure to pursue this evidence was ineffective (*Strickland*, 466 U.S. at 691).

- Teman had asked to testify and DiRuzzo refused saying Teman was "unlikable" in his current health state.

- **DiRuzzo's Claim**: "Because of the untimeliness of the production of the document by the Defendant, there was no ability to use Fed. R. Crim. P. 15 to perpetuate testimony."

    - **Rebuttal**:

        - Counsel's claim of time constraints is self-inflicted. Teman's emails and medical records documented his severe sleep deprivation and unfitness for trial, obligating counsel to seek a continuance. Their refusal to report this to the Court violated their duty (*Strickland*, 466 U.S. at 688).

        - The GKH documents, proving Teman did not "structure" the terms to "bury" fees, were exculpatory and critical to negating mens rea. Counsel had a duty to attempt their admission due to their exculpatory nature for the same reason they would for any last-minute Brady evidence (*United States v. Bagley*, 473 U.S. 667, 682 (1985)).

        - A Rule 15 deposition, while time-intensive, was feasible (with or without a delay), which counsel should have requested given Teman's health crisis. This further supports that trial counsel was avoiding work because Teman could not afford to pay them.

- **DiRuzzo's Claim**: "The individuals in Israel were not licensed to practice law in New York, nor any State, Territory, or possession of the United States."

    - **Rebuttal**:

        - GKH employs U.S.-licensed, American-trained attorneys and represents U.S.-operating companies like Waze, as Gelfand acknowledged at trial. DiRuzzo's claim is baseless.

        - Lowenstein Sandler, a U.S. firm, recommended GKH, with Yossi Horowitz (trained at Bar Ilan and U.S.-practicing) and Reinitz supervising GKH's terms for U.S. operations (Exhibit B). GKH's work was legally valid under this oversight.

        - Furthermore, the Terms GKH provided were nearly-identical to Airbnb's terms at the time, showing GKH and Lowenstein were using industry-standard practices of US companies and law firms.

        - GKH emails (Exhibit D) show Teman received professionally drafted terms by a major international law firm, negating intent to "bury" fees. His reliance was reasonable given GKH's US-licensed counsel and Lowenstein Sandler's

   recommendation of GKH, eliminating mens rea (*United States v. Cheek*, 498 U.S. 192, 202 (1991)).

- **DiRuzzo's Claim**: "GateGuard and Subletspy were not one in the same… Thus, this potential evidence was not relevant as it did not relate to what GateGuard was authorized to do."

    - **Rebuttal**:
        - The attached email (Exhibit A: *GateGuard was SubletSpy*, Oct. 27, 2016) proves GateGuard and SubletSpy were the same entity under Touchless Labs LLC, offering similar sublet-detection services to the same clients. Initial GateGuard payments went to SubletSpy's account (including Soleimani's first payments for GateGuard services, upon information and belief), and both used the same terms (Exhibit A; Exhibit B).

        - The email discloses GateGuard's retail pricing ($2499, discounted to $499), showing transparent fee structures, with penalties reflecting hardware value, as clients' retention of devices prevented leasing elsewhere (Exhibit A). This refutes claims of deceptive pricing.

        - The email also shows GateGuard was extremely transparent in notifying clients that terms applied and linking directly to the online terms documents for their review.

        - Reinitz and Horowitz at Lowenstein Sandler could have confirmed this continuity, as they advised both entities (Exhibit B). Counsel's failure to investigate, despite Teman's mental unfitness, was deficient (*Strickland*, 466 U.S. at 691).

- **DiRuzzo's Claim**: "This newly found purported evidence was unrelated to the reliance of counsel defense… [Teman] did not seek legal advice from the Israeli law firm regarding RCC's."

    - **Rebuttal**:

        - The GKH terms were central to the reliance defense, as Lowenstein Sandler recommended GKH, with Reinitz and Horowitz overseeing their work and copied on collections emails with GKH's Irom (e.g., Gabay emails submitted at trial).

        - The GKH terms show Reinitz was well-informed of the terms back to 2016 from his time at Lowenstein, and that when Reinitz informed clients like Soleimani and Gabay they were bound by these terms, he knew that the Dispute Terms had remained identical from 2016 (Exhibit 6).

        - The terms, legally drafted by GKH, authorized the fee structure, negating the need for a reliance defense, as Teman had a right to rely on them without consulting counsel (*Cheek*, 498 U.S. at 202).

