B"H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:19-cr-00696-PAE-1

-----------------------------------------------X
ARI TEMAN,                                    :
                                              :
                Petitioner,                   :
                                              :
v.                                            :
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
                Respondent.                   :
_____X

## SWORN DECLARATION OF ARI TEMAN

COMES NOW ARI TEMAN (or "Teman"), and makes the following Declaration under penalty of perjury pursuant to the laws the United States:

1. I am over eighteen (18) years of age, of sound mind, and make this Sworn Declaration from my personal knowledge, for use in the above styled matter, and for all lawful purposes.

2. The following rebuts each of Joseph A. DiRuzzo's (or "DiRuzzo") claims, supported by evidence, including the attached email (Exhibit A: *GateGuard was SubletSpy*), and demonstrates Teman's innocence.

- **DiRuzzo's Claim**: The Defendant informed Mr. Gelfand and myself of [GKH documents'] existence mere days before trial. Thus, we were unable to verify the veracity of the documents.

1

- **Rebuttal**:

    - Trial counsel, DiRuzzo and Justin K. Gelfand (or "Gelfand"), were informed upon retention in 2019 that GKH drafted the online terms for SubletSpy and GateGuard, as Teman consistently communicated this fact (DE509 at 3; Exhibit B: Teman Declaration).

    - Verification was straightforward, as Trial Counsel had access to my laptop, which contained GKH emails with verifiable header information, during pre-trial preparation at the same hotel.

    - As well, printing full headers from my company's Google-hosted email would have confirmed their authenticity from GKH, a major international law firm representing clients like Waze with US-licensed counsel.

    - Trial Counsel had an obligation to know where the terms came from long before trial, who wrote them and how I obtained them. All Trial Counsel had to do was ask who wrote the terms.

    - Emails from 2016 and onward show the Terms were in-use and made clear to clients in *every single email* (See Exhibit A). Trial counsel had many such emails and could easily see the Terms referenced.

    - Trial Counsel ignored Teman's written objection in rushing to

2

trial, citing (and providing objective evidence in the form of records and tracking device data) of his mental unfitness due to severe sleep deprivation, heavy medication, and hospitalizations.

- Teman wanted to testify but was refused by DiRuzzo, who stated

Teman was unlikeable due to in his heavily medicated, sleep-deprived state and resulting psychosis, which had resulted in multiple, recent psychiatric hospitalizations. This refusal was a deliberate attempt to hide Teman's obvious unfitness for trial, which would have been evident to the jury and Court, necessitating a continuance.

- Trial Counsel's failure to call Teman to testify, knowing his

visible mental unwellness would reveal his unfitness (heavily medicated, sleep-deprived, unable to recall, unable to comprehend and focus) and prejudiced his defense.

- **DiRuzzo's Claim**: Because the Defendant did not testify, the only way that the documents could be admitted… would be for the individual(s) to fly to New York to testify. I explicitly asked the Defendant if these individuals would be willing to do so, and he said no.

    - **Rebuttal**:

        - Teman does not recall counsel asking him to request Yoni Irom

or Ran Hammer to testify, though this is possibly due to his drugged and sleep-deprived state.

3

- However, it was *trial counsel's obligation* to subpoena GKH or at-least request by email that they appear.

- Counsel incorrectly claimed to Teman they contacted GKH directly. Irom confirmed via email that no such request was made by counsel. See Exhibit B.

- Authentication did not require Israeli testimony:

  - Lowenstein Sandler, where Ariel Reinitz worked, recommended GKH, with Yossi Horwitz and Reinitz reviewing GKH's terms. Lowenstein Sandler's counsel could have verified the terms' origin, as they were copied on collections emails (e.g., Gabay emails in evidence in this trial). See for example GX415, GX417, GX418, where Attorneys Irom and Reinitz were both copied, showing Trial Counsel that they were working in-concert for Touchless Labs which split off into GateGuard.

  - That Teman copied both attorneys and law firms also supports that he clearly believed the terms GKH provided under Lowenstein's supervision were enforceable.

  - Under the updated Fed. R. Evid. 803 and 902, trial counsel could have submitted the GKH documents without requiring GKH attorneys to appear in person, as the Rule(s) allow courts to specify the scope of pro hac vice

4

participation and does not mandate physical appearance for document authentication/certification when alternative methods, such as affidavits or electronic verification, are available.

