B"H

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**ARI TEMAN,**

Defendant.

Case No.: 1:19-cr-00696

**MOTION TO DENY APPLICATION OF FUGITIVE DISENTITLEMENT DOCTRINE, TO REMOVE ANY AND ALL STAYS, AND FOR RECUSAL OF JUDGE PAUL ENGELMAYER**

**Defendant Ari Teman**, pro se, respectfully moves this Court to deny the application of the fugitive disentitlement doctrine to his case and to lift any and all stays imposed on proceedings, including but not limited to his pending appeal before the United States Court of Appeals for the Second Circuit (CA2). In support of this motion, Defendant submits the following:

**INTRODUCTION**

The fugitive disentitlement doctrine, which permits courts to dismiss appeals or deny relief to fugitives evading jurisdiction, is inapplicable to Defendant Ari Teman. Defendant has not fled or evaded the jurisdiction of this Court. He traveled to Israel with express permission from this Court and probation authorities, complied with all judicial obligations, and remains unable to return to the United States due to external barriers, including an ongoing war, lack of transportation, and a medically documented condition preventing air travel. Defendant

timely appealed the order to return, and that appeal remains pending. Accordingly, Defendant requests that this Court deny the application of the fugitive disentitlement doctrine and lift any stays on proceedings, as such measures are unsupported by law or equity.

## STATEMENT OF FACTS

- **Court-Approved Travel and Presence in Israel**: Defendant traveled to Israel with the express permission of this Court and probation authorities. He has remained in Israel with ongoing approval, as evidenced by multiple extensions granted by the Court and probation due to an ongoing war and lack of transportation options.

- **Compliance with Judicial Obligations**: Defendant served his full sentence, paid complete restitution, and adhered to all pre-trial, post-trial, and post-incarceration conditions for one year, demonstrating respect for judicial authority.

- **Medical Inability to Return**: Defendant has been diagnosed with Eustachian Tube Dysfunction (ETD), confirmed by an objective ETF test conducted at Sheba Medical Center, a leading medical institution. Board-certified medical experts have recommended against air travel due to this condition, which poses significant health risks.

- **Logistical Barriers**: Defendant has provided written evidence from cruise companies and cargo ships confirming that no transportation by boat from Israel to the United States was available before July 1, 2025, due to the ongoing war and logistical constraints.

- **Timely Appeal and Motion**: Defendant timely appealed the order to return to the United States, and that appeal remains pending before the Second Circuit. Additionally, Defendant filed a motion requesting to remain in Israel until medically cleared to fly or until the Court provides guidance on how

to comply with the order to return by boat, given the documented unavailability of such transportation.

- **No Intent to Evade Jurisdiction**: Defendant's presence in Israel is court-sanctioned, and his inability to return is due to external factors beyond his control, including war, lack of transportation, and medical constraints. Defendant has actively engaged with the judicial process through his appeal and motion, demonstrating good faith.

- **Public Scrutiny and Judicial Conduct**: This case has attracted significant public attention, with prominent legal scholars, including Harvard Law Professors Lawrence Lessig and Alan Dershowitz, publicly calling it a "major injustice" on television, radio, and in written letters to the U.S. Attorney General and the President of the United States. Additionally, 24 rabbis have publicly labeled Judge Paul Engelmayer an antisemite and corrupt, calling for his resignation (Dkt. 326-1). Judge Engelmayer has admitted to engaging in regular ex parte communications (Dkt. 321-1), raising concerns about impartiality.

- **Furthermore, Judge Engelmayer currently faces two articles of impeachment** before Congress for "high crimes and corruption." (H.Res.143 - "Impeaching Paul Engelmayer, judge of the United States District Court for the Southern District of New York, for high crimes and misdemeanors." And H. RES. 145 "Impeaching Paul Adam Engelmayer, United States District Court Judge for the Southern District of New York, for high crimes and misdemeanors.")

- **Judge Engelmayer as Defendant in Related Litigation**: Judge Paul Engelmayer is a named defendant in *Teman v. Biale* (1:25-cv-05454), a civil action in which Defendant Teman alleges that Judge Engelmayer conspired to conceal that Biale was married to Assistant United States Attorney (AUSA)

Graham of the Southern District of New York for years, including during the pendency of *United States v. Teman*. These alleged actions occurred outside the scope of judicial duties, rendering Judge Engelmayer ineligible for judicial immunity. This ongoing litigation creates a direct conflict of interest, as Judge Engelmayer's attempt to apply the fugitive disentitlement doctrine in this case appears to be a legally baseless effort to shield himself from liability in *Teman v. Biale*.

