UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**United States of America,**
Plaintiff,

v.

**Ari Teman,**
 Defendant/Movant.

Case No. 1:19-cr-696 (PAE)

---

**RULE 60(b) MOTION TO VACATE JUDGMENT, TRANSFER VENUE TO SDFL, AND REASSIGN TO A DIFFERENT JUDGE**

Defendant/Movant Ari Teman, proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 60(b) to vacate the judgment in this matter, to hold that venue in the Southern District of New York ("SDNY") was improper, and to transfer this matter to the Southern District of Florida ("SDFL") for reassignment to a different judge.

---

## I. INTRODUCTION

This motion is timely and based on newly discovered evidence, fraud, and clear error of law. On August 20, 2025, former Signature Bank employee **Akash Kazi** disclosed to Movant on a recorded Zoom call (for which the recording was immediately disclosed by Zoom to Mr. Kazi) that the OASIS team at Signature Bank **makes no discretionary decisions on RCCs**; all such items are automatically flagged by software. All actual decisions were made by the **local Brooklyn branch handling Coney Realty's account**—but only **after** the RCC funds had already cleared into GateGuard's account.

This new evidence confirms:

- **No essential conduct occurred in SDNY.**

- Nor can venue lie in EDNY, because the RCCs cleared automatically before any review at all; responsive or reactionary acts after clearance cannot establish venue.

- Venue can lie **only in SDFL, where Mr. Teman physically presented the RCCs to Bank of America.**

Accordingly, the judgment must be vacated, the matter transferred to SDFL, and reassigned to a different judge to preserve both impartiality and the appearance of justice.

## II. LEGAL STANDARD

Rule 60(b) authorizes relief from a judgment for (1) mistake of law, (2) newly discovered evidence, (3) fraud or misconduct, or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1), (2), (3), (6). A motion is timely where the movant acts diligently upon discovery of the new evidence.

## III. ARGUMENT

### A. Venue Cannot Lie in SDNY or EDNY

The government's own witnesses conceded:

- **Michael Haas and Coney Realty were located in Brooklyn (EDNY).**

- **Signature's OASIS image-recognition process is fully automated and no human made a discretionary decision *prior to the automated release of funds to GateGuard*.**

- The RCC funds were *already cleared* before any review whatsoever by OASIS or the Brooklyn branch.

Therefore, any later acts by Signature or its employees were **responsive** rather than part of Teman's alleged conduct.

The Supreme Court and Second Circuit forbid anchoring venue on such responsive or collateral events:

- *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (money laundering acts in Florida could not support venue in Missouri; essential conduct occurred only in Florida).

- *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (venue tied to essential conduct elements, not where effects are felt).

- *United States v. Brennan*, 183 F.3d 139, 146 (2d Cir. 1999) (venue must be based on acts, not merely effects).

- *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) (subsequent actions by others cannot establish venue).

Thus, even EDNY cannot be proper venue. By the time any human action occurred there, the alleged fraud was already consummated.

---

**B. Venue Lies Only in SDFL**

The only place where the **essential conduct elements** occurred was the Southern District of Florida. There, Teman physically presented the RCCs to Bank of America for deposit. That act—presentation of the checks—is the *alleged* fraudulent conduct itself.

Every subsequent act was collateral or reactive:

- **Signature Bank's response** to Haas's perjured affidavit was a fraudulent reaction, not part of Teman's conduct.

- **Bank of America's honoring of the chargeback** (in Texas) was a discretionary failure of BofA, not Teman.

Because venue lies where the essential elements occur (*Cabrales*, *Rodriguez-Moreno*), and the only essential act was the deposit of the RCCs in Florida, venue lies solely in SDFL.

---

**C. Signature Bank's (Fraudulent) Acts in EDNY Cannot Create Venue**

The government conceded Haas perjured in his affidavit to Signature. Signature itself knew this was false because it had prior checks from Haas to GateGuard. By honoring perjury it knew to be false, Signature committed fraud.

Teman could not reasonably foresee that a federally regulated bank would engage in deliberate fraud. The government's theory that "Signature review furthered the fraud" is nonsensical: had Signature simply done nothing, no chargeback would have issued and Bank of America would not have lost money.

