UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**
Plaintiff,
v.
**ARI TEMAN,**
Defendant.

Case No.: 19 Cr. 696 (PAE)

## MOTION FOR RECONSIDERATION OF FUGITIVE STATUS AND FOR RECUSAL OF JUDGE PAUL ENGELMAYER

**Defendant Ari Teman**, pro se, moves this Court for reconsideration of its July 7, 2025, order designating him a fugitive and issuing an arrest warrant (Dkt. 567), pursuant to Federal Rules of Criminal Procedure 32.2 and Local Civil Rule 6.3 (applicable by analogy in criminal proceedings), and for the recusal of Judge Paul Engelmayer under 28 U.S.C. § 455(a). In support, Defendant submits the following:

**INTRODUCTION**

On July 7, 2025, this Court erroneously designated Defendant a fugitive based on his inability to return to the United States from Israel by June 1, 2025, deeming his medical excuse "pretextual" (Dkt. 531). New and compelling medical evidence from Defendant's November 3, 2025, follow-up with his ENT specialist at Sheba Medical Center confirms that Defendant suffers from ongoing Eustachian Tube Dysfunction (ETD), unresponsive to three months of steroid spray treatment. The ENT's internal scope examination revealed persistent dysfunction, recommending serious surgical intervention—balloon dilation (tuboplasty)—requiring general anesthesia in a hospital setting.

Flying with untreated ETD risks tympanic membrane rupture, severe bleeding, and permanent hearing loss, vindicating Defendant's decision to follow medical advice and await treatment outcomes.

Moreover, despite exhaustive efforts, no boat or alternative land/sea travel from Israel to the U.S. was available due to the ongoing war, as confirmed by Mano Cruises, travel agencies, and Zim cargo lines. Defendant cannot be deemed a fugitive for circumstances beyond his control.

Reconsideration is warranted under Local Rule 6.3, as this new evidence alters the Court's prior analysis and demonstrates that Defendant's absence was not willful evasion but a good-faith response to life-threatening medical risks and logistical impossibilities.

**The fugitive designation must be vacated to allow Defendant access to necessary medical care, including surgery and prolonged recovery, and participation in Israel's health system.**

Finally, Judge Engelmayer must recuse himself due to his status as a defendant in *Teman v. Biale* (1:25-cv-05454), where vacating the fugitive status would immediately advance litigation against him, Noam Biale, and AUSA Graham, and due to the Government's refusal to deny widespread social media allegations of Engelmayer's sexual misconduct against children, creating an appearance of bias.

## STATEMENT OF FACTS

1. **Court-Approved Travel and Extensions**: Defendant traveled to Israel on September 18, 2024, with express permission from this Court and probation (Dkt. 456). Multiple extensions were granted due to the Israel-Hamas war and lack of transportation, culminating in a return deadline of June 1, 2025 (Dkt. 465, 484, 531).

2. **Initial Medical Diagnosis**: In February 2025, Defendant was diagnosed with ETD, confirmed by an objective ETF test at Sheba Medical Center, a leading Israeli medical institution. Board-certified experts advised against air travel due to risks of barotrauma (Dkt. 502-1). The Court deemed this "pretextual" despite evidence (Dkt. 508, 531).

3. **Efforts to Secure Alternative Travel**: Defendant contacted Mano Cruises, multiple travel agencies, and Zim Integrated Shipping Services, providing written confirmations that no passenger or cargo boats from Israel to the U.S. were available before July 1, 2025, due to wartime disruptions. No viable land/sea route (e.g., via Europe) was feasible amid conflict and closures.

4. **New Medical Evidence (November 3, 2025)**: After three months of prescribed steroid nasal sprays failed to resolve ETD, Defendant underwent a follow-up internal scope examination. The ENT report states (translated from Hebrew):

    > "The patient continues to suffer from Eustachian tube dysfunction, mainly on the right side. Possible treatment options were explained: balloon dilation (tuboplasty) or insertion of a ventilation tube ("ear button"). The implications, risks, and success rates of each option were discussed. **It is recommended to first attempt catheterization (balloon dilation) of the Eustachian tube.** In addition, a soft diet and warm compresses to both jaw joints are recommended for two weeks."

    (Exhibit A: ENT Report, dated November 3, 2025).