        - The documents disprove the government's claim that Teman "structured" or "buried" fees, as they were professionally drafted, eliminating mens rea (*United States v. Cronic*, 466 U.S. 648, 659 (1984)).

**Conclusion**

The overwhelming evidence demonstrates that trial counsel, DiRuzzo and Gelfand, engaged in the "sleazy" practices Judge Engelmayer previously condemned, failing to present critical exculpatory GKH documents due to their disregard of Teman's documented mental unfitness, including severe sleep deprivation and hospitalizations (Exhibit B: Teman Declaration; Dkt. 509 at 3). This Court should rule in Teman's favor before June 1, 2025, dismissing the case with prejudice.

Engelmayer's order (Dkt. 531) to fly from Israel to the USA, risking permanent deafness and chronic pain against ENT Dr. Wolfovitz's orders—supported by an objective Eustachian Tube Function (ETF) test at Sheba Medical Center —or to take a nonexistent boat, is impossible to obey and appears designed to force a violation, despite Teman's six-year compliance without a single violation since 2019.

Teman's inquiries to Zim freight company (Exhibit B) and travel agencies confirm no passenger boats or viable cruise options exist from Israel to the USA, especially amid regional conflicts, and chartering a boat is financially unfeasible.

Under Jewish law Teman cannot disregard the advice of an ENT and risk his hearing. Going deaf would have severely negative implications for Jewish practice, and causing oneself permanent injury or harm is explicitly forbidden.

This "go deaf or violate" directive, coupled with Engelmayer's disregard of Teman's innocence—**affirmed by U.S. Pardon Attorney Edward Martin Jr. who says Teman should be pardoned (EXHIBIT C)**, DOJ Civil Rights Head Harmeet Dhillon, Ronald Coleman, and law professors calling the case "legally baseless" —suggests a punitive motive, potentially exacerbated by Engelmayer's impeachment proceedings and public criticism from Vice President J.D. Vance, Attorney General Pamela Bondi, Representatives Crane and Van Orden, and Elon Musk (H.Res.143; Dkt. 496)

The GKH terms, drafted under Lowenstein Sandler's recommendation and supervision, negate mens rea, proving Teman's good-faith reliance (*United States v. Cheek*, 498 U.S. 192, 202 (1991)). Given trial counsel's failure to present this evidence,

The Court should free Teman immediately, allowing him to remain in Israel for medical care and religious obligations, and dismiss this case to prevent further constitutional violations.

Respectfully submitted,

s/Ari Teman/
Tel Aviv, Israel
29, May 2025 / 2nd of Sivan, 5785

**EXHIBIT A: GateGuard was a service of SubetSpy, not a separate entity**



Email from Ari Teman <ari@subletspy.com> to Ryan, Thu, Oct 27, 2016, 5:08 PM. Subject: "Hit for SubletSpy Order idr3x3ui + GateGuard to catch more non-primary/sublets". Body discusses updating a report for a tenant Airbnb'ing a room, and pitches GateGuard.xyz as a new AI-powered Entry Panel with facial recognition at pre-sale pricing of $499 instead of $2499 and $99/mo instead of $149. Signature block identifies "Ari Teman // CEO // SubletSpy".

**EXHIBIT B - Teman asked and was refused by freight shipping for transport to the USA, demonstrating Teman has gone *above and beyond* to comply with an *impossible* order to take a boat to the USA**

    Ari Teman <ari@teman.com>

### C/TEMAN- LEAD ZRM
1 message

**Moshe Liraz** <Moshe.Liraz@zim.com>    Wed, May 28, 2025 at 11:17 AM
To: "ari@teman.com" <ari@teman.com>
Cc: Moshe Liraz <Moshe.Liraz@zim.com>, Meridor Yarden <Meridor.Yarden@zim.com>

בוקר אור,

בהמשך לבקשתך באתר שלנו,

לצערינו אין באפשרותינו לבצע שירות זה.

נשמח לסייע בהובלת מכולות מלאות.

יום מקסים.

Best Regards,



**Liraz Moshe**

Sales Coordinator /
ZIM Integrated Shipping Services Ltd. / www.ZIM.com
Moshe.Liraz@zim.com / Office: %tel% / Mobile: 0526002618

   

**EXHIBIT C: US Pardon Attorney Ed Martin and Harvard Law Professor Lawrence Lessig say Teman should be pardoned**