- Regardless, Counsel could have authenticated the GKH emails via Yossi Horwitz at Lowenstein Sandler's testimony, bypassing the need for Irom or Hammer to travel, especially given the documents exculpatory nature (See *United States v. Bagley*, 473 U.S. 667, 682 (1985)). HorwitzHorowitz is based in New York and could have been subpoenaed.

- Teman's written communications to counsel, supported by sleep tracking records and ER visits, confirmed his mental incapacity to gather documents or track tasks. Trial Counsel had a responsibility to reach-out to GKH directly, especially after Teman made clear he was unfit to prepare for trial and failed to do so.

- Teman had asked to testify and DiRuzzo refused saying Teman was unlikable in his current health state.

- **DiRuzzo's Claim**: Because of the untimeliness of the production of the document by the Defendant, there was no ability to use Fed. R. Crim. P. 15 to perpetuate testimony.
    - **Rebuttal**:
        - Counsel's claim of time constraints is self-inflicted. Teman's

emails and medical records documented his severe sleep deprivation and unfitness for trial, obligating counsel to seek a continuance. Trial Counsel did not report this to the Court.

- The GKH documents showed Teman did not structure the terms to bury fees, were exculpatory and critical to negating mens rea. Counsel had a duty to attempt their admission into evidence due to their exculpatory nature for the same reason they would for any last-minute Brady evidence (See *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

- A Fed. R. Crim. P. 15 deposition, while time-intensive, was feasible (with or without a delay), which counsel should have requested given Teman's health crisis. This further supports that trial counsel was avoiding work because Teman could not afford to pay them.

- **DiRuzzo's Claim**: The individuals in Israel were not licensed to practice law in New York, nor any State, Territory, or possession of the United States.

- **Rebuttal**:

- GKH employs U.S.-licensed, American-trained attorneys and represents U.S.-operating companies like Waze, as Gelfand acknowledged at trial.

- Lowenstein Sandler, a U.S. firm, recommended GKH, with Yossi Horwitz, Esq. (trained at Bar Ilan and U.S.-practicing) and Reinitz supervising GKH's terms for U.S. operations.

- Furthermore, the Terms GKH provided were nearly-identical to Airbnb's terms at the time, showing GKH and Lowenstein were using industry-standard practices of US companies and law firms.

- The fact that the GKH Terms provided to SubletSpy/GateGuard were identical nearly to the paragraph to Airbnb's terms, including the exact same subpages (Privacy, Dispute, Payment), also eliminate any possibility of *mens rea* for Teman "structuring" the terms, as (a) Teman did not structure the terms, (b) the structure was not the invention of Teman's company or counsel, and (c) the structure had been used by millions of people and heavily tested by Airbnb which was known to regularly face legal disputes with users.

- GKH (Ron Hammer) email(s) (See DE538:1)) show Teman received professionally drafted terms by a major international law firm, negating intent to bury fees. His reliance was reasonable given GKH's US-licensed counsel and Lowenstein Sandler's recommendation of GKH, eliminating mens rea. (See *United States v. Cheek*, 498 U.S. 192, 202 (1991).

- **DiRuzzo's Claim**: GateGuard and Subletspy were not one in the same… Thus, this potential evidence was not relevant as it did not relate to what GateGuard was authorized to do.

    - **Rebuttal**:

        - The attached email (Exhibit A: *GateGuard was SubletSpy*, Oct.

27, 2016) shows GateGuard and SubletSpy were the same entity under Touchless Labs LLC, offering similar sublet-detection services to the same clients. Initial GateGuard payments went to SubletSpy's account (including Soleimani's first payments for GateGuard services, and both used the same terms.

- The email discloses GateGuard's retail pricing ($2499upfront payment towards the equipment lease, discounted to $499), showing transparent fee structures, with penalties reflecting hardware value, as clients' retention of devices prevented leasing elsewhere (See Exhibit A). This refutes claims of deceptive pricing.

- The email also shows GateGuard was extremely transparent in notifying clients that terms applied and linking directly to the online terms documents for their review.

- Horwitz at Lowenstein Sandler could have confirmed this continuity, as they advised both entities. Counsel's failure to investigate, despite Teman's mental unfitness, was deficient.

- **DiRuzzo's Claim**: This newly found purported evidence was unrelated to the reliance of counsel defense… [Teman] did not seek legal advice from the Israeli law firm regarding RCC's.