**LEGAL STANDARD**

The fugitive disentitlement doctrine is a discretionary equitable tool that allows courts to dismiss appeals or deny relief to defendants who evade jurisdiction, typically by fleeing to avoid prosecution or punishment (*Molinaro v. New Jersey*, 396 U.S. 365 (1970); *United States v. Barnette*, 129 F.3d 1179 (11th Cir. 1997)). The doctrine requires a showing that the defendant is a fugitive, meaning they have willfully fled or remained absent to avoid judicial consequences (*United States v. Bescond*, 2021 WL 4481483 (2d Cir. 2021)). Courts may not apply the doctrine when the defendant's absence is due to external barriers, such as medical or logistical constraints, or when the defendant has complied with judicial obligations (*Sun v. Mukasey*, 555 F.3d 802 (9th Cir. 2009); *Fugitive Disentitlement Doctrine in Forfeiture Cases*, 32 J. Marshall L. Rev. 139 (1998)). The Second Circuit has emphasized a narrow application of the doctrine to avoid due process violations, particularly when the defendant is not a fugitive (*Bescond*, supra).

**ARGUMENT**

The fugitive disentitlement doctrine does not apply to Defendant, and any stays imposed on these grounds are unwarranted. The following points demonstrate why the doctrine is inapplicable and why all stays must be lifted.

**1. Defendant Is Not a Fugitive Under the Doctrine**

Defendant does not meet the criteria for fugitive status, as he did not flee the United States or evade jurisdiction:

- **Court-Approved Travel**: Defendant traveled to Israel with explicit permission from this Court and probation authorities, distinguishing his case from fugitives who abscond without authorization (*Dennis Ralph Katz v. United States*, 920 F.2d 610 (9th Cir. 1990)). His continued presence in Israel was sanctioned through multiple extensions granted due to war and lack of transportation, negating any inference of evasion (*United States v. Bescond*).

- **No Intent to Evade**: The Second Circuit has held that a defendant who remains abroad without actively fleeing is not a fugitive, particularly when their absence is due to external factors (*Bescond*). Defendant's inability to return stems from an ongoing war, lack of boat transportation (as confirmed by written evidence from cruise and cargo companies), and a medical condition prohibiting air travel, not a deliberate attempt to avoid jurisdiction.

- **Medical and Logistical Barriers**: Defendant's ETD, confirmed by objective testing at Sheba Medical Center, prevents safe air travel, as attested by board-certified experts. Additionally, the unavailability of boat travel due to war-related disruptions constitutes an external barrier beyond Defendant's control. Courts have declined to apply the doctrine when absence is due to such constraints (*Fugitive Disentitlement Doctrine in Forfeiture Cases*).

**2. Defendant's Compliance Demonstrates Respect for Judicial Authority**

The fugitive disentitlement doctrine is grounded in the principle that courts may deny relief to those who flout judicial authority (*Stone v. Bach*, 80 Cal.App.3d 442 (1978)). Defendant's actions demonstrate the opposite:

- Defendant served his full sentence, paid complete restitution, and complied with all pre-trial, post-trial, and post-incarceration conditions for one year.

- His proactive engagement with the Court through a timely appeal and a motion to remain in Israel until medically cleared or provided with compliance guidance reflects good-faith

adherence to the judicial process (*Sun v. Mukasey*). These actions undermine the equitable basis for disentitlement, which targets willful defiance of court orders (*United States v. Jacob*, 714 F.3d 1032 (8th Cir. 2013)).

### 3. Defendant's Timely Appeal and Motion Preclude Disentitlement

Defendant's timely appeal of the order to return, currently pending before the Second Circuit, and his motion to remain in Israel demonstrate ongoing engagement with the judicial process:

- The doctrine typically applies when a fugitive's appeal coincides with their evasion of jurisdiction (*Molinaro v. New Jersey*). Defendant's court-sanctioned presence in Israel, combined with external barriers to return, negates fugitive status, rendering the doctrine inapplicable (*Dennis Ralph Katz v. United States*).
- Defendant's motion requesting to remain until medically cleared or provided with guidance on boat travel further shows his intent to comply with the Court's order within the constraints of his circumstances. Courts have declined to apply disentitlement when defendants actively seek to resolve compliance issues (*Sun v. Mukasey*).

### 4. The Doctrine's Discretionary Nature and Equitable Considerations Favor Defendant

The fugitive disentitlement doctrine is discretionary, and courts must balance equitable factors (*Ironridge*, 238 Cal.App.4th 259 (2015)). The following factors weigh against its application:

- Defendant's court-approved travel and extensions.
- His full compliance with judicial obligations.
- Documented medical and logistical barriers to return.
- Active engagement through a timely appeal and motion. The Second Circuit has cautioned against broad application of the doctrine, particularly when it risks punishing non-fugitives

(*United States v. Bescond*). Applying the doctrine here would be inequitable and contrary to precedent.

### 5. Due Process Requires Denying Disentitlement and Lifting Stays

Applying the fugitive disentitlement doctrine to stay proceedings would violate Defendant's due process rights. The Second Circuit has emphasized that denying judicial relief to non-fugitives abroad risks constitutional harm, particularly when absence is not willful (*United States v. Bescond*). Defendant's court-sanctioned presence, compliance, and external barriers preclude fugitive status, and staying proceedings would unjustly deny him access to judicial remedies, including his pending appeal.