---

**D. Relevant excerpts from the transcript showing all decisions by Signature are in EDNY, by the local Brooklyn branch (EXHIBIT C)**

Mr. Kazi's statements establish that venue cannot lie in the Southern District of New York because **all essential decisions regarding the RCCs were made exclusively at the client's Signature Bank's Brooklyn branch**, located in the Eastern District of New York. He confirmed that the OASIS team in Manhattan makes no discretionary determinations, that 100% of RCCs are automatically flagged by software, and that any review or decision occurs only at the local branch handling the account—in this case, Coney Realty's Brooklyn branch. Since the automated clearing of the RCCs was complete before any human involvement, and all subsequent discretionary actions took place solely in Brooklyn, no conduct element of the alleged offense occurred in SDNY.

As the Supreme Court made clear in *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998), venue lies only where the "essential conduct elements" of the offense occurred, not where ancillary or reactive effects are felt. Here, the essential conduct was completed automatically, with human decision-making limited entirely to EDNY, foreclosing SDNY as a proper venue.

1. **Transaction posting *before* review**

   "The transaction already went through the clearing house, and then it posted, and then it's coming to us as the last step of verification."
   *(Ex. 3 at 5:18–5:23)*

2. **Oasis review is after the fact**

   "We didn't work live. We worked for the day prior."
   *(Ex. 3 at 4:45–4:47)*

3. *3.* **If Oasis flags, 100% of time client must be contacted**

   "Yeah."
   —in response to Ari Teman: *"...if Oasis flags it ... 100% of the time an Oasis team*

*will reach out to the client?"*
*(Ex. 3 at 15:14–15:16)*

4. **Volume vs. staffing (few humans, mostly automated)**

   "It was like about eight or 10 people." (versus 15,000 checks reviewed daily)
   *(Ex. 3 at 16:22–16:23)*

5. **Chargeback decisions are made by clients in branches, not Oasis**

   "With the banker, or by himself. Yeah."
   —in response to Ari Teman: *"...the actual reversal of the transaction is occurring in Brooklyn, with the landlord signing that piece of paper, not in Manhattan."*
   *(Ex. 3 at 34:14–34:16)*

6. **No decision made in Manhattan**

   "Yeah."
   —in response to Ari Teman: *"...The decision impact is actually in Brooklyn and not in Manhattan."*
   *(Ex. 3 at 35:06–35:06)*

7. **Oasis not involved in disputes about RCCs**

   "Yeah."
   —in response to Ari Teman: *"...if it's a dispute about an RCC ... that's not at all the Oasis department."*
   *(Ex. 3 at 38:51–38:52)*

---

**E. Haas was a known fraudster and perjurer to Signature, and his perjury was obvious to Bank of America such that they could have simply denied the chargeback**

It is a troubling reflection on the legitimacy of these proceedings that venue has been hinged entirely on the affidavit of Michael Haas — an affidavit which both the Government and Haas's own brother-in-law, Elie Gabay, have conceded was perjurious. In that affidavit, Haas swore under penalty of perjury to Signature Bank that he did not know

GateGuard. Yet, immediately beforehand, Haas emailed Gabay asking if the check was related to Teman, demonstrating his knowledge and willful falsehood. Haas subsequently fled to Israel upon being served by defense counsel, underscoring the seriousness of his misconduct.

The absurdity of relying on this perjured affidavit is compounded by the fact that no Signature Bank customer had sufficient funds, and Bank of America ultimately suffered no loss from any Signature transaction. Bank of America also had the ability to see that Haas/Coney was a client and deny the RCCs -- not only the ability but the obligation to do so under the law.

Venue properly lies in the Southern District of Florida, where Teman deposited the RCCs and engaged in an hour-long discussion with the branch manager and teller under multiple surveillance cameras — footage that Bank of America later deleted despite knowing it was evidence in a criminal investigation.

The bank also failed to produce dozens of relevant emails with and about GateGuard's corporate counsel who explained to them why the transactions were legitimate and should not be charged back, while simultaneously benefitting from Judge Engelmayer's undisclosed $2,000,000 equity stake in Bank of America.

Against this backdrop, Bank of America's boutique firm Morrison & Foerster immediately hired AUSA Edward Imperatore, the supervising attorney on this case, a brazen quid pro quo.