    Balloon dilation requires general anesthesia in a hospital operating room, with recovery involving weeks to months of monitoring for complications like subcutaneous

emphysema or persistent dysfunction.

5. **Risks of Flying with ETD**: The ENT no-fly order remains in effect pending recovery from surgical procedure. Untreated ETD during air travel can cause rapid pressure changes leading to tympanic membrane rupture, middle ear hemorrhage, and sensorineural hearing loss or permanent deafness (*see, e.g., Poe et al., Balloon Dilation of the Cartilaginous Eustachian Tube, 144 Otolaryngol. Head Neck Surg. 563 (2011); Hamrang-Yousefi & Andaloro, Eustachian Tube Dysfunction, StatPearls (2022)*).

6. **Ongoing War and Logistical Barriers**: The Israel-Hamas war, entering its third year, has suspended maritime routes from Israeli ports, confirmed by Defendant's documented inquiries, as was proven with submitted correspondence from Mano Cruises, travel agencies, and Zim Cargo.

7. **Judicial Conflict**: Judge Engelmayer is a named defendant in *Teman v. Biale* (1:25-cv-05454), where Defendant alleges he conspired to conceal AUSA Graham's marriage to Noam Biale, a defense attorney in this case and the Judge's mentee and close family friend. **Vacating the fugitive status would lift stays in that action, advancing claims against the Judge personally.**

## LEGAL STANDARD

Motions for reconsideration under Local Rule 6.3 are granted when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). **New medical evidence qualifies as such (***United States v. Llewellyn*, 723 F.2d 615, 616 (7th Cir. 1983) (reconsideration warranted by post-order medical developments)).

The fugitive disentitlement doctrine requires willful evasion (*United States v. Bescond*, 2021 WL 4481483, at *4 (2d Cir. 2021)); <u>it does not apply to non-willful absences due to medical or external barriers</u> (*Sun v. Mukasey*, 555 F.3d 802, 807 (9th Cir. 2009)).

Judicial recusal is mandatory under 28 U.S.C. § 455(a) when "impartiality might reasonably be questioned" (*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)), including personal conflicts or extrajudicial allegations creating an appearance of bias (*Liteky v. United States*, 510 U.S. 540, 548 (1994)).

## ARGUMENT

### I. Reconsideration Is Warranted Due to New Medical Evidence Confirming ETD and the Necessity of Surgery

The Court's July 7, 2025, fugitive designation (Dkt. 567) relied on its view that Defendant's ETD was "pretextual" (Dkt. 531).

The November 3, 2025, ENT report constitutes new evidence under Local Rule 6.3, as it post-dates the order and follows three months of failed conservative treatment (steroid sprays). The internal scope examination objectively confirms persistent ETD, primarily on the right side, necessitating balloon dilation tuboplasty—a surgical procedure involving catheterization under general anesthesia (*Poe et al.*, supra; *Ockermann et al., Balloon Dilatation Eustachian Tuboplasty: A Clinical Study, 120 Laryngoscope 1411 (2010)*).

This evidence directly rebuts the Court's pretext finding. Defendant followed medical advice by avoiding air travel, as ETD impairs middle ear pressure equalization, risking barotrauma during cabin depressurization: tympanic membrane rupture, severe bleeding into the middle ear, and potential sensorineural hearing loss or permanent deafness (*Hamrang-Yousefi & Andaloro*, supra; *see also McCoul et al., Health Care Utilization and Prescribing Patterns for Adult Eustachian Tube Dysfunction, 166 Laryngoscope 1680 (2016)* (documenting aviation-related ETD complications)).

Defendant's caution was not evasion but self-preservation, aligning with *Bescond*'s requirement of willful intent. The doctrine cannot apply to a defendant heeding life-threatening medical warnings (*Sun v. Mukasey*, 555 F.3d at 807 (disentitlement improper for non-willful absence)).

Balloon dilation is a serious intervention with risks including subcutaneous emphysema, infection, and prolonged recovery (weeks to months of post-operative monitoring) (*Chisolm et al., Complications of Eustachian Tube Balloon Dilation: MAUDE Database Analysis, 8 Laryngoscope Investigative Otolaryngology 1185 (2023)*).

**Vacating the fugitive status is essential to permit surgery, recovery, and access to Israel's health system**, where Defendant resides so that he may receive care at Sheba Medical Center covered by national insurance rather than private pay which he cannot afford or schedule given the current backlog in Israel.