    - **Rebuttal**:

        - The GKH terms were central to the reliance defense, as

Lowenstein Sandler recommended GKH, with Reinitz and Horwitz overseeing their work and copied on collections emails with GKH's Irom (e.g., Gabay emails submitted at trial).  See GX417-418.

- The GKH terms and the emails copying GKH's Irom and Lowenstein's Reinitz (e.g. GX415-518) show Reinitz was well-informed of the terms back in 2016 from his time at Lowenstein, and that when Reinitz informed clients like Soleimani and Gabay they were bound by these terms, he knew that the Dispute Terms had remained identical from 2016.

- The terms, legally drafted by GKH, authorized the fee structure, negating the need for a reliance defense, as Teman had a right to rely on them without consulting counsel (See *Cheek*, 498 U.S. at 202).

It would also violate the Commerce Clause to impose an impossible requirement that startup internet companies pay counsel to re-review and re-explain their online terms each time a client has a dispute or risk criminal liability -- no company could afford such a burden of expense or time.  Such stifling of interstate commerce must be illegal and Trial Counsel should have made this argument, too.

- The documents disprove the government's claim that Teman

structured or buried fees, as they were professionally drafted, eliminating mens rea (See *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

**REBUTTAL TO JUSTIN GELFAND'S AFFIDAVIT (DKT. 553)** ● Introduction Justin Gelfand's (or "Gelfand") affidavit repeats incorrect claims already addressed in my rebuttal to DiRuzzo's affidavit. These claims are easily disproven by evidence in the record and publicly available information.

- **Incorrect statement of which subpage of GateGuard's Terms is relevant**. Gelfand mistakenly referenced and attached the "Payment Terms" subpage, once again ignoring that it is the "Dispute Terms" page, which authorized drafts by any means and that it is the main terms page, which clearly outlined fees (And were submitted into evidence by Gabay and Soon-Osberger). The Dispute Terms remained identical and unchanged from 2016 to 2020.

- **Incorrect Claim that GateGuard Did Not Exist in 2016**. Gelfand's assertion that GateGuard did not exist in 2016 is incorrect. See Exhibit A, which is an email referenced in my DiRuzzo rebuttal and confirms that GateGuard's service was marketed and operated by SubletSpy (Touchless

10

Labs LLC) in 2016. An October 27, 2016 article, The Real Deal further verifies GateGuard's launch, noting a dozen devices sold and its operation under SubletSpy. Basic due diligence, such as reviewing emails or bank records, would have confirmed GateGuard was developed, funded, and operated by SubletSpy. The fact that Gelfand makes a claim that GateGuard did not exist in 2016 proves either he did not even other to Google his client before trial or is willfully incorrect now.

- **No Attorney Witnesses Needed to be Called to Verify the Dispute Terms**. No attorney witnesses, including GKH or Reinitz, were needed to verify the Dispute Terms' validity in 2016. GKH emails in evidence as cited above contain header data proving the terms were in effect and unchanged since 2016. Gelfand's claim that GKH was required for a "reliance of counsel" defense is incorrect, as the contract permitted RCC charges without further legal consultation. Companies routinely enforce online terms without reconsulting counsel (and it would bankrupt every startup if they were suddenly required to do so, violating the Commerce Clause). Additionally, Reinitz's emails to clients, including Soleimani and Gabay, confirmed they were bound by the terms, were already in evidence -- submitted by the

Government's witnesses and available to the defense -- supporting my reasonable belief in their enforceability.

## CONCLUSION

The overwhelming evidence demonstrates that trial counsel, DiRuzzo and Gelfand failed to present critical exculpatory GKH documents due to their disregard of Teman's documented mental unfitness, including severe sleep deprivation and hospitalizations (Exhibit B; Teman Declaration; Dkt. 509 at 3). The GKH terms, drafted under Lowenstein Sandler's recommendation and supervision, negate mens rea, proving Teman's good-faith reliance on the terms (See *Cheek*, 498 U.S. at 192, 202). Given trial counsel's failure to present this evidence, please free me, allowing me to remain in Israel for medical care including necessary surgery as identified by Dr. Wayne and religious obligations, and dismiss this case to prevent further constitutional violations.

3.      I swear under penalty of perjury pursuant to the laws of the United States of America that the facts stated herein are based on my personal knowledge, and are true and correct to the best of my knowledge, information and belief.