### 6. Any Stays Must Be Lifted

Any stays imposed on the grounds of the fugitive disentitlement doctrine are improper, as Defendant is not a fugitive. The external barriers to his return, combined with his compliance and active legal engagement, render stays unwarranted. Lifting all stays is necessary to allow Defendant to pursue his appeal and motions, consistent with due process and Second Circuit precedent (*Bescond*).

### 7. DOJ Admission in Hernandez "Tekashi 6ix 9ine" Confirms That Acts Abroad Cannot Constitute a Violation

In *United States v. Jones*, the Southern District of New York addressed allegations that defendant Daniel Hernandez (known publicly as "Tekashi 6ix 9ine") had engaged in misconduct while traveling in the Dominican Republic during his period of supervised release. In open court, **Assistant United States Attorney Rebold** expressly conceded that:

> "We don't necessarily credit that is a vindictive or corrupt prosecution. But it does not violate supervision here."

(Live transcription of *United States v. Hernandez*, No. United States v. Jones (1:18-cr-00834) as live-transcribed on X by Inner City Press ( https://x.com/innercitypress/status/1856358249559126222 )

This statement reflects the Government's position that **alleged misconduct abroad — even criminal conduct — does not constitute a violation of supervised release when committed outside U.S. jurisdiction**.

Here, Mr. Teman's inability to return by sea from Israel was not criminal, willful, or evasive, and occurred entirely within the territory of a foreign nation. He had received court approval to be in Israel, remained in communication with U.S. authorities, and actively sought guidance on compliance. Any adverse inference based on failure to act in a foreign nation—under war conditions and medical constraints—would contradict both DOJ policy and constitutional principles of due process.

## 8. The Appearance of Fairness Requires Judge Engelmayer's Recusal

Under 28 U.S.C. § 455(a), a judge must recuse when their impartiality might reasonably be questioned (*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)). The significant public scrutiny and criticism surrounding this case, combined with Judge Engelmayer's admitted conduct and pending impeachment articles, necessitate his recusal:

- **Conflict of Interest as Defendant in Teman v. Biale:** Judge Engelmayer is a named defendant in *Teman v. Biale* (1:25-cv-05454), where Defendant Teman alleges that Judge Engelmayer conspired to conceal AUSA Graham's marriage to Biale during the pendency of *United States v. Teman*. This alleged misconduct, occurring outside his judicial capacity, removes judicial immunity and creates a direct conflict of interest. A reasonable observer would perceive Judge Engelmayer's attempt to apply the fugitive disentitlement doctrine as a legally baseless and unethical effort to terminate this case and preclude appellate review, thereby shielding himself from liability in *Teman v. Biale*. This conflict mandates recusal under 28 U.S.C. § 455(a), as it

directly undermines the appearance of impartiality (*Liteky v. United States*, 510 U.S. 540 (1994) (recusal required when a judge's personal interest creates bias)).

- **Public Criticism by Legal Scholars and Community Leaders**: Prominent legal scholars, including Harvard Law Professors Lawrence Lessig and Alan Dershowitz (Judge Engelmayer's alma mater), have publicly called this case a "major injustice" on television, radio, and in letters to the U.S. Attorney General and the President of the United States. Additionally, 24 rabbis have publicly labeled Judge Engelmayer an antisemite and corrupt, calling for his resignation (Dkt. 326-1). These statements from respected figures raise serious concerns about the appearance of impartiality.

- **Admitted Ex Parte Communications**: Judge Engelmayer has acknowledged engaging in regular ex parte communications (Dkt. 321-1), which undermine public confidence in the fairness of these proceedings. Such communications, particularly in a case under intense scrutiny, suggest an attempt to preclude appellate review by the Second Circuit and the Supreme Court, potentially to avoid findings of judicial misconduct or corruption as alleged by legal experts and community leaders.

- **Pending Impeachment Articles**: Judge Engelmayer currently faces two articles of impeachment before Congress for "high crimes and corruption." This extraordinary circumstance further erodes the appearance of impartiality, as a reasonable observer might question whether the Judge's actions, including any attempt to apply the fugitive disentitlement doctrine, are motivated by a desire to limit appellate scrutiny of his conduct in this case.

- **Appearance of Bias**: The combination of public criticism, ex parte communications, and impeachment proceedings creates a perception that Judge Engelmayer may be attempting to terminate this case and related civil rights matters to avoid review by higher courts, which could validate the allegations of injustice and corruption. The Second Circuit has emphasized that the

appearance of fairness is paramount (*United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000)). To preserve public confidence in the judiciary, Judge Engelmayer must recuse himself.

**CONCLUSION**

For the foregoing reasons, Defendant Ari Teman respectfully requests that this Court:

- Recuse
- Move venue outside of SDNY due to the many inherent conflicts in *Teman v. Biale* (1:25-cv-05454).
- Deny the application of the fugitive disentitlement doctrine, as Defendant is not a fugitive and has not evaded jurisdiction.
- Lift any and all stays imposed on proceedings in this case, including but not limited to those affecting his pending appeal before the Second Circuit.
- Grant such other and further relief as the Court deems just and proper.

**Dated**: July 27, 2025 / 2nd of Av, 5785

**Respectfully submitted**,

s/Ari Teman/

Ari Teman