---

### E. Recusal Is Required to Preserve Fairness

Even if venue were debatable, reassignment is mandatory. Under 28 U.S.C. § 455(a), a judge must recuse when impartiality "might reasonably be questioned."

Here, Judge Engelmayer's conduct mandates recusal:

1. **Coaching the Government:** Transcript shows Engelmayer suggested the very venue theory the prosecution adopted.

2. **Ex Parte Call:** Engelmayer admitted to an ex parte call with the Head of the General Crimes Division.

3. **Impeachment:** Judge Engelmayer currently faces two counts of impeachment.

4. **Personal Conflicts:** Engelmayer is a defendant in a case with his mentee Noam Biale, who is accused of concealing his marriage to AUSA Margaret Graham while misleading defendants.

5. **Financial Conflicts.** Judge Engelmayer also failed to disclose that he holds approximately $2,000,000 in Bank of America stock while presiding over a case in which Bank of America's conduct was central. At trial, he barred Defendant from calling an expert who would have testified that Bank of America, not Mr. Teman, bore responsibility for the losses at issue. A

   n investment of that magnitude creates an obvious financial interest in the success and legal protection of Bank of America.

   The conflict is magnified because, upon prevailing in this matter, Mr. Teman and GateGuard would have grounds to pursue claims against Bank of America for **hundreds of millions of dollars in damages, as well as declaratory and regulatory relief based on the bank's admission under oath that it processes RCC chargebacks without proper investigation.** Such claims could also **prompt class action litigation**, exposing Bank of America **to billions of dollars in liability**.

   Any such outcome **would directly reduce the value of Judge Engelmayer's holdings by tens or even hundreds of thousands of dollars.**

   The Second Circuit's Summary Order, which both Grok and ChatGPT say was written by Engelmayer himself (or the same clerk who wrote his District Court decisions) (Dkt. 509-1, 509-2) conspicuously ignored these litigation and regulatory implications. No surprise given Engelmayer's brazen habit of coordinating with judges and prosecutors ex parte to aid the prosecution.

   Under 28 U.S.C. § 455(b)(4), recusal is mandatory where a judge has a financial interest in a party to the proceeding, however small. Here, the risk is not merely speculative but substantial, making recusal not only warranted but required.

6. **Improper Influence on Appeal:** Multiple independent AI analyses (now before the Second Circuit) concluded Engelmayer authored the Second Circuit summary order. (Dkt. 509-1, 509-2)

If Judge Engelmayer were not so personally and corruptly invested in shielding his mentee, Noam Biale, he would have no reason to resist transfer to the Southern District of Florida and could rest confident that a conviction would be secured there if the government's case had merit. Instead, Judge Engelmayer knows that Mr. Teman is innocent and that this case originated as a cover-up for **AUSA Guttwillig's** mistaken arrest of Mr. Teman for ***forging his own signature.*** Guttwillig could not have arrested Teman over a contract "Structure" or content issue, because Guttwillig had never accessed the contract until 5 months after the arrest warrant. As with the Jeffrey Epstein case, Engelmayer has buried the Grand Jury transcript which would prove 100% this was a constructive amendment.[1]

To preserve that mistake, Judge Engelmayer has issued rulings with no basis in fact or law and has facilitated their affirmance in the Second Circuit by drafting orders that were later rubber-stamped by clerks.

It has become evident that cases in the Second Circuit are not randomly assigned (the odds of Englemayer randomly being assigned all the Jeffery Epstein-related cases he's taken is *less than* 1-in-3 trillion), that prosecutions are politically coordinated through ex parte communications, and that undisclosed personal relationships between prosecutors and defense counsel further undermine fairness. This case lacks any legitimate legal or factual foundation. Nevertheless, Movant places this motion on the record in the hope that the federal judiciary will soon return to a system that reflects the rule of law and impartial adjudication, rather than one compromised by political influence and undisclosed conflicts.

The appearance of impartiality is destroyed. Under *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860–61 (1988), reassignment is required.