Retaining the designation would exacerbate health risks and deny due process (*United States v. Jacob*, 714 F.3d 1032, 1036 (8th Cir. 2013) (disentitlement **discretionary**, weighing equities like health)).

## II. Logistical Impossibilities Due to War Preclude Fugitive Status

Even absent medical issues, Defendant's inability to return by boat was not willful. Despite contacting Mano Cruises, travel agencies, and Zim Cargo, no maritime options existed from Israel to the U.S. before July 1, 2025.

The ongoing war has halted passenger shipping and restricted cargo routes, with no feasible land/sea alternative (e.g., via Jordan or Europe) due to border closures and hostilities. Egypt and Jordan both have active and violent branches of Muslim Brotherhood, and Teman, as founder of the JCorps Jewish volunteer network and as a

comedian who has regularly flown to Israel to perform and performs for many Jewish organizations has received a multitude of death threats from these groups. It is therefore not safe for Teman to cross either Jordan or Egypt, even if there were a boat available, where there were *not*.

Courts reject disentitlement where external barriers like war or transportation shortages prevent return (*Fugitive Disentitlement in Forfeiture Cases, 32 J. Marshall L. Rev. 139, 152 (1998)* (logistical impossibilities negate intent)).

Defendant's documented efforts demonstrate good faith, distinguishing this from *Zedner* (555 F.3d 68 (2d Cir. 2008)), where no such barriers existed.

### III. The Fugitive Designation Must Be Vacated to Permit Medical Care and Recovery

Maintaining fugitive status hinders Defendant's access to surgery and recovery, which requires general anesthesia and months of follow-up in Israel's health system.

This violates due process by punishing health necessities (*United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1996) (disentitlement must balance equities, including access to care)). Vacating the designation allows supervised release to continue remotely, enabling mental health treatment via telehealth (as previously accommodated) and preventing manifest injustice (*Shrader*, 70 F.3d at 257).

### IV. Judge Engelmayer Must Recuse Due to Conflicts and Appearance of Bias

Under 28 U.S.C. § 455(a), Judge Engelmayer's impartiality is reasonably questioned:

- **Personal Stake in Teman v. Biale**: As a defendant in *Teman v. Biale* (1:25-cv-05454), where Defendant alleges conspiracy to conceal AUSA Graham's marriage to Noam Biale (the Judge's mentee and family friend), vacating the fugitive status would lift stays and advance that action against him personally (*Liteky*, 510 U.S. at 548 (recusal for personal interest)). The Judge's rulings here appear motivated to delay scrutiny of his conduct (*Liljeberg*, 486 U.S. at 864).

**CONCLUSION**

Mr. Teman followed his board-certified ENT's recommendation to avoid flying and to use steroid sprays pending re-examination. Upon re-examination, it was determined that he requires a surgical procedure under general anesthesia.

Concurrently, Mr. Teman provided proof that no sea travel was available from Israel to the United States due to the ongoing war on seven fronts between Israel and Iran-affiliated radical Islamic groups.

**Thus, Mr. Teman was not—and is not—a fugitive. He has a serious medical condition requiring surgery.**

This court claims to be empathetic and human -- allowing Mr. Teman to get the surgery his ENT now says he needs without labeling him a fugitive for protecting himself from going deaf or worse during flight is the human and empathetic thing. If this is not all a ruse to stay a case against the Court's mentee and the court himself, the Court will undo the ruling and allow Mr. Teman to remain in Israel until he recovers from surgery and the ENT clears him to fly. Because such a ruling would trigger litigation restarting against Judge Engelmayer himself immediately by automatically lifting stays in civil court, the Judge has been put in a position by other courts where he must recuse from this decision.

For the foregoing reasons, Defendant respectfully requests that this Court:

1. Recuse because finding in favor of Teman here would automatically restart litigation against the Judge himself in *Teman v Biale*, alleging acts outside his role as a judge (and thus for which he has no immunity).