DATED: June 13, 2025 (17th of Sivan, 5785)



_____
ARI TEMAN

# EXHIBIT A

**EXHIBIT A: GateGuard was a service of SubetSpy, not a separate entity**

**Hit for SubletSpy Order idr3x3ui + GateGuard to catch more non-primary/sublets**  Inbox

Ari Teman <ari@subletspy.com>  Thu, Oct 27, 2016, 5:08 PM
to Ryan

Hi Ryan,

Looks like a newish tenant just started Airbnb'ing a room. Do you have her full name so we can update the report?

📎 idr3x3ui_Ryan-Colbert_Inception_Oct27_SubletSpy...

Also, I think you'll benefit in your non-doorman from GateGuard.xyz, our new Artificial Intelligence-powered Entry Panel with facial recognition. It will catch sublets & non-primaries, remove the issue of stolen & copied keys (entry is just with face+pin), and increase value by adding amenities like remote unlock for guests, package tracking and cleaning & laundry services. We're doing a pre-sale so it's $499 instead of $2499 and $99/mo instead of $149: https://GateGuard.xyz/

Let me know your thoughts.

Ari



Ari Teman // CEO // SubletSpy
SubletSpy catches illegal sublets using powerful artificial intelligence
e. ari@subletspy.com // m. 781-718-3375

SIGN UP: https://subletspy.com

WE'RE IN THE NEWS
Watch & read about our technology powering SubletSpy:

- ABC 7 News ; Video (YouTube)
- PIX 11 News ; Video (YouTube)
- NY Daily News
- The Real Deal

This is a confidential email and may not be distributed in any form without written consent. SubletSpy terms can be found at https://subletspy.com/legal/terms.php. Success fees apply to reports on RS and RC units. Pricing and terms are on the website. They are subject to change and should be checked at the time of ordering. We are not attorneys and cannot offer legal advice. We cannot act as PIs. We may make introductions or provide contacts for service providers but these are not referrals or recommendations and you should do your own due diligence. SubletSpy does not offer oral agreements or changes, nor do we make agreements on the phone or in-person, and we only offer and honor the terms on our website unless another contract or written agreement is signed.

# EXHIBIT B


Ari Teman <ari@teman.com>

---

## Did Justin Gelfand ever reach out to you?
10 messages

---

**Ari B. Teman** <ari@teman.com>  Mon, Feb 17, 2025 at 7:42 AM
To: jonathan.irom@gmail.com
Cc: David Teman <david.teman@teman.com>

Hi Yoni,

We do not see a record of Justin Gelfand or his partner Joseph DiRuzzo ever reaching out to you. This was after your time at GKH so it would be by Gmail.

Did they or Noam Biale or Justine Harris ever email you?

We believe they did not and want to confirm this. It could help free me.

Thank you,
Ari

---

**Jonathan Irom** <jonathan.irom@gmail.com>  Mon, Feb 17, 2025 at 8:21 AM
To: "Ari B. Teman" <ari@teman.com>
Cc: David Teman <david.teman@teman.com>

No
[Quoted text hidden]

---

**Ari B. Teman** <ari@teman.com>  Mon, Feb 17, 2025 at 9:12 AM
To: Jonathan Irom <jonathan.irom@gmail.com>
Cc: David Teman <david.teman@teman.com>

To be clear, none of these people emailed you? That is very helpful! Thank you.
[Quoted text hidden]

---

**Jonathan Irom** <jonathan.irom@gmail.com>  Mon, Feb 17, 2025 at 9:16 AM
To: "Ari B. Teman" <ari@teman.com>
Cc: David Teman <david.teman@teman.com>

I searched my gmail and none of these people ever emailed me here.
[Quoted text hidden]

---

**Ari B. Teman** <ari@teman.com>  Mon, Feb 17, 2025 at 9:23 AM
To: "Thomas Butler, Esq." <appellatelaw@bellsouth.net>, Thomas Butler <thomasbutler414@gmail.com>, Eden Quainton <equainton@gmail.com>, Eden Quainton <eden.quainton@quaintonlaw.net>

[Quoted text hidden]

---

**Ari B. Teman** <ari@teman.com>  Mon, Apr 14, 2025 at 6:21 PM
To: "Thomas Butler, Esq." <appellatelaw@bellsouth.net>, Thomas Butler <thomasbutler414@gmail.com>, Eden Quainton <equainton@gmail.com>, Eden Quainton <eden.quainton@quaintonlaw.net>

This thread must 100% go into the 2255. It is proof they never invested any effort to get the 2016 terms from the lawyer who provided them!
[Quoted text hidden]