---

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

1. Vacate the judgment under Rule 60(b);

2. Hold venue in both SDNY and EDNY improper;

3. Transfer this matter to the Southern District of Florida, the only proper venue; and

---

[1] AG Pam Bondi and US Attorney Jay Clayton, who has been served a copy of this motion, can admit that this was a mistaken arrest for forgery and not a contract dispute case regardless of Engelmayer's misrepresentations about Grand Jury transcripts. It would show the public that Engelmayer and the DOJ are not simply one beast but are actually independent actors.

4. Order reassignment to a different judge upon transfer.

Respectfully submitted,

Dated: August 21, 2025 (27th of Av, 5785)

/s/ Ari Teman
 Ari Teman, Pro Se
Tel Aviv, Israel

# DECLARATION OF ARI TEMAN IN SUPPORT OF RULE 60(b) MOTION

I, Ari Teman, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am the Defendant/Movant in this case. I make this declaration in support of my Rule 60(b) motion to vacate the judgment, transfer venue to the Southern District of Florida, and reassign the matter to a different judge.

2. On August 20, 2025, I participated in a recorded Zoom call with Akash Kazi, a former Signature Bank employee who worked with the OASIS team.

3. During that call, Mr. Kazi confirmed unequivocally that the OASIS team at Signature Bank does not make any discretionary decisions on RCCs. Instead, he explained:

    - RCCs clear before the OASIS team reviews them

    - The OASIS software automatically flags 100% of RCCs.

    - OASIS staff *always* defer to the local branch (in this case, EDNY) to decide whether to release or block funds. OASIS makes *no* decisions regarding funds.

    - Any actual decision regarding a flagged RCC rests solely with the local branch handling the account, in this case Signature's Brooklyn branch servicing Coney Realty, both in EDNY.

4. Mr. Kazi's statements confirm that no Signature employee made a discretionary decision prior to the automated release of the RCC funds to GateGuard. Thus, the alleged fraud was complete at the moment the RCCs cleared into GateGuard's account.

5. Mr. Kazi further confirmed that all later actions by Signature—including its handling of Michael Haas's affidavit—were reactive and not part of the clearing of the RCCs.

6. A true and correct copy of the recording of the Zoom call and a transcript prepared from it are attached as Exhibit A and B (audio and video) and Exhibit C, respectively. (Audio and video recordings are hosted on Dropbox at : https://www.dropbox.com/scl/fo/f6fngp7mi5gdhyhkz5mcz/AER4V_TmskfCUpAPbg24uUI?rlkey=1ith932o2sbtt6v8sp9d683va&st=w5n7e8ho&dl=0 , and were provided via

email to the Clerk to provide as Exhibit A and B.)

7. I did not learn this information until August 20, 2025.

8. This new evidence was previously unavailable despite due diligence as Signature staff were unresponsive despite repeated requests. Signature Bank has recently been shut down, and ex employees are more likely to feel free to speak without retribution as a result of Signature no longer existing.

9. This evidence demonstrates that venue cannot lie in the Southern District of New York, or even in the Eastern District of New York, because the essential conduct elements were completed before any branch review, and the only relevant acts occurred in the Southern District of Florida, where the RCCs were physically presented.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2025.

/s/ Ari Teman
 Ari Teman, Pro Se

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**United States of America,**

Plaintiff,

v.

**Ari Teman,**

 Defendant/Movant.

Case No. 1:19-cr-696 (PAE)

# [PROPOSED] ORDER

Upon consideration of Defendant/Movant Ari Teman's Rule 60(b) motion, it is hereby:

**ORDERED** that the judgment previously entered in this matter is VACATED for lack of venue and newly discovered evidence; and it is further

**ORDERED** that venue in both the Southern District of New York and the Eastern District of New York is improper; and it is further

**ORDERED** that this action is hereby TRANSFERRED to the United States District Court for the Southern District of Florida, as the only proper venue under 18 U.S.C. § 3237; and it is further

**ORDERED** that upon transfer, this matter shall be assigned to a judge other than Hon. Paul A. Engelmayer, pursuant to 28 U.S.C. § 455, to preserve both impartiality and the appearance of impartiality; and it is further

**ORDERED** that the Clerk of Court is directed to take all steps necessary to effectuate this transfer.

SO ORDERED.

Dated: August ___, 2025
 New York, New York