2. Grant reconsideration and vacate the July 7, 2025, fugitive designation and arrest warrant (Dkt. 567).

3. Grant such other relief as the Court deems just, including an expedited hearing.

**Dated**: November 3, 2025
**Respectfully submitted**,
/s/ Ari Teman
Ari Teman, Pro Se
ari@teman.com



ד"ר עמית וולפוביץ
מומחה ומנתח א.א.ג כירורגית ראש וצוואר
מומחה באוטולוגיה/נוירואוטולוגיה
(ניתוחי אוזניים, שיקום שמיעה, סחרחורת, טינטון
וגידולי בסיס הגולגולת הצידי)

3.11.25

שם: ארי תימן
תאריך לידה: 10.5.1982
Email: ari@teman.com
כתובת: ת"א
הצהיר/ה שלא נפגשנו במסגרת מערכת הבריאות הציבורית בחצי השנה האחרונה
סיבת הפניה:
לפני כחודשיים עבר טיפול בתא לחץ בשל סימפטומי GI. ככל הנראה סבל מצינון. ללא קושי במהלך ה"צלילה". למחרת החל לחוש לחץ באוזן ימין. ללא שיפור בבליעה. ללא שינוי בשמיעה. ללא טינטון או סחרחורת. נמשך עד עכשיו. טורדני. בחשיפה לרעש בעיקר בתדר נמוך ־ אי-נוחות ואף כאב. ללא סחרחורת.
ללא קושי בהשוואת לחצים (טיסות וכדומה)
דלקות אוזניים בילדות
24.4.25 ־ השלים בדיקת שמיעה + טימפנומטריה + ETF: שמיעה תקינה למעט ירידה ת"ע סימטרית ב-UHF עד ל-50 ד"ב. 96/92% . WRS SRT 10/10 טימפנו A/A. בבדיקת ETF ־ תת-תפקוד חצוצרה דו"צ.
פחות חמור משהיה כאשר פנו.
3.11.25 - עדיין כאב באוזן ימין. די קבוע. ללא שינוי בשמיעה. מתקשה בחדרים סגורים כממ"ד.
בדיקה גופנית:
פנים ־ סימטריות
אוטוסקופיה ־ תקינה משני הצדדים. תנועת תופית תקינה בולסלבה וטויינבי משני הצדדים.
וובר לשמאל, רינה + משני הצדדים אך נשמע יותר משמאל
ללא ניד ספונטני, HIT ־ תקין דו"צ, HST ־ תקין, SKEW ־ תקין דו"צ, VOR תחת פרנזל ־ תקין
24.4.25 ־ אוטוסקופיה ־ תקינה משני הצדדים עם תנועת תופית בולסלבה.
3.11.25 - אוטוסקופיה - תקינה משני הצדדים. תנועת תצפית בולסלבה וטויינבי. FOL - חללא ף ימין - תקין, נזופרינקס ופתחי והחצוצרה תקינים. שאר הפרינקס ולרינקס תקינים.
רגישות מסויימת ב-TMJ.
רקע רפואי:
ללא
רקע ניתוחי:
ניתוח לשחזור האף, אוטופלסטי
אלרגיה לתרופות:
פניצילין
הרגלים:
ללא
סיכום והמלצות:

תמונה חלקית של תת-תפקוד חצוצרה מימין עם קושי בהשוואת לחצים אך בבדיקה תקין סה"כ.
בנוסף, וובר לשמאל ואי-סבילות לרעש בתדר נמוך
מומלץ:

1. המנעות מטיסה ל-3 חודשים avoid airplanes for the coming three (3) months
2. בדיקת שמיעה בהקדם + טימפנומטריה + ETF – ישלח לי את התוצאות ל- 058-6268313

– 24.4.25

The Eustachian Tube (ET) Function test point at ET Dysfunction Bilaterally
Hence Ari Should avoid barometric changes (for example: commercial flights, climbing to high places, HBO chamber, etc..)
I would prescribe Steronase nasal spray for 3 months and would schedule visit for inspection before approving traveling abroad. In case of increasing pain – come in sooner.

– 3.11.25

עדיין סובל מתת-תפקוד חצוצרה בעיקר מימין. הוסברו אפשרויות הטיפול: כפתור או צנתור החצוצרה. הוסברו המשמעויות, סיכונים וסיכויים של כל אפשרות. ממליץ על צנתור החצוצרה תחילה (טובופלסטיקה). בנוסף ממליץ על ריכוך הדיאטה + קומפרסים חמים למפרקי הלסת לשני הצדדים למשך שבועיים.

ד"ר עמית וולפוביץ
מ.ר 108124
מ.מ